UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PEPCO HOLDINGS, INC; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, <br><br> Defendants. | CIVIL ACTION NO. <br><br><br><br><br><br> CLASS ACTION |

## COMPLAINT

Plaintiffs J. Michael Charles, Maurice W. Ward, Jr., and Joseph I. Fink, Jr. on behalf of themselves and all others similarly situated, allege for their complaint as follows:

## INTRODUCTION

1. This is a class action brought on behalf of persons who were participants in the Conectiv Retirement Plan, as amended and restated effective January 1, 1999, and who had their accrued benefit determined under the Conectiv Cash Balance Sub-Plan effective as of January 1, 1999 instead of a predecessor plan. Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended; as plaintiffs demonstrate below the Conectiv Cash Balance Sub-Plan violates ERISA as it fails to comply with ERISA's accrual requirements. Further, plaintiffs and the class were not given the requisite notice that the rate at which they earned benefits would decrease under the amended plan. Accordingly, plaintiffs bring this action seeking appropriate declaratory, injunctive and other relief, including a declaration that the Conectiv Cash Balance Sub-Plan, which went into place through amendment of defined benefit plans maintained by Atlantic City Electric Company and Delmarva Power and Light Company, is invalid and that the

accrued benefits of plaintiffs and each member of the class should therefore be calculated under and pursuant to the terms of the predecessor plans sponsored by Atlantic City Electric Company and Delmarva Power and Light Company.

## JURISDICTION AND VENUE

2. This Complaint arises under Section 502(a) of ERISA, 29 U.S.C. § 1132(a). This Court has subject matter jurisdiction over this matter under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and under 28 U.S.C. § 1331.

3. Venue is proper in this district under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the relevant pension plan is administered, in whole or in part, in this district, the violations of law alleged in this action occurred (in whole or in part) in this district, and defendants do business and are found in this district.

## PARTIES

4. Plaintiff J. Michael Charles ("Charles") is an individual who resides in the State of New Jersey and a long-term employee of Atlantic City Electric Company. Plaintiff Charles is fifty-five years old and commenced his covered employment on September 9, 1979. Plaintiff Charles was a participant in the Atlantic City Electric Company Retirement Plan. Effective as of January 1, 1999, plaintiff Charles became a participant in the Conectiv Retirement Plan and, more particularly, the Conectiv Cash Balance Sub-Plan which formed a part thereof.

5. Plaintiff Maurice W. Ward, Jr. ("Ward") is an individual who resides in the State of New Jersey and a long-term employee of Atlantic City Electric Company. Plaintiff Ward is fifty years old and commenced his covered employment on November 09, 1981. Plaintiff Ward was a participant in the Atlantic City Electric Company Retirement Plan. Effective as of January 1, 1999, plaintiff Ward became a participant in the Conectiv Retirement Plan and, more particularly, the Conectiv Cash Balance Sub-Plan which formed a part thereof.

6. Plaintiff Joseph I. Fink, Jr. ("Fink") is a resident of the State of New Jersey and a long-term employee of Atlantic City Electric Company. Plaintiff Fink is fifty-one years old and commenced his covered employment on May 27, 1987. Plaintiff Fink was a participant in the Atlantic City Electric Company Retirement Plan. Effective as of January 1, 1999, plaintiff Fink became a participant in the Conectiv Retirement Plan and, more particularly, the Conectiv Cash Balance Sub-Plan which formed a part thereof.

7. Defendant Pepco Holdings, Inc. ("Pepco Holdings") is a Delaware corporation with its principal place of business in Washington, DC. Pepco Holdings is a public utility holding company registered under the Public Utility Holding Company Act of 1935. Pepco Holdings was incorporated on February 9, 2001 for the purposes of an acquisition of defendant Conectiv.

8. Defendant Conectiv is a corporation organized under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware. Conectiv was formed in 1998 to be a holding company for Delmarva Power & Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic City Electric") in connection with the combination of these two entities. Conectiv is a registered public utility holding company under the Public Utility Holding Company Act of 1935, and Delmarva and Atlantic City Electric are wholly owned subsidiaries of Conectiv; Delmarva and Atlantic City Electric became subsidiaries of Conectiv on March 1, 1998. On August 1, 2002, Conectiv, in turn, became a wholly owned subsidiary of Pepco Holdings.

9. Defendant Pepco Holdings Retirement Plan (the "Pepco Holdings Plan") is an employee benefit plan maintained pursuant to ERISA. More specifically, the Pepco Holdings Plan is a pension plan, within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2) and a defined benefit plan within the meaning of Section 3(35) of ERISA, 29 U.S.C. § 1002(35). The Pepco Holdings Retirement Plan is the successor by merger to the Conectiv Retirement Plan, which was

merged with another defined benefit pension plan maintained by an affiliate of Pepco Holdings on December 31, 2002.

## CLASS ACTION ALLEGATIONS

10.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedures on behalf of the following class ("the Class"):

> All persons who have had their accrued benefit determined pursuant to the terms of the Cash Balance Sub-Plan of the Conectiv Retirement Plan and do not qualify for a grandfathered benefit, and their beneficiaries.

11.     The Class is so numerous that joinder of all members is impractical. While the exact number of Class members is currently not known to plaintiff, according to the Internal Revenue Service Form 5500 Annual Report for the Conectiv Retirement Plan for calendar year 2002, there were over 3,399 active participants in the Conectiv Retirement Plan.

12.     Common questions of law and fact exist as to all members of the class, including the following:

      a.     whether the Class Balance Sub-Part of the Conectiv Retirement Plan violates the accrual requirement of Section 204 of ERISA, specifically Sections 204(b)(1)(A), (B), (C), 29 U.S.C. § 1054(b)(1)(A), (B), (C).

      b.     whether the Cash Balance Sub-Plan of the Conectiv Retirement Plan violates Section 204(b)(1)(G) of ERISA, 29 U.S.C. § 1054(b)(1)(G).

      c.     whether the Cash Balance Sub-Plan of the Conectiv Retirement Plan violates provisions of Section 204(b)(1)(h)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

      d.     whether defendant Conectiv violated the provisions of Section 204(h) of ERISA, 29 U.S.C. § 1054(h) by failing to provide participants with sufficient notice of an amendment to a plan that would result in a significant decrease in the rate of future benefit accrual.

e.  whether each plaintiff and each Class member is entitled to the relief sought in this complaint.

13. Each plaintiff is a member of the Class, and each plaintiff's claims are typical of the claims in the members of the Class.

14. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel who are competent and experienced in ERISA and class action litigation. Plaintiffs do not have interests that are antagonistic to or in conflict with, the members of the Class whom they seek to represent.

15. Class certification is appropriate under Rules 23(b)(1)(B) and (b)(2) of the Federal Rules of Civil Procedure because adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of other non-party members and defendants have acted on grounds generally applicable to the Class, making declaratory, injunctive and other equitable relief on a class-wide basis appropriate.

16. In the alternative, class certification would also be appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because the common questions of law and fact presented in this action predominate over any individual issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impractical. Furthermore, the expense and litigation makes it impractical for the members of the class to pursue individual litigation in order to vindicate their rights. Plaintiffs are not aware of any management problems that would militate against the maintenance of this action as a class action.

## FACTUAL BACKGROUND

### Formation of the Conectiv Plan

17.     Prior to 1998, Atlantic City Electric and Delmarva were independent companies that were regulated utilities. On March 1, 1998, they became wholly owned subsidiaries of Conectiv. At the time that they were acquired by Conectiv, Atlantic City Electric and Delmarva Power each was the sponsor of its own defined benefit pension plan pursuant to ERISA, the Atlantic City Electric Company Retirement Plan ("Atlantic City Plan") and the Delmarva Power & Light Company Retirement Plan ("the Delmarva Plan"). Both plans were "final pay" plans, in which the annuity provided as a retirement benefit was determined by multiplying the average pay earned by a participant over a period of time by their years of service, and multiplying the product of that by a percentage factor to determine the amount of the annual benefit payable at normal retirement age. Conectiv would later characterize the difference between the two plans as follows:

> The main difference is that Atlantic Energy employees could retire at 55 with no reduction in benefit, while Delmarva Power employees could retire at 60 with no reduction in benefit, or at 55 with a 24% reduction in benefit. The Atlantic Energy percentage multiplier is 1.6%, compared to the Delmarva Power 1.5%. On the other hand, Delmarva Power employees have an enhanced survivor benefit that Atlantic Energy employees do not have. . . .

18.     Following its acquisition of Atlantic City Electric and Delmarva Power, Conectiv determined that it wished to create a single defined benefit pension plan out of the two predecessor plans. This was done by merging the Delmarva Plan into the Atlantic City Plan and renaming the Atlantic City Plan the Conectiv Retirement Plan. This merger of the Delmarva Plan and the Atlantic City Plan to form the Conectiv Retirement Plan took effect on December 30, 1998. Defendant Conectiv became the plan sponsor of the Conectiv Retirement Plan within the meaning of Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(3)(16)(B), and the named fiduciary within the meaning of Section 402(a) of ERISA, 29 U.S.C. § 1102(a).

19.     At the same time that it merged the Atlantic City Plan and the Delmarva Plan, Conectiv elected to switch the basic form of the plan from a final pay plan to a cash balance plan. While benefit consultants frequently characterizes a cash balance plan as a hybrid, having characteristics of both a defined benefit plan and a defined contribution plan, in fact it is simply a different form of defined benefit plan subject to all of the requirements of ERISA governing defined benefit plans.

20.     In a cash balance plan, each participant has a hypothetical account which is purely for bookkeeping purposes. No specific assets are allocated to any particular participant's "account," and the value of the "account" does not fluctuate in response to gains and losses recognized on plan assets. Each year, the plan's sponsor in a cash balance plan adjusts the participant's account with various credits based upon the formula set forth in the plan document. Typically, these credits reflect some factor based on earnings along with an interest credit, which is usually derived from the thirty year treasury rate.

### Overview of Conectiv's Cash Balance Plan

21.     Certain unionized employees were not converted to the cash balance plan formula. Thus, when the Conectiv Retirement Plan was formed, it included three component sub-plans: the ACE Sub-Plan, which covered employees who were represented by IBEW Local 210 or Local 210A; the Delmarva Sub-Plan, which covered employees represented by IBEW Local 1238, 1238A, Local 1307 or Local 1307A; and the Cash Balance Sub-Plan, which covered certain management and unionized employees of the various participating affiliated companies. Unless they qualified for the ACE Sub-Plan or the Delmarva Sub-Plan, participants who were covered by the Atlantic City Plan or the Delmarva Plan were placed in the Cash-Balance Sub-Plan as of January 1, 1999.

22.     In dealing with participants who were placed in the Cash Balance Sub-Plan, Conectiv determined that it would grandfather certain employees who were participants in the Atlantic City

Plan and the Delmarva Plan. Participants in these plans were grandfathered if, as of December 31, 1998, they had attained age fifty or completed at least twenty years of service calculated under the terms of the predecessor plan. Employees qualifying for a grandfathered benefit would then have their retirement benefits calculated under the terms of the predecessor plan provided that they terminated employment on or before December 31, 2008. In effect, these participants were granted grandfathered status for a period of ten years.

23.     As of December 31, 1998, plaintiffs did not qualify for grandfathered benefits as they did not meet the requisite age and service requirements. Accordingly, pursuant to the terms of the Conectiv Retirement Plan, the plan's actuary calculated an Initial Cash Balance under the plan by converting the benefits that they earned under the prior plan to an equivalent lump-sum opening balance. The same process was applied to each participant in the Atlantic City Plan and the Delmarva Plan.

24.     From January 1, 1999 through the present, each of the plaintiffs has been a participant in the Cash Balance Sub-Plan of the Conectiv Retirement Plan. Accordingly, the pension benefits that they have accrued since that date have been governed by the formula under that plan, which has three different components: Pay Credits; Interest Credits; and Transition Credits.

25.     Under the terms of the Cash Balance Sub-Plan, Pay Credits are expressed as a percentage of compensation that is determined on the basis of the employee's age in a particular year, according to the following formula:

| Participant's Age | Pay Credit Rate |
|---|---|
| Under 30 | 5% |
| 30-34 | 6% |
| 35-39 | 7% |

| | |
|:---:|:---:|
| 40-44 | 8% |
| 45-49 | 9% |
| 50 and over | 10% |

Under this formula, an employee who reached age forty in 1999 with an annual salary of $55,000 would receive a Pay Credit of $4,400, which equals her salary of $55,000 multiplied by the 8% rate applicable for participants age forty to forty-four.

26. Interest Credits under the Cash Balance Sub-Plan are calculated based upon the thirty year Treasury Bond rate as of October 31 of the prior year. At the end of each calendar year, an Interest Credit is made to the account by multiplying the opening account balance as of the beginning of the year by the applicable thirty year treasury rate. Under this formula, an employee who had a plan account balance of $5,000 as of January 1, 2000 would receive an interest credit to their account as of December 31, 2000 in the amount of $300, which represents the $5,000 account balance as of the commencement of the year multiplied by the thirty year treasury rate as of October 31, 1999, which was 6%.

27. Transition Credits are available to those who were management employees as of January 1, 1999 who had at least ten years of service under a predecessor plan as of that date. Transition Credits were applied to each eligible participant's account balance at the end of each calendar year. Transition Credits were available commencing as of December 31, 1999 and would be continually applied to the account balance until the participant had more than thirty-five years of service.

28. Transition Credits are expressed as a percentage of compensation; the percentage varied based upon the number of years of service the employee had as of January 1, 1999, according to the following formula:

| Participant's Years of Service as of Effective Date | Transition Crediting Rate |
|---|---|
| Less than 10 years | 0.0% |
| 10 – 11 years | 1.0% |
| 12 – 15 years | 2.0% |
| 16 – 19 years | 3.0% |
| 20 or more years | 4.0% |

Under this formula, an employee with twelve years of service under a predecessor plan who earned $55,000 during 1999 would receive a Transition Credit of $1,100, determined by multiplying their salary of $55,000 by the 2% Transition Credit rate applicable to employees who had twelve to fifteen years of service as of January 1, 1999.

29.     On August 1, 2002, Conectiv became a wholly owned subsidiary of Pepco Holdings. Thereafter, Pepco Holdings merged the Pepco General Retirement Plan (a defined benefit pension plan maintained by one of its subsidiaries) and the Conectiv Retirement Plan to create the Pepco Holdings Retirement Plan. This merger went into effect on December 31, 2002. The formation of the Pepco Holdings Retirement Plan did not alter the manner in which benefits were expressed for participants in the Conectiv Retirement Plan. Indeed, in its annual proxy statement dated as of March 31, 2005, Pepco Holdings stated that "the Pepco Holdings Retirement Plan consists of the Pepco General Retirement Plan and the Conectiv Retirement Plan." Pepco Holdings became the plan's sponsor of the Pepco Holdings Retirement Plan within the meaning of Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B), and the named fiduciary under Section 402(a) of ERISA, 29 U.S.C. § 1102(a).

## Conectiv's Conversion Process

30.   Conectiv apparently began to give consideration to converting the Atlantic City Plan and the Delmarva Plan to a cash balance formula even before its acquisition of the companies had been finalized. Conectiv first announced its intention to do so to its workforce in the Spring of 1998 (the exact date of which is not known to plaintiffs but is known to defendant Conectiv). At that time, Conectiv issued disclosures which introduced the cash balance plan concept as follows:

> Until now, employees of both DPL and AE have been covered by what are known as "final pay" pension plans. The "cash balance" pension plan is a new concept that has two important advantages: It's easier to *understand* than the former plans, and it's totally *"portable."* Both these features support our goal of designing a benefits package that meets the needs of today's more independent, more mobile workforce. The new cash balance pension plan will take effect January 1, 1999.

31.   In addition to touting the simplicity and portability of the new plan design, this disclosure also emphasized the fact that the entire cash balance would pass to a beneficiary upon the participant's death; this was contrasted with the existing joint and survivor annuity structure under the predecessor plans, which provided for about half of the accrued benefit to be paid to a surviving spouse.

32.   Conectiv's disclosures also revealed that certain employees with ten or more years of service would be eligible for additional credits to their cash balance account. They also explained that some employees would be grandfathered, as follows:

> Of course, many employees have already worked for most of their careers under the former "final pay" pension plans. For this reason, two groups of people will continue to be covered by their former plans for the next 10 years. They are employees who, as of January 1, 1999:
>
> - have completed 20 years of service, or
> - are age 50 or older
>
> These "grandfathered" employees will have their pensions calculated under both the former and new plans, and will receive whichever value is greater. As an

11

additional benefit, grandfathered employees have the option to elect a lump-sum distribution under the former plan.

33. The overall tenor of this Spring 1998 disclosure was that all employees would be better off under the new cash balance design as it was easier to understand, more portable, provided better survivor benefits, and incorporated features designed to protect the interests of workers with long years of service.

34. On or about December 21, 1998, Conectiv issued new disclosures in the form of a letter with a question and answer format. The December 21st letter explained that the grandfathering provision, along with the Transition Credits represented "extensive protections" designed to provide "minimal impact on the existing workforce." The December 21st letter then provided participants with tables that would allow them to generate a rough initial estimate of what their opening balance would be, and provided them an updated version of the Spring 1998 disclosures.

35. While the cash balance formula went into effect as of January 1, 1999, initial account balance data was not available to affected employees until late June of that year. On or about June 23, 1999, Conectiv issued a notification to managers indicating that opening statements would be mailed the following week and that informational meetings were scheduled from July 12 through July 29. This memorandum endeavored to distinguish the Conectiv cash balance plan from other plans that had received adverse media scrutiny:

> Recent stories in the national media have raised concerns about some cash-balance plans that do not offer the same level of financial security or grandfathering provisions as Conectiv's Class Balance Pension Plan. One part of the presentation will address these concerns and demonstrate how Conectiv's plan is different.

## How the Conversion Affected Plaintiffs and the Class

36. Each plaintiff and each member of the Class had earned a right to annuity benefits under a predecessor plan.

12

37. Each plaintiff and each member of the Class had the annuity benefit earned under the old plan converted into a hypothetical opening account balance; this calculation was performed by Towers Perrin, the plan actuary, and brought the existing annuity benefit to present value as of December 31, 1998.

38. Starting on January 1, 1999, each plaintiff and each Class member had their benefits under the Cash-Balance Sub-Plan of the Conectiv Retirement Plan expressed in the form of their account balance. The account balance consisted of their opening balance plus the Pay Credits, Interest Credits, and Transition Credits that they earned since January 1, 1999.

39. While a cash balance plan expresses the employee's retirement benefits in the form of a lump-sum account balance, ERISA does not recognize this particular form of defined benefit. Instead, ERISA measures an employee's retirement benefits under a defined benefit plan by reference to their "accrued benefit," which is "an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A).

40. For purposes of ERISA's substantive accrual rules governing defined benefit plans, the account balance of a participant has to be converted into an annuity commencing at age sixty-five to determine whether the Cash Balance Plan satisfies the minimum accrual requirements. This calculation is sensitive to fluctuations in the prescribed interest rate, which is the rate for the thirty year Treasury Bond.

41. Because the conversion of the account balance to an annuity commencing at age sixty-five is sensitive to fluctuations in the thirty year treasury rate, participants can actually suffer reductions in their accrued benefits under the Cash-Balance Sub-Plan of the Conectiv Retirement Plan. For example, in 1999 and 2000 Plaintiff Charles' accrued benefit increased. Thereafter, it subsequently decreased in three consecutive years: in 2001, his accrued benefit decreased by 4.006%; in 2002, it decreased by 6.932%; and in 2003, it decreased by 2.774%. This represented a

total decrease in his annual annuity benefit of over $4,000 between the close of 2000 and the close of 2003. In 2004, Plaintiff Charles' accrued benefit increased by 8.43%, but was still significantly lower than the amount of his accrued benefit as of the end of calendar year 2000. In terms of the annual amount of annuity benefit, Plaintiff Charles' accrued benefit as of December 31, 2004 was over $1,500 less than it had been at the end of 2000. Plaintiffs Ward and Fink similarly suffered negative accruals.

## COUNT I

42. Plaintiffs incorporate the allegations of paragraphs 1 through 41 herein by reference as if fully set forth at length.

43. As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan is subject to the minimum accrual requirements of Section 204(b) of ERISA, 29 U.S.C. § 1054(b).

44. Section 204(b)(1) of ERISA provides three alternative tests which a defined benefit plan can meet to satisfy ERISA's accrual requirements, 3% rule, the $133^{1/3}$% rule and the fractional rule. 29 U.S.C. § 1054(b)(1)(A), (B), (C).

45. The Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Retirement Plan does not satisfy any of these tests. Accordingly, the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Retirement Plan fails to satisfy ERISA's minimum accrual standards.

## COUNT II

46. Plaintiffs incorporate the allegations of paragraphs 1 through 41 herein by reference as if fully set forth at length.

47. As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan is subject to Section 204(b)(1)(G) of ERISA, 29 U.S.C. §

204(b)(1)(G). Under Section 204(b)(1)(G) of ERISA, a defined benefit plan does not satisfy the accrual requirements of Section 204 "if the participant's accrued benefit is reduced on account of any increase in his age or service." Because the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan permits the accrued benefit of a participant to be reduced in subsequent years, it violates Section 204(b)(1)(G) of ERISA.

## COUNT III

48. Plaintiffs incorporate the allegations in paragraphs 1 through 41 herein by reference as if fully set forth at length.

49. As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan is subject to Section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H).

50. Section 204(b)(1)(H) of ERISA provides that a defined benefit plan will not satisfy the minimum accrual requirements "if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." The Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan violates Section 204(b)(1)(H) of ERISA because the rate at which a participant accrues benefits under the plan is reduced as the participant's age increases.

## COUNT IV

51. Plaintiffs incorporate the allegations of paragraphs 1 through 41 herein by reference as if fully set forth at length.

52. The Conectiv Retirement Plan, its predecessor and successors are all defined benefit pension plans subject to Section 204(h) of ERISA, 29 U.S.C. § 1054(h). The Cash Balance Sub-Plan constituted an amendment providing for a significant reduction in the rate of future benefit accrual for participants in the Delmarva Plan and the Atlantic City Plan.

53. Pursuant to Section 204(h) of ERISA, Conectiv could only amend the predecessor plans to implement the Cash Balance Sub-Plan if it provided each participant with a notice advising them that the amendment would provide for a significant reduction in the rate of future benefit accrual in a manner calculated to be understood by the average plan participant. At the time that Conectiv issued its disclosures to participants concerning the new cash balance plan, it knew that the design of the plan would result in a significant reduction in future benefit accruals. Nonetheless, it failed to give the requisite notice required by Section 204(h) of ERISA, 29 U.S.C. § 1054(h).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment in their favor as follows:

A. Determining that this is a proper class action which should be certified under Rule 23 of the Federal Rules of Civil Procedure, designating plaintiffs as representatives of the Class and plaintiffs' counsel as counsel for the Class;

B. Declaring that the Cash Balance Sub-Plan violates Section 204(b)(1)(A), (B), (C) of ERISA, 29 U.S.C. § 1054(b)(1)(A), (B), (C);

C. Declaring that the Cash Balance Sub-Plan violates Section 204(b)(1)(G) of ERISA, 29 U.S.C. § 1054(b)(1)(G);

D. Declaring that the Cash Balance Sub-Plan violates the provisions of Section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H);

E. Declaring that the Cash Balance Sub-Plan is also invalid by reason of the fact that participants in the Delmarva Plan and Atlantic City Plan did not receive the requisite notice required by Section 204(h) of ERISA, 29 U.S.C. § 1054(h);

F. Reforming the Pepco Holdings Plan to eliminate the Cash-Balance Sub-Plan;

G. Directing that all participants and former participants who have accrued benefits pursuant to the terms of the Cash Balance Sub-Plan shall have their accrued benefits determined pursuant to the terms of their respective predecessor plan;

H. Awarding plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees and experts' fees; and

I. Awarding such additional and further relief to which plaintiffs and the Class may be entitled or which the Court considers to be just and proper.

Dated: September 26, 2005                    **CHIMICLES & TIKELLIS LLP**

By: _____
Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
Robert R. Davis (#4536)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
302-656-2500 (telephone)
302-656-9053 (fax)

**CHIMICLES & TIKELLIS LLP**
James R. Malone, Jr.
Joseph G. Sauder
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 (telephone)
610-649-3633 (fax)