IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated | : : : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | NO. 05-702 (SLR) |
| PEPCO HOLDINGS, INC.; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, | : : : | |
| Defendants | : : | |

## DEFENDANTS' OPENING BRIEF
## IN SUPPORT OF THEIR MOTION TO DISMISS

M. Duncan Grant (#2994)
Sasha L. Azar (#4200)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P. O. Box 1709
Wilmington, DE   19899-1709
302-656-2500 (telephone)
302-656-9053(fax)

Susan K. Hoffman, *(pro hac vice)*
Larry R. Wood, Jr.
Kay Kyungsun Yu *(pro hac vice)*
Barak A. Bassman *(pro hac vice)*
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000 (telephone)
215-981-4750 (fax)

Attorneys for Defendants

Dated: November 16, 2005

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS .............................................................. 1

II.  STATEMENT OF FACTS ................................................................................................ 1

    A.   Cash Balance Pension Plans............................................................................... 1

    B.   Defendants' Cash Balance Plan .......................................................................... 3

    C.   Notices Provided To Plaintiffs Of The Plan Amendment
         Establishing The Cash Balance Formula ............................................................ 5

    D.   Plaintiffs' Complaint........................................................................................... 6

III. SUMMARY OF ARGUMENT .......................................................................................... 7

IV.  ARGUMENT ................................................................................................................... 9

    A.   Standard Of Review ............................................................................................ 9

    B.   Plaintiffs' Claims Are Barred By The Statute Of Limitations............................ 10

    C.   Count II Fails To State A Claim – No Reduction of Accrued
         Benefit Based on Age or Service. ...................................................................... 13

    D.   Count III Fails To State A Claim – No Reduction In The Rate
         Of Benefit Accrual Because Of The Attainment Of Any Age............................ 14

         1.   Plaintiffs Lack Standing Under Section 204(b)(1)(H)............................... 14

         2.   Plaintiffs' Alleged Declining Rates of Accrual Are Not
              Because of Age ........................................................................................ 18

         3.   The Plan Is Not Inherently Age Discriminatory ....................................... 19

              a.   Section 204(b)(1)(H) Permits Cash Balance Plans ........................ 20

              b.   Congress Did Not Intend Cash Balance Plans to
                  Be Per Se Illegal .......................................................................... 22

              c.   The IRS Has Opined That Cash Balance Plans
                  Are Not Per Se Illegal .................................................................. 27

              d.   The Cooper Opinion Should Not Be Followed .............................. 29

    E.   Count I Fails To State A Claim For Relief – The Plan Is Not
         Impermissibly Backloaded................................................................................ 32

    F.   Count IV Fails To State A Claim – Plaintiffs Admit They Were
         Notified Of The Conversion To The Cash Balance Formula .............................. 34

V.   CONCLUSION.............................................................................................................. 36

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Almendarez-Torres v. United States, 523  U.S. 224 (1998) .........................................................16

Berger v. Xerox Corp., 338 F.3d 755 (7th Cir. 2003)...................................................................34

Bethel v. Jendoco Const. Corp., 570 F.2d 1168 (3d Cir. 1978)....................................................12

Blaw Knox Retirement Plan v. White Consolidated Industrial,
    998 F.2d 1185 (3d Cir. 1993).........................................................................................9

Bright v. West Moreland County, 380 F.3d 729 (3d Cir. 2004).....................................................9

In re Burlington Coat Factory Sec. Litigation, 114 F.3d 1410 (3d Cir. 1997) ...............................9

Cooper v. IBM Personal Pension Plan, 274 F. Supp. 2d 1010 (S.D. Ill. 2003).................29, 30, 31

Creamer v. Gen'l Teamsters Local Union 326, 579 F. Supp. 1284 (D. Del. 1984).......................10

DiCioccio v. Duquesne Light Co., 911 F. Supp. 880 (W.D. Pa. 1995) ...................................14, 18

Eaton v. Onan  Corp., 117 F. Supp. 2d 812
    (S.D. Ind. 2000) ....................................................14, 16, 17, 20, 23, 24, 25, 26, 27

Engers v. AT & T Corp., Civ. A. No. 98-3660, 2001 U.S. Dist. LEXIS 25889
    (D.N.J. June 6, 2001) ...................................................................14, 15, 16, 17, 20

Esden v. Bank of Boston, 229 F.3d 154 (2d Cir. 2000)................................................................34

F.D.I.C. v. Meyer, 510 U.S. 471 (1994) ......................................................................................21

In re Gulf Pension Litigation, 764 F. Supp. 1149 (S.D. Tex. 1991),
    aff'd 36 F.3d 1308 (5th Cir. 1994) .............................................................................21, 32

Hishon v. King & Spalding, 467 U.S. 69 (1984)............................................................................9

Hurlic v. Southern California Gas Co, Case No. CV05-5027 (C.D. Cal. Oct. 18, 2005).............20

Inter-Modal Rail Employees Association v. Atchison, Topeka & Santa Fe Railway,
    520 U.S. 510 (1997)......................................................................................................1

Langman v. Laub, 328 F.3d 68 (2d Cir. 2003), ...........................................................................33

**Page(s)**

Lockheed Corp. v. Spink, 517 U.S. 882 (1996)............................................................................1

Lunn v. Montgomery Ward & Co., Inc., 166 F.3d 880 (7th Cir. 1999) ......................................18

Miller v. Fortis Benefits Insurance Co., 363 F. Supp. 2d 700 (D.N.J. 2005) ................................10

Morse v. Lower Merion Sch. District, 132 F.3d 902 (3d Cir. 1997) ........................................9, 33

In re NAHC, Inc. Sec. Litigation, 306 F.3d 1314 (3d Cir. 2002) ....................................................9

Pension Ben. Guaranty Corp. v. White Counsel Industrial, Inc.,
    998 F.2d 1192 (3d Cir. 1993)..................................................................................................9

In re Rockefeller Ctr. Prop, Inc. Sec. Litigation, 184 F.3d 280 (3d Cir. 1999) ..............................9

Romero v. Allstate Corp., 404 F.3d 212 (3d Cir. 2005) ..............................................10, 11, 12, 35

Russello v. United States, 464 U.S. 16 (1983).......................................................................21, 31

See E.I. DuPont de Nemours & Co. v. Millenium Chemicals, Inc.,
    C.A. No. 97-237-SLR, 1999 U.S. Dist. LEXIS 12447 (D. Del. Aug. 2, 1999)......................10

Skidmore v. Swift & Co., 323 U.S. 134 (1944)..........................................................................29

Tootle v. ARINC, 222 F.R.D. 88 (D. Md. 2003).....................................14, 15, 17, 19, 20, 26, 27

United States v. Cooper, 396 F.3d 308 (3d Cir. 2005) .................................................17, 21, 25, 27

United States v. Hodge, 321 F.3d 429 (3d Cir. 2003) ................................................................23

## STATUTES AND REGULATIONS

ERISA § 3(19), 29 U.S.C. § 1002(19)......................................................................................32

ERISA § 3(23) 29 U.S.C. § 1002(23)..................................................................................30, 32

ERISA § 3(24) 29 U.S.C. § 1002(24)......................................................................................16

ERISA § 3(31), 29 U.S.C. § 1002(31)......................................................................................32

ERISA § 3(33), 29 U.S.C. § 1002(33)......................................................................................32

ERISA § 3(34), 29 U.S.C. § 1002(34)........................................................................................2

ERISA § 3(35), 29 U.S.C. § 1002(35)....................................................................................2, 3

**Page(s)**

ERISA § 103, 29 U.S.C. § 1023 .................................................................................32

ERISA § 202, 29 U.S.C. § 1052 .................................................................................32

ERISA § 203, 29 U.S.C. § 1053 .................................................................................32

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B) ...............................................32, 33

ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G) .....................................................13

ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H) ...........................14, 19, 21, 22, 27, 28, 30, 31

ERISA § 204(c)(2)(B), 29 U.S.C. § 1054(c)(2)(B) .....................................................24

ERISA § 204(h), 29 U.S.C. § 1054(h) (1999) .............................................................35

ERISA § 205, 29 U.S.C. § 1055 .................................................................................32

ERISA § 206, 29 U.S.C. § 1056 .................................................................................32

Fed. R. Civ. P. 12(b)(6)................................................................................................9

Pub. L. 99-509.......................................................................................................16, 23

10 Del. C. § 8106 ........................................................................................................10

26 C.F.R. § 1.411(b)-1(b)(2)(iii)................................................................................34

26 C.F.R. § 1.411(b)-1(d)-6 (1999) ...........................................................................36


SECONDARY SOURCES

56 Fed. Reg. 47,524, 47,528 (Sept. 19, 1991) ...........................................................29

67 Fed. Reg. 76,123 (Dec. 11, 2002).........................................................................28

IRS Notice 96-8, 1996-1 C.B. 359..........................................................................33, 34

A. McGrath, Pension Law: Cash Balance Pension Plans Are Not Inherently Age
  Discimenatory: Cooper v. IBM Defies A Strong History Of Support For The Cash
  Balance Design, 57 Okla. L. Rev. 429, 455-456 (2004).......................................2, 3, 28, 30, 31

OBRA Conference Report, 1986 U.S.C.C.A.N. 3868....................................................15, 17, 23

**Page(s)**

R. Shea, M. Francese, and R. Newman, Age Discrimination in Cash Balance Plans:
   Another View, 19 Va. Tax. Rev. 763, 769 (Spring 2000) ........................................................24

Webster's Third New Int'l Dictionary 204 (3d ed. 1986)...........................................................21, 22

I.    **NATURE AND STAGE OF THE PROCEEDINGS**

The instant Complaint was filed on September 26, 2005, as a broadside attack on

Defendants' cash balance pension plan (the "Plan").  Apparently unhappy with the conversion to

a cash balance formula from the "final pay" pension formulas of the predecessor plans, but

unable to challenge the Plan amendment directly,[1] Plaintiffs waited for more than six (6) years

after that conversion, and have chosen instead to assert a variety of statutory claims pursuant to

the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") in an attempt to

challenge the legality of the Plan.

As will be discussed below, it is clear from the face of the Complaint that all of

Plaintiffs' claims are barred by the applicable statute of limitations.  Moreover, each of the four

counts of Plaintiffs' Complaint is legally insufficient.  Because Plaintiffs have failed to state a

claim upon which relief can be granted, Defendants now move, pursuant to Fed. R. Civ. P.

12(b)(6), that Plaintiffs' Complaint, in its entirety, be dismissed with prejudice.

II.    **STATEMENT OF FACTS**

A.    **Cash Balance Pension Plans**

As the Plan at issue is a cash balance plan -- a hybrid of more traditional pension

plan designs -- some brief background as to the nature of cash balance plans may assist the

Court's understanding the allegations set forth in the Complaint.

ERISA recognizes and regulates two distinct types of pension plans:  defined

benefit plans and individual account plans, also known as defined contribution plans.  See

---

[1] The United States Supreme Court has made clear that, under ERISA, employers are "generally free . . . for
any reason at any time, to adopt, modify or terminate [their] plans."  Inter-Modal Rail Employees Ass'n v. Atchison,
Topeka & Santa Fe Ry., 520 U.S. 510, 515 (1997).  See also Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996)
("Nothing in ERISA requires employers to establish employee benefits plans.  Nor does ERISA mandate what kind
of benefits employers must provide if they choose to have such a plan.").

ERISA §§ 3(34) and (35), 29 U.S.C. §§ 1002(34) and (35); A. McGrath, <u>Pension Law:  Cash

Balance Pension Plans Are Not Inherently Age Discriminatory:  Cooper v. IBM Defies A Strong

History Of Support For The Cash Balance Design</u>, 57 Okla. L. Rev. 429, 431 (2004).  A defined

benefit plan provides employees a guaranteed benefit at retirement, expressed as an annuity,

regardless of the investment performance of the plan.  McGrath, <u>supra</u>, at 431-432.  For example,

a plan that guarantees a fixed income based on years of service and average compensation is a

defined benefit plan.  Defined benefit plans are partially insured by the federal Pension Benefit

Guaranty Corporation ("PBGC").  <u>Id.</u>

          In contrast, a defined contribution plan does not guarantee a specified benefit

level, but rather only specifies that an employer will make a fixed contribution each year to the

plan on behalf of each plan participant, which is allocated to a separate account for each

participant.  <u>See</u> ERISA § 3(34), 29 U.S.C. § 1002(34); McGrath, <u>supra</u>, at 432-433.  Each

participant's retirement benefits will be determined by the plan's investment performance; the

benefit is simply the participant's current account balance.  McGrath, <u>supra</u>, at 432-433.  The

most familiar example of a defined contribution plan is a 401(k) plan.  In a defined contribution

plan, the interest rate is not guaranteed, and the contribution is not protected against investment

loss.  <u>See</u> ERISA § 3(34), 29 U.S.C. § 1002(34).

          A cash balance plan resembles a defined contribution plan, but with the employer

(and the PBGC) guaranteeing the principal and the annual investment return.  McGrath, <u>supra</u>, at

434-435.  A cash balance plan provides an annual "contribution" equal to a certain percentage of

pay each year.  <u>Id.</u>  This annual credit is added each year to a hypothetical account balance, to

which is further added an annual interest credit.  <u>Id.</u>  Because the hypothetical account balance is

guaranteed without regard to the actual investment performance of the trust fund, cash balance

plans are defined benefit plans. See ERISA § 3(35), 29 U.S.C. § 1002(35). However, like

defined contribution plans, benefits are expressed in terms of easily understood personal account

balances that grow each year with new pay credits and interest credits. Thus, "cash balance

plans provide employees with the best of both worlds: the easy-to-understand benefit formula of

a defined contribution plan and the investment security of a defined benefit plan." McGrath,

supra, at 435.

B.    **Defendants' Cash Balance Plan**

While Defendants administer several pension plan designs within a single pension

plan, the only one at issue in this case is the Conectiv Cash Balance Sub-Plan (the "Plan"). D.I.

No. 1, Complaint (hereinafter "Compl."), ¶¶ 1, 10. The Plan was adopted and effective in its

current form as a cash balance plan on January 1, 1999. Compl., ¶ 21. Plaintiffs do not allege

that Defendants have amended the Plan in any material respect since January 1, 1999, and all of

their claims are based on features of the Plan in effect as of that date and continuing to the

present.

Under the Plan, each participant accrues benefits each year in the form of pay

credits and interest credits added to his or her hypothetical account balance. Compl., ¶¶ 24-26.

The pay credits are determined as follows:

| Participant's Age | Pay Credit Rate |
|---|---|
| Under 30 | 5% |
| 30-34 | 6% |
| 35-39 | 7% |
| 40-44 | 8% |
| 45-49 | 9% |
| 50 and over | 10% |

Compl., ¶ 25. For example, "[u]nder this formula, an employee who reached age forty in 1999

with an annual salary of $55,000 would receive a Pay Credit of $4,400 [for that year], which

equals her salary of $55,000 multiplied by the 8% rate applicable for participants age forty to forty-four." Compl., ¶ 25. Each year, new Pay Credits are added to each participant's hypothetical cash balance account, so that the account's value increases every year of employment. See A-21, Plan § 3.3.1.[2] For example, if the employee in the hypothetical above worked another year at the exact same salary, her hypothetical account balance would rise from $4,400 to $8,800, not counting Interest Credits. Of course, the older the employee becomes, the more Pay Credits are attributed to her account, as the Pay Credit rate increases with age.

To avoid the erosion of the value of the hypothetical account balances by inflation, the Plan provides Interest Credits that are applied to the hypothetical account balances each year. As Plaintiffs explain in their Complaint:

> Interest Credits under the [Plan] are calculated based upon the thirty year Treasury Bond rate as of October 31 of the prior year. At the end of each calendar year, an Interest Credit is made to the [employee's hypothetical] account by multiplying the opening account balance as of the beginning of the year by the applicable thirty year treasury rate. Under this formula, an employee who had a plan account balance of $5,000 as of January 1, 2000 would receive an interest credit to [his] account as of December 31, 2000 in the amount of $300, which represents the $5,000 account balance as of the commencement of the year multiplied by the thirty year treasury rate as of October 31, 1999, which was 6%.

Compl., ¶ 26.

Finally, on top of Pay Credits and Interest Credits, there are two additional benefits for Plan participants, like each Plaintiff in this case, who had participated in Defendant's pre-1999, non-cash balance versions of the Plan. First, when Defendants amended the Plan on January 1, 1999 to calculate benefits under the current cash balance formula, "the Plan's actuary calculated an Initial Cash Balance [account] under the Plan by converting the benefits that

---

[2] A copy of the Plan, which Plaintiffs failed to attach to the Complaint, is attached hereto as A-1 to A-35.

[existing employees] earned under the prior Plan [formula] to an equivalent lump sum opening balance." Compl., ¶ 23. Second, the Plan also provides special, additional Transition Credits to those employees based on the following formula:

| Participant's Years of Service as of Effective Date (January 1, 1999) | Transition Crediting Rate |
|---|---|
| Less than 10 years | 0% |
| 10-11 years | 1% |
| 12-15 years | 2% |
| 16-19 years | 3% |
| 20 or more years | 4% |

Compl., ¶ 28. "Under this formula, an employee with twelve years of service under a predecessor plan [formula] who earned $55,000 during 1999 would receive a Transition Credit of $1,100, determined by multiplying [his] salary of $55,000 by the 2% Transition Credit rate applicable to employees who had twelve to fifteen years of service as of January 1, 1999." Id. This hypothetical employee will continue to receive the 2% per year Transition Credit until he surpasses thirty-five total years of service. See A-23, Plan § 3.5.2.

## C.    Notices Provided To Plaintiffs Of The Plan Amendment Establishing The Cash Balance Formula

The amendment to the Plan establishing the cash balance formula became effective on January 1, 1999. Compl., ¶ 1. Realizing that employees may be unfamiliar with cash balance plan designs, Defendants provided a series of notices to affected plan participants, including Plaintiffs. In Spring 1998, Defendants issued a disclosure to Plan participants that explained how the cash balance formula works and when it would be effective. Compl., ¶¶ 30-33. Defendants sent a follow-up letter about the new cash balance design in December 1998 that answered certain frequently asked questions and that "provided participants with tables that would allow them to generate a rough initial estimate of what their opening balance would be." Compl., ¶ 34.

The first account statements under the cash balance design were issued to Plan participants at the end of June 1999. Compl., ¶ 35. Anticipating that many participants would have questions about their statements and the cash balance formula generally, Defendants conducted a series of informational meetings between July 12, 1999 and July 29, 1999 to help employees understand their benefits under the cash balance formula. Compl., ¶ 35.

### D.    Plaintiffs' Complaint

Plaintiffs are each long-term employees of Defendant Conectiv or its predecessors, having continuously worked for Conectiv or its predecessors since at least 1987. Compl., ¶¶ 4-6. Plaintiffs were employees as of the January 1, 1999 conversion to the Plan's cash balance formula, and thus benefit from Transition Credits. Compl., ¶¶ 4-6. Furthermore, as each Plaintiff is now over fifty years old, Plaintiffs enjoy the maximum Pay Credit rate. Compl., ¶¶ 4-6.

Plaintiffs devote one paragraph of their Complaint to explaining how they have allegedly been harmed. That paragraph provides, in full:

> Because the conversion of the account balance to an annuity commencing at age sixty-five is sensitive to fluctuations in the thirty year treasury rate, participants can actually suffer reductions in their accrued benefits under the [Plan]. For example, in 1999 and 2000 Plaintiff Charles' accrued benefit increased. Thereafter, it subsequently decreased in three consecutive years: in 2001, his accrued benefit decreased by 4.006%; in 2002, it decreased by 6.932%; in 2003, it decreased by 2.774%. This represented a total decrease in his annual annuity benefit of over $4,000 between the close of 2000 and the close of 2003. In 2004, Plaintiff Charles' accrued benefit increased by 8.43%, but was still significantly lower than the amount of his accrued benefit as of the end of calendar year 2000. In terms of the annual amount of annuity benefit, Plaintiff Charles' accrued benefit as of December 31, 2004 was over $1,500 less than it had been at the end of 2000. Plaintiffs Ward and Fink similarly suffered negative accruals.

Compl., ¶ 41.

Plaintiffs allege four causes of action based on their supposed injury from changing interest rates. In Count I, they contend that the Plan violates ERISA § 204(b)(1), which prohibits "backloading" of benefits, i.e., requiring a disproportionately large share of retirement benefits to accrue in later years as opposed to earlier years. Compl., ¶¶ 42-45. Plaintiffs provide no explanation as to how the Plan violates the backloading provision. In Counts II and III, Plaintiffs contend that their alleged benefit declines admittedly caused by interest rate fluctuations are "on account of" their age, allegedly in violation of ERISA §§ 204(b)(1)(G) and (H). Compl., ¶¶ 46-50. In Count IV, Plaintiffs allege that they did not receive proper notice in 1999 of the amendment to the Plan establishing the cash balance formula. Compl., ¶¶ 51-53.

## III.   SUMMARY OF ARGUMENT

1.    All of Plaintiffs' claims are barred by the applicable three-year statute of limitations. Plaintiffs' claims accrued at the time that they first knew or should have known of their alleged injury, which, in this case, is that their benefit accruals would vary with changing interest rates. Plaintiffs either knew or should have known of this supposed "injury" by either 1999, when the Plan was amended to calculate benefits under a cash balance formula, or 2001, when their "accrued benefits" allegedly began to decline. Either way, their claims are time barred.

2.    Even if their claims were not time barred, they fail on the merits. Count II of the Complaint alleges that Plaintiffs' accrued benefits were reduced on account of their age and years of service in violation of ERISA § 204(b)(1)(G). However, despite their reference to Section 204(b)(1)(G), Plaintiffs admit that, if their accrued benefits were reduced at all, any such reduction was on account of interest rates applicable to all plan participants, and not on account of age. This age discrimination claim accordingly fails.

3.    Count III of the Complaint alleges that Defendants violated ERISA § 204(b)(1)(H) by reducing their "rate of benefit accrual" based on their ages. This claim likewise fails for numerous reasons:

a.    As ERISA § 204(b)(1)(H) was intended only to protect benefit accruals past age 65, Plaintiffs (admittedly all younger than age 65) lack standing to sue under this provision;

b.    To the extent that Plaintiffs are relying on a theory that cash balance plans are inherently age discriminatory, that argument fails as contrary to the text of ERISA, pertinent legislative history, and regulatory guidance.

4.    Count I of the Complaint alleges that the Plan violates the anti-backloading rules of ERISA § 204(b)(1), i.e., it impermissibly requires a disproportionate amount of benefits to be accrued in later years of service. Plaintiffs fail to include any allegation in their Complaint explaining how the Plan is improperly backloaded. The Plan satisfies statutory and regulatory anti-backloading requirements. Indeed, Plaintiffs' backloading claim cannot be squared with their unsubstantiated claims that the Plan is age discriminatory, i.e., that benefits accrue at a higher level in early years of service. This would be frontloading, not backloading.

5.    Count IV of the Complaint alleges that Defendants violated ERISA § 204(h) by allegedly failing to provide the required notice of the cash balance formula amendment to the Plan. However, Plaintiffs admit that Defendants provided, and that they received, notice. This notice complied fully with the ERISA requirements in effect at that time.

## IV.    ARGUMENT

### A.    Standard Of Review

Pursuant to Fed. R. Civ. P. 12(b)(6), a court should dismiss a claim if it is clear

that the plaintiff can prove no set of facts consistent with the allegations in the complaint that

would entitle him or her to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In

deciding a motion to dismiss, a district court accepts well-pleaded factual averments (as well as

inferences reasonably drawn from those averments) as true, and construes the complaint in a

light most favorable to the plaintiff.  Blaw Knox Ret. Plan v. White Consol. Indus., 998 F.2d

1185, 1188-89 (3d Cir. 1993).  At the same time, however, a court need not credit a "complaint's

'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower

Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  In ruling on a Rule 12(b)(6) motion, courts

can and should reject "unsupported conclusions," "unwarranted references," "footless

conclusions of law," and "sweeping legal conclusions in the form of actual allegations."  Bright

v. West Moreland County, 380 F.3d 729, 735 (3d Cir. 2004).  Similarly, on a motion to dismiss

under Rule 12(b)(6), a court is not required to make or accept unwarranted factual inferences.  In

re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1322-23 (3d Cir. 2002).

When deciding a motion to dismiss, courts generally consider the allegations

contained in the complaint, exhibits attached to the complaint, and matters of public record.

Pension Ben. Guar. Corp. v. White Counsel Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

However, a court may consider "document[s] integral to or explicitly relied upon in the

complaint" without converting a motion to dismiss to a motion for summary judgment.  In re

Rockefeller Ctr. Prop, Inc. Sec. Litig. 184 F.3d 280, 287 (3d Cir. 1999); see also In re Burlington

Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  In an ERISA action, a court may

consider ERISA plan documents in analyzing a motion to dismiss where Plaintiff's claims

-9-

reference those documents and base their claims on them. <u>Miller v. Fortis Benefits Ins. Co.</u>, 363 F. Supp.2d 700, 704 n.4 (D.N.J. 2005) (citing <u>Pension Ben. Guar. Corp.</u>, 998 F.2d at 1196)).

## B.    Plaintiffs' Claims Are Barred By The Statute Of Limitations

Regardless of the dubious merits of their claims, Plaintiffs' Complaint should be dismissed as barred by the applicable three-year statute of limitations. In claims for ERISA violations, other than for breach of fiduciary duty (where ERISA provides a statute of limitations), the Third Circuit has held "that the 'limitations period applicable to the forum state claim most analogous to the ERISA claim at hand' is to be borrowed and applied." <u>Romero v. Allstate Corp.</u>, 404 F.3d 212, 220 (3d Cir. 2005). As Plaintiffs' claims under ERISA § 204 are claims for violations of statutory prohibitions, the most analogous Delaware statute of limitations is the three-year period in 10 Del. C. § 8106 for an "action based on a statute." <u>See</u> <u>E.I. DuPont de Nemours & Co. v. Millenium Chemicals, Inc.</u>, C.A. No. 97-237-SLR, 1999 U.S. Dist. LEXIS 12447 at *12 (D. Del. Aug. 2, 1999) (borrowing Delaware three-year statute for statutory claims for federal Lanham Act claims); <u>Creamer v. Gen'l Teamsters Local Union 326</u>, 579 F. Supp. 1284, 1290 (D. Del. 1984) ("Section 8106 is also the appropriate provision for actions based upon a statute, as is the case for RICO claims").

The Third Circuit has held that a statutory claim under ERISA accrues for purposes of the statute of limitations "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." <u>Romero</u>, 404 F.3d at 222. When the claims allege that a feature of the plan at issue is illegal under ERISA, the statute of limitations begins to run once there has been a "clear repudiation" of the alleged rights in question. <u>Id.</u> at 223-224. Thus, "when an ERISA plan is amended but the fact that the amendment actually affects a particular employee or group of employees cannot be known until some later event, the cause of action of the employee will not accrue until such time as the

-10-

employee knew or should have known that the amendment has brought about a clear repudiation of certain rights that the employee believed he or she had under the plan." Id. at 223.

Here, each claim asserted is barred by the three-year statute of limitations. Plaintiffs allege four causes of action: that the Plan is impermissibly backloaded (Count I); that the Plan has reduced their accrued benefits on account of age (Count II); that the Plan has reduced their rate of benefit accrual on account of their ages (Count III); and that Defendants failed to provide statutorily required notice in 1999 of the Plan amendment creating the cash balance design (Count IV). While these allegations appear superficially distinct, they all boil down to the same accrual date for the statute of limitations: January 1, 1999, the date of the Plan amendment. See Compl., ¶ 1.

The Third Circuit in Romero instructed district courts to begin their analysis by pinpointing the "injury that forms the basis for the claim" and determining when Plaintiff knew, or should have known, of such injury. Romero, 404 F.3d at 222. As best Defendants can discern from Plaintiffs' wholly conclusory Complaint, their claims are based on a theory that the Plan, by its very design, is illegal, i.e., that the terms of the Plan, on their face, clearly repudiate Plaintiffs' rights.

Because Plaintiffs claim that the Plan is inherently unlawful, their claims accrued on the Plan amendment date, January 1, 1999. As the Third Circuit has explained, "[u]se of the federal discovery rule to discern the date of accrual does not necessarily prevent the date of amendment from serving as the accrual date . . . as there may be circumstances under which benefits are clearly repudiated as of that date." Romero, 404 F.3d at 224. Plaintiffs concede that they received notice of the Plan's new cash balance design months in advance of the effective date. See Compl., ¶¶ 3-35. They were thus well aware of the terms of the Plan, and

consequently any alleged repudiation of their rights inherent in that Plan's design, by January 1, 1999.

Moreover, the only allegations resembling any actual harm to Plaintiffs further confirm the January 1, 1999 accrual date. Plaintiffs allege that because "the conversion of the account balance to an annuity commencing at age sixty-five is sensitive to fluctuations in the thirty year treasury rate," their accrued benefits declined under the cash balance formula in 2001, 2002, and 2003. Compl., ¶ 41. This "injury," even if actionable (which it is not, as demonstrated below), is apparent from the face of the Plan. Plaintiffs admit that the Plan expressly provides that its benefit crediting rates will vary with the yield on treasury bonds. See Compl., ¶ 26. Thus, it is clear that Plaintiffs' cause of action accrued on the date of the plan amendment in 1999. See Romero, 404 F.3d at 224.

As their claims accrued on January 1, 1999, the three-year limitations period expired on January 1, 2002. Plaintiffs, however, did not file this action until September 26, 2005 – over **three years** too late. The Complaint should therefore be dismissed as time barred. See Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (although the statute of limitations constitutes an affirmative defense to an action, it may be raised in a motion to dismiss under 12(b)(6) when "the time alleged *in the statement of a claim* shows that the cause has not been brought within the statute of limitations") (emphasis in original) (citation omitted).[3]

---

[3] In the alternative, Plaintiffs admit that their claims accrued no later than June 30, 2002. Plaintiffs admit that the first time they were allegedly "injured" was in 2001. See Compl., ¶ 41. Plaintiffs further admit that they receive account statements for each year by June 30 of the succeeding year. Compl., ¶ 35. Hence, Plaintiffs learned of their supposed injury by June 30, 2002 – over three years before they filed this action on September 26, 2005. The Complaint accordingly should be dismissed. See Bethel, supra.

**C.      Count II Fails To State A Claim – No Reduction of Accrued Benefit Based on Age or Service.**

Even if not time barred (which it is), Count II fails as a matter of law.  In Count II of their Complaint, Plaintiffs allege that the Plan violates ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G), which provides that the Plan is not lawful "if the participant's accrued benefit is reduced on account of any increase in his age or service."  According to Plaintiffs, the Plan violates this statutory section because it "permits the accrued benefit of a participant to be reduced in subsequent years."  Compl., ¶ 47.  They are wrong, and their averments fail to state a claim under Section 204(b)(1)(G).  Indeed, Plaintiffs admit that, if any reduction of accrued benefits occurred, such reductions were caused by interest rate fluctuations, not age or service.  See Compl., ¶ 41.  Section 204(b)(1)(G) does not, as Plaintiffs' wording implies, prohibit *any* reduction in accrued benefits "in subsequent years."  It prohibits only such reductions "*on account of any increase in his age or service.*"  ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G) (emphasis added).

Here, Plaintiffs do not allege that their accrued benefits were reduced "*on account of*" their age or years of service.  Rather, they admit that, to the extent their accrued benefits were reduced, such reductions were because of fluctuating interest rates:  Plaintiffs aver that their accrued benefits were reduced "because the conversion to an annuity commencing at age sixty-five is sensitive to fluctuations in the thirty year treasury rate."  Compl., ¶ 41.[4]  Thus, by Plaintiffs' own account, there is no causal connection between any alleged reduction in accrued benefits and any increase in age or service.  Nowhere do Plaintiffs even allege that

---

[4] It is apparent from the Complaint that Plaintiffs' cash balances increase each year – it is the conversion to an age 65-annuity that varies with interest rate fluctuations.  Accordingly, if interest rates begin to rise again, Plaintiffs' age-65 annuities will increase rapidly, despite their ever-increasing age.

relevant interest rates were anything but uniform for all Plan participants regardless of age or years of service. Their claim accordingly fails. See DiCioccio v. Duquesne Light Co., 911 F. Supp. 880, 904 (W.D. Pa. 1995) (rejecting 204(b)(1)(G) claim because "the participants' benefit calculations with regard to years of service are uniform and the Supplemental Plan does not require separate calculations once a participant has worked for a specific number of years or has reached a specific age").

### D.    Count III Fails To State A Claim – No Reduction In The Rate Of Benefit Accrual Because Of The Attainment Of Any Age

In Count III, Plaintiffs cryptically allege that the Plan violates ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H), which prohibits reductions in the "rate of benefit accrual because of the attainment of any age." Compl., ¶ 50. This claim, even if timely (which it is not), also fails to state a claim as a matter of law. First, Plaintiffs lack standing to sue under Section 204(b)(1)(H). Second, Plaintiffs do not allege (and cannot allege) that the rate at which their benefit accrued was ever reduced "*because of the attainment of*" some particular age. Finally, to the extent that Plaintiffs argue that all cash balance plans, by their very nature, are per se illegal under ERISA § 204(b)(1)(H), any such argument fails as a matter of law.

#### 1.    Plaintiffs Lack Standing Under Section 204(b)(1)(H)

Plaintiffs' purported claim that the Plan violates ERISA § 204(b)(1)(H) fails for lack of standing. Numerous courts have held that ERISA § 204(b)(1)(H) only protects plan participants over the age of 65. See Tootle v. ARINC, 222 F.R.D. 88, 93 (D. Md. 2003) ("this aspect of ERISA is not intended to protect workers until after they have attained normal retirement age"); Engers v. AT & T Corp., Civ. A. No. 98-3660, 2001 U.S. Dist. LEXIS 25889 at *10-13 (D.N.J. June 6, 2001) ("Congress intended [this provision] to apply only to those employees who continue to work after the normal retirement age of sixty-five"); Eaton v. Onan

Corp., 117 F. Supp. 2d 812, 826-829 (S.D. Ind. 2000) (same). As Plaintiffs concede that they are each younger than age 65, see Compl., ¶¶ 4-6, their claim under section 204(b)(1)(H) fails for lack of standing. See Tootle, 222 F.R.D. at 93 (dismissing claim of under 65 plaintiffs under ERISA § 204(b)(1)(H)); Engers, 2001 U.S. Dist. LEXIS 25889 at *12-13 (same).

ERISA § 204(b)(1)(H), Internal Revenue Code ("IRC") § 411(b)(1)(H), and Age Discrimination in Employment Act ("ADEA") § 4(i)(1)(A) were all enacted as part of the Omnibus Budget Reconciliation Act of 1986 ("OBRA"). Engers, 2001 U.S. Dist. LEXIS 25889 at *8. As explained in the OBRA Conference Report, these three statutory amendments were added to the law to address the uncertain status of whether a defined benefit plan could cease or reduce benefit accrual rates for employees over (or beyond) the age of 65, or stated differently, normal retirement age. Prior to this 1986 amendment, the Department of Labor and the Equal Employment Opportunity Commission had expressed contradictory views on the subject.[5] See OBRA Conference Report, 1986 U.S.C.C.A.N. 3868, 4023-4024. By amending all three statutes simultaneously, Congress intended the three statutory provisions to be interpreted in a consistent manner. Id.

---

[5] The OBRA Conference Report explains the disagreement between the agencies:

When both ADEA and ERISA were enacted, authority for the administration and enforcement of both laws was the responsibility of the Secretary of Labor. Presidential Reorganization Plan No. 1 of 1978 transferred the authority for ADEA from the Secretary of Labor to the Equal Employment Opportunity Commission (EEOC), effective July 1, 1979. Prior to that date, the Secretary of Labor issued an amendment to the Interpretative Bulletin on Employee Benefit Plans, 29 C.F.R. 860.120(f)(2)(ii) (relating to the application of sec. 4(f)(2) of ADEA to employee benefit plans covered under ERISA), which allowed employers to cease benefit accruals and allocations to an employee's account with respect to employees working beyond the normal retirement age [age 65] under the plan. On June 24, 1984, the EEOC announced that it intended to rescind the Department of Labor's interpretation and require employers to continue benefit accruals and allocations [beyond age 65, or stated differently, beyond normal retirement age]. In March 1985, the EEOC unanimously approved proposed regulations requiring such accruals and allocations. That proposed regulation has not been adopted or published in the Federal Register.

OBRA Conference Report, 1986 U.S.C.C.A.N. 3868, 4023.

In OBRA, Congress put the dispute to rest and clarified that employers could not

cease or reduce benefit accrual for employees over the age of 65, including the following

amendment to ERISA § 204:

> SEC. 9202. *BENEFIT ACCRUAL BEYOND NORMAL
> RETIREMENT AGE.*[6]
>
> (a) ERISA AMENDMENTS. --
>
> (2) DEFINED BENEFIT PLANS. -- Section 204(b)(1) of such Act
> is amended by adding at the end thereof the following new
> subparagraph:
>
> "(H)(i) Notwithstanding the preceding subparagraphs, a defined
> benefit plan shall be treated as not satisfying the requirements of
> this paragraph if, under the plan, an employee's benefit accrual is
> ceased, or the rate of an employee's benefit accrual is reduced,
> because of the attainment of any age.

Pub. L. 99-509, H.R. 5300 (Oct. 21, 1986) (emphasis added). As Congress' words make clear,

this amendment to ERISA applies only to benefit accruals "beyond [the] normal retirement age"

of 65.

A court in this circuit has already recognized this clear statutory language and

held that ERISA § 204(b)(1)(H) only regulates benefit accruals "*beyond normal retirement

age,*" i.e., past age 65. See Engers, 2001 U.S. Dist. LEXIS 25889 at *9 n.1 (statutory headings

show that ERISA § 204(b)(1)(H) only applies to benefit accruals past age 65); see also Eaton,

117 F. Supp. 2d at 826 ("Those headings referring to accrual 'beyond normal retirement age'

certainly seem to indicate that the provisions were not intended to apply to employees who have

not yet reached normal retirement age"); see generally Almendarez-Torres v. United States, 523

---

[6] "Normal retirement age" is a term of art in ERISA, defined by Congress to mean "the time a plan participant attains normal retirement age under the plan, or (B) the later of--(i) the time a plan participant attains age 65, or (ii) the 5th anniversary of the time a plan participant commenced participation in the plan." 29 U.S.C. § 1002(24).

U.S. 224, 234 (1998) ("We also note that 'the title of a statute and the heading of a section' are 'tools available for the resolution of doubt' about the meaning of a statute" (citation omitted)); United States v. Cooper, 396 F.3d 308, 313 (3d Cir. 2005) (construing meaning of statute based on heading).

Lest there be any doubt as to Congress' intent to limit the class of beneficiaries for ERISA § 204(b)(1)(H) to those over age 65, the OBRA Conference Report states that "the rules preventing the reduction or cessation of benefit accruals on account of the attainment of age *are not intended to apply in cases in which a plan satisfies the normal benefit accrual requirements for employees who have not attained normal retirement age*." OBRA Conference Report, 1986 U.S.C.C.A.N. 3868, 4024 (emphasis added). Similarly, the statements of sponsoring legislators for ERISA § 204(b)(1)(H) are unequivocal that the statute's purpose was to protect participants over age 65.[7] See generally Eaton, 117 F. Supp. 2d at 828-829 (collecting and analyzing sponsors' statements).

In sum, ERISA § 204(b)(1)(H) only protects and applies to employees over age 65 from having their benefit accruals stopped or reduced on account of their age. Plaintiffs admit that they are each younger than 65. Compl., ¶¶ 4-6. Thus, Plaintiffs' ERISA Section 204(b)(1)(H) claim should be dismissed for lack of standing. See Tootle, 222 F.R.D. at 93 (dismissing claim of under 65 plaintiffs under ERISA § 204(b)(1)(H)); Engers, 2001 U.S. Dist. LEXIS 25889 at *12-13 (same).

---

[7] For example, then-Representative Jeffords stated that "the bill before us is also a pension bill which extends valuable protections to older Americans *who work beyond normal retirement age*." Eaton, 117 F. Supp. 2d at 828 (emphasis in original), quoting 132 Cong. Rec. 32,963 (Oct. 17, 1986). Similarly, Representative Roukema stated that OBRA "amends current law to preclude the 'attainment of any age' as a reason for eliminating or reducing benefit accruals *after normal retirement age*." Id. (emphasis added), quoting 132 Cong. Rec. 32,975 (Oct. 17, 1986).

2.    **Plaintiffs' Alleged Declining Rates of Accrual Are Not Because of Age**

Even if Plaintiffs had standing and were not time barred, their claim under ERISA § 204(b)(1)(H) fails on the merits. Section 204(b)(1)(H) provides that a defined benefit plan does not satisfy the requirements of ERISA "if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, ***because of the attainment of any age.***" 29 U.S.C. § 1054(b)(1)(H) (emphasis added). Thus, in order to state a claim, Plaintiffs must allege (1) that their rate of benefit accrual is reduced or stopped and (2) that such reduction or cessation is caused by each Plaintiff's "***attainment***" of a particular age. As with ERISA § 204(b)(1)(G), discussed above, a claim under Section 204(b)(1)(H) requires that the alleged harm – reduction in the "rate of benefit accrual" – be causally linked to Plaintiffs' "attainment" of an age.

Plaintiffs' claim under Section 204(b)(1)(H) fails for the same reason as their claim under Section 204(b)(1)(G): there is no causal link between the alleged harm and age. Plaintiffs concede that their decreases in benefits were ***not*** because of their "attainment" of some age, but rather derive from "fluctuations in the thirty year treasury rate," which affected all plan participants, regardless of age. Compl., ¶ 41. As there is no causal link between the alleged decreases and the "attainment of any age," Plaintiffs' claim fails. See Lunn v. Montgomery Ward & Co., Inc., 166 F.3d 880, 883 (7th Cir. 1999) (rejecting claim under Section 204(b)(1)(H) because plaintiff "was treated the same as all other workers" in calculating benefit accruals); cf. DiCioccio, 911 F. Supp. at 904 (rejecting age discrimination claim under ERISA § 204(b)(1)(G) claim because "the participants' benefit calculations with regard to years of service are uniform and the Supplemental Plan does not require separate calculations once a participant has worked for a specific number of years or has reached a specific age").

3.    **The Plan Is Not Inherently Age Discriminatory**

While not pled clearly, Defendants believe that the vague allegation in Paragraph 50 of the Complaint that "the rate at which a participant accrues benefits under the plan is reduced as the participant's age increases" may refer to an oft-rejected and indeed incorrect theory that cash balance pension plans, by their very nature, somehow violate ERISA § 204(b)(1)(H). The court in Tootle v. ARINC, Inc., 222 F.R.D. 88 (D. Md. 2004), rejected that theory of liability, but explained it as follows:

> A defined benefit plan violates ERISA if "an employee's benefit accrual is ceased or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." Cash balance plans currently are regulated in the same manner as defined benefit plans under ERISA, and therefore are subject to this age discrimination provision. The theory that cash balance plans violate this provision is based on a series of premises. For defined benefit plans, ERISA directs that accrued benefits are calculated in terms of "an annual benefit commencing at normal retirement age," in other words in terms of a traditional annuity beginning at age 65. In order to apply this definition to a cash balance plan, the current hypothetical balance in an employee's account must be translated into the equivalent age-65 annuity that those sums could purchase.

> The claim of age discrimination arises because money contributed to a younger employee will be worth more (when expressed as an annuity starting at age 65) than the same amount of money contributed to an older employee, because the contribution to the younger employee will have more years to accrue interest before normal retirement age. Stated another way, if any employer contributes the same amount to an employee's cash balance account every year, the value of those benefits (when expressed as an annuity starting at age 65) decreases with every passing year. This inevitably results in a declining benefit accrual rate as an employee ages, in apparent violation of ERISA. In other words, all cash balance plans [allegedly] per se violate the ERISA age discrimination provision, by virtue of their design.

Id. at 93 (citations and footnotes omitted).

As a threshold matter, Plaintiffs' factual allegations flatly contradict this per se theory. The per se theory posits that every year an employee ages, his or her rate of benefit accrual, measured as the value of an age 65 annuity, decreases; or put differently, the rate of benefit accrual for an employee can never increase as he or she ages. See Eaton, 117 F. Supp. 2d at 823-824. Here, though, Plaintiffs admit that their accrued benefits under the cash balance plan *increased* as they got older in certain years.   Compl., ¶ 41.

Even assuming that Plaintiffs' allegations did not render the per se theory moot, that theory cannot be the basis of a viable claim because it is, as a matter of law, wrong. The courts repeatedly have rejected this theory. See Tootle, 222 F.R.D. at 93-94 (rejecting per se theory); Eaton v. Onan Corp., 117 F. Supp. 2d 812, 830-834 (S.D. Ind. 2000) (same); see also Order Granting Motion to Dismiss Hurlic v. Southern California Gas Co., Case No. CV05-5027 (C.D. Cal. Oct. 18, 2005);[8] Engers, 2001 U.S. Dist. LEXIS 25889 at *7-13. As discussed below, the per se theory is based on misconstruction of the statutory language and should be rejected.

### a.    Section 204(b)(1)(H) Permits Cash Balance Plans

The theory that cash balance plans are per se illegal under ERISA § 204(b)(1)(H) relies entirely on the incorrect assumption that Congress must have meant something other than the explicit words it chose to use. Specifically, this theory wrongly posits that the phrase "rate of an employee's benefit accrual" should not mean the rate at which a participant's "benefit" is accruing, but rather, should mean the rate at which a participant's "accrued benefit,"a defined term under ERISA, changes. See generally Tootle, 222 F.R.D. at 93 (describing theory). This statutory construction is simply untenable, ignores the plain meaning of the statutory text, and

---

[8] A copy of this Order is attached as A-73 to A-75. While the Order does not state that it rejected the per se theory, the briefs make clear that Plaintiffs' Complaint in Hurlic was based on that theory. To provide context for the Order in Hurlic, Defendants have attached as A-36 to A-72 the brief in support of the motion to dismiss filed in that matter.

improperly seeks to rewrite the statute using a defined term ("accrued benefit") Congress intentionally chose not to use. See In re Gulf Pension Litigation, 764 F. Supp. 1149, 1176-1177 (S.D. Tex. 1991) (refusing to equate the terms "accrued benefit," "benefits accrued," and "future benefit accruals" in ERISA and implementing regulations; use of different terms was not a "drafting oversight"), aff'd 36 F.3d 1308 (5th Cir. 1994).

"It is well-settled that the first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," because "where the statute is clear . . . the text of the statute is the end of the matter." United States v. Cooper, 396 F.3d 308, 310 (3d Cir. 2005) (citations and internal quotations omitted). The terms of a statute, unless otherwise defined, are accorded their "ordinary or natural meaning." F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994). Where terms are specifically defined, they are given their defined meaning, as Congress has made its intent clear as to their meaning. It is, of course, improper to use the definition of a specifically defined statutory term to construe the meaning of a different, and undefined, term. See generally Russello v. United States, 464 U.S. 16, 23 (1983) ("where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (citations omitted).

ERISA § 204(b)(1)(H) forbids "an employee's benefit accrual" from being "ceased" and forbids "the rate of an employee's benefit accrual" from being "reduced" "because of the attainment of any age." In ordinary usage, the term "benefit" means, inter alia, "a cash payment or service provided for under an annuity, pension plan, or insurance policy." Webster's Third New Int'l Dictionary 204 (3d ed. 1986). "Accrual" means "the action or process of

-21-

accruing" or "something that accrues," "esp. an amount of money that periodically accumulates for a specific item (as taxes, interest, or anticipated expenses)." Id. at 13. Finally, the phrase "because of" means "by reason of" or "on account of." Id. at 194.

Applying the ordinary language meaning of its text, ERISA § 204(b)(1)(H) therefore prohibits a plan from reducing the rate at which the "cash payment or service" promised "periodically accumulates" "by reason of" the attainment of any age. The Plan in this case does not run afoul of this prohibition. The benefit promised each year is the addition of Pay Credits and Interest Credits to a hypothetical account balance. See A-4, Plan § 1.1.1 (defining "Accrued Benefit" as the "Participant's Payable Cash Balance"); A-9, § 1.40 (defining "Payable Cash Balance" as "the lesser of (a) the Participant's Cash Balance Account at the determination date or (b) 650% of Final Average Compensation as of such date").

The rate of the "periodic accumulation" of Pay Credits and Interest Credits is never reduced "by reason of" the "attainment of any age." The rate of Interest Credits applied each year is uniform for all plan participants, regardless of age, and only varies based on changing treasury bond yields. See A-8 and A-22 to A-23, Plan §§ 1.30 and 3.4. The Pay Credit rate actually *increases* as an employee ages. See A-21, Plan § 3.3.2. Defendants' Plan therefore fully complies with the plain, unambiguous text of ERISA § 204(b)(1)(H). Plaintiffs' claim under that provision should be dismissed.

### b.    Congress Did Not Intend Cash Balance Plans to Be Per Se Illegal

Moreover, even if ERISA § 204(b)(1)(H) were ambiguous (which Defendants do not believe to be the case), the legislative history of the statute clearly shows that Congress never intended the phrase "rate of an employee's benefit accrual" to be defined solely in terms of an "accrued benefit." It is well-settled that "[w]hen the language of a statute is ambiguous, [courts]

look to its legislative history to deduce its purpose." <u>United States v. Hodge</u>, 321 F.3d 429, 437

(3d Cir. 2003); <u>accord</u> <u>Eaton</u>, 117 F. Supp. 2d at 825. As explained above, ERISA

§ 204(b)(1)(H) was enacted as part of the Omnibus Budget Reconciliation Act of 1986

("OBRA"). <u>See</u> Pub. L. 99-509, § 9202. Congress helpfully provided a clue as to what it meant

by the term "rate of benefit accrual" by providing an example of a non-discriminatory, lawful

plan design in the OBRA Conference Report. That example is as follows:

> For example, if a plan provides a benefit of $10 monthly per year
> of service and an employee has 10 years of service at the plan's
> normal retirement age of 65, then the employee is entitled to
> receive a benefit of $100 a month if he or she retires at age 65. . . .
> Pursuant to the conference agreement, the plan is required to
> provide an additional benefit of $10 per month for each year of
> service after age 65 (until the employee has the maximum number
> of years of service for which credit is provided under the plan).
> Thus, at age 66, the retiring employee is entitled to receive a
> benefit of $110 a month, but if the employee is reemployed, the
> $110 may be forfeited under the suspension of benefit rules.
> Similarly, if the employee is to receive a benefit of $120 at age 67
> and the employee is reemployed the amount payable may be
> forfeited for the period of reemployment if the plan contains a
> suspension of benefits provision.

OBRA Conference Report, 1986 U.S.C.C.A.N. 3868, 4026.

> The plan described in this example, though, is clearly illegal if, as the <u>per se</u>

theory posits, the "rate of benefit accrual" must be measured as the value of the "accrued

benefit," or age 65 annuity, earned each year. As the <u>Eaton</u> court explained:

> If plaintiffs' method is applied to this example and the participant's
> benefit accruals are converted to an annuity payable at age 65, the
> participant's rate of benefit accrual measured that way inevitably
> decreases as the employee gets older. The reason for this decrease
> is merely the time value of money: an annuity of $10 per month
> beginning at age 65 is worth more than an annuity of $10 per
> month beginning at age 66. Yet the OBRA 1986 Conference
> Report included this example to describe the ***intended*** effect of
> compliance with the new law. Plaintiffs' interpretation would
> transform that example of compliance into an example of a

> violation.  That is a strong sign that there is a problem with
> plaintiffs' interpretation.

Eaton, 117 F. Supp. 2d at 830 (emphasis in original).[9]  Indeed, cash balance plans, because they

continue to provide for interest and pay credits at the same rate for each year of work past age

65, "fix the problem Congress was trying to solve in the OBRA 1986 provisions."  Id. at 831.

There is further evidence that Congress never intended to adopt the per se theory.

That theory posits age discrimination based on the fact that each year as a worker ages there will

be one less year to earn compound interest before reaching age 65, in other words, that the effect

of compound interest over time is a form of age discrimination.  But Congress expressly

mandated that, for contributory defined benefit plans (i.e., defined benefit plans funded in part by

employee contributions), the employer must credit interest each year to employee contributions –

exactly the same effect created by the annual interest credits in a cash balance plan.  See ERISA

§ 204(c)(2)(B), 29 USC § 1054(c)(2)(B).  Thus, the per se theory requires that subsection

(b)(1)(H) of ERISA § 204 render illegal what is mandated by subsection (c)(2)(B) of ERISA

---

[9] Three commentators have presented the following table to show the results of applying the per se theory
to the OBRA Conference Report's example of a compliant plan:

| Age | Additional Benefit Accrual Each Year | Additional Benefit Accrual Each Year Expressed As Annuity Payable At Age 65 |
|---|---|---|
| 65 | $10.00 | $10.00 |
| 66 | $10.00 | $8.90 |
| 67 | $10.00 | $7.90 |
| 68 | $10.00 | $7.00 |
| 69 | $10.00 | $6.10 |
| 70 | $10.00 | $5.41 |

See R. Shea, M. Francese, and R. Newman, Age Discrimination in Cash Balance Plans:  Another View, 19
Va. Tax Rev. 763, 769 (Spring 2000).

§ 204. This <u>Alice in Wonderland</u> statutory construction should be rejected. <u>See</u> <u>United States v.</u>

<u>Cooper</u>, 396 F.3d 308, 313 (3d Cir. 2005) (statute should be interpreted as coherent whole).

Moreover, the <u>per</u> <u>se</u> theory creates a perverse incentive for employers to ***reduce***

the benefits that they offer. As the <u>Eaton</u> court explained:

> Another consequence of plaintiffs' interpretation tends to
> undermine that interpretation further. Under plaintiffs' method for
> determining a participant's rate of benefit accrual, a cash balance
> plan would fail the age discrimination rules simply because it
> ***guarantees*** interest credits to participants who terminate their
> employment prior to normal retirement age. The Onan Pension
> Plan, like many cash balance pension plans, provides that the
> employer will continue crediting interest to a participant's cash
> balance account after the participant stops working for the
> employer, and will continue to do so until the participant begins
> receiving benefits under the plan. Pension Plan § 3.4(a). Thus, the
> right to receive interest credits is not contingent on the
> participant's continued employment with the employer. Under
> plaintiffs' interpretation of "the rate of benefit accrual," the interest
> credits the participant receives on each pay credit he or she earns
> under the plan are treated as accruing in the same year as the pay
> credit itself, but this is true only because the interest credits are
> guaranteed.
>
> By guaranteeing interest credits, the employer is protecting to
> some extent the value of participants' benefits from being eroded
> by inflation. If interest credits were conditioned on employment, a
> participant would not accrue interest credits in the year of the
> underlying pay credit, but rather year by year as the participant
> continued to work. If the participant chose to stop working and
> therefore ceased earning interest credits, and also chose to wait
> until retirement to begin receiving benefits, the participant would
> face a risk of the value of the benefits decreasing over time
> because of future increases in the cost of living. Adopting
> plaintiffs' proposed statutory interpretation would thus give
> employers a perverse incentive not to guarantee at least some level
> of growth in the value of a pension over time, but to leave such
> credits to its own discretion. That incentive would be completely
> at odds with sound pension policy.

<u>Eaton</u>, 117 F. Supp. 2d at 832.

Contrary to the per se theory, the proper method of measuring the "rate of benefit accrual" in a cash balance plan is to measure the amount of pay and interest credits that are credited to an employee's hypothetical account each year. See Tootle, 222 F.R.D. at 94 ("The more sensible approach is to measure benefit accrual under cash balance plans by examining the rate at which amounts are allocated and the changes over time in an individual's account balance"); Eaton, 117 F. Supp. 2d at 832-833 ("Defendants propose, and the court agrees, that in the case of a cash balance defined benefit plan, the rate of benefit accrual should be defined as the change in the employee's cash balance account from one year to the next"). This is so for at least two important reasons:

First, the example of a lawful plan in the OBRA Report "implies that a participant's rate of benefit accrual under this plan can be measured by looking at the change in the benefit promised under the plan from one year to the next." Eaton, 117 F. Supp. 2d at 833. As Eaton explains:

> As discussed above, the conference report included an example of a . . . plan that provides for an annuity of $10 per month for every year of service. An employee with ten years of service by age 65 is entitled to receive an annuity of $100 per month beginning at age 65. If the employee continued to work one more year, he would be entitled to an annuity of $110 per month. The example implies that a participant's rate of benefit accrual under this plan can be measured by looking at the change in the benefit promised under the plan from one year to the next. The change in the benefit promised each year is $10, regardless of the participant's age. Thus, the Onan plan satisfies the pension age discrimination statutes, assuming they apply to employees below normal retirement age.

Id.

Second, because interest credits under the Plan are pegged to a fluctuating interest rate, there is no certain way to project the value of future interest credits earned each year, much less calculate an age 65 annuity. Id. "It is hard to believe that, for purposes of determining

whether a pension plan discriminates against participants on the basis of age, Congress would have intended to require the use of estimates based on reasonable assumptions when a much more definite method is available – the change in the cash balance in the participant's hypothetical account." Id.[10]

Measured properly, the Plan in this case does not reduce the rate of benefit accruals on account of age. Indeed, because the hypothetical account balance increases each year at an ***increasing*** Pay Credit rate as employees age, the Plan does the opposite. See A-21 to A-22, Plan § 3.3. Accordingly, plaintiffs' claim under ERISA § 204(b)(1)(H) fails. See Tootle, 222 F.R.D. at 94 (dismissing ERISA § 204(b)(1)(H) count for failure to state a claim); Eaton, 117 F. Supp. 2d at 834 (granting defendants' motion for summary judgment on ERISA § 204(b)(1)(H) count).

**c.      The IRS Has Opined That Cash Balance Plans Are Not Per Se Illegal**

If the phrase "rate of an employee's benefit accrual" in ERISA § 204(b)(1)(H) is ambiguous, it is appropriate to look as well to the interpretation of the statute rendered by the agency charged by Congress with administering the statute. See United States v. Cooper, 396 F.3d 308, 310-311 (3d Cir. 2005) ("If, on the other hand, we are unable to discern Congress' intent using tools of statutory construction, we generally defer to the governmental agency's reasonable interpretation"). The agency charged with administering and interpreting ERISA § 204(b)(1)(H), as well as the parallel provisions of the Internal Revenue Code, is the Internal Revenue Service of the United States Department of Treasury. See ERISA § 204(b)(1)(H)(vi).

---

[10] Indeed, the Plan defines "accrued benefit" in terms of a "life annuity commencing as of the determination date," i.e., the date the benefit is calculated each year. See A-4, Plan § 1.1. At termination of employment, a participant may elect to receive a lump sum, or an *immediate* annuity, or annuity deferred to age 65. See A-25, A-28, and A-32, Plan §§ 5.6.4, 6.6, and 4.1.

The IRS has repeatedly rejected the position that cash balance plans constitute <u>per</u> <u>se</u> violations of ERISA § 204(b)(1)(H). In 2002, the IRS issued proposed regulations for testing whether cash balance plans are in compliance with ERISA § 204(b)(1)(H). <u>See</u> <u>generally</u> 67 Fed. Reg. 76,123 (Dec. 11, 2002).[11] The IRS' proposed regulations expressly rejected the <u>per</u> <u>se</u> theory and embraced the approach of the <u>Eaton</u> and <u>Tootle</u> courts:

> Under a cash balance plan, the interest credits for a younger participant will compound over a greater number of years until normal retirement age than for an older participant. This will result in a larger accrual for younger employees, when measured as the increase in the benefit payable at normal retirement age. Accordingly some commentators have argued that the basic cash balance plan design violates [Internal Revenue Code] § 411(b)(1)(H) [and parallel ERISA § 204(b)(1)(H)]. Others have asserted that cash balance plans do not violate [these sections] if the additions to the hypothetical account are not smaller because of the attainment of any age. . . .
>
> These proposed regulations would provide that the rate of benefit accrual under an eligible cash balance plan . . . is permitted to be determined as the additions to the participant's hypothetical account for the plan year, except that previously accrued interest credits are not included in the rate of benefit accrual.

<u>Id.</u> at 76,126.

The 2002 proposed regulations are consistent with the IRS' past positions. As discussed below, the IRS issued Notice 96-8 in 1996 to provide guidance regarding the proper application of ERISA's anti-backloading rules to cash balance plans. <u>Infra</u> at 33-34. There would be no need to discuss how cash balance plans can lawfully comply with these rules if such plans are inherently age discriminatory and <u>per</u> <u>se</u> illegal.

---

[11] The IRS withdrew the proposed regulations so that Congress could consider pending legislative proposals to regulate cash balance plans. <u>See</u> A. McGrath, <u>Pension Law: Cash Balance Plans Are Not Inherently Age Discriminatory: Cooper v. IBM Defies A Strong History Of Support For The Cash Balance Design</u>, 57 Okla. L. Rev. 429, 445 n.135 (Summer 2004).

Similarly, in explaining its reasons for implementing regulations relating to

ERISA and Internal Revenue Code provisions prohibiting pension plans from unduly favoring

highly paid employees, the IRS stated the following:

> The final regulations have added a safe harbor testing method for
> cash balance plans. Because cash balance plans are defined benefit
> plans that calculate benefits in a manner similar to defined
> contribution plans, the safe harbor testing method is provided
> under the cross-testing rules of § 1.401(a)(4)- 8(c). The safe
> harbor testing method permits a cash balance plan to be tested on
> the basis of the hypothetical allocation formula used to determine
> an employee's cash balance, rather than on the actual benefits
> provided under the plan, if certain conditions are satisfied. Among
> other requirements, the interest adjustments through normal
> retirement age must be accrued under the plan in the year the
> hypothetical allocation to which they relate is accrued, and interest
> adjustments must be determined using a fixed interest rate between
> 7.5 and 8.5 percent, or one of a list of variable interest rates
> provided in the regulations. ***The fact that interest adjustments
> through normal retirement age are accrued in the year of the
> related hypothetical allocation will not cause a cash balance plan
> to fail to satisfy the requirements of section 411(b)(1)(H), relating
> to age-based reductions in the rate at which benefits accrue
> under a plan.*** The safe harbor also imposes limitations on the
> granting of past service credit and the provision of subsidized
> optional forms of benefit.

56 Fed. Reg. 47,524, 47,528 (Sept. 19, 1991) (emphasis added).

While none of these pronouncements from the IRS is a final regulation entitled to

maximum deference, the IRS's repeated and well-considered position rejecting the theory that

cash balance plans are <u>per se</u> illegal is still entitled to "respect" and persuasive value. <u>See</u>

<u>generally</u> <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 139-140 (1944). The IRS's considered and

consistent position is yet another reason to reject the <u>per se</u> theory.

### d.    <u>The Cooper Opinion Should Not Be Followed</u>

The ***only*** authority supporting the <u>per se</u> theory is the Southern District of Illinois'

opinion in <u>Cooper v. IBM Personal Pension Plan</u>, 274 F. Supp. 2d 1010 (S.D. Ill. 2003). That

opinion, an outlier among the cases addressing the issue, should not be followed here, not only for the numerous reasons listed above why the per se theory is invalid, but also because, as detailed below, it is grounded in a failure to apply properly the rules of statutory construction.

The Cooper court began its analysis by quickly concluding that the statutory section (ERISA § 204(b)(1)(H)) was ambiguous:

> Therefore, it is important whether § 204(b)(1)(H)'s term "rate of benefit accrual" refers to the rate at which an employee accrues a benefit payable in the form of an annuity that commences at age 65, or if an employee's "rate of benefit accrual" may be measured by reference to an immediate annuity. ***ERISA does not explicitly answer this question***.

Cooper, 274 F. Supp. 2d at 1016 (emphasis added). Thus, having found the key statutory term to be ambiguous, as discussed above, the Cooper court was required to look to external sources of interpretation, in particular legislative history and agency guidance. Supra at 22-23. It looked at neither. See generally A. McGrath, Pension Law:  Cash Balance Pension Plans Are Not Inherently Age Disciminatory:  Cooper v. IBM Defies A Strong History Of Support For The Cash Balance Design, 57 Okla. L. Rev. 429, 455-456 (2004).  This failure to examine legislative history and agency guidance in construing an ambiguous statute is, by itself, reason enough to disregard Cooper's analysis.

Unsurprisingly, Cooper's attempt to construe an ambiguous statutory text by reference to nothing but that ambiguous text led to error.  Cooper "reasoned" as follows:

> ERISA creates specific rules relating to defined benefit plans.  It is clear that a participant's accrued benefit, as it appears in § 204(b)(1)(G), must be measured by reference to the amount of an employee's annual benefit at age 65. See 29 U.S.C. § 1002(23)(A); see also Esden, 229 F.3d at 163.  The ***language at issue***—"rate of benefit accrual" – is found in the very next subchapter, § 204(b)(1)(H).  The best interpretation of this phrase is that it also refers to an employee's age 65 annual benefit and the rate at which that age 65 annual benefit accrues.

Cooper, 274 F. Supp. 2d at 1016 (emphasis added). The problem with this reasoning is that the

"*language at issue*" in ERISA § 204(b)(1)(H) – "rate of benefit accrual" – does not appear in

Section 204(b)(1)(G), which only discusses reductions in "accrued benefits." The Cooper court

attempted to answer the question of what Congress intended, but, instead of considering

legislative history and agency interpretations, the court impermissibly substituted its own

speculations as to Congress' intent:

> Defendants question why Congress would use different language
> in succeeding subparagraphs (accrued benefit and benefit accrual)
> unless it intended the subparagraphs to cover different types of
> benefits. The answer is simple. Congress chose to be
> grammatically correct. The term accrued benefit in § 204(b)(1)(G)
> means an employee's age 65 accumulated benefit. If Congress had
> used the term accumulated benefit in § 204(b)(1)(G), instead of the
> term accrued benefit, it would not have used the clumsy phrase
> "rate of accumulated benefit" in § 204(b)(1)(H). Presumably,
> Congress would have opted for standard English and used the
> phrase "rate of benefit accumulation," even though it intended to
> cover the same type of benefit in both subparagraphs.

Id.

Having construed "rate of an employee's benefit accrual" to incorporate the

statutorily-defined term "accrued benefit," the court outright rejected direction from the Supreme

Court that "when Congress includes particular language in one section of a statute but omits it in

another section of the same Act, it is generally presumed that Congress acts intentionally and

purposely in the disparate inclusion or exclusion." Russello, 464 U.S. at 23. By doing so, the

Cooper court suggested that all cash balance plans are inherently age discriminatory – not

because of any age animus, but because of the time value of money. See Cooper, 274 F. Supp.

2d at 1021.

This house of cards cannot stand. The term "accrued benefit" is expressly defined in ERISA. <u>See</u> 29 U.S.C. § 1002(23). It is used repeatedly throughout the statute,[12] including in ERISA §§ 204(b)(1) subsections A-G – ***but not subsection H***. Congress knew how to use the defined term "accrued benefit" when it wanted to, and its decision to write "rate of benefit accrual" instead can logically only be construed as a decision to say something different. <u>See</u> <u>In re Gulf Pension Litigation</u>, 764 F. Supp. 1149, 1176-1177 (S.D. Tex. 1991) (refusing to equate the terms "accrued benefit," "benefits accrued," and "future benefit accruals" in ERISA and implementing regulations; use of different terms was not a "drafting oversight"), <u>aff'd</u> 36 F.3d 1308 (5th Cir. 1994). Plaintiffs' claim under Count III should be dismissed.

**E.    Count I Fails To State A Claim For Relief – The Plan Is Not Impermissibly Backloaded**

Even if it were timely (which it is not), Count I fails to state a claim. That Count alleges the Plan violates the "anti-backloading" provision of ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1). Compl., ¶¶ 42-45. The purpose of the anti-backloading statute is to prevent employers from requiring that a disproportionate share of benefits accrue at the end of an employee's service:

> The primary purpose of [the anti-backloading statute] is to prevent attempts to defeat the objectives of the minimum vesting provisions by providing undue "backloading," <u>i.e.</u>, by providing inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and by concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement.

---

[12] <u>See, e.g.</u>, 29 U.S.C. §§ 1002(19), 1002(31), 1002(33), 1023(d)(6)(D), 1052-1056.

Langman v. Laub, 328 F.3d 68, 71 (2d Cir. 2003), quoting H.R. Rep. No. 93-807 (1974). To prevent backloading of benefits, ERISA § 204(b)(1) sets forth three rules for benefit accrual and mandates that each defined benefit plan shall comply with at least one of them.

It is not clear why Plaintiffs believe that the Plan is impermissibly backloaded, or how, if at all, they have been injured by any such backloading. The Complaint merely alleges in a conclusory fashion that the Plan "does not satisfy" any of the three accrual rules, without alleging a single fact in support of this claim. Compl., ¶¶ 44-45. This failure to set forth any factual allegations in support of the anti-backloading claim is, without more, sufficient reason to dismiss Count I. See Morse, 132 F.3d at 906 ("a court need not credit a "complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss").

As Plaintiffs tacitly concede through the absence of factual allegations, the Plan *does* satisfy the accrual rules of ERISA § 204(b)(1). In particular, the Plan satisfies the "133 1/3 percent" test, which is as follows:

> A defined benefit plan satisfies the requirements of this paragraph
> of a particular plan year if under the plan the accrued benefit
> payable at the normal retirement age is equal to the normal
> retirement benefit and the annual rate at which any individual who
> is or could be a participant can accrue the retirement benefits
> payable at normal retirement age under the plan for any later plan
> year is not more than 133 1/3 percent of the annual rate at which he
> can accrue benefits for any plan year beginning on or after such
> particular plan year and before such later plan year.

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B).

The IRS, in Notice 96-8, has opined that cash balance plan formulas, like the one at issue in this case, will generally satisfy the 133 1/3 percent rule so long as "future interest credits to an employee's hypothetical account balance are not conditioned upon future service." See 1996-1 C.B. 359. The IRS referred to such compliant plans as "frontloaded interest credit

plans." Id. The Plan does not condition the receipt of future interest credits upon future service. See A-22, Plan § 3.4.2. Thus, the Plan satisfies the accrual requirements set forth in Notice 96-8.

Notice 96-8 is an expert agency interpretation of ERISA § 204(b)(1) to which this Court should defer. See Berger v. Xerox Corp., 338 F.3d 755, 762 (7th Cir. 2003) ("The Internal Revenue Service's Notice 96-8 . . . is an authoritative interpretation of the applicable statutes and regulations"); Esden v. Bank of Boston, 229 F.3d 154, 169 (2d Cir. 2000) (Notice 96-8 "represents the agency's 'fair and considered judgment on the matter' and is therefore entitled to deference"). Because the Plan satisfies ERISA § 204(b)(1) as interpreted by the IRS in Notice 96-8, Count I fails as a matter of law.

Moreover, Plaintiffs' claim for improper *backloading* of benefits cannot be squared with their allegations of injury set forth in Paragraph 41 of the Complaint. There, Plaintiffs allege that they have been injured because their benefits have decreased each year beginning in 2001 because of interest rate fluctuations. Put differently, Plaintiffs' benefits are allegedly accruing faster in earlier years and declining in later years, i.e., Plaintiffs argue that the benefits are *frontloaded*. As should be obvious, the *frontloading* of benefits cannot constitute illegal *backloading* of benefits. See 26 C.F.R. § 1.411(b)-1(b)(2)(iii) (ERISA § 204(b)(1) "does not restrict subsequent accrual rate decreases"). Indeed, the IRS has described plans like the one at issue as "*frontloaded* interest credit plans." See 1996-1 C.B. 359 (emphasis added). Count I should accordingly be dismissed.

### F.  Count IV Fails To State A Claim – Plaintiffs Admit They Were Notified Of The Conversion To The Cash Balance Formula

Count IV likewise fails to state a claim, in addition to being time-barred.

In this count, Plaintiffs allege that Defendants did not properly amend the Plan effective January 1, 1999 to calculate benefits under the cash balance formula because Plaintiffs

purportedly did not receive the notice of amendment required by ERISA § 204(h), 29 U.S.C.

§ 1054(h). Compl., ¶ 53. This Count is surprising, as Plaintiffs concede throughout their

complaint that they received such written notices, including in Spring and Winter 1998. Id., ¶¶

30-35. In fact, the Complaint block quotes these notices. Id.

The version of ERISA § 204(h) in effect at the time of the amendment[13] provided

as follows:

> (h) Notice of significant reduction in benefit accruals
>
> (1) A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to--
>
> (A) each participant in the plan,
>
> (B) each beneficiary who is an alternate payee (within the meaning of section 1056(d)(3)(K) of this title) under an applicable qualified domestic relations order (within the meaning of section 1056(d)(3)(B)(i) of this title), and
>
> (C) each employee organization representing participants in the plan,
>
> except that such notice shall instead be provided to a person designated, in writing, to receive such notice on behalf of any person referred to in subparagraph (A), (B), or (C).
>
> (2) A plan is described in this paragraph if such plan is--
>
> (A) a defined benefit plan, or
>
> (B) an individual account plan which is subject to the funding standards of section 1082 of this title.

---

[13] Congress amended ERISA § 204(h) in 2001. See Historical and Statutory Notes to 29 U.S.C. § 1054. The 2001 amendments to ERISA § 204(h) only apply to plan amendments effective after June 7, 2001, i.e., two and a half years after the amendment at issue here. See Romero, 404 F.3d at 218, n.4 (discussing effective date of 2001 amendment).

The then-current version of the regulations implementing Section 204(h)

explained the notice required by the statute:

> Q-10:  Does a notice fail to comply with Section 204(h) if it
> contains a summary of the amendment and the effective date,
> without the text of the amendment itself?
>
> A-10:  No, the notice does not fail to comply with section 204(h)
> merely because the notice contains a summary of the amendment,
> rather than the text of the amendment, if the summary is written in
> a manner calculated to be understood by the average plan
> participant and contains the effective date.  The summary need not
> explain how the individual benefit of each participant or alternate
> payee will be affected by the amendment.

26 C.F.R. § 1.411(d)-6 (1999) (emphasis added).

Because Plaintiffs admit that they received written notice of the Plan amendment

establishing the cash balance formula in 1998 and 1999, including a description of the terms of

the amendment and its effective date, see Compl., ¶¶ 30-35, Plaintiffs' claim under ERISA

Section 204(h) necessarily fails.  Accordingly, Count IV should be dismissed.

## V.    __CONCLUSION__

For the reasons set forth herein, Plaintiffs' Complaint should be dismissed with prejudiced.

Respectfully submitted,

/s/ M. Duncan Grant
M. Duncan Grant (#2994)
Sasha L. Azar (#4200)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500 (telephone)
(302) 421-8390 (fax)


Susan K. Hoffman*(pro hac vice)*
Larry R. Wood, Jr.
Kay Kyungsun Yu *(pro hac vice)*
Barak A. Bassman *(pro hac vice)*
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000 (telephone)
215-981-4750 (fax)

Attorneys for Defendants

Dated:  November 16, 2005