**UNREPORTED CASES**                                                                                    **TAB NO.**

*Engers v. AT&T Corp.,*
    Civ. A. No. 98-3660, 2001 U.S. Dist. LEXIS 25889 (D.N.J. June 6, 2001) ..............................1

*E.I. DuPont de Nemours & Co. v. Millenium Chemicals, Inc.,*
    C.A. No. 97-237-SLR, 1999 U.S. Dist. LEXIS 12447 (D. Del. Aug. 2, 1999).......................2

TAB "1"

Case 1:05-cv-00702-SLR    Document 12-2    Filed 11/16/2005    Page 3 of 17

Page 2
2001 U.S. Dist. LEXIS 25889, *

LEXSEE 2001 US DIST LEXIS 25889

Re: Phillip C. Engers, et al. v. AT&T Corp., et al.

Civil Action No. 98-3660 (NHP)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2001 U.S. Dist. LEXIS 25889

June 6, 2001, Decided

**NOTICE:** [*1] NOT FOR PUBLICATION

**PRIOR HISTORY:** *Engers v. At&T Corp., 2001 U.S. Dist. LEXIS 25885 (D.N.J., June 6, 2001)*

**DISPOSITION:** Plaintiffs' Ninth Claim for Relief dismissed. Plaintiffs' motion to certify class granted as to remaining claims.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees filed a complaint against defendants, their employer and the employer's management pension plan, after the employer amended the plan. The employees alleged violations of their rights under the Employee Retirement Income Security Act (ERISA) and the Age Discrimination in Employment Act (ADEA). They moved to certify the suit as a class action. Defendants sought to dismiss two counts on jurisdictional grounds.

**OVERVIEW:** Defendants contended that the employees lacked standing to assert two claims. They argued that the employees could not assert claims under § 204(h) of ERISA, *29 U.S.C.S. § 1054*(h), because they had not shown that the amended plan would result in significant reductions in the rate of their future pension benefit accruals. They also contended that the employees, who were all under the age of 65, lacked standing to bring claims under § 4(i)(1)(A) of the ADEA, *29 U.S.C.S. § 623*(i)(1)(A), and § 204(b)(1)(H)(i) of ERISA, *29 U.S.C.S. § 1054*(b)(1)(H)(i), because those provisions were intended to protect workers who had worked beyond the age of 65. The court agreed that, because they had not yet reached the normal retirement age, the employees lacked standing to assert the ADEA and § 204(b)(1)(H)(i) of ERISA claims. It ordered them to present evidence showing that they would suffer a reduction in their annual benefits by virtue of the plan amendment, which was necessary for them to have standing on the § 204(h) of ERISA claim. Without discussion, the court found that the employees had satisfied the requisites of *Fed. R. Civ. P. 23* for class certification with regard to their other claims.

**OUTCOME:** The court granted the motion to dismiss a count that asserted claims pursuant to the ADEA and ERISA. It ordered the employees to proffer evidence showing that they had standing to bring another ERISA claim. The court granted the motion to certify a class as to the employees' remaining claims.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] Pursuant to *Fed. R. Civ. P. 12(h)(3)*, a court may dismiss a case for lack of subject matter jurisdiction by motion of a party or sua sponte. Indeed, a court, is permitted, if not obliged, to inquire at any point in a case as to whether it has subject matter jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*
*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing*
*Evidence > Procedural Considerations > Burdens of Proof*
[HN2] U.S. Const. art. III, § 2, confers subject matter jurisdiction upon federal district courts only where a "case or controversy" exists. The doctrine of standing implicates the "case or controversy" requirement and hence, where a plaintiff has no standing, it follows that a court does not possess subject matter jurisdiction. The standing requirement includes three elements: (1) injury in fact to the plaintiff; (2) a causal connection between the injury and the conduct of the defendant complained

Case 1:05-cv-00702-SLR   Document 12-2   Filed 11/16/2005   Page 4 of 17

Page 3
2001 U.S. Dist. LEXIS 25889, *

of; and (3) a likelihood that the injury will be redressed by a favorable decision. The plaintiff bears the burden of establishing the elements of standing.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing*
*Governments > Legislation > Statutory Remedies & Rights*
[HN3] To establish an injury in fact, a plaintiff must demonstrate an invasion of a legally protected interest which is concrete and particularized. A legally protected interest may be created where Congress confers substantive rights by statute upon the citizenry. Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. It is axiomatic that one must be protected by such a statute or, stated another way, possess rights under the statute, in order to have those rights, violated in the first instance.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
[HN4] See *29 U.S.C.S. § 1054*(h).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Reporting, Disclosure & Notice*
[HN5] Pursuant to *29 U.S.C.S. § 1135,* the Secretary of the Treasury has the authority to issue regulations concerning § 204(h) of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1054*(h). The Secretary has defined a significant reduction in the rate of future benefit accrual to include only an amendment that is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age. *60 Fed. Reg. 64322,* Question & Answer 5. The Secretary has also provided that a plan administrator need not provide § 204(h) of ERISA notice to any participant whose rate of future benefit accrual is reasonably expected not to be reduced by the amendment. *60 Fed. Reg. 64323,* Question & Answer 9. Hence, a ERISA plan participant is only entitled to § 204(h) of ERISA notice if a plan amendment is reasonably expected to reduce the participant's annual benefit commencing at retirement age.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Discrimination > Age Discrimination > Employment Practices*
[HN6] Section 4(i)(1)(A) of the Age Discrimination in Employment Act prohibits an employer from establishing or maintaining an employee pension benefit plan which requires or permits the reduction of the rate of an employee's benefit accrual, because of age. *29 U.S.C.S. § 623*(i)(1)(A).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN7] See *29 U.S.C.S. § 1054*(b)(1)(H)(i).

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Tax Law > Federal Income Tax Computation > Retirement Plans > Nondiscrimination Rules (IRC sec. 401)*
[HN8] The Internal Revenue Code, at *26 U.S.C.S. § 411*(b)(1)(H), contains the same language as *29 U.S.C.S. § 1054*(b)(1)(H)(i). Section 1054(b)(1)(H)(i), *29 U.S.C.S. § 623*(i)(1)(A), and *26 U.S.C.S. § 411*(b)(1)(H) are part of the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1973-78. The House Senate Conference Committee report on these three provisions indicates that the conferees intended that the three provisions be interpreted in a consistent manner.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN9] Both § 4(i)(1)(A) of the Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 623*(i)(1)(A), and § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1054*(b)(1)(H)(i), apply only to employees who work

Case 1:05-cv-00702-SLR    Document 12-2    Filed 11/16/2005    Page 5 of 17

Page 4
2001 U.S. Dist. LEXIS 25889, *

beyond the normal retirement age of sixty-five. The language of the ADEA and ERISA provisions is ambiguous, and the legislative history of the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1973-78, convincingly proves that Congress intends the provisions to apply only to those employees who work beyond the normal retirement age of sixty-five.

*Governments > Legislation > Interpretation*
*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN10] The language of § 4(i)(1)(A) of the Age Discrimination in Employment Act, *29 U.S.C.S. § 623*(i)(1)(A), and § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1054*(b)(1)(H)(i), is indeed ambiguous, as neither statute defines the pivotal statutory phrase: rate of an employee's benefit accrual. It is generally understood that in the face of unclear statutory language, a court is to look to the legislative history of the statute. A court may also consider the headings of a statute as a guide in determining the meaning of the provision.

*Governments > Legislation > Interpretation*
*Tax Law > Federal Income Tax Computation > Retirement Plans > Defined Benefit & Hybrid Plans (IRC secs. 411, 414, 415)*
*Tax Law > Federal Income Tax Computation > Retirement Plans > Nondiscrimination Rules (IRC sec. 401)*
[HN11] The heading of *26 U.S.C.S. § 411*(b)(1)(H) states: Continued accrual beyond normal retirement age. This heading offers some guidance as to statutory interpretation since Congress intends the Age Discrimination in Employment Act, the Employee Retirement Income Security Act, and the Internal Revenue Code provisions in the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1973-78, to be interpreted consistently.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN12] The legislative history of the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874, 1973-78, provides compelling evidence that Congress intends both § 4(i)(1)(A) of the Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 623*(i)(1)(A), and § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1054*(b)(1)(H)(i), to apply only to those employees who continue to work after the normal retirement age of sixty-five. In other words, the ADEA and ERISA provisions ensure that employees who choose to work past the age of normal retirement continue to accrue pension benefits. Congress intends to protect the pension benefits of those employees who choose to continue to work after the age of sixty-five.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN13] The rules preventing the reduction or cessation of benefit accruals on account of the attainment of age are not intended to apply in cases in which a plan satisfies the normal benefit accrual requirements for employees who have not attained normal retirement age.

*Civil Procedure > Justiciability > Standing*
*Constitutional Law > The Judiciary > Case or Controversy > Standing*
*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN14] Where none of the plaintiffs named in a suit fall into the category of employees who have reached the normal retirement age of sixty-five, they are not protected by § 4(i)(1)(A) of the Age Discrimination in Employment Act, *29 U.S.C.S. § 623*(i)(1)(A), and § 204(b)(1)(H)(i) of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1054*(b)(1)(H)(i), and thus do not have standing to pursue claims under those sections.

*Civil Procedure > Class Actions > Prerequisites*
*Civil Procedure > Justiciability > Standing*

*Constitutional Law > The Judiciary > Case or Controversy > Standing*
[HN15] If none of the named plaintiffs purporting to represent a class meets the case or controversy requirement, none may seek relief on behalf of himself or any member of the class.

**COUNSEL:** Stephen R. Bruce, Esq., Washington, DC; Edgar Pauk, Esq., New York, NY; Gerald J. Smit, Esq., Bridgewater, NJ, for Plaintiffs.

Christopher H. Mills, Esq., Terrence J. Nolan, Esq., David J. Treibman, Esq., COLLIER, JACOB & MILLS, Somerset, NJ, for Defendants AT&T Corp. and AT&T Management Pension Plan

**JUDGES:** NICHOLAS H. POLITAN, U.S.D.J.

**OPINIONBY:** NICHOLAS H. POLITAN

**OPINION:** Dear Counsel:

This matter comes before the Court on the motion of plaintiffs Phillip C. Engers, Warren J. McFall, Donald Noerr, and Gerald Smit (hereinafter "plaintiffs") for the certification of this case as a class action. The Court heard oral argument on January 23, 2001, during which it was brought to the Court's attention that the Court possibly may not have subject matter jurisdiction over the Third and Ninth Claims for Relief in the Second Amended Class Action Complaint. Upon review of the submissions of the parties, and for the reasons expressed herein, it is ordered that plaintiffs shall proffer evidence which would tend to counter the defendants' contention that none of the named plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the [*2] Plan Amendment. The Court will also dismiss the Ninth Claim for Relief. Lastly, the Court will grant plaintiffs' motion to certify the class as to the remaining claims in the Second Amended Class Action Complaint.

## DISCUSSION

The circumstances surrounding this case are set forth in this Court's previous Letter Opinion dated June 29, 2000. Suffice it to say that defendants AT&T and AT&T Management Pension Plan (hereinafter "AT&T") have raised the issue of whether the Court possesses subject matter jurisdiction over the Third and Ninth Claims for Relief in the Second Amended Class Action Complaint. The Court's findings are as follows.

### I. "Case or Controversy" and the Standing Requirement

Specifically, AT&T has argued that subject matter jurisdiction is lacking in this Court because the named plaintiffs in this action do not have standing to bring the causes of action asserted in the Third and Ninth Claims for Relief. At the outset, it must be explained that [HN1] pursuant to *Federal Rule of Civil Procedure 12(h)(3)*, a court may dismiss a case for lack of subject matter jurisdiction by motion of a party or sua sponte. Indeed, the Court, is permitted, if not obliged, [*3] to inquire at any point in a case as to whether it has subject matter jurisdiction. See *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982)*; *Quern v. Mandley, 436 U.S. 725, 730 n.3, 56 L. Ed. 2d 658, 98 S. Ct. 2068 (1978)*; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)*; *Medlin v. Boeing Vertol Co., 620 F.2d 957, 960 (3d Cir. 1980)*.

[HN2] Article III, § 2 of the Constitution confers subject matter jurisdiction upon federal district courts only where a "case or controversy" exists. The doctrine of standing implicates the "case or controversy" requirement and hence, where a plaintiff has no standing, it follows that a court does not possess subject matter jurisdiction.

The standing requirement includes three elements: (1) injury in fact to the plaintiff; (2) a causal connection between the injury and the conduct of the defendant complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. See *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)*. The plaintiff bears the burden of establishing the elements of standing. See *id. at 561*. [*4]

[HN3] To establish an injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest which is . . . concrete and particularized . . . ." *Lujan, 504 U.S. at 560 n. 1*. A legally protected interest may be created where Congress confers substantive rights by statute upon the citizenry. See *Linda R. S. v. Richard D., 410 U.S. 614, 617 n.3, 35 L. Ed. 2d 536, 93 S. Ct. 1146 (1973)* ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). It is axiomatic that one must be protected by such a statute or, stated another way, possess rights under the statute, in order to have those rights, violated in the first instance.

### A. Third Claim for Relief

In the Third Claim for Relief, plaintiffs, allege that AT&T violated ERISA by implementing significant reductions in the rate of future accruals before adoption of the Plan amendments and without providing

Case 1:05-cv-00702-SLR    Document 12-2    Filed 11/16/2005    Page 7 of 17

Page 6
2001 U.S. Dist. LEXIS 25889, *

participants with notice of the Plan amendments as required by § 204 (h) of ERISA. AT&T contends that § 204(h) confers no rights on the plaintiffs, and therefore the plaintiffs do not have standing to assert the Third Claim for [*5] Relief.

[HN4] Section 204(h) of ERISA provides as follows:

> (h) Notice of significant reduction in benefit accruals
>
> (1) A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to--
> (A) each participant in the plan . . . .

29 U.S.C. § 1054(h).

[HN5] Pursuant to 29 U.S.C. § 1135, the Secretary of the Treasury has the authority to issue regulations concerning § 204(h) of ERISA. The Secretary has defined a "significant reduction in the rate of future benefit accrual" to include only an amendment that "is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age." See 60 Fed. Reg. at 64322, Q&A 5. The Secretary has also provided that the plan administrator "need not provide § 204(h) notice to any participant whose rate of future benefit accrual is reasonably expected [*6] not to be reduced by the amendment." See 60 Fed. Reg. at 64323, Q&A 9. Hence, a Plan participant is only entitled to § 204 (h) notice if the Plan Amendment is reasonably expected to reduce the participant's annual benefit commencing at retirement age.

AT&T has submitted evidence which demonstrates that none of the named plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the Plan Amendment. See Certification of Kevin R. Armant, P 18. This evidence also tends to show that at any point in time plaintiffs' "Accrued Benefit at Age 65" under the Cash Balance formula will always be greater than the "Accrued Benefit at Age 65" would have been under either the Special Update or the prior Plan formula. See Certification of Kevin R. Armant, Exhs. E-H.

Indeed, if this is the case, then the named plaintiffs would not fall under the scope of § 204(h) and thus would not be entitled to notification. As such, the named plaintiffs would not have standing to pursue a claim under § 204(h). Consequently, this Court directs plaintiffs to proffer evidence which would tend to counter the defendants' contention that none of the named [*7] plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the Plan Amendment. Such a proffer would satisfy plaintiffs' burden of establishing that this Court possesses subject matter jurisdiction over the Third Claim for Relief.

### B. Ninth Claim for Relief

In the Ninth Claim for Relief, plaintiffs allege that AT&T violated § 4(i)(1)(A) of ADEA, 29 U.S.C. § 623(i)(1)(A), and § 204(b)(1)(H)(i) of ERISA, 29 U.S.C. § 1054(b)(1)(H)(i), because the Plan Amendment reduces the rate of accrual based on age. AT&T argues that the named plaintiffs have no standing because § 4(i)(1)(A) of ADEA and § 204(b)(1)(H)(i) of ERISA only apply to employees who continue to work past the age of sixty-five.

[HN6] Section 4(i)(1)(A) of ADEA prohibits an employer from establishing or maintaining "an employee pension benefit plan which requires or permits . . . the reduction of the rate of an employee's benefit accrual, because of age . . . ." 29 U.S.C. 623(i)(1)(A). Similarly, [HN7] § 204(b)(1)(H)(i) of ERISA states that "a defined benefit plan shall be treated as not satisfying the requirements of this [*8] paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). [HN8] The Internal Revenue Code at 26 U.S.C. § 411(b)(1)(H) contains the same language as the ERISA provision. These three provisions were passed as part of the Omnibus Budget Reconciliation Act of 1986 ("OBRA"), P.L. 99-509, 100 Stat. 1874, 1973-78. The House Senate Conference Committee report on these three provisions indicates that the conferees intended that the three provisions be interpreted in a consistent manner. See H.R. Conf. Rep. No. 1012, 99th Cong., 2d Sess. 378-79 (1986), reprinted in 1986 U.S.C.C.A.N. 3868, 4023-24.

Defendants direct the Court's attention to the recent case of Eaton v. Onan Corp., 117 F. Supp.2d 812 (S.D.Ind. 2000). In Eaton, [HN9] the district court held that both § 4(i)(1)(A) of ADEA and § 204(b)(1)(H)(i) of ERISA apply only to employees who work beyond the normal retirement age of sixty-five. See 117 F. Supp.2d 812, 826 (S.D.Ind. 2000). Finding the language of the pertinent [*9] ADEA and ERISA provisions ambiguous, the Eaton court concluded that OBRA's legislative

Case 1:05-cv-00702-SLR    Document 12-2    Filed 11/16/2005    Page 8 of 17

Page 7
2001 U.S. Dist. LEXIS 25889, *

history convincingly proves that Congress intended the provisions at issue to apply only to those employees who work beyond the normal retirement age of sixty-five. See *id.* at 826-29.

This Court is inclined to agree with Judge Hamilton's well-reasoned opinion in *Eaton*. [HN10] The language of the ADEA and ERISA provisions at issue is indeed ambiguous, as neither statute defines the pivotal statutory phrase: "rate of an employee's benefit accrual." It is generally understood that in the face of unclear statutory language, a court is to look to the legislative history of the statute. See *Toibb v. Radloff, 501 U.S. 157, 161, 115 L. Ed. 2d 145, 111 S. Ct. 2197 (1991); United States v. Gregg, 226 F.3d 253, 257 (3d Cir. 2000)*. A court may also consider the headings of a statute as a guide in determining the meaning of the provision. n1 See *Helen L. V. DiDario, 46 F.3d 325, 333 n.15 (3d Cir. 1995)* (looking to heading of regulation in addition to legislative history to find intent of Congress).

---

n1 [HN11] The heading found in the Internal Revenue Code provision enacted by OBRA, *26 U.S.C. § 411(b)(1)(H)*, states "Continued accrual beyond normal retirement age." (emphasis added). This heading offers some guidance since Congress intended the ADEA, ERISA and Internal Revenue Code provisions in OBRA to be interpreted consistently.

---

[*10]

In particular, it is clear to this Court that [HN12] the legislative history of OBRA provides compelling evidence that Congress intended both ADEA and ERISA provisions at issue to apply only to those employees who continue to work after the normal retirement age of sixty-five. In other words, the ADEA and ERISA provisions at issue, here were enacted to ensure that employees who choose to work past the age of normal retirement continue to accrue pension benefits.

The Conference Report demonstrates that Congress intended to protect the pension benefits of those employees who choose to continue to work after the age of sixty-five. See OBRA 1986 Conference Report at 378, *reprinted in* 1986 U.S.C.C.A.N. at 4023. For example, the Conference Report stated the following:

> [HN13] Under the conference agreement, the rules preventing the reduction or cessation of benefit accruals on account of the attainment of age are not intended to apply in cases in which a plan satisfies the normal benefit accrual requirements for employees who have not attained normal retirement age.

OBRA 1986 Conference Report at 379, *reprinted in* 1986 U.S.C.C.A.N. at 4024 (emphasis added).

The statements [*11] of the bill's sponsors indicates the same intent. Senator Grassley explained the legislation as follows: "I am introducing legislation today that would amend the *Age Discrimination in Employment Act (ADEA)* and the *Employee Retirement Income Security Act (ERISA)* to require continued pension benefit accruals for workers who work past the normal retirement age of 65." 131 Cong. Rec. 18868 (July 11, 1985) (emphasis added). Representative Jeffords (now Senator) made the following comments:

> The bill before us is also a pension bill which extends valuable pension accrual protections to older Americans who work beyond normal retirement age. It is important for this body to understand what this "Older Americans Pension Benefits" provision does and does not do. What it does is prevent a covered employee pension benefit plan from eliminating or reducing an employee's pension benefit accruals, because of the attainment of any age, for the period of employment after the employee attains the normal retirement age under his or her plan.

132 Cong. Rec. 32963 (Oct. 17, 1986) (emphasis added). Representative Roukema offered the following remarks:

> The legislation amends [*12] current law to preclude the "attainment of any age" as a reason for eliminating or reducing pension benefits accruals after normal retirement age. Therefore, employees who want or need to continue working beyond normal retirement age will no longer be able to be treated adversely under their pension plans because of their age.

132 Cong. Rec. 32975 (Oct. 17, 1986) (emphasis added). And lastly, Representative Clay stated the bill would

"make it clear that employee benefit plans may not reduce pension accruals or allocations on the basis of an employee's age. In short, these changes will assure that older Americans who work beyond normal retirement age continue to earn pension credits." 132 Cong. Rec. 32975 (Oct. 17, 1986) (emphasis added).

Consequently, since [HN14] none of the named plaintiffs fall into this category - namely, employees who have reached the normal retirement age of sixty-five - they are not protected by *§ 4(i)(1)(A) of ADEA or § 204(b)(1)(H)(i) of ERISA and* thus do not have standing to pursue those claims. Indeed, it must be remembered that [HN15] "if none of the named plaintiffs purporting to represent a class meets the case or controversy requirement, none [*13] may seek relief on behalf of himself or any member of the class." *O'Shea v. Littleton, 414 U.S. 488, 494, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974)*. See also 3B *J. Moore*, FEDERAL PRACTICE, 23.10-1, n.8 (2d ed. 1971). The Court does not have subject matter jurisdiction over the Ninth Claim for Relief. Accordingly, the Court will dismiss the Ninth Claim for Relief contained in the Second Amended Class Action Complaint.

### II. Certification of the Class

The named plaintiffs have moved for certification of the class. Because the Ninth Claim for Relief has been dismissed, no ADEA claims remain in this case, and therefore no ADEA representative action must be considered. Only certification of the class as to the ERISA claims under *Fed.R.Civ.P. 23* is necessary.

Upon review of the Second Amended Class Action Complaint and the submissions of the parties, it is the opinion of this Court that the named plaintiffs have satisfied the requisites of *Fed.R.Civ.P. 23* for class certification with regards to the remaining claims in the Second Amended Class Action Complaint. Therefore, the Court will certify the Second Amended Class Action Complaint pursuant to *Fed.R.Civ.P. 23(c)*. At this juncture, the [*14] remaining claims include the Third, Fourth, Fifth, Sixth, and Seventh Claims for relief in the Second Amended Class Action Complaint. The Third Claim for Relief may be subject to decertification and dismissal depending upon whether plaintiffs proffer evidence which would tend to counter the defendants' contention that none of the named plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the Plan Amendment.

### CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Regarding the Third Claim for Relief, the named plaintiffs are ordered to proffer evidence which would tend to counter the defendants' contention that none of the named plaintiffs will suffer a reduction in annual benefits commencing at age sixty-five by virtue of the Plan Amendment. The Third Claim for Relief may be subject to decertification and dismissal depending upon the named plaintiffs' submissions;

2. The Ninth Claim for Relief is **DISMISSED**;

3. Plaintiffs' motion to certify the class is **GRANTED** as to the remaining claims. The remaining Claims contained in the Second Amended Class Action Complaint, to wit, the Third, Fourth, Fifth, Sixth, [*15] and Seventh Claims for Relief, are hereby certified as a class action pursuant to *Fed.R.Civ.P. 23*.

NICHOLAS H. POLITAN

U.S.D.J.

**TAB "2"**

LEXSEE 1999 US DIST. LEXIS 12447

**E.I. DUPONT DE NEMOURS & CO., Plaintiff, v. MILLENNIUM CHEMICALS, INC. and MILLENNIUM INORGANIC CHEMICALS, INC., Defendants.**

C.A. No. 97-237-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1999 U.S. Dist. LEXIS 12447*

**August 2, 1999, Decided**

**NOTICE:** [*1] FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendant's motion for summary judgment and plaintiff's motion to dismiss denied and plaintiff's motion to strike granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant filed a motion for summary judgment and plaintiff filed a motion to dismiss, or in the alternative, to strike in whole or in part defendant's second and third counterclaims in plaintiff's patent infringement action.

**OVERVIEW:** Plaintiff filed a patent infringement action against defendants. The suit involved the use of certain pigments in the plastic film market. Defendant filed a motion for summary judgment, arguing that several terms used in the patent violated the definiteness requirement of 35 U.S.C.S. § 112 and, therefore, were invalid. On a motion for summary judgment, defendant had the burden of proving that no genuine issue of material fact existed. Because defendant failed to demonstrate the absence of genuine issues of material fact with respect to whether one skilled in the art would have understood the disputed terms, the court denied the motion for summary judgment. The court found, under the settled law in the judicial district, that defendant timely filed their counterclaims. Thus, the court denied plaintiff's motion to dismiss. As to the issue of whether Del. Code Ann. tit. 10, § 8106 barred defendant from relying on some or all of the allegations asserted in support of its second and third counterclaims, the court granted plaintiff's motion to strike in part. The statute of limitations barred defendant's counterclaims only with respect to a 1995 incident.

**OUTCOME:** The court denied both defendant's motion for summary judgment and plaintiff's motion to dismiss. Defendant failed to demonstrate the absence of genuine material fact. Defendant filed its counterclaims in a timely manner. The court granted in part plaintiff's motion to strike. The statute of limitations only barred defendant's counterclaims with respect to a certain incident.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN1] On a motion for summary judgment, the movant bears the burden of proving that no genuine issue of material fact exists.

*Civil Procedure > Summary Judgment > Supporting Papers & Affidavits*
[HN2] A court shall grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN3] If a moving party fails to establish the absence of a genuine issue of fact, summary judgment must be denied even if no opposing evidentiary matter is presented.

*Patent Law > Claims & Specifications > Theory of Invention*
*Patent Law > Claims & Specifications > Definiteness > General Overview*
[HN4] A patent claim is indefinite and, therefore, invalid if the claims fail to particularly point out and distinctly

Case 1:05-cv-00702-SLR    Document 12-2    Filed 11/16/2005    Page 12 of 17

Page 3
1999 U.S. Dist. LEXIS 12447, *

claim the subject matter that the applicant regards as his invention. *35 U.S.C.S.§ 112.*

**Patent Law > Claims & Specifications > Definiteness > General Overview**
[HN5] Although compliance with *35 U.S.C.S. § 112* is a question of law, it rests on a determination of whether one skilled in the art would understand the bounds of the claim when read in light of the specification. If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more. The degree of precision necessary to satisfy § 112 depends upon the subject matter and cannot be viewed in the abstract.

**Patent Law > Claims & Specifications > Definiteness > General Overview**
[HN6] Terms that appear facially ambiguous to the lay reader may be perfectly definite to those versed in the technology at issue.

**Civil Procedure > Summary Judgment > Burdens of Production & Proof**
[HN7] On a motion for summary judgment, the nonmoving party need not present opposing evidence of definiteness where the movant fails to show the absence of genuine factual disputes.

**Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims**
[HN8] A defendant may include counterclaims in its answer to an amended complaint.

**Civil Procedure > Pleading & Practice > Pleadings > Relation Back**
[HN9] Because the amended pleading relates back to the date of the original pleading, the amending pleader can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading.

**Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally**
[HN10] When a federal statute provides no statute of limitations federal courts look to the applicable state statute of limitations for guidance.

**Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally**
[HN11] The Delaware statute of limitations provides that no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force shall be brought after the expiration of three years from the accruing of the cause of such action. Del. Code Ann. tit. 10, § 8106.

**COUNSEL:** For Plaintiff: Richard L. Horwitz, Esquire, Joanne Ceballos, Esquire, Potter, Anderson & Corroon LLP, Wilmington, Delaware.

For Plaintiff: John C. Vassil, Esquire, Bruce D. DeRenzi, Esquire, Of counsel, Morgan & Finnegan, L.L.P., New York, New York.

For Defendants: Jack B. Blumenfeld, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware.

For Defendants: David A. Kalow, Esquire, Kenneth L. Bressler, Esquire, Kalow, Springut & Bressler LLP, New York, New York.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: August 2, 1999
Wilmington, Delaware

**Robinson, District Judge**

**I. INTRODUCTION**

Plaintiff E.I. DuPont De Nemours & Co. filed this patent infringement action against Millennium Chemicals, Inc. and Millennium Inorganic Chemicals, Inc. (collectively, "defendant") on May 1, 1997. Plaintiff is incorporated under the laws of Delaware and has its principal place of business in Wilmington, Delaware. (D. [*2] I. 137, P 2) Defendant is also a Delaware corporation with its principal places of business in Iselin, New Jersey and Hunt Valley, Maryland. (D.I. 137, PP 3-4) The court has jurisdiction over this action under *28 U.S.C. § § 1331* and 1338. Venue is proper in this judicial district by virtue of *28 U.S.C. § § 1391*(c) and 1400(b).

Currently before the court is defendant's motion for summary judgment (D.I. 92) and plaintiff's motion to dismiss, or in the alternative, to strike in whole or in part defendant's second and third counterclaims (D.I. 168). In its motion, defendant argues that plaintiff's patents violate the definiteness requirement of *35 U.S.C. § 112* and therefore are invalid. For its part, plaintiff seeks dismissal of defendant's second and third counterclaims as untimely; in the alternative, plaintiff moves the court to

strike all or part of defendant's counterclaims for failure to comply with the applicable statute of limitations. For the following reasons, the court shall deny both defendant's motion for summary judgment and plaintiff's motion to dismiss and grant in part plaintiff's motion to strike.

[*3] II. BACKGROUND

Plaintiff is the assignee of U.S. Patent Nos. 5,631,310 ("the '310 patent") and 5,889,090 ("the '090 patent"). n1 These patents disclose processes for manufacturing "highly loaded" silanized titanium dioxide pigments in polyethylene or other polymer concentrates. Manufacturers use titanium dioxide pigment, which is white, to color various products, including plastics (such as trash bags and diaper linings), paints, and paper. This suit involves the use of these pigments in the plastic film market. (D.I. 160, P 49) There are three steps involved in coloring plastics using titanium dioxide pigment. First, the titanium dioxide pigment is coated with silanes or other materials. Second, the coated titanium dioxide pigment is shipped to a masterbatch, or concentrate, maker who forms the masterbatch by adding plastic to the pigment. Third, the masterbatch maker sells this concentrate to a plastic manufacturer who, in turn, adds more plastic to the concentrate and extrudes the pigmented plastic into film for use in various consumer products. (D.I. 93 at 4)

> n1 Initially, plaintiff alleged that defendant induced infringement of U.S. Patent No. 5,607,994 (the " '994 patent"), a product patent disclosing a "polyethylene matrix consisting essentially of polyethylene and about 50 to about 87% by weight silanized [titanium dioxide] pigment." (D.I. 93, Ex. A, '994 patent, col. 8, lns. 20-23) After defendant filed the instant motion for summary judgment, plaintiff filed a second amended complaint (D.I. 137), which substituted the '090 process patent for the '994 patent. Plaintiff appears to have abandoned suit over the '994 patent, focussing instead on defendant's alleged inducement of infringement of the '090 and '310 patents. Defendant's instant motion for summary judgment addresses only the '994 and '310 patents. Because the '994 patent is no longer the subject of suit, the court shall address only defendant's arguments touching on the '310 patent.

[*4]

In the past, the use of titanium dioxide pigment in plastics had several processing disadvantages and often resulted in product quality problems. The processing disadvantages included poor dispersability of the pigment, high energy requirements for mixing the pigment, and low productivity. The pigment concentrate also occasionally produced "lacing" (holes or tears in the plastic film) and noxious gases or rendered the film resistant to printing. (D.I. 97 at 5) In response to consumer demand for less problematic pigmentation methods, both plaintiff and defendant developed "highly loaded" preparations of coated, silanized titanium dioxide pigment, which purportedly reduce the aforementioned processing and product quality disadvantages. In its second amended complaint, plaintiff alleges that defendant has induced infringement of the '310 and '090 patents through the manufacture, advertisement, promotion, and sale of silanized titanium dioxide pigment under the trade name "TiONA(R) RCL-188" (hereafter, "RCL-188") for use by masterbatch manufacturers in polyethylene concentrates. (D.I. 137, PP 5-8)

III. DISCUSSION

A. Defendant's Motion for Summary Judgment

Defendant [*5] argues that several terms used in the claims of the '310 patent are ambiguous and, therefore, are invalid for indefiniteness. Defendant points to the '310 patent's use of "coating," "mixture," and "at least one" as examples of such indefiniteness. In interrogatories, defendant asked plaintiff to clarify the meaning of each of these disputed terms, but plaintiff refused "on the ground that it is premature in seeking the contentions of [plaintiff] during the initial phase of discovery." (D.I. 93, Ex. C at 2, 4, 5) The '310 patent employs these allegedly indefinite terms in the following manner.

1. "Coating"

The '310 patent uses "coating" as a verb to describe the process of coating the pigment with "at least one organosilicon compound." (D.I. 93, Ex. B, col. 8, lns. 24-25, 58) Defendant contends, without supporting evidence, that the ambiguity of "coating"

> lies in the fact that the chemical composition of the silane, if added to water, may change at the very least from (i) the time the ingredients are mixed to (ii) the time they attach to the pigment.

Case 1:05-cv-00702-SLR   Document 12-2   Filed 11/16/2005   Page 14 of 17

Page 5
1999 U.S. Dist. LEXIS 12447, *

(D.I. 93 at 6) Due to this purported ambiguity, it is allegedly impossible to determine whether the '310 patent [*6] covers the formula for silane as it is added to water or the formula for silane as (or after) it coats the titanium dioxide pigment. (D.I. 93 at 7)

#### 2. "Mixture"

Claim 3 of the '310 patent discloses a process for coating a titanium dioxide pigment with an organosilicon compound "comprising a **mixture** of . . . (a) at least one silane . . . and (b) . . . at least one polysiloxane . . . ." (D.I. 93, Ex. B, col. 8, lns. 59-60; col. 9, ln. 5) Defendant asserts that the ambiguity lies in the patent's failure to claim the proportions of silane to polysiloxane which qualify as a mixture. (D.I. 93 at 7)

#### 3. "At least one"

Finally, the '310 patent describes the pigment coating as comprising "at least one" silane or mixtures of "at least one" silane and "at least one" polysiloxane. (D.I. 93, Ex. B., col. 8, ln. 24, 60; col. 9, ln. 5) Defendant argues that this phrase is indefinite because the claims do not provide the meaning of, or the units of measurements associated with, the phrase "at least one." (D.I. 93 at 8)

[HN1] On a motion for summary judgment, the movant bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* [*7] [HN2] A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* [HN3] If a moving party fails to establish the absence of a genuine issue of fact, "'summary judgment must be denied **even if no opposing evidentiary matter is presented.**'" *Adickes v. S. H. Kress & Co., 398 U.S. 144, 160, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)* (quoting Advisory Committee Note on 1963 Amendment to Rule 56(e)).

In the context of the instant motion, defendant must demonstrate that there is no genuine issue of material fact with respect to the indefiniteness of the '310 patent claims. [HN4] A patent claim is indefinite and, therefore, invalid if the claims fail to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." *35 U.S.C. § 112.* [HN5] Although compliance with § 112 is a question of law, see *Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1576 (Fed. Cir. 1986),* [*8] it rests on a determination of "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *Miles Labs., Inc. v. Shandon, Inc., 997 F.2d 870, 875 (Fed. Cir. 1993).* "If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more." Id. The degree of precision necessary to satisfy § 112 depends upon the subject matter and cannot be viewed in the abstract. See id.; *Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 624 (Fed. Cir. 1985).*

At issue, then, is whether one skilled in the art would find the '310 patent's use of these disputed terms indefinite. Defendant, however, offers neither evidence of the requisite degree of skill in the art nor evidence of how one skilled in the art would interpret the disputed terms. Instead, defendant merely argues in rhetorical fashion that the aforementioned terms are indefinite. Defendant cannot prevail by arguing that these terms are indefinite to **any** reader of the patent; rather, defendant must demonstrate that those **skilled in the art** would find [*9] them indefinite. See *Miles Labs., 997 F.2d at 875.* [HN6] Terms that appear facially ambiguous to the lay reader may be perfectly definite to those versed in the technology at issue. See, e.g., *Andrew Corp. v. Gabriel Elecs., Inc., 847 F.2d 819, 821 (Fed. Cir. 1988)* (explaining that terms such as "closely approximate," "approach each other," and "substantially equal" are upheld by courts "when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention"); *Seattle Box Co. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 826 (Fed. Cir. 1984)* (finding phrase "substantially equal to" sufficiently definite). On a motion for summary judgment, abstract and rhetorical arguments in support of indefiniteness simply do not satisfy defendant's burden of proof.

Defendant also argues that the court should infer indefiniteness from plaintiff's refusal, in its responses to defendant's interrogatories, to clarify the meaning of the disputed terms. Neither the law nor logic supports such an inferential leap. [HN7] On a motion for summary judgment, the nonmoving party need not present opposing evidence of definiteness [*10] where, as here, the movant has failed to show the absence of genuine factual disputes. See *Adickes, 398 U.S. at 160.* Because defendant has failed to demonstrate the absence of genuine issues of material fact with respect to whether one skilled in the art would understand the disputed terms, the court shall deny defendant's motion for summary judgment.

### B. Plaintiff's Motion to Dismiss or, in the Alternative, to Strike

Plaintiff moves the court, pursuant to *Fed.R.Civ.P. 12(b)(6),* to dismiss defendant's second and third

Case 1:05-cv-00702-SLR    Document 12-2    Filed 11/16/2005    Page 15 of 17

Page 6
1999 U.S. Dist. LEXIS 12447, *

counterclaims as untimely compulsory counterclaims filed without leave of court. In the alternative, plaintiff moves pursuant to *Fed.R.Civ.P. 12(f)* to strike defendant's second and third counterclaims as barred by the Delaware statute of limitations. (D.I. 168) Defendant asserted these counterclaims in its May 14, 1999 answer to plaintiff's second amended complaint. (D.I. 160) Defendant's second counterclaim alleges that plaintiff violated § 43(a) of the Lanham Act by making false and deceptive statements about defendant's RCL-188 product. (D.I. 160, PP 71-73) The third counterclaim asserts a state law unfair competition claim based on these same [*11] allegations. (D.I. 160, PP 74-75)

### 1. Plaintiff's Motion to Dismiss

In support of its motion, plaintiff argues that defendant's second and third counterclaims are compulsory and, therefore, should have been asserted earlier than in its answer to plaintiff's second amended complaint. Plaintiff, however, offers no compelling justification for departing from the well established rule that [HN8] a defendant may include counterclaims in its answer to an amended complaint. See *Standard Chlorine of Del., Inc. v. Sinibaldi, 1995 U.S. Dist. LEXIS 13913*, Civ. A. No. 91-188- SLR, *1995 WL 562285*, at *2 (D. Del. Aug. 24, 1995); *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc., 50 F.R.D. 415, 419 (D. Del. 1970)*. Courts in this district have reasoned that, [HN9] because the amended pleading relates back to the date of the original pleading, the amending pleader "can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading." *Joseph Bancroft & Sons, 50 F.R.D. at 419.*

In the present case, plaintiff filed its second amended complaint on April 7, 1999. (D.I. 137) In due course, defendant [*12] then filed its answer, which included the instant counterclaims. Under the settled law of this judicial district, defendant's counterclaims were filed in a timely manner. Thus, the court shall deny plaintiff's motion to dismiss.

### 2. Plaintiff's Motion to Strike

There remains, however, the issue of whether the relevant statute of limitations bars defendant from relying on some or all of the allegations asserted in support of its second and third counterclaims. The Lanham Act provides no statute of limitations. Generally, [HN10] when a federal statute provides no statute of limitations federal courts look to the applicable state statute of limitations for guidance. See *Beauty Time, Inc. v. Vu Skin Sys., Inc., 118 F.3d 140, 143 (3d Cir. 1997)*. Accordingly, the court must look to the Delaware statute of limitations for the relevant limitations period for both defendant's Lanham Act and state unfair competition counterclaims.

[HN11] The Delaware statute of limitations provides that "no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force . . . shall be brought after the expiration of 3 years from the accruing of the cause of [*13] such action. . . ." *10 Del. C. § 8106*. Because defendant's second counterclaim is "an action based on a statute" and defendant's third counterclaim is "an action to recover damages caused by an injury unaccompanied by force," Delaware's three year statute of limitations applies in the absence of an equitable exception.

Most of defendant's allegations fall within this three year period. Indeed, defendant asserts that plaintiff currently "is informing its customers and potential customers -- all of whom are either customers or potential customers of [defendant] --that the use of [defendant's] RCL-188 product will infringe [plaintiff's] patents, even though [plaintiff] knows . . . that its patents are invalid and unenforceable." (D.I. 160, P 63) Although defendant provides no specific dates for plaintiff's allegedly deceptive statements, defendant has asserted an ongoing pattern of misrepresentations and disparagement of its RCL-188 pigment by plaintiff. As such, these allegations fall within the limitations period. n2 Insofar as defendant relies on plaintiff's false statements about defendant's RCL-188 product, the statute of limitations does not bar defendant's second and [*14] third counterclaims.

---

n2 Defendant need not, as plaintiff argues, specify the exact date of these alleged falsehoods.

---

Defendant, however, also refers to a July 1995 incident in support of its second and third counterclaims. Specifically, defendant alleges that

> in or about July 1995, [plaintiff] distributed to customers and potential customers a brochure comparing two of its titanium dioxide products to [defendant's competing product, RCL-4]. In that brochure, [plaintiff] intentionally made the false claims that its R-101 and R-104 products had significantly better vinyl tinting strength than RCL-4 and better dispersability than RCL-4. In fact, [plaintiff's] own internal testing

Case 1:05-cv-00702-SLR   Document 12-2   Filed 11/16/2005   Page 16 of 17

Page 7
1999 U.S. Dist. LEXIS 12447, *

documents show otherwise. The brochure also falsely claimed that [defendant's] RCL-4 product contained methyl stearate -- a compound disfavored by customers -- when, in fact, RCL-4 contains no methyl stearate.

(D.I. 160, P 65) Because defendant filed its counterclaims in May of 1999, events relating to this 1995 [*15] brochure fall outside the three year limitations period. In the absence of some equitable exception, defendant cannot rely upon this 1995 brochure to support its second and third counterclaims.

Defendant claims that the "time of discovery rule" provides such an exception. The "time of discovery rule" tolls the statute of limitations where "an inherently unknowable injury . . . has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect . . . develops gradually over a period of time . . . ." *Cavalier Group v. Strescon Indus., Inc., 782 F. Supp. 946, 951 (D. Del. 1992)* (internal quotations and citation omitted). The statute of limitations period is tolled until a person of ordinary intelligence and prudence would have had facts sufficient to put them on notice of an injury. Id. Defendant claims in its answering brief, but not in its counterclaims, that it was "blamelessly ignorant" of plaintiff's allegedly misleading brochure until discovery commenced in the present litigation. (D.I. 176 at 11)

The court finds that the "time of discovery" rule is not applicable to the instant case. A misleading product brochure [*16] is not an "inherently unknowable injury," especially when the brochure in question was distributed to "potential customers" in a highly competitive market. As such, defendant's counterclaims with respect to this 1995 incident are barred by the statute of limitations. Moreover, the 1995 brochure is irrelevant and immaterial to the issues at bar because it refers to completely different products than those allegedly covered by the '310 and '090 patents. Accordingly, pursuant to *Fed.R.Civ.P. 12(f)*, the court shall strike P 65 from defendant's second and third counterclaims.

## IV. CONCLUSION

For the aforementioned reasons, the court shall deny defendant's motion for summary judgment and plaintiff's motion to dismiss and grant in part and deny in part plaintiff's motion to strike. An appropriate order shall issue.

## CERTIFICATE OF SERVICE

I, M. Duncan Grant, hereby certify that on November 16, 2005 a true and correct copy of the foregoing Motion to Dismiss and accompanying Opening Brief was served upon the following in the manner indicated:

Pamela S. Tikellis
Robert J. Kriner, Jr.
A. Zachary Naylor
Robert R. Davis
CHIMICLES & TIKELLIS LLP
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
*(via hand-delivery)*

Attorneys for Plaintiffs

James R. Malone, Jr.
Joseph G. Sauder
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
*(via U.S. Mail)*

/s/ M. Duncan Grant
M. Duncan Grant (#2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500 (telephone)
(302) 421-8390 (fax)