IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated | : : : : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 05-702 (SLR) |
| | : | |
| PEPCO HOLDINGS, INC.; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, | : : | |
| | : | |
| Defendants | : | |
| | : | |

## APPENDIX TO DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

M. Duncan Grant (#2994)
Sasha L. Azar (#4200)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P. O. Box 1709
Wilmington, DE   19899-1709
302-656-2500 (telephone)
302-656-9053(fax)

Susan K. Hoffman *(pro hac vice)*
Larry R. Wood, Jr.
Kay Kyungsun Yu *(pro hac vice)*
Barak A. Bassman *(pro hac vice)*
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000 (telephone)
215-981-4750 (fax)

Attorneys for Defendants

Dated:  November 16, 2005

# TABLE OF CONTENTS

Part One: Connective Cash Balance Sub-Plan ......................... .......................A-1 to A-35

Hurlic v. Southern CA Gas Co.
  Notice of Motion and Motion to Dismiss ............... .............................A-36 to A-72

Hurlic v. Southern CA Gas Co.
  Order Granting Defendants' Motion to Dismiss ............... ...................…..A-73 to A-75

# Part One: Connective Cash Balance Sub-Plan

PART ONE

CONECTIV CASH BALANCE SUB-PLAN

Effective January 1, 1999

## TABLE OF CONTENTS

Page

PREAMBLE ..................................................................... 2

ARTICLE 1 -- DEFINITIONS ..................................................... 3

ARTICLE 2 -- ELIGIBILITY FOR PARTICIPATION ................................. 14
  2.1 Continuing Participants. ............................................... 14
  2.2 New Participants ...................................................... 14
  2.3 Transferred Employees ................................................. 14

ARTICLE 3 -- ACCOUNTS AND CREDITS ......................................... 15
  3.1 Establishment of Cash Balance Account. ................................. 15
  3.2 Initial Cash Balance. .................................................. 15
  3.3 Pay Credits. .......................................................... 17
  3.4 Interest Credits ...................................................... 17
  3.5 Transition Credits. ................................................... 18
  3.6 Grandfather Benefit. .................................................. 19

ARTICLE 4 -- ELIGIBILITY FOR RETIREMENT ................................... 20
  4.1 Dates of Eligibility for Retirement Benefits ........................... 20

ARTICLE 5 -- AMOUNT OF RETIREMENT INCOME ................................. 21
  5.1 Normal Retirement Benefit ............................................. 21
  5.2 Terminated Vested Retirement Benefit .................................. 21
  5.3 Deferred Retirement Benefit .......................................... 21
  5.4 Required Distributions ................................................ 21
  5.5 Disability Retirement Benefit ......................................... 21
  5.6 Employment After Normal Retirement Age ............................... 22

ARTICLE 6 -- FORMS OF PAYMENT; SURVIVOR BENEFITS ........................ 24
  6.1 Normal Form of Retirement Income ..................................... 24
  6.2 Pre-Retirement Survivor's Benefits ................................... 25
  6.3 Grandfather Survivor Benefit. ......................................... 26
  6.4 Form of Retirement Income for Former Employees of Conowingo Power Company 26
  6.5 Mandatory Lump Sum Distributions. .................................... 26
  6.6 Optional Forms of Benefit. ............................................ 27

PHLEGAL: #663223 v8 #7qv08!.WPD

## PREAMBLE TO PART ONE

The Conectiv Cash Balance Sub-Plan (the "CB Sub-Plan") is Part One of the Conectiv Retirement Plan (the "Plan"). Provisions generally applicable to this Part One and the other Parts are contained in the Base Plan.

Delmarva Plan Participants or ACE Plan Participants who retired on a Retirement Date or who terminated their employment with the Employer prior to January 1, 1999, must look solely to the Prior Plan provisions in effect on their Retirement Date or termination of employment date for their Retirement Income, if any, except as specifically provided otherwise in the CB Sub-Plan.

ARTICLE 1
DEFINITIONS

The following words and phrases as used herein shall have the following meanings, unless a different meaning is plainly required by the context:

    1.1 <u>Accrued Benefit</u> means the greater of:

        1.1.1. The Participant's Payable Cash Balance, converted to an Actuarially Equivalent single life annuity that is payable as of the determination date; or

        1.1.2. The Participant's Minimum Benefit, stated as a life annuity commencing as of the determination date.

    1.2 <u>ACE Plan</u> has the meaning ascribed to it in the Base Plan.

    1.3 <u>Actuarial Equivalent or Actuarially Equivalent</u> means of equal actuarial value on the basis of the assumptions and factors described in Schedule A.

    1.4 <u>Affiliated Company</u> has the meaning ascribed to it in the Base Plan.

    1.5 <u>Annuity Starting Date</u> has the meaning ascribed to it in the Base Plan.

    1.6 <u>Board of Directors</u> has the meaning ascribed to it in the Base Plan.

    1.7 <u>Cash Balance Account</u> means the bookkeeping account maintained with respect to a Participant in accordance with Section 3.1 which is the sum of, as applicable, (a) the Initial Cash Balance, (b) Pay Credits, (c) Interest Credits and (d) Transition Credits.

    1.8 <u>CB Sub-Plan</u> has the meaning ascribed to it in the Base Plan.

    1.9 <u>Code</u> has the meaning ascribed to it in the Base Plan.

    1.10 <u>Committee</u> has the meaning ascribed to it in the Base Plan.

    1.11 <u>Company</u> has the meaning ascribed to it in the Base Plan.

    1.12 <u>Compensation</u> paid to a Participant by the Employer means[**, for the period January 1, 1999 through February 5, 2000,**] any amounts paid as salary, overtime, shift differential or bonus, including elective deferrals to plans described under Code Sections 401(k) and 125, and excluding contributions the Employer makes to this or any other benefit plan, any amounts paid in the form of fringe benefits (including but not limited to reimbursed moving expenses, insurance, and the like; provided, however, that meal allowances shall not be excluded

as fringe benefits) and any dividend rights earned under any executive compensation plan of the Company even though such amounts may be taxable for federal income tax purposes. In determining whether a payment is includible under this definition, the rules for the safe harbor definition set forth in Treas. Reg. § 1.415-2(d)(10), as adjusted by Treas. Reg. §§ 1.414(s)-l(c)(3) and (4) shall be applied. Notwithstanding the foregoing, Compensation taken into account for a Participant shall not exceed the annual limitation specified by section 401(a)(17) of the Code and shall be modified to reflect adjustments in the limitation announced by the Secretary of the Treasury at the same time and in the same manner as under section 415(d) of the Code.

[For the period from February 6, 2000 through February 29, 2000, **Compensation** means:

1.12.1  any amounts paid as salary, overtime, shift differential or bonus, including elective deferrals to plans described under Code Sections 401(k) and 125 and excluding contributions the Employer make to this or any other benefit plan, any amounts paid in the form of fringe benefits (including, but not limited to reimbursed moving expenses, insurance and the like; provided, however, that meal allowances shall not be excluded as fringe benefits) and any dividend rights earned under any executive compensation plan of the Company even though such amounts may be taxable for federal income tax purposes. In determining whether a payment is includible under this definition, the rules for the safe harbor definition set forth in Treas. Reg. §1.415-2(d)(10), as adjusted by Treas. Reg. §§1.414(s)-1(c)(3) and (4) shall be applied.

1.12.2  Notwithstanding Section 1.12.1, for purposes of determining the Grandfather Benefit for under Sections 1.23.2 and 3.6.1, Compensation shall have the same meaning as in the ACE or Delmarva Sub-Plan, as applicable.

1.12.3  Notwithstanding the foregoing, Compensation taken into account for a Participant shall not exceed the annual limitation specified by section 401(a)(17) of the Code and shall be modified to reflect adjustments in the limitation announced by the Secretary of the Treasury at the same time and in the same manner as under section 415(d) of the Code.

Effective March 1, 2000, **Compensation** means:

1.12.1.  any amounts paid as salary, overtime, shift differential or bonus, including elective deferrals to plans described under Code Sections 401(k) and 125, and excluding contributions the Employer makes to this or any other benefit plan, any amounts paid in the form of fringe benefits (including but not limited to reimbursed moving expenses, insurance, and the like; provided, however, that meal allowances shall not be excluded as fringe benefits) and any dividend rights earned under any executive compensation plan of the Company even though such amounts may be taxable for federal income tax purposes. In determining whether a payment is includible under this definition,

-4-

the rules for the safe harbor definition set forth in Treas. Reg. § 1.415-2(d)(10), as adjusted by Treas. Reg. §§ 1.414(s)-l(c)(3) and (4) shall be applied.

**1.12.2.** Notwithstanding Section 1.12.1, for purposes of determining the Grandfather Benefit for under Sections 1.23.2 and 3.6.1, Compensation shall have the same meaning as in the ACE or Delmarva Sub-Plan, as applicable.

**1.12.3.** Notwithstanding the foregoing, Compensation taken into account for a Participant shall not exceed the annual limitation specified by section 401(a)(17) of the Code and shall be modified to reflect adjustments in the limitation announced by the Secretary of the Treasury at the same time and in the same manner as under section 415(d) of the Code.

**1.12.4.** Notwithstanding the foregoing, a Participant who is a highly compensated employee, as defined in Section 414(q) of the Code, may, pursuant to a written agreement with an Employer, elect to exclude all or a portion of his Compensation for purposes of (a) accruing a benefit under the CB Sub-Plan, (b) determining the Participant's Payable Cash Balance, and (c) determining, if applicable, the Participant's Grandfather Benefit.]

1.13  Continuous Service. See "Service."

1.14  Deferred Retirement Date means the first day of the month coincident with or next following the Participant's election to retire from employment with the Employer after attaining Normal Retirement Age. A Participant who elects to commence receipt of retirement benefits while remaining employed on or after attainment of age 70½ shall be deemed to have a Deferred Retirement Date as of the commencement of such in-service benefits.

1.15  Delmarva Plan has the meaning ascribed to it in the Base Plan.

1.16  Disability Retirement Date means the first day of a month coincident with or next following the date a Participant elects to retire from employment as a Non-Bargaining Unit Employee by reason of sickness or injury after (a) completing at least fifteen (15) Years of Service; (b) becoming permanently incapable of performing the duties of any position with the Employer with the degree of efficiency required by the Employer; and (c) providing to the Committee satisfactory medical evidence of disability.

1.17  Effective Date has the meaning ascribed to it in the Base Plan.

1.18  Employee has the meaning ascribed to it in the Base Plan.

1.19  Employer has the meaning ascribed to it in the Base Plan.

A - 6

1.20  Employment Commencement Date. See "Service."

1.21  Entry Date has the meaning ascribed to it in the Base Plan.

1.22  ERISA has the meaning ascribed to it in the Base Plan.

1.23  Final Average Compensation means:

1.23.1. For purposes of determining the 650% limit on the Payable Cash Balance, the annualized sum of the Participant's highest five (5) consecutive calendar years of Compensation divided by five (5); provided, that if the Participant does not have five (5) consecutive calendar years of Compensation, Final Average Compensation shall be determined using Compensation for all Years of Service with the Employer divided by all Years of Service with the Employer; provided further, that if a Participant has less than 12 months of Service, Final Average Compensation shall equal Compensation paid to the Participant by the Employer.

1.23.2. For purposes of determining the Grandfather Benefit, the sum of Compensation for the periods in the following subsections (i) through (iii) divided by five (5): (i) the last four (4) completed calendar years prior to the determination date; (ii) the completed months in the calendar year in which the determination date occurs; and (iii) that number of months occurring prior to the four (4) calendar years prior to the determination date that is equal to 12 minus the number of months in the preceding subsection (ii); provided, that if the Employee identifies another consecutive sixty (60) month period which produces a larger Final Average Compensation, Compensation from that period shall be used to calculate Final Average Compensation.

**[However, effective January 1, 1999, this sub-paragraph 1.23.2 shall be amended to read, For purposes of determining the Grandfather Benefit for Delmarva Plan Grandfathered Participants the sum of Compensation for the periods in the following subsections (i) through (iii) divided by five (5): (i) the last four (4) completed calendar years prior to the determination date; (ii) the completed months in the calendar year in which the determination date occurs; and (iii) that number of months occurring prior to the four (4) calendar years prior to the determination date that is equal to 12 minus the number of months in the preceding subsection (ii); provided, that if the Employee identifies another consecutive sixty (60) month period which produces a larger Final Average Compensation, Compensation from that period shall be used to calculate Final Average Compensation.**

**1.23.3 Effective January 1, 1999, for purposes of determining the Grandfather Benefit for ACE Plan Grandfathered Participants, Final Average Compensation shall have the same meaning as in the ACE Sub-Plan.]**

1.24  Grandfather Benefit means the benefit determined in accordance with Section 3.6.

1.25 <u>Grandfathered Participant</u> means a Prior Plan Participant who is (1) an Employee on the Effective Date and (2) as of the Effective Date (a) is credited with 20 or more Years of Benefit Service or (b) is at least age 50. A Bargaining Unit Employee who becomes eligible to participate in the CB Sub-Plan pursuant to Section 2.3 shall be a Grandfathered Participant if such Bargaining Unit Employee met the eligibility requirements of the preceding sentence as of the Effective Date.

1.26 <u>Grandfather Period</u> means the period from the Effective Date until the earlier to occur of a Grandfathered Participant's Severance from Employment Date or December 31, 2008.

1.27 <u>Grandfather Survivor Benefit</u> is the benefit determined in accordance with Section 6.3.

1.28 <u>Hour of Service</u>. See "Service."

1.29 <u>Initial Cash Balance</u> means the amount determined pursuant to Section 3.2.

1.30 <u>Interest Crediting Rate</u> means, for each Plan Year, the 30-year Treasury Bond rate for the October immediately preceding the beginning of the Plan Year.

1.31 <u>Interest Credits</u> means the amount that is credited to a Participant's Cash Balance Account in accordance with Section 3.4.

1.32 <u>Leased Employee</u> has the meaning ascribed to it in the Base Plan.

1.33 <u>Minimum Benefit</u> means the greater of :

1.33.1. The Participant's accrued benefit under the Prior Plan as of December 31, 1998, stated as a life annuity commencing at age 65; provided, that for Prior Plan Participants who transfer to Non-Bargaining Unit Employee status after the Effective Date, the accrued benefit under the Prior Plan shall be determined as of the first anniversary of the date of transfer; provided further, that if the Employee identifies a consecutive 60-month period, other than the 60-month period preceding the Effective Date or, if applicable, the first anniversary of the date of transfer, which produces a larger Minimum Benefit, Compensation from that period shall be used to calculate the Minimum Benefit; or

1.33.2. The Participant's Grandfather Benefit.

1.34 <u>Non-Bargaining Unit Employee</u> has the meaning ascribed to it in the Base Plan.

-7-

A - 8

1.35 <u>Normal Retirement Age</u> means the date upon which a Participant attains age 65.

1.36 <u>Normal Retirement Date</u> means the first day of a month coincident with or next following the date a Participant elects to retire from employment with the Employer upon attaining Normal Retirement Age.

1.37 <u>One Year Break in Service</u>. See "Service."

1.38 <u>Participant</u> has the meaning ascribed to it in the Base Plan.

1.39 <u>Part-Time Employee</u>. See "Service."

1.40 <u>Payable Cash Balance</u> means, as of any determination date, the lesser of (a) the Participant's Cash Balance Account at the determination date or (b) 650% of Final Average Compensation as of such date.

1.41 <u>Pay Crediting Rate</u> means the rate determined in accordance with Section 3.3.2.

1.42 <u>Pay Credits</u> means amounts which are credited to a Participant's Cash Balance Account in accordance with Section 3.3.

1.43 <u>Permanent Break in Service</u>. See "Service."

1.44 <u>Plan Year</u> has the meaning ascribed to it in the Base Plan.

1.45 <u>Post-65 Disability Benefit</u> is the benefit payable upon a Participant's Disability Retirement Date in accordance with Section 5.4.2.

1.46 <u>Pre-Cash Balance Accrued Benefit</u> means accrued benefit under the Prior Plan as of December 31, 1998 assuming that the Compensation used to determine such accrued benefit is the Compensation for the consecutive 60-month period ending on December 31, 1998.

1.47 <u>Pre-65 Disability Benefit</u> is the benefit payable upon a Participant's Disability Retirement Date in accordance with Section 5.4.1.

1.48 <u>Prior Plan</u> has the meaning ascribed to it in the Base Plan.

1.49 <u>Prior Plan Conversion Credit</u> means (a) the actuarial present value of the Pre-Cash Balance Accrued Benefit at earliest retirement age, determined using seven percent (7%) interest and the 1983 GAM unisex mortality table; (b) for Participants who have not reached earliest retirement age as of December 31, 1998, discounted from the earliest retirement

age to the Participant's age at December 31, 1998 at seven percent (7%) interest, but no mortality discount; (c) multiplied by the applicable early retirement reduction factor pursuant to the terms of the Prior Plan; and (d) for a Participant in the Delmarva Plan, increased by thirteen percent (13%) to reflect the adjustment for the subsidized survivor annuity under the Delmarva Plan.

    1.50  Reemployment Commencement Date.  See "Service."

    1.51  Required Beginning Date has the meaning ascribed to it in the Base Plan.

    1.52  Retirement Date means a Participant's Normal Retirement Date, Terminated Vested Retirement Date, Deferred Retirement Date or Disability Retirement Date.

    1.53  Retirement Income means the retirement benefits provided to a Participant upon his Retirement Date, or, if applicable the survivor benefits provided to any survivor.

    1.54  Service.

        1.54.1.  General Rules.  Years of Service shall be credited as provided in this Section.

        (a)     Service will be credited for an Employee's entire period of employment as an Employee.

        (b)     An Employee shall receive credit for all service credited to an Employee pursuant to the terms of the Prior Plan, provided such Employee is an Employee on the Effective Date.  If an Employee is not an Employee on the Effective Date but has a Reemployment Commencement Date prior to incurring a Permanent Break in Service, then credit for Service prior to the Break shall be restored.  If the Employee has a Reemployment Commencement Date prior to incurring a One-Year Break in Service, such Employee shall be credited with the Service between his Severance from Employment Date and his Reemployment Commencement Date.

        (c)     Conectiv Thermal Systems, Inc. and Atlantic Energy Enterprises, Inc. Provisions.

        (i)     Solely for purposes of determining eligibility for a Grandfather Benefit, Participants who (A) were formerly employed by Atlantic City Electric Company; (B) immediately thereafter were employed by Conectiv Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc.; and (C) on the Effective Date were employed by Conectiv Thermal Systems, Inc., Atlantic Energy Enterprises, Inc. or Conectiv Resource Partners, shall be credited with their Years of Service for any and all of such companies.  However, their Grandfather Benefit shall be calculated solely on the basis of their prior service with (and

-9-

compensation from) Atlantic City Electric Company plus their Service under this Part on and after the Effective Date (as if such Service were contiguous).

(ii)    Participants who (A) transferred from Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc. to Delmarva Power and Light Company, Atlantic City Electric Company or Conectiv Resource Partners before January 1, 1998, (B) continued to perform services for Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc., and (C) were employed by Delmarva Power and Light Company, Atlantic City Electric Company or Conectiv Resource Partners on the Effective Date, shall become Participants in this Part on the same basis as all other Prior Plan Participants as of the Effective Date, based on their accrued benefits and service credits as calculated under the Prior Plan in which they were participating immediately prior to the Effective Date.

(iii)    All other Participants who are employed by Conectiv Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc. on or after the Effective Date or who transferred from Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc. to Delmarva Power and Light Company, Atlantic City Electric Company or Conectiv Resource Partners on or after January 1, 1998, shall receive credit for their Years of Service for all such companies for purposes of calculating vesting service and for eligibility for Transition Credits. Any such Participants who were participating in a Prior Plan immediately prior to the Effective Date shall have a Minimum Benefit as defined in Section 1.33.1, but shall have an Initial Cash Balance equal to zero, subject to the provisions of Section 3.2.3.

(d)    Service will be credited for periods while on authorized leave of absence with full salary (provided the Employee returns to the Employer's employ at the expiration of the authorized leave). Service will not be credited for periods of authorized leave of absence without pay, but such an authorized leave of absence without pay shall not constitute a break in Service provided the Employee returns to the Employer's employ at the expiration of the authorized leave. A layoff period of less than one (1) year will be considered such a leave of absence without pay.

(e)    Service will also be credited for employment with any employer acquired by the Company on such terms as may be approved by the Board of Directors.

(f)    Notwithstanding any provision of the Plan to the contrary, contributions, benefits and service credits with respect to qualified military service will be provided in accordance with Code section 414(u) in accordance with the Uniformed Services Employment and Reemployment Rights Act of 1994.

(g)    If a Leased Employee becomes an Employee, service will be credited for purposes of eligibility and vesting for periods after December 31, 1988 that the Employee was a Leased Employee.

-10-

(h)     Service shall not include Years of Service with respect to which an employee received a mandatory lump sum distribution (excluding a "deemed cash out"), as described in Section 6.5. Further, Service shall be disregarded once a Participant commences receipt of Retirement Income; provided, however, that if a Participant is reemployed, Service shall be considered for purposes of eligibility for Transition Credits.

1.54.2. <u>Elapsed Time Rule; Determination of Years of Service</u>.  An Employee will be credited with whole and partial Years of Service on the basis of the elapsed time rule as described in this Section 1.54.2.

(a)     <u>Basic Elapsed Time Rule</u>.  Years of Service under the elapsed time rule are based on the passage of time during which the employment relationship exists. One (1) Year of Service is credited for each 365 days of employment (366 days for a period that includes February 29).  A day of employment is credited for each day of the period beginning on an Employee's Employment Commencement Date (or Reemployment Commencement Date, if applicable) and ending with his Severance from Employment Date.

(b)     <u>Employment Commencement Date</u> means the first date on which an Employee is credited with Service for the Employer; provided that if an Employee's first day of Service is the first business day of any calendar year, such Employee will be deemed to have been hired on December 31 of the prior year.

(c)     <u>Reemployment Commencement Date</u> means the first date on which an Employee is credited with Service for the Employer following a break in credited Service.

(d)     <u>Severance from Employment Date</u> means the earlier of (i) the date an Employee quits, is discharged, retires or dies, or (ii) the date 365 days after the date he is first absent from employment for any reason (including e.g., lay off, disability, leave of absence, vacation) provided he is continuously absent from employment for such 365-day period.

(e)     <u>One-Year Break in Service</u>.  An Employee will incur a One-Year Break in Service if he is continuously absent from employment for 365 or more days following a Severance from Employment Date.

(f)     <u>Permanent Break in Service</u> means five (5) consecutive One Year Breaks in Service; provided, however, that an Employee who has been credited with five (5) Years of Service shall not thereafter incur a Permanent Break in Service.

1.54.3. <u>Rules For Vesting Purposes Only</u>.  The following rules apply for the purposes of vesting:

-11-

A - 12

(a)   Service Spanning Rules. If an Employee's employment is terminated by reason of a quit, discharge, or retirement and the Employee then returns to employment within 365 days of his Severance from Employment Date, he shall be credited with Service during that period of severance. If an Employee severs from Service by reason of a quit, discharge or retirement during an absence from Service of 365 days or less for any reason other than a quit, discharge or retirement and the Employee then returns to employment within 365 days of the date on which he was first absent from Service, he shall be credited with Service during that period of severance.

(b)   Special Rule for Former ACE Plan Participants. If a Non-Bargaining Unit Employee was a Participant in the ACE Plan on December 29, 1998 and is a Non-Bargaining Unit Employee on the Effective Date, such Participant shall, for vesting purposes only, be deemed to have been hired on the January 1 of the Plan Year in which such Participant's Employment Commencement Date or Reemployment Commencement Date occurred.

(c)   Limited Break in Service. An Employee will incur a break in Service if he is continuously absent from employment for 365 or more days following a Severance from Employment Date, unless the Employee establishes that the absence is for maternity or paternity reasons. In such a case, the Employee will not incur a break in Service until he is continuously absent from employment for two consecutive 365-day periods following a Severance from Employment Date. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence on account of (1) the pregnancy of the Employee; (2) the birth of the child of the Employee; (3) the adoption of a child by the Employee; or (4) the immediate post-natal or post-adoption care of a child of the Employee.

(d)   Forfeiting Years of Service for Vesting Purposes. If an Employee incurs a break in Service at a time when he is not credited with at least five (5) Years of Service for vesting purposes, and if such period of break in Service equals or exceeds five (5) years, then his prior period of Service will be forfeited. If an Employee incurs a break in Service at a time when he is credited with at least five (5) Years of Service for vesting purposes, such Employee will not forfeit any Service because of the break in Service.

1.54.4. Exception to Break in Service Rules. Notwithstanding the foregoing, if an Employee has at least ten (10) Years of Continuous Service when he retires, and if such Employee forfeited other Years of Service on account of a break in Service, he shall nevertheless be credited with the otherwise forfeited Years of Service just prior to his most recent break in Service which caused the forfeiture.

1.54.5. No Amendment to Reduce Credited Service. No amendment to this CB Sub-Plan or the Base Plan shall cause any Employee to be credited with less Service with respect to employment prior to the amendment than would have been credited under the terms of the CB Sub-Plan or the Base Plan in effect prior to the amendment.

-12-

1.54.6. <u>Rules of Construction</u>. The foregoing rules for crediting Service shall be interpreted and applied in accordance with the rules prescribed in Department of Labor Regulation 29 CFR § 2530.200.

1.54.7. <u>Continuous Service</u> means continuous full-time or part-time employment.

1.54.8. <u>Years of Benefit Service</u>. For a Participant who is not a Part-Time Employee, Years of Benefit Service shall equal Years of Service. For a Participant who is a Part-Time Employee, Years of Benefit Service will be credited for periods of part-time employment, and solely for purposes of calculating a Grandfather Benefit under Section 3.6 or Section 6.3, as follows:

| Hours of Service Completed in Accrual Computation Period | Percentage of Full Year of Benefit Service Credited |
|---|---|
| Less than 1,000 | 0% |
| 1,000-1,200 | 60% |
| 1,201-1,400 | 70% |
| 1,401-1,600 | 80% |
| 1,601-1,800 | 90% |
| 1,801 or more | 100% |

The accrual computation period begins on the employment commencement date as a Part-Time Employee (or re-employment commencement date as a Part-Time Employee, if applicable) and each anniversary date thereafter.

(a)    <u>Part-Time Employee</u> means any Employee whose regularly-scheduled work schedule is for less than 40 hours per week on average.

(b)    <u>Hour of Service</u> means each hour for which an Employee is:

(i)    Directly or indirectly paid or entitled to payment by the Employer for the performance of duties;

(ii)    Directly or indirectly paid or entitled to payment by the Employer on account of a period of time during which no duties were performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or an authorized leave of absence. However, no more than 501 Hours of Service shall be credited under this subparagraph (ii) on account of any single continuous period during which the Employee performs no duties

-13-

(whether or not such period occurs in a single computation period). Payments made or due under a plan maintained by the Employer solely to comply with applicable worker's compensation, unemployment compensation, or disability insurance law, or to reimburse an Employee for medical or medically-related expenses shall not be considered as payments by the Employer for purposes of this subparagraph; or

(iii)    Either awarded back pay or for which the Employer agrees to pay such back pay, irrespective of mitigation of damages. An Hour of Service received under this subparagraph (iii) shall be credited to that computation period for which the award was granted. The same Hours of Service shall not be credited both under subparagraph (i) or (ii), as the case may be, and under this subparagraph (iii). Hours of Service for which back pay is awarded or agreed to with respect to periods described in subparagraph (ii) shall be subject to the limitations set forth in that subparagraph.

For purposes of subparagraphs (ii) and (iii), and for purposes of subparagraphs (i) in the case of an Employee for whom records of hours worked are not required by applicable law to be kept, an Employee shall be credited with 10 Hours of Service for each day for which he would have been required to be credited with an Hour of Service. Hours of Service shall be credited to the applicable computation period in accordance with Department of Labor Regulation Section 2530.200b-2(b) and (c).

1.54.9. Family and Medical Leave Act. Solely for purposes of calculating an Employee's Service for vesting purposes, Service shall also be credited to the extent required under the Family and Medical Leave Act to avoid a break in Service during any period that an Employee is on an approved leave of absence, provided the Employee returns to work for the Employer at the end of such leave of absence.

1.55  Severance from Employment Date. See "Service."

1.56  Terminated Vested Retirement Date means the first day of the month coincident with or next following a Participant's Severance from Employment Date after completing five (5) Years of Service; provided, that a Participant may elect to defer the Terminated Vested Retirement Date to the first day of any month after the attainment of age fifty-five (55) or current age if older, but not beyond the Participant's Normal Retirement Age.

1.57  Transition Credits means amounts that are credited to a Participant's Cash Balance Account in accordance with Section 3.5.

1.58  Year of Benefit Service. See "Service."

1.59  Year of Service. See "Service."

-14-

1.60  <u>Special Retirement Date Definition for Certain Participants.</u>  In the case of a Participant with a Minimum Benefit or Grandfather Benefit calculated under the ACE Sub-Plan, who elects to retire on a Retirement Date on or before January 1, 2000 or who is eligible for a Terminated Vested Benefit and who last earned an Hour of Service before January 1, 2000, such Participant may elect to have his Minimum Benefit or Grandfather Benefit calculated as if his Retirement Date were the first of the month in which his election to retire was submitted, but only if his election to retire is submitted on or before the 15th day of such month; otherwise, his Minimum Benefit or Grandfather Benefit shall be calculated as if his Retirement Date were the date otherwise specified in this Plan.

{\*\*\*}

## ARTICLE 2
## ELIGIBILITY FOR PARTICIPATION

2.1 <u>Continuing Participants</u>. Each Non-Bargaining Unit Employee who was a Participant in one of the Prior Plans on December 31, 1998 and is a Non-Bargaining Unit Employee on the Effective Date shall be a Participant in the CB Sub-Plan as of the Effective Date.

2.2 <u>New Participants</u>.

2.2.1. <u>General</u>.

(a)    Each other Non-Bargaining Unit Employee shall become a Participant as of the Entry Date coincident with or next following the date on which he completes a Year of Service, provided that he is a Non-Bargaining Unit Employee on such Entry Date.

(b)    An Employee who completes the eligibility requirements of Section 2.2.1(a) but who is not a Non-Bargaining Unit Employee on the Entry Date, shall be eligible to participate on the first date thereafter on which he completes an Hour of Service as a Non-Bargaining Unit Employee.

2.2.2. <u>Termination of Employment Prior to Entry Date</u>.

(a)    An Employee who has a Severance from Employment Date prior to completing the eligibility requirements of Section 2.2.1 and who has a Reemployment Commencement Date prior to incurring a One-Year Break in Service, shall be eligible to participate as of the next Entry Date coincident with or next following the date on which he completes a Year of Service, provided he is a Non-Bargaining Unit Employee on such date.

(b)    An Employee who has a Severance From Employment Date prior to completing the eligibility requirements of Section 2.2.1 and who does not thereafter have a Reemployment Commencement Date prior to incurring a One-Year Break in Service, shall not receive credit for his prior service for purposes of eligibility and shall be required to complete the requirements of Section 2.2.1.

2.3 <u>Transferred Employees</u>. A Local 1238 Employee, Local 1307 Employee, or Local 210 Employee who becomes a Non-Bargaining Unit Employee shall remain a participant in the ACE Sub-Plan or Delmarva Sub-Plan in which he was previously a participant for one year following the date of transfer. If such Employee remains as a Non-Bargaining Unit Employee one year from the date of transfer, he shall become a Participant in the CB Sub-Plan as of the January 1 that occurs within the twelve-month period following the date of transfer.

-16-

-17-

# ARTICLE 3

## ACCOUNTS AND CREDITS

3.1 <u>Establishment of Cash Balance Account</u>. A Cash Balance Account shall be established and maintained for each Participant and credits shall be made to such Cash Balance Account in accordance with the provisions of this Article 3. The Cash Balance Accounts established and maintained hereunder are for bookkeeping purposes only and shall not be construed as creating for any Participant a right to specific assets of the Plan.

3.2 <u>Initial Cash Balance</u>. Each Participant shall have an Initial Cash Balance, determined as follows.

3.2.1. <u>New Participants</u>. Employees who first become Participants on or after the Effective Date shall have an Initial Cash Balance of zero.

3.2.2. <u>Prior Plan Participants as of December 31, 1998</u>. For Employees who, as of December 31, 1998, were Participants in one of the Prior Plans and are Non-Bargaining Unit Employees on the Effective Date, the Initial Cash Balance as of the Effective Date is the Prior Plan Conversion Credit.

3.2.3. <u>Thermal Systems, Inc. and Atlantic Energy Enterprises, Inc. Transfers</u>. Participants described in Section 1.54.1(c)(i) or (iii) will have an Initial Cash Balance of zero unless they have a frozen benefit under the ACE Plan accrued prior to their employment by Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc., in which event, their Initial Cash Balance shall be determined in accordance with Section 3.2.2.

3.2.4. <u>Prior Plan Participants Who are Rehired</u>.

(a)    If a Non-Bargaining Unit Employee (i) was a participant in one of the Prior Plans, (ii) terminated employment as a Non-Bargaining Unit Employee prior to the Effective Date, (iii) has not begun to receive benefits under such Prior Plan, and (iv) is rehired as a Non-Bargaining Unit Employee on or after the Effective Date and prior to incurring a Five-Year Break in Service, the Initial Cash Balance shall be the Prior Plan Conversion Credit, credited with Interest Credits at the Interest Crediting Rate from the Effective Date to the Reemployment Commencement Date.

(b)    If a Non-Bargaining Unit Employee (i) was a participant in one of the Prior Plans, (ii) terminated employment as a Non-Bargaining Unit Employee prior to the Effective Date, (iii) has not begun to receive benefits under such Prior Plan, and (iv) is rehired as a Non-Bargaining Unit Employee on or after the Effective Date and after incurring a Five-Year Break in Service, the Initial Cash Balance shall be zero.

-18-

(c)     If a Non-Bargaining Unit Employee (i) was a participant in one of the Prior Plans, (ii) terminated employment as a Non-Bargaining Unit Employee prior to the Effective Date, (iii) commenced receipt of benefits pursuant to the terms of the Prior Plan, either in annuity or lump sum form, and (iv) is rehired as a Non-Bargaining Unit Employee on or after the Effective Date, the Initial Cash Balance shall be zero.

3.2.5.   CB Sub-Plan Participants Who Terminate After Effective Date and are Rehired.

(a)     If a Participant in the CB Sub-Plan with a vested benefit (i) terminates employment after the Effective Date, (ii) has not commenced receipt of Retirement Income, and (iii) is later rehired as a Non-Bargaining Unit Employee prior to incurring a Permanent Break in Service, the Cash Balance Account shall be credited with Interest Credits at the Interest Crediting Rate from the date of termination as a Non-Bargaining Unit Employee to the reemployment date, but no new Initial Cash Balance shall be created.

(b)     If a Participant in the CB Sub-Plan with a vested benefit (i) terminates employment after the Effective Date with a vested benefit, (ii) commences receipt of Retirement Income, and (iii) is rehired as a Non-Bargaining Unit Employee at a later date, the Initial Cash Balance shall be zero. Notwithstanding the foregoing, if a Participant in the CB Sub-Plan with an entitlement to a Minimum Benefit received his Retirement Income in the form of a single-sum distribution prior to the Participant's attainment of age 55 and is rehired, within five years after the date of such distribution, into any position covered by any Sub-Plan within the Plan, such Participant shall be entitled to a restoration of his Accrued Benefit attributable to such distribution if the Participant repays such distribution, with interest calculated at the Interest Crediting Rate in effect as of such repayment date (compounded annually), within five years after the first date of such reemployment.

(c)     If a Participant (i) terminates employment after the Effective Date, (ii) was deemed to have received a single-sum payment of zero, and (iii) is rehired as a Non-Bargaining Unit Employee at a time when the consecutive One-Year Breaks in Service is less than the greater of (x) the number of full Years of Service for vesting purposes the Employee had accrued before his Severance from Employment Date or (y) five, the Initial Cash Balance shall be the Cash Balance Account as determined at the time of such Participant's Severance from Employment Date, with Interest Credits from the Severance from Employment Date to the Reemployment Commencement Date. Otherwise, the Initial Cash Balance shall be zero.

3.2.6.   Transfers From Union to Management.   ⟨A⟩ [Effective January 1, 1999 through December 31, 1999, a] Local 1238 Employee, Local 1307 Employee, or Local 210 Employee who becomes a Non-Bargaining Unit Employee after the Effective Date shall have an Initial Cash Balance, provided such Employee remains a Non-Bargaining Unit Employee one year from the date of transfer. If the transferred Employee remains a Non-Bargaining Unit

-19-

Employee one year from the date of transfer, the Initial Cash Balance for such Employee shall be the Prior Plan Conversion Credit as of the January 1 that occurs in the year of transfer; provided that the Prior Plan Conversion Credit shall be determined as of the January 1 contained in the year of transfer rather than December 31, 1998; and further provided that an interest rate that is 2% above the applicable interest rate as of such January 1 (as defined in Schedule A) shall be substituted for 7% in the calculation of such Prior Plan Conversion Credit.

**[Effective January 1, 2000, a Local 1238 Employee, Local 1307 Employee, or Local 210 Employee who becomes a Non-Bargaining Unit Employee after the Effective Date shall have an Initial Cash Balance, provided such Employee remains a Non-Bargaining Unit Employee one year from the date of transfer. If the transferred Employee remains a Non-Bargaining Unit Employee one year from the date of transfer, the Initial Cash Balance for such Employee shall be the Prior Plan Conversion Credit as of the January 1 that occurs in the year of transfer; provided that the Prior Plan Conversion Credit shall be determined as of the January 1 of the year of transfer rather than December 31, 1998; and further provided only with respect to transfers which occurred prior to January 1, 2000, that an interest rate that is 2% above the applicable interest rate as of such January 1 (as defined in Schedule A) shall be substituted for 7% in the calculation of such prior Plan Conversion Credit.]**

3.2.7. <u>Transfers From Management to Union</u>. A Participant who becomes a Local 1238 Employee, Local 1307 Employee, or Local 210 Employee shall, as of the date of transfer, no longer be eligible to participate in the CB Sub-Plan, but the Cash Balance Account shall be credited with Interest Credits as provided in Section 3.4 until distributed.

3.3 <u>Pay Credits</u>.

3.3.1. <u>In General</u>. Pay Credits shall be credited to the Cash Balance Account of each Participant as of the last day of each Plan Year in an amount equal to the product of (x) the pay crediting rate, as determined below, and (y) the Participant's Compensation as a Non-Bargaining Unit Employee for the Plan Year.

3.3.2. <u>Pay Crediting Rate</u>. The Pay Crediting Rate for a Plan Year shall be a percentage determined on the basis of the age that the Participant attains in that Plan Year, as follows:

| Participant's Age | Pay Crediting Rate |
| --- | --- |
| Under 30 | 5.0% |
| 30-34 | 6.0% |
| 35-39 | 7.0% |
| 40-44 | 8.0% |
| 45-49 | 9.0% |
| 50 and over | 10.0% |

-20-

3.3.3.  <u>Pay Crediting in Year of Termination</u>. In the Plan Year in which a
Participant terminates employment as a Non-Bargaining Unit Employee the Participant shall
receive a Pay Credit for such Plan Year equal to the applicable Pay Crediting Rate for such Plan
Year multiplied by the Participant's Compensation as a Non-Bargaining Unit Employee for such
Plan Year. The Pay Credit shall be credited to the Participant's Cash Balance Account as of the
earlier of the last day of the month preceding the Annuity Starting Date or the last day of the Plan
Year in which the termination occurs.

3.3.4.  <u>Pay Crediting in First Year of Participation</u>.  In the Plan Year in
which a Participant first becomes a Participant, the Participant shall receive an additional Pay
Credit equal to (a) the amount that would have been credited to such Participant's Cash Balance
Account as of December 31 of the prior Plan Year had the Participant been a Participant as of the
later of (i) the day the Participant became a Non-Bargaining Unit Employee or (ii) the January 1
immediately following the Participant's transfer into a Non-Bargaining Unit Employee position
as described in Section 2.3; plus (b) an amount equal to the Interest Credits that would have been
credited on the amount specified in (a) from the date such amount would have been credited to
the Cash Balance Account (if the Participant had then been a Participant) up to the date such
additional Pay Credit is actually credited to the Cash Balance Account.

## 3.4  Interest Credits.

3.4.1.  <u>In General</u>.  As of the end of each Plan Year, Interest Credits will
be credited to the Cash Balance Account of each Participant. Interest Credits shall be equal to the
Interest Crediting Rate for such Plan Year multiplied by the amount credited to such Account as
of January 1 of such Plan Year.

3.4.2.  <u>Duration of Interest Credits</u>.  Interest Credits shall continue to be
credited to the Cash Balance Account of a Participant until the earlier to occur of the
Participant's Retirement Date or, if applicable, the Annuity Starting Date for survivor benefits;
provided, however, that (a) Interest Credits shall cease, in the case of a Participant who has a
Severance from Employment Date prior to reaching Normal Retirement Age, on such
Participant's attainment of Normal Retirement Age and (b) Interest Credits shall continue to be
credited to the Cash Balance Account of a Participant who is receiving Pre-65 Disability Benefits
until such Participant's attainment of Normal Retirement Age.

3.4.3.  <u>Interest Credits In Final Year of Participation</u>.

(a)  <u>General</u>.  The Interest Crediting Rate in the Plan Year in
which the Annuity Starting Date occurs shall be multiplied by a fraction, the numerator of which
is the number of months in the Plan Year prior to the Annuity Starting Date and the denominator
of which is twelve (12).

PHLEGAL: #663223 v8 #7qv08!.WPD

(b)    Lump Sums. In the Plan Year in which the Annuity Starting Date occurs, the Interest Credit with respect to lump sum distributions shall be credited as of the Annuity Starting Date, and, if payment is delayed beyond the Annuity Starting Date, Interest Credits shall be credited to the date of distribution

(c)    Annuity Payments. In the Plan Year in which the Annuity Starting Date occurs, the Interest Credit with respect to annuity payments shall be credited as of the Annuity Starting Date. No Interest Credits shall be credited for a period of two (2) months after the Annuity Starting Date in the event payment is delayed due to administrative processing time. If annuity payments are delayed more than two months after the Annuity Starting Date, no interest shall be paid if the delay in payment is due to the Participant's or beneficiary's delay in submitting paperwork or due to other factors beyond the control of the Plan Administrator. If interest is paid on delayed annuity payments pursuant to this paragraph, the interest shall be paid at the Interest Crediting Rate in effect as of the Annuity Starting Date.

3.5  Transition Credits.

3.5.1.  Eligibility for Transition Credits. Participants who (a) were Non-Bargaining Unit Employees on December 31, 1998; (b) remain Non-Bargaining Unit Employees on the Effective Date; and (c) were credited with at least ten (10) Years of Service as of January 2, 1999 are eligible for Transition Credits.

3.5.2.  Duration of Transition Credits. Transition Credits will be credited to Participants who meet the eligibility criteria of Section 3.5.1, as of the end of each Plan Year, beginning as of the Effective Date. Transition Credits will continue to be credited until the Plan Year in which the Participant is credited with more than 35 Years of Service.

3.5.3.  Amount of Transition Credit. Transition Credits shall be credited to the Cash Balance Account of each eligible Participant in an amount equal to (x) the product of the transition crediting rate, as determined below, and (y) the Participant's Compensation as a Non-Bargaining Unit Employee for the Plan Year.

| Participant's Years of Service As of Effective Date | Transition Crediting Rate |
| --- | --- |
| less than 10 years | 0.0% |
| 10-11 years | 1.0% |
| 12-15 years | 2.0% |
| 16-19 years | 3.0% |
| 20 or more years | 4.0% |

-22-

3.6  Grandfather Benefit. **[Effective on and after February 6, 2000, wherever the term "Parts One, Two or Three, as applicable" appears in this Section 3.6, it shall be replaced with the term "ACE Sub-Plan, the Cash Balance Sub Plan or the Delmarva Sub Plan, as applicable."]**

3.6.1.  Retirement-Eligible Grandfathered Participants. The Grandfather Benefit of Grandfathered Participants who, as of their Retirement Date, are eligible for early or normal retirement pursuant to the terms of Parts One, Two or Three, as applicable, shall be determined as the accrued benefit of such Grandfathered Participant as of such Participant's Retirement Date, determined pursuant to the terms of the applicable Part as if the Participant had continued to participate in the applicable Part from the Effective Date through the Grandfather Period, including any applicable reduction for early commencement; or, if applicable, the Actuarial Equivalent lump sum present value of such accrued benefit, determined in accordance with the factors set forth in Schedule A. **[Effective on and after February 6, 2000, the term "Parts One, Two or Three, as applicable" shall be replaced with the term "ACE Sub-Plan, the Cash Balance Sub Plan or the Delmarva Sub Plan, as applicable," wherever such term appears.]**

3.6.2.  Non-Retirement-Eligible Grandfathered Participants. The Grandfather Benefit of Grandfathered Participants who, as of their Retirement Date, are not eligible for early or normal retirement pursuant to the terms of Parts One, Two or Three, as applicable, shall be determined as the accrued benefit determined pursuant to the terms of the applicable Part as of such Participant's Retirement Date as if the Participant had continued to participate in the applicable Part from the Effective Date through the Grandfather Period, payable at age 65 for Delmarva Plan Grandfathered Participants and at age 55 for ACE Plan Grandfathered Participant, and then reduced for early commencement; or, if applicable, the Actuarial Equivalent lump sum present value of such accrued benefit, determined in accordance with the factors set forth in Schedule A.

-23-

## ARTICLE 4
## ELIGIBILITY FOR RETIREMENT

4.1 <u>Dates of Eligibility for Retirement Benefits</u>. A Participant shall be entitled to retire and receive Retirement Income under the CB Sub-Plan on the Participant's Normal Retirement Date, Terminated Vested Retirement Date, Deferred Retirement Date, or Disability Retirement Date. Notwithstanding the preceding sentence, a Participant who has had a Severance from Employment Date shall be required to commence receipt of benefits under the CB Sub-Plan upon attainment of his Normal Retirement Age.

PHLEGAL: #663223 v8 #7qv08!.WPD

A - 25

## ARTICLE 5
## AMOUNT OF RETIREMENT INCOME

5.1 <u>Normal Retirement Benefit</u>. Upon attaining one's Normal Retirement Date, a Participant shall be entitled to Retirement Income equal to his Accrued Benefit, determined as of his Normal Retirement Date.

5.2 <u>Terminated Vested Retirement Benefit</u>.

5.2.1. <u>Termination Prior to Completion of Five (5) Years of Service or Attainment of Normal Retirement Age</u>. If a Participant has a Severance from Employment Date prior to the Participant's completion of five (5) Years of Service for vesting purposes, and he has not attained Normal Retirement Age, he shall not be entitled to any benefits under the Plan.

5.2.2. <u>Termination After Completion of Five (5) Years of Service</u>. If a Participant has a Severance from Employment Date after completion of five (5) Years of Service for vesting purposes, but prior to his Normal Retirement Date, Disability Retirement Date, or Deferred Retirement Date, the Participant shall be eligible to receive Retirement Income equal to his Accrued Benefit, determined as of his Terminated Vested Retirement Date.

5.3 <u>Deferred Retirement Benefit</u>. A Participant who retires after attainment of Normal Retirement Age shall be entitled, on his Deferred Retirement Date, to receive Retirement Income equal to his Accrued Benefit as of such Deferred Retirement Date.

5.4 <u>Required Distributions</u>. For years commencing after December 31, 1999, in the event the Participant continues in the employ of the Employer after he has attained the age of 70½, payments will commence as set forth in Section 6.1 of the Base Plan.

5.5 <u>Disability Retirement Benefit</u>. A Participant who has a Disability Retirement Date shall be entitled to disability benefits as follows.

5.5.1. <u>Pre-65 Disability Benefit</u>.

(a) <u>Amount and Form</u>. The Pre-65 Disability Benefit shall equal the lesser of (1) the Cash Balance Account as of the Disability Retirement Date projected to Normal Retirement Age and credited with interest at the rate of four percent (4%) each Plan Year or (2) 650% of such Participant's Final Average Compensation as of the Disability Retirement Date, converted into an Actuarially Equivalent single life annuity.

(b) <u>Timing</u>. The Pre-65 Disability Benefit shall commence on the Participant's Disability Retirement Date, and will terminate on the earliest to occur of (i) the

Participant's attainment of Normal Retirement Age (at which time the Participant shall be entitled to a Post-65 Disability Retirement Benefit), (ii) death of the Participant, or (iii) the first day of the month following recovery from disability.

### 5.5.2.   Post-65 Disability Benefit.

(a)   Amount and Form.  The Post-65 Disability Benefit shall equal the Accrued Benefit at such Participant's Normal Retirement Date, subject to the Participant's election to have such benefit paid in any one of the optional forms specified in Section 6.6 in accordance with the procedures specified in Section 6.3 of the Base Plan.

(b)   Timing.  The Post-65 Disability Benefit shall be payable on the first day of the month coinciding with or next following attainment of Normal Retirement Age, to a Participant who has had a Disability Retirement Date prior to Normal Retirement Age and whose disability continues to such Participant's attainment of Normal Retirement Age.

### 5.5.3.   One-Time Disability Benefit Election.  In lieu of the Pre-65 Disability Benefit and the Post-65 Disability Benefit, a Participant may elect, upon his Disability Retirement Date, to be treated as a terminated vested Participant who is eligible for a Terminated Vested Retirement Date.  If the Participant makes such an election, any payments to the Participant shall be made in accordance with Section 5.2.

### 5.5.4.   Grandfather Disability Benefit.  In lieu of the benefits provided by Sections 5.5.1, 5.5.2, and 5.5.3, Grandfathered Participant who has a Disability Retirement Date on or before the expiration of the Grandfather Period may elect to receive the Grandfather Benefit, determined in accordance with Section 3.6 payable in the form of an Actuarially Equivalent single life annuity until the earlier to occur of (i) the Participant's attainment of Normal Retirement Age, (ii) death of the Participant, or (iii) the first day of the month following recovery from disability, at which time the Participant shall be entitled to a Post-65 Disability Retirement Benefit, or, in the event of the Participant's death, the payment of a pre-retirement survivor benefit in accordance with Section 6.2.

### 5.6  Employment After Normal Retirement Age.

### 5.6.1.   Reemployment after Receipt of Retirement Income.  If a Participant is reemployed after commencement of receipt of Retirement Income, his Retirement Income payments, if applicable, shall not be suspended and any benefits accruing as a result of his reemployment will be determined in accordance with Section 5.6.6.

### 5.6.2.   Continued Employment After Normal Retirement Age.  No Retirement Income shall be paid before a Participant's Required Beginning Date if such Participant remains an Employee after attaining his Normal Retirement Age, subject to the Participant's right to elect to commence receipt of Retirement Income in accordance with Section

-26-

6.1 of the Base Plan.

5.6.3.  <u>Notification and Appeal of Suspension</u>.  The Committee shall notify the Participant by personal delivery or first class mail of the suspension of benefits during the first month in which such suspension of benefits occurs.  A Participant may ask the Committee in writing to make a determination as to whether specific contemplated continued employment will result in suspension of his benefits.  The Committee shall respond to such a request in writing within 60 days of its receipt of the request.

5.6.4.  <u>Commencement of Retirement Income</u>.  Retirement Income suspended under this Section 5.6 shall commence no later than the earlier of (A) the first day of the third calendar month following the month in which the Participant has a Severance from Employment Date or, if later, the first day of the calendar month following receipt by the Committee of the Participant's notice that he has incurred a Severance from Employment Date or (B) the Participant's Required Beginning Date.  The initial payment shall include payment for the current month and for any previous calendar months since the Participant's Severance from Employment Date.

5.6.5.  <u>Amount of Retirement Income</u>.  Retirement Income shall be calculated on the basis of the Accrued Benefit earned through the period of continued employment and the provisions of the Plan as then in effect.  The Retirement Income shall be paid in the form determined pursuant to Article 6.

5.6.6.  <u>Calculation of Retirement Income In Event of Reemployment</u>.  In the case of a Participant whose Retirement Income commenced to be paid, upon his subsequent Severance from Employment Date, the Retirement Income shall be computed, based on Retirement Income accrued during the period beginning on his Reemployment Commencement Date and ending on his Severance from Employment Date.

-27-

ARTICLE 6

FORMS OF PAYMENT;
SURVIVOR BENEFITS

6.1 Normal Form of Retirement Income.

6.1.1. Single Participants. Retirement Income payments to a Participant who retires under Article 4 shall be paid monthly commencing on the first day of the month coincident with or immediately following the Participant's Retirement Date and terminating with the last monthly payment due prior to his death. In the event the Participant retires on a Deferred Retirement Date, the benefit shall not be less than the amount payable on the Normal Retirement Date.

6.1.2. Married Participants.

(a)    In General. If a Participant has completed at least five (5) Years of Service or has attained Normal Retirement Age and is a married Participant on his Retirement Date, the normal form of Retirement Income shall be a joint and 50% survivor annuity which is the Actuarial Equivalent of a single life annuity, consisting of a reduced annuity paid for the life of the Participant and, upon his death, one-half of such reduced annuity paid to the surviving spouse for life, such survivor's benefits to be paid in equal monthly installments commencing on the first day of the month immediately following the Participant's death. Such survivor annuity shall be paid only to a spouse who was married to the Participant on the Retirement Date.

(b)    Special Provision for Delmarva Plan Participants. Notwithstanding the preceding subsection (a), a Participant with a Minimum Benefit under the Delmarva Plan who (i) in the case of a Participant with a Normal Retirement Date, Disability Retirement Date or Deferred Retirement Date, is married on such Retirement Date, or (ii) in the case of a Participant with a Terminated Vested Retirement Date, is married on the Retirement Date to the same spouse that such Participant was married to on the date of such Participant's termination shall be entitled to the greater of (A) an unreduced joint and 50% survivor annuity with respect to the Minimum Benefit or (B) a reduced joint and 50% survivor annuity with respect to his Payable Cash Balance as described in Section 6.1.2(a).

(c)    Special Provision for ACE Plan Participants. Notwithstanding the preceding subsection (a), if a married Participant has a Minimum Benefit under the ACE Plan and that Minimum Benefit (payable in the Normal Form for a married Participant under the ACE Sub-Plan) is greater than the normal form of benefit described in Section 6.1.2(a), the normal form for such Participant shall be the Minimum Benefit payable in

-28-

the Normal Form for a married Participant under the ACE Sub-Plan. If a married Participant has a Minimum Benefit under the ACE Plan and the normal form of benefit described in Section 6.1.2(a) is greater than the Minimum Benefit payable in the Normal Form for a married Participant under the ACE Sub-Plan but less than the Minimum Benefit payable as a single life annuity, the Participant shall be entitled to elect (subject to spousal consent as described in Section 6.3.4 of the Base Plan) between the Minimum Benefit payable in the Normal Form for a married Participant under the ACE Sub-Plan or the Payable Cash Balance payable in the normal form specified in Section 6.1.2(a).

6.2 <u>Pre-Retirement Survivor's Benefits</u>. The beneficiaries of Participants who die after the completion of at least five (5) Years of Service or attainment of Normal Retirement Age, but prior to their Terminated Vested Retirement Date, Normal Retirement Date or Deferred Retirement Date shall be entitled to a survivor benefit determined in accordance with this Section 6.2.

6.2.1. <u>Amount of Benefit</u>. The survivor benefit shall be (a) the Participant's Payable Cash Balance, payable in an immediate lump sum or (b) for a beneficiary who is the surviving spouse of a Participant, the Participant's Payable Cash Balance, converted to an Actuarially Equivalent single life annuity payable immediately.

6.2.2. <u>Form of Benefit</u>. The automatic form of benefit for beneficiaries who are not the surviving spouse of the Participant is a lump sum. The automatic form of benefit for a beneficiary who is a surviving spouse of the Participant is a single life annuity; provided that a beneficiary may elect payment in the form of a lump sum.

6.2.3. <u>Time of Distribution</u>. A survivor benefit which is to be paid in the form of a single sum shall be paid as soon as practicable after the death of the Participant, but in no event later than the calendar year containing the fifth anniversary of the date of the Participant's death. Payment in the form of a single life annuity will be made as soon as practicable following the Participant's death, unless, in the case of a beneficiary who is a surviving spouse, such beneficiary elects to defer payment, but, in any event, payment may not be deferred later than the earlier to occur of the Participant's Normal Retirement Age or Required Beginning Date.

6.2.4. <u>Beneficiary Designations</u>. In the event there is not a valid beneficiary designation form on file for a Participant, the survivor benefit shall be paid, in the case of a Participant who is a married Participant on the date of his death, as an immediate single life annuity to such Participant's surviving spouse. In the case of a Participant who is not a married Participant on the date of his death, the survivor benefit shall be paid as an immediate lump sum to the beneficiary designated under the Conectiv Savings and Investment Plan. In the event such Participant does not have a beneficiary designated under the Conectiv Savings and Investment Plan, the benefit shall be paid in equal shares to such Participant's surviving children, or if there are none, in equal shares to such Participant's surviving parents, or if none, then to

-29-

such Participant's estate.

### 6.3 Grandfather Survivor Benefit.

6.3.1.  Entitlement to Grandfather Survivor Benefit. Notwithstanding the provisions of Section 6.2, the surviving spouse of a Participant who dies after the completion of at least five (5) Years of Service or attainment of Normal Retirement Age, but prior to the Participant's Retirement Date, shall be entitled to a survivor benefit pursuant to this Section 6.3, and not Section 6.2, if the Grandfather Survivor Benefit, determined below, is greater than the survivor benefit determined pursuant to Section 6.2.

6.3.2.  Amount and Form of Grandfather Survivor Benefit. The Grandfather Survivor Benefit is a spousal survivor annuity equal to 50% of the Participant's Grandfather Benefit, determined as of the date of his death, such payments to be made in equal monthly installments to commence on the first day of the month coincident with or immediately following the Participant's death and to cease with the last monthly payment due prior to the spouse's death; provided that a beneficiary may elect payment in the form of a lump sum that is the Actuarial Equivalent of the Grandfather Survivor Benefit.

6.3.3.  Beneficiary Designation. If a Participant eligible for a Grandfather Survivor Benefit has designated a non-spousal beneficiary pursuant to Section 6.2.4, such designation may specify that the designation is to be revoked or inapplicable in the event the Grandfather Survivor Benefit is greater than the survivor benefit determined pursuant to Section 6.2.

### 6.4 Form of Retirement Income for Former Employees of Conowingo Power Company.

A Participant who is a former employee of Conowingo Power Company ("COPCO") and who became an Employee in connection with the acquisition of COPCO by the Company, shall be entitled to elect the contingent annuity option set forth in Section 5.3 of the Service Annuity Plan of PECO Energy Company (the "PECO Plan"), attached hereto as Schedule B, with respect to his accrued benefit as of June 15, 1995. Such contingent annuity option shall be subject to the same restrictions that would have been in effect under the PECO Plan at the time of the acquisition.

### 6.5 Mandatory Lump Sum Distributions.

In the case of a Participant whose vested Accrued Benefit under the Plan has an Actuarially Equivalent present value of Five Thousand Dollars ($5,000) or less, the full amount of such benefit shall be payable in a lump sum as soon as administratively feasible after such Participant's Severance from Employment Date. In the event the vested Accrued Benefit is zero, the Participant will be deemed to have received a distribution of his Accrued Benefit.

-30-

6.6  <u>Optional Forms of Benefit</u>.

        6.6.1.  <u>Participant's Right to Elect</u>.  In lieu of the normal form of Retirement Income provided in Section 6.1, a Participant may elect among the following optional forms of benefit, provided that a married Participant must satisfy the conditions set forth in Section 6.3 of the Base Plan in order to elect an optional form of benefit.  Each optional form of benefit shall be the Actuarial Equivalent of the normal form of Retirement Income.

        6.6.2.  <u>Single Life Annuity Option</u>.  In lieu of the normal form, a Participant may elect a single life annuity, with monthly payments commencing on the first day of the month coincident with or immediately following the Participant's Retirement Date and terminating with the last monthly payment due prior to his death.

        6.6.3.  <u>Contingent Annuitant Option</u>. In lieu of the normal form, a Participant may elect a reduced monthly benefit commencing on the Participant's Retirement Date and payable for his lifetime with a monthly benefit payable to his surviving contingent annuitant after the Participant's death, commencing as of the first day of the month following his death and payable for the contingent annuitant's lifetime; the amount of monthly benefit payable to the contingent annuitant shall be equal to 50% or 100% of the monthly benefit amount payable to the Participant, as specified by the Participant in his election of this option.

        6.6.4.  <u>Single-Sum Distribution Option</u>.  In lieu of the normal form of benefit, a Participant may elect a single-sum distribution, payable as soon as practicable following the Participant's Retirement Date.

        6.6.5.  <u>Level Income Option</u>. In lieu of the normal form of benefit, a Participant who was a participant in the ACE Plan prior to the Effective Date may elect a monthly benefit in the form of a single life annuity, commencing on his Retirement Date, adjusted so that the Participant's total income, including both the adjusted monthly benefit and the unreduced Primary Insurance Benefits payable to him under Title II of the Federal Social Security Act, are as nearly uniform as possible both before and after such date; the amount of monthly benefit payable under the CB Sub-Plan will be in a greater amount before the unreduced Primary Insurance Benefits begin and in a reduced amount after that date.

        6.6.6.  <u>Twenty-Five Percent Survivor Annuity</u>. In lieu of the normal form, a Participant who was a participant in the ACE Plan prior to the Effective Date may elect a reduced monthly benefit commencing on the Participant's Retirement Date and payable for his lifetime with a monthly benefit payable to his surviving contingent annuitant after the Participant's death, commencing as of the first day of the month following his death and payable for the contingent annuitant's lifetime; the amount of monthly benefit payable to the contingent annuitant shall be equal to 25% of the monthly benefit amount payable to the Participant.

CONECTIV RETIREMENT PLAN
CB SUB-PLAN
SCHEDULE A

A.1    Actuarial Equivalence for any benefit option converted from the Payable Cash Balance shall be determined as follows:

A.1.1  Unless otherwise specified below, Actuarial Equivalence shall be determined by using the Applicable Interest Rate, which is the annual interest rate on 30-year Treasury securities as specified by the Commissioner of Internal Revenue for the October preceding the calendar year containing the annuity starting date, as published in the Internal Revenue Bulletin or any successor publication thereto, and the Applicable Mortality Table, which is the mortality table based on the prevailing commissioners' standard table as prescribed by the Commissioner pursuant to Code §417(e) (currently 1983 GAM).

A.1.2  In the case of a Disability Benefit payable before age 65, the annuity benefit that is the Actuarial Equivalent of the Payable Cash Balance shall be determined by projecting the Payable Cash Balance to age 65, using a four percent (4%) annual interest rate, and then converting to an annuity form by using the rates specified in Section A.1.1.

A.1.3  In the case of any benefit option that is available only to former participants in a Prior Plan but that is based on the Payable Cash Balance, Actuarial Equivalence shall be determined by using the applicable table or rates as set forth in the applicable Sub-Plan. Where the applicable Sub-Plan uses a table for such Actuarial Equivalence that does not cover the age of the Participant, the rates set forth in Section A.1.1 shall be used to determine such Actuarial Equivalence.

A.2    Actuarial Equivalence for Minimum Benefit or Grandfather Benefit

A.2.1  Unless otherwise specified below, Actuarial Equivalence for a Minimum Benefit or Grandfather Benefit shall be determined on the basis set forth in Schedule A (as of the date of such determination) of the ACE Sub-Plan or Delmarva Sub-Plan under which the Participant was covered on the day before his or her entry into this CB Sub-Plan, as such Sub-Plan may have been amended prior to the date of such determination.

A.2.2  Where the applicable Sub-Plan uses a table for such Actuarial Equivalence that does not cover the age of the Participant, the rates set forth in Section A.1.1 shall be used to determine such Actuarial Equivalence; provided that †

(a)† annuity benefits for a Minimum Benefit or Grandfather Benefit commencing before age 55 determined under the ACE Sub-Plan shall be determined by using the factors applicable to a deferred vested benefit as set forth in the Delmarva Sub-Plan, and lump sum equivalencies for such Minimum Benefit or Grandfather Benefit shall be determined by using the actuarial factors set forth in the Ace Sub-Plan, but in either case such equivalencies shall be determined by valuing the benefit commencing at age 65 rather than age 55†, and †[. ]

~~(b)~~ [A.2.3    Effective January 1, 1999, in the event a Participant terminates employment at or after attaining age 52 and is eligible to receive severance benefits pursuant to a Severance Plan adopted by the Employer that is effective during 1998, 1999 or 2000, such Participant's Grandfather Benefit or Minimum Benefit calculated pursuant to the Delmarva Sub-Plan paid at or after his attainment of age 55, by using the early retirement factors contained in Table C of the Delmarva Sub-Plan, rather than the early retirement factors contained in Table B of the Delmarva Sub-Plan.

Effective January 1, 1999 through December 31, 2000,] joint and survivor optional forms for a Minimum Benefit, Grandfather Benefit, or Grandfather Survivor Benefit determined under the Delmarva Sub-Plan (where the spouse or surviving spouse is the joint annuitant) shall be converted from the 50% joint and survivor form to the desired optional form (other than a single life annuity) by taking into account the fact that the normal form of benefit is a fully-subsidized 50% joint and survivor annuity (where the Participant is married as of the annuity starting date or date of death and entitled to such unreduced 50% joint and survivor annuity), but any other optional annuity form shall be the actuarial equivalent of the single life annuity (not reflecting the value of the fully-subsidized 50% joint and survivor annuity)~~[, and]~~[. ]

~~(c)~~ [Effective January 1, 2001, in the event a Participant terminates employment at or after attaining age 52 and is eligible to receive severance benefits pursuant to a severance plan adopted by the Employer or a change-in-control agreement between the Employer and the Participant, which plan or agreement calls for the Participant to be treated as if he or she terminated employment at or after age 55 for purposes of early retirement at such age, such Participant's Grandfather Benefit or Minimum Benefit calculated pursuant to the Delmarva Sub-Plan shall be paid at or after his attainment of age 55, by using the early retirement factors contained in Table C of the Delmarva Sub-Plan, rather than the early retirement factors contained in Table B of the Delmarva Sub-Plan.

A.2.4    Effective January 1, 1999,] the lump sum equivalency of a Minimum Benefit, Grandfather Benefit, or Grandfather Survivor Benefit determined under the Delmarva Sub-Plan ~~[(]~~[shall be the actuarial equivalent of the single life annuity commencing on the Annuity Starting Date (including the value of the early retirement subsidy), and,] where the Participant is married as of the ~~annuity starting date~~ [Annuity Starting Date] or date of death and entitled to an unreduced 50% joint and survivor annuity~~)~~[,] shall reflect the value of such unreduced annuity.

# SCHEDULE B

## Service Annuity Plan of PECO Energy Company

PHLEGAL: #663223 v8 #7qv08!.WPD

A - 35

**Hurlic v. Southern CA Gas Co.**
**Notice of Motion and Motion to Dismiss**

1   Michael C. Kelley (SBN 090062)
    Robert M. Stone (SBN 205365)
2   SIDLEY AUSTIN BROWN & WOOD LLP
    555 West Fifth Street, Suite 4000
3   Los Angeles, California  90013-1010
    Telephone:  (213) 896-6000
4   Facsimile:  (213) 896-6600

5   William F. Conlon (admitted *pro hac vice*)
    Anne E. Rea (admitted *pro hac vice*)
6   SIDLEY AUSTIN BROWN & WOOD LLP
    Bank One Plaza, 10 S. Dearborn
7   Chicago, Illinois 60603
    Telephone: (312) 853-7000
8   Facsimile: (312) 853-7036

9   Attorneys for Defendants
    Southern California Gas Company,
10  The Southern California Gas Company Pension Plan

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14  | DAVID HURLIC, SUSANNA H. | ) CASE NO.: CV05-5027 R (MANx) |
    | SELESKY, individually and on behalf of | ) |
15  | a class of all other persons similarly | ) **NOTICE OF MOTION AND** |
    | situated, | ) **MOTION TO DISMISS** |
16  | | ) **PURSUANT TO FED. R. CIV. P.** |
17  | Plaintiffs, | ) **12(b)(6); MEMORANDUM OF** |
    | v. | ) **POINTS AND AUTHORITIES** |
18  | | ) **IN SUPPORT THEREOF** |
19  | SOUTHERN CALIFORNIA GAS | ) |
    | COMPANY, THE SOUTHERN | ) [Defendants' Compendium of |
20  | CALIFORNIA GAS COMPANY | ) Authorities concurrently lodged |
21  | PENSION PLAN, | ) herewith] |
    | | ) |
22  | Defendants. | ) |
23  | | ) Date:    October 17, 2005 |
    | | ) Time:    10:00 a.m. |
24  | | ) Place:   Courtroom 8 |

25

26

27                                    AUG 3 0 2005

28                                    010

                    MOTION TO DISMISS