1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2

3       PLEASE TAKE NOTICE that on October 17, 2005, at 10:00 a.m., or as soon

4   thereafter as the matter may be heard in the above-entitled court, located at 312 North

5   Spring Street, Los Angeles, California, Defendants Southern California Gas Company

6   ("SoCalGas") and Southern California Gas Company Pension Plan (the "Plan") will

7   move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6)

8   because plaintiffs' complaint, and each and every Claim for Relief asserted therein,

9   fails to state a claim upon which relief can be granted.

10      Specifically, the First Claim for Relief, asserting a claim of age discrimination

11  under ERISA § 204(b)(1)(H), does not state a claim first because that section applies

12  only to participants who work beyond normal retirement age, which under the Plan is

13  age 65. Thus, plaintiffs, who are 54 and 51, cannot state a claim under that section,

14  nor do they have standing to do so. In any event, even if § 204(b)(1)(H) applied to

15  participants younger than age 65, the First Claim for Relief should still be dismissed,

16  because the plan is not age discriminatory as a matter of law.

17      The Second Claim for Relief, asserting that the Plan "backloads" the accrual of

18  benefits in violation of ERISA § 204(b)(1)(B), is legally deficient. Plaintiffs'

19  backloading claim is premised upon their comparison of one benefit under the Plan to

20  another Plan benefit that is frozen. The Ninth Circuit, however, has expressly rejected

21  an attempt to measure benefit accrual by comparing one benefit to another benefit that

22  is frozen.

23      The Third Claim for Relief, asserting a claim of inadequate notice under ERISA

24  § 204(h)(1), fails to state a claim because plaintiffs have failed to allege, as they must,

25  that they suffered harm as a result of the allegedly inadequate notice.

26      Finally, the Fourth Claim for Relief, in which plaintiffs  assert a state law

27  discrimination claim under the California Fair Employment and Housing Act

28  ("FEHA"), is preempted by ERISA.

1    This Motion is based on this Notice of Motion, the attached Memorandum of

2    Points and Authorities, the Compendium of Authorities lodged herewith, all

3    documents on file in this action, and such further or additional evidence or argument

4    as may be presented before or at the time of the hearing on this Motion.

5

6    Dated:  August 29, 2005                    Respectfully submitted,

7                                              SIDLEY AUSTIN BROWN & WOOD LLP

8                                              William F. Conlon
                                               Michael C. Kelley
9                                              Robert M. Stone

10

11                                             By:

12                                                 Michael C. Kelley

13                                             Attorneys for Defendants Southern
                                               California Gas Company and Southern
14                                             California Gas Company Pension Plan

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**MOTION TO DISMISS**

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION.............................................................................. 1

FACTUAL BACKGROUND ................................................................. 4

I.     OVERVIEW OF PENSION PLANS ............................................... 4

II.    THE PLAN'S CASH BALANCE AMENDMENT .............................. 5

ARGUMENT .................................................................................. 6

III.   PLAINTIFFS' FIRST CLAIM FOR RELIEF FAILS TO STATE A
       CLAIM FOR AGE DISCRIMINATION ......................................... 6

       A.    ERISA § 204(b)(1)(H) Protects Participants Only
             After "Normal Retirement Age" ........................................ 6

       B.    The Plan's Cash Balance Benefit Does Not
             Discriminate On The Basis Of Age In Violation
             Of ERISA § 204(b)(1)(H)................................................. 10

             1.    At Least Two Courts Have Rejected Plaintiffs'
                   Theory ............................................................... 10

             2.    The Only Decision Holding A Cash Balance Plan To
                   Discriminate On The Basis Of Age Is Not
                   Persuasive Authority And Should Be Rejected ............ 12

             3.    Plaintiffs' Age Discrimination Theory Should Be
                   Rejected for Additional Reasons............................... 14

                   a.    Plaintiffs' Theory Impermissibly Claims
                         Age Discrimination Based Solely On The
                         Effect Of The Time Value Of Money.................. 14

                   b.    Plaintiffs' Theory Directly Contradicts
                         Authoritative Guidance From the U.S.
                         Treasury Department ..................................... 15

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

1

2

3

                   c.    Plaintiffs' Theory Would Outlaw The Interest Crediting Feature That Congress Mandated In Certain Defined Benefit Pension Plans ................................................................ 16

4

5

6

IV.   PLAINTIFFS' SECOND CLAIM FOR RELIEF FAILS TO ALLEGE A VIOLATION OF ERISA'S BACKLOADING RULES .......................................................................................... 17

7

8

9

V.    PLAINTIFFS' THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED FOR FAILURE TO ALLEGE PREJUDICE FROM THE ALLEGEDLY INADEQUATE NOTICE OF A DECREASE IN BENEFITS .......................................................... 21

10

11

VI.   THE FOURTH CLAIM FOR RELIEF IS PREEMPTED BY ERISA ........................................................................................ 22

12

CONCLUSION ............................................................................... 24

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

Allred v. First Nationwide Financial Corp.,
No. C-92-4000, 1994 U.S. Dist. LEXIS 21538,
(N.D. Cal. May 2, 1994) ................................................................................. 21

Allred v. First Nationwide Financial Corp.,
No. C-92-4000, 1994 U.S. Dist. LEXIS 20245,
(N.D. Cal. Aug. 2, 1994) ............................................................................... 21

Brody v. Enhance Reins. Co.,
No. 00 Civ. 9660, 2003 U.S. Dist. LEXIS 3785
(S.D.N.Y. March 17, 2003) ...................................................................... 18, 21

Buckley v. Valeo,
424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976) ...................................... 8

Burke v. Kodak Retirement Income Plan,
336 F.3d 103 (2d Cir. 2003) ........................................................................ 22

Campbell v. BankBoston, N.A.,
327 F.3d 1 (1st Cir. 2003) ............................................................................ 7

Champion Int'l Corp. v. Brown,
731 F.2d 1406 (9th Cir. 1984) ..................................................................... 23

Cooper v. The IBM Personal Pension Plan,
274 F. Supp. 2d 1010 (S.D. Ill. 2003) ............................................... 12, 13, 14

Corcoran v. Bell Atlantic, No. Civ. A 97-510, 1997 WL 602859
(E.D. Pa. Sept. 23, 1997) ............................................................................ 21

Curtiss-Wright Corp. v. Schoonejongen,
514 U.S. 73, 115 S. Ct. 1223, 131 L. Ed. 2d 94 (1995) ................................ 17

Davidson v. Canteen Corp.,
957 F.2d 1404 (7th Cir. 1992) ..................................................................... 22

*Dean v. Jet Services West, Inc.*,
    782 F. Supp. 498 (S.D. Cal. 1991)................................................................ 23

*Dep't of Health and Welfare, State of Idaho v. Block*,
    784 F.2d 895 (9th Cir. 1986) ........................................................... 8

*District of Columbia v. Greater Washington Bd. of Trade*,
    506 U.S. 125, 113 S. Ct. 580, 121 L. Ed. 2d 513 (1992)…………......…..22

*Eaton v. Onan Corp.*,
    117 F. Supp. 2d 812 (S.D. Ind. 2000).................................................. passim

*Engers v. AT&T Corp.*,
    No. 98-3660, 2001 U.S. Dist. LEXIS 25889 (D.N.J. June 6, 2001) ........ 7, 10

*Esden v. Bank of Boston*,
    229 F.3d 154 (2d Cir. 2000)............................................................ 18

*Estate of Cowart v. Nicklos Drilling Co.*,
    505 U.S. 469, 112 S. Ct. 2589, 120 L. Ed. 2d 379 (1992)........................... 13

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000)........................... 17

*Fidelity Fed. Savings & Loan Ass'n v. De La Cuesta*,
    458 U.S. 141, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982).............................. 16

*Frommert v. Conkright*,
    328 F. Supp. 2d 420 (W.D.N.Y. 2004)........................................................ 22

*Godinez v. CBS Corp.*,
    Case No. SA CV 01-28-GLT (Anx) (May 22, 2001).................................. 23

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)........................... 15

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999)............................... 4

**MOTION TO DISMISS**

*Johnson v. St. Frances Xavier Cabrini Hosp. of Seattle,*
   910 F.2d 594 (9th Cir. 1990) ........................................................... 22

*Lunn v. Montgomery Ward & Co., Inc. Retirement Security Plan,*
   166 F.3d 880 (7th Cir. 1999) ..................................................... 7, 15

*Martinez v. Maxim Property Management,*
   No. C-97-01944, 1997 WL 564070 (N.D. Cal. Aug. 28, 1997).................. 23

*Metropolitan Life Ins. Co. v. Taylor,*
   481 U.S. 58, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987).................................. 22

*Nachman Corp. v. Pension Benefit Guar. Corp.,*
   446 U.S. 359, 100 S. Ct. 1723, 64 L. Ed. 2d 354 (1980)........................22

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.,*
   514 U.S. 645, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995).....................22

*NLRB v. Fruit & Vegetable Packers & Warehousemen, Local 760,*
   377 U.S. 58, 84 S. Ct. 1063, 12 L. Ed. 2d 129 (1964)..................................... 8

*Northwest Forest Resource Council v. Glickman,*
   82 F.3d 825 (9th Cir. 1996) ............................................................ 8

*O'Shea v. Littleton,*
   414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)................................... 10

*Pegram v. Herdrich,*
   530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed. 2d 1(2000)................................. 18

*Pennsylvania Dep't of Corrections v. Yeskey,*
   524 U.S. 206, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998)............................. 9

*Shaw v. Delta Air Lines, Inc.,*
   463 U.S. 85, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983)................................ 23

*Siles v. ILGWU Nat'l Retirement Fund,*
   783 F.2d 923 (9th Cir. 1986) ......................................................... 21

Stone v. Travelers Corporation,
    58 F.3d 434 (9th Cir. 1995) .......................................................... 23

Tootle v. ARINC, Inc.,
    222 F.R.D. 88 (D. Md. 2004)................................................... passim

Udall v. Tallman,
    380 U.S. 1, 85 S. Ct. 792, 13 L. Ed. 2d. 616 (1965)..................................... 16

Williams v. Caterpillar, Inc.,
    944 F.2d 658 (9th Cir. 1991) ..........................................,.......... 3, 19, 21

Young v. St. Frances Xavier Cabrini Hosp. of Seattle, No. C87-973Z,
    1989 U.S. Dist. LEXIS 18376 (W.D. Wash. April 12, 1989) ...................... 22

## STATUTES AND RULES

29 U.S.C. § 1054(b)(1)(H)(i), ERISA § 204(b)(1)(H)...................................... passim

29 U.S.C. § 1144(a).................................................................... 22, 23

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(i) ................ 7

California Fair Employment and Housing Act ("FEHA"),
    Cal. Gov. Code, prec § 12900 (2005)…............................................ 1, 22, 23

Employee Retirement Income Security Act of 1974 ("ERISA"),
    29 U.S.C. § 1001 ....................................................................... 1

ERISA § 204 ........................................................................... 16, 19

ERISA § 204(a)(1)(B) ................................................................... 13

ERISA § 204(b)(1)..................................................................... 20

ERISA § 204(b)(1)(A) ................................................................... 18

ERISA § 204(b)(1)(B)................................................................... 2, 18

ERISA § 204(b)(1)(C).................................................................. 18

ERISA § 204(c)(2)(B) ................................................................ 16

ERISA § 204(g) .................................................................. 18, 21

ERISA § 204(h) .................................................................. 21, 22

ERISA § 204(h)(1) .................................................................. 3

ERISA § 402(b)(3) ................................................................ 17

Fed. R. Civ. P.12(b)(6) ............................................................ 1

Internal Revenue Code ("IRC"), 26 U.S.C. § 401(a) ............................... 15

Internal Revenue Code ("IRC"), 26 U.S.C. § 411(b)(1)(H) .................... 7, 16, 20

## LEGISLATIVE HISTORY

131 Cong. Rec. S 9429 (daily ed. July 11, 1985) .................................. 9

132 Cong. Rec. H 11437 (daily ed. Oct. 17, 1986) ................................. 9

H.R. Conf. Rep. No. 99-1012 (1986),
    reprinted in 1986 U.S.C.C.A.N. 3868 ....................................... 7, 8

Omnibus Budget Reconciliation Act ("OBRA"),
    Section 9202, Pub. L. No. 99-509, 100 Stat. 1874 (1986) .................... 7, 9

S. Rep. No. 98-575, at 28-29 (1984),
    reprinted in 1984 U.S.C.C.A.N. 2547 ......................................... 20

## FEDERAL REGISTER

56 Fed. Reg. 47,524, 47,528 (Sept. 19, 1991) .................................... 16

Reorganization Plan No. 4, 43 Fed. Reg. 47,713 (Sept. 20, 1978) ................. 16

1

## CODE OF FEDERAL REGULATIONS

2

3

26 C.F.R. § 1.401(a)(4)-8(c)(3)................................................................................. 16

4

26 C.F.R. § 1.401(a)(4)-13(c)(4)(ii).......................................................................... 20

5

26 C.F.R. § 1.401(a)(17)-1(e)(5).............................................................................. 20

6

## REVENUE RULINGS

7

8

Rev. Rul. 76-259, 1976-2 C.B. 111........................................................................... 20

9

Rev. Rul. 81-12, 1981-1 C.B. 228............................................................................. 21

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Southern California Gas Company ("SoCalGas") and the Southern California Gas Company Pension Plan ("Plan") submit this memorandum of points and authorities in support of their Motion To Dismiss.

## INTRODUCTION

Plaintiffs assert an age discrimination claim based on the unremarkable fact that younger workers have more years to work before reaching normal retirement age, 65, than older workers. This longer time to normal retirement leads to a most ordinary outcome – workers who start working at a younger age have more years to earn interest on their retirement Plan accounts than do workers who start at an older age. Plaintiffs claim that this outcome causes the Plan to discriminate against older workers in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). As a matter of both logic and law, that claim should be rejected. Similarly untenable are plaintiffs' contentions that the Plan is improperly "backloaded" in violation of ERISA and that the defendants violated ERISA by not providing adequate notice of the effect of the Plan amendment. Finally, plaintiffs' discrimination claim under the California Fair Employment and Housing Act ("FEHA") is barred by the broad, congressionally mandated preemption of state law claims relating to benefit plans subject to ERISA.

Specifically, plaintiffs' First Claim for Relief purports to state a claim for age discrimination under ERISA § 204(b)(1)(H). Section 204(b)(1)(H) prohibits a reduction in the "rate of benefit accrual, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i). The case law and legislative history establishes, however, that this section applies only to participants who work beyond normal retirement age, which under the Plan is age 65. Thus, plaintiffs, who are 54 and 51, cannot state a claim under that section. Even if § 204(b)(1)(H) applied to participants younger than age 65, the First Claim should still be dismissed, because the Plan is not age

1

1  discriminatory as a matter of law.

2       On July 1, 1998, SoCalGas amended the Plan to provide a cash balance benefit.

3  Pursuant to that amendment a cash balance account was established for each active

4  participant. Each account was initially credited with an amount equal to the

5  participant's entitlement under the Plan before the amendment, plus a number of

6  enhancements. Each month thereafter SoCalGas credited, and continues to credit,

7  each participant's cash balance account with a percentage of his or her pay

8  ("retirement credits"). Each account was also credited monthly with 1/12 of the

9  average 30-year Treasury Bond rate ("interest credits"). For two SoCalGas employees

10 of different ages who earn the same pay and have the same years of service, the older

11 employee's cash balance account will always equal the younger employee's cash

12 balance account on any given date. Thus, the cash balance benefit is neutral as to age,

13 and the "rate of benefit accrual" is *not* reduced because of the attainment of any age.

14      Plaintiffs do not dispute that the Plan operates in this manner. Instead, they

15 advance an unusual theory of age discrimination, the centerpiece of which would turn

16 the effect of the time value of money into age discrimination. Even if two workers

17 receive the same retirement credits and interest credits, after the older reaches

18 retirement age the cash balance account of the younger will continue to earn interest

19 until he or she retires. Not surprisingly, the contention that this constitutes age

20 discrimination has been decisively rejected by two federal courts. See Eaton v. Onan

21 Corp., 117 F. Supp. 2d 812, 832-33 (S.D. Ind. 2000); Tootle v. ARINC, Inc., 222

22 F.R.D. 88, 94 (D. Md. 2004). As those courts made clear, the "rate of benefit accrual"

23 in § 204(b)(1)(H) refers to the change in an employee's cash balance account from

24 one year to the next. The statute does *not* require employers to credit older workers

25 with greater annual benefits simply because they have fewer years before retirement to

26 accumulate benefits than younger workers.

27      Plaintiffs' Second Claim for Relief, which alleges that the Plan "backloads" the

28 accrual of benefits in violation of ERISA § 204(b)(1)(B), is also legally deficient.

2

1  Under the Plan as amended, if a participant terminated employment or commenced

2  distribution of his or her benefit within five years of July 1, 1998, the participant

3  received *either* his or her cash balance account or the benefit resulting from the pre-

4  amendment Plan formula, enhanced to include the participant's incentive pay ("the

5  Enhanced Prior Plan Benefit"), whichever was greater.[1]  A participant who remained

6  in covered employment throughout the five year period after July 1, 1998 earned

7  benefits under the Enhanced Prior Plan Benefit portion of the formula until June 30,

8  2003, at which time their prior plan benefit was frozen.  Any participant who left the

9  company after June 30, 2003 was entitled, and current participants continue to be

10  entitled, to receive the *greater of* their cash balance benefit or their frozen accrued

11  Enhanced Prior Plan Benefit on June 30, 2003 (a benefit that is amended to cease

12  additional accruals is commonly referred to as a "frozen benefit").  Plaintiffs claim

13  that when their cash balance benefit is less than their frozen benefit, plaintiffs

14  experience a period of zero benefit accrual.  The Ninth Circuit, however, has expressly

15  rejected an attempt to measure benefit accrual by comparing one benefit to another

16  benefit that is frozen.  Instead, the accrual of the cash balance benefit *standing alone*

17  must be measured without considering the frozen benefit.  See Williams v. Caterpillar,

18  Inc., 944 F.2d 658, 663 (9th Cir. 1991).  Because plaintiffs concede that they in fact

19  accrue regular retirement credits and interest credits, there are no periods of "zero

20  accrual" for the cash balance benefit, and the Second Claim for Relief should be

21  dismissed.

22       Plaintiffs' Third Claim for Relief, asserting a claim of inadequate notice under

23

24  [1] Plaintiffs' complaint does not mention that under the amendment the prior benefit

25  formula was enhanced to include incentive pay or other various benefit enhancements
    adopted as part of the cash balance amendment.  Defendants refer to those
26  enhancements for accuracy and completeness here, although these facts are not

27  material to defendants' motion to dismiss, which is addressed to the allegations of the
    complaint.
28

**MOTION TO DISMISS**

1    ERISA § 204(h)(1), also fails to state a claim because plaintiffs have failed to allege,

2    as they must, that they suffered harm as a result of the allegedly inadequate notice.

3    Finally, plaintiffs' Fourth Claim for Relief under FEHA is preempted by ERISA.

## FACTUAL BACKGROUND

5    ### I.    OVERVIEW OF PENSION PLANS.

6    A traditional defined benefit plan provides participants a fixed annuity benefit

7    commencing upon their retirement that is determined pursuant to a formula set forth in

8    the plan document.  See, e.g., Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439-

9    440, 119 S. Ct. 755, 761, 142 L. Ed. 2d 881, 892 (1999).  Under many traditional

10   defined benefit plans, the annuity benefit is the product of a certain percentage of the

11   employee's final average compensation multiplied by the employee's years of service.

12   See Eaton v. Onan Corp., 117 F. Supp. 2d 812, 817 (S.D. Ind. 2000).  For example, a

13   plan might provide retirement benefits equal to 2% of the employee's average annual

14   compensation during the last five years of employment multiplied by his or her years

15   of service.  Under such a plan, an employee who worked for a company for 20 years

16   and had a final average compensation of $50,000 would earn an annual retirement

17   benefit of $20,000 (.02 x 20 x $50,000).[2]

18   A cash balance pension plan is a type of defined benefit plan in which each

19   participant has a hypothetical "account" to which employer contributions in the form

20   of pay credits and interest credits are allocated.[3]  See id.  For example, under a cash

21   balance plan that provides a pay credit of 5% and an interest credit of 3%, a

---

23   [2] In contrast to defined benefit plans, which provide for a specific benefit based upon a
     formula, defined contribution plans (such as 401(k) plans) provide that participants are
24   entitled to the vested balance in their individual plan accounts, to which the employer
     and participants typically make periodic contributions.  See Hughes Aircraft, 525 U.S.
25   at 439; Eaton, 117 F. Supp. 2d at 817.
26   [3] The account is hypothetical because plan assets are not earmarked to pay only the
27   benefits of the participant in whose name the account is established, but are
     maintained in a common fund to pay the benefits of any plan participant.
28

1   participant who earns $100,000 per year would be allocated a pay credit of $5,000

2   (.05 x $100,000) at the end of Year 1.  In Year 2, if the participant's salary increased

3   to $110,000, the participant's account would be credited with an amount equal to

4   $5,650 (a pay credit of $5,500 (.05 x $110,000) plus an interest credit of $150 (.03 x

5   $5000), representing the interest on the account balance from Year 1).  At the end of

6   Year 2, the participant's account would have a balance of $10,650 ($5,000 + $5,650).

7   In contrast to traditional defined benefit plans, which usually provide benefits in the

8   form of a monthly annuity commencing at normal retirement age, cash balance plans

9   typically allow participants who terminate employment to receive their benefits in a

10  lump-sum payment, which they can roll over into an IRA or another employer's

11  qualified plan.

12  **II.     THE PLAN'S CASH BALANCE AMENDMENT.**

13          On June 30, 1998, as part of a merger, SoCalGas became a part of Sempra

14  Energy.  At that time, the Plan, which was sponsored by SoCalGas, was amended to

15  provide a cash balance benefit for employees who were not represented by a union.

16  Under the Plan's terms, a cash balance account was established for each active

17  participant in the Plan immediately prior to the cash balance amendment.  The initial

18  balance of each participant's account was equal to (or greater than) the actuarial

19  equivalent of the participant's accrued benefit under the Plan prior to the effective

20  date of the cash balance amendment.  (See Cmplt. ¶ 17; n.1, supra).  Thereafter,

21  monthly pay credits ("retirement credits"), amounting on an annual basis to 7.5% of

22  the participant's annual earnings (id., ¶ 18), and monthly interest credits have been

23  allocated to each participant's account.  The interest credits are determined by

24  multiplying the cash balance account balance as of the prior month by 1/12 of the rate

25  which equals the average 30-year United States Treasury Bond rate for the November

26  preceding the first day of the current calendar year.  (Id., ¶ 19).[4]

27  _____

28  [4] A participant who commenced cash balance participation on July 1, 1998, and who
                                                                      (footnote cont'd)

1      The Plan also provides that any participant who became eligible for the cash

2  balance benefit on July 1, 1998 and who began to receive benefits before July 1, 2003

3  was entitled to the *greater of* (1) the actuarial equivalent of his or her cash balance

4  account expressed in the form of an annuity or (2) an annuity under the Enhanced

5  Prior Plan Benefit formula, which was  based on the pre-amendment Plan formula.

6  (Id., ¶21).  A participant who became eligible for the cash balance benefit on July 1,

7  1998 and terminates employment *after* June 30, 2003 is entitled to an annuity equal to

8  the greater of  (1) the actuarial equivalent of the cash balance account or (2) the frozen

9  Enhanced Prior Plan Benefit.  (Id., ¶ 24).

10
## ARGUMENT

11  **III.  PLAINTIFFS' FIRST CLAIM FOR RELIEF FAILS TO STATE A CLAIM FOR AGE DISCRIMINATION.**

12      Plaintiffs' First Claim for Relief is deficient because § 204(b)(1)(H) protects

13  only participants who have reached normal retirement age.  In addition, as a matter of

14  law, the Plan is not age discriminatory.

15      **A.    ERISA § 204(b)(1)(H) Protects Participants Only After "Normal**

16      **Retirement Age."**

17      As a number of courts have held, the legislative history clearly demonstrates

18  that Congress's purpose in enacting ERISA § 204(b)(1)(H) was to ensure that

19  employees who continued to work *after normal retirement age* would continue to

20  accrue benefits, not to create new rights for participants, such as plaintiffs here, who

21  have not yet reached normal retirement age.  In Eaton v. Onan, 117 F. Supp. 2d at

22  826-29, the court concluded that "[the legislative history] provides considerable

23

24  was at least 40 years old with less than 15 years of service, received "special

25  retirement credits," equal to an additional 2% of annual earnings until he or she

26  completed 15 years of service. (Cmplt. ¶ 18).  A participant who commenced cash

27  balance participation on July 1, 1998 and who had less than 30 years of service also received a "special interest rate" (an additional 2%) on the initial balance until he or

28  she completed 30 years of service.  (Id., ¶ 19).

**MOTION TO DISMISS**

A - 52

1  support for defendant's argument that Congress did not intend for the pension age

2  discrimination provisions to apply to the rate of benefit accrual for participants under

3  the age of 65." See also Tootle, 222 F.R.D. at 93 ("legislative history and statutory

4  language provide strong evidence that [ERISA's age discrimination provisions are]

5  not intended to protect workers until after they have attained normal retirement age.");

6  Engers v. AT&T Corp., No. 98-3660, 2001 U.S. Dist. LEXIS 25889, at *10 (D.N.J.

7  June 6, 2001) ("it is clear to this court that . . . Congress intended both the ADEA and

8  ERISA provisions [ ] to apply only to those employees who continue to work after the

9  normal retirement age of sixty-five."); see also Campbell v. BankBoston, N.A., 327

10 F.3d 1, 10 (1st Cir. 2003) (citing Eaton and reasoning that "the ERISA age

11 discrimination provision may not even apply to workers younger than the age of

12 normal retirement."); Lunn v. Montgomery Ward & Co., Inc. Retirement Security

13 Plan, 166 F.3d 880, 883 (7th Cir. 1999) (recognizing that under ERISA §

14 204(b)(1)(H), an employer "could not say to [its employee], if you insist on working

15 after you reach the age of 65, we're going to cut down your normal retirement

16 benefits").

17      The legislative history provides ample support for those holdings.  In 1986,

18 Congress enacted the Omnibus Budget Reconciliation Act ("OBRA 1986"), which

19 added parallel age discrimination provisions to ERISA at § 204(b)(1)(H), the Age

20 Discrimination in Employment Act ("ADEA") at 29 U.S.C. § 623(i), and the Internal

21 Revenue Code ("IRC") at 26 U.S.C. § 411(b)(1)(H).  Congress made clear that these

22 three provisions should be interpreted to have identical meaning.  See H.R. Conf. Rep.

23 No. 99-1012, at 378-79 (1986), reprinted in 1986 U.S.C.C.A.N. 3868, 4023-24; see

24 also Eaton, 117 F. Supp. 2d at 822-23 (same).[5]  The OBRA 1986 Conference Report

25

26 [5] The legislative history, including the relevant portions of the Conference Report and

27 Congressional Record (see pp. 8-9, infra), is included in the accompanying document

28 entitled "Compendium of Authorities."

**MOTION TO DISMISS**

A - 53

1   states that the legislation was proposed to clarify whether employers had the right to

2   cease accruing benefits for employees *upon reaching* normal retirement age.[6] Prior to

3   the Department of Labor's ("DOL") transfer of the authority to enforce the ADEA to

4   the Equal Employment Opportunity Commission ("EEOC"), the DOL had permitted

5   employers "to cease benefit accruals and allocation to an employee's account with

6   respect to employees working beyond the normal retirement age . . . ." See H.R.

7   Conf. Rep. No. 99-1012, 2d Sess. at 378 (1986), reprinted in 1986 U.S.C.C.A.N.

8   3868, 4023. After obtaining authority over the ADEA, the EEOC rescinded the

9   position formerly taken by the DOL in favor of an interpretation that *requires*

10  employers to "continue benefit accruals and allocations" for employees who choose to

11  work past normal retirement age. Id.

12      The Conference Report then states that these new provisions (including ERISA

13  § 204(b)(1)(H)) would *not* apply to employees who have not reached normal

14  retirement age:

15      Under the conference agreement, the rules preventing the reduction or cessation
        of benefit accruals on account of the attainment of any age *are not intended to*

16      *apply* in cases in which a plan satisfies the normal benefit accrual requirements
        *for employees who have not attained normal retirement age.*

17  Id. at 379 (emphasis added). The Conference Report's interpretation is entitled to

18  dispositive weight. See Buckley v. Valeo, 424 U.S. 1, 51 n.57, 96 S. Ct. 612, 650

19  n.57, 46 L. Ed. 2d 659, 706 n.57 (1976) (court should not adopt an interpretation of a

20  statute where the conference report "expressly provides for a contrary interpretation").

21      The unequivocal statements of the sponsoring legislators confirm this view.[7]

22

23  [6] Next to the statute itself a conference report "is the most persuasive evidence of
    congressional intent." Dep't of Health and Welfare, State of Idaho v. Block, 784 F.2d

24  895, 901 (9th Cir. 1986); see also Northwest Forest Resource Council v. Glickman, 82

25  F.3d 825, 835 (9th Cir. 1996) ("a congressional conference report is recognized as the
    most reliable evidence of congressional intent"); Eaton, 117 F. Supp. 2d at 827.

26  [7] "[S]tatements of sponsoring legislators are entitled to considerable weight" in

27  discerning congressional intent. Eaton, 117 F. Supp. 2d at 827. See also NLRB v.
    Fruit & Vegetable Packers & Warehousemen, Local 760, 377 U.S. 58, 66, 84 S. Ct.

28                                                                      (footnote cont'd)

8

A - 54

Senator Grassley introduced the bill that was eventually enacted as OBRA 1986 with the following remarks: "I am introducing legislation today that would amend the [ADEA] and [ERISA] to require continued pension benefit accruals *for workers who work past the normal retirement age of 65.*" 131 Cong. Rec. S 9429 (daily ed. July 11, 1985) (emphasis added). Then-Representative Jeffords later explained:

> It is important for this body to understand what this "Older Americans Pension Benefits" provision does and does not do. What it does is prevent a covered employee pension benefit plan from eliminating or reducing an employee's pension benefit accruals, because of the attainment of any age, *for a period of employment after the employee attains the normal retirement age under his or her plan.*

132 Cong. Rec. H 11437 (daily ed. Oct. 17, 1986) (emphasis added).

Indeed, the heading of Section 9202 of OBRA 1986 is entitled "Benefit Accrual *Beyond Normal Retirement Age.*" Pub. L. No. 99-509, 100 Stat. 1874, at 1975 (1986) (emphasis added).[8] That heading further confirms the Congressional intent and compels the conclusion that ERISA § 204(b)(1)(H) applies only to participants who have reached normal retirement age.

That conclusion dooms plaintiffs' age discrimination claim. Plaintiffs' theory is premised entirely upon their characterization of how amounts credited to a cash balance account *before* normal retirement age differ in value among participants when *projected forward* to age 65. (*See, e.g.*, Cmplt. ¶ 35 (alleging that an interest credit allocated to a younger participant's account "will always be more valuable in terms of an age-65 annuity than the same hypothetical contribution to [an older participant's] account")). Plaintiffs have not yet reached age 65, and nowhere do they claim that the Plan's cash balance benefit discriminates against participants *after* they reach age 65, the point in time at which ERISA § 204(b)(1)(H) begins to protect participants.[9]

---

1063, 1068, 12 L. Ed. 2d 129, 135 (1964).

[8] Statutory headings can provide insight into a statute's meaning. <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 212, 118 S. Ct. 1952, 1956, 141 L. Ed. 2d 215, 220 (1998).

[9] Nor would plaintiffs, who are 54 and 51, have standing to bring such a claim on

(footnote cont'd)

9

A - 55

1  Plaintiffs' First Claim for Relief should be dismissed.

2  **B.    The Plan's Cash Balance Benefit Does Not Discriminate On The Basis Of
     Age In Violation Of ERISA § 204(b)(1)(H).**

3         Apart from the fact that ERISA § 204(b)(1)(H) does not apply before normal

4  retirement age, plaintiffs have not stated an age discrimination claim.  Plaintiffs base

5  their claim entirely on the effect of the time value of money:

6         Because a younger Cash Balance Participant will always have more time
       to accrue compound interest on his or her Retirement Account Balance
7      before he or she turns 65 than an older Cash Balance Participant does on
       the same account balance, an Interest Credit allocated to the former's
8      account will always be more valuable in terms of an age-65 annuity than
       the same hypothetical contribution to the latter's account.  In other
9      words, in each year for which an Interest Credit is allocated to the
       participants' accounts, the younger participant ends up with a greater
10     increase in his or her age-65 annuity than the older participant does, even
       though they both receive the same hypothetical interest rate on the same
11     hypothetical account balance.

12 (Id., ¶ 35).  That theory simply does not state a claim for age discrimination.

13         1.    At Least Two Courts Have Rejected Plaintiffs' Theory.

14         At least two courts have soundly rejected the identical theory proffered by

15 plaintiffs.  In Eaton, the court held that the defendant's cash balance plan did not

16 violate ERISA § 204(b)(1)(H).  The linchpin of the plaintiffs' argument in Eaton, just

17 as it is here, was that the phrase "rate of benefit accrual" in § 204(b)(1)(H) must be

18 measured in terms of an annuity paid at normal retirement age, rather the year-over-

19 year change in the cash balance account.  The court began by noting that the phrase

20 "rate of benefit accrual" is not defined in the statute, and accordingly the phrase "does

21 not unambiguously require that the rate be measured, as plaintiffs contend, solely in

22 terms of an annuity payable at normal retirement age."  Id. at 825.  Rejecting the same

23

24 behalf of participants older than age 65.  See Cmplt. ¶¶ 8, 9; Engers, 2001 U.S. Dist.

25 LEXIS 25889, at **12-13 (quoting O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct.

26 669, 675, 38 L. Ed. 2d 674, 682 (1974)) (where "none of the named plaintiffs
   purporting to represent a class establishes the requisite of a case or controversy with

27 the defendants, none may seek relief on behalf of himself or any other member of the

28 class").

1    theory advanced by plaintiffs here, the court ruled that, "in the case of a cash balance

2    defined benefit plan, the rate of benefit accrual should be defined as the change in the

3    employee's cash balance account from one year to the next." Id. at 832-33.

4        The Eaton court gave several additional compelling reasons why plaintiffs'

5    contention was wrong, each of which apply equally to the plaintiffs' claim here.  First,

6    plaintiffs' theory would outlaw what Congress *requires* for 401(k) defined

7    contribution plans.  Assuming the same investment performance, a 401(k)

8    contribution to a younger employee's account will grow to a value on that employee's

9    65th birthday that is greater than the value to which the same dollar amount

10   contributed to an older employee's account will grow on his or her 65th birthday.  As

11   the court noted, "The ADEA and ERISA *require* such treatment of employees of

12   different ages in defined contribution plans . . . . It is difficult to fathom why

13   Congress might have wanted to outlaw similar effects under defined benefit plans."

14   Id. at 831 (italics in original).

15       Second, under plaintiffs' theory the very plan that Congress said was *not* age

16   discriminatory would be illegal.  Congress specifically set forth in the Conference

17   Report an example of a defined benefit plan that would comply with the new age

18   discrimination provisions.  H.R. Conf. Rep. No. 99-1012, at 381; 1986 U.S.C.C.A.N.

19   at 4026.  "Plaintiff's interpretation would transform that example of compliance into

20   an example of a violation." Eaton, 117 F. Supp. 2d at 830.

21       Third, plaintiffs' theory essentially faults employers for providing interest

22   credits that protect a participant's pay credit from the brunt of inflation before the

23   participant is eligible to take a distribution.  The court noted that "[a]dopting

24   plaintiff's proposed statutory interpretation would thus give employers a perverse

25   incentive *not* to guarantee at least some level of growth in the value of a pension over

26   time." Id. at 832 (emphasis in original).

27       Fourth, plaintiffs' theory would require speculative and unsupported

28   assumptions about what interest rates will be in the future and how each participant

1  could be affected. "It is hard to believe that, for purposes of determining whether a

2  pension plan discriminates against participants on the basis of age, Congress would

3  have intended to require the use of estimates . . ." Id. at 833. Like the plan in Eaton,

4  the Plan's interest crediting rate is tied to a fluctuating rate, that of 30-year U.S.

5  Treasury Bonds. Because the interest rate on 30-year Treasury Bonds in the future

6  cannot be known now, it is impossible to determine precisely what value a

7  participant's benefit will have at age 65.

8      Another district court recently adopted the holding and rationale of the Eaton

9  decision. See Tootle, 222 F.R.D. at 93-94. Like plaintiffs here, the plaintiff in Tootle

10  contended that the compounding effect of interest credits resulted in a reduction in the

11  "rate of benefit accrual" when measured as an age 65 annuity. Agreeing with the

12  Eaton court, the Tootle court adopted the same interpretation of the phrase "rate of

13  benefit accrual," holding that the proper approach is to "measure benefit accrual under

14  cash balance plans by examining the rate at which amounts are allocated and the

15  changes over time in an individual's account balance." Id. at 94. Under that measure,

16  the Plan does not discriminate based on age. Id.

17      2.    The Only Decision Holding A Cash Balance Plan To Discriminate On
             The Basis Of Age Is Not Persuasive Authority And Should Be Rejected.

18
       The only decision in which any court has adopted plaintiffs' theory of age
19
    discrimination is Cooper v. The IBM Personal Pension Plan, 274 F. Supp. 2d 1010
20
    (S.D. Ill. 2003). Relying entirely on an unsupported parsing of the language of §
21
    204(b)(1)(H) as well as the language, according to the court, that Congress *meant* to
22
    use, the court concluded that the cash balance plan in that case ran afoul of §
23
    204(b)(1)(H).
24
       The Cooper court concluded that "the best interpretation" of the phrase "rate of
25
    benefit accrual" is that it "refers to an employee's age 65 annual benefit and the rate at
26
    which that age 65 annual benefit accrues." Id., at 1016. Because the court viewed this
27
    as simply another way of saying "accrued benefit" – a defined term in ERISA – the
28

12

A - 58

MOTION TO DISMISS

1  Cooper court essentially decided that when Congress used the phrase "rate of benefit

2  accrual" (not a defined term), it really meant to use the defined term "accrued

3  benefit." However, it is a fundamental principle of statutory construction that when

4  Congress uses different words, it intends different meanings. See Estate of Cowart v.

5  Nicklos Drilling Co., 505 U.S. 469, 496-97, 112 S. Ct. 2589, 2605, 120 L. Ed. 2d 379,

6  402 (1992). The court did not explain why if Congress meant to use the phrase

7  "accrued benefit," it instead used a different term.

8      The Cooper court reached its conclusion without any support from the statute or

9  its legislative history, and without consideration of practical factors. Remarkably, the

10  Cooper court did not even cite Eaton, decided only a year earlier, which was the only

11  case at that time to consider whether cash balance plans violate ERISA §

12  204(a)(1)(B), or explain how its decision could possibly withstand the numerous and

13  compelling rationales that the Eaton court provided in support of its well reasoned

14  holding. Indeed, the Cooper court did not offer one shred of evidence that Congress

15  intended the conclusion that the court reached. Rather, the court relied on its own

16  notion of proper grammar. According to the court, Congress intended to use the term

17  "accrued benefit" (i.e., a benefit expressed in the form of an annual benefit

18  commencing at normal retirement age), but instead used the phrase "rate of benefit

19  accrual" because it would have been "clumsy" for Congress to say "rate of accrued

20  benefit." 274 F. Supp. 2d at 1016. However, there are other ways that Congress

21  could have drafted § 204(b)(1)(H) to say "accrued benefit" – if that was the term

22  Congress actually intended to use.[10] As the Eaton court noted, while a distinction

23  between the terms "accrued benefit" and "rate of benefit accrual" may seem like

24  "hair-splitting," "pension law is a highly technical field where hairs are split with even

25

---

26  [10] For example, Congress could easily have drafted Section 204(b)(1)(H) to prohibit

27  defined benefit plans in which ". . . the rate of increase in an employee's accrued

28  benefit is reduced because of the attainment of any age."

1  finer razors." 117 F. Supp. 2d at 830.  In <u>Tootle</u>, the court rejected the <u>Cooper</u>

2  decision and followed <u>Eaton</u>.  This Court should do the same.

3     3.    Plaintiffs' Age Discrimination Theory Should Be Rejected for
             Additional Reasons
4

5        a.    *Plaintiffs' Theory Impermissibly Claims Age Discrimination
                 Based Solely On The Effect Of The Time Value Of Money.*

6         By insisting that this Court compare the value of a benefit at two distant points

7  in time (one participant's 65th birthday and a younger participant's later 65th birthday),

8  plaintiffs ask this Court to ignore the critical fact that at any *one* moment in time those

9  participants' account balances are identical, given the same years of service and

10 compensation.  For example, assume that Employee A is 45 years old with 15 years of

11 service and an annual salary of $65,000, and Employee B is 54 years old with the

12 identical years of service and salary.  Under the Plan, both employees would receive

13 an annual retirement credit of 7.5% of $65,000, or $4,875.[11]  Both would also receive

14 the same interest credit on that $4,875 based upon the rate of the applicable 30-year

15 U.S. Treasury Bonds.  Assume that the 45-year old Employee A and the 54-year old

16 Employee B both terminate employment after their cash balance accounts are credited

17 with the $4,875 pay credit, but they elect not to receive their distributions until they

18 attain age 65.  Each year, the dollar amount in their respective cash balance accounts

19 will be identical, and will reflect the $4,875 pay credit plus the interest earned on that

20 retirement credit.  The older Employee B would, at age 65, receive an annual annuity

21 reflecting nearly 11 years of compounding interest credits.  At that time, the dollar

22 amount in Employee A's cash balance account will be *identical* to that of older

23 Employee B.  If, however, younger Employee A were to continue accruing interest

24 credits after older Employee B reaches retirement age and begins taking distributions,

25

26 [11] Although the cash balance benefit adds retirement credits and interest credits to

27 participants' cash balance accounts every pay period, for simplicity this example
   assumes annual crediting.
28

1  younger Employee A would, at age 65, receive an annual annuity that reflects an

2  additional 9 years of compounding interest credits, simply reflecting their age

3  difference.

4       That phenomenon merely reflects the time value of money; it is not age

5  discrimination. See Eaton, 117 F. Supp. 2d at 823 (the difference in the value of

6  normal retirement age annuities for participants of different ages is simply the result

7  of the time value of money and is inherent in virtually all cash balance plans). The

8  rate at which retirement credits and interest credits accrue to participants' accounts is

9  not reduced because of age but is age neutral. Nothing in ERISA § 204(b)(1)(H)

10  requires that older participants receive greater annual accruals simply because they

11  have fewer years to accumulate retirement benefits than do younger employees. See

12  Lunn, 166 F. 3d at 883 (worker who retires after age 65 is not entitled to receive an

13  extra pension benefit solely on account of his age merely because his life expectancy

14  is shorter than a worker who retires earlier; both workers have been treated identically

15  and it is "unlikely that ERISA would require a subsidy for older workers").

16       In addition, plaintiffs' position contradicts the principle that changes in the

17  value of benefits that merely correlate with age, but are not *caused* by age, cannot be

18  deemed unlawful age discrimination. See Hazen Paper Co. v. Biggins, 507 U.S. 604,

19  612-13, 113 S. Ct. 1701, 1707-08, 123 L. Ed. 2d 338, 348-49 (1993) (an employment

20  decision premised upon an age-correlated but analytically distinct factor does not

21  constitute age discrimination); Eaton, 117 F. Supp. 2d at 831-32 (ERISA §

22  204(b)(1)(H) does not prohibit reductions in benefits based upon years of service

23  "despite the one-to-one correlation of age and years of service").

24             b.   *Plaintiffs' Theory Directly Contradicts Authoritative*

25                 *Guidance From the U.S. Treasury Department.*

     The Treasury Department specifically considered and rejected the very age

26  discrimination theory that plaintiffs offer. In a 1991 preamble to final regulations

27  under section 401(a) of the Internal Revenue Code, the Treasury Department stated:

28

> The fact that interest adjustments through normal retirement age are accrued in the year of the related hypothetical allocation will not cause a cash balance plan to fail to satisfy the requirements of section 411(b)(1)(H) [the parallel provision to ERISA § 204(b)(1)(H)], relating to age-based reductions in the rate at which benefits accrue under a plan.

56 Fed. Reg. 47,524, 47,528 (Sept. 19, 1991).[12]  Further, the regulations issued with this preamble contained a safe harbor that would allow cash balance plans to provide benefits that do not discriminate in favor of highly compensated employees.  The safe harbor design required, among other things, uniform interest credits using any one of several specified bases until normal retirement age.  26 C.F.R. § 1.401(a)(4)-8(c)(3). Plaintiffs' theory would invalidate as age discriminatory the very interest crediting feature that the Treasury Department authorized under final regulations.

  c.   *Plaintiffs' Theory Would Outlaw The Interest Crediting Feature That Congress Mandated In Certain Defined Benefit Pension Plans.*

Similarly, ERISA § 204, the very section upon which plaintiffs rely, mandates the payment of interest in a manner that results in the same pattern of accruals that plaintiffs claim violates ERISA § 204(b)(1)(H).  Specifically, ERISA § 204(c)(2)(B), dealing with defined benefit plans that require employee contributions, provides that a participant's accrued benefit derived from his or her own contributions is the amount equal to the participant's contributions expressed as an annuity beginning at normal retirement age, using an interest rate specified in the statute to project the value of such contributions to the participant's normal retirement date.  Plaintiffs' theory would invalidate § 204(c)(2)(B), because, for example, if Employees A and B in the example above, one age 45 and another age 54, make the same contributions and

---

[12] The Treasury Department holds exclusive administrative jurisdiction over the interpretation of ERISA § 204(b)(1)(H).  See Reorganization Plan No. 4, 43 Fed. Reg. 47,713 (Sept. 20, 1978).  Hence, its pronouncements are entitled to great deference. See Fidelity Fed. Savings & Loan Ass'n v. De La Cuesta, 458 U.S. 141, 158 n.13, 102 S. Ct. 3014, 3025 n. 13, 73 L. Ed. 2d 664, 678 n.13 (1982) (preamble represents "the administrative construction of the regulation, to which 'deference is clearly in order.' Udall v. Tallman, 380 U.S. 1, 16, 85 S. Ct. 792, 801, 13 L. Ed. 2d 616, 625 (1965)").

1  receive the same statutorily mandated interest, the value of the younger participant's

2  annuity at age 65 will be greater than the value of the older participant's annuity,

3  simply because the younger participant's account has 9 more years to earn interest.

4  The United States Supreme Court requires that this Court not adopt statutory

5  interpretations that would lead to such "improbable results." See Curtiss-Wright

6  Corp. v. Schoonejongen, 514 U.S. 73, 81, 115 S. Ct. 1223, 1229, 131 L. Ed. 2d 94,

7  102 (1995) (reading the pension plan amendment rules in ERISA § 402(b)(3) to

8  require that detailed amendment procedures be set forth in the plan might lead to the

9  invalidation of existing amendment procedures and "Congress could not have

10 intended that result"); FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120,

11 133, 120 S. Ct. 1291, 1300, 146 L. Ed. 2d 121, 134 (2000) ("[a] court must…interpret

12 [a] statute as a symmetrical and coherent regulatory scheme, . . . and fit, if possible,

13 all parts into an harmonious whole") (internal citations and quotations omitted).

14      Thus, the proper measure of the "rate of benefit accrual" applicable to cash

15 balance benefits for purposes of ERISA § 204(b)(1)(H) is the rate at which

16 participants' accounts change from year-to-year. Eaton, 117 F. Supp. 2d at 832-33;

17 Tootle, 222 F.R.D. at 94. Under the Plan, participants' accounts accrue retirement

18 credits at the same rate, regardless of age. Interest credits are allocated to all accounts

19 in the same manner, regardless of age. Accordingly, under Eaton and Tootle and for

20 the reasons set forth above, plaintiffs' First Claim for Relief should be dismissed.

## IV.  PLAINTIFFS' SECOND CLAIM FOR RELIEF FAILS TO ALLEGE A VIOLATION OF ERISA'S BACKLOADING RULES.

Plaintiffs' Second Claim for Relief alleges that the Plan fails to comply with

ERISA's backloading rules because for some years participants' frozen benefits are

greater than their cash balance benefits. Plaintiffs admit that their cash balance

accounts are credited with monthly retirement and interest credits (Cmplt. ¶¶ 18-19);

therefore there are no periods of "zero accrual." Plaintiffs nonetheless contend that

they are *experiencing* "zero accrual" until the value of their cash balance benefits

MOTION TO DISMISS

1  exceeds their frozen benefit. They contend that, when this occurs, there is a violation

2  of ERISA § 204(b)(1)(B), which provides that the rate of benefit accrual in any Plan

3  year may not exceed 133-1/3% of the accrual in any other year (the "133-1/3% rule").

4  (Id., ¶¶ 58, 60).

5      There are two fundamental principles of ERISA which demonstrate that

6  plaintiffs' theory is incorrect. First, ERISA requires that an accrued benefit can never

7  be reduced. ERISA § 204(g). Second, an employer is free to change a plan's benefit

8  formula to provide a less generous benefit in the future. See Pegram v. Herdrich, 530

9  U.S. 211, 225, 120 S. Ct. 2143, 2152, 147 L. Ed. 2d 164, 179 (2000). As a result,

10  whenever an employer changes a plan benefit formula, the employer must at least

11  provide that participants will receive the greater of the accrued-to-date benefit and the

12  new benefit. If plaintiffs' theory were correct, an employer utilizing the 133-1/3%

13  rule would never be able to exercise its right to make such a change and comply with

14  § 204(g) using a "greater of" benefit formula. It is well-settled that "greater of"

15  formulas are permissible under ERISA. See, e.g., Brody v. Enhance Reins. Co., No.

16  00 Civ. 9660, 2003 U.S. Dist. LEXIS 3785, at ** 26-27, 37-38 (S.D.N.Y. March 14,

17  2003); see p. 20-21, infra.

18      As plaintiffs concede, a defined benefit plan is not backloaded if it satisfies any

19  one of three backloading rules. See ERISA § 204(b)(1)(A)-(C); Cmplt. ¶ 56.

20  Plaintiffs address only one of the rules – the 133-1/3% rule – and do not even attempt

21  to explain why the Plan would not satisfy the other two (the 3% and the fractional

22  rules). ERISA § 204(b)(1)(A),(C). Instead, plaintiffs make the conclusory assertion

23  that "[b]y definition, cash balance plans such as SCGC's cannot comply" with the

24  other two rules, citing Esden v. Bank of Boston, 229 F.3d 154, 167 n.18 (2d Cir.

25  2000). The Esden court, however, simply noted without explanation that the parties

26  did not dispute that the plan at issue *in that case* could only comply with the 133-1/3%

27  rule. The court did not suggest that other cash balance plans could never satisfy the

28  other two rules. Because plaintiffs have not alleged that the Plan fails all three

1  backloading rules, plaintiffs' Second Claim for Relief should be dismissed.

2      Indeed, the Ninth Circuit has rejected plaintiffs' theory of "zero" benefit

3  accrual. See Williams v. Caterpillar, Inc., 944 F.2d 658 (9th Cir. 1991). In Williams,

4  the plaintiffs were hired as hourly employees and were covered under a defined

5  benefit plan for union employees, and later promoted to salaried positions and covered

6  under a defined benefit plan for salaried employees. Plaintiffs later were demoted to

7  union jobs and were again covered under the union plan rather than the salaried plan.

8  Upon retirement, plaintiffs received a pension from whichever plan gave them a

9  greater benefit, offsetting any benefits owed under the other plan. Id. at 663. Because

10  plaintiffs' benefits under the union plan were less than the benefits they previously

11  accrued under the salaried plan (which were no longer increasing due to their return to

12  the union plan and therefore were effectively frozen), they received benefits under the

13  salaried plan. Plaintiffs alleged that the union plan violated the accrual rules of

14  ERISA § 204 because, as a result of plaintiffs' salaried benefit being the greater

15  benefit, plaintiffs received no additional amounts for their final years of service while

16  in the union plan. Id.

17      The Ninth Circuit upheld the benefit formula that provided participants with the

18  greater of two benefits. The court expressly rejected the position plaintiffs advance

19  here that their benefit accruals should be measured by considering both their frozen

20  benefit and actively accruing benefits. Id. The court held that although the *amounts*

21  *payable* to plaintiffs were calculated by determining whether their frozen accrued

22  benefit or actively accruing benefit was greater, the *accrual rules* of ERISA § 204 are

23  applied without taking the frozen benefit into account. Id. at 663. Thus, the union

24  plan did not violate the accrual rules of ERISA § 204. Id. at 663-64.

25      The Ninth Circuit's holding in Williams is consistent with the IRS position

26  regarding floor-offset arrangements, which are analogous to the Plan's formula.[13] In a

27  

28  [13] Under a floor-offset arrangement, a participant's accrued benefit under a defined

(footnote cont'd)

19

**MOTION TO DISMISS**

A - 65

1  floor-offset arrangement, a participant might receive no accrued benefit under a
2  defined benefit plan in a year because it is offset by a greater benefit under a defined
3  contribution plan, while the following year the participant might receive a benefit
4  accrued under the defined benefit plan. Under plaintiffs' erroneous theory, this period
5  of so-called zero accrual under the defined benefit plan followed by a positive accrual
6  would be a *per se* violation of the 133-1/3% rule. However, the IRS has made clear
7  that, in testing for compliance with the backloading rules,[14] including the 133-1/3%
8  rule, the offset from the other plan is *ignored* and the plan complies as long as the
9  defined benefit formula *itself* satisfies the backloading rules. Rev. Rul. 76-259, 1976-
10  2 C.B. 111.

11      Indeed, if plaintiffs' approach to measuring benefit accrual were correct, *any*
12  plan that gives participants the greater of two benefits, one of which is frozen, would
13  result in a *per se* violation of the 133-1/3% rule. Under all such plans a participant
14  may effectively earn no additional benefit for a certain period of time under one of the
15  benefits followed by a year in which the participant would earn a benefit. But
16  Congress, the Treasury Department, the IRS, and the courts have all recognized that
17  this result is lawful. See, e.g., 26 C.F.R. § 1.401(a)(4)-13(c)(4)(ii) (allowing plans to
18  use a formula that calculated participants' benefits as the greater of a frozen accrued
19  benefit and a currently accruing benefit (referred to in the regulation as a "wear-away
20  formula")); 26 C.F.R. § 1.401(a)(17)-1(e)(5), *Example 1*; S. Rep. No. 98-575, at 28-
21  29 (1984), reprinted in 1984 U.S.C.C.A.N. 2547, 2574-75 ("greater-of" benefit was
22  legal even though "the participant's accrued benefit . . . will not be increased by
23  subsequent service or pay raises until the subsequent increase brings the participant's
24  accrued benefit to a level in excess of the accrued benefit as of [the amendment

---

26  benefit plan is offset by the benefit provided by a defined contribution plan. See, e.g.,
   Rev. Rul. 76-259, 1976-2 C.B. 111.
27  [14] The backloading rules in Code § 411(b)(1) are the equivalent of the backloading
28  rules in ERISA § 204(b)(1).

**MOTION TO DISMISS**

1   date]"); <u>Brody v. Enhance Reins. Co.</u>, No. 00 Civ. 9660, 2003 U.S. Dist. LEXIS 3785,

2   at **26-27, 37-38 (S.D.N.Y. March 14, 2003) ("greater-of" benefit did not violate

3   ERISA § 204(g); "the greater-of method . . . has been consistently approved by the

4   IRS" (citing Rev. Rul. 81-12, 1981-1 C.B. 228)); <u>Corcoran v. Bell Atlantic Corp.</u>, No.

5   Civ. A 97-510, 1997 WL 602859, at *3-4 (E.D. Pa. Sept. 23, 1997), <u>aff'd</u>, 159 F.3d

6   1350 (3d Cir. 1998) ("greater-of" benefit used in transition from traditional defined

7   benefit to cash balance formula did not violate § 204(g)).

8          The rule that benefit accrual under a "greater-of" provision must be tested for

9   backloading without regard to a frozen benefit makes sense, because there is only one

10  actively accruing benefit – the other benefit is frozen. Plaintiffs' "zero accrual"

11  backloading claim ignores this reality and is based entirely on the interplay between

12  their frozen benefit and their cash balance benefit. However, like the plaintiffs in

13  <u>Williams</u>, plaintiffs are accruing a cash balance benefit, even if it allegedly is

14  currently less than their frozen benefit. There are no periods of zero accrual because

15  the cash balance benefit increases each year. (Cmplt. ¶¶ 18, 19). Thus, the Second

16  Claim for Relief should be dismissed.

17  **V.     PLAINTIFFS' THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED
            FOR FAILURE TO ALLEGE PREJUDICE FROM THE ALLEGEDLY**
18          **INADEQUATE NOTICE OF A DECREASE IN BENEFITS.**

19          Plaintiffs' Third Claim for Relief contends that the notice that SoCalGas

20  provided to participants regarding the adoption of a cash balance benefit violated

21  ERISA § 204(h) because it did not inform participants that the adoption would result

22  in a significant reduction in the rate of future benefit accrual. (<u>Id.</u>, ¶¶ 36-40, 64-66).

23  To state a claim under ERISA § 204(h), a plaintiff must allege that he or she was

24  harmed in some way by the alleged lack of notice. <u>Siles v. ILGWU Nat'l Retirement</u>

25  <u>Fund</u>, 783 F.2d 923, 930 (9th Cir. 1986) (employee must show harm from lack of

26  notice); <u>Allred v. First Nationwide Financial Corp.</u>, No. C-92-4000, 1994 U.S. Dist.

27  LEXIS 21538, *16-19 (N.D. Cal. May 2, 1994), 1994 U.S. Dist. LEXIS 20245, *8

28  (N.D. Cal. Aug. 2, 1994) (employee must show substantive damages from alleged

21

1  lack of ERISA § 204(h) notice); <u>Young v. St. Frances Xavier Cabrini Hosp. of Seattle</u>,

2  No. C87-973Z, 1989 U.S. Dist. LEXIS 18376, *11 (W.D. Wash. April 12, 1989)

3  (employees could not recover under ERISA § 204(h) because they were not

4  prejudiced by lack of notice), <u>rev'd on other grounds</u>, <u>Johnson v. St. Frances Xavier</u>

5  <u>Cabrini Hosp. of Seattle</u>, 910 F.2d 594 (9th Cir. 1990); <u>Frommert v. Conkright</u>, 328 F.

6  Supp. 2d 420, 436 (W.D.N.Y. 2004) (citing <u>Burke v. Kodak Retirement Income Plan</u>,

7  336 F.3d 103, 113-14 (2d Cir. 2003), <u>cert. denied</u>, 540 U.S. 1105 (2004)).

8        The purpose of ERISA § 204(h) is to give participants "the opportunity to take

9  advantage of an existing benefit before it is lost." <u>Frommert</u>, 328 F. Supp. 2d at 436

10  (quoting <u>Davidson v. Canteen Corp.</u>, 957 F.2d 1404, 1407 (7th Cir. 1992)).  Even

11  assuming <i>arguendo</i> that plaintiffs failed to receive adequate notice of changes to the

12  Plan, they have not alleged that they have suffered any particular prejudice or harm

13  from their alleged unawareness of the amendment.  Accordingly, plaintiffs' claim

14  under Section 204(h) should be dismissed.

15  **VI.    THE FOURTH CLAIM FOR RELIEF IS PREEMPTED BY ERISA.**

16        Plaintiffs' attempt to allege a state law discrimination claim under the

17  California Fair Employment and Housing Act, Cal. Gov. Code § 12900 <u>et seq.</u>

18  ("FEHA"), <u>see</u> Cmplt. ¶¶ 67-72, is preempted by ERISA.  29 U.S.C. § 1144(a).

19  ERISA is a "comprehensive and reticulated statute," <u>Nachman Corp. v. Pension</u>

20  <u>Benefit Guar. Corp.</u>, 446 U.S. 359, 361, 100 S. Ct. 1723, 1726, 64 L. Ed. 2d 354, 358

21  (1980), which governs the field of pension benefit plans.  <u>See generally</u> <u>New York</u>

22  <u>State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S.

23  645, 650-51, 115 S. Ct. 1671, 1674-75 , 131 L. Ed. 2d 695, 701-702 (1995).  <u>See also</u>

24  <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 60, 107 S. Ct. 1542, 1544, 95 L. Ed.

25  2d 55, 60 (1987).  Congress's drafting of the ERISA statute "assures that federal

26  regulation of covered plans will be exclusive." <u>District of Columbia v. Greater</u>

27  <u>Washington Bd. of Trade</u>, 506 U.S. 125, 127, 113 S. Ct. 580, 582, 121 L. Ed. 2d 513,

28  518 (1992). As the U.S. Supreme Court has observed, "the breadth of [ERISA's] pre-

22

1  emptive reach is apparent from the [statute's] language." <u>Shaw v. Delta Air Lines,</u>

2  <u>Inc.</u>, 463 U.S. 85, 96, 103 S. Ct. 2890, 2899, 77 L. Ed. 2d 490, 501 (1983). ERISA

3  broadly states that:

4      [T]he provision of this title...shall supersede any and all State laws
       insofar as they may now or hereafter relate to any employee benefit plan
5      described in section 1003(a) of this title and not exempt under section
       1003(b) of this title.

6  29 U.S.C. § 1144(a). A state law does not need to be "specifically designed to affect

7  employee benefit plans" to be preempted. Rather, a state law claim is preempted if it

8  "relates to" an ERISA plan "in the normal sense of the phrase, if it has a connection

9  with or reference to such a plan." <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. at 96

10  (holding that a state law claim that a health benefits plan violated the New Jersey

11  human rights statute by discriminating on account of gender was preempted by

12  ERISA).

13      Courts have held that FEHA claims such as plaintiffs' are preempted by

14  ERISA. <u>See</u>, <u>e.g.</u>, <u>Stone v. Travelers Corporation</u>, 58 F.3d 434 (9th Cir. 1995)

15  (ERISA preempted age discrimination claim brought under FEHA); <u>Champion Int'l</u>

16  <u>Corp. v. Brown</u>, 731 F.2d 1406, 1408-1409 (9th Cir. 1984) (state law claim of age

17  discrimination in pension plan was preempted by ERISA). Indeed, in a case that is

18  virtually identical to this one, the Central District of California (Judge Taylor) held

19  that ERISA preempted a FEHA claim based on plaintiffs' theory that alleged that the

20  conversion of a "traditional" pension plan into a cash balance plan discriminated

21  against plaintiffs on the basis of age. <u>See</u> Order Granting in Part Defendants' Motion

22  to Dismiss in <u>Godinez v. CBS Corp.</u>, Case No. SA CV 01-28-GLT (Anx), at *5 (May

23  22, 2001), <u>aff'd</u>, 81 Fed. Appx. 949 (9th Cir. 2003) (unpublished). <u>See also</u> <u>Martinez</u>

24  <u>v. Maxim Property Management</u>, 1997 WL 564070, at *4 (N.D. Cal. 1997) ("because

25  plaintiff alleges...that his ability to receive retirement benefits was dependent on his

26  age" his FEHA cause of action was preempted by ERISA); <u>Dean v. Jet Services West,</u>

27  <u>Inc.</u>, 782 F. Supp. 498, 500 (S.D. Cal. 1991) (plaintiff's age discrimination claim

28

1  preempted by ERISA).  The Fourth Claim for Relief should be dismissed.

2  ## CONCLUSION

3      For the foregoing reasons, defendants respectfully request that the complaint be

4  dismissed in its entirety with prejudice.

5

6  Dated:  August 29, 2005           Respectfully submitted,

7                           SIDLEY AUSTIN BROWN & WOOD LLP

8                           William F. Conlon

                         Anne E. Rea

9                           Michael C. Kelley

10                           Robert M. Stone

11                         By: _____

12                           Michael C. Kelley

13                         Attorneys for Southern California Gas

                       Company and the Southern California

14                         Gas Company Pension Plan

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

CHI 3312706v.6

A - 70

# PROOF OF SERVICE

STATE OF CALIFORNIA         )
                             )   ss
COUNTY OF LOS ANGELES )

        I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 555 West Fifth Street, Suite 4000, Los Angeles, California 90013-1010.

        On August 29, 2005, I served the foregoing document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all interested parties in this action as follows:

| | |
|---|---|
| Jeffrey Lewis<br>Vincent Cheng<br>LEWIS, FEINBERG, RENAKER &<br>JACKSON, P.C.<br>1330 Broadway, Suite 1800<br>Oakland, CA 94612 | James M. Finberg<br>Steven M. Tindall<br>LIEFF, CABRASER, HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111 |

        ☒    (VIA U.S. MAIL) I served the foregoing document(s) by U.S. Mail, as follows: I placed true copies of the document(s) in a sealed envelope addressed to each interested party as shown above. I placed each such envelope with postage thereon fully prepaid, for collection and mailing at Sidley Austin Brown & Wood LLP, Los Angeles, California. I am readily familiar with Sidley Austin Brown & Wood LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

1    I declare under penalty of perjury under the laws of the State of

2  California that the foregoing is true and correct.  Executed on August 29, 2005, at Los

3  Angeles, California.

4

5  _Deborah J. Kelly_
   Deborah J. Kelly

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS

**<u>Hurlic v. Southern CA Gas Co.</u>**
**Order Granting Defendants' Motion to Dismiss**



1

2

3       ENTERED
        CLERK, U.S. DISTRICT COURT

4           OCT 19 2005

5       CENTRAL DISTRICT OF CALIFORNIA
        BY                      DEPUTY

6

                                            FILED
                                    CLERK, U.S. DISTRICT COURT

                                        OCT 18 2005

                                    CENTRAL DISTRICT OF CALIFORNIA
                                    BY                      DEPUTY

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10   DAVID HURLIC, SUSANNA H.          )   CASE NO.: CV05-5027 R (MANx)
11   SELESKY, individually and on behalf of )
     a class of all other persons similarly )   [~~Proposed~~] **ORDER GRANTING**
12   situated,                          )   **DEFENDANTS' MOTION TO**
                                        )   **DISMISS PURSUANT TO FED.**
13                                      )   **R. CIV. P. 12(b)(6)**
14          Plaintiffs,                 )
               v.                       )
15                                      )
     SOUTHERN CALIFORNIA GAS           )
16   COMPANY, THE SOUTHERN             )
     CALIFORNIA GAS COMPANY            )
17   PENSION PLAN,                     )
                                        )
18                                      )
            Defendants.                 )
19                                      )
20                                      )
                                        )
21

22

23

24

25

26

27

28                                              A - 73

LA1 709607v 1          [PROPOSED] ORDER DISMISSING COMPLAINT

**ORIGINAL**

LODGED

1    Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil

2  Procedure 12(b)(6) ("Motion to Dismiss") came on for hearing on October 17, 2005

3  before the Honorable Manuel L. Real, in Courtroom 8 of the United States District

4  Court for the Central District of California.

5    The Court, having fully considered the papers submitted by the parties in

6  connection with the Motion to Dismiss, the argument of counsel, and all other papers

7  filed with or submitted to the Court in connection with the proceedings in this action:

8    NOW, THEREFORE, IT IS HEREBY ORDERED THAT: ·

9    1.    Plaintiffs' First Claim for Relief for Discrimination in violation of

10  ERISA section 204(b)(1)(H) is dismissed without leave to amend for failure to state a

11  claim.

12    2.    Plaintiffs' Second Claim for Relief for Back-Loading in violation

13  of ERISA section 204(b)(1)(A), (B), and (C) is dismissed without leave to amend for

14  failure to state a claim.

15    3.    Plaintiffs' Third Claim for Relief for Failure to Provide Proper

16  Notice Under Anti-Cutback Rules in violation of ERISA section 204(h)(1) is

17  dismissed with leave to amend for failure to state a claim.  Plaintiffs shall have ten

18  (10) days from the date of the hearing to amend their complaint.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///                                                                    A - 74

1

LA1 709607v.1

1        4.    Plaintiffs' Fourth Claim for Relief for Disparate Impact for Age

2 Discrimination under FEHA is dismissed without leave to amend for failure to state a

3 claim.

4        **IT IS SO ORDERED.**

5

6 Dated: Oct. 18, 2005

7                               United States District Court Judge

8

9 Presented by:

10

11 SIDLEY AUSTIN BROWN & WOOD LLP
555 West Fifth Street, Suite 4000

12 Los Angeles, California 90013-1010
Telephone: (213) 896-6000

13 Facsimile: (213) 896-6600

14

15 By: *MC Kelley/cko*
    Michael C. Kelley (SBN 090062)
    Anne E. Rea (admitted *pro hac vice*)

16     Attorneys for Defendants Southern California

17     Gas Company and The Southern California
    Gas Company Pension Plan

18

19

20

21

22

23

24

25

26

27

28

A - 75

2

LA1 709607v 1

SCANNED