1

Westlaw.

Notice 96-8                                                                    Page 1
Notice 96-8, 1996-6 I.R.B. 23, 1996 WL 17901 (IRS NOT), 1996-1 C.B. 359

Internal Revenue Service (I.R.S.)

Notice

CASH BALANCE PENSION PLANS

Released: January 18, 1996

Published: February 5, 1996

Determining amount of single sum distributions from cash balance plans. This notice provides guidance concerning the requirements of section 411(a) and 417(e) with respect to the determination of the amount of a single sum distribution from a cash balance plan. The notice also describes proposed guidance to be issued later in regulations that would provide a list of standard indices and associated margins for use by cash balance plans in determining the amount of interest credits.

I. Purpose

This notice describes and requests comments on proposed guidance concerning the application of sections 411 and 417(e) to single sum distributions under defined benefit pension plans that are cash balance plans. The proposed guidance is being described in this notice in order to permit advance public comment in anticipation of the publication of regulations that incorporate the proposed guidance.

II. Background

A. General description of cash balance plans

In general terms, a cash balance plan is a defined benefit pension plan that defines benefits for each employee by reference to the amount of the employee's hypothetical account balance. An employee's hypothetical account balance is credited with hypothetical allocations and hypothetical earnings determined under a formula selected by the employer and set forth in the plan. These hypothetical allocations and hypothetical earnings are designed to mimic the allocations of actual contributions and actual earnings to an employee's account that would occur under a defined contribution plan. Cash balance plans often specify that hypothetical earnings (referred to in this notice as interest credits) are determined using an interest rate or rate of return under a variable outside index (e.g., the annual yield on one-year Treasury securities). Most cash balance plans also are designed to permit, after termination of employment, a distribution of an employee's entire accrued benefit in the form of a single sum distribution equal to the employee's hypothetical account balance as of the date of the distribution. Many cash balance plans also provide that if distribution is in the form of an annuity, the amount of the annuity is determined by dividing the hypothetical account balance by an annuity conversion factor.

As explained below, in order to comply with sections 411(a) and 417(e) in calculating the amount of a single sum distribution under a cash balance plan, the balance of the employee's hypothetical account must be projected to normal retirement age and then the employee must be paid at least the present value, determined in accordance with section 417(e), of that projected hypothetical account balance. If a cash balance plan provides interest credits using an interest rate that is higher than the section 417(e) applicable interest rate, payment of a single sum distribution equal to the hypothetical account balance as a complete distribution of the employee's accrued benefit may result either in a violation of section 417(e) or a forfeiture in violation of section 411(a). This is because, in such a case, the present value of the employee's accrued benefit, determined using the section 417(e) applicable interest rate, will generally exceed the hypothetical

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

account balance. The following example illustrates this potential problem.

Example. A cash balance plan provides for interest credits at a fixed rate of 8% per annum that are not conditioned on continued employment, and for annuity conversions using the section 417(e) applicable interest rate and mortality table. A fully vested employee with a hypothetical account balance of $45,000 terminates employment at age 45 and elects an immediate single sum distribution. At the time of the employee's termination, the section 417(e) applicable interest rate is 6.5%.

The projected balance of the employee's hypothetical account as of normal retirement age is $209,743. If $209,743 is discounted to age 45 at 6.5% (the section 417(e) applicable interest rate), the present value equals $59,524.

Accordingly, if the plan paid the hypothetical account balance of $45,000, instead of $59,524, the employee would receive $14,524 less than the amount to which the employee is entitled.

Even if a cash balance plan provides interest credits using an interest rate that exceeds the section 417(e) applicable interest rate, the plan can satisfy sections 417(e) and 411(a). Such a plan would provide that the amount of any single sum distribution is equal to the present value of the employee's accrued benefit determined in a manner that satisfies sections 411(a) and 417(e) even if the amount of the single sum exceeds the employee's hypothetical account balance. Thus, in the example above, the plan would satisfy sections 411(a) and 417(e) if the employee received a single sum distribution of $59,524 (the present value of the employee's accrued benefit) rather than $45,000 (the employee's hypothetical account balance).

B. Existing regulatory safe harbor for cash balance plans

Section 1.401(a)(4)-8(c) of the Income Tax Regulations, as issued in September 1991, provides a safe harbor testing method for cash balance plans. Under this method, a cash balance plan could be tested for nondiscrimination as though it were a defined contribution plan with actual allocations equal to the amount of the hypothetical allocations credited for the plan year. In order to use the safe harbor, a cash balance plan must satisfy certain design requirements that relate to the accrued benefit and valuation rules that are unique to defined benefit plans.

Comments on the September 1991 regulations expressed concern that the safe harbor plan design requirements reflected an interpretation by the Service and Treasury of the qualification requirements that, in certain cases, would require cash balance plans to pay a single sum distribution in excess of the hypothetical account balance. Guidance was requested on the circumstances in which a cash balance plan (whether or not it qualifies for safe harbor nondiscrimination testing) is permitted to distribute a single sum distribution equal to the hypothetical account balance without violating section 411(a) or 417(e).

When revised regulations under section 401(a)(4) were issued in September 1993, the safe harbor testing method for cash balance plans was left unchanged. The Preamble to those regulations indicated that the safe harbor testing method for cash balance plans had generated significant comment and that further guidance would be issued at a later date.

III. Analysis

A. Nonforfeiture and accrual rules

A cash balance plan is a defined benefit plan, not a defined contribution plan, because the benefits provided are not based solely on actual contributions and forfeitures allocated to an employee's account and the actual investment experience and expenses of the plan allocated to the account. Section 411(a)(7) defines an employee's accrued benefit differently for defined benefit plans than for defined contribution plans. Also, defined benefit plans are subject to a number of statutory provisions that do not apply to defined contribution plans. These include the rules of section 411(b)(1) that limit "backloading" of accruals; the valuation rules of section 417(e); and the definitely determinable benefits requirement of section 401(a)(25). These provisions limit the extent to which a cash balance plan can mimic the benefit and accrual structure of a defined contribution plan.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Notice 96-8                                                                Page 3
Notice 96-8, 1996-6 I.R.B. 23, 1996 WL 17901 (IRS NOT), 1996-1 C.B. 359

Under section 411(a)(2), an employee's accrued benefit must become nonforfeitable in accordance with one of the schedules specified in that section. Under § 1.411(a)-7(a)(1)(ii), the term "accrued benefits" generally refers only to pension or retirement benefits. Under section 411(b)(1), the accrual of the retirement benefits payable at normal retirement age must satisfy one of the rules in section 411(b)(1)(A), (B) or (C).

Under a cash balance plan, the retirement benefits payable at normal retirement age are determined by reference to the hypothetical account balance as of normal retirement age, including benefits attributable to interest credits to that age. Thus, benefits attributable to interest credits must be taken into account in determining whether the accrual of the retirement benefits under a cash balance plan satisfies one of the rules in section 411(b)(1)(A), (B) or (C). Moreover, benefits attributable to interest credits are in the nature of accrued benefits within the meaning of § 1.411(a)-7(a), rather than ancillary benefits, and thus, once accrued, must become nonforfeitable in accordance with a vesting schedule that satisfies section 411(a).

Cash balance plans can be categorized based on when the benefits attributable to interest credits accrue. Under one type of cash balance plan (referred to in this notice as a frontloaded interest credit plan), future interest credits to an employee's hypothetical account balance are not conditioned upon future service. (Of course, benefits attributable to future interest credits may be forfeited in accordance with the plan's vesting provisions, to the extent permitted under section 411.) Thus, in the case of a frontloaded interest credit plan, the benefits attributable to future interest credits with respect to a hypothetical allocation accrue at the same time that the benefits attributable to the hypothetical allocation accrue. As a result, if an employee terminates employment and defers distribution to a later date, interest credits will continue to be credited to that employee's hypothetical account.

A second type of cash balance plan (referred to in this notice as a backloaded interest credit plan) conditions future interest credits upon further service. In the case of a backloaded interest credit plan, benefits attributable to interest credits do not accrue until the interest credits are credited to the employee's account. Because backloaded interest credit plans typically will not satisfy any of the accrual rules in section 411(b)(1)(A), (B) or (C), it is anticipated that the proposed guidance will address only frontloaded interest credit plans.

B. Single sum distributions from frontloaded interest credit plans

As indicated above, most cash balance plans are designed to permit a distribution of an employee's entire accrued benefit, after termination of employment, in the form of a single sum equal to the employee's hypothetical account balance as of the date of the distribution. In order for a defined benefit plan to satisfy section 417(e), any single sum distribution payable to an employee from the plan must not be less than the nonforfeitable portion of the present value of the employee's accrued benefit under section 411(a)(7) (determined using the applicable interest rate and mortality table under section 417(e)).

1. Determination of the accrued benefit

In the case of a frontloaded interest credit plan, an employee's accrued benefit as of any date before attainment of normal retirement age is based on the employee's hypothetical account balance as of normal retirement age, including future interest credits to that age. If such a plan specifies a fixed interest rate for use in determining future interest credits, the employee's hypothetical account balance as of normal retirement age (including future interest credits) can be calculated precisely before normal retirement age. However, if a frontloaded interest credit plan specifies a variable outside index for use in determining the amount of interest credits, the precise dollar amount of an employee's hypothetical account balance as of normal retirement age (including future interest credits to normal retirement age), and thus the precise dollar amount of the employee's accrued

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

benefit as of any date before normal retirement age, cannot be calculated prior to normal retirement age.

A frontloaded interest credit plan that specifies a variable outside index for use in determining the amount of interest credits must prescribe the method for reflecting future interest credits in the calculation of an employee's accrued benefit. In order to comply with section 401(a)(25), the method, including actuarial assumptions, if applicable, must preclude employer discretion. Further, in determining the amount of an employee's accrued benefit, a forfeiture, within the meaning of § 1.411(a)-4T, will result if the value of future interest credits is projected using a rate that understates the value of those credits or if the plan by its terms reduces the interest rate or rate of return used for projecting future interest credits. A forfeiture in violation of section 411(a) also will occur if, in determining the amount of an employee's accrued benefit, future interest credits are not taken into account (i.e., there is no projection of future interest credits) and this has the same effect as using a rate that understates the value of future interest credits.

2. Calculation of the present value of the employee's accrued benefit

In the case of a frontloaded interest credit plan, a single sum distribution optional form of benefit equal to the hypothetical account balance will satisfy section 417(e) only if the single sum distribution is not less than the present value of the employee's accrued benefit calculated in accordance with the applicable interest rate and mortality table under section 417(e)(3). As noted above, the amount of the employee's accrued benefit must be determined using a method of reflecting future interest credits that satisfies section 401(a)(25) and that does not create a forfeiture in violation of section 411(a).

3. Situations in which the present value will not exceed the hypothetical account balance

A frontloaded interest credit plan might provide that the amount of interest credits is determined using a variable interest rate or rate of return that, by its terms, is no greater than the applicable interest rate under section 417(e)(3). For example, a plan that has been amended to comply with the changes to section 417(e) made by the Retirement Protection Act of 1994 (RPA '94) might provide that interest credits are determined using the lesser of the current rate of interest on 30-year Treasury securities or the current yield on 1-year Treasury Constant Maturities. Under such a plan, future interest credits can, without violating section 411(a), be projected to normal retirement age using a rate that is no greater than the applicable interest rate under section 417(e)(3). In that case, assuming that the annuity conversion factor under the plan is not less than the annuity conversion factor determined using the applicable interest rate and mortality table under section 417(e)(3), the employee's hypothetical account balance will equal or exceed the present value of the employee's accrued benefit determined in accordance with section 417(e). Thus, a single sum distribution equal to the employee's hypothetical account balance under such a plan will satisfy sections 411(a) and 417(e).

In other cases, a single sum distribution equal to an employee's hypothetical account balance will satisfy sections 417(e) and 411(a) if (a) the annuity conversion factor is not less than the annuity conversion factor determined using the applicable interest rate and mortality table under section 417(e)(3), (b) under the method for reflecting future interest credits in the calculation of an employee's accrued benefit, the future interest credits are projected using a rate that is no greater that the applicable interest rate under section 417(e)(3), and (c) this projection does not result in a forfeiture in violation of section 411(a).

By contrast, if the interest rate or rate of return under the plan used in determining the amount of interest credits is high relative to the section 417(e)(3) interest rate, the plan cannot distribute a single sum equal to the employee's hypothetical account balance and satisfy sections 411(a) and 417(e). If such a plan provided that, in determining an employee's accrued benefit, the rate used for projecting the amount of future interest credits was no greater than the interest

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

rate under section 417(e)(3), the projection would result in a forfeiture. Alternatively, if the plan provided for interest credits to be projected using a rate that exceeded the section 417(e) interest rate but then provided for the benefit to be discounted using that same higher rate, the plan would violate section 417(e).

C. Effect of defining the accrued benefit as the hypothetical account balance

The requirements referred to in this notice apply even in the case of a cash balance plan that defines an employee's accrued benefit as an amount equal to the employee's hypothetical account balance. Section 411(a)(7) defines the accrued benefit in terms of benefits payable under the plan at normal retirement age. In a cash balance plan, for an employee who has not attained normal retirement age, whether the employee's retirement benefit payable at normal retirement age under the plan includes benefits attributable to future interest credits depends on whether those benefits have accrued.

If benefits attributable to future interest credits have accrued, and those benefits are disregarded when benefits commence before normal retirement age, the plan has effectively conditioned entitlement to the benefits attributable to those future interest credits on the employee not taking a distribution prior to normal retirement age. Pursuant to § 1.411(a)-4T, a right that is conditioned under the plan on a subsequent forbearance is a forfeitable right. Accordingly, conditioning entitlement to benefits on the employee not taking a distribution violates the nonforfeitability requirements of section 411(a).

Alternatively, if the benefits attributable to future interest credits have not accrued and will accrue only as of the later dates when the interest credits are included in the hypothetical account balance, the timing of those later accruals must be taken into account in applying the accrual rules of section 411(b)(1). As a result, such a plan typically will not satisfy those accrual rules.

IV. Description of proposal

A. Variable interest rates that may be assumed for these purposes to be no greater than the 30-year Treasury interest rate

It is anticipated that the regulations will set forth a list of standard indices and associated margins for use with frontloaded interest credit plans that provide interest credits equal to the product of the balance of the hypothetical account and the current value of a variable index. (It is anticipated that this proposal will apply without regard to how frequently the rate used to determine interest credits is compounded.) Under a frontloaded interest credit plan that, for this purpose, specifies a variable index equal to the PBGC immediate rate or the sum of one of the standard indices and a margin not greater than the specified margin associated with that standard index, no impermissible forfeiture would result from projecting that the rate used to determine future interest credits for an employee is no greater than the applicable interest rate under section 417(e)(3), as amended by RPA '94. Thus, if such a plan has been amended to comply with the changes to section 417(e) made by RPA '94, the employee's entire accrued benefit could be distributed in the form of a single sum distribution equal to the employee's hypothetical account balance without violating section 411(a) or 417(e), provided that the plan provides the appropriate annuity conversion factors.

The table below provides the proposed list of standard indices and associated margins. The discount rates on Treasury bills and the yields on Treasury Constant Maturities are the rates reported in the Federal Reserve Bulletin, and the Consumer Price Index is CPI-U, as reported by the Department of Labor. Authority would be delegated to the Commissioner to approve other indices and associated margins.

---
Standard Index                                                  Associated Margin
---

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | |
|---|---|
| The discount rate on 3-month Treasury Bills | 175 basis points |
| The discount rate on 6-month Treasury Bills or 12-month Treasury Bills | 150 basis points |
| The yield on 1-year Treasury Constant Maturities | 100 basis points |
| The yield on 2-year Treasury Constant Maturities or 3-year Treasury Constant Maturities | 50 basis points |
| The yield on 5-year Treasury Constant Maturities or 7-year Treasury Constant Maturities | 25 basis points |
| The yield on 10-year Treasury Constant Maturities or any longer period Treasury Constant Maturities | 0 basis points |
| Annual rate of change of the Consumer Price Index | 3 percentage points |

In developing these standard indices and associated margins, the Service and Treasury took into account the historical relationship between each of these indices and the rate of interest on 30-year Treasury securities.

Under the proposal, if a frontloaded interest credit plan specified a variable index for use in determining the amount of interest credits that is equal to the sum of a standard index (listed in the table above) and a margin that exceeds the specified margin associated with that standard index, distribution of a single sum equal to the employee's hypothetical account balance would not satisfy both section 411(a) and section 417(e). If such a plan provided that the rate used for projecting the amount of future interest credits was no greater than the interest rate under section 417(e)(3), the projection would result in a forfeiture. Alternatively, if a frontloaded interest credit plan provided for interest credits to be projected using a rate that exceeded the section 417(e) interest rate but then provided for the benefit to be discounted using that same higher rate, the plan would violate section 417(e).

B. Guidance will be prospective

The anticipated regulations will be effective prospectively. In addition, for plan years beginning before the regulations are effective, a frontloaded interest credit plan would not be disqualified for failing to satisfy section 411(a) or 417(e) if the amount of the distribution satisfied those sections based on a reasonable, good-faith interpretation of the applicable provisions of the Code, taking into account pre-existing guidance. For this purpose, plans that comply with the guidance in this notice are deemed to be applying a reasonable, good faith interpretation.

V. Comments

The Service and Treasury invite comments on the proposal described in this notice. Comments are specifically requested on other indices for which guidance may be appropriate and on guidance that would facilitate the transition to use of an approved index (including possible guidance with respect to the application of section 411(d)(6)). Any suggestion of an index (and associated margin, if any) should include an analysis of the historical relationship between the index and the rate for 30-year Treasury securities. Comments should be submitted in writing, referencing Notice 96-7, and addressed to--
    Associate Chief Counsel
    (Employee Benefits and Exempt Organizations)
    CC:EBEO
    ATTN: Cash Balance Guidance
    Room 5214
    Internal Revenue Service
    1111 Constitution Ave., N.W.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Notice 96-8, 1996-6 I.R.B. 23, 1996 WL 17901 (IRS NOT), 1996-1 C.B. 359

Washington, D.C. 20224

VI. Drafting information

The principal author of this notice is Marjorie Hoffman of the Office of the Associate Chief Counsel (Employee Benefits and Exempt Organizations). For further information, contact Ms. Hoffman at 202-622-6030 (not a toll-free number).

Notice 96-8, 1996-6 I.R.B. 23, 1996 WL 17901 (IRS NOT), 1996-1 C.B. 359

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2

Announcement 2003-1                                                              Page 1
Announcement 2003-1, 2003-2 I.R.B. 281, 2002 WL 31747446 (IRS ANN), 2003-1
C.B. 281

Internal Revenue Service (I.R.S.)

Announcement

CASH BALANCE CONVERSION PLANS AWAITING TECHNICAL ADVICE

Released: December 10, 2002

Published: January 13, 2003

   Mandatory technical advice cases; proposed cash balance regulations; age discrimination. This announcement states that the Service will not resolve pending mandatory technical advice cases involving cash balance conversion plans until regulations that address age discrimination issues are finalized.

   A notice of proposed rulemaking and notice of public hearing (REG-209500-86, 2003-2 I.R.B. 251) relating to age discrimination requirements applicable to certain retirement plans under § § 411(b)(1)(H) and 411(b)(2) of the Internal Revenue Code of 1986 were published in the December 11, 2002, issue of the Federal Register. The proposed regulation provides rules regarding the age discrimination requirements applicable to certain retirement plans under which accruals and allocations cannot be ceased or reduced because of the attainment of any age. When finalized, these regulations would affect retirement plan sponsors and administrators, and participants in and beneficiaries of retirement plans.

   Beginning September 15, 1999, cases in which an application for a determination letter or a plan under examination involved an amendment to change a traditional defined benefit plan to become a cash balance plan (cash balance conversions) were required to be submitted to the Washington, D.C. office of the Internal Revenue Service for technical advice on the conversion's effect on the plan's qualified status. Many such cases were submitted and are still pending. These cases have not been processed because certain age discrimination issues under § 411(b)(1)(H) have continued to be the subject of discussions between Treasury and other agencies. While the regulations issued on December 11, 2002, address the age discrimination issues of § 411(b)(1)(H), they are subject to public comments and possible revision before finalization. The technical advice cases on cash balance conversions will not be processed until the regulation addressing the age discrimination issues is finalized. The finalization of the regulation is a high priority for the Service.

   Announcement 2003-1, 2003-2 I.R.B. 281, 2002 WL 31747446 (IRS ANN), 2003-1 C.B. 281

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3

Westlaw.

Announcement 2004-57                                                          Page 1
Announcement 2004-57, 2004-27 I.R.B. 15, 2004 WL 1330416 (IRS ANN)

Internal Revenue Service (I.R.S.)

Announcement

AGE-DISCRIMINATION REGULATIONS

Released: June 16, 2004

Published: July 6, 2004

Age-discrimination regulations; proposed withdrawal. Proposed regulations that would have interpreted the provisions of sections 411(b)(1)(H) and 411(b)(2) of the Code will be withdrawn. The mandatory technical advice cases involving cash balance conversions will not be processed while these issues are under consideration by Congress.

On December 11, 2002, Treasury and the IRS published proposed regulations under § § 411(b)(1)(H) and 411(b)(2) of the Internal Revenue Code (the "Code"). 67 Fed. Reg. 76123. The proposed regulations would provide guidance under the statutory age-discrimination rules for all qualified plans, including cash balance pension plans. The proposed regulations set forth specific conditions under which cash balance plans and cash balance conversions would not be considered to violate these age-discrimination rules. [FN1]

Thousands of comment letters were submitted on the proposed regulations, including comments from older and longer-service employees who stated that they had been adversely affected by cash balance conversions. Other comments set forth employer concerns that the regulations would create issues for certain traditional defined benefit plans that had not previously been considered age-discriminatory.

Section 205 of the Consolidated Appropriations Act, 2004, Pub. L. 108-199, (the "Act") provides that none of the funds made available in the Act may be used to issue any rule or regulation that implements the proposed age-discrimination regulations or any regulations reaching similar results. Additionally, the Act requires the Secretary of the Treasury to propose legislation providing transition relief for older and longer-service participants affected by cash balance conversions.

The Administration's Budget for Fiscal Year 2005 includes a legislative proposal addressing cash balance plans and conversions to cash balance plans. The legislative proposal would require companies converting to cash balance plans to protect current employees through a five-year "hold harmless" period and would prohibit any benefit wear-away. The proposal also would provide rules under which cash balance formulas would not be considered age-discriminatory and rules regarding interest crediting rates. The proposal would provide similar rules for other types of hybrid plans and hybrid plan conversions.

Treasury and the IRS are withdrawing the proposed age-discrimination regulations issued in December 2002. This will provide Congress an opportunity to review and consider the Administration's legislative proposal and to address cash balance and other hybrid plan issues through legislation. Treasury and the IRS do not intend to issue guidance on compliance with the age-discrimination rules of § § 411(b)(1)(H) and 411(b)(2) of the Code for cash balance plans, cash balance conversions, or other hybrid plans or hybrid plan conversions while these issues are under consideration by Congress.

Beginning September 15, 1999, cases in which an application for a determination letter or a plan under examination involved a cash balance conversion were required to be submitted to the Washington, D.C. office of the IRS for technical advice on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Announcement 2004-57                                                   Page 2
Announcement 2004-57, 2004-27 I.R.B. 15, 2004 WL 1330416 (IRS ANN)

the conversion's effect on the plan's qualified status. Many such cases were submitted and are still pending. Treasury and the IRS do not intend to process these technical advice cases while cash balance plan and cash balance conversion issues are under consideration by Congress.

FN1. At the same time, Treasury and the IRS published proposed nondiscrimination regulations for cash balance plans under § 401(a)(4) of the Code. In Announcement 2003-22, 2003-1 C.B. 847, Treasury and the IRS announced that the proposed regulations under § 401(a)(4) would be withdrawn because they raised unintended obstacles for employers that wanted to provide transition relief in cash balance conversions.

 Announcement 2004-57, 2004-27 I.R.B. 15, 2004 WL 1330416 (IRS ANN)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.