IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated | : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | NO. 05-702 (SLR) |
| PEPCO HOLDINGS, INC.; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, | : : : : | |
| Defendants | : : | |

## DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION TO DISMISS

M. Duncan Grant (#2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P. O. Box 1709
Wilmington, DE   19899-1709
302-777.6500 (telephone)
302-421.8390 fax)

Susan K. Hoffman, *(pro hac vice)*
Larry R. Wood, Jr.
Kay Kyungsun Yu *(pro hac vice)*
Barak A. Bassman *(pro hac vice)*
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000 (telephone)
215-981-4750 (fax)

Attorneys for Defendants

Dated: January 6, 2006

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   Argument ............................................................................................................. 2

    A.   Plaintiffs' Claims Are Barred By The Statute Of Limitations............................ 2

       1.   Counts II and III – Plaintiffs' Age Discrimination Claims Are Untimely.................... 5

       2.   Count I – Plaintiffs' Backloading Claim Is Untimely. .................................. 6

       3.   Count IV – Plaintiffs' Notice Claim ........................................................... 7

    B.   Count II Fails To State A Claim For Relief – No Reduction In Accrued Benefits On Account Of Age Or Years Of Service ............................................. 7

    C.   Count III Fails To State A Claim For Relief – No Reduction In The Rate Of Benefit Accrual Because Of The Attainment Of Any Age .......................................... 9

       1.   Plaintiffs Lack Standing.............................................................................. 9

       2.   Defendants' Cash Balance Formula Is Not Per Se Illegal ........................... 12

    D.   Count I Fails To State A Claim For Relief ..................................................... 13

    E.   Count IV Fails To State A Claim For Relief .................................................. 15

III.  CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

**Page**

Ambris v. Bank of New York, 96 Civ. 0061, 1998 U.S. Dist. LEXIS 15801 (S.D.N.Y. 1998) ....................................................................................................................6

Anderson v. Consolidated Rail Corp., 297 F.3d 242 (3d Cir. 2002) .............................2

Carey v. Int. Board of Electric Workers Local 363 Pension Plan, 201 F.3d 44 (2d Cir. 1999) ....................................................................................................................5

Cooper v. IBM Personal Pension Plan, 274 F. Supp. 2d 1010 (S.D. Ill. 2003)............13

Eaton v. Onan Corp., 117 F. Supp. 2d 812 (S.D. Ind. 2000).........................................1

Edes v. Verizon Committee, Inc., 288 F. Supp. 2d 55 (D. Mass. 2003), aff'd, 417 F.3d 133, 139 (1st Cir. 2005) ........................................................................................6

Engers v. AT & T Corp., Civ. A. No. 98-3660, 2001 U.S. Dist. LEXIS 25889 (D.N.J. June 6, 2001).................................................................................................1, 11

Gen'l Dynamics Land System, Inc. v. Cline, 540 U.S. 581 (2004) ...................10, 11, 12

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ..................................................16

Register v. PNC Finance Services Group, Inc., No. 04-CV-6097, 2005 WL. 3120268 (E.D. Pa. Nov. 21, 2005)..............................................................................1, 13, 15

Romero v. Allstate Corp., 404 F.3d 212 (3d Cir. 2005) .......................................2, 4, 5, 7, 15

Schultz v. Texaco, Inc., 127 F. Supp. 2d 443 (S.D.N.Y. 2000).....................................6

Tanzillo v. Local Union 617, International Board of Teamsters, 769 F.2d 140 (3d Cir. 1985) ....................................................................................................................3

Tootle v. ARINC, 222 F.R.D. 88 (D. Md. 2003).....................................................1, 11

Union Pac. R.R. Co. v. Beckham, 138 F.3d 325 (8th Cir. 1998).....................................4

United States v. Cooper, 396 F.3d 308 (3d Cir. 2005) .................................................11

United States v. Hodge, 321 F.3d 429 (3d Cir. 2003) ..................................................11

Wolf v. National Shopmen Pension Fund, 728 F.2d 182 (3d Cir. 1984).........................3

Zipf v. America Telegraph & Telegraph Co., 799 F.2d 889 (3d Cir. 1986)...................................4

## STATUTES AND REGULATIONS

ERISA § 204(b)(1)(A), 29 U.S.C. § 1054(b)(1)(A) ................................................1, 13

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B) ...........................................................13

ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G) ...................................................7, 8, 9

ERISA § 204(b)(1)(H) 29 U.S.C. § 1054(b)(1)(H) .............................1, 9, 10, 11, 12, 13

ERISA § 204(h), 29 U.S.C. § 1054(h)......................................1, 7, 12, 15, 16

ERISA § 205(g), 29 U.S.C. § 1055(g)..............................................................................6

ERISA § 502, 29 U.S.C. § 1132 ..................................................................2, 3, 4, 6

Internal Revenue Code § 401(l), 26 U.S.C. § 401(l) ......................................................8

29 U.S.C. § 623...........................................................................................................10

Pub. L. 99-509............................................................................................................9

Fed. R. Civ. P. 11 ........................................................................................................3

26 C.F.R. § 1.401(l)-1(b) ...............................................................................................8

26 C.F.R. § 1.411(b)-1(b) .............................................................................................14

Treas. Reg. 1.411(d)-6, 26 C.F.R. § 1.411(d)-6.............................................................15

68 Fed. Reg. 17,277 (2003) ....................................................................................12, 13

67 Fed. Reg. 76,123 (2002) ..........................................................................................11

## I.    INTRODUCTION

Only five days after Defendants moved to dismiss this action, another district court in this Circuit granted an identical motion to dismiss an action challenging a cash balance plan as age discriminatory and improperly backloaded – a decision ignored by Plaintiffs in their 40-page Brief.  In Register v. PNC Fin. Servs. Group, Inc., No. 04-CV-6097, 2005 WL 3120268 (E.D. Pa. Nov. 21, 2005), the Eastern District of Pennsylvania dismissed all claims against a defendant's cash balance plan, including three of the four claims involved in this case, namely: alleged violations of ERISA § 204(b)(1)(H)'s age discrimination provision, alleged violations of the anti-backloading rules in ERISA §§ 204(b)(1)(A)-(C), and alleged violations of the plan amendment notice requirements of ERISA § 204(h).  The Register Court joins a growing chorus of courts in dismissing these attacks upon cash balance plans.  See Tootle v. ARINC, 222 F.R.D. 88, 93 (D. Md. 2003); Engers v. AT & T Corp., Civ. A. No. 98-3660, 2001 U.S. Dist. LEXIS 25889 (D.N.J. June 6, 2001); Eaton v. Onan Corp., 117 F. Supp. 2d 812, 826-29 (S.D. Ind. 2000).  These courts comprise the plain majority, and present the best-reasoned decisions, on such attacks.

Not only do Plaintiffs' claims fail on the merits, those claims are also barred by the applicable statute of limitations.  In their Brief, Plaintiffs distort the law in a futile attempt to resurrect their stale claims.  The Complaint should accordingly be dismissed with prejudice.[1]

---

[1] Today, it came to the attention of the undersigned counsel for Defendants that, yesterday, January 5, 2006, Plaintiffs' counsel in this putative class action filed an action asserting identical claims against the same Defendants named in this action on behalf of a new putative class plaintiff, Thomas S. Troup (C.A. No. 06-cv-10-UNA).  While it appears that Mr. Troup marked the Civil Cover sheet to identify his Class Action Complaint as a related case to this action (C.A. No. 05-cv-702-SLR), it does not appear that Mr. Troup's complaint has yet been served on Defendants.  Plaintiffs' counsel provided no notice to Defendants' counsel regarding this identical filing.  Rather than requiring Defendants to file another motion to dismiss and to rebrief the issues associated with the legal deficiencies of these identical claims, this Court should similarly dismiss Mr. Troup's claims with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs' Claims Are Barred By The Statute Of Limitations.

This case arises from Plaintiffs' unhappiness with the January 1, 1999 amendment to Defendants' pension plan establishing the cash balance formula. Plaintiffs concede that all of their claims are subject to the three-year limitations period. See D.I. No. 16, Plaintiffs' Answering Brief ("Pls' Br.") at 33. Plaintiffs, however, waited almost seven years before filing suit. As such, Plaintiffs' claims are time-barred. See generally D.I. No. 12, Defendants' Opening Brief ("Defs' Br.") at 10-12.

In an attempt to escape dismissal of their claims, Plaintiffs make two arguments, neither of which is supported by the law.

First, Plaintiffs argue that, because the statute of limitations is an affirmative defense, it is somehow improper to dismiss their claims at this stage, or stated differently, on a Rule 12(b)(6) motion. Pls' Br. at 33. This argument is easily disposed of, as the Third Circuit has rejected this notion, holding that time-barred ERISA claims appropriately may be dismissed at the pleading stage. See Anderson v. Consol. Rail Corp., 297 F.3d 242, 251-53 (3d Cir. 2002) (affirming dismissal of ERISA claims under Rule 12(b)(6) as untimely).

Second, Plaintiffs misrepresent the law in an attempt to avoid application of the proper rules to determine when Plaintiffs' claims accrued for purposes of the statute of limitations. Plaintiffs seek to accomplish this in two ways: by citing to a plethora of irrelevant cases that discuss the accrual rules applicable only to claims for benefits brought pursuant ERISA § 502(a)(1)(B); and by mischaracterizing the conclusions of the Third Circuit in its recent decision, Romero v. Allstate Corp., 404 F.3d 212, 220 (3d Cir. 2005).

Plaintiffs have concocted a bizarre argument that their claims have not accrued, and will not accrue, until some time in the future when they retire and request payment of their

benefits. See Pls' Br. at 36.[2]  Plaintiffs' argument is based on a misreading of the cases they cite, and confusion between claims to recover benefits brought pursuant to ERISA § 502(a)(1)(B) and statutory claims brought under the substantive provisions of ERISA challenging plan design. This argument is wholly without merit and is unsubstantiated under the law.

The decisions cited by Plaintiffs refer to a general rule that a claim for the recovery of plan benefits, a cause of action under § 502(a)(1)(B), accrues when there has been a claim and a final denial of benefits.  See, e.g., Tanzillo v. Local Union 617, Int'l Bd. of Teamsters, 769 F.2d 140, 143-44 (3d Cir. 1985) cited in Pls' Br. at 35-36.

The requirement of a claim and formal denial makes sense in the context of ERISA § 502(a)(1)(B).  Caselaw interpreting statutory and regulatory provisions relating to § 502(a)(1)(B) mandate the exhaustion of a plan's administrative remedies, which requires that a claim be made, an appeals process followed, and a final denial issued, before a participant or beneficiary can assert a cause of action to recover benefits in court.  See, e.g., Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984) (federal courts have generally not entertained actions under § 502(a)(1)(B) where the party bringing the action has failed to exhaust administrative remedies).  Thus, the general rule requiring a claim and a denial is the logical point for the statute of limitations to accrue with respect to § 502(a)(1)(B) claims.

It does not follow, however, that such a requirement has any applicability here, where Plaintiffs have brought their claims pursuant to ERISA, seeking to challenge the legality of the plan design under the substantive provisions of ERISA, where there is no corollary

---

[2]  Of course, on the one hand, if Plaintiffs' position on *accrual* were somehow correct (which it is not), they would necessarily be admitting that their claims are not ripe for adjudication, requiring a dismissal of this action. On the other hand, Plaintiffs could not have filed their Complaint without a basis for such claims.  See Fed. R. Civ. P. 11.  Hence, it would be impossible for their claims to *accrue* only after the Complaint had been filed.

requirement of exhaustion.  See Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 891 (3d Cir. 1986)

(there is no exhaustion requirement applicable to substantive rights conferred by ERISA).

Indeed, Plaintiffs have failed to cite a single case, other than those related to § 502(a)(1)(B)

(which have no applicability here), for their untenable proposition.  See Pls' Br. at 32-37.

   In any event, many of the cases cited by Plaintiffs explore the exceptions to the

general accrual rule applicable to claims for benefits.  For example, the lead case relied on by

Plaintiffs – Union Pac. R.R. Co. v. Beckham, 138 F.3d 325 (8th Cir. 1998),[3] does, as Plaintiffs

observe, cite this general accrual rule.  Id. at 330.  However, in that case, the Eighth Circuit did

not apply the general rule.  Rather, because the participants in that case had received fact sheets

*at the commencement of their employment* stating that they would not receive prior service credit

(for predecessor employer service), their causes of action accrued at the time they commenced

employment when there was a clear repudiation of their right to any benefits based on

predecessor employer service, not later when they filed claims for those benefits that were

denied.  Id. at 331-32.  The Eighth Circuit affirmed the dismissal of plaintiffs' ERISA claims.

Id.

   The other argument Plaintiffs make with respect to when their claims accrued is

an attempt to refute one of Defendants' positions on accrual; that Plaintiffs' claims accrued in

1999 at the time of the Plan amendment.  In this regard, Plaintiffs' boldly assert that

"Defendants' position has been flatly rejected by the Third Circuit, which has joined a number of

other courts rejecting a rule which ties the date of accrual to the date of [plan] amendment."  See

Pls' Br. at 33-34.  Plaintiffs' statement stretches the holding of Romero to the point of

mischaracterization.  The Third Circuit in Romero did not flatly reject Defendants' position;

---

[3] Plaintiffs erroneously cite Beckham as an 11th Circuit decision.  See Pls' Br. at 35.

rather, the Court expressly recognized the date of the plan amendment as one of the possible dates a claim could accrue. Contrary to Plaintiffs' spin, the Third Circuit was careful to point out that the "[u]se of the federal discovery rule to discern the date of accrual does not necessarily prevent the date of [the plan] amendment from serving as the accrual date." Id. at 224.

Notwithstanding Plaintiffs' misrepresentation of the holding of Romero, this decision is highly relevant as Romero sets forth the Third Circuit's latest pronouncement on the proper accrual rule to apply to statutory claims brought under the substantive provisions of ERISA. The plaintiffs in Romero brought claims under ERISA §§ 204(g) and 204(h). Employing the federal "discovery rule" to determine when plaintiffs' claims had accrued, the Third Circuit explained that "a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Id. at 222.

By Plaintiffs' own admissions, their claims accrued in 1999, or at the latest, by 2001, when Plaintiffs knew or should have known of the alleged injuries that formed the basis of their claims, long before they brought their action. See D.I. No. 1, Complaint, ¶ 41 and Pls' Br. at 38. As demonstrated below, each of Plaintiffs' claims are now time-barred.

### 1. Counts II and III – Plaintiffs' Age Discrimination Claims Are Untimely.

Plaintiffs argue that Defendants' Cash Balance Plan is inherently age discriminatory by design. See Pls' Br. at 28. Plaintiffs admit that they received notice of that design before January 1, 1999, and as such, Plaintiffs either knew or should have known of the alleged injury even *before* the Plan amendment effective date. Alternatively, Plaintiffs admit the allegedly discriminatory conduct "first occurred in 2001" – over three years before they filed their Complaint in September 2005. See Pls' Br. at 38. Plaintiffs cannot toll the accrual date for their claims by delaying a visit to a lawyer to analyze their claims. See Carey v. Int. Bd. of Elec.

Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999) ("the fact that the Plan did not

specify in its … letter when and why he had incurred a break in service is irrelevant to the fact

that there was a known repudiation"); Edes v. Verizon Comm., Inc., 288 F. Supp. 2d. 55, 60 (D.

Mass. 2003), aff'd, 417 F.3d 133, 139 (1st Cir. 2005) ("[t]he fact that plaintiffs did not realize

their injuries were actionable does not affect the date of accrual"); Schultz v. Texaco, Inc., 127 F.

Supp. 2d. 443, **9-10 (S.D.N.Y. 2000) (rejecting plaintiffs' argument that § 502 claim should be

tolled because plaintiffs did not understand that their benefits would be denied when they were

removed from Texaco's payroll); Ambris v. Bank of New York, 96 Civ. 0061, 1998 U.S. Dist.

LEXIS 15801, *16 (S.D.N.Y. 1998) ("the fact that [plaintiff] misunderstood the technical term of

art that describes the reason for her denial of benefits does not change [that defendant clearly

repudiated]").[4]

Thus, Counts II and III are barred by the statute of limitations.  They should

accordingly be dismissed.

### 2.    Count I – Plaintiffs' Backloading Claim Is Untimely.

Plaintiffs argue that it was fluctuating interest credits that caused the Plan to fail

the anti-backloading requirements.  See D.I. No. 1, Complaint, ¶ 41 and Pls' Br. at 11-12.

Essentially, Plaintiffs' argument is that, if the Treasury bond rate which determines the Plan's

interest credit rate increases enough from one year to the next, the subsequent year's benefit

growth rate becomes supposedly excessively large compared to prior years.  See Pls' Brief at 12.

Plaintiffs, however, knew that the Cash Balance Plan used fluctuating interest rates to set

benefits even before the January 1, 1999 amendment.  Plaintiffs specifically admit receiving the

---

[4] Defendants also note that Plaintiffs' prior plan offered optional lump sum payouts of retirement annuities, with the calculation based on a fluctuating interest factor in accordance with ERISA Section 205(g)(3).  Plaintiffs, therefore, should have been already familiar with the fact that conversions between lump sums and annuities change as interest factors change.

December 21, 1998 Plan amendment notice, which stated: "The company also credits your account with interest each year based on the current 30-yr. U.S. Treasury bond rate." See D.I. No. 17 at B-4. Because Plaintiffs knew from the notices distributed prior to the Plan amendment that the Plan would use a fluctuating interest rate, Count I of their Complaint is barred by the statute of limitations.

### 3.    Count IV – Plaintiffs' Notice Claim

As Plaintiffs concede that they received notice of the Plan amendment, their only challenge under § 204(h) is whether the contents of the notice were sufficient. See Pls' Br. at 30-32. It is clear from the face of the Complaint that Plaintiffs knew from the content of that notice what the terms of the amendment would provide with respect to their future benefits.[5] They have pointed to no information that was supposedly concealed in the notice that they could not discover with reasonable diligence.

Thus, under the controlling Third Circuit precedent, including Romero, Plaintiffs' claims accrued in 1999, or at the latest by 2001. Plaintiffs brought their claims after the three-year limitations period had expired, and as such, their claims should be dismissed as time-barred.

### B.    Count II Fails To State A Claim For Relief – No Reduction In Accrued Benefits On Account Of Age Or Years Of Service

In Count II, Plaintiffs allege that Defendants' cash balance formula violates ERISA § 204(b)(1)(G), which provides that the Plan is not lawful "if the participant's accrued benefit is reduced on account of any increase in his age or service." As Defendants have explained, this claim necessarily fails because, while Plaintiffs have alleged a reduction in their

---

[5] Compare Romero, where the Third Circuit held that a claim for violation of ERISA Section 204(h) accrues when the "plaintiff knows or should have known that an amendment has the effect which triggers the notice requirement." 404 F.3d at 225. In Romero, no 204(h) notice (or any notice) was provided at the time of the amendment.

accrued benefits, they have not alleged that such a reduction was "on account of" increases in their ages or years of service. See Defs' Br. at 13-14.

Indeed, in their response, Plaintiffs again admit that, to the extent their accrued benefits were reduced, such reduction was on account of the fluctuating interest rates used in the Plan. See Pls' Br. at 1 ("plan violates Section 204(b)(1)(G) . . . because [based on fluctuating interest rates] it permits the accrued benefit of a participant to be reduced in subsequent years"). Apparently recognizing the legal insufficiency of their position, Plaintiffs take the extraordinary position, contrary to the plain text of the statute, that *any* decrease in their accrued benefit, regardless of the reason for the decrease, violates Section 204(b)(1)(G). See Pls' Br. at 16. Plaintiffs offer no support for this reading – nothing from the text of the statute, its legislative history, case law or any policy concerns. Instead, Plaintiffs cite only an IRS regulation codified at 26 C.F.R. § 1.401(l)-1(b).

Their reliance on this regulation is sorely misplaced. 26 C.F.R. § 1.401(l)-1 interprets the requirements of Internal Revenue Code § 401(l), which allows retirement plans to take the employer-paid portion of Social Security benefits (or taxes) into account in benefit accrual or allocation of contributions. The regulation does not address the scope of Section 204(b)(1)(G) at all. Subsection b – the part on which Plaintiffs rely – in fact only explains that compliance with Internal Revenue Code § 401(l) does not affect any other Code requirement, including Code § 411(b)(1)(G), the Code's parallel to Section 204(b)(1)(G):

> Relationship to other requirements. Unless explicitly provided otherwise, section 401(l) does not provide an exception to any other requirement under section 401(a). Thus, for example, even if the plan complies with section 401(l), the plan may not provide a benefit lower than the minimum benefit required under section 416. Moreover, a plan may not adjust benefits in any manner that results in a decrease in any employee's accrued benefit in violation of section 411(d)(6) and section 411(b)(1)(G).

The legal deficiency of Count II is straightforward. The regulation reiterates that benefits may not be decreased "in violation of" another Code section. Section 204(b)(1)(G) prohibits reductions in accrued benefits "on account of" age or years of service, but does not prohibit non-age related reductions. Plaintiffs have not alleged their reductions in accrued benefits were "on account of" age or years of service, as opposed to some other reason permitted by ERISA, such as a change in the applicable interest rate used to convert the payable cash balance to an annuity. It is not enough that Plaintiffs allege a decrease in certain years.[6] Rather, under ERISA, to state a claim, they must demonstrate that the decrease violates a specific provision of ERISA – which they have failed to do in this case. Their claim under Section 204(b)(1)(G) accordingly fails.

### C. Count III Fails To State A Claim For Relief – No Reduction In The Rate Of Benefit Accrual Because Of The Attainment Of Any Age

#### 1. Plaintiffs Lack Standing.

As Defendants explained in their Opening Brief, in 1986 Congress simultaneously enacted ERISA § 204(b)(1)(H) and parallel provisions in the Internal Revenue Code and the Age Discrimination in Employment Act ("ADEA") to stop employers from cutting off new benefit accruals after employees reached normal retirement age, i.e., age 65. See Defs' Br. at 15. Thus, Section 204(b)(1)(H) prohibits reducing "the rate of an employee's benefit accrual . . . because of the attainment of" age 65 or beyond. Congress itself titled the section of its bill creating Section 204(b)(1)(H) "*Benefit Accrual Beyond Normal Retirement Age*." Pub. L. 99-509, § 9202 (emphasis added). As Plaintiffs are all under age 65, they clearly lack standing to sue under Section 204(b)(1)(H). See D.I. No. 1, Complaint, ¶¶ 4-6.

---

[6] Plaintiffs cannot tie alleged decreases to increased years of service, as they themselves admit that their benefits also increased as their years of service increased. See D.I No. 1, Complaint, ¶ 41 and Pls' Br. at 12.

Plaintiffs argue that they have standing to sue because Section 204(b)(1)(H) uses the words "any age," rather than specifying age 65 and beyond. While perhaps superficially appealing, this argument contradicts Congress' stated intent, the devices of judicial construction, the clear limitations of the ADEA, and indeed, employs an analysis that was rejected by the Supreme Court in Gen'l Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581 (2004).

In Cline, the plaintiff argued that, because the phrase "because of age" was used in the Age Discrimination in Employment Act ("ADEA"), individuals within the protected category (40 years old or older, see 29 U.S.C. § 623), could sue for age discrimination if the employer was treating older workers better than younger ones. See 540 U.S. at 601 (question is whether ADEA "prohibits favoring the old over the young"). The Supreme Court held that plaintiff's argument was premised on two mistakes: "First, it assumes that the word "age" has the same meaning wherever the ADEA uses it;" and second, "it ignores the cardinal rule that '[s]tatutory language must be read in context [since] a phrase 'gathers meaning from the words around it.'" Id. at 595-96. The Supreme Court rejected the plaintiff's argument and held that the ADEA protects only older workers from discrimination in favor of younger ones, stating:

> Even for an agency able to claim all the authority possible under
> Chevron, deference to its statutory interpretation is called for only
> when the devices of judicial construction have been tried and
> found to yield no clear sense of congressional intent. [citations
> omitted]. Here, regular interpretive method leaves no serious
> question, not even about purely textual ambiguity in the ADEA.
> The word "age" takes on a definite meaning from being in the
> phrase "discriminat[ion] . . . because of such individual's age,"
> occurring as that phrase does in a statute structured and manifestly
> intended to protect the older from arbitrary favor for the younger.

Id. at 600.

Here, the words "any age" were used: (a) in a statute Congress explicitly titled "Benefit Accrual *Beyond Normal Retirement Age*" (emphasis supplied), see supra, at 10; (b) that

-10-

included a parallel provision in the ADEA, see Defs. Br. at 15; and (c) when the legislative

history clearly establishes the bill was designed to protect "older Americans who work beyond

normal retirement age."[7]  See Defs' Br., at 17 n.7. Thus, it is clear that Section 204(b)(1)(H)

protects only individuals age 65 or older.[8]  See also Tootle, 222 F.R.D. at 93 ("this aspect of

ERISA is not intended to protect workers until after they have attained normal retirement age");

Engers, 2001 U.S. Dist. LEXIS 25889 at *10-13 ("Congress intended [this provision] to apply

only to those employees who continue to work after the normal retirement age of sixty-five").

            Contrary to the weight of support for Defendants' position, Plaintiffs rely on the

IRS's proposed regulations governing cash balance plans – the proposed regulations where the

IRS found that cash balance plans are not age discriminatory.  See 67 Fed. Reg. 76,123, 76,126

(Dec. 11, 2002) ("These proposed regulations would provide that the rate of benefit accrual

under an eligible cash balance plan . . . is permitted to be determined as the additions to the

participant's hypothetical account for the plan year").  Plaintiffs point to the IRS's one-sentence

statement in the Federal Register notice explaining the proposed regulations that it disagreed

with the position that Section 204(b)(1)(H) only applies to participants over the age of 65.  See

Pls' Br. at 22.  However, as explained in Cline, even if this were an agency interpretation –

which it is not – no deference to it is permissible when "the devices of judicial construction have

---

[7]  See United States v. Cooper, 396 F.3d 308, 313 (3d Cir. 2005) (construing meaning of statute based on heading); United States v. Hodge, 321 F.3d 429, 437 (3d Cir. 2003) ("[w]hen the language of a statute is ambiguous, [courts] look to its legislative history to deduce its purpose").

[8]  Under Plaintiffs' proposed interpretation of the "any age" language, a 19-year-old employee could sue for alleged age discrimination, claiming that she was treated worse than an 18-year-old employee.  This interpretation plainly contradicts the "beyond normal retirement age" explicitly used by Congress, and further, would violate "the ADEA's core substantive provision," namely, protection of individuals "at least forty years of age."  See Cline, at 590 (citing 29 U.S.C. § 623).  Indeed, the comparison approach (of purportedly similarly situated workers) utilized by Plaintiffs is faulty as Section 204(b)(1)(H) does not prohibit dissimilar treatment, it prohibits an employer from reducing a specific employee's rate of benefit accrual because *that* employee attains normal retirement age (65) or beyond.

been tried and found to yield" a "clear sense of Congressional intent." <u>Cline</u>, 540 U.S. at 600

(rejecting EEOC interpretation of the ADEA as contrary to the statute's "text, structure, purpose,

and history"). Here, those "devices," including legislative history and statutory headings, show

that Congress plainly intended to limit the protections of ERISA Section 204(b)(1)(H) to those

workers who had attained age 65 or beyond. <u>See</u> Defs' Br. at 15-17. Count III should

accordingly be dismissed for lack of standing.

### 2.    Defendants' Cash Balance Formula Is Not Per Se Illegal

Moreover, even if Plaintiffs could surmount their timeliness and standing

deficiencies, their claim under ERISA § 204(b)(1)(H) fails on the merits. Plaintiffs have now

clarified that they are relying on the theory that all cash balance plans are <u>per se</u> unlawful under

Section 204(b)(1)(H). <u>See</u> Pls' Br. at 28.[9] The only support Plaintiffs cite in support of this <u>per</u>

<u>se</u> theory is an IRS regulation of a different ERISA provision, Section 204(h), regulating notice

of plan amendments. <u>See</u> Pls' Br. at 24-25. The IRS, however, has expressly stated that its

Section 204(h) regulations are ***not*** a guide to interpreting Section 204(b)(1)(H):

> None of the examples illustrates rules in any other regulation or
> positions of Treasury or the IRS regarding provisions of the
> Internal Revenue Code other than the notice requirements of
> section 4980F and section 204(h). Thus, the examples do not
> indicate any possible outcome regarding proposed regulations that
> were published in the Federal Register (67 FR 76123) on
> December 11, 2002 relating to sections 411(b)(1)(H)[10] and
> 411(b)(2) of the Internal Revenue Code, which require that

---

[9] Plaintiffs either do not understand their own argument or are trying to confuse the Court. While arguing that the Cash Balance Plan (which went into effect in 1999) is inherently age discriminatory, Plaintiffs then state, without equivocation, that the alleged age discrimination "first occurred in 2001" – two years later. <u>Id.</u> at 38. This contention was clearly designed to rebut Defendants' argument that the statute of limitations began to run on the plan amendment date. However, if the cash balance formula is inherently age discriminatory, then the discrimination had to have allegedly "first occurred" as soon as the amendment became effective. Plaintiffs do not explain how they square this circle.

[10] This is the Internal Revenue Code's parallel provision to ERISA § 204(b)(1)(H).

> accruals or allocations under certain retirement plans not cease or
> be reduced because of the attainment of any age.

68 Fed. Reg. 17,277, 17,278 (2003).  In fact, the IRS has repeatedly rejected the theory that cash

balance plans are per se age discriminatory.  See Defs' Br. at 27-29; Register, 2005 WL 3120268

at *7 ("The Department of Treasury has consistently stated that cash balance plans are not age

discriminatory").

As Defendants exhaustively explained in pages 20 through 32 of their Opening

Brief, the per se theory is contrary to the plain language of the statute, contrary to the legislative

history, and has been rejected by numerous courts and Internal Revenue Service.  Since

Defendants filed their Opening Brief, the Eastern District of Pennsylvania has issued yet another

decision rejecting the per se theory.  See Register, 2005 WL 3120268 at *4-8.  As Plaintiffs do

not even try to rebut these points, Defendants will not unnecessarily repeat their arguments.  It is

clear that Plaintiffs have no response, and their claim under Section 204(b)(1)(H) should

accordingly be dismissed.[11]

### D.    Count I Fails To State A Claim For Relief

For the first time in their Answering Brief, Plaintiffs explain the basis for their

claim that Defendants' cash balance formula violates the anti-backloading rule of ERISA

§ 204(b)(1)(B),[12] which provides that a defined benefit pension plan must ensure that "the annual

rate at which any individual who is or could be a participant can accrue the retirement benefits

payable at normal retirement age under the plan for any later plan year is not more than 133 1/3

---

[11] In two sentences, Plaintiffs cryptically urge this Court to follow the one outlier court that has accepted the per se theory, Cooper v. IBM Pers. Pension Plan, 274 F. Supp. 2d 1010 (S.D. Ill. 2003).  See Pls' Br. at 25. Defendants have already explained at length that Cooper is based on faulty reasoning, and they will not needlessly repeat those arguments again in this Reply Brief.  See Defs' Br. at 29-32.  Plaintiffs nowhere even try to rebut Defendants' critique of Cooper.

[12] The alternate backloading provisions of ERISA §§ 204(b)(1)(A)(i) and (ii) are not applicable.

percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year." According to Plaintiffs, the cash balance formula violates this rule because the rate at which they accrued benefits in 2004 was supposedly more than 133 1/3 percent of the rate in prior years. See Pls' Br. at 12.

In their Answering Brief, Plaintiffs carefully avoid explaining why such a rate change occurred. In their Complaint, however, they conceded that this change was solely due to the fact that Treasury bond rates rose in 2004, thereby triggering an increased Interest Credit rate for that year. See D.I. No. 1, Complaint, ¶ 41. Thus, Plaintiffs' backloading claim is based on comparing their rates of accruing benefits in years with different Interest Credit rates. These differing rates are a result of tying each year's Interest Credit rate to the current (and varying) Treasury bond yield, thereby assuring that Plaintiffs earn a market rate of return and that their benefits are not eroded by inflation.

This comparison across different market yields in different years is improper. The Department of Treasury regulations governing the backloading rules expressly provide that, in testing for compliance with the 133 1/3 percent rule, changes in factors external to the plan that affect benefit growth rates should not be considered: "For purposes of this paragraph, for any plan year, social security benefits and *all relevant factors used to compute benefits, e.g., consumer price index, are treated as remaining constant* as of the beginning of the current plan year for all subsequent plan years." 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(D) (emphasis added).[13] Thus, Plaintiffs' comparison is improper and irrelevant in testing a benefit formula for

---

[13] This regulation also strongly suggests that the backloading rules are applied by projecting the plan's benefit formula forward to future years, not by comparing one's year's benefit to a prior year's, where actual accruals are based on varying factors such as compensation and work schedule, as well as interest rates.

compliance. As Plaintiffs have not alleged a cognizable violation of the backloading rules, their claim should be dismissed.

### E.    Count IV Fails To State A Claim For Relief

Plaintiffs' final claim is that they failed to receive adequate notice of the January 1, 1999 cash balance formula amendment required by ERISA § 204(h). Plaintiffs concede that they received notice of the Plan amendment in Spring and December 1998. See Pls' Br. at 29. They allege that this notice was improper, though, because the two explanations allegedly did not "inform plan participants in understandable language that they may suffer adverse effects of [*sic*] the plan amendment." Id. at 30. This argument fails because the version of Section 204(h) in effect in 1998 and 1999 contained no such requirement.[14] As the Eastern District of Pennsylvania just explained in dismissing an identical claim in the Register case challenging a notice of a cash balance amendment issued in 1998:

> At the time of the plan amendment, ERISA § 204(h) provided that a plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date." 29 U.S.C. § 1054(h)(1) (1998). A summary of the amendment meets these requirements "if the summary is written in a manner calculated to be understood by the average plan participant and contains the effective date." Treas. Reg. 1.411(d)-6, Q & A(10) (1998). "The summary need not explain how the individual benefit of each participant or alternate payee will be affected by the amendment." Id. . . . Defendants did not notify participants that their benefit accrual rates would be "significantly reduced" in the future, but, quite simply, they did not need to. As a result, this claim is dismissed.

Register, at 2005 WL 3120268 *8 (footnotes omitted; emphasis added).

---

[14] Congress substantially revised Section 204(h) in 2001. The 2001 amendments to ERISA § 204(h) only apply to plan amendments effective after June 7, 2001, i.e., two and a half years after the amendment at issue here. See Romero, 404 F.3d at 218, n.4 (discussing effective date of 2001 amendment).

-15-

Realizing that they have no substantive basis to challenge the notice, Plaintiffs next argue that they somehow can create a claim under Section 204(h) because the Spring notice was allegedly delivered before the amendment was adopted and the December notice was allegedly provided on the twelfth day before the effective date of the plan amendment, three days shy of the fifteen-day advance notice period then required by the statute. See Pls' Br. at 32. At best, this *de minimis* allegation could establish that the Plan amendment's effective date should have been January 4, 1999 instead of January 1, 1999.[15]

Regardless, Plaintiffs have alleged no injury to themselves resulting from receiving eleven days notice instead of fifteen days notice, and thus have no standing under Article III of the Constitution to pursue this supposed claim. See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (plaintiffs lack standing unless they have suffered an actual, concrete, and particularized injury that the court can remedy). Moreover, notwithstanding their references to dates, it is clear Plaintiffs cannot assert, and indeed have not asserted, a claim that they received inadequate notice under Section 204(h).

---

[15] Note that January 4, 1999 was the first business day of 1999, and therefore 15 days notice was provided before the Plaintiffs began accruing benefits under the new formula.

## III.    **CONCLUSION**

For the reasons set forth herein and in Defendants' Opening Brief, Plaintiffs'

Complaint should be dismissed with prejudiced.

Respectfully submitted,


/s/ M. Duncan Grant
M. Duncan Grant (#2994)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500 (telephone)
(302) 421-8390 (fax)


Susan K. Hoffman*(pro hac vice)*
Larry R. Wood, Jr.
Kay Kyungsun Yu *(pro hac vice)*
Barak A. Bassman *(pro hac vice)*
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000 (telephone)
215-981-4750 (fax)

Attorneys for Defendants

Dated:  January 6, 2006