IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 05-702-SLR |
| PEPCO HOLDINGS, INC., CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, | ) ) ) ) | |
| Defendants. | ) ) | |

Pamela S. Tikellis, Esquire, Robert J. Kriner, Esquire, A. Zachary Naylor, Esquire, and Robert R. Davis, Esquire of Chimicles & Tikellis LLP, Wlimington Delaware. James R. Malone, Jr., Esquire and Joseph G. Sauder, Esquire of Haverford, Pennsylvania. Counsel for Plaintiffs.

M. Duncan Grant, Esquire of Pepper Hamilton LLP, Wilmington, Delaware. Susan K. Hoffman, Esquire, Larry R. Wood, Jr., Esquire, Kay Kyungsun Yu, Esquire, and Barak A. Bassman, Esquire of Philadelphia, Pennsylvania. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: June 12, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On September 26, 2005, plaintiffs J. Michael Charles, Maurice W. Ward, Jr., and Joseph I. Fink, Jr. ("plaintiffs") filed this action against defendants Pepco Holdings, Inc., Conectiv, and Pepco Holdings Retirement Plan ("defendants") alleging that defendants' pension plan violates four subsections of the Employee Retirement Income Security Act of 1974 ("ERISA") § 204, 29 U.S.C. § 1054. Plaintiffs claim that defendants' plan violates ERISA's minimum accrual requirements (count I), non-age discrimination requirements (counts II and III), and notice requirements (count IV). (D.I. 1) Currently before the court is defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), based in part on the applicable statute of limitations. (D.I. 11) For the reasons stated below, defendants' motion to dismiss is denied.

## II. BACKGROUND

Plaintiffs have all been employed by defendant Conectiv, or its predecessors, since 1987 or before. (D.I. 1 at ¶¶ 4-6) Defendant Conectiv has been a wholly owned subsidiary of defendant Pepco Holdings since August 1, 2002. (Id. at ¶ 8) Defendant Pepco Holdings Retirement Plan was created on December 31, 2002, when the Conectiv Retirement Plan was merged with another pension plan maintained by an affiliate of Pepco Holdings. (Id. at ¶ 9) However, the formation of the Pepco

Holdings Retirement Plan in 2002 did not alter how benefits were expressed for participants in the Conectiv Retirement Plan. (Id. at ¶ 29)

The Conectiv Retirement Plan has several pension plan designs, or sub-plans, but plaintiffs are all currently participants in the only sub-plan at issue in this case, the Cash Balance Sub-Plan ("Sub-Plan"). (Id. at ¶¶ 21, 24) The Sub-Plan was created on December 30, 1998, when its predecessor plans were merged together, and plaintiffs have been participants in the Sub-Plan since its inception. (Id. at ¶¶ 18, 24) Affected Conectiv employees were given information regarding their conversion to the Sub-Plan during Spring of 1998, on December 21, 1998, and during July 1999. (Id. at ¶¶ 33-35)

In a cash balance plan, which is an ERISA defined benefit plan, participants have a hypothetical account balance that expresses their accumulated retirement benefits. (Id. at ¶¶ 19, 39) In the Sub-Plan, each plaintiff began with an initial hypothetical account balance on January 1, 1999, that was based upon the annuity benefit earned by each plaintiff under his prior plan. (Id. at ¶ 37) Plan participants were mailed a statement containing this initial account balance by late June of 1999. (Id. at 35). Each year credits are added to this hypothetical account balance based on the participant's earnings and interest. (Id. at ¶ 20) Additionally, the Sub-Plan has a third type of

2

annual credit available for management employees with a certain amount of prior service. (Id. at ¶ 27)

Each participant's hypothetical account balance increases annually due to these three credits, but it increases at variable rates. (Id. at ¶ 20) Each plan participant is kept informed of his benefits through an account statement mailed annually by June 30 of each year that includes the participant's account balance.[1]

To determine whether the Sub-Plan violates ERISA's accrual rules governing defined benefit plans, a plan participant's account balance must be converted to an annuity commencing when the participant reaches age sixty-five. (Id. at ¶ 40)

### III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the

---

[1]Defendants claim that plaintiffs admit in their complaint to receiving annual account statements by June 30 of the succeeding year. This claim is unsupported by plaintiffs' complaint but goes unrefuted in plaintiffs' answering brief. (D.I. 1 at ¶ 35, D.I. 12 at 12 n.1, D.I. 16 at 38)

complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## IV. DISCUSSION

Although the ERISA statute does not provide for a statute of limitations for claims under § 204, the Third Circuit has held "that the 'limitations period applicable to the forum state claim most analogous to the ERISA claim at hand' is to be borrowed and applied to an ERISA non-fiduciary duty claim." Romero v. Allstate Corp., 404 F.3d 212, 220 (3d Cir. 2005) (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1180 (3d Cir. 1992). All parties agree that the relevant limitations period for all of plaintiffs' claims is the three-year period for an "action based on a statute" found in 10 Del. C. § 8106. (D.I. 12 at 10, D.I. 16 at 33)

The paramount issue in this case concerns when plaintiffs' claims accrued. Generally, a federal claim accrues for limitations purposes "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Romero, 404 F.3d at 222. More specifically, under ERISA, a "non-fiduciary claim will accrue before a formal application is made and/or before benefits are formally denied, such as 'when there has been a repudiation [of the benefits] by

4

the fiduciary which is **clear** and made known to the beneficiar[y].'" Id. at 223 (quoting Miles v. N.Y. State Teamsters Conf. Pension and Retirement Fund, 698 F.2d 593, 598 (2d Cir. 1983)). Thus, the Romero court concluded:

> [W]hen an ERISA plan is amended but the fact that the amendment actually affects a particular employee or group of employees cannot be known until some later event, the cause of action of the employee will not accrue until such time as the employee knew or should have known that the amendment has brought about a clear repudiation of certain rights that the employee believed he or she had under the plan.

404 F.3d at 223.

In applying this rule, the Romero court held that the time of accrual should not be unwaveringly tied to the effective date of the challenged plan amendment. See 404 F.3d at 224. However, the court noted that, under some circumstances, benefits could be clearly repudiated as of that date. See id.

Defendants argue that all of plaintiffs' claims accrued January 1, 1999, the date of the plan amendment, because a pension plan that is allegedly "inherently unlawful" clearly repudiates one's rights. (D.I. 12 at 11) Additionally, defendants argue that, as of January 1, 1999, plaintiffs were aware that a variable interest rate would be used to calculate any annuities, so plaintiffs should have been aware that this variable rate could cause the value of annuities to decrease. (Id. at 12) Plaintiffs are not claiming they suffered injury from the face of the plan as amended on January 1, 1999. Rather,

5

plaintiffs are claiming that they were injured when the Sub-Plan actually failed ERISA's notice and accrual requirements. (D.I. 1 at ¶¶ 41-53) Consequently, plaintiffs' claims did not accrue on January 1, 1999.

Count I of plaintiffs' complaint alleges the Sub-Plan fails to satisfy the tests in ERISA § 204(b)(1)(A)-(C). (D.I. 1 at ¶¶ 42-45) There is no evidence in the record to indicate that the Sub-Plan actually failed the requirements of ERISA § 204(b)(1) prior to 2004. (D.I. 16 at 37) Plaintiffs' claims, therefore, are not barred by the three-year statute of limitations and defendants' motion to dismiss count I is denied.

Counts II and III of plaintiffs' complaint allege that they were first injured when the Sub-Plan failed the accrual requirements of ERISA § 204(b)(1)(G) and ERISA § 204(b)(1)(H) in 2001. (D.I. 1 at ¶ 41) Defendants argue that the latest plaintiffs should have known about this injury is from their account statement received no later than June 30, 2002. (D.I. 12 at 12 n.1) Plaintiffs counter that the account statement only included a lump-sum balance that needed to be converted to an annuity prior to determining whether the pension plan met ERISA's requirements; therefore, the account statements did not provide the "clear repudiation" necessary for their claim to accrue. (D.I. 16 at 38)

6

As an affirmative defense, the statute of limitations is not often raised on a motion to dismiss, but a case may be dismissed if the complaint affirmatively shows that the claim is time barred. See DeWitt v. Penn-Del Directory Corp., 872 F.Supp. 126, 133 (D. Del. 1994). There is insufficient evidence in the record at this time to conclude that the account statement provided the "clear repudiation" necessary for the plaintiffs' claims to accrue at the time they received the statement in 2002.[2] Consequently, defendants' motion to dismiss counts II and III is denied.

Plaintiffs allege in count IV that the notice provided was insufficient under ERISA § 204(h). (D.I. 1 at ¶ 53) As the Romero court noted, "It would make no sense, and indeed do a remarkable disservice to the underlying purposes of ERISA and its disclosure requirements, to deem a notice claim to have accrued before a plaintiff knows or should have known that an amendment has the effect which triggers the notice requirement." 404 F.3d at 225. There is an insufficient record to determine at what point plaintiffs should have known that the ERISA notice requirements were triggered. Defendants' motion to dismiss count IV is denied.

---

[2] It is possible that the record, as developed through discovery, would lead one to conclude that the 2002 account statement did provide a clear enough repudiation of rights for the statute of limitations to begin to run.

7

## V.   CONCLUSION

For the reasons stated, defendants' motion to dismiss (D.I. 11) is denied.  An order shall issue.