IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 05-702-SLR ) |
| PEPCO HOLDINGS, INC., CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, | ) ) ) ) |
| Defendants. | ) ) |

Pamela S. Tikellis, Esquire, Robert J. Kriner, Esquire, A. Zachary Naylor, Esquire, and Robert R. Davis, Esquire of Chimicles & Tikellis LLP, Wlimington Delaware. James R. Malone, Jr., Esquire and Joseph G. Sauder, Esquire of Haverford, Pennsylvania. Counsel for Plaintiffs.

M. Duncan Grant, Esquire of Pepper Hamilton LLP, Wilmington, Delaware. Susan K. Hoffman, Esquire, Larry R. Wood, Jr., Esquire, Kay Kyungsun Yu, Esquire, and Barak A. Bassman, Esquire of Philadelphia, Pennsylvania. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: July **11,** 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On September 26, 2005, plaintiffs J. Michael Charles,
Maurice W. Ward, Jr., and Joseph I. Fink, Jr. ("plaintiffs")
filed this action against defendants Pepco Holdings, Inc.,
Conectiv, and Pepco Holdings Retirement Plan ("defendants")
alleging that defendants' pension plan violates four subsections
of the Employee Retirement Income Security Act of 1974 ("ERISA")
§ 204, 29 U.S.C. § 1054. Plaintiffs claim that defendants' plan
violates ERISA's minimum accrual requirements (count I), non-age
discrimination requirements (counts II and III), and notice
requirements (count IV). (D.I. 1) Currently before the court is
defendants' motion for clarification and/or re-argument of the
court's order and opinion denying defendants' motion to dismiss
for failure to state a claim pursuant to Fed. R. Civ. P.
12(b)(6). (D.I. 11, 24, 25) For the reasons stated below,
defendants' motion to dismiss is denied, defendants' motion for
re-argument is denied, and count III of the complaint is stayed.

## II. BACKGROUND

Plaintiffs have all been employed by defendant Conectiv, or
its predecessors, since 1987 or before. (D.I. 1 at ¶¶ 4-6)
Defendant Conectiv has been a wholly owned subsidiary of
defendant Pepco Holdings since August 1, 2002. (Id. at ¶ 8)
Defendant Pepco Holdings Retirement Plan was created on December
31, 2002, when the Conectiv Retirement Plan was merged with

another pension plan maintained by an affiliate of Pepco Holdings. (Id. at ¶ 9) However, the formation of the Pepco Holdings Retirement Plan in 2002 did not alter how benefits were expressed for participants in the Conectiv Retirement Plan. (Id. at ¶ 29)

The Conectiv Retirement Plan has several pension plan designs, or sub-plans, but plaintiffs are all currently participants in the only sub-plan at issue in this case, the Cash Balance Sub-Plan ("Sub-Plan"). (Id. at ¶¶ 21, 24) The Sub-Plan was created on December 30, 1998, when its predecessor plans were merged together, and plaintiffs have been participants in the Sub-Plan since its inception. (Id. at ¶¶ 18, 24) Affected Conectiv employees were given information regarding their conversion to the Sub-Plan during Spring of 1998, on December 21, 1998, and during July 1999. (Id. at ¶¶ 33-35)

In a cash balance plan, which is an ERISA defined benefit plan, participants have a hypothetical account balance that expresses their accumulated retirement benefits. (Id. at ¶¶ 19, 39) In the Sub-Plan, each plaintiff began with an initial hypothetical account balance on January 1, 1999, that was based upon the annuity benefit earned by each plaintiff under his prior plan. (Id. at ¶ 37) Plan participants were mailed a statement containing this initial account balance by late June of 1999. (Id. at 35). Each year credits are added to this hypothetical

2

account balance based on the participant's earnings and interest.
(Id. at ¶ 20)  Additionally, the Sub-Plan has a third type of
annual credit available for management employees with a certain
amount of prior service.  (Id. at ¶ 27)

Each participant's hypothetical account balance increases
annually due to these three credits, but it increases at variable
rates.  (Id. at ¶ 20)  Each plan participant is kept informed of
his benefits through an account statement mailed annually by June
30 of each year that includes the participant's account balance.[1]

To determine whether the Sub-Plan violates ERISA's accrual
rules governing defined benefit plans, a plan participant's
account balance must be converted to an annuity commencing when
the participant reaches age sixty-five.  (Id. at ¶ 40)

## III.  STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6),
the court must accept as true all material allegations of the
complaint and it must construe the complaint in favor of the
plaintiff.  See Trump Hotels & Casino Resorts, Inc. v. Mirage
Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).  "A complaint
should be dismissed only if, after accepting as true all of the
facts alleged in the complaint, and drawing all reasonable

---

[1]Defendants claim that plaintiffs admit in their complaint
to receiving annual account statements by June 30 of the
succeeding year.  This claim is unsupported by plaintiffs'
complaint but goes unrefuted in plaintiffs' answering brief.
(D.I. 1 at ¶ 35, D.I. 12 at 12 n.1, D.I. 16 at 38)

3

inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## IV. DISCUSSION

Count I of plaintiffs' complaint alleges the Sub-Plan fails to satisfy the tests in ERISA § 204(b)(1)(A)-(C). (D.I. 1 at ¶¶ 42-45) Specifically, plaintiffs allege that the accrual tests in § 204(b)(1)(A) and (C) are inapplicable to cash balance plans, and the Sub-Plan violated the 133 1/3% accrual test of § 204(b)(1)(B) in 2004. (D.I. 16 at 11) Defendants argue that plaintiffs' comparison is "improper and irrelevant" because Treasury regulation 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(D) requires that, when performing the 133 1/3% test, "all relevant factors used to compute benefits, e.g., consumer price index, are treated as remaining constant as of the beginning of the current plan year for all subsequent plan years." (D.I. 18 at 14) From the record, it is unclear exactly what calculation defendants are proposing as the proper method to test whether a cash balance plan meets ERISA's minimum accrual requirements and whether the Sub-Plan would then pass these requirements. After drawing all

4

inferences in plaintiffs' favor, defendants' motion to dismiss count I is denied.

Count II of plaintiffs' complaint alleges that the Sub-Plan violates the requirements of ERISA § 204(b)(1)(G), which prohibits plans in which a "participant's accrued benefit is reduced on account of any increase in his age or service." (D.I. 1 at ¶ 47) Defendants argue that the cause of any decrease in plaintiffs' accrued benefits was due to changes in the fluctuating interest rates used in the plan and not "on account of increases in their ages or years of service." (D.I. 18 at 8) Defendants correctly point out that § 204(b)(1)(G) does not prohibit any decrease in the value of the accrued benefit, so plaintiffs' claim that the "accrued benefit **can decrease** despite additional service" is insufficient to show a violation of § 204(b)(1)(G). (D.I. 16 at 18) However, whether the use of a variable interest rate actually caused plaintiffs' accrued benefits to decrease "on account" of additional service is an allegation that plaintiffs must be given the opportunity to demonstrate. Defendants' motion to dismiss count II is denied.

Count III of plaintiffs' complaint alleges that the Sub-Plan violates the requirements of ERISA § 204(b)(1)(H), which prohibits plans in which "the rate of an employee's benefit accrual is reduced, because of the attainment of any age." (D.I. 1 at ¶ 50) Much like count II, count III also requires

5

plaintiffs to prove that the cause of any reduction in the rate of benefit accrual was "because of the attainment of any age," so defendants' motion to dismiss count III is denied.

Count III has two additional legal issues. The first issue is whether the plaintiffs, being under age 65, have standing to bring suit for a claim under § 204(b)(1)(H). Although the phrase "any age" is found in the text of the statute, the statutory heading is "Benefit Accrual Beyond Normal Retirement Age." The second legal issue in count III is whether the "rate of benefit accrual" should be measured by the rate at which a participant's "benefit is accruing" or the rate at which a participant's "accrued benefit" changes. (D.I. 12 at 20, D.I. 16 at 24) District courts that have addressed these issues are divided, and one of the most recent rulings on these issues is currently on appeal to the Third Circuit Court of Appeals.[2] Register v. PNC Finance Services Group, Inc., No. 04-CV-6097, 2005 WL 3120268 (E.D. Pa. Nov. 21, 2005), appeal pending, No. 05-3588 (3d Cir. filed Dec. 20, 2005). Count III of plaintiffs' complaint is stayed pending a ruling from the Third Circuit on the preferred statutory interpretation of § 204(b)(1)(H).

---

[2]It is also notable that one of the major cases relied on by plaintiffs is likewise under review by the Seventh Circuit Court of Appeals. Cooper v. IBM Personal Pension Plan, 274 F. Supp.2d 1010 (S.D. Ill. 2003), appeal pending, No. 05-3588 (7th Cir. argued Feb. 16, 2006).

6

In count IV, plaintiffs allege that the notice provided was insufficient under ERISA § 204(h), which requires written notice of the plan amendment "not less than 15 days before the effective date of the plan amendment" when the plan amendment results in a "significant reduction in the rate of future benefit accrual." (D.I. 1 at ¶ 53) Plaintiffs argue that any notice provided by defendants was insufficient because it failed to warn participants that they may suffer adverse effects from the plan amendment. (D.I. 16 at 30) Defendants correctly point out that the law only requires the notice to include an understandable summary of the amendment and not a description of its potentially adverse effects. See Register, at 2005 WL 3120268 *8. However, defendants' only response to plaintiffs' allegation that the notice was untimely under § 204(h) is that plaintiffs lack constitutional standing to bring a "de minimis" allegation. (D.I. 18 at 16) Plaintiffs have more than met their burden of showing that they can demonstrate a set of facts that would entitle them to relief, so defendants' motion to dismiss count IV is denied.

## V.   CONCLUSION

For the reasons stated, defendants' motion to dismiss (D.I. 11) is denied, defendants' motion for re-argument (D.I. 27) is denied, and count III of the complaint is stayed. An order shall issue.

7