UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PEPCO HOLDINGS, INC; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN,<br><br>Defendants. | ) | C. A. NO. 05-702 (SLR)<br>(Lead Case) |

**PLAINTIFFS' SUPPLEMENTAL REPORT FOR DISCOVERY CONFERENCE**

In accordance with this Court's scheduling order, plaintiffs previously filed a report on October 2, 2006 reporting on the status of discovery. As the conference was rescheduled for October 26, 2006 at 11:30 a.m., plaintiffs hereby submit this supplemental report on discovery issues, which differs from plaintiffs' October 2, 2006 report by revising paragraph 10 and adding new paragraphs 11-20.

1. On July 14, 2006, plaintiffs served their initial disclosures, identifying thirteen individuals and several entities believed to have knowledge of discoverable matter.

2. On August 11, 2006, plaintiffs produced the documents identified in their disclosures to defendants, which totaled approximately 800 pages.

3. On August 18, 2006, plaintiffs served interrogatories and requests for production.

4. On September 8, 2006, defendants served their disclosures, identifying one individual with knowledge of discoverable matter.

5. Between September 15th and September 18th, plaintiffs issued document subpoenas to two actuarial consulting firms previously identified in their disclosures.

6. On September 18, 2006, defendants served objections and responses to plaintiffs' first set of interrogatories and objections to plaintiffs' document requests.

7. On September 26, 2006, the parties had a telephone conference to review the status of discovery and discuss its appropriate scope. Participating on behalf of the plaintiffs were A. Zachary Naylor and James R. Malone, Jr. Participating on behalf of the defendants were Susan Katz Hoffman, Larry R. Wood, and Kay Kyungsun Yu. Plaintiffs' counsel raised questions about some of the objections to discovery lodged by defendants.

8. Generally, the parties appear to have differing views of the extent to which background information on issues such as the reason the cash balance design was selected and the reason why grandfather benefits were offered to particular groups is relevant. Plaintiffs consider this information relevant for at least two reasons. First, this type of material is relevant to test the extent to which defendants expected the rate of benefit accrual to be lower under the cash balance design than under the existing final average pay plans, which is what triggers the defendants' obligation to provide notice under Section 204(h) of ERISA, 29 U.S.C. § 1054(h), the subject of Count IV of the complaint. Second, plaintiffs believe this information relevant to the subject of remedies. For example, in the IBM litigation, there was extensive motion practice over the appropriate remedy for a claimed violation of Section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H).[1] The plan sponsor argued that retroactive relief was inappropriate because it was essentially blind-sided by a dramatic change in the law. *Cooper v. IBM Personal Pension Plan,* 2004 WL 322918 (S.D. Ill. Feb. 12, 2004), *reversed on other grounds,* 457 F.3d 636 (7th Cir. 2006). Thus, plaintiffs believe that background information on the reasons why the cash balance

---

[1] Plaintiffs are mindful that the Court has stayed Count III of the complaint. We expect, however, that the same types of remedial issues would be raised by defendants on at least some of the other Counts plaintiffs have alleged. The grant of summary judgment in IBM was recently reversed by the Seventh Circuit. *Cooper v. IBM Personal Pension Plan,* 457 F.3d 636 (7th Cir. 2006).

design was selected and the reasons why grandfather benefits were offered to particular groups are also relevant to the issue of remedies.

9. During the September 26 telephone conference, defendants' counsel indicated that they expected their document production to include some material bearing on the design issues. The parties also discussed the issue of drafts, which defendants do not consider relevant. Plaintiffs' consider drafts of the cash balance plan and the employee communications issued in connection with the conversion to the cash balance design to be relevant. During the course of the telephone conference, defendants' counsel advised plaintiffs' counsel that a first wave of documents would be produced that week, and that efforts to find responsive documents in defendants' archives were still ongoing.

10. On September 28, 2006, defendants served responses to plaintiffs' document requests and produced an initial wave of documents totaling approximately 3400 pages of material. As of our October 2, 2006 report, plaintiffs' counsel had not yet had an opportunity to review this material in detail.

11. Since the time of their October 2, 2006 report, plaintiffs' counsel have reviewed in detail the first wave of documents produced by defendants, which are numbered PHI00001-3449. Further, on the evening of October 23, 2006, defendants' counsel forwarded to plaintiffs' counsel a second wave of documents, numbered PHI003450-3785. The transmittal accompanying these documents indicated that defendants did not anticipate producing any additional materials pursuant to plaintiffs' first request for production.

12. In light of the fact that defendants consider their document production to be complete, plaintiffs' counsel forwarded to defendants' counsel a letter on October 24, 2006 reviewing the status of discovery to date. This letter framed for defendants' consideration the discovery issues relating to plaintiffs' requests for information on the design of the Cash Balance

Sub-Plan and for drafts of the Cash Balance Sub-Plan and the employee communications. So that the Court may understand the nature and context of these issues we will summarize the discussion we have outlined for defendants.

13. *Design Issues.* Plaintiffs have propounded various discovery requests intended to explore the background to defendants' decision to adopt a cash balance design, the reasons why separate sub-plans for represented workers were adopted which did not use that design, and the considerations that went into designing grandfather benefits, which permitted some workers to continue to accrue benefits under the pre-existing plan design. To date, defendants have generally objected to any discovery into these areas on relevance and other grounds, however, they have produced minutes of a meeting of a committee of the Conectiv board at which the cash balance design was discussed and endorsed, along with a presentation made to the committee that summarized the proposed terms of the plan in ten "bullet points." Plaintiffs' contend that their requests for discovery in this area are appropriate for two basic reasons.

14. First, plaintiffs contend that discovery into the reasons the cash balance design was adopted and their related inquiries into grandfather benefits and the design for the sub-plans for unionized workers are reasonably calculated to yield evidence relevant to their claim under Section 204(h) of ERISA, 29 U.S.C. § 1054(h), which requires notice of an amendment to a plan that will result in a reduction in future benefit accrual standards. The duty to provide notice is triggered when a plan sponsor reasonably expects that a plan amendment will lower the rate at which normal retirement benefits accrue in the future. *See* 26 C.F.R. § 1.411(d)-6T (A-5)(1998)(stating that section 204(h) notice is required in connection with an amendment to a defined benefit plan "if it is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age."). In light of this standard, along with the broad standard governing relevance of discovery under Rule 26 of the Federal Rules of Civil Procedure, plaintiffs believe that their

inquiries into design matters are reasonably calculated to lead to the discovery of admissible evidence. For example, discussions between Conectiv's management and its outside consultants concerning the cash balance design presumably touched on the likely future cost of benefits under a cash balance design as contrasted with final average pay plans such as those already in place, which were retained for the unionized workers. Similarly, the very fact that grandfather benefits were offered to some workers suggests that management recognized that adoption of a cash balance design would result in lower benefit accruals for some classes of workers. Discovery into the process of determining which workers would qualify for grandfather benefits is thus reasonably calculated to lead to discoverable evidence on the question whether Conectiv expected the adoption of the Cash Balance Sub-Plan to lead to a reduction in future age 65 retirement benefits, which would trigger its obligation to give notice.

15. Second, plaintiffs believe that their discovery requests aimed at design issues will prove relevant to the issue of remedies. If plaintiffs prevail on any of their claims, we expect defendants will oppose any retroactive relief, arguing that they acted in good faith and had no reason to believe that there was anything wrong with the cash balance design they adopted. Information about the discussions of the design in advance of its adoption may well yield evidence that will be relevant to rebut that type of contention.

16. *Drafts.* Plaintiffs have requested drafts of two categories of documents: the Cash Balance Sub-Plan, and the communications that Conectiv issued to its employees about its adoption. To date, defendants have objected to producing any drafts on relevance and other grounds.

17. On drafts of the Cash Balance Sub-Plan, plaintiffs currently have the minutes of a committee of the board and a skeletal summary of its proposed terms that was provided to that committee, as discussed above. They also have the final version of the plan that went into effect as

of January 1, 1999. Plaintiffs believe that some exploration of the process of how the plan evolved from ten bullet points into the final version is appropriate for the same reasons outlined above in connection with the design issues. First, tracing the evolution of the plan will likely shed light on the extent to which it was expected to result in lower age 65 retirement benefits for certain classes of workers. Second, the information will likely shed light on the issue of the sponsor's good faith belief in the legitimacy of the design it adopted.

18. Turning to drafts of employee communications, we believe discovery into this area is also reasonably calculated to lead to the discovery of admissible evidence for much the same reason, as the drafts may reveal the defendants' expectations concerning future accruals under the plan and their good faith (or any lack thereof) in dealing with the employees.

19. Plaintiffs' counsel also raised some areas where document production appears to be incomplete, and a variety of other issues, such as the timing for production of a privilege log, the sufficiency of witness identification, and the confidential treatment of certain material. We have invited defendants to confer with us on all of the issues outlined above once they have had an opportunity to review our letter.

20. As to the document subpoenas issued in September, plaintiffs' counsel are working with the subpoena recipients to address the timing of their production of responsive documents.

Dated: October 25, 2006

**CHIMICLES & TIKELLIS LLP**

By: */s/ A. Zachary Naylor*

Pamela S. Tikellis (#2172)
Robert J. Kriner (#2546)
A. Zachary Naylor (#4439)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
302-656-2500 (telephone)
302-656-9053 (fax)

**CHIMICLES & TIKELLIS LLP**
James R. Malone, Jr.
(Appearing *pro hac vice*)
Joseph G. Sauder
(Appearing *pro hac vice*)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 (telephone)
610-649-3633 (fax)