IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>PEPCO HOLDINGS, INC.; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN,<br><br>Defendants | CIVIL ACTION<br><br>NO. 05-702 (SLR) |

# DEFENDANTS' OPENING BRIEF
## IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER

**PEPPER HAMILTON LLP**
M. Duncan Grant (Del. Bar No. 2994)
Phillip T. Mellet (Del. Bar No. 4741)
Hercules Plaza, Suite 5100
1313 N. Market Street
P. O. Box 1709
Wilmington, DE 19899-1709
302-656-2500 (telephone)
302-656-9053 (fax)

Attorneys for Defendants

**PEPPER HAMILTON LLP**
Susan K. Hoffman
Larry R. Wood, Jr. (Del. Bar No. 3262)
Kay Kyungsun Yu
Barak A. Bassman
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000 (telephone)
215-981-4750 (fax)

Attorneys for Defendants

Dated: October 25, 2006

## TABLE OF CONTENTS

                                 **Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ............................................................... 1

II. STATEMENT OF FACTS ................................................................................................... 2

  A. Allegations of the Complaint ................................................................................... 2

  B. The Court's Ruling on the Motion to Dismiss ......................................................... 3

  C. Plaintiffs' Discovery Requests .................................................................................. 4

III. SUMMARY OF ARGUMENT ............................................................................................. 5

IV. ARGUMENT ......................................................................................................................... 6

  A. Standard of Review ................................................................................................... 6

  B. The Requested Discovery Is Irrelevant to Count I .................................................... 7

  C. The Requested Discovery Is Irrelevant to Count II ................................................... 8

  D. The Requested Discovery Is Irrelevant to Count IV .................................................. 9

  E. The Requested Discovery Is Irrelevant to Remedies ............................................... 10

V. CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

Page

Allen v. Honeywell Retirement Earnings Plan, 382 F. Supp. 2d 1139 (D. Ariz. 2005)...................8

Alliance Gen'l Insurance Co. v. La. Sheriff's Automobile Risk Program, Civ. A. No. 96-961, 1999 WL 221120 (E.D. La. April 9, 1999)...................7

In re Ashworth, Inc. Securities Lit., No. 99-CV-121, 2002 WL 33009225 (S.D. Cal. May 10, 2002)...................7

Campanella v. Mason Tenders' District Council Pension Plan, 299 F. Supp. 2d 274 (S.D.N.Y. 2004)...................8

Collens v. City of New York, 222 F.R.D. 249 (S.D.N.Y. 2004)...................6

Conboy v. Edward D. Jones & Co., Civ. A. No. 303-2352P, 2004 WL 1792372 (N.D. Tex. Aug. 10, 2004), aff'd 140 Fed. Appx. 510 (5th Cir. 2005)...................6

Cooper v. IBM Personal Pension Plan, 457 F.3d 636 (7th Cir. 2006)...................10

DiCioccio v. Duquesne Light Co., 911 F. Supp. 880 (W.D. Pa. 1995)...................9

Joy Technologies, Inc. v. Flakt, Inc., 772 F. Supp. 842 (D. Del. 1991)...................7

Koenig v. Intercontinental Life Corp., 880 F. Supp. 372 (E.D. Pa. 1995)...................10

Langman v. Laub, 328 F.3d 68 (2d Cir. 2003)...................7

## STATUTES AND REGULATIONS

ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1)...................7

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B)...................8

ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G)...................8

ERISA § 204(h), 29 U.S.C. § 1054(h)...................9

Fed. R. Civ. P. 1...................7

Fed. R. Civ. P. 26(b)(1)...................5, 6, 7

26 C.F.R. § 1.411(b)-1(b)(2)(ii)(D)...................8

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

This case is a putative class action challenging the legality of the design of Defendants' Cash Balance Sub-Plan (the "Plan") under various subsections of Section 204 of the Employee Retirement Income Security Act of 1974 ("ERISA"). In Memorandum Opinions dated June 12, 2006 (D.I. 24) and July 11, 2006 (D.I. 31), this Court denied Defendants' Motion to Dismiss, although it ordered Count III of the Complaint to be stayed pending the ruling of the Third Circuit in Register v. PNC Fin. Servs. Group, Inc., No. 05-3588. Moreover, on August 17, 2006, after the Court's rulings, the President of the United States signed the Pension Protection Act, expressly making cash balance plans (such as Conectiv's Cash Balance Sub-Plan at issue here) legal and non-discriminatory.

The parties are currently engaged in discovery regarding the three non-stayed claims, which are as follows. First, Plaintiffs allege that the Plan violates ERISA's anti-backloading rules which regulate the rate at which benefits can accrue each year. Second, Plaintiffs apparently assert that the use of a variable interest rate in the Plan caused their accrued benefits to decrease on account of additional service. Third, Plaintiffs allege that Defendants failed to provide them with proper advance notice of the January 1, 1999 amendment to the Plan establishing the cash balance formula for computing benefits, which would have been required if the amendment resulted in a significant decline in the rate of future benefit accruals.

Despite the narrow, technical nature of their claims, Plaintiffs have propounded sweeping discovery requests to Defendants, seeking virtually every document in their possession that has any bearing on the Plan, other sub plans, and the 1999 Amendment. Plaintiffs have also served equally sweeping subpoenas to two actuarial consulting firms, Towers Perrin and Watson Wyatt, that Defendants have retained in the past.

-2-

Defendants have unsuccessfully attempted to convince Plaintiffs to narrow the scope of discovery to what is relevant to their non-stayed claims, i.e., the relevant Plan documents, notices provided, and participant account statements. Plaintiffs have declined to compromise. As a result, Defendants now bring the instant Motion for Protective Order.

## II. STATEMENT OF FACTS

### A. Allegations of the Complaint

While Defendants administer several pension plan designs within a single pension plan, the only one at issue in this case is the Conectiv Cash Balance Sub-Plan (the "Plan"). Compl. (D.I. 1), ¶¶ 1, 10. The Plan was adopted and effective in its current form as a cash balance plan on January 1, 1999. Id. ¶ 21. Under the Plan, each participant accrues benefits each year in the form of pay credits and interest credits added to his or her hypothetical account balance. Id. ¶¶ 24-26. The interest credits are based on the then-current thirty year Treasury Bond rate, while the pay credits are a percentage of each participant's annual pay. Id. ¶¶ 25-26. The same interest rate applies to each participant's hypothetical account balance, although the rate at which pay credits are computed increases with age. Id.

Plaintiffs are each long-term employees of Defendant Conectiv or its predecessors, having continuously worked for Conectiv or its predecessors since at least 1987. Id. ¶¶ 4-6. Plaintiffs were employees as of the January 1, 1999 conversion to the Plan's cash balance formula. Id. Furthermore, as each Plaintiff is now over fifty years old, Plaintiffs enjoy the maximum pay credit rate. Id. Nevertheless, Plaintiffs have alleged that fluctuations in the Treasury bond rate have caused their accrued benefits to decline in certain years, which appears to be the basis of their claim for redress. Id. ¶ 41.

B. <u>The Court's Ruling on the Motion to Dismiss</u>

On November 16, 2005, Defendants moved to dismiss the Complaint, both as time barred and for failure to set forth any violation of ERISA. (D.I. 11.) On June 12, 2006 (D.I. 24) and July 11, 2006 (D.I. 31), this Court denied Defendants' Motion to Dismiss, although it ordered Count III of the Complaint to be stayed pending the ruling of the Third Circuit in <u>Register v. PNC Fin. Servs. Group, Inc.</u>, No. 05-3588. <u>See</u> Memorandum Opinion dated July 11, 2006 (D.I. 31) at 6.

The Court denied Defendants' Motion as to Count I, the "backloading" claim, because "from the record, it is unclear exactly what calculation defendants are proposing as the proper method to test whether a cash balance plan meets ERISA's minimum accrual requirements and whether the Sub-Plan would then pass these requirements." <u>Id.</u> at 4.

As to Count II, while the Court agreed with Defendants that "[ERISA] § 204(b)(1)(G) does not prohibit any decrease in the value of the accrued benefit," it denied Defendants' Motion because "whether the use of a variable interest rate actually caused Plaintiffs' accrued benefits to decrease 'on account' of additional service is an allegation that Plaintiffs must be given an opportunity to demonstrate." <u>Id.</u> at 5.

Finally, as to Count IV, the Court agreed with Defendants that "the law only requires the [pre-Amendment] notice to include an understandable summary of the amendment and not a description of its potentially adverse effects." <u>Id.</u> at 7. Still, the Court denied Defendants' Motion because it was unclear on the face of the Complaint whether Defendants had provided such notice in a timely manner, <u>i.e.</u>, at least 15 days before the effective date of the Amendment. <u>Id.</u> The Court did not address whether Defendants had an obligation to provide notice at all, <u>i.e.</u>, whether the Amendment would have resulted in a significant decline in the rate of future benefit accruals.

C. <u>Plaintiffs' Discovery Requests</u>

After the Court's denial of the Motion to Dismiss, the parties commenced fact discovery. On August 18, 2006, Plaintiffs served their First Set of Interrogatories and Requests for Production of Documents. <u>See</u> Exhibit A. Although the Federal Rules of Civil Procedure permit Plaintiffs to seek discovery only on the three narrow non-stayed claims, their requests for documents and information were exceptionally broad. For example, Plaintiffs requested the following:

- Document Request No. 10 seeks "[a]ll Documents referring or relating to the Conversion" to the cash balance plan formula in 1999.

- Document Request Nos. 13 and 14 seek "[a]ll Documents that refer or relate to the reasons why" two *different* sub plans, not at issue in this case, were created.

- Document Request No. 4 similarly seeks "[a]ll minutes and other records of the Board of Directors or any committee thereof of ACE, Delmarva or Conectiv that refer to the Conversion or the adoption of the Cash Balance Sub-Plan."

Not surprisingly, Defendants objected to these overbroad and irrelevant requests. <u>See</u> Defendants' Objections to Plaintiffs' First Set of Document Requests (Exhibit B) and Defendants' Objections to Plaintiffs' First Set of Interrogatories (Exhibit C). Notwithstanding their objections to these irrelevant requests, Defendants have produced several thousand pages of documents that are relevant to Plaintiffs' three non-stayed claims, including:

- Copies of the Plan documents and Summary Plan Descriptions;

- Copies of notices of the January 1, 1999 Amendment that Defendants provided to Plan participants;

- Form 5500 Annual Reports for the Plan; and

- Participant benefit statements.

Plaintiffs have also served equally sweeping document subpoenas on third parties Towers Perrin and Watson Wyatt, actuarial consulting firms. *See* Exhibits D and E. Watson Wyatt has served objections to the subpoena. *See* Exhibit F. It is Defendants' understanding that Towers Perrin has received an extension of time within which to object or respond.

The third party subpoenas seek documents well beyond the three non-stayed claims. For example, Plaintiffs have propounded ***thirty-one*** separate document requests to third party Watson Wyatt, including requests for virtually every document related to the 1999 Amendment and a request for all actuarial reports prepared by Watson Wyatt for Defendants' various sub plans, even if the reports do not relate to the Sub-Plan at issue in this action.

On September 26, 2006, the parties conducted a telephone conference to attempt to work out their disagreements as to the scope of discovery. Plaintiffs have taken the position that they are entitled to vast amounts of discovery – discovery that is not "relevant to a claim or defense" in this matter. Fed. R. Civ. P. 26(b)(1). Plaintiffs reiterated their position in a letter sent to Defendants' counsel yesterday, in which they asserted an entitlement to broad-ranging discovery of every sub-plan and plan that Defendants sponsor, including several that are not even the subject of this case. *See* Exhibit G.

## III. SUMMARY OF ARGUMENT

1. The discovery sought by Plaintiffs is irrelevant, overbroad, and will result in unnecessary expense and delay. The three non-stayed claims on which Plaintiffs are proceeding involve very narrow issues relating to the terms of the Plan, Plaintiffs' benefits, and the timing and content of certain notices. Plaintiffs' broad requests for "background information" on Defendants' motives and plans, including harassing requests to third parties, are simply irrelevant. Defendants accordingly respectfully request that this Court enter a Protective Order pursuant to Rule 26(c) limiting discovery in this action to: (1) the Plan documents and Summary

Plan Descriptions; (2) participants' account statements; and (3) copies of any notices provided regarding the 1999 Amendment.

## IV. ARGUMENT

### A. Standard of Review

As amended in 2000, Rule 26(b)(1) limits the scope of discovery to materials that are "relevant to the claim or defense of any party." The 2000 amendments narrowed the scope of discovery from all materials relevant to the "subject matter" of the case to only those items relevant to the particular claims and defenses asserted by the parties. See generally Advisory Committee Notes to 2000 Amendments to Rule 26; see also Collens v. City of New York, 222 F.R.D. 249, 252 (S.D.N.Y. 2004) ("The 2000 Amendments, while not intended to alter dramatically the scope of discovery, were intended to make it 'narrower than it was, in some meaningful way'" (citation omitted)). "While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amounts to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." Collens, 222 F.R.D. at 253; see also Conboy v. Edward D. Jones & Co., Civ. A. No. 303-2352P, 2004 WL 1792372 at *4 (N.D. Tex. Aug. 10, 2004) ("courts should not allow parties to 'roam in the shadow zones of relevancy to explore matter which does not presently appear germane on the theory that it might conceivably become so"), aff'd 140 Fed. Appx. 510 (5th Cir. 2005).

As detailed below, Plaintiffs' broad discovery requests are just such an improper fishing expedition beyond the claims they have asserted. In this circumstance, it is appropriate for the Court to enter a Protective Order shielding Defendants and third parties Towers Perrin

and Watson Wyatt[1] from such harassing, overbroad, irrelevant, and unnecessarily expensive discovery. See Fed. R. Civ. P. 26(c); see also Fed. R. Civ. P. 1 (rules are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action").

B.  The Requested Discovery Is Irrelevant to Count I

Count I of the Complaint alleges that the Plan violates the "anti-backloading" provision of ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1). Compl., ¶¶ 42-45. The purpose of the anti-backloading statute is to prevent employers from requiring that a disproportionate share of benefits accrue at the end of an employee's service:

> The primary purpose of [the anti-backloading statute] is to prevent attempts to defeat the objectives of the minimum vesting provisions by providing undue "backloading," i.e., by providing inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and by concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement.

Langman v. Laub, 328 F.3d 68, 71 (2d Cir. 2003), quoting H.R. Rep. No. 93-807 (1974). To prevent backloading of benefits, ERISA § 204(b)(1) sets forth three rules for benefit accrual and mandates that each defined benefit plan shall comply with at least one of them.

As Plaintiffs admit, their case turns on whether the Plan satisfies the "133 1/3 percent" test, which is as follows:

> A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who

---

[1] As parties to the case, Defendants have standing to seek a Protective Order under Rule 26(c) to limit the scope of discovery upon third parties. See In re Ashworth, Inc. Securities Lit., No. 99-CV-121, 2002 WL 33009225 at *1 (S.D. Cal. May 10, 2002) (defendants have standing to seek Protective Order under Rule 26(c) to limit scope of discovery under third party subpoenas); Alliance Gen'l Ins. Co. v. La. Sheriff's Automobile Risk Program, Civ. A. No. 96-961, 1999 WL 221120 at *1 (E.D. La. April 9, 1999) (same); Joy Technologies, Inc. v. Flakt, Inc., 772 F.Supp. 842, 849 (D. Del. 1991) (granting defendant's Motion for Protective Order restricting third party discovery).

> is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B); see generally Plaintiffs' Answering Brief in Opposition to Motion to Dismiss (D.I. 16) at 11 ("the plan must meet the 133 1/3 percent test"). To test for compliance with this test, the Treasury Department requires that "all relevant factors used to compute benefits, e.g., consumer price index, are treated as remaining constant as of the beginning of the current plan year for all subsequent plan years." 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(D).

Thus, Count I hinges on whether the Plan, as designed, satisfies the technical 133 1/3 percent test when holding interest rates and other variable factors constant. Put differently, the only issue is how the Plan computes benefits. No discovery is needed for this claim beyond simply a copy of the Plan, which explains how benefits are calculated. See, e.g., Allen v. Honeywell Retirement Earnings Plan, 382 F.Supp.2d 1139, 1160 (D. Ariz. 2005) (adjudicating anti-backloading claim based on face of Plan documents); Campanella v. Mason Tenders' District Council Pension Plan, 299 F.Supp.2d 274, 284-285 (S.D.N.Y. 2004) (same). Plaintiffs' broad requests for "background information" are irrelevant to whether the Plan's formula meets, or fails to meet, the technical 133 1/3 percent test, per the requirements of the Treasury Department.

C. The Requested Discovery Is Irrelevant to Count II

In Count II, Plaintiffs allege that the Plan violates ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G), which provides that the Plan is not lawful "if the participant's accrued benefit is reduced on account of any increase in his age or service." This Court has already held that Plaintiffs cannot claim that, based solely on the Plan's usage of a variable interest rate, their

-8-

accrued benefits "can decrease despite additional service." Instead, the Court permitted Plaintiffs the opportunity to demonstrate only that the use of a variable interest rate caused their accrued benefits to decrease, if at all, on account of additional service. As such, the only discovery relevant is (1) each Plaintiff's account history and (2) the Plan itself – to explain why benefits were calculated the way that they were. Defendants have already produced this information in discovery. Notably, the statute contains no element of intent, thereby rendering any inquiry into motives or background completely irrelevant. See DiCioccio v. Duquesne Light Co., 911 F. Supp. 880, 904 (W.D. Pa. 1995) (adjudicating 204(b)(1)(G) claim based solely on terms of the Plan documents). Thus, Plaintiffs' request for other information is not relevant.

### D. The Requested Discovery Is Irrelevant to Count IV

Finally, in Count IV, Plaintiffs allege that Defendants did not properly amend the Plan effective January 1, 1999 to calculate benefits under the cash balance formula because Plaintiffs purportedly did not receive the notice of amendment allegedly required by ERISA § 204(h), 29 U.S.C. § 1054(h). Compl., ¶ 53. The version of Section 204(h) in effect at the time required at least 15 days' advance notice of any amendment that would "provide for a significant reduction in the rate of future benefit accrual." As this Court has noted, the notice was only required "to include an understandable summary of the amendment and not a description of its potentially adverse effects." Memorandum Opinion dated July 11, 2006 (D.I. 31) at 7.

Thus, to make out their claim under Section 204(h), Plaintiffs only need to know (1) the timing and contents of any notices, which documents Defendants have already produced and (2) the effect of the amendment on future accruals, which will be shown comparing the pre- and post-amendment Plan documents, which have already been produced, as well as the Plaintiffs' account statements, which likewise have already been produced. No further discovery is relevant.

Plaintiffs, however, assert that broad-ranging discovery on what Defendants expected to be the result of the 1999 Amendment is somehow relevant. Plaintiffs' Report for Discovery Conference (D.I. 55), ¶ 8. This argument, unsupported by any authority, is clearly meritless. Again, there is no intent element to this claim. Even if Defendants believed that the Amendment would not result in a significant reduction in the rate of Plaintiffs' benefit accrual, Defendants would be liable for failure to provide notice if their belief were wrong. See Koenig v. Intercontinental Life Corp., 880 F. Supp. 372, 375 n. 4 (E.D. Pa. 1995) (rejecting argument that good faith amendment would be exempt from 204(h) notice; "ERISA does not ask, 'why was this amendment made?' It asks only 'was there an amendment and did it result in a significant reduction in the rate of future benefit accrual?'").

### E. The Requested Discovery Is Irrelevant to Remedies

Realizing that their requested fishing expedition into the "background" of the Plan is not relevant to any of their claims, Plaintiffs have taken the bizarre position that such discovery is relevant to remedies, apparently because the defendant in the Cooper v. IBM matter in the Southern District of Illinois argued that its lack of notice of any violation was relevant to remedies. Plaintiffs' Report for Discovery Conference (D.I. 55), ¶ 8. This is absurd, as Defendants have made no such argument in this case. This argument ignores the strictures of Rule 26, and, indeed, the Cooper proceedings upon which they rely were reversed on appeal this past Summer. See Cooper v. IBM Personal Pension Plan, 457 F.3d 636 (7th Cir. 2006).

## V. CONCLUSION

For the reasons set forth herein, this Court should grant Defendants' Motion for Protective Order and limit the scope of discovery to copies of the relevant Plans, Summary Plan Descriptions, annual reports on Form 5500, Plan participant statements, and employee communications.

Respectfully submitted,

/s/ Phillip T. Mellet
M. Duncan Grant (Del. Bar No. 2994)
Phillip T. Mellet (Del. Bar No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

Susan K. Hoffman
Larry R. Wood, Jr. (Del. Bar No. 3262)
Kay Kyungsun Yu
Barak A. Bassman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000 (telephone)
215-981-4750 (fax)

Attorneys for Defendants

Dated:  October 25, 2006