EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PEPCO HOLDINGS, INC; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, <br><br> Defendants. | C. A. NO. 05-702 (SLR) <br> (Lead Case) |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, plaintiffs, J. Michael Charles, Maurice W. Ward, Jr., Joseph I. Fink, Jr. and Thomas S. Troup, hereby request that defendants i) furnish separate answers, under oath, to the interrogatories contained herein within 30 days of service; and ii) produce for inspection and copying the documents described in the requests for production contained herein at the offices of Chimicles & Tikellis LLP, One Rodney Square, Wilmington DE 19899 within 30 days of service, or at such other time and location as the parties may agree.

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to this First Set of Interrogatories and Requests for Production of Documents:

1.  "Conectiv" shall mean Conectiv, its predecessors and successors and all of their officers, directors, employees, and agents.

2.  "Pepco" shall mean Pepco Holdings, Inc., its predecessors and successors, and all of their officers, directors, employees, and agents.

1

3. "ACE" shall mean Atlantic City Electric Company, its predecessors and successors, and all of their officers, directors, employees, and agents.

4. "Delmarva" shall mean Delmarva Power & Light Company, its predecessors and successors, and all of their officers, directors, employees, and agents.

5. "Towers Perrin" shall mean Towers Perrin, its predecessors and successors, and all of their officers, directors, employees, and agents.

6. "Watson Wyatt" shall mean Watson Wyatt & Co., its predecessors and successors, and all of their officers, directors, employees, and agents.

7. "ACE Plan" shall mean the Atlantic City Electric Company Retirement Plan.

8. "Delmarva Plan" shall mean the Delmarva Power & Light Company Retirement Plan.

9. "Conectiv Plan" shall mean the Conectiv Retirement Plan, which was the successor by merger to the ACE Plan and the Delmarva Plan.

10. "Pepco Holdings Plan" shall mean the Pepco Holdings Retirement Plan.

11. "ACE Sub-Plan" shall mean the sub-plan of the Conectiv Plan that covers employees represented by IBEW Local 210 or Local 210A.

12. "Delmarva Sub-Plan" shall mean the sub-plan of the Conectiv Plan that covers employees represented by IBEW Local 1238, Local 1238A, Local 1307, or Local 1307A.

13. "Cash Balance Sub-Plan" shall mean the Conectiv Cash Balance Sub-Plan which became effective as of January 1, 1999.

14. "Conversion" shall refer to the transaction or transactions in which the ACE Plan and the Delmarva Plan were merged to form the Conectiv Plan and the Cash Balance Sub-Plan became effective.

2

15. "Grandfather Benefits" shall refer to the benefits provided to certain participants in the Conectiv Plan and the Pepco Holdings Plan pursuant to section 3.6 of the Cash Balance Sub-Plan.

16. The term "Document" shall mean any tangible thing within the scope of Rule 34 of the Federal Rules of Civil Procedure, and includes data stored electronically (including but not limited to electronic mail) or in any other format from which any information can be derived or retrieved. The term "document" also all attachments, enclosures or documents affixed or referred to in any documents identified in response to any of the following document requests. Any copy or draft of a document containing any information in addition to or in any way different from that contained in or on the original shall be deemed a separate document for purposes of these requests.

17. "Person" shall mean any individual, partnership, firm, association, organization or other entity.

18. "Communicate" or "communication" means the transmission of data, information or ideas, whether orally, in writing, or via electronic media.

19. "Identify" generally means to specify, list, enumerate, catalog, classify, mark or name.

20. When identification of a Document is requested, state the type of Document (e.g., letter, memorandum, email, *etc.*), date, author, addressee(s), name and address of custodian, location, number of pages and description of general subject matter. If any such Document was but is no longer in your possession or subject to your control, identify it as set forth herein and state what disposition was made of it and the date of such disposition.

3

21. When identification of a Person is requested herein, state the name, present or last known address, present occupation and place of employment, and the dates and nature, if any, of such Person's affiliation or relationship at any time with the defendant(s).

22. "Relates" or "relating to" or "referring to," means in any way concerning, constituting, analyzing, discussing, describing, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, modifying, terminating, revoking, canceling, indicating or listing, unless qualified by a work of limitation.

23. If you claim any form of privilege or confidentiality, whether based on statute or otherwise, as a ground for not answering an interrogatory or any part thereof, or for not producing a document or any part thereof, set forth in complete detail each and every fact upon which the privilege or confidentiality is based on, if referring to a document, include a complete description of the document, including sufficient facts for the Court to make a full determination of whether the claim is valid. If you maintain that a matter is attorney-client privileged notwithstanding the fiduciary exception to the privilege, state with specificity all reasons why you contend that the fiduciary exception is not applicable.

## INTERROGATORIES

1. Identify each Person who has provided information to assist in answering any of these interrogatories.

2. Describe Conectiv's retention policies for all Documents relating to the ACE Plan, the Delmarva Plan, the Conectiv Plan, the Conversion and the Cash Balance Sub-Plan.

3. Identify all Persons with knowledge of your retention policies for all Documents relating to the ACE Plan, the Delmarva Plan, the Conectiv Plan, the Conversion and the Cash Balance Sub-Plan.

4. If any Document relating to the ACE Plan, the Delmarva Plan, the Conectiv Plan, the Conversion and the Cash Balance Sub-Plan has been destroyed, please provide the following information: a) identify the Document; b) state the date it was destroyed; c) state why the Document was destroyed; and d) identify the Person who authorized its destruction.

5. Identify all Persons with knowledge of the existence and location of any data stored in electronic form that refers or relates to the Conversion or the Cash Balance Sub-Plan.

6. Identify all Persons with knowledge of the Conversion.

7. Identify all Persons with knowledge of the reasons why Conectiv elected to adopt the Cash Balance Sub-Plan.

8. Identify all Persons with knowledge of the reasons why Conectiv elected to adopt the ACE Sub-Plan.

9. Identify all Persons with knowledge of the reasons why Conectiv elected to adopt the Delmarva Sub-Plan.

10. Identify all Persons with knowledge of the Communications that Conectiv issued to participants in the ACE Plan, the Delmarva Plan and the Conectiv Plan advising them of the Conversion or their rights under the Cash Balance Sub-Plan.

11. Identify all Persons with knowledge of the manner in which the terms for Grandfather Benefits were selected.

12. Identify all Persons who were compensated for services rendered in connection with the Conversion from the assets of the ACE Plan, the Delmarva Plan, or the Conectiv Plan.

13. Does any defendant intend to rely upon the advice of counsel as a defense to any claim in this action?

5

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All plan documents for the ACE Plan, the Delmarva Plan, the Conectiv Plan, the Pepco Holdings Plan, the ACE Sub-Plan and the Delmarva Sub-Plan and all amendments to them.

2. All plan documents for the Cash Balance Sub-Plan, all drafts of them and all amendments to them.

3. All Documents and Communications relating to the approval of amendments to the ACE Plan, the Delmarva Plan or both in connection with the Conversion.

4. All minutes and other records of the Board of Directors or any committee thereof of ACE, Delmarva or Conectiv that refer to the Conversion or the adoption of the Cash Balance Sub-Plan.

5. All Summary Plan Descriptions for the ACE Plan, the Delmarva Plan, the Conectiv Plan, and the Pepco Holdings Plan.

6. All Summary Annual Reports for the ACE Plan, the Delmarva Plan, the Conectiv Plan, and the Pepco Holdings Plan.

7. All Summaries of Material Modifications for the ACE Plan, the Delmarva Plan, the Conectiv Plan, and the Pepco Holdings Plan for each year such documents have been prepared.

8. All Form 5500 Annual Reports, including all schedules and attachments thereto, for the ACE Plan and the Delmarva Plan for 1997 and 1998.

9. All Form 5500 Annual Reports, including all schedules and attachments thereto, for the Conectiv Retirement Plan from 1999 to the present.

10. All Documents referring or relating to the Conversion.

6

11. All Documents that refer or relate to the reasons for adopting the Cash Balance Sub-Plan.

12. All Documents that refer or relate to the terms on which Grandfather Benefits would be offered.

13. All Documents that refer or relate to the reasons why the ACE Sub-Plan was adopted.

14. All Documents that refer or relate to the reasons why the Delmarva Sub-Plan was adopted.

15. All Communications referring or relating to the extent to which adoption of the Cash Balance Sub-Plan would result in a significant reduction in the rate of future benefits accrual for participants in the ACE Plan.

16. All Communications referring or relating to the extent to which adoption of the Cash Balance Sub-Plan would result in a significant reduction in the rate of future benefits accrual for participants in the Delmarva Plan.

17. All Communications referring or relating to any curtailment of Conectiv's pension obligations under generally accepted accounting principles that would result from the Conversion.

18. All Communications between Conectiv and Towers Perrin referring or relating to the Conversion or the Cash Balance Sub-Plan.

19. All Communications between Conectiv and Towers Perrin referring or relating to Grandfather Benefits.

20. All Communications between Conectiv and Watson Wyatt referring or relating to the Conversion or the Cash Balance Sub-Plan.

7

21. All Communications between Conectiv and Watson Wyatt referring or relating to Grandfather Benefits.

22. All Communications issued to participants in the ACE Plan advising them of the Conversion or of their rights under the Cash Balance Sub-Plan, and all drafts of each such Communication.

23. All Communications issued to participants in the Delmarva Plan advising them of the Conversion or of their rights under the Cash Balance Sub-Plan, and all drafts of each such Communication.

24. All Communications directed to the named plaintiffs advising them of the Conversion or of their rights under the Cash Balance Sub-Plan, and all drafts of each such Communication.

25. All statements issued to the named plaintiffs reflecting the amount of their account under the Cash Balance Sub-Plan.

26. All Documents identified in Defendants' Rule 26(a)(1)(B) Disclosures.

27. All Documents that refer or relate to your retention policies for all Documents relating to the ACE Plan, the Delmarva Plan, the Conectiv Plan, the Conversion and the Cash Balance Sub-Plan.

Dated: August 18, 2006

**CHIMICLES & TIKELLIS LLP**

By: _A. Zachary Naylor/RJK_
Pamela S. Tikellis (#2172)
Robert J. Kriner (#2546)
A. Zachary Naylor (#4439)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
302-656-2500 (telephone)
302-656-9053 (fax)

8

CHIMICLES & TIKELLIS LLP
James R. Malone, Jr.
(*pro hac vice*)
Joseph G. Sauder
(*pro hac vice*)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 (telephone)
610-649-3633 (fax)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Joseph G. Sauder, hereby certify that I have on this dated caused Plaintiff's First Set of Interrogatories and Document Requests to be served via first class United States mail on the following:

>M. Duncan Grant, Esquire
>Pepper Hamilton LLP
>1313 Market Street, Suite 5100
>P.O. Box 1709
>Wilmington, DE 19899-1709
>
>Susan Katz Hoffman, Esquire
>Larry R. Wood, Jr., Esquire
>Kay Kyungsun Yu, Esquire
>Pepper Hamilton LLP
>3000 Two Logan Square
>Eighteenth and Arch Streets
>Philadelphia, PA  19103-2799

Dated: August 18, 2006

_____
Joseph G. Sauder