# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PEPCO HOLDINGS, INC; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, | ) ) ) |
| Defendants. | ) |

C. A. NO. 05-702 (SLR)
(Lead Case)

## OPENING BRIEF IN SUPPORT
## OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**CHIMICLES & TIKELLIS LLP**
Pamela S. Tikellis (#2172)
Robert J. Kriner (#2546)
A. Zachary Naylor (#4439)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
302-656-2500 (telephone)
302-656-9053 (fax)

and

James R. Malone, Jr.
(*pro hac vice*)
Joseph G. Sauder
(*pro hac vice*)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 (telephone)
610-649-3633 (fax)

January 11, 2007                    Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.     NATURE AND STAGE OF THE PROCEEDINGS .........................................1

II.    SUMMARY OF ARGUMENT .............................................................................2

III.   STATEMENT OF FACTS ....................................................................................3

IV.    ARGUMENT .........................................................................................................9

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE GRANTED .................9

       A.   The Proposed Class Satisfies the Requirements of Rule 23(a) ..........10

            1.   The Class Is So Numerous that Joinder of All Members Is
                 Impracticable ............................................................................10

            2.   There Are Questions of Law and Fact Common to the
                 Class ...........................................................................................11

            3.   The Claims of the Plaintiffs Are Typical of the Claims of
                 the Class .....................................................................................13

            4.   Plaintiffs Will Fairly and Adequately Protect the Interests
                 of the Class .................................................................................14

       B.   The Class Satisfies Rule 23(b) ...............................................................15

            1.   The Class Meets the Requirements of Rule 23(b)(1) .......................16

            2.   The Class Meets the Requirements of Rule 23(b)(2) .......................18

            3.   The Class Meets the Requirements of Rule 23(b)(3) .......................19

                 a.    Predominance ...............................................................20

                 b.    Superiority ....................................................................21

       C.   Plaintiffs' Counsel Should Be Appointed Class Counsel...................22

V.     CONCLUSION ....................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Case**

*Amara v. CIGNA Corp.,*
    2002 WL 31993224 (D. Conn. Dec. 20, 2002) ......................................10, 12, 19

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................14, 15

*American Seed Co., Inc. v. Monsanto Co.,*
    2006 WL 3276831 (D. Del. Nov. 13, 2006) ......................................................10

*Babcock v. Computer Assoc. Int'l.,*
    212 F.R.D. 126 (E.D.N.Y. 2003) .........................................................................9

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) .............................................................................12, 13

*Brytus v. Spang & Co.,*
    203 F.3d 238 (3d Cir. 2000) ................................................................................9

*Bunnion v. Conrail,*
    1998 WL 372644 (E.D. Pa. May 14, 1998) ..................................................15, 16

*Charles v. Pepco Holdings, Inc.,*
    437 F. Supp. 2d 248 (D. Del. 2006).................................................................1, 8

*Charles v. Pepco Holdings, Inc.,*
    2006 WL 1652749 (D. Del. June 12, 2006) ........................................................1

*Chin v. Chrysler Corp.,*
    182 F.R.D. 448 (D.N.J. 1998) ...........................................................................20

*Clauser v. Newell Rubbermaid, Inc.,*
    2000 WL 1053395 (E.D. Pa. July 31, 2000) ......................................................11

*Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.,*
    95 F.R.D. 168 (D. Del. 1982)............................................................................11

*Deposit Guar. Nat'l Bank v. Roper,*
    445 U.S. 326 (1980)............................................................................................9

*Deutschman v. Beneficial Corp.*,
　　132 F.R.D. 359 (D. Del. 1990) ................................................................10, 12, 20

*Eisenberg v. Gagnon*,
　　766 F.2d 770 (3d Cir. 1985) .................................................................20

*Feret v. Corestates Fin. Corp.*,
　　1998 WL 512933 (E.D. Pa. Aug. 18, 1998).........................................11

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
　　174 F.R.D. 332 (D.N.J. 1997) ............................................................17

*Georgine v. Amchem Prods.*,
　　83 F.3d 610 (3d Cir. 1996), *aff'd sub nom.*, *Amchem Prods. v. Windsor*,
　　521 U.S. 591 (1997)............................................................................22

*Gilman v. Independence Blue Cross*,
　　1997 WL 633568 (E.D. Pa. Oct. 6, 1997) ..........................................20

*Godshall v. Franklin Mint Co.*,
　　2004 WL 2745890 (E.D. Pa. Dec. 1, 2004).........................................11

*Grunewald v. Kasperbauer*,
　　235 F.R.D. 599 (E.D. Pa. 2006) .........................................................23

*Gulf Oil Co. v. Bernard*,
　　452 U.S. 89 (1981)................................................................................9

*Hassine v. Jeffes*,
　　846 F.2d 169 (3d Cir. 1988) ..........................................................18, 20

*Hoxworth v. Blinder, Robinson & Co.*,
　　980 F.2d 912 (3d Cir. 1992) ..............................................................13

*Hurt v. Philadelphia Hous. Auth.*,
　　151 F.R.D. 555 (E.D. Pa. 1993) .........................................................18

*In re IKON Office Solutions, Inc.*,
　　191 F.R.D. 457 (E.D. Pa. 2000) .........................................................12

*Johnston v. HBO Film Management, Inc.*,
　　265 F.3d 178 (3d Cir. 2001) ..............................................................12

*Malloy v. Eichler*,
    628 F. Supp. 582 (D. Del. 1986) ........................................................................11

*McCall v. Drive Financial Services, L.P.*,
    236 F.R.D. 246 (E.D. Pa. 2006) ........................................................................23

*McClendon v. Continental Group, Inc.*,
    113 F.R.D. 39 (D.N.J. 1986) ................................................................................9

*Mulder v. PCS Health Sys.*,
    216 F.R.D. 307 (D.N.J. 2003) ..................................................................9, 18, 19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ..........................................................................9, 14

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ...........................................................................................15

*In re Prudential Ins. Co. of America Sales Practices Litig.*,
    148 F.3d 283 (3d Cir. 1998) ........................................................................21, 22

*Richards v. FleetBoston Fin. Corp.*,
    235 F.R.D. 165 (D. Conn. 2006) ...................................................................10, 19

*Richards v. FleetBoston Fin. Corp.*,
    2006 WL 2979373 (D. Conn. Oct. 16, 2006) ...............................................17, 19

*Simon v. KPMG LLP*,
    2006 WL 1541048 (D.N.J. June 2, 2006) ...........................................................11

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ..............................................................................10

*Stoetzner v. United States Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ..............................................................................15

*Sutton v. Medical Servs. Ass'n*,
    1993 WL 64565 (E.D. Pa. Mar. 5, 1993) ...........................................................20

*Thomas v. SmithKline Beecham Corp.*,
    201 F.R.D. 386 (E.D. Pa. 2001) ................................................................ *passim*

*Wachtel v. Guardian Life Ins. Co.*,
    453 F.3d 179 (3d Cir. 2006) ..............................................................................24

*In re Warfarin Sodium Antitrust Litig.*,
 212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ........12, 13, 14

*Wetzel v. Liberty Mut. Ins. Co.*,
 508 F.2d 239 (3d Cir. 1975) ................................................................................14, 15

*Wilson v. Heckler*,
 622 F. Supp. 649 (D.N.J. 1985)................................................................................9

*Wilson v. Sullivan*,
 709 F. Supp. 1351 (D.N.J. 1989)............................................................................9

## Rules and Statutes

Fed R. Civ. P. 23.................................................................................................10

Fed R. Civ. P. 23(a)..........................................................................2, 9, 10, 15, 22

Fed R. Civ. P. 23(a)(1) ...........................................................................2, 10

Fed R. Civ. P. 23(a)(2) ...........................................................................2, 11, 12

Fed R. Civ. P. 23(a)(3) ...........................................................................2, 13

Fed R. Civ. P. 23(a)(4) ...........................................................................2, 14

Fed R. Civ. P. 23(b)..........................................................................2, 9, 15, 22

Fed R. Civ. P. 23(b)(1) ...........................................................................2, 15, 16

Fed R. Civ. P. 23(b)(1)(A) ...........................................................15, 16, 17, 18

Fed R. Civ. P. 23(b)(1)(B) ...........................................................15, 16, 17, 18

Fed R. Civ. P. 23(b)(2) ...........................................................................2, 15, 18, 19

Fed R. Civ. P. 23(b)(3) .................................................................... *passim*

Fed R. Civ. P. 23(g)............................................................................22

Fed R. Civ. P. 23(g)(1)(A) ...........................................................................22

Fed R. Civ. P. 23(g)(1)(B) ...........................................................................22

Fed R. Civ. P. 23(g)(1)(C)..................................................................................3

Fed R. Civ. P. 23(g)(1)(C)(i)..........................................................................23

## **Other Authorities**

5 MOORE'S FEDERAL PRACTICE § 23.22[3][a] (3d ed. 1999) ........................................10

5 MOORE'S FEDERAL PRACTICE § 23.41 (3d ed. 1999) ...................................................16

## I.  NATURE AND STAGE OF THE PROCEEDINGS

The first of these actions challenging the defendants' conversion of a traditional defined benefit pension plan to a cash balance plan was filed on September 26, 2005. (D.I. 1).[1] The second action, *Troup v. Pepco Holdings, Inc.,* was filed on January 5, 2006. The complaints raise identical claims against the same defendants arising from the same pension plan.

The *Troup* action was filed while a motion to dismiss was pending in the *Charles* action, and the parties stipulated that the motion and briefs filed in the *Charles* action would be deemed filed in the *Troup* action. In the *Charles* action, the Court denied the defendants' motion to dismiss on June 12, 2006, *Charles v. Pepco Holdings, Inc.,* 2006 WL 1652749 (D. Del. June 12, 2006). Defendants thereafter moved for re-argument, and the Court denied that motion on July 11, 2006, while staying Count III. *Charles v. Pepco Holdings, Inc.,* 437 F. Supp. 2d 248, 252 (D. Del. 2006). The parties thereafter submitted a stipulation providing for the consolidation of the *Charles* and *Troup* actions on July 18, 2006. (D.I. 33).

Defendants filed answers to the complaints on August 1, 2006 (D.I. 38, 39), and the Court held a scheduling conference on August 2nd. Following the conference, the Court entered a scheduling order. (D.I. 41). Under the terms of the scheduling order, plaintiffs Charles, Ward, Fink and Troup (collectively, "Plaintiffs") are required to file their motion for class certification by January 12, 2007, and accordingly submit this brief in support of that motion.

_____

[1]    All references are to the docket in the main action.

1

## II.   SUMMARY OF ARGUMENT

These consolidated actions should be certified for class action treatment because they meet all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and because they satisfy each provision of Rule 23(b).

All of the requirements of Rule 23(a) are satisfied. First, the proposed class consists of hundreds, if not thousands, of pension plan participants. *See* FED R. CIV. P. 23(a)(1). Second, these actions share common questions of law and fact relating to the legality of the cash balance plan and the sufficiency of the notice provided to plan participants prior to its adoption. *See* FED R. CIV. P. 23(a)(2). Finally, Plaintiffs' claims are typical of the claims of the members of the proposed class since they arise from a common course of conduct, and the Plaintiffs are adequate representatives, as they have no conflicting interests and have retained competent counsel. *See* FED R. CIV. P. 23(a)(3), (4).

Rule 23(b) is also satisfied. First, Rule 23(b)(1) is satisfied because the pursuit of separate actions against the defendants could result in incompatible standards of conduct being imposed upon them, and the pursuit of individual actions could be dispositive of the interests of class members as a practical matter through *stare decisis. See* FED R. CIV. P. 23(b)(1). Second, Rule 23(b)(2) is satisfied because the defendants have acted on grounds generally applicable to the members of the proposed class by imposing a single cash balance plan on all members, making final injunctive or declaratory relief appropriate for the class as a whole. *See* FED R. CIV. P. 23(b)(2). In the alternative, class treatment is appropriate under Rule 23(b)(3) because the common questions of law and fact

2

presented here predominate over any individual issues, and a class action is superior to individualized litigation of this complex matter. *See* FED R. CIV. P. 23(b)(3).

In addition to granting class treatment to these actions, the Court should appoint Plaintiffs' counsel as counsel for the proposed class in light of the work they have done in identifying or investigating potential claims, their experience, knowledge of the applicable law, and resources. *See* FED R. CIV. P. 23(g)(1)(C).

### III. STATEMENT OF FACTS

These consolidated actions involve Defendants' conversion of traditional defined benefit pension plans to a single cash balance plan. This conversion became effective January 1, 1999 when the Plaintiffs were placed into Conectiv's Cash Balance Sub-Plan. (D.I. 1 ¶ 1). The Plaintiffs allege that the provisions of the Cash Balance Sub-Plan violate the minimum accrual requirements of ERISA and that adequate notice of the adoption of the Cash Balance Sub-Plan was not provided, as required by ERISA.

Prior to 1998, Atlantic City Electric Company ("Atlantic City Electric") and Delmarva Power & Light Company ("Delmarva") were independent companies, each of which maintained its own defined benefit pension plan, the Atlantic City Electric Company Retirement Plan ("Atlantic City Plan") and the Delmarva Power & Light Company Retirement Plan ("the Delmarva Plan"). (D.I. 1 ¶ 17; D.I. 38 ¶ 17). On March 1, 1998, Atlantic City Electric and Delmarva became wholly owned subsidiaries of Conectiv. (D.I. 1 ¶ 17; D.I. 38 ¶ 17). Conectiv

3

determined that it wished to create a single defined benefit pension plan out of the two predecessor plans; on April 23, 1998, the Personnel and Compensation Committee of Conectiv met and resolved to adopt a cash balance pension plan having the following features:

- Effective: 1/1/99
- Basic formula is: End of Year Balance = Beginning of Year Balance + Pay Credits + Interest Credits
- Portable – after 5 year vesting
- Improved employee communications
- Survivor receives the "balance"
- Extensive "Grandfathering"
- Transition Credits
- Business Link
  - Useful in Divestitures
  - Can be differentiated by SBU

(Naylor Decl., Ex. 1 at PHI001584-1586, 1589).

On December 30, 1998, the Delmarva Plan merged into the Atlantic City Plan, and the surviving Atlantic City Plan was renamed as the Conectiv Retirement Plan. (D.I. 1 ¶ 18; D.I. 38 ¶ 18). Plan documents for the Conectiv Retirement Plan and the Cash Balance Sub-Plan were formalized on December 10, 1999. (Naylor Decl., Ex. 2 at PHI000520; Ex. 3 at PHI001570).

Plaintiffs are currently participants in the Cash Balance Sub-Plan of the Pepco Holdings Retirement Plan. In a cash balance plan, each participant has a hypothetical account which is purely for bookkeeping purposes. (D.I. 1 ¶ 20; D.I. 38 ¶ 20). No specific assets are allocated to any particular participant's "account," and the value of the "account" does not fluctuate in response to gains and losses recognized on plan assets. (D.I. 1 ¶ 20; D.I. 38 ¶ 20). Each year, the plan's sponsor

4

in a cash balance plan adjusts the participant's account with various credits based upon the formula set forth in the plan document. (D.I. 1 ¶ 20; D.I. 38 ¶ 20). Typically, these credits reflect some factor based on earnings along with an interest credit, which is usually derived from the thirty year Treasury rate. (D.I. 1 ¶ 20; D.I. 38 ¶ 20).

Conectiv did not alter the benefits structure for its unionized employees; instead it created sub-plans for them, known as the ACE Sub-Plan and the Delmarva Sub-Plan. (D.I. 1 ¶ 21; D.I. 38 ¶ 21). Unless they qualified for the ACE Sub-Plan or the Delmarva Sub-Plan, participants who were covered by the Atlantic City Plan or the Delmarva Plan were placed in the Cash Balance Sub-Plan as of January 1, 1999. (D.I. 1 ¶ 21; D.I. 38 ¶ 21). Conectiv also decided that it would grandfather certain of the management employees who were participants in the Atlantic City Plan and the Delmarva Plan. Participants in these plans were grandfathered if, as of December 31, 1998, they had attained age fifty or completed at least twenty years of service calculated under the terms of the predecessor plan. (Naylor Decl., Ex. 3 at PHI001543). Employees qualifying for a grandfathered benefit would then have their retirement benefits calculated under the terms of the predecessor plan provided that they terminated employment on or before December 31, 2008. (Naylor Decl., Ex. 3 at PHI001557-1558). The plaintiffs did not qualify for grandfathered benefits as they did not meet the requisite age and service requirements. (D.I. 1 ¶ 23; D.I. 38; ¶ 23; Naylor Decl., Ex. 4, ¶ 21; D.I. 39 ¶ 21).

Prior to the effective date of the Conectiv Cash Balance Sub-Plan, in the Spring and in December of 1998, Conectiv issued two brochures concerning the pension plan conversion. (D.I. 1 ¶¶ 30, 34; D.I. 38 ¶¶ 30, 34). Significantly, defendants' disclosures did not inform the participants that they might suffer adverse effects due to the change. Instead, the materials emphasized the benefits of the new arrangement, and indicated that the plan was designed to protect the interests of older workers through grandfathering. (Naylor Decl., Ex. 5 at JMC00001-5).

From January 1, 1999 through the present, each of the plaintiffs has been a participant in the Cash Balance Sub-Plan of the Conectiv Retirement Plan, currently the Pepco Holdings Retirement Plan.[2] (D.I. 1 ¶ 24; D.I. 38 ¶ 24; Naylor Decl., Ex. 4 ¶ 22; D.I. 39 ¶ 22). The pension benefits that they have accrued since that date have been governed by the formula under that plan, which has three different components: Pay Credits; Transition Credits; and Interest Credits. (Naylor Decl., Ex. 3 at PHI001555-1557). The Pay Credits and Transition Credits are calculated as a percentage of each participant's compensation for the year. (Naylor Decl., Ex. 3 at PHI001555-1556, 1557). The Interest Credits are tied to the thirty-year Treasury rate. (Naylor Decl., Ex. 3 at PHI001543, 1556-1557). From

---

[2]    On August 1, 2002, Conectiv became a wholly-owned subsidiary of Pepco Holdings. (D.I. 1 ¶ 29; D.I. 38 ¶ 29). Thereafter, Pepco Holdings merged the Pepco General Retirement Plan (a defined benefit pension plan maintained by one of its subsidiaries) and the Conectiv Retirement Plan to create the Pepco Holdings Retirement Plan. (D.I. 1 ¶ 29; D.I. 38 ¶ 29). The formation of the Pepco Holdings Retirement Plan did not alter the manner in which benefits were expressed for participants in the Conectiv Retirement Plan. (D.I. 1 ¶ 29; D.I. 38 ¶ 29).

January 1, 1999 to the present, each of the plaintiffs has had their benefits under the Cash-Balance Sub-Plan of the Conectiv Retirement Plan expressed in the form of their account balance. The account balance consists of their opening balance plus the Pay Credits, Interest Credits, and Transition Credits that they earned since January 1, 1999. (D.I. 1 ¶ 38; D.I. 38 ¶ 38).

Plaintiffs have alleged that because the Conectiv Cash Balance Sub-Plan is a defined benefit plan, its compliance with ERISA's substantive accrual requirements is measured by the annuity benefit that would be payable at age 65, not the account balance. (D.I. 1 ¶ 39). When the Plaintiffs' account balances are converted to annuity form, it becomes apparent that their accrued benefits fluctuated. For example, "in 1999 and 2000 Plaintiff Charles' accrued benefit increased. Thereafter, it subsequently decreased in three consecutive years:  in 2001, his accrued benefit decreased by 4.006%; in 2002, it decreased by 6.932%; and in 2003, it decreased by 2.774%." (D.I. 1 ¶ 41). In 2004, Mr. Charles' accrued benefit increased by 8.43%, but it remains lower than his accrued benefit at the end of 2000. (D.I. 1 ¶ 41). Plaintiffs Ward, Fink and Troup had similar experiences. (D.I. 1 ¶ 41 and Naylor Decl., Ex. 4, ¶ 39).

Plaintiffs Charles, Ward, Fink and Troup are asserting three active claims for relief. First, they assert the Cash Balance Sub-Plan violated the minimum accrual requirements of Section 204(b) of ERISA because the Cash Balance Sub-Plan does not satisfy any of the three alternative tests provided by Section 204(b)(1)(A), (B), (C). Second, Plaintiffs assert that the Cash Balance Sub-Plan

violates Section 204(b)(1)(G) of ERISA because it permits the accrued benefit of a

participant to be reduced in subsequent years. Third, Plaintiffs assert that the

Cash Balance Sub-Plan violates Section 204(h) of ERISA because defendants

failed to give the requisite notice relating to the amendment of the predecessor

plans.[3] Plaintiffs seek a broad range of declaratory and equitable relief based

upon these claims.

The two complaints allege slightly different class definitions. In the *Charles*

action, the class definition was "all persons who have had their accrued benefits

determined pursuant to the terms of the Cash Balance Sub-Plan of the Conectiv

Retirement Plan and do not qualify for a grandfathered benefit, and their

beneficiaries." (D.I. 1, ¶ 10). The *Troup* complaint defined the class to include

participants who were eligible for grandfathered benefits but would not reach

normal retirement age prior to the time when the grandfathered benefits expired.

(Naylor Decl., Ex. 4, ¶ 8).

---

[3]     In Count III of their complaints, the Plaintiffs have alleged that the Plan
violates Section 204(b)(1)(H) of ERISA because the rate at which a participant
accrues benefits under the Cash Balance Sub-Plan is reduced as the participant's
age increases. This claim has been stayed.

# IV. ARGUMENT

### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE GRANTED.

Plaintiffs Charles, Ward, Fink and Troup seek certification of the

following class under Rules 23(a) and (b) of the Federal Rules of Civil Procedure:

> All persons who have had their accrued benefit determined
> pursuant to the terms of the Cash Balance Sub-Plan of the Conectiv
> Retirement Plan and their beneficiaries. Excluded from the Class
> are those persons who qualified for the grandfathered benefit and
> who will reach Normal Retirement Age on or before December 31,
> 2008, along with their beneficiaries (the "Class").

"Class actions serve an important function in our system of civil justice."

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). Class actions permit plaintiffs to

"vindicat[e] the rights of individuals" who might not have initiated litigation, "in

which the optimum result might be more than consumed by the cost." *Deposit*

*Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980). Courts do not hesitate to grant

class certification for actions seeking relief for wrongful denial of benefits, breach

of fiduciary duties and claims based on ERISA, when the defendants have acted

on grounds generally applicable to a particular class.[4]

In considering whether a case is appropriate for class treatment, the Court

may need to look beyond the pleadings, but the purpose is not to address the

substantive merits of the case. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith,*

---

[4]    *See Brytus v. Spang & Co.*, 203 F.3d 238, 240-241 (3d Cir. 2000); *Mulder v. PCS
Health Sys.*, 216 F.R.D. 307 (D.N.J. 2003); *Babcock v. Computer Assoc. Int'l.*, 212
F.R.D. 126 (E.D.N.Y. 2003); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386
(E.D. Pa. 2001); *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39 (D.N.J. 1986);
*Wilson v. Sullivan*, 709 F. Supp. 1351, 1356 (D.N.J. 1989) (*citing Wilson v. Heckler*,
622 F. Supp. 649 (D.N.J. 1985)).

9

*Inc.*, 259 F.3d 154, 166-67 (3d Cir. 2001); *American Seed Co., Inc. v. Monsanto Co.*, 2006 WL 3276831, *2 (D. Del. Nov. 13, 2006).

This case is plainly appropriate for class treatment under Rule 23, as it presents uniform legal questions regarding the legality of the Cash Balance Sub-Plan. Indeed, other courts faced with similar cases have readily concluded that class certification was appropriate. *See Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165, 168, 176 (D. Conn. 2006); *Amara v. CIGNA Corp.*, 2002 WL 31993224, *1, *4 (D. Conn. Dec. 20, 2002). The claims of the Plaintiffs and the members of the Class arise out of the same transaction by defendants, and a common body of evidence is relevant to the claims of all Plaintiffs and Class members. Thus, as we demonstrate below, all the requirements under Rule 23 are satisfied, and the Court should grant Plaintiffs' motion for class certification.

**A.      The Proposed Class Satisfies the Requirements of Rule 23(a).**

**1.      *The Class Is So Numerous that Joinder of All Members Is Impracticable.***

Rule 23(a)(1) requires that the members of a class be "so numerous that joinder of all members is impracticable." FED R. CIV. P. 23(a)(1). There is no fixed number of class members that satisfies this requirement, but, generally, "if the named plaintiff demonstrates that the potential number of Plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) (*citing* 5 MOORE'S FEDERAL PRACTICE § 23.22[3][a] (3d ed. 1999)). *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990). While the exact number of Class members is currently not known to plaintiffs, according to the

10

Internal Revenue Service Form 5500 Annual Report for the Conectiv Retirement Plan for calendar year 2002, there were over 3,399 active participants in the Conectiv Retirement Plan. (D.I. 1 ¶ 11; D.I. 38 ¶ 11). While not all of these individuals are participants in the Cash Balance Sub-Plan, it appears that the Class will number in the hundreds, if not the thousands.

Courts in this Circuit have routinely certified smaller classes. *See Malloy v. Eichler*, 628 F. Supp. 582, 590 (D. Del. 1986) (class of at least 30 persons met numerosity requirement); *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 95 F.R.D. 168, 174 (D. Del. 1982) (up to 96 members); *see also Simon v. KPMG LLP*, 2006 WL 1541048, *5 (D.N.J. June 2, 2006) (presence of 250 "geographically diverse plaintiffs supports an inference that joinder would be impracticable"); *Godshall v. Franklin Mint Co.*, 2004 WL 2745890, *2 (E.D. Pa. Dec. 1, 2004) (finding proposed class of 112 members in an ERISA case is "sufficiently large that joinder of all members would be impracticable"); *Clauser v. Newell Rubbermaid, Inc.*, 2000 WL 1053395, *3 (E.D. Pa. July 31, 2000) (class of more than 600 satisfied the numerosity criteria); *Feret v. Corestates Fin. Corp.*, 1998 WL 512933, *6 (E.D. Pa. Aug. 18, 1998) (class of more than 200 satisfied numerosity criteria). As the Class includes hundreds, if not thousands of members, the numerosity requirement is met here.

   2.    ***There Are Questions of Law and Fact Common to the Class.***

Under Rule 23(a)(2), to be maintained as a class action, an action must involve common issues of law or fact. FED. R. CIV. P. 23(a)(2). This requirement is

11

satisfied by a showing that "the questions of law or fact linking the class members are substantially related to the resolution of the litigation, even though the individuals are not identically situated." *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 372 (D. Del. 1990) (citations omitted). This is not a difficult requirement, as the Third Circuit has held that a *single* common issue of law or fact suffices. *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 247 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004). Thus, a class does not have to share every question of law and fact. *Baby Neal*, 43 F.3d at 56. Nor will a mere need to resolve "individual facts and circumstances" defeat commonality. *See Baby Neal*, 43 F.3d at 56-57; *In re IKON Office Solutions, Inc.*, 191 F.R.D. 457, 463 (E.D. Pa. 2000). "The differing degree and nature of the plaintiffs' injuries also do not preclude a finding of commonality." *Baby Neal*, 43 F.3d at 61.

Commonality exists in this action, since all Class members were participants in defined benefit pension plans that were converted from a final average pay plan to a single cash balance plan. This action raises basic questions about the legality of the current plan that are common to all members of the Class. *See Amara*, 2002 WL 31993224 at *3. Rule 23(a)(2) requires only a showing of the existence of common questions of law *or* fact. This requirement is undeniably satisfied in this case, which presents numerous common questions of law *and* fact.

**3.    *The Claims of the Plaintiffs Are Typical of the Claims of the Class.***

Rule 23(a)(3) requires that the claims asserted by a plaintiff on behalf of a proposed class be typical of the claims of the other members of the class. FED. R. CIV. P. 23(a)(3). The typicality requirement under Rule 23(a)(3) assesses "whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal*, 43 F.3d at 57. The appropriate alignment between the representative plaintiffs and absent class members generally exists when the representative plaintiffs challenge an unlawful course of conduct that affected both the plaintiffs and the absent class members. *Id.* at 58.

The representative parties' claims are generally found to be typical if they arise from the same events or course of conduct and are based upon the same legal theories as the claims of the other class members. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992); *Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 250. Accordingly, "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal*, 43 F.3d at 58; *see also Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 395 (E.D. Pa. 2001).

Here, the claims of Plaintiffs and of all members of the Class plainly arise out of the same course of conduct by Defendants; the same chain of events affects all of them. Plaintiffs' claims are typical of the claims of the Class, since all Class

members have had their accrued benefit determined under the Conectiv Cash

Balance Sub-Plan effective January 1, 1999 instead of a predecessor plan.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Before certifying a class, the Court must find that "the representative

parties will fairly and adequately protect the interests of the class." FED. R. CIV.

P. 23(a)(4). The adequacy requirement has two related elements: the interests of

the named plaintiffs must be sufficiently aligned with those of the class

members; and class counsel must be qualified, experienced and generally

capable of serving the interests of the entire class. *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 635 (1997); *see also Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247

(3d Cir. 1975); *Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 250.

A determination of the adequacy of a named plaintiff as a class

representative often follows from the analysis of the commonality and typicality

requirements, which tend to merge together to establish that the representative

plaintiffs' claims are typical enough of the class-wide claims that the

representatives will adequately represent the interests of the class. *See Newton v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d at 185.

Both prongs of the adequacy test are readily satisfied here. First, there is

nothing to suggest that any of the Plaintiffs has any interest antagonistic to the

vigorous pursuit of the claims against defendants on behalf of all members of the

Class. Plaintiffs share with the Class an interest in establishing that the Cash

Balance Sub-Plan violates ERISA. Second, Plaintiffs have retained counsel

experienced in litigation of this type. Accordingly, the adequacy requirement is satisfied here.

### B.    The Class Satisfies Rule 23(b).

In addition to meeting the prerequisites of Rule 23(a), parties seeking class certification must also show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem Prods.*, 521 U.S. at 614. Here, class certification should be granted because this action satisfies the requirements set forth in Rule 23(b)(1)(A), (B), Rule 23(b)(2), *and* Rule 23(b)(3). Certification under either Rule 23(b)(1) or 23(b)(2) provides for a "mandatory" class, under which class members would be precluded from opting-out of the action to "pursue separate litigation that might prejudice other class members or the defendant." *Bunnion v. Conrail*, 1998 WL 372644, *13 (E.D. Pa. May 14, 1998). In contrast, in cases certified under Rule 23(b)(3) class members must be given the ability to opt out of the class. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 844 (1999).

When a lawsuit can be certified under Rules 23(b)(1) or 23(b)(2), as well as under Rule 23(b)(3), certification should be made under Rule 23(b)(1), Rule 23(b)(2), or both. *Wetzel*, 508 F.2d at 253; *see also Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990). Since certification is appropriate here under Rules 23(b)(1), 23(b)(2), and 23(b)(3), a class maintained under Rule 23(b)(1), Rule 23(b)(2), or both, is the preferred method.

**1.    *The Class Meets the Requirements of Rule 23(b)(1).***

Plaintiffs' claims are appropriate for certification under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B). To maintain a class action under Rule 23(b)(1)(A), the named Plaintiffs must show that "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." FED. R. CIV. P. 23(b)(1)(A); *see Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. at 397. Rule 23(b)(1)(A) is properly used "to obviate the actual or virtual dilemma which would . . . confront the party opposing the class" if separate lawsuits were decided differently so as to result in "incompatible standards" for that opposing party. FED. R. CIV. P. 23(b)(1)(A), Advisory Committee's Note.

Subsection 23(b)(1)(A) "has been construed as requiring a party seeking certification to establish that there is a realistic possibility that separate actions involving the same subject matter will be brought in the absence of a class action." 5 MOORE'S FEDERAL PRACTICE § 23.41[1]; *see Bunnion*, 1998 WL 372644 at *13. Moreover, "[c]ertification pursuant to Rule 23(b)(1)(A) is appropriate if it would be inconsistent and damaging to Defendants to have portions of an ERISA plan interpreted in different ways by different courts." *Bunnion*, 1998 WL 372644 at *13 (citations omitted); *see also Thomas*, 201 F.R.D. at 397. Class actions which have been successfully certified under Rule 23(b)(1)(A) share many of the

following characteristics: (1) the suit challenges conduct of defendants who are required by law to deal with all class members uniformly, (2) the relief being sought is injunctive and monetary, and (3) other individual suits are pending or are realistically expected to be filed. *See In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 174 F.R.D. 332, 354 (D.N.J. 1997). In *Richards v. FleetBoston Fin. Corp.*, 2006 WL 2979373, \*9 (D. Conn. Oct. 16, 2006), the United States District Court for the District of Connecticut concluded that a dispute arising from conversion to a cash balance plan was properly certified under Rule 23(b)(1)(A).

Rule 23(b)(1)(B) applies where individual cases would "as a practical matter be dispositive of the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests." FED. R. CIV. P. 23(b)(1)(B). Rule 23(b)(1)(B) also has been a frequent basis for certification of a class in ERISA cases challenging the conduct of plan representatives alleged to violate plan terms or statutory rights. As Judge Yohn concluded in certifying the class in *Thomas* under Rule 23(b)(1)(B), when breach of fiduciary duties are at issue "[a]ny decision regarding whether Defendants breached their fiduciary duty would necessarily affect the interests of the other participants." 201 F.R.D. at 397.

The same would be true of any decision on the question whether the Cash Balance Sub-Plan was unlawful. In the absence of class action treatment, suits could be brought by participants in a variety of different courts. The prosecution of separate actions, in separate courts, by individual members of the Class would

17

create a risk of inconsistent or varying adjudications, resulting in incompatible standards of conduct for Defendants. Alternatively, these individual actions could be dispositive of the interests of other affected participants by virtue of the *stare decisis* effects of the rulings. Therefore, this action should be certified for class treatment under Rule 23(b)(1)(A) and Rule 23(b)(1)(B).

## 2.    *The Class Meets the Requirements of Rule 23(b)(2).*

Plaintiffs' claims also are appropriate for certification under Rule 23(b)(2). Rule 23(b)(2) permits an action to be maintained as a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2).

To satisfy the requirements of Rule 23(b)(2), "the putative class must demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of res judicata." *Hassine*, 846 F.2d at 179; *see also Mulder v. PCS Health Systems, Inc.*, 216 F.R.D. 307, 318-19 (D.N.J. 2003). Such a showing is made when the conduct giving rise to the action results from a policy or course of conduct generally applicable to all members of the class. *Hurt v. Philadelphia Hous. Auth.*, 151 F.R.D. 555, 560-61 (E.D. Pa. 1993) ("If Plaintiffs can, upon discovery, demonstrate a policy or course of conduct generally applicable to all members of the class, then they have, in fact, met the requisites of Rule 23(b)(2)"). A factual dispute about the existence of a

pattern of conduct does not preclude certification. *Thomas*, 201 F.R.D. at 397. In addition, to satisfy the requirements of Rule 23(b)(2), the complaint must seek relief which is predominantly injunctive or declaratory. *Id.* Certification of an ERISA claim is proper under Rule 23(b)(2) where monetary relief, in conjunction with injunctive relief, is sought. *Mulder*, 216 F.R.D. at 320.

All of these factors are present here. Plaintiffs are seeking declaratory and injunctive relief resulting from defendants' common course of conduct. The rights of all members of the Class are currently governed by the terms of the Cash Balance Sub-Plan, which the defendants elected to impose upon them. Other courts have found that similar cases are proper for certification under Rule 23(b)(2): in both *Richards* and *Amara,* cash balance plan challenges were certified under Rule 23(b)(2). *See Richards,* 235 F.R.D. at 176; *Amara,* 2002 WL 31993224 at *4. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby satisfying the requirements of Rule 23(b)(2).

### 3. *The Class Meets the Requirements of Rule 23(b)(3).*

Alternatively, class certification also would, if necessary, be appropriate under Rule 23(b)(3). Where certification is sought pursuant to Rule 23(b)(3), the Court must find "that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Class satisfies the requirements of Rule 23(b)(3).

a.    Predominance

In applying Rule 23(b)(3), "[t]he predominance test is not a numerical test and does not require the court to add up the common issues and the individual issues and determine which is greater." *Deutschman,* 132 F.R.D. at 375. The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification; instead, questions affecting only individual members of the class simply should have lesser overall significance than the issues common to the class, and the questions for litigation must be manageable within the context of a class action. *See Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir. 1985); *Hassine v. Jeffes,* 846 F.2d 169, 176-77 (3d Cir. 1988); *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 453 (D.N.J. 1998).

The predominance requirement is met if "the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members." *Deutschman,* 132 F.R.D. at 375. In ERISA cases in particular, predominance is found where each class member seeks relief under the same law, claims arise from the same practice, and where liability will be established by proof of the same breach of duty. *See Gilman v. Independence Blue Cross,* 1997 WL 633568, *6 (E.D. Pa. Oct. 6, 1997) (stating that "the legal and factual questions that qualify each class member's case as a genuine controversy are all common to the entire class and predominate over individual issues" where "each class member seeks relief under the same law: ERISA and/or Pennsylvania common law"); *Sutton v.*

20

*Medical Servs. Ass'n*, 1993 WL 64565, *4 (E.D. Pa. Mar. 5, 1993) (finding that Rule 23(b)(3) is satisfied where "the claims of all members of the class will have arisen from the same practice of Pennsylvania Blue Shield and, if proven, will be established by proof of the same breach of its duties under ERISA. Thus, common questions of law and fact will predominate over any questions affecting individual members").

        b.  <u>Superiority</u>

Rule 23(b)(3) also requires that the Court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Courts have long recognized that a class action is superior to other available methods, particularly individual lawsuits, for the fair and efficient adjudication of a dispute that affects a large number of persons injured by the common act of a defendant. In this case, Plaintiffs allege that Defendants have caused (and continue to cause) identical harm and injury to a large number of individuals covered by the same pension plan. Defendants owed duties to all members of the Class, and they allegedly breached those duties by imposing the Cash Balance Sub-Plan upon Class members.

A class-wide adjudication of this dispute is plainly superior to individual litigation. First, looking at the "relatively modest size of individual claims and the sheer volume of those claims in the aggregate," a class action presents the "only rational avenue of redress for many class members." *In re Prudential Ins.*

*Co. of America Sales Practices Litig.*, 148 F.3d 283, 316 (3d Cir. 1998). Second, the

existence of these two actions weighs in favor of class certification, as the issues

will be adjudicated and it is more efficient to do so on a class-wide basis. Third,

Plaintiffs' claims are appropriately pursued in this district, because the relevant

pension plan is administered, in whole or in part, in this district, the violations of

law alleged in this action occurred (in whole or in part) in this district, and

defendants do business and are found in this district. *In re Prudential Ins. Co. of

America*, 148 F.3d at 316. Finally, no anticipated difficulties exist which would

render this action unmanageable as a class action.

Thus, the alternative to a class action is either no recourse for thousands of

affected pension plan participants, or a multiplicity of suits, resulting in the

inefficient administration of justice. Accordingly, a class action is superior to the

other available methods for fair and efficient adjudication of this controversy,

within the meaning of Rule 23(b)(3). *Georgine v. Amchem Prods.*, 83 F.3d 610, 625

(3d Cir. 1996), *aff'd sub nom., Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).

Consequently, the Class may properly be certified under Rule 23(b)(3).

## C.    Plaintiffs' Counsel Should Be Appointed Class Counsel.

When certifying a class under Rules 23(a) and (b), a court must also

appoint class counsel under Rule 23(g). FED. R. CIV. P. 23(g)(1)(A). Rule 23(g)

mandates that a court appoint class counsel who will "fairly and adequately

represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). Rule 23(g) further

requires the court to consider the following four factors in appointing class counsel:

- the work counsel has done in identifying or investigating potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class;

*See* FED. R. CIV. P. 23(g)(1)(C)(i). In considering these factors, courts in this Circuit review evidence submitted by plaintiffs' counsel. *See McCall v. Drive Financial Services, L.P.*, 236 F.R.D. 246, 255 (E.D. Pa. 2006); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006).

This matter did not result from a governmental investigation. Instead it is the result of the investigation conducted by counsel on behalf of their clients. Plaintiffs' counsel have submitted a declaration addressing the work that they have undertaken in this matter, as well as biographical material on the attorneys. (Naylor Decl., Exs. 6, 7). The Court has had an opportunity to review the work of Plaintiffs' counsel in administering this action to date, giving it the opportunity to assess their knowledge of the applicable law and the quality of their work. In light of the relevant factors, Plaintiffs' counsel should be appointed to represent the Class.

## V. CONCLUSION

Based upon the arguments and authorities set forth above, Plaintiffs respectfully request that their motion for class certification be granted. A proposed order setting forth the class issues, claims and defenses has been submitted.[5]

Respectfully submitted,

Dated: January 11, 2007

**CHIMICLES & TIKELLIS LLP**

By:___ /s/ A. Zachary Naylor_____
Pamela S. Tikellis (#2172)
Robert J. Kriner (#2546)
A. Zachary Naylor (#4439)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
302-656-2500 (telephone)
302-656-9053 (fax)

and

James R. Malone, Jr.
(*pro hac vice*)
Joseph G. Sauder
(*pro hac vice*)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 (telephone)
610-649-3633 (fax)

Attorneys for Plaintiffs

---

[5]    *See Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 184-85 (3d Cir. 2006).