# Exhibit 3

PART ONE

CONECTIV CASH BALANCE SUB-PLAN

Effective January 1, 1999

PHLEGAL: #663223 v5 (#7qv05LWPD)

PHI001538

## TABLE OF CONTENTS

Page

PREAMBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE 1 -- DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARTICLE 2 -- ELIGIBILITY FOR PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . 14
    2.1 Continuing Participants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    2.2 New Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    2.3 Transferred Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE 3 -- ACCOUNTS AND CREDITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    3.1 Establishment of Cash Balance Account. . . . . . . . . . . . . . . . . . . . . . 15
    3.2 Initial Cash Balance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    3.3 Pay Credits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    3.4 Interest Credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    3.5 Transition Credits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    3.6 Grandfather Benefit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARTICLE 4 -- ELIGIBILITY FOR RETIREMENT . . . . . . . . . . . . . . . . . . . . . . . . 20
    4.1 Dates of Eligibility for Retirement Benefits . . . . . . . . . . . . . . . . . . . 20

ARTICLE 5 -- AMOUNT OF RETIREMENT INCOME . . . . . . . . . . . . . . . . . . . . . 21
    5.1 Normal Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    5.2 Terminated Vested Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . 21
    5.3 Deferred Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    5.4 Required Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    5.5 Disability Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    5.6 Employment After Normal Retirement Age . . . . . . . . . . . . . . . . . . . . 22

ARTICLE 6 -- FORMS OF PAYMENT; SURVIVOR BENEFITS . . . . . . . . . . . . . . . . . 24
    6.1 Normal Form of Retirement Income . . . . . . . . . . . . . . . . . . . . . . . . 24
    6.2 Pre-Retirement Survivor's Benefits . . . . . . . . . . . . . . . . . . . . . . . . 25
    6.3 Grandfather Survivor Benefit. . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    6.4 Form of Retirement Income for Former Employees of Conowingo Power Company 26
    6.5 Mandatory Lump Sum Distributions. . . . . . . . . . . . . . . . . . . . . . . . 26
    6.6 Optional Forms of Benefit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

PHI001539

PREAMBLE TO PART ONE

The Conectiv Cash Balance Sub-Plan (the "CB Sub-Plan") is Part One of the Conectiv Retirement Plan (the "Plan"). Provisions generally applicable to this Part One and the other Parts are contained in the Base Plan.

Delmarva Plan Participants or ACE Plan Participants who retired on a Retirement Date or who terminated their employment with the Employer prior to January 1, 1999, must look solely to the Prior Plan provisions in effect on their Retirement Date or termination of employment date for their Retirement Income, if any, except as specifically provided otherwise in the CB Sub-Plan.

PHI001540

# ARTICLE 1
## DEFINITIONS

The following words and phrases as used herein shall have the following meanings, unless a different meaning is plainly required by the context:

1.1  Accrued Benefit means the greater of:

      1.1.1.  The Participant's Payable Cash Balance, converted to an Actuarially Equivalent single life annuity that is payable as of the determination date; or

      1.1.2.  The Participant's Minimum Benefit, stated as a life annuity commencing as of the determination date.

1.2  ACE Plan has the meaning ascribed to it in the Base Plan.

1.3  Actuarial Equivalent or Actuarially Equivalent means of equal actuarial value on the basis of the assumptions and factors described in Schedule A.

1.4  Affiliated Company has the meaning ascribed to it in the Base Plan.

1.5  Annuity Starting Date has the meaning ascribed to it in the Base Plan.

1.6  Board of Directors has the meaning ascribed to it in the Base Plan.

1.7  Cash Balance Account means the bookkeeping account maintained with respect to a Participant in accordance with Section 3.1 which is the sum of, as applicable, (a) the Initial Cash Balance, (b) Pay Credits, (c) Interest Credits and (d) Transition Credits.

1.8  CB Sub-Plan has the meaning ascribed to it in the Base Plan.

1.9  Code has the meaning ascribed to it in the Base Plan.

1.10  Committee has the meaning ascribed to it in the Base Plan.

1.11  Company has the meaning ascribed to it in the Base Plan.

1.12  Compensation paid to a Participant by the Employer means any amounts paid as salary, overtime, shift differential or bonus, including elective deferrals to plans described under Code Sections 401(k) and 125, and excluding contributions the Employer makes to this or any other benefit plan, any amounts paid in the form of fringe benefits (including but not limited to reimbursed moving expenses, insurance, and the like; provided, however, that meal allowances shall not be excluded as fringe benefits) and any dividend rights earned under any

-3-

PHI001541

executive compensation plan of the Company even though such amounts may be taxable for federal income tax purposes. In determining whether a payment is includible under this definition, the rules for the safe harbor definition set forth in Treas. Reg. § 1.415-2(d)(10), as adjusted by Treas. Reg. §§ 1.414(s)-1(c)(3) and (4) shall be applied. Notwithstanding the foregoing, Compensation taken into account for a Participant shall not exceed the annual limitation specified by section 401(a)(17) of the Code and shall be modified to reflect adjustments in the limitation announced by the Secretary of the Treasury at the same time and in the same manner as under section 415(d) of the Code.

1.13  Continuous Service. See "Service."

1.14  Deferred Retirement Date means the first day of the month coincident with or next following the Participant's election to retire from employment with the Employer after attaining Normal Retirement Age. A Participant who elects to commence receipt of retirement benefits while remaining employed on or after attainment of age 70½ shall be deemed to have a Deferred Retirement Date as of the commencement of such in-service benefits.

1.15  Delmarva Plan has the meaning ascribed to it in the Base Plan.

1.16  Disability Retirement Date means the first day of a month coincident with or next following the date a Participant elects to retire from employment as a Non-Bargaining Unit Employee by reason of sickness or injury after (a) completing at least fifteen (15) Years of Service; (b) becoming permanently incapable of performing the duties of any position with the Employer with the degree of efficiency required by the Employer; and (c) providing to the Committee satisfactory medical evidence of disability.

1.17  Effective Date has the meaning ascribed to it in the Base Plan.

1.18  Employee has the meaning ascribed to it in the Base Plan.

1.19  Employer has the meaning ascribed to it in the Base Plan.

1.20  Employment Commencement Date. See "Service."

1.21  Entry Date has the meaning ascribed to it in the Base Plan.

1.22  ERISA has the meaning ascribed to it in the Base Plan.

1.23  Final Average Compensation means:

1.23.1. For purposes of determining the 650% limit on the Payable Cash Balance, the annualized sum of the Participant's highest five (5) consecutive calendar years of Compensation divided by five (5); provided, that if the Participant does not have five (5)

-4-

PHLEGAL: #663223 v5 (#7qv05l.WPD)

PHI001542

consecutive calendar years of Compensation, Final Average Compensation shall be determined using Compensation for all Years of Service with the Employer divided by all Years of Service with the Employer; provided further, that if a Participant has less than 12 months of Service, Final Average Compensation shall equal Compensation paid to the Participant by the Employer.

1.23.2. For purposes of determining the Grandfather Benefit, the sum of Compensation for the periods in the following subsections (i) through (iii) divided by five (5): (i) the last four (4) completed calendar years prior to the determination date; (ii) the completed months in the calendar year in which the determination date occurs; and (iii) that number of months occurring prior to the four (4) calendar years prior to the determination date that is equal to 12 minus the number of months in the preceding subsection (ii); provided, that if the Employee identifies another consecutive sixty (60) month period which produces a larger Final Average Compensation, Compensation from that period shall be used to calculate Final Average Compensation.

1.24  Grandfather Benefit means the benefit determined in accordance with Section 3.6.

1.25  Grandfathered Participant means a Prior Plan Participant who is (1) an Employee on the Effective Date and (2) as of the Effective Date (a) is credited with 20 or more Years of Benefit Service or (b) is at least age 50.  A Bargaining Unit Employee who becomes eligible to participate in the CB Sub-Plan pursuant to Section 2.3 shall be a Grandfathered Participant if such Bargaining Unit Employee met the eligibility requirements of the preceding sentence as of the Effective Date.

1.26  Grandfather Period means the period from the Effective Date until the earlier to occur of a Grandfathered Participant's Severance from Employment Date or December 31, 2008.

1.27  Grandfather Survivor Benefit is the benefit determined in accordance with Section 6.3.

1.28  Hour of Service.  See "Service."

1.29  Initial Cash Balance means the amount determined pursuant to Section 3.2.

1.30  Interest Crediting Rate means, for each Plan Year, the 30-year Treasury Bond rate for the October immediately preceding the beginning of the Plan Year.

1.31  Interest Credits means the amount that is credited to a Participant's Cash Balance Account in accordance with Section 3.4.

1.32  Leased Employee has the meaning ascribed to it in the Base Plan.

-5-

PHLEGAL: #663223 v5 (#7qv05!.WPD)

1.33  Minimum Benefit means the greater of:

1.33.1. The Participant's accrued benefit under the Prior Plan as of December 31, 1998, stated as a life annuity commencing at age 65; provided, that for Prior Plan Participants who transfer to Non-Bargaining Unit Employee status after the Effective Date, the accrued benefit under the Prior Plan shall be determined as of the first anniversary of the date of transfer; provided further, that if the Employee identifies a consecutive 60-month period, other than the 60-month period preceding the Effective Date or, if applicable, the first anniversary of the date of transfer, which produces a larger Minimum Benefit, Compensation from that period shall be used to calculate the Minimum Benefit; or

1.33.2. The Participant's Grandfather Benefit.

1.34  Non-Bargaining Unit Employee has the meaning ascribed to it in the Base Plan.

1.35  Normal Retirement Age means the date upon which a Participant attains age 65.

1.36  Normal Retirement Date means the first day of a month coincident with or next following the date a Participant elects to retire from employment with the Employer upon attaining Normal Retirement Age.

1.37  One Year Break in Service.  See "Service."

1.38  Participant has the meaning ascribed to it in the Base Plan.

1.39  Part-Time Employee.  See "Service."

1.40  Payable Cash Balance means, as of any determination date, the lesser of (a) the Participant's Cash Balance Account at the determination date or (b) 650% of Final Average Compensation as of such date.

1.41  Pay Crediting Rate means the rate determined in accordance with Section 3.3.2.

1.42  Pay Credits means amounts which are credited to a Participant's Cash Balance Account in accordance with Section 3.3.

1.43  Permanent Break in Service.  See "Service."

1.44  Plan Year has the meaning ascribed to it in the Base Plan.

-6-

PHI001544

1.45  Post-65 Disability Benefit is the benefit payable upon a Participant's Disability Retirement Date in accordance with Section 5.4.2.

1.46  Pre-Cash Balance Accrued Benefit means accrued benefit under the Prior Plan as of December 31, 1998 assuming that the Compensation used to determine such accrued benefit is the Compensation for the consecutive 60-month period ending on December 31, 1998.

1.47  Pre-65 Disability Benefit is the benefit payable upon a Participant's Disability Retirement Date in accordance with Section 5.4.1.

1.48  Prior Plan has the meaning ascribed to it in the Base Plan.

1.49  Prior Plan Conversion Credit means (a) the actuarial present value of the Pre-Cash Balance Accrued Benefit at earliest retirement age, determined using seven percent (7%) interest and the 1983 GAM unisex mortality table; (b) for Participants who have not reached earliest retirement age as of December 31, 1998, discounted from the earliest retirement age to the Participant's age at December 31, 1998 at seven percent (7%) interest, but no mortality discount; (c) multiplied by the applicable early retirement reduction factor pursuant to the terms of the Prior Plan; and (d) for a Participant in the Delmarva Plan, increased by thirteen percent (13%) to reflect the adjustment for the subsidized survivor annuity under the Delmarva Plan.

1.50  Reemployment Commencement Date. See "Service."

1.51  Required Beginning Date has the meaning ascribed to it in the Base Plan.

1.52  Retirement Date means a Participant's Normal Retirement Date, Terminated Vested Retirement Date, Deferred Retirement Date or Disability Retirement Date.

1.53  Retirement Income means the retirement benefits provided to a Participant upon his Retirement Date, or, if applicable the survivor benefits provided to any survivor.

1.54  Service.

1.54.1. General Rules.  Years of Service shall be credited as provided in this Section.

(a)    Service will be credited for an Employee's entire period of employment as an Employee.

(b)    An Employee shall receive credit for all service credited to an Employee pursuant to the terms of the Prior Plan, provided such Employee is an Employee on the Effective Date. If an Employee is not an Employee on the Effective Date but has a

-7-

PHI001545

Reemployment Commencement Date prior to incurring a Permanent Break in Service, then credit for Service prior to the Break shall be restored. If the Employee has a Reemployment Commencement Date prior to incurring a One-Year Break in Service, such Employee shall be credited with the Service between his Severance from Employment Date and his Reemployment Commencement Date.

(c)     Conectiv Thermal Systems, Inc. and Atlantic Energy Enterprises, Inc. Provisions.

(i)     Solely for purposes of determining eligibility for a Grandfather Benefit, Participants who (A) were formerly employed by Atlantic City Electric Company; (B) immediately thereafter were employed by Conectiv Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc.; and (C) on the Effective Date were employed by Conectiv Thermal Systems, Inc., Atlantic Energy Enterprises, Inc. or Conectiv Resource Partners, shall be credited with their Years of Service for any and all of such companies. However, their Grandfather Benefit shall be calculated solely on the basis of their prior service with (and compensation from) Atlantic City Electric Company plus their Service under this Part on and after the Effective Date (as if such Service were contiguous).

(ii)     Participants who (A) transferred from Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc. to Delmarva Power and Light Company, Atlantic City Electric Company or Conectiv Resource Partners before January 1, 1998, (B) continued to perform services for Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc., and (C) were employed by Delmarva Power and Light Company, Atlantic City Electric Company or Conectiv Resource Partners on the Effective Date, shall become Participants in this Part on the same basis as all other Prior Plan Participants as of the Effective Date, based on their accrued benefits and service credits as calculated under the Prior Plan in which they were participating immediately prior to the Effective Date.

(iii)     All other Participants who are employed by Conectiv Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc. on or after the Effective Date or who transferred from Thermal Systems, Inc. to Delmarva Power and Light Company, Atlantic City Electric Company or Conectiv Resource Partners on or after January 1, 1998, shall receive credit for their Years of Service for all such companies for purposes of calculating vesting service and for eligibility for Transition Credits. Any such Participants who were participating in a Prior Plan immediately prior to the Effective Date shall have a Minimum Benefit as defined in Section 1.33.1, but shall have an Initial Cash Balance equal to zero, subject to the provisions of Section 3.2.3.

(d)     Service will be credited for periods while on authorized leave of absence with full salary (provided the Employee returns to the Employer's employ at the expiration of the authorized leave). Service will not be credited for periods of authorized leave of absence without pay, but such an authorized leave of absence without pay shall not constitute

PHLEGAL: #663223 v5 (#7qv05LWPD)

PHI001546

a break in Service provided the Employee returns to the Employer's employ at the expiration of the authorized leave. A layoff period of less than one (1) year will be considered such a leave of absence without pay.

(e)     Service will also be credited for employment with any employer acquired by the Company on such terms as may be approved by the Board of Directors.

(f)     Notwithstanding any provision of the Plan to the contrary, contributions, benefits and service credits with respect to qualified military service will be provided in accordance with Code section 414(u) in accordance with the Uniformed Services Employment and Reemployment Rights Act of 1994.

(g)     If a Leased Employee becomes an Employee, service will be credited for purposes of eligibility and vesting for periods after December 31, 1988 that the Employee was a Leased Employee.

(h)     Service shall not include Years of Service with respect to which an employee received a mandatory lump sum distribution (excluding a "deemed cash out"), as described in Section 6.5. Further, Service shall be disregarded once a Participant commences receipt of Retirement Income; provided, however, that if a Participant is reemployed, Service shall be considered for purposes of eligibility for Transition Credits.

1.54.2. Elapsed Time Rule: Determination of Years of Service. An Employee will be credited with whole and partial Years of Service on the basis of the elapsed time rule as described in this Section 1.54.2.

(a)     Basic Elapsed Time Rule. Years of Service under the elapsed time rule are based on the passage of time during which the employment relationship exists. One (1) Year of Service is credited for each 365 days of employment (366 days for a period that includes February 29). A day of employment is credited for each day of the period beginning on an Employee's Employment Commencement Date (or Reemployment Commencement Date, if applicable) and ending with his Severance from Employment Date.

(b)     Employment Commencement Date means the first date on which an Employee is credited with Service for the Employer; provided that if an Employee's first day of Service is the first business day of any calendar year, such Employee will be deemed to have been hired on December 31 of the prior year.

(c)     Reemployment Commencement Date means the first date on which an Employee is credited with Service for the Employer following a break in credited Service.

-9-

PHI001547

(d)    <u>Severance from Employment Date</u> means the earlier of (i) the date an Employee quits, is discharged, retires or dies, or (ii) the date 365 days after the date he is first absent from employment for any reason (including e.g., lay off, disability, leave of absence, vacation) provided he is continuously absent from employment for such 365-day period.

(e)    <u>One-Year Break in Service</u>. An Employee will incur a One-Year Break in Service if he is continuously absent from employment for 365 or more days following a Severance from Employment Date.

(f)    <u>Permanent Break in Service</u> means five (5) consecutive One Year Breaks in Service; provided, however, that an Employee who has been credited with five (5) Years of Service shall not thereafter incur a Permanent Break in Service.

1.54.3. <u>Rules For Vesting Purposes Only</u>. The following rules apply for the purposes of vesting:

(a)    <u>Service Spanning Rules</u>. If an Employee's employment is terminated by reason of a quit, discharge, or retirement and the Employee then returns to employment within 365 days of his Severance from Employment Date, he shall be credited with Service during that period of severance. If an Employee severs from Service by reason of a quit, discharge or retirement during an absence from Service of 365 days or less for any reason other than a quit, discharge or retirement and the Employee then returns to employment within 365 days of the date on which he was first absent from Service, he shall be credited with Service during that period of severance.

(b)    <u>Special Rule for Former ACE Plan Participants</u>. If a Non-Bargaining Unit Employee was a Participant in the ACE Plan on December 29, 1998 and is a Non-Bargaining Unit Employee on the Effective Date, such Participant shall, for vesting purposes only, be deemed to have been hired on the January 1 of the Plan Year in which such Participant's Employment Commencement Date or Reemployment Commencement Date occurred.

(c)    <u>Limited Break in Service</u>. An Employee will incur a break in Service if he is continuously absent from employment for 365 or more days following a Severance from Employment Date, unless the Employee establishes that the absence is for maternity or paternity reasons. In such a case, the Employee will not incur a break in Service until he is continuously absent from employment for two consecutive 365-day periods following a Severance from Employment Date. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence on account of (1) the pregnancy of the Employee; (2) the birth of the child of the Employee; (3) the adoption of a child by the Employee; or (4) the immediate post-natal or post-adoption care of a child of the Employee.

-10-

PHI001548

(d)    <u>Forfeiting Years of Service for Vesting Purposes</u>.  If an Employee incurs a break in Service at a time when he is not credited with at least five (5) Years of Service for vesting purposes, and if such period of break in Service equals or exceeds five (5) years, then his prior period of Service will be forfeited.  If an Employee incurs a break in Service at a time when he is credited with at least five (5) Years of Service for vesting purposes, such Employee will not forfeit any Service because of the break in Service.

1.54.4.  <u>Exception to Break in Service Rules</u>.  Notwithstanding the foregoing, if an Employee has at least ten (10) Years of Continuous Service when he retires, and if such Employee forfeited other Years of Service on account of a break in Service, he shall nevertheless be credited with the otherwise forfeited Years of Service just prior to his most recent break in Service which caused the forfeiture.

1.54.5.  <u>No Amendment to Reduce Credited Service</u>.  No amendment to this CB Sub-Plan or the Base Plan shall cause any Employee to be credited with less Service with respect to employment prior to the amendment than would have been credited under the terms of the CB Sub-Plan or the Base Plan in effect prior to the amendment.

1.54.6.  <u>Rules of Construction</u>.  The foregoing rules for crediting Service shall be interpreted and applied in accordance with the rules prescribed in Department of Labor Regulation 29 CFR § 2530.200.

1.54.7.  <u>Continuous Service</u> means continuous full-time or part-time employment.

1.54.8.  <u>Years of Benefit Service</u>.  For a Participant who is not a Part-Time Employee, Years of Benefit Service shall equal Years of Service.  For a Participant who is a Part-Time Employee, Years of Benefit Service will be credited for periods of part-time employment, and solely for purposes of calculating a Grandfather Benefit under Section 3.6 or Section 6.3, as follows:

| Hours of Service Completed in Accrual <u>Computation Period</u> | Percentage of Full Year <u>of Benefit Service Credited</u> |
|---|---|
| Less than 1,000 | 0% |
| 1,000-1,200 | 60% |
| 1,201-1,400 | 70% |
| 1,401-1,600 | 80% |
| 1,601-1,800 | 90% |
| 1,801 or more | 100% |

-11-

PHI001549

The accrual computation period begins on the employment commencement date as a Part-Time Employee (or re-employment commencement date as a Part-Time Employee, if applicable) and each anniversary date thereafter.

(a)    Part-Time Employee means any Employee whose regularly-scheduled work schedule is for less than 40 hours per week on average.

(b)    Hour of Service means each hour for which an Employee is:

(i)    Directly or indirectly paid or entitled to payment by the Employer for the performance of duties;

(ii)    Directly or indirectly paid or entitled to payment by the Employer on account of a period of time during which no duties were performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or an authorized leave of absence. However, no more than 501 Hours of Service shall be credited under this subparagraph (ii) on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period). Payments made or due under a plan maintained by the Employer solely to comply with applicable worker's compensation, unemployment compensation, or disability insurance law, or to reimburse an Employee for medical or medically-related expenses shall not be considered as payments by the Employer for purposes of this subparagraph; or

(iii)    Either awarded back pay or for which the Employer agrees to pay such back pay, irrespective of mitigation of damages. An Hour of Service received under this subparagraph (iii) shall be credited to that computation period for which the award was granted. The same Hours of Service shall not be credited both under subparagraph (i) or (ii), as the case may be, and under this subparagraph (iii). Hours of Service for which back pay is awarded or agreed to with respect to periods described in subparagraph (ii) shall be subject to the limitations set forth in that subparagraph.

For purposes of subparagraphs (ii) and (iii), and for purposes of subparagraphs (i) in the case of an Employee for whom records of hours worked are not required by applicable law to be kept, an Employee shall be credited with 10 Hours of Service for each day for which he would have been required to be credited with an Hour of Service. Hours of Service shall be credited to the applicable computation period in accordance with Department of Labor Regulation Section 2530.200b-2(b) and (c).

1.54.9. Family and Medical Leave Act. Solely for purposes of calculating an Employee's Service for vesting purposes, Service shall also be credited to the extent required under the Family and Medical Leave Act to avoid a break in Service during any period that an

-12-

PHI001550

Employee is on an approved leave of absence, provided the Employee returns to work for the Employer at the end of such leave of absence.

      1.55  <u>Severance from Employment Date.</u>  See "Service."

      1.56  <u>Terminated Vested Retirement Date</u> means the first day of the month coincident with or next following a Participant's Severance from Employment Date after completing five (5) Years of Service; provided, that a Participant may elect to defer the Terminated Vested Retirement Date to the first day of any month after the attainment of age fifty-five (55) or current age if older, but not beyond the Participant's Normal Retirement Age.

      1.57  <u>Transition Credits</u> means amounts that are credited to a Participant's Cash Balance Account in accordance with Section 3.5.

      1.58  <u>Year of Benefit Service.</u>  See "Service."

      1.59  <u>Year of Service.</u>  See "Service."

PHLEGAL: #663223 v5 (#7qv05LWPD)

PHI001551

## ARTICLE 2
## ELIGIBILITY FOR PARTICIPATION

2.1 <u>Continuing Participants</u>. Each Non-Bargaining Unit Employee who was a Participant in one of the Prior Plans on December 31, 1998 and is a Non-Bargaining Unit Employee on the Effective Date shall be a Participant in the CB Sub-Plan as of the Effective Date.

2.2 <u>New Participants</u>.

2.2.1. <u>General</u>.

(a)    Each other Non-Bargaining Unit Employee shall become a Participant as of the Entry Date coincident with or next following the date on which he completes a Year of Service, provided that he is a Non-Bargaining Unit Employee on such Entry Date.

(b)    An Employee who completes the eligibility requirements of Section 2.2.1(a) but who is not a Non-Bargaining Unit Employee on the Entry Date, shall be eligible to participate on the first date thereafter on which he completes an Hour of Service as a Non-Bargaining Unit Employee.

2.2.2. <u>Termination of Employment Prior to Entry Date</u>.

(a)    An Employee who has a Severance from Employment Date prior to completing the eligibility requirements of Section 2.2.1 and who has a Reemployment Commencement Date prior to incurring a One-Year Break in Service, shall be eligible to participate as of the next Entry Date coincident with or next following the date on which he completes a Year of Service, provided he is a Non-Bargaining Unit Employee on such date.

(b)    An Employee who has a Severance From Employment Date prior to completing the eligibility requirements of Section 2.2.1 and who does not thereafter have a Reemployment Commencement Date prior to incurring a One-Year Break in Service, shall not receive credit for his prior service for purposes of eligibility and shall be required to complete the requirements of Section 2.2.1.

2.3 <u>Transferred Employees</u>. A Local 1238 Employee, Local 1307 Employee, or Local 210 Employee who becomes a Non-Bargaining Unit Employee shall remain a participant in the ACE Sub-Plan or Delmarva Sub-Plan in which he was previously a participant for one year following the date of transfer. If such Employee remains as a Non-Bargaining Unit Employee one year from the date of transfer, he shall become a Participant in the CB Sub-Plan as of the January 1 that occurs within the twelve-month period following the date of transfer.

-14-

PHI001552

## ARTICLE 3

## ACCOUNTS AND CREDITS

3.1  Establishment of Cash Balance Account.  A Cash Balance Account shall be established and maintained for each Participant and credits shall be made to such Cash Balance Account in accordance with the provisions of this Article 3.  The Cash Balance Accounts established and maintained hereunder are for bookkeeping purposes only and shall not be construed as creating for any Participant a right to specific assets of the Plan.

3.2  Initial Cash Balance.  Each Participant shall have an Initial Cash Balance, determined as follows.

3.2.1.  New Participants.  Employees who first become Participants on or after the Effective Date shall have an Initial Cash Balance of zero.

3.2.2.  Prior Plan Participants as of December 31, 1998.  For Employees who, as of December 31, 1998, were Participants in one of the Prior Plans and are Non-Bargaining Unit Employees on the Effective Date, the Initial Cash Balance as of the Effective Date is the Prior Plan Conversion Credit.

3.2.3.  Thermal Systems, Inc. and Atlantic Energy Enterprises, Inc. Transfers.  Participants described in Section 1.54.1(c)(i) or (iii) will have an Initial Cash Balance of zero unless they have a frozen benefit under the ACE Plan accrued prior to their employment by Thermal Systems, Inc. or Atlantic Energy Enterprises, Inc., in which event, their Initial Cash Balance shall be determined in accordance with Section 3.2.2.

3.2.4.  Prior Plan Participants Who are Rehired.

(a)    If a Non-Bargaining Unit Employee (i) was a participant in one of the Prior Plans, (ii) terminated employment as a Non-Bargaining Unit Employee prior to the Effective Date, (iii) has not begun to receive benefits under such Prior Plan, and (iv) is rehired as a Non-Bargaining Unit Employee on or after the Effective Date and prior to incurring a Five-Year Break in Service, the Initial Cash Balance shall be the Prior Plan Conversion Credit, credited with Interest Credits at the Interest Crediting Rate from the Effective Date to the Reemployment Commencement Date.

(b)    If a Non-Bargaining Unit Employee (i) was a participant in one of the Prior Plans, (ii) terminated employment as a Non-Bargaining Unit Employee prior to the Effective Date, (iii) has not begun to receive benefits under such Prior Plan, and (iv) is rehired as a Non-Bargaining Unit Employee on or after the Effective Date and after incurring a Five-Year Break in Service, the Initial Cash Balance shall be zero.

-15-

PHI001553

(c)    If a Non-Bargaining Unit Employee (i) was a participant in one of the Prior Plans, (ii) terminated employment as a Non-Bargaining Unit Employee prior to the Effective Date, (iii) commenced receipt of benefits pursuant to the terms of the Prior Plan, either in annuity or lump sum form, and (iv) is rehired as a Non-Bargaining Unit Employee on or after the Effective Date, the Initial Cash Balance shall be zero.

3.2.5.  CB Sub-Plan Participants Who Terminate After Effective Date and are Rehired.

(a)    If a Participant in the CB Sub-Plan with a vested benefit (i) terminates employment after the Effective Date, (ii) has not commenced receipt of Retirement Income, and (iii) is later rehired as a Non-Bargaining Unit Employee prior to incurring a Permanent Break in Service, the Cash Balance Account shall be credited with Interest Credits at the Interest Crediting Rate from the date of termination as a Non-Bargaining Unit Employee to the reemployment date, but no new Initial Cash Balance shall be created.

(b)    If a Participant in the CB Sub-Plan with a vested benefit (i) terminates employment after the Effective Date with a vested benefit, (ii) commences receipt of Retirement Income, and (iii) is rehired as a Non-Bargaining Unit Employee at a later date, the Initial Cash Balance shall be zero.  Notwithstanding the foregoing, if a Participant in the CB Sub-Plan with an entitlement to a Minimum Benefit received his Retirement Income in the form of a single-sum distribution prior to the Participant's attainment of age 55 and is rehired, within five years after the date of such distribution, into any position covered by any Sub-Plan within the Plan, such Participant shall be entitled to a restoration of his Accrued Benefit attributable to such distribution if the Participant repays such distribution, with interest calculated at the Interest Crediting Rate in effect as of such repayment date (compounded annually), within five years after the first date of such reemployment.

(c)    If a Participant (i) terminates employment after the Effective Date, (ii) was deemed to have received a single-sum payment of zero, and (iii) is rehired as a Non-Bargaining Unit Employee at a time when the consecutive One-Year Breaks in Service is less than the greater of (x) the number of full Years of Service for vesting purposes the Employee had accrued before his Severance from Employment Date or (y) five, the Initial Cash Balance shall be the Cash Balance Account as determined at the time of such Participant's Severance from Employment Date, with Interest Credits from the Severance from Employment Date to the Reemployment Commencement Date.  Otherwise, the Initial Cash Balance shall be zero.

3.2.6.  Transfers From Union to Management.  A Local 1238 Employee, Local 1307 Employee, or Local 210 Employee who becomes a Non-Bargaining Unit Employee after the Effective Date shall have an Initial Cash Balance, provided such Employee remains a Non-Bargaining Unit Employee one year from the date of transfer.  If the transferred Employee

-16-

PHI001554

remains a Non-Bargaining Unit Employee one year from the date of transfer, the Initial Cash Balance for such Employee shall be the Prior Plan Conversion Credit as of the January 1 that occurs in the year of transfer; provided that the Prior Plan Conversion Credit shall be determined as of the January 1 contained in the year of transfer rather than December 31, 1998; and further provided that an interest rate that is 2% above the applicable interest rate as of such January 1 (as defined in Schedule A) shall be substituted for 7% in the calculation of such Prior Plan Conversion Credit.

3.2.7.  Transfers From Management to Union.  A Participant who becomes a Local 1238 Employee, Local 1307 Employee, or Local 210 Employee shall, as of the date of transfer, no longer be eligible to participate in the CB Sub-Plan, but the Cash Balance Account shall be credited with Interest Credits as provided in Section 3.4 until distributed.

3.3  Pay Credits.

3.3.1.  In General.  Pay Credits shall be credited to the Cash Balance Account of each Participant as of the last day of each Plan Year in an amount equal to the product of (x) the pay crediting rate, as determined below, and (y) the Participant's Compensation as a Non-Bargaining Unit Employee for the Plan Year.

3.3.2.  Pay Crediting Rate.  The Pay Crediting Rate for a Plan Year shall be a percentage determined on the basis of the age that the Participant attains in that Plan Year, as follows:

| Participant's Age | Pay Crediting Rate |
| --- | --- |
| Under 30 | 5.0% |
| 30-34 | 6.0% |
| 35-39 | 7.0% |
| 40-44 | 8.0% |
| 45-49 | 9.0% |
| 50 and over | 10.0% |

3.3.3.  Pay Crediting in Year of Termination.  In the Plan Year in which a Participant terminates employment as a Non-Bargaining Unit Employee the Participant shall receive a Pay Credit for such Plan Year equal to the applicable Pay Crediting Rate for such Plan Year multiplied by the Participant's Compensation as a Non-Bargaining Unit Employee for such Plan Year.  The Pay Credit shall be credited to the Participant's Cash Balance Account as of the earlier of the last day of the month preceding the Annuity Starting Date or the last day of the Plan Year in which the termination occurs.

3.3.4.  Pay Crediting in First Year of Participation.  In the Plan Year in which a Participant first becomes a Participant, the Participant shall receive an additional Pay Credit equal to (a) the amount that would have been credited to such Participant's Cash Balance

-17-

PHI001555

Account as of December 31 of the prior Plan Year had the Participant been a Participant as of the later of (i) the day the Participant became a Non-Bargaining Unit Employee or (ii) the January 1 immediately following the Participant's transfer into a Non-Bargaining Unit Employee position as described in Section 2.3; plus (b) an amount equal to the Interest Credits that would have been credited on the amount specified in (a) from the date such amount would have been credited to the Cash Balance Account (if the Participant had then been a Participant) up to the date such additional Pay Credit is actually credited to the Cash Balance Account.

3.4  Interest Credits.

3.4.1.  In General.  As of the end of each Plan Year, Interest Credits will be credited to the Cash Balance Account of each Participant. Interest Credits shall be equal to the Interest Crediting Rate for such Plan Year multiplied by the amount credited to such Account as of January 1 of such Plan Year.

3.4.2.  Duration of Interest Credits.  Interest Credits shall continue to be credited to the Cash Balance Account of a Participant until the earlier to occur of the Participant's Retirement Date or, if applicable, the Annuity Starting Date for survivor benefits; provided, however, that (a) Interest Credits shall cease, in the case of a Participant who has a Severance from Employment Date prior to reaching Normal Retirement Age, on such Participant's attainment of Normal Retirement Age and (b) Interest Credits shall continue to be credited to the Cash Balance Account of a Participant who is receiving Pre-65 Disability Benefits until such Participant's attainment of Normal Retirement Age.

3.4.3.  Interest Credits In Final Year of Participation.

(a)  General.  The Interest Crediting Rate in the Plan Year in which the Annuity Starting Date occurs shall be multiplied by a fraction, the numerator of which is the number of months in the Plan Year prior to the Annuity Starting Date and the denominator of which is twelve (12).

(b)  Lump Sums.  In the Plan Year in which the Annuity Starting Date occurs, the Interest Credit with respect to lump sum distributions shall be credited as of the Annuity Starting Date, and, if payment is delayed beyond the Annuity Starting Date, Interest Credits shall be credited to the date of distribution

(c)  Annuity Payments.  In the Plan Year in which the Annuity Starting Date occurs, the Interest Credit with respect to annuity payments shall be credited as of the Annuity Starting Date. No Interest Credits shall be credited for a period of two (2) months after the Annuity Starting Date in the event payment is delayed due to administrative processing time.  If annuity payments are delayed more than two months after the Annuity Starting Date, no interest shall be paid if the delay in payment is due to the Participant's or beneficiary's delay in

-18-

PHI001556

submitting paperwork or due to other factors beyond the control of the Plan Administrator. If interest is paid on delayed annuity payments pursuant to this paragraph, the interest shall be paid at the Interest Crediting Rate in effect as of the Annuity Starting Date.

### 3.5  Transition Credits.

3.5.1.  <u>Eligibility for Transition Credits</u>.  Participants who (a) were Non-Bargaining Unit Employees on December 31, 1998; (b) remain Non-Bargaining Unit Employees on the Effective Date; and (c) were credited with at least ten (10) Years of Service as of January 2, 1999 are eligible for Transition Credits.

3.5.2.  <u>Duration of Transition Credits</u>.  Transition Credits will be credited to Participants who meet the eligibility criteria of Section 3.5.1, as of the end of each Plan Year, beginning as of the Effective Date.  Transition Credits will continue to be credited until the Plan Year in which the Participant is credited with more than 35 Years of Service.

3.5.3.  <u>Amount of Transition Credit</u>.  Transition Credits shall be credited to the Cash Balance Account of each eligible Participant in an amount equal to (x) the product of the transition crediting rate, as determined below, and (y) the Participant's Compensation as a Non-Bargaining Unit Employee for the Plan Year.

| Participant's Years of Service<br>As of Effective Date | Transition Crediting Rate |
|---|---|
| less than 10 years | 0.0% |
| 10-11 years | 1.0% |
| 12-15 years | 2.0% |
| 16-19 years | 3.0% |
| 20 or more years | 4.0% |

### 3.6  Grandfather Benefit.

3.6.1.  <u>Retirement-Eligible Grandfathered Participants</u>.  The Grandfather Benefit of Grandfathered Participants who, as of their Retirement Date, are eligible for early or normal retirement pursuant to the terms of Parts One, Two or Three, as applicable, shall be determined as the accrued benefit of such Grandfathered Participant as of such Participant's Retirement Date, determined pursuant to the terms of the applicable Part as if the Participant had continued to participate in the applicable Part from the Effective Date through the Grandfather Period, including any applicable reduction for early commencement; or, if applicable, the Actuarial Equivalent lump sum present value of such accrued benefit, determined in accordance with the factors set forth in Schedule A.

3.6.2.  <u>Non-Retirement-Eligible Grandfathered Participants</u>.  The Grandfather Benefit of Grandfathered Participants who, as of their Retirement Date, are not

-19-

PHLEGAL: #663223 v5 (#7qv05LWPD)

PHI001557

eligible for early or normal retirement pursuant to the terms of Parts One, Two or Three, as applicable, shall be determined as the accrued benefit determined pursuant to the terms of the applicable Part as of such Participant's Retirement Date as if the Participant had continued to participate in the applicable Part from the Effective Date through the Grandfather Period, payable at age 65 for Delmarva Plan Grandfathered Participants and at age 55 for ACE Plan Grandfathered Participant, and then reduced for early commencement; or, if applicable, the Actuarial Equivalent lump sum present value of such accrued benefit, determined in accordance with the factors set forth in Schedule A.

PHLEGAL: #663223 v5 (#7qv05LWPD)

PHI001558

## ARTICLE 4
## ELIGIBILITY FOR RETIREMENT

4.1  <u>Dates of Eligibility for Retirement Benefits</u>.  A Participant shall be entitled to retire and receive Retirement Income under the CB Sub-Plan on the Participant's Normal Retirement Date, Terminated Vested Retirement Date, Deferred Retirement Date, or Disability Retirement Date.  Notwithstanding the preceding sentence, a Participant who has had a Severance from Employment Date shall be required to commence receipt of benefits under the CB Sub-Plan upon attainment of his Normal Retirement Age.

-21-

PHI001559

## ARTICLE 5
## AMOUNT OF RETIREMENT INCOME

5.1  <u>Normal Retirement Benefit</u>.  Upon attaining one's Normal Retirement Date, a Participant shall be entitled to Retirement Income equal to his Accrued Benefit, determined as of his Normal Retirement Date.

5.2  <u>Terminated Vested Retirement Benefit</u>.

5.2.1.  <u>Termination Prior to Completion of Five (5) Years of Service or Attainment of Normal Retirement Age</u>.  If a Participant has a Severance from Employment Date prior to the Participant's completion of five (5) Years of Service for vesting purposes, and he has not attained Normal Retirement Age, he shall not be entitled to any benefits under the Plan.

5.2.2.  <u>Termination After Completion of Five (5) Years of Service</u>.  If a Participant has a Severance from Employment Date after completion of five (5) Years of Service for vesting purposes, but prior to his Normal Retirement Date, Disability Retirement Date, or Deferred Retirement Date, the Participant shall be eligible to receive Retirement Income equal to his Accrued Benefit, determined as of his Terminated Vested Retirement Date.

5.3  <u>Deferred Retirement Benefit</u>.  A Participant who retires after attainment of Normal Retirement Age shall be entitled, on his Deferred Retirement Date, to receive Retirement Income equal to his Accrued Benefit as of such Deferred Retirement Date.

5.4  <u>Required Distributions</u>.  For years commencing after December 31, 1999, in the event the Participant continues in the employ of the Employer after he has attained the age of 70½, payments will commence as set forth in Section 6.1 of the Base Plan.

5.5  <u>Disability Retirement Benefit</u>.  A Participant who has a Disability Retirement Date shall be entitled to disability benefits as follows.

5.5.1.  <u>Pre-65 Disability Benefit</u>.

(a)  <u>Amount and Form</u>.  The Pre-65 Disability Benefit shall equal the lesser of (1) the Cash Balance Account as of the Disability Retirement Date projected to Normal Retirement Age and credited with interest at the rate of four percent (4%) each Plan Year or (2) 650% of such Participant's Final Average Compensation as of the Disability Retirement Date, converted into an Actuarially Equivalent single life annuity.

(b)  <u>Timing</u>.  The Pre-65 Disability Benefit shall commence on the Participant's Disability Retirement Date, and will terminate on the earliest to occur of (i) the

-22-

PHI001560

Participant's attainment of Normal Retirement Age (at which time the Participant shall be entitled to a Post-65 Disability Retirement Benefit), (ii) death of the Participant, or (iii) the first day of the month following recovery from disability.

### 5.5.2. Post-65 Disability Benefit.

(a)     Amount and Form. The Post-65 Disability Benefit shall equal the Accrued Benefit at such Participant's Normal Retirement Date, subject to the Participant's election to have such benefit paid in any one of the optional forms specified in Section 6.6 in accordance with the procedures specified in Section 6.3 of the Base Plan.

(b)     Timing. The Post-65 Disability Benefit shall be payable on the first day of the month coinciding with or next following attainment of Normal Retirement Age, to a Participant who has had a Disability Retirement Date prior to Normal Retirement Age and whose disability continues to such Participant's attainment of Normal Retirement Age.

### 5.5.3. One-Time Disability Benefit Election. 
In lieu of the Pre-65 Disability Benefit and the Post-65 Disability Benefit, a Participant may elect, upon his Disability Retirement Date, to be treated as a terminated vested Participant who is eligible for a Terminated Vested Retirement Date. If the Participant makes such an election, any payments to the Participant shall be made in accordance with Section 5.2.

### 5.5.4. Grandfather Disability Benefit. 
In lieu of the benefits provided by Sections 5.5.1, 5.5.2, and 5.5.3, Grandfathered Participant who has a Disability Retirement Date on or before the expiration of the Grandfather Period may elect to receive the Grandfather Benefit, determined in accordance with Section 3.6 payable in the form of an Actuarially Equivalent single life annuity until the earlier to occur of (i) the Participant's attainment of Normal Retirement Age, (ii) death of the Participant, or (iii) the first day of the month following recovery from disability, at which time the Participant shall be entitled to a Post-65 Disability Retirement Benefit, or, in the event of the Participant's death, the payment of a pre-retirement survivor benefit in accordance with Section 6.2.

## 5.6 Employment After Normal Retirement Age.

### 5.6.1. Reemployment after Receipt of Retirement Income. 
If a Participant is reemployed after commencement of receipt of Retirement Income, his Retirement Income payments, if applicable, shall not be suspended and any benefits accruing as a result of his reemployment will be determined in accordance with Section 5.6.6.

### 5.6.2. Continued Employment After Normal Retirement Age. 
No Retirement Income shall be paid before a Participant's Required Beginning Date if such Participant remains an Employee after attaining his Normal Retirement Age, subject to the

-23-

PHLEGAL: #663223 v5 (#7qv05l.WPD)

PHI001561

Participant's right to elect to commence receipt of Retirement Income in accordance with Section 6.1 of the Base Plan.

5.6.3.  <u>Notification and Appeal of Suspension</u>.  The Committee shall notify the Participant by personal delivery or first class mail of the suspension of benefits during the first month in which such suspension of benefits occurs.  A Participant may ask the Committee in writing to make a determination as to whether specific contemplated continued employment will result in suspension of his benefits.  The Committee shall respond to such a request in writing within 60 days of its receipt of the request.

5.6.4.  <u>Commencement of Retirement Income</u>.  Retirement Income suspended under this Section 5.6 shall commence no later than the earlier of (A) the first day of the third calendar month following the month in which the Participant has a Severance from Employment Date or, if later, the first day of the calendar month following receipt by the Committee of the Participant's notice that he has incurred a Severance from Employment Date or (B) the Participant's Required Beginning Date.  The initial payment shall include payment for the current month and for any previous calendar months since the Participant's Severance from Employment Date.

5.6.5.  <u>Amount of Retirement Income</u>.  Retirement Income shall be calculated on the basis of the Accrued Benefit earned through the period of continued employment and the provisions of the Plan as then in effect.  The Retirement Income shall be paid in the form determined pursuant to Article 6.

5.6.6.  <u>Calculation of Retirement Income In Event of Reemployment</u>.  In the case of a Participant whose Retirement Income commenced to be paid, upon his subsequent Severance from Employment Date, the Retirement Income shall be computed, based on Retirement Income accrued during the period beginning on his Reemployment Commencement Date and ending on his Severance from Employment Date.

PHLEGAL: #663223 v5 (#7qv05!.WPD)

PHI001562

ARTICLE 6

FORMS OF PAYMENT;
SURVIVOR BENEFITS

6.1  Normal Form of Retirement Income.

       6.1.1.  Single Participants.  Retirement Income payments to a Participant who retires under Article 4 shall be paid monthly commencing on the first day of the month coincident with or immediately following the Participant's Retirement Date and terminating with the last monthly payment due prior to his death.  In the event the Participant retires on a Deferred Retirement Date, the benefit shall not be less than the amount payable on the Normal Retirement Date.

       6.1.2.  Married Participants.

       (a)    In General.  If a Participant has completed at least five (5) Years of Service or has attained Normal Retirement Age and is a married Participant on his Retirement Date, the normal form of Retirement Income shall be a joint and 50% survivor annuity which is the Actuarial Equivalent of a single life annuity, consisting of a reduced annuity paid for the life of the Participant and, upon his death, one-half of such reduced annuity paid to the surviving spouse for life, such survivor's benefits to be paid in equal monthly installments commencing on the first day of the month immediately following the Participant's death.  Such survivor annuity shall be paid only to a spouse who was married to the Participant on the Retirement Date.

       (b)    Special Provision for Delmarva Plan Participants.  Notwithstanding the preceding subsection (a), a Participant with a Minimum Benefit under the Delmarva Plan who (i) in the case of a Participant with a Normal Retirement Date, Disability Retirement Date or Deferred Retirement Date, is married on such Retirement Date, or (ii) in the case of a Participant with a Terminated Vested Retirement Date, is married on the Retirement Date to the same spouse that such Participant was married to on the date of such Participant's termination shall be entitled to the greater of (A) an unreduced joint and 50% survivor annuity with respect to the Minimum Benefit or (B) a reduced joint and 50% survivor annuity with respect to his Payable Cash Balance as described in Section 6.1.2(a).

       (c)    Special Provision for ACE Plan Participants.  Notwithstanding the preceding subsection (a), if a married Participant has a Minimum Benefit under the ACE Plan and that Minimum Benefit (payable in the Normal Form for a married Participant under the ACE Sub-Plan) is greater than the normal form of benefit described in Section 6.1.2(a), the normal form for such Participant shall be the Minimum Benefit payable in

-25-

PHI001563

the Normal Form for a married Participant under the ACE Sub-Plan. If a married Participant has a Minimum Benefit under the ACE Plan and the normal form of benefit described in Section 6.1.2(a) is greater than the Minimum Benefit payable in the Normal Form for a married Participant under the ACE Sub-Plan but less than the Minimum Benefit payable as a single-life annuity, the Participant shall be entitled to elect (subject to spousal consent as described in Section 6.3.4 of the Base Plan) between the Minimum Benefit payable in the Normal Form for a married Participant under the ACE Sub-Plan or the Payable Cash Balance payable in the normal form specified in Section 6.1.2(a).

6.2 <u>Pre-Retirement Survivor's Benefits</u>. The beneficiaries of Participants who die after the completion of at least five (5) Years of Service or attainment of Normal Retirement Age, but prior to their Terminated Vested Retirement Date, Normal Retirement Date or Deferred Retirement Date shall be entitled to a survivor benefit determined in accordance with this Section 6.2.

6.2.1. <u>Amount of Benefit</u>. The survivor benefit shall be (a) the Participant's Payable Cash Balance, payable in an immediate lump sum or (b) for a beneficiary who is the surviving spouse of a Participant, the Participant's Payable Cash Balance, converted to an Actuarially Equivalent single life annuity payable immediately.

6.2.2. <u>Form of Benefit</u>. The automatic form of benefit for beneficiaries who are not the surviving spouse of the Participant is a lump sum. The automatic form of benefit for a beneficiary who is a surviving spouse of the Participant is a single life annuity; provided that a beneficiary may elect payment in the form of a lump sum.

6.2.3. <u>Time of Distribution</u>. A survivor benefit which is to be paid in the form of a single sum shall be paid as soon as practicable after the death of the Participant, but in no event later than the calendar year containing the fifth anniversary of the date of the Participant's death. Payment in the form of a single life annuity will be made as soon as practicable following the Participant's death, unless, in the case of a beneficiary who is a surviving spouse, such beneficiary elects to defer payment, but, in any event, payment may not be deferred later than the earlier to occur of the Participant's Normal Retirement Age or Required Beginning Date.

6.2.4. <u>Beneficiary Designations</u>. In the event there is not a valid beneficiary designation form on file for a Participant, the survivor benefit shall be paid, in the case of a Participant who is a married Participant on the date of his death, as an immediate single life annuity to such Participant's surviving spouse. In the case of a Participant who is not a married Participant on the date of his death, the survivor benefit shall be paid as an immediate lump sum to the beneficiary designated under the Conectiv Savings and Investment Plan. In the event such Participant does not have a beneficiary designated under the Conectiv Savings and Investment Plan, the benefit shall be paid in equal shares to such Participant's surviving children,

-26-

PHI001564

or if there are none, in equal shares to such Participant's surviving parents, or if none, then to such Participant's estate.

### 6.3  Grandfather Survivor Benefit.

**6.3.1.  Entitlement to Grandfather Survivor Benefit.** Notwithstanding the provisions of Section 6.2, the surviving spouse of a Participant who dies after the completion of at least five (5) Years of Service or attainment of Normal Retirement Age, but prior to the Participant's Retirement Date, shall be entitled to a survivor benefit pursuant to this Section 6.3, and not Section 6.2, if the Grandfather Survivor Benefit, determined below, is greater than the survivor benefit determined pursuant to Section 6.2.

**6.3.2.  Amount and Form of Grandfather Survivor Benefit.** The Grandfather Survivor Benefit is a spousal survivor annuity equal to 50% of the Participant's Grandfather Benefit, determined as of the date of his death, such payments to be made in equal monthly installments to commence on the first day of the month coincident with or immediately following the Participant's death and to cease with the last monthly payment due prior to the spouse's death; provided that a beneficiary may elect payment in the form of a lump sum that is the Actuarial Equivalent of the Grandfather Survivor Benefit.

**6.3.3.  Beneficiary Designation.** If a Participant eligible for a Grandfather Survivor Benefit has designated a non-spousal beneficiary pursuant to Section 6.2.4, such designation may specify that the designation is to be revoked or inapplicable in the event the Grandfather Survivor Benefit is greater than the survivor benefit determined pursuant to Section 6.2.

### 6.4  Form of Retirement Income for Former Employees of Conowingo Power Company.

A Participant who is a former employee of Conowingo Power Company ("COPCO") and who became an Employee in connection with the acquisition of COPCO by the Company, shall be entitled to elect the contingent annuity option set forth in Section 5.3 of the Service Annuity Plan of PECO Energy Company (the "PECO Plan"), attached hereto as Schedule B, with respect to his accrued benefit as of June 15, 1995. Such contingent annuity option shall be subject to the same restrictions that would have been in effect under the PECO Plan at the time of the acquisition.

### 6.5  Mandatory Lump Sum Distributions.

In the case of a Participant whose vested Accrued Benefit under the Plan has an Actuarially Equivalent present value of Five Thousand Dollars ($5,000) or less, the full amount of such benefit shall be payable in a lump sum as soon as administratively feasible after such Participant's Severance from Employment Date. In the event the vested Accrued Benefit is zero, the Participant will be deemed to have received a distribution of his Accrued Benefit.

-27-

PHI001565

6.6  <u>Optional Forms of Benefit</u>.

6.6.1.  <u>Participant's Right to Elect</u>.  In lieu of the normal form of Retirement Income provided in Section 6.1, a Participant may elect among the following optional forms of benefit, provided that a married Participant must satisfy the conditions set forth in Section 6.3 of the Base Plan in order to elect an optional form of benefit.  Each optional form of benefit shall be the Actuarial Equivalent of the normal form of Retirement Income.

6.6.2.  <u>Single Life Annuity Option</u>.  In lieu of the normal form, a Participant may elect a single life annuity, with monthly payments commencing on the first day of the month coincident with or immediately following the Participant's Retirement Date and terminating with the last monthly payment due prior to his death.

6.6.3.  <u>Contingent Annuitant Option</u>.  In lieu of the normal form, a Participant may elect a reduced monthly benefit commencing on the Participant's Retirement Date and payable for his lifetime with a monthly benefit payable to his surviving contingent annuitant after the Participant's death, commencing as of the first day of the month following his death and payable for the contingent annuitant's lifetime; the amount of monthly benefit payable to the contingent annuitant shall be equal to 50% or 100% of the monthly benefit amount payable to the Participant, as specified by the Participant in his election of this option.

6.6.4.  <u>Single-Sum Distribution Option</u>.  In lieu of the normal form of benefit, a Participant may elect a single-sum distribution, payable as soon as practicable following the Participant's Retirement Date.

6.6.5.  <u>Level Income Option</u>.  In lieu of the normal form of benefit, a Participant who was a participant in the ACE Plan prior to the Effective Date may elect a monthly benefit in the form of a single life annuity, commencing on his Retirement Date, adjusted so that the Participant's total income, including both the adjusted monthly benefit and the unreduced Primary Insurance Benefits payable to him under Title II of the Federal Social Security Act, are as nearly uniform as possible both before and after such date; the amount of monthly benefit payable under the CB Sub-Plan will be in a greater amount before the unreduced Primary Insurance Benefits begin and in a reduced amount after that date.

6.6.6.  <u>Twenty-Five Percent Survivor Annuity</u>.  In lieu of the normal form, a Participant who was a participant in the ACE Plan prior to the Effective Date may elect a reduced monthly benefit commencing on the Participant's Retirement Date and payable for his lifetime with a monthly benefit payable to his surviving contingent annuitant after the Participant's death, commencing as of the first day of the month following his death and payable for the contingent annuitant's lifetime; the amount of monthly benefit payable to the contingent annuitant shall be equal to 25% of the monthly benefit amount payable to the Participant.

-28-

PHI001566

CONECTIV RETIREMENT PLAN
CB SUB-PLAN
SCHEDULE A

A.1     Actuarial Equivalence for any benefit option converted from the Payable Cash Balance shall be determined as follows:

A.1.1  Unless otherwise specified below, Actuarial Equivalence shall be determined by using the Applicable Interest Rate, which is the annual interest rate on 30-year Treasury securities as specified by the Commissioner of Internal Revenue for the October preceding the calendar year containing the annuity starting date, as published in the Internal Revenue Bulletin or any successor publication thereto, and the Applicable Mortality Table, which is the mortality table based on the prevailing commissioners' standard table as prescribed by the Commissioner pursuant to Code §417(e) (currently 1983 GAM).

A.1.2  In the case of a Disability Benefit payable before age 65, the annuity benefit that is the Actuarial Equivalent of the Payable Cash Balance shall be determined by projecting the Payable Cash Balance to age 65, using a four percent (4%) annual interest rate, and then converting to an annuity form by using the rates specified in Section A.1.1.

A.1.3  In the case of any benefit option that is available only to former participants in a Prior Plan but that is based on the Payable Cash Balance, Actuarial Equivalence shall be determined by using the applicable table or rates as set forth in the applicable Sub-Plan.  Where the applicable Sub-Plan uses a table for such Actuarial Equivalence that does not cover the age of the Participant, the rates set forth in Section A.1.1 shall be used to determine such Actuarial Equivalence.

A.2     Actuarial Equivalence for Minimum Benefit or Grandfather Benefit

A.2.1  Unless otherwise specified below, Actuarial Equivalence for a Minimum Benefit or Grandfather Benefit shall be determined on the basis set forth in Schedule A (as of the date of such determination) of the ACE Sub-Plan or Delmarva Sub-Plan under which the Participant was covered on the day before his or her entry into this CB Sub-Plan, as such Sub-Plan may have been amended prior to the date of such determination.

A.2.2  Where the applicable Sub-Plan uses a table for such Actuarial Equivalence that does not cover the age of the Participant, the rates set forth in Section A.1.1 shall be used to determine such Actuarial Equivalence; provided that

(a)     annuity benefits for a Minimum Benefit or Grandfather Benefit commencing before age 55 determined under the ACE Sub-Plan shall be determined by using the factors applicable to a deferred vested benefit as set forth in the Delmarva Sub-Plan, and lump sum equivalencies for such Minimum Benefit or Grandfather Benefit shall be determined by using the actuarial factors set forth in the Ace Sub-Plan, but in either case such equivalencies shall be determined by valuing the benefit commencing at age 65 rather than age 55; and

PHI001567

A 2.3

(b) joint and survivor optional forms for a Minimum Benefit, Grandfather Benefit, or Grandfather Survivor Benefit determined under the Delmarva Sub-Plan (where the spouse or surviving spouse is the joint annuitant) shall be converted from the 50% joint and survivor form to the desired optional form (other than a single life annuity) by taking into account the fact that the normal form of benefit is a fully-subsidized 50% joint and survivor annuity (where the Participant is married as of the annuity starting date or date of death and entitled to such unreduced 50% joint and survivor annuity), but any other optional annuity form shall be the actuarial equivalent of the single life annuity (not reflecting the value of the fully-subsidized 50% joint and survivor annuity); and

A 2.4

(c) the lump sum equivalency of a Minimum Benefit, Grandfather Benefit, or Grandfather Survivor Benefit determined under the Delmarva Sub-Plan (where the Participant is married as of the annuity starting date or date of death and entitled to an unreduced 50% joint and survivor annuity) shall reflect the value of such unreduced annuity.

PHLEGAL: #729433 v4 FM%104LWPD

PHI001568

# SCHEDULE B

## Service Annuity Plan of PECO Energy Company

PHLEGAL: #663223 v5 (#7qv05LWPD)

PHI001569

# CONECTIV

## CERTIFICATION OF VICE PRESIDENT
## FOR HUMAN RESOURCES AND PRODUCTIVITY IMPROVEMENT

I, Donald E. Cain, Vice President for Human Resources and Productivity Improvement of Conectiv (the "Company"), a Delaware corporation, hereby certify that I approve the adoption of the Conectiv Retirement Plan (the "Plan") document in the form attached hereto, effective January 1, 1999. My approval is given pursuant to the adoption of the Plan by the Personnel & Compensation Committee of the Board of Directors (the "Committee") of the Company on April 23, 1998 and the authorization of the Committee granted to me at a meeting of the Committee held on April 23, 1998.

Date:  December 10, 1999

Donald E. Cain
Vice President for Human Resources and
Productivity Improvement

### FEBRUARY 2001 AMENDMENT TO RETIREMENT PLAN

The Vice President of HR and Performance Improvement, being empowered by Vote of the Personnel and Compensation Committee of the Board of Directors of Conectiv, hereby amends the Conectiv Retirement Plan to incorporate certain benefits awarded to salaried employees pursuant to various severance plans and change in control agreements.

RESOLVED, That the Conectiv Retirement Plan (the "Retirement Plan") be, and it hereby is, amended effective January 1, 2001, as follows:

1.      Section A.2.3 of Schedule A of the Cash Balance Sub-Plan is amended to read as follows:

A.2.3.  In the event a Participant terminates employment at or after attaining age 52 and is eligible to receive severance benefits pursuant to a severance plan adopted by the Employer or a change-in-control agreement between the Employer and the Participant, which plan or agreement calls for the Participant to be treated as if he or she terminated employment at or after age 55 for purposes of early retirement at such age, such Participant's Grandfather Benefit or Minimum Benefit calculated pursuant to the Delmarva Sub-Plan shall be paid at or after his attainment of age 55, by using the early retirement factors contained in Table C of the Delmarva Sub-Plan, rather than the early retirement factors contained in Table B of the Delmarva Sub-Plan.

_1/.ɒɪ/ɒ1_
Date

_Donald E. Cain_
Donald Cain
Vice President of HR and Performance Improvement

PHI001571

AMENDMENT TO
CONECTIV RETIREMENT PLAN

CONECTIV CASH BALANCE SUB-PLAN
DECEMBER 2000

The Vice President for Human Resources and Performance Improvement, being empowered by Vote of the Personnel and Compensation Committee of the Board of Directors of Conectiv, hereby amends the Conectiv Retirement Plan (Conectiv Cash Balance Sub-Plan), effective January 1, 2000.

Section 3.2.6 is amended to read as follows:

3.2.6  <u>Transfers From Union to Management</u>  A Local 1238 Employee, Local 1307 Employee, or Local 210 Employee who becomes a Non-Bargaining Unit Employee after the Effective Date shall have an Initial Cash Balance, provided such Employee remains a Non-Bargaining Unit Employee one year from the date of transfer. If the transferred Employee remains a Non-Bargaining Unit Employee one year from the date of transfer, the Initial Cash Balance for such Employee shall be the Prior Plan Conversion Credit as of the January 1 that occurs in the year of transfer; provided that the Prior Plan Conversion Credit shall be determined as of the January 1 contained in the year of transfer rather than December 31, 1998; and further provided only with respect to transfers which occurred prior to January 1, 2000, that an interest rate that is 2% above the applicable interest rate as of such January 1 (as defined in Schedule A) shall be substituted for 7% in the calculation of such prior Plan Conversion Credit.

Executed this _1st_ day of _December_, 200_0_.

_Donald E Cain_
Donald Cain
Vice President for Human Resources and
Performance Improvement

CLARIFYING AMENDMENT TO
CONECTIV RETIREMENT PLAN

CONECTIV CASH BALANCE SUB-PLAN
OCTOBER 2000

The Vice President for Compensation and Benefits, being empowered by Vote of the Personnel and Compensation Committee of the Board of Directors of Conectiv, hereby amends the Conectiv Retirement Plan (Conectiv Cash Balance Sub-Plan) to clarify an ambiguity in the Plan regarding the calculation of lump sum benefits for retirement-eligible Participants with a Minimum Benefit, Grandfather Benefit, or Grandfather Survivor Benefit determined under the Delmarva Sub-Plan.

Schedule A, paragraph A.2 of the Cash Balance Sub-Plan is amended by renumbering sub-paragraphs A.2.2(b) and (c) as paragraphs A.2.3 and A.2.4, respectively, and as so renumbered, sub-paragraph A.2.4 is amended to read as follows:

A.2.4  The lump sum equivalency of a Minimum Benefit, Grandfather Benefit, or Grandfather Survivor Benefit determined under the Delmarva Sub-Plan shall be the actuarial equivalent of the single life annuity commencing on the Annuity Starting Date (including the value of the early retirement subsidy), and, where the Participant is married as of the Annuity Starting Date or date of death and entitled to an unreduced 50% joint and survivor annuity, shall reflect the value of such unreduced annuity.

The foregoing amendment is effective January 1, 1999.

Executed this 1st day of October, 2000.

_Donald E Cain_

Donald Cain
Vice President for Compensation and Benefits

PHLEGAL: #976266 v1 KXG@S01!.WPD

PHI001573

AMENDMENT
TO CONECTIV RETIREMENT PLAN

CONECTIV CASH BALANCE SUB-PLAN
MARCH 2000

The Vice President for Compensation and Benefits, being empowered by Vote of the Personnel and Compensation Committee of the Board of Directors of Conectiv, hereby amends the Conectiv Retirement Plan (Conectiv Cash Balance Sub-Plan), effective March 1, 2000, as follows.

1.      Whereas Section 1.12 provides the definition of Compensation intended to be used for all purposes under the Plan, and whereas Conectiv desires to permit participants who are highly compensated to elect, pursuant to agreements entered into with Conectiv or another company that participates in the Plan, to exclude all or a portion of their compensation for purposes of accruing a benefit under the Conectiv Cash Balance Sub-Plan, the definition of Compensation is hereby amended as of the date of execution below by amending Section 1.12 of the Conectiv Cash Balance Sub-Plan in its entirety to read as follows:

      1.12  <u>Compensation</u> paid to a Participant by the Employer means

          1.12.1.  any amounts paid as salary, overtime, shift differential or bonus, including elective deferrals to plans described under Code Sections 401(k) and 125, and excluding contributions the Employer makes to this or any other benefit plan, any amounts paid in the form of fringe benefits (including but not limited to reimbursed moving expenses, insurance, and the like; provided, however, that meal allowances shall not be excluded as fringe benefits) and any dividend rights earned under any executive compensation plan of the Company even though such amounts may be taxable for federal income tax purposes.  In determining whether a payment is includible under this definition, the rules for the safe harbor definition set forth in Treas. Reg. § 1.415-2(d)(10), as adjusted by Treas. Reg. §§ 1.414(s)-1(c)(3) and (4) shall be applied.

          1.12.2.  Notwithstanding Section 1.12.1, for purposes of determining the Grandfather Benefit for under Sections 1.23.2 and 3.6.1, Compensation shall have the same meaning as in the ACE or Delmarva Sub-Plan, as applicable.

          1.12.3.  Notwithstanding the foregoing, Compensation taken into account for a Participant shall not exceed the annual limitation specified by section 401(a)(17) of the Code and shall be modified to reflect adjustments in the limitation announced by the Secretary of the Treasury at the same time and in the same manner as under section 415(d) of the Code.

1.12.4.  Notwithstanding the foregoing, a Participant who is a highly compensated employee, as defined in Section 414(q) of the Code, may, pursuant to a written agreement with an Employer, elect to exclude all or a portion of his Compensation for purposes of (a) accruing a benefit under the CB Sub-Plan, (b) determining the Participant's Payable Cash Balance, and (c) determining, if applicable, the Participant's Grandfather Benefit.

Executed this 1st day of March, 2000.

Donald Cain
Vice President for Compensation and Benefits

PHI001575

CLARIFYING AND CORRECTIVE AMENDMENT
TO CONECTIV RETIREMENT PLAN

CONECTIV CASH BALANCE SUB-PLAN
FEBRUARY 2000

The Vice President for Compensation and Benefits, being empowered by Vote of the Personnel and Compensation Committee of the Board of Directors of Conectiv, hereby amends the Conectiv Retirement Plan (Conectiv Cash Balance Sub-Plan) to correct certain clerical errors and ambiguity in the Plan.

1.    Whereas Section 1.12 provides the definition of Compensation intended to be used for all purposes under the Plan, except the calculation of the Grandfather Benefit, and the definition of compensation used to calculate the Grandfather Benefit is to be taken from the applicable Prior Plan's Sub-Plan, except for the calculation of final average compensation (as described in Paragraph 2 of this Amendment), so as to avoid any ambiguity in the calculation of the Grandfather Benefit, the definition of Compensation is hereby amended as of the Effective Date by amending Section 1.12 of the Plan in its entirety to read as follows:

> 1.12  <u>Compensation</u> paid to a Participant by the Employer means

> > 1.12.1.  any amounts paid as salary, overtime, shift differential or bonus, including elective deferrals to plans described under Code Sections 401(k) and 125, and excluding contributions the Employer makes to this or any other benefit plan, any amounts paid in the form of fringe benefits (including but not limited to reimbursed moving expenses, insurance, and the like; provided, however, that meal allowances shall not be excluded as fringe benefits) and any dividend rights earned under any executive compensation plan of the Company even though such amounts may be taxable for federal income tax purposes.  In determining whether a payment is includible under this definition, the rules for the safe harbor definition set forth in Treas. Reg. § 1.415-2(d)(10), as adjusted by Treas. Reg. §§ 1.414(s)-1(c)(3) and (4) shall be applied.

> > 1.12.2.  Notwithstanding Section 1.12.1, for purposes of determining the Grandfather Benefit for under Sections 1.23.2 and 3.6.1, Compensation shall have the same meaning as in the ACE or Delmarva Sub-Plan, as applicable.

> > 1.12.3.  Notwithstanding the foregoing, Compensation taken into account for a Participant shall not exceed the annual limitation specified by section 401(a)(17) of the Code and shall be modified to reflect adjustments in the limitation announced by the Secretary of the Treasury at the same time and in the same manner as under section 415(d) of the Code.

2.    Whereas Section 3.6 provides that the Grandfather Benefit shall be determined as if the Participant had participated in the applicable Sub-Plan, but Section 1.23.2 provides for a special definition of Final Average Compensation designed to apply to Delmarva Plan Grandfathered

Participants, thereby creating uncertainty as to the definition of Final Average Compensation to be applied to ACE Plan Grandfathered Participants, Section 1.23 of the Plan is hereby amended as of the Effective Date:

      (a) by changing the introductory sentence of sub-section 1.23.2 to read, "For purposes of determining the Grandfather Benefit for Delmarva Plan Grandfathered Participants, . . ."

      (b) by adding thereto a new sub-section 1.23.3 to read,

      1.23.3. For purposes of determining the Grandfather Benefit for ACE Plan Grandfathered Participants, Final Average Compensation shall have the same meaning as in the ACE Sub-Plan.

3.     Section 3.6 is amended by replacing the term "Parts One, Two, or Three, as applicable" with the term "the ACE Sub-Plan, the Cash Balance Sub-Plan, or the Delmarva Sub-Plan, as applicable" wherever such term appears.

Executed this _6_ day of February, 2000.

                              _Donald E Cain_

                              Donald Cain
                              Vice President for Compensation and Benefits

## AMENDMENT TO RETIREMENT PLAN
## 1999-2000 SEVERANCE PROGRAM BENEFIT

The Vice President for Compensation and Benefits, being empowered by Vote of the Personnel and Compensation Committee of the Board of Directors of Conectiv, hereby amends the Conectiv Retirement Plan to incorporate certain benefits awarded to salaried employees pursuant to the 1999-2000 Special Severance Plan.

RESOLVED, That the Conectiv Retirement Plan (the "Retirement Plan") be, and it hereby is, amended effective January 1, 1999, as follows:

1.     Schedule A of the Cash Balance Sub-Plan is amended to add a new Section A.2.3, to read as follows:

A.2.3.  In the event a Participant terminates employment at or after attaining age 52 and is eligible to receive severance benefits pursuant to a Severance Plan adopted by the Employer that is effective during 1998, 1999, or 2000, such Participant's Grandfather Benefit or Minimum Benefit calculated pursuant to the Delmarva Sub-Plan shall be paid at or after his attainment of age 55, by using the early retirement factors contained in Table C of the Delmarva Sub-Plan, rather than the early retirement factors contained in Table B of the Delmarva Sub-Plan.

2.     Table C of the Delmarva Sub-Plan shall be amended by adding the following paragraph at the bottom of such Table:

The factors set forth in this Table C shall be used to calculate the Early Retirement benefit payable to a Participant who terminated employment pursuant to the requirements set forth in Section 4.12(A) of the Delmarva Plan as in effect prior to the Effective Date of this Plan, or as subsequently amended, or pursuant to the Company's 1999 Targeted Voluntary Retirement Program.

3.     The ACE Sub-Plan is amended by adding the following Section 1.51 to Article I:

1.51   Special Retirement Date Definition for Certain Participants.  In the case of a Participant who elects to retire on a Retirement Date on or before January 1, 2000, or a Participant who is eligible for a Terminated Vested Benefit and who last earned an Hour of Service before January 1, 2000, such Participant may elect to have his Retirement Date be the first of the month in which his election to retire was submitted, but only if his election to retire is submitted on or before the 15th day of such month; otherwise his Retirement Date shall be the date otherwise specified in this Plan.

4.     The Cash Balance Sub-Plan is amended by adding the following Section 1.60 to Article I:

1.60   <u>Special Retirement Date Definition for Certain Participants</u>.  In the case of a Participant with a Minimum Benefit or Grandfather Benefit calculated under the ACE Sub-Plan, who elects to retire on a Retirement Date on or before January 1, 2000 or who is eligible for a Terminated Vested Benefit and who last earned an Hour of Service before January 1, 2000, such Participant may elect to have his Minimum Benefit or Grandfather Benefit calculated as if his Retirement Date were the first of the month in which his election to retire was submitted, but only if his election to retire is submitted on or before the 15th day of such month; otherwise his Minimum Benefit or Grandfather Benefit shall be calculated as if his Retirement Date were the date otherwise specified in this Plan.

_____

Donald E. Cain

Dated:  _12/10/99_____

PHI001579

CLARIFYING AND CORRECTIVE AMENDMENT
TO CONECTIV RETIREMENT PLAN

CONECTIV CASH BALANCE SUB-PLAN
FEBRUARY 2000

The Vice President for Compensation and Benefits, being empowered by Vote of the Personnel and Compensation Committee of the Board of Directors of Conectiv, hereby amends the Conectiv Retirement Plan (Conectiv Cash Balance Sub-Plan) to correct certain clerical errors and ambiguity in the Plan.

1.     Whereas Section 1.12 provides the definition of Compensation intended to be used for all purposes under the Plan, except the calculation of the Grandfather Benefit, and the definition of compensation used to calculate the Grandfather Benefit is to be taken from the applicable Prior Plan's Sub-Plan, except for the calculation of final average compensation (as described in Paragraph 2 of this Amendment), so as to avoid any ambiguity in the calculation of the Grandfather Benefit, the definition of Compensation is hereby amended as of the Effective Date by amending Section 1.12 of the Plan in its entirety to read as follows:

　　　　1.12  Compensation paid to a Participant by the Employer means

　　　　　　　　1.12.1.  any amounts paid as salary, overtime, shift differential or bonus, including elective deferrals to plans described under Code Sections 401(k) and 125, and excluding contributions the Employer makes to this or any other benefit plan, any amounts paid in the form of fringe benefits (including but not limited to reimbursed moving expenses, insurance, and the like; provided, however, that meal allowances shall not be excluded as fringe benefits) and any dividend rights earned under any executive compensation plan of the Company even though such amounts may be taxable for federal income tax purposes.  In determining whether a payment is includible under this definition, the rules for the safe harbor definition set forth in Treas. Reg. § 1.415-2(d)(10), as adjusted by Treas. Reg. §§ 1.414(s)-1(c)(3) and (4) shall be applied.

　　　　　　　　1.12.2.  Notwithstanding Section 1.12.1, for purposes of determining the Grandfather Benefit for under Sections 1.23.2 and 3.6.1, Compensation shall have the same meaning as in the ACE or Delmarva Sub-Plan, as applicable.

　　　　　　　　1.12.3.  Notwithstanding the foregoing, Compensation taken into account for a Participant shall not exceed the annual limitation specified by section 401(a)(17) of the Code and shall be modified to reflect adjustments in the limitation announced by the Secretary of the Treasury at the same time and in the same manner as under section 415(d) of the Code.

2.     Whereas Section 3.6 provides that the Grandfather Benefit shall be determined as if the Participant had participated in the applicable Sub-Plan, but Section 1.23.2 provides for a special definition of Final Average Compensation designed to apply to Delmarva Plan Grandfathered

PHI001580

Participants, thereby creating uncertainty as to the definition of Final Average Compensation to be applied to ACE Plan Grandfathered Participants, Section 1.23 of the Plan is hereby amended as of the Effective Date:

       (a) by changing the introductory sentence of sub-section 1.23.2 to read, "For purposes of determining the Grandfather Benefit for Delmarva Plan Grandfathered Participants, . . ."

       (b) by adding thereto a new sub-section 1.23.3 to read,

           1.23.3.  For purposes of determining the Grandfather Benefit for ACE Plan Grandfathered Participants, Final Average Compensation shall have the same meaning as in the ACE Sub-Plan.

3.     Section 3.6 is amended by replacing the term "Parts One, Two, or Three, as applicable" with the term "the ACE Sub-Plan, the Cash Balance Sub-Plan, or the Delmarva Sub-Plan, as applicable" wherever such term appears.

Executed this **6** day of February, 2000.

               *Donald E Cain*
               Donald Cain
               Vice President for Compensation and Benefits

PHI001581

AMENDMENT TO RETIREMENT PLAN
1999-2000 SEVERANCE PROGRAM BENEFIT

The Vice President for Compensation and Benefits, being empowered by Vote of the Personnel and Compensation Committee of the Board of Directors of Conectiv, hereby amends the Conectiv Retirement Plan to incorporate certain benefits awarded to salaried employees pursuant to the 1999-2000 Special Severance Plan.

RESOLVED, That the Conectiv Retirement Plan (the "Retirement Plan") be, and it hereby is, amended effective January 1, 1999, as follows:

1.    Schedule A of the Cash Balance Sub-Plan is amended to add a new Section A.2.3, to read as follows:

A.2.3.  In the event a Participant terminates employment at or after attaining age 52 and is eligible to receive severance benefits pursuant to a Severance Plan adopted by the Employer that is effective during 1998, 1999, or 2000, such Participant's Grandfather Benefit or Minimum Benefit calculated pursuant to the Delmarva Sub-Plan shall be paid at or after his attainment of age 55, by using the early retirement factors contained in Table C of the Delmarva Sub-Plan, rather than the early retirement factors contained in Table B of the Delmarva Sub-Plan.

2.    Table C of the Delmarva Sub-Plan shall be amended by adding the following paragraph at the bottom of such Table:

The factors set forth in this Table C shall be used to calculate the Early Retirement benefit payable to a Participant who terminated employment pursuant to the requirements set forth in Section 4.12(A) of the Delmarva Plan as in effect prior to the Effective Date of this Plan, or as subsequently amended, or pursuant to the Company's 1999 Targeted Voluntary Retirement Program.

3.    The ACE Sub-Plan is amended by adding the following Section 1.51 to Article I:

1.51    Special Retirement Date Definition for Certain Participants.  In the case of a Participant who elects to retire on a Retirement Date on or before January 1, 2000, or a Participant who is eligible for a Terminated Vested Benefit and who last earned an Hour of Service before January 1, 2000, such Participant may elect to have his Retirement Date be the first of the month in which his election to retire was submitted, but only if his election to retire is submitted on or before the 15th day of such month; otherwise his Retirement Date shall be the date otherwise specified in this Plan.

4.    The Cash Balance Sub-Plan is amended by adding the following Section 1.60 to Article I:

1.60   <u>Special Retirement Date Definition for Certain Participants</u>.  In the case of a Participant with a Minimum Benefit or Grandfather Benefit calculated under the ACE Sub-Plan, who elects to retire on a Retirement Date on or before January 1, 2000 or who is eligible for a Terminated Vested Benefit and who last earned an Hour of Service before January 1, 2000, such Participant may elect to have his Minimum Benefit or Grandfather Benefit calculated as if his Retirement Date were the first of the month in which his election to retire was submitted, but only if his election to retire is submitted on or before the 15th day of such month; otherwise his Minimum Benefit or Grandfather Benefit shall be calculated as if his Retirement Date were the date otherwise specified in this Plan.

_____

Donald E. Cain

Dated: __12/10/99__

PHLEGAL: #450571 v1 (9NNV01!.WPD)

Exhibit 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2006 JAN -5 PM 12: 51

| | |
|---|---|
| THOMAS S. TROUP, on behalf of himself and all others similarly situated, ) ) ) | CIVIL ACTION NO. |
| Plaintiff, ) ) ) | 0 6    0 1 0 |
| v. ) ) | **CLASS ACTION** |
| PEPCO HOLDINGS, INC; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, ) ) ) ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Thomas S. Troup, on behalf of himself and all others similarly situated, alleges for his complaint as follows:

## INTRODUCTION

1.       This is a class action brought on behalf of persons who were participants in the Conectiv Retirement Plan, as amended and restated effective January 1, 1999, and who had their accrued benefit determined under the Conectiv Cash Balance Sub-Plan effective as of January 1, 1999 instead of a predecessor plan.  Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended; as Plaintiff demonstrates below, the Conectiv Cash Balance Sub-Plan violates ERISA as it fails to comply with ERISA's accrual requirements.  Further, Plaintiff and the class were not given the requisite notice that the rate at which they earned benefits would decrease under the amended plan.  Accordingly, Plaintiff brings this action seeking appropriate declaratory, injunctive and other relief, including a declaration that the Conectiv Cash Balance Sub-Plan, which went into place through amendment of defined benefit plans maintained by Atlantic City Electric Company and

Delmarva Power & Light Company, is invalid and that the accrued benefits of Plaintiff and each member of the class should therefore be calculated under and pursuant to the terms of the predecessor plans sponsored by Atlantic City Electric Company and Delmarva Power & Light Company.

## JURISDICTION AND VENUE

2.   This Complaint arises under Section 502(a) of ERISA, 29 U.S.C. § 1132(a). This Court has subject matter jurisdiction over this matter under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and under 28 U.S.C. § 1331.

3.   Venue is proper in this district under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the relevant pension plan is administered, in whole or in part, in this district, the violations of law alleged in this action occurred (in whole or in part) in this district, and defendants do business and are found in this district.

## PARTIES

4.   Plaintiff Thomas S. Troup ("Plaintiff" or "Troup") is an individual who resides in the State of Delaware and a long-term employee of Delmarva Power & Light Company. Plaintiff Troup is fifty-six years old and commenced his covered employment on October 15, 1979. Plaintiff Troup was a participant in the Delmarva Power & Light Company Retirement Plan. Effective as of January 1, 1999, Plaintiff Troup became a participant in the Conectiv Retirement Plan and, more particularly, the Conectiv Cash Balance Sub-Plan which formed a part thereof.

5.   Defendant Pepco Holdings, Inc. ("Pepco Holdings") is a Delaware corporation with its principal place of business in Washington, DC. Pepco Holdings is a public utility holding company registered under the Public Utility Holding Company Act of 1935. Pepco

2

Holdings was incorporated on February 9, 2001 for the purposes of an acquisition of defendant Conectiv.

6.    Defendant Conectiv is a corporation organized under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware. Conectiv was formed in 1998 to be a holding company for Delmarva Power & Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic City Electric") in connection with the combination of these two entities. Conectiv is a registered public utility holding company under the Public Utility Holding Company Act of 1935, and Delmarva and Atlantic City Electric are wholly owned subsidiaries of Conectiv; Delmarva and Atlantic City Electric became subsidiaries of Conectiv on March 1, 1998. On August 1, 2002, Conectiv, in turn, became a wholly owned subsidiary of Pepco Holdings.

7.    Defendant Pepco Holdings Retirement Plan (the "Pepco Holdings Plan") is an employee benefit plan maintained pursuant to ERISA. More specifically, the Pepco Holdings Plan is a pension plan, within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2) and a defined benefit plan within the meaning of Section 3(35) of ERISA, 29 U.S.C. § 1002(35). The Pepco Holdings Retirement Plan is the successor by merger to the Conectiv Retirement Plan, which was merged with another defined benefit pension plan maintained by an affiliate of Pepco Holdings on December 31, 2002.

## CLASS ACTION ALLEGATIONS

8.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedures on behalf of the following class ("the Class"):

> All persons who have had their accrued benefit determined pursuant to the terms of the Cash Balance Sub-Plan of the Conectiv Retirement Plan and their beneficiaries. Excluded from the Class are those persons who qualified for the

3

grandfathered benefit and who will reach Normal Retirement Age on or before December 31, 2008, along with their beneficiaries.

9.      The Class is so numerous that joinder of all members is impractical. While the exact number of Class members is currently not known to Plaintiff, according to the Internal Revenue Service Form 5500 Annual Report for the Conectiv Retirement Plan for calendar year 2002, there were over 3,399 active participants in the Conectiv Retirement Plan.

10.     Common questions of law and fact exist as to all members of the class, including the following:

a.      whether the Class Balance Sub-Part of the Conectiv Retirement Plan violates the accrual requirement of Section 204 of ERISA, specifically Sections 204(b)(1)(A), (B), (C), 29 U.S.C. § 1054(b)(1)(A), (B), (C).

b.      whether the Cash Balance Sub-Plan of the Conectiv Retirement Plan violates Section 204(b)(1)(G) of ERISA, 29 U.S.C. § 1054(b)(1)(G).

c.      whether the Cash Balance Sub-Plan of the Conectiv Retirement Plan violates Section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

d.      whether defendant Conectiv violated the provisions of Section 204(h) of ERISA, 29 U.S.C. § 1054(h) by failing to provide participants with sufficient notice of an amendment to a plan that would result in a significant decrease in the rate of future benefit accrual.

e.      whether Plaintiff Troup and each Class member is entitled to the relief sought in this complaint.

11.     Plaintiff Troup is a member of the Class, and his claims are typical of the claims of the members of the Class.

4

12.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel who are competent and experienced in ERISA and class action litigation. Plaintiff does not have interests that are antagonistic to or in conflict with the interests of the members of the Class whom he seeks to represent.

13.      Class certification is appropriate under Rules 23(b)(1)(B) and (b)(2) of the Federal Rules of Civil Procedure because adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of other non-party members and defendants have acted on grounds generally applicable to the Class, making declaratory, injunctive and other equitable relief on a class-wide basis appropriate.

14.      In the alternative, class certification would also be appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because the common questions of law and fact presented in this action predominate over any individual issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impractical. Furthermore, the expense and litigation makes it impractical for the members of the Class to pursue individual litigation in order to vindicate their rights. Plaintiff is not aware of any management problems that would militate against the maintenance of this action as a class action.

## FACTUAL BACKGROUND

### Formation of the Conectiv Plan

15.      Prior to 1998, Atlantic City Electric and Delmarva were independent companies that were regulated utilities. On March 1, 1998, they became wholly owned subsidiaries of Conectiv. At the time that they were acquired by Conectiv, Atlantic City Electric and Delmarva each was the sponsor of its own defined benefit pension plan pursuant to ERISA, the Atlantic

City Electric Company Retirement Plan ("Atlantic City Plan") and the Delmarva Power & Light

Company Retirement Plan ("the Delmarva Plan"). Both plans were "final pay" plans, in which

the annuity provided as a retirement benefit was determined by multiplying the average pay

earned by a participant over a period of time by their years of service, and multiplying the

product of that by a percentage factor to determine the amount of the annual benefit payable at

normal retirement age. Conectiv would later characterize the difference between the two plans

as follows:

> The main difference is that Atlantic Energy employees could retire at 55 with no
> reduction in benefit, while Delmarva Power employees could retire at 60 with no
> reduction in benefit, or at 55 with a 24% reduction in benefit. The Atlantic
> Energy percentage multiplier is 1.6%, compared to the Delmarva Power 1.5%.
> On the other hand, Delmarva Power employees have an enhanced survivor benefit
> that Atlantic Energy employees do not have. . . .

16.    Following its acquisition of Atlantic City Electric and Delmarva, Conectiv

determined that it wished to create a single defined benefit pension plan out of the two

predecessor plans. This was done by merging the Delmarva Plan into the Atlantic City Plan and

renaming the Atlantic City Plan the Conectiv Retirement Plan. This merger of the Delmarva

Plan and the Atlantic City Plan to form the Conectiv Retirement Plan took effect on December

30, 1998. Defendant Conectiv became the plan sponsor of the Conectiv Retirement Plan within

the meaning of Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(3)(16)(B), and the named

fiduciary within the meaning of Section 402(a) of ERISA, 29 U.S.C. § 1102(a).

17.    At the same time that it merged the Atlantic City Plan and the Delmarva Plan,

Conectiv elected to switch the basic form of the plan from a final pay plan to a cash balance plan.

While benefit consultants frequently characterizes a cash balance plan as a hybrid, having

characteristics of both a defined benefit plan and a defined contribution plan, in fact it is simply a

different form of defined benefit plan subject to all of the requirements of ERISA governing defined benefit plans.

18.    In a cash balance plan, each participant has a hypothetical account which is purely for bookkeeping purposes. No specific assets are allocated to any particular participant's "account," and the value of the "account" does not fluctuate in response to gains and losses recognized on plan assets. Each year, the plan's sponsor in a cash balance plan adjusts the participant's account with various credits based upon the formula set forth in the plan document. Typically, these credits reflect some factor based on earnings, along with an interest credit, which is usually derived from the thirty year treasury rate.

### Overview of Conectiv's Cash Balance Plan

19.    Certain unionized employees were not converted to the cash balance plan formula. Thus, when the Conectiv Retirement Plan was formed, it included three component sub-plans: the ACE Sub-Plan, which covered employees who were represented by IBEW Local 210 or Local 210A; the Delmarva Sub-Plan, which covered employees represented by IBEW Local 1238, 1238A, Local 1307 or Local 1307A; and the Cash Balance Sub-Plan, which covered certain management and unionized employees of the various participating affiliated companies. Unless they qualified for the ACE Sub-Plan or the Delmarva Sub-Plan, participants who were covered by the Atlantic City Plan or the Delmarva Plan were placed in the Cash-Balance Sub-Plan as of January 1, 1999.

20.    In dealing with participants who were placed in the Cash Balance Sub-Plan, Conectiv determined that it would grandfather certain employees who were participants in the Atlantic City Plan and the Delmarva Plan. Participants in these plans were grandfathered if, as of December 31, 1998, they had attained age fifty or completed at least twenty years of service

7

calculated under the terms of the predecessor plan. Employees qualifying for a grandfathered benefit would then have their retirement benefits calculated under the terms of the predecessor plan provided that they terminated employment on or before December 31, 2008. In effect, these participants were granted grandfathered status for a period of ten years.

21.    As of December 31, 1998, Plaintiff did not qualify for grandfathered benefits as he did not meet the requisite age and service requirements. Accordingly, pursuant to the terms of the Conectiv Retirement Plan, the plan's actuary calculated an Initial Cash Balance under the plan by converting the benefits that he earned under the prior plan to an equivalent lump-sum opening balance. The same process was applied to each participant in the Atlantic City Plan and the Delmarva Plan.

22.    From January 1, 1999 through the present, Plaintiff has been a participant in the Cash Balance Sub-Plan of the Conectiv Retirement Plan. Accordingly, the pension benefits that he has accrued since that date have been governed by the formula under that plan, which has three different components: Pay Credits; Interest Credits; and Transition Credits.

23.    Under the terms of the Cash Balance Sub-Plan, Pay Credits are expressed as a percentage of compensation that is determined on the basis of the employee's age in a particular year, according to the following formula:

| Participant's Age | Pay Credit Rate |
| :---: | :---: |
| Under 30 | 5% |
| 30-34 | 6% |
| 35-39 | 7% |
| 40-44 | 8% |
| 45-49 | 9% |

8

| 50 and over | 10% |
|---|---|

Under this formula, an employee who reached age forty in 1999 with an annual salary of $55,000 would receive a Pay Credit of $4,400, which equals her salary of $55,000 multiplied by the 8% rate applicable for participants age forty to forty-four.

24.    Interest Credits under the Cash Balance Sub-Plan are calculated based upon the thirty year Treasury Bond rate as of October 31 of the prior year.  At the end of each calendar year, an Interest Credit is made to the account by multiplying the opening account balance as of the beginning of the year by the applicable thirty year treasury rate.  Under this formula, an employee who had a plan account balance of $5,000 as of January 1, 2000 would receive an interest credit to their account as of December 31, 2000 in the amount of $300, which represents the $5,000 account balance as of the commencement of the year multiplied by the thirty year treasury rate as of October 31, 1999, which was 6%.

25.    Transition Credits are available to those who were management employees as of January 1, 1999 who had at least ten years of service under a predecessor plan as of that date. Transition Credits were applied to each eligible participant's account balance at the end of each calendar year.  Transition Credits were available commencing as of December 31, 1999 and would be continually applied to the account balance until the participant had more than thirty-five years of service.

26.    Transition Credits are expressed as a percentage of compensation; the percentage varied based upon the number of years of service the employee had as of January 1, 1999, according to the following formula:

9

| Participant's Years of Service as of Effective Date | Transition Crediting Rate |
|---|---|
| Less than 10 years | 0.0% |
| 10 – 11 years | 1.0% |
| 12 – 15 years | 2.0% |
| 16 – 19 years | 3.0% |
| 20 or more years | 4.0% |

Under this formula, an employee with twelve years of service under a predecessor plan who earned $55,000 during 1999 would receive a Transition Credit of $1,100, determined by multiplying their salary of $55,000 by the 2% Transition Credit rate applicable to employees who had twelve to fifteen years of service as of January 1, 1999.

27.    On August 1, 2002, Conectiv became a wholly owned subsidiary of Pepco Holdings. Thereafter, Pepco Holdings merged the Pepco General Retirement Plan (a defined benefit pension plan maintained by one of its subsidiaries) and the Conectiv Retirement Plan to create the Pepco Holdings Retirement Plan. This merger went into effect on December 31, 2002. The formation of the Pepco Holdings Retirement Plan did not alter the manner in which benefits were expressed for participants in the Conectiv Retirement Plan. Indeed, in its annual proxy statement dated as of March 31, 2005, Pepco Holdings stated that "the Pepco Holdings Retirement Plan consists of the Pepco General Retirement Plan and the Conectiv Retirement Plan." Pepco Holdings became the sponsor of the Pepco Holdings Retirement Plan within the meaning of Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B), and the named fiduciary under Section 402(a) of ERISA, 29 U.S.C. § 1102(a).

10

**Conectiv's Conversion Process**

28.    Conectiv apparently began to give consideration to converting the Atlantic City Plan and the Delmarva Plan to a cash balance formula even before its acquisition of the companies had been finalized.  Conectiv first announced its intention to do so to its workforce in the Spring of 1998 (the exact date of which is not known to Plaintiff but is known to defendant Conectiv).  At that time, Conectiv issued disclosures which introduced the cash balance plan concept as follows:

> Until now, employees of both DPL and AE have been covered by what are known as "final pay" pension plans.  The "cash balance" pension plan is a new concept that has two important advantages:  It's easier to *understand* than the former plans, and it's totally *"portable."*  Both these features support our goal of designing a benefits package that meets the needs of today's more independent, more mobile workforce.  The new cash balance pension plan will take effect January 1, 1999.

29.    In addition to touting the simplicity and portability of the new plan design, this disclosure also emphasized the fact that the entire cash balance would pass to a beneficiary upon the participant's death; this was contrasted with the existing joint and survivor annuity structure under the predecessor plans, which provided for about half of the accrued benefit to be paid to a surviving spouse.

30.    Conectiv's disclosures also revealed that certain employees with ten or more years of service would be eligible for additional credits to their cash balance account.  They also explained that some employees would be grandfathered, as follows:

> Of course, many employees have already worked for most of their careers under the former "final pay" pension plans.  For this reason, two groups of people will continue to be covered by their former plans for the next 10 years.  They are employees who, as of January 1, 1999:
>
> - have completed 20 years of service, or
> - are age 50 or older

11

These "grandfathered" employees will have their pensions calculated under both the former and new plans, and will receive whichever value is greater. As an additional benefit, grandfathered employees have the option to elect a lump-sum distribution under the former plan.

31.    The overall tenor of this Spring 1998 disclosure was that all employees would be better off under the new cash balance design as it was easier to understand, more portable, provided better survivor benefits, and incorporated features designed to protect the interests of workers with long years of service.

32.    On or about December 21, 1998, Conectiv issued new disclosures in the form of a letter with a question and answer format. The December 21st letter explained that the grandfathering provision, along with the Transition Credits represented "extensive protections" designed to provide "minimal impact on the existing workforce." The December 21st letter then provided participants with tables that would allow them to generate a rough initial estimate of what their opening balance would be, and provided them an updated version of the Spring 1998 disclosures.

33.    While the cash balance formula went into effect as of January 1, 1999, initial account balance data was not available to affected employees until late June of that year. On or about June 23, 1999, Conectiv issued a notification to managers indicating that opening statements would be mailed the following week and that informational meetings were scheduled from July 12 through July 29. This memorandum endeavored to distinguish the Conectiv cash balance plan from other plans that had received adverse media scrutiny:

Recent stories in the national media have raised concerns about some cash-balance plans that do not offer the same level of financial security or grandfathering provisions as Conectiv's Class Balance Pension Plan. One part of the presentation will address these concerns and demonstrate how Conectiv's plan is different.

12

### How the Conversion Affected Plaintiff and the Class

34.    Plaintiff Troup and each member of the Class had earned a right to annuity benefits under a predecessor plan.

35.    Plaintiff and each member of the Class had the annuity benefit earned under the old plan converted into a hypothetical opening account balance;  this calculation was performed by Towers Perrin, the plan actuary, and brought the existing annuity benefit to present value as of December 31, 1998.

36.    Starting on January 1, 1999, Plaintiff and each Class member had their benefits under the Cash-Balance Sub-Plan of the Conectiv Retirement Plan expressed in the form of their account balance.  The account balance consisted of their opening balance plus the Pay Credits, Interest Credits, and Transition Credits that they earned since January 1, 1999.

37.    While a cash balance plan expresses the employee's retirement benefits in the form of a lump-sum account balance, ERISA does not recognize this particular form of defined benefit.  Instead, ERISA measures an employee's retirement benefits under a defined benefit plan by reference to their "accrued benefit," which is "an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A).

38.    For purposes of ERISA's substantive accrual rules governing defined benefit plans, the account balance of a participant has to be converted into an annuity commencing at age sixty-five to determine whether the Cash Balance Plan satisfies the minimum accrual requirements.  This calculation is sensitive to fluctuations in the prescribed interest rate, which is the rate for the thirty year Treasury Bond.

39.    Because the conversion of the account balance to an annuity commencing at age sixty-five is sensitive to fluctuations in the thirty year treasury rate, participants can actually

suffer reductions in their accrued benefits under the Cash-Balance Sub-Plan of the Conectiv

Retirement Plan. For example, in 1999 and 2000 Plaintiff Troup's accrued benefit increased.

Thereafter, it subsequently decreased in three consecutive years: in 2001, his accrued benefit

decreased by 4.60%; in 2002, it decreased by 6.85%; and in 2003, it decreased by 3.29%. This

represented a total decrease in his annual annuity benefit of over $5000 between the close of

2000 and the close of 2003. In 2004, Plaintiff Troup's accrued benefit increased by 8.69%, but

was still significantly lower than the amount of his accrued benefit as of the end of calendar year

2000.

## COUNT I

40.    Plaintiff incorporates the allegations of paragraphs 1 through 39 herein by

reference as if fully set forth at length.

41.    As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement

Plan and the Pepco Holdings Plan is subject to the minimum accrual requirements of Section

204(b) of ERISA, 29 U.S.C. § 1054(b).

42.    Section 204(b)(1) of ERISA provides three alternative tests which a defined

benefit plan can meet to satisfy ERISA's accrual requirements, 3% rule, the $133^{1/3}$% rule and the

fractional rule. 29 U.S.C. § 1054(b)(1)(A), (B), (C).

43.    The Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco

Holdings Retirement Plan does not satisfy any of these tests. Accordingly, the Cash Balance

Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Retirement Plan fails to

satisfy ERISA's minimum accrual standards.

## COUNT II

44.    Plaintiff incorporates the allegations of paragraphs 1 through 39 herein by reference as if fully set forth at length.

45.    As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan is subject to Section 204(b)(1)(G) of ERISA, 29 U.S.C. § 204(b)(1)(G).  Under Section 204(b)(1)(G) of ERISA, a defined benefit plan does not satisfy the accrual requirements of Section 204 "if the participant's accrued benefit is reduced on account of any increase in his age or service."  Because the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan permits the accrued benefit of a participant to be reduced in subsequent years, it violates Section 204(b)(1)(G) of ERISA.

## COUNT III

46.    Plaintiff incorporates the allegations in paragraphs 1 through 39 herein by reference as if fully set forth at length.

47.    As a defined benefit plan, the Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan is subject to Section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H).

48.    Section 204(b)(1)(H) of ERISA provides that a defined benefit plan will not satisfy the minimum accrual requirements "if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age."  The Cash Balance Sub-Plan of the Conectiv Retirement Plan and the Pepco Holdings Plan violates Section 204(b)(1)(H) of ERISA because the rate at which a participant accrues benefits under the plan is reduced as the participant's age increases.

15

## COUNT IV

49.     Plaintiff incorporates the allegations of paragraphs 1 through 39 herein by reference as if fully set forth at length.

50.     The Conectiv Retirement Plan, its predecessor and successors are all defined benefit pension plans subject to Section 204(h) of ERISA, 29 U.S.C. § 1054(h).  The Cash Balance Sub-Plan constituted an amendment providing for a significant reduction in the rate of future benefit accrual for participants in the Delmarva Plan and the Atlantic City Plan.

51.     Pursuant to Section 204(h) of ERISA, Conectiv could only amend the predecessor plans to implement the Cash Balance Sub-Plan if it provided each participant with a notice advising them that the amendment would provide for a significant reduction in the rate of future benefit accrual in a manner calculated to be understood by the average plan participant.  At the time that Conectiv issued its disclosures to participants concerning the new cash balance plan, it knew that the design of the plan would result in a significant reduction in future benefit accruals. Nonetheless, it failed to give the requisite notice required by Section 204(h) of ERISA, 29 U.S.C. § 1054(h).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment in his favor as follows:

A.     Determining that this is a proper class action which should be certified under Rule 23 of the Federal Rules of Civil Procedure, designating Plaintiff as a representative of the Class and Plaintiff's counsel as counsel for the Class;

B.     Declaring that the Cash Balance Sub-Plan violates Section 204(b)(1)(A), (B), (C) of ERISA, 29 U.S.C. § 1054(b)(1)(A), (B), (C);

C.     Declaring that the Cash Balance Sub-Plan violates Section 204(b)(1)(G) of ERISA, 29 U.S.C. § 1054(b)(1)(G);

D.     Declaring that the Cash Balance Sub-Plan violates the provisions of Section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H);

E.     Declaring that the Cash Balance Sub-Plan is also invalid by reason of the fact that participants in the Delmarva Plan and Atlantic City Plan did not receive the requisite notice required by Section 204(h) of ERISA,  29 U.S.C. § 1054(h);

F.     Reforming the Pepco Holdings Plan to eliminate the Cash-Balance Sub-Plan;

G.     Directing that all participants and former participants who have accrued benefits pursuant to the terms of the Cash Balance Sub-Plan shall have their accrued benefits determined pursuant to the terms of their respective predecessor plan;

H.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and experts' fees; and

I.     Awarding such additional and further relief to which Plaintiff and the Class may be entitled or which the Court considers to be just and proper.

Dated: January 5, 2006                    **CHIMICLES & TIKELLIS LLP**

By:_____
       Pamela S. Tikellis (#2172)
       Robert J. Kriner (#2546)
       A. Zachary Naylor (#4439)
       Robert R. Davis (#4536)
       One Rodney Square
       P.O. Box 1035
       Wilmington, DE 19899
       302-656-2500 (telephone)
       302-656-9053 (fax)


                                     and


                                     17

**CHIMICLES & TIKELLIS LLP**
James R. Malone, Jr.
Joseph G. Sauder
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 (telephone)
610-649-3633 (fax)

Attorneys for Plaintiff and the Proposed Class

# Exhibit 5

December 21, 1998

Dear Conectiv Management Employee,

Beginning January 1, Conectiv will switch to a "cash balance" pension plan as announced earlier this year. In order to provide you with your opening balance, the Company will use your 1998 earnings, which will not be finalized until late January, 1999. At the same time as we are moving to the cash balance pension plan, the Company is outsourcing pension administration to the Vanguard Group, which is also the administrator of Conectiv's 401K plans and PAYSOP plans. Vanguard will verify the conversion calculations, and will then distribute your individual account balances by the end of the second quarter of 1999.

Until individual statements can be prepared, we have created two tables of example calculations so employees can estimate their opening balances. Remember that these tables are <u>examples only</u>, and that your actual cash balances will reflect your particular circumstances. There will be more detailed communications in the Spring. If you have general questions, please hold them until these communications are available. We have included in this letter answers to some general questions about the new program.

If you are at retirement age and are planning to retire in the first quarter of 1999, please call the Human Resources Strategic Business Partner for your area: Pat Duffy, Energy Delivery & Services, at 220-3155; Harold DeJarnette, Supply, at 220-3252; Ben Wilkinson, Shared Services, at 220-3047; and Dave Motil at 250-6020.

We hope this preliminary information is helpful to you.

Q. What is a "cash balance" pension plan?
A. Each year the company credits your individual pension account with a cash contribution equal to a percentage of your total pay, including overtime and bonus. Throughout your Conectiv career, your account grows through additional yearly company contributions, plus interest. When you retire, the current cash value of your account is yours. If you leave Conectiv after you have completed five years of service and are vested, you can transfer your pension account either to your new employer's plan or to your own IRA. Taxes are deferred on the transfer, so your full account can continue growing for the rest of your working years. At retirement, you can take the money in a lump sum and roll it over, tax deferred, into the investment vehicle you select. Or you can elect to receive lifetime monthly payments, either for yourself, or for you and your spouse. Each year, you'll receive a statement of your pension account showing all transactions and its total balance.

Q. What are the key components of Conectiv's new cash balance pension plan?
A. Please see the accompanying "Update of Conectiv Facts," below.

Q. What are the advantages of cash balance?
A. Your cash balance pension account is completely portable. In addition, the plan contains increased "beneficiary" benefits: the full value of the account transfers to your spouse, family, or estate in the event of your death. Employees will receive annual statements showing the actual current value of their pension account. These features mean that the cash balance pension plan helps to meet more diverse needs of today's and tomorrow's employees.

Q. Are there some grandfathering provisions and other transition rules?
A. You may recall that, as part of the approach taken by management to provide minimal impact on the existing workforce, extensive protections were woven into the new plan for employees approaching the retirement age. Any employee aged 50 or with 20 years of service as of December 31, 1998 is "grandfathered" for ten years after January 1, 1999. This means that a grandfathered participant retires, the pension is computed both under the old formula and the new one, and the participant receives the greater amount. In addition, retirees choosing the old formula will be able to take a lump-sum distribution of their pension during the 10 year period. These provisions are for the next ten years when the benefits under the old plan are calculated, frozen, and compared at retirement to the cash balance amounts to determine the best benefit for the employee. In addition to the grandfather provision, favorable transition rules apply for longer service employees. This means those employees will get extra annual credits to their accounts during the ten year period.

JMC00001

### Conectiv Cash Balance Retirement Plan
### January 1, 1999 Account Balance Estimate
### (For employees formerly covered by the ACE Plan)

| Average Five Year Earnings | Age/Service | | | | | | |
|---|---|---|---|---|---|---|---|
| | 35/10 | 40/15 | 40/20 | 45/20 | 50/20 | 50/25 | 55/25 |
| $30,000 | 14,600 | 30,800 | 41,100 | 57,600 | 80,800 | 101,000 | 141,700 |
| $40,000 | 19,500 | 41,100 | 54,800 | 76,800 | 107,700 | 134,700 | 188,900 |
| $50,000 | 24,400 | 51,300 | 68,500 | 96,000 | 134,700 | 168,300 | 236,100 |
| $75,000 | 36,600 | 77,000 | 102,700 | 144,000 | 202,000 | 252,500 | 354,200 |

### Conectiv Cash Balance Retirement Plan
### January 1, 1999 Account Balance Estimate
### (For employees formerly covered by the DP & L Plan)

| Average Five Year Earnings | Age/Service | | | | | | |
|---|---|---|---|---|---|---|---|
| | 35/10 | 40/15 | 40/20 | 45/20 | 50/20 | 50/25 | 55/25 |
| $30,000 | 11,800 | 24,800 | 33,100 | 46,400 | 65,100 | 81,300 | 114,100 |
| $40,000 | 15,700 | 33,100 | 44,100 | 61,800 | 86,700 | 108,400 | 152,100 |
| $50,000 | 19,700 | 41,300 | 55,100 | 77,300 | 108,400 | 135,500 | 190,100 |
| $75,000 | 29,500 | 62,000 | 82,700 | 116,000 | 162,600 | 203,300 | 285,200 |

Q. Why are there two charts?
A. Pension benefits differed between the two merger partners, Atlantic Energy and Delmarva Power, and employees are entitled to the benefits already earned. Opening balances will be different for two hypothetical employees having the same age and length of service, but coming from different companies. But, going forward, future credits to the accounts will be computed in exactly the same manner.

Q. In general, what are the differences in the two plans?
A. The main difference is that Atlantic Energy employees could retire at 55 with no reduction in benefit, while Delmarva Power employees could retire at 60 with no reduction in benefit, or at 55 with a 24% reduction in benefit. The Atlantic Energy percentage multiplier is 1.6%, compared to the Delmarva Power 1.5% On the other hand, Delmarva Power employees have an enhanced survivor benefit that Atlantic Energy employees do not have. These differences have been quantified and were used in calculating these tables.

Q. Are there additional key variables other than earnings, age, and service time to consider when reviewing these charts?
A. The tables reflect the present value of money. Another factor that may not be as obvious, but that is significant in the opening balance calculation, is your distance from retirement age. So while additional service is important and is reflected as you move from left to right in the chart, it is also significant that you are also moving closer to age 55. The closer you are to age 55 the less the benefit earned to date that must be discounted to compute the opening balance. Or conversely, the younger you are, the more of the benefit must be discounted to compute the opening balance. This is why the initial balances for younger people appear smaller.

Note: This information is intended to be used as a guideline only for eligible employees. The employees eligible for the cash balance pension plan are management employees currently enrolled in Conectiv Flex benefits.

JMC00002

Update of Conectiv Facts (Originally Published in the Spring of 1998)

## New Cash Balance Pension Plan

Until now, employees of both DPL and AE have been covered by what are known as "final pay" pension plans. The "cash balance" pension plan is a new concept that has two important advantages: It's easier to *understand* than the former plans, and it's totally *"portable."* Both these features support our goal of designing a benefits package that meets the needs of today's more independent, more mobile workforce. The new cash balance pension plan will take effect January 1, 1999.

## Benefit Easier to Understand

The way the new pension works is simple. Each year the company makes a cash contribution equal to a percentage of your total pay, including overtime and bonus, to your individual pension account. Throughout your Conectiv career, your account grows through additional yearly company contributions, plus interest. When you retire, the cash value of your account is yours.

Over the years, as you watch your pension account grow, you'll have a clearer idea of your own financial position. And you'll be able to plan for your future.

## Portability a Plus

With the new cash balance plan, if you leave Conectiv after you are vested and have completed five years of service, you can transfer your pension account either to your new employer's plan or to your own IRA. Taxes are deferred on the transfer, so your full account can continue growing for the rest of your working years.

## Company Contributions and Interest

Conectiv makes all the contributions to your cash balance pension account. These contributions are based as a percentage of your *total* pay, *including* overtime and bonuses. Contributions increase with age, as shown below. You are not required to contribute to the pension plan.

| Annual Company Pension Contributions | | | |
|---|---|---|---|
| Age[1] | Pension Credit (% of Pay) | Age | Pension Credit (% of Pay) |
| Under 30 | 5% | 40-44 | 8% |
| 30 to 34 | 6% | 45-49 | 9% |
| 35-39 | 7% | 50 and over | 10% |

[1] Based on your age as of January 1st; contributions are prorated if you move to a higher age bracket in mid-year.

JMC00003

The company also credits your account with *interest* each year based on the current 30-yr. U.S. Treasury bond rate. This rate changes based on economic conditions. Currently it is 5%. Historically, it has averaged about 8%.

## Conversion to the New Pension Plan

The new cash balance pension plan will cover all Conectiv management employees as of January 1, 1999. Benefits already earned under the former DPL and AE pension plans are *fully protected* and will be converted to an equivalent cash amount. This will form your "starting balance" under the new plan.

Your stating balance will, in essence, provide you with the lump-sum amount you would need today to purchase a lifetime annuity equal to the benefit you've earned to date under your DPL or AE pension plan. The conversion formula will take in account any early retirement and survivor benefits which are part of the current plans.

## Transition Credits with Ten or More Years' Service

If you have completed between ten and 35 years of service with DPL or AE as of January 1, 1999, you will also be eligible for annual *transition credits*. This means the company will contribute an *additional* amount to your pension account *each year*. Your transition credit percentage depends on your completed service as of January 1, 1999, and remains constant until you have completed 35 years of service. At that point, transition credits stop.

| Annual Transition Credits | | | |
|---|---|---|---|
| Service as of 1/1/99 | Transition Credit (% of Pay) | Service as of 1/1/99 | Transition Credit (% of Pay) |
| 10 to 11 years | 1% | 16 to 19 | 3% |
| 12 to 15 years | 2% | 20 years or more | 4% |

For example, if you have completed 13 years of service as of January 1, 1999, the company will make an additional contribution of 2% of your total pay to your account every year until you complete 35 years of service.

## Annual Statements

Each year, you'll receive a personal statement of your pension account which will show the company's contributions (basic amount plus any transition credits), interest credit and total balance, so you'll be able to watch the progress of your account over the years.

## "Grandfather" Protection for Older and Long Service Employees

JMC00004

Of course, many employees have already worked for most of their careers under the former "final pay" pension plans. For this reason, two groups of people will continue to be covered by their former plans for the next ten years. They are employees who, as of January 1, 1999:

- have completed 20 years of service, or
- are age 50 or older.

These "grandfathered" employees will have their pensions calculated under both the former and new plans, and will receive whichever value is greater. As an additional benefit, grandfathered employees have the option to elect a lump sum distribution under the former plan.

## Payment Options at Retirement

The new pension plan also gives you a great deal of flexibility when you retire. You may take the full value of your pension in a single lump sum, which you may then roll over, tax deferred, into the investment vehicle you select. Or you may elect guaranteed lifetime monthly payments for yourself, or for you and your spouse (an "annuity").

## Survivor Benefits

If you die after you are vested but before retirement, the new pension plan provides another advantage to your survivor. Under the former plans, survivor benefits were payable only to the spouse, and then at an amount equal to about *half* of your accrued benefit. With the new plan, the *entire cash value* of your pension account would be paid to your beneficiary who, with your spouse's consent, can be anyone you name.

| A Quick Look at the New "Cash Balance" Pension Plan | |
| --- | --- |
| Company Contributions | Made annually to your account based on a percentage of pay. Age-related percentages range from 5% to 10%. |
| Interest | Credited each year, based on the 30-year U.S. treasury bond rate at the time. |
| Conversion to New Plan | Benefits accrued under DPL and AE pension plans to be converted to a cash equivalent starting balance under new plan. Starting balance also credited with interest annually. |
| Transition Credits | With 10 years of service as of 1/1/99, you receive an additional annual company contribution of 1% to 4% of pay. |
| Vesting | Upon completion of five years of service (including service with DPL and AE). |
| Portability | Totally portable: current value of your account is yours if you leave Conectiv after you are vested. |
| Survivor's Benefit | Full current value of your account is paid to your spouse or beneficiary if you die while actively employed. |
| Payment options at retirement | Lump-sum cash option, or several lifetime monthly payment options (annuities): cash option can be rolled over to an IRA to continue tax deferral. |

Updated 12/21/98

JMC00005