IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. MICHAEL CHARLES, MAURICE W. WARD, JR., and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated, | : : : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 05-00702 (SLR) |
| | : | |
| PEPCO HOLDINGS, INC., CONECTIV, and PEPCO HOLDINGS RETIRMENT PLAN, | : : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE

M. Duncan Grant (Del Bar No. 2994)
Phillip T. Mellet (Del Bar No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
302.777.6500

Susan Katz Hoffman, Esquire
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street
Philadelphia, PA  19102
267.402-3015 (telephone)
267.430.7275 (fax)

Larry R. Wood, Jr. (Del Bar No. 3262)
Kay Kyungsun Yu
Barak A. Bassman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215. 981.4000 (telephone)
215.981.4750 (fax)

Dated:  July 3, 2007

Attorneys for Defendants

## TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

II.  STATEMENT OF FACTS ...................................................................................................... 3

III. SUMMARY OF ARGUMENT ............................................................................................... 3

IV.  ARGUMENT ........................................................................................................................... 4

   A.  The Email to Mr. Ward Is Admissible .............................................................................. 4

      1.  The Email Is Authentic .............................................................................................. 4
      2.  The Email Is Not Inadmissible Hearsay .................................................................... 7

   B.  Mr. Kremmel's Testimony Is Admissible ......................................................................... 8

      1.  Paragraphs 17(a) and 17(b) of the Kremmel Affidavit Are Admissible ................... 9
      2.  Paragraph 17(c) of the Kremmel Affidavit Is Admissible ........................................ 9
      3.  Paragraph 17(d) of the Kremmel Affidavit Is Admissible ...................................... 10
      4.  Paragraph 17(e) of the Kremmel Affidavit Is Admissible ...................................... 10

   C.  Mr. Kra's Testimony Is Admissible ............................................................................... 11

V.   CONCLUSION ..................................................................................................................... 14

### TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Calmat v. United States Department of Labor*, 364 F.3d 1117 (9th 2004) ....................................7

*Conatzer v. Medical Prof'l Building Services, Inc.*, 255 F. Supp. 2d 1259
    (N.D. Okla. 2003), *aff'd* 95 Fed. Appx. 276 (10th Cir. 2004) ...................................................9

*DIRECTV, Inc. v. Budden*, 420 F.3d 521 (5th Cir. 2005)...............................................................9

*Drutis v. Quebecor World (USA), Inc.*, 459 F. Supp. 2d 580 (E.D. Ky. 2006).............................12

*Gergel v. Chemlawn Services Corp.*, Civ. A. No. 87-1138, 1988 WL. 71312
    (E.D. Pa. July 5, 1988)...............................................................................................................8

*Hodges v. Exxon Corp.*, 563 F. Supp. 667 (M.D. La. 1983), *aff'd* 727 F.2d 450 (5th Cir.
    1984)...........................................................................................................................................9

*Kirby v. SBC Services, Inc.*, Civ. A. No. 03-3010, 2006 WL. 154914
    (N.D. Tex. Jan. 20, 2006)...........................................................................................................9

*Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423 F.3d 318 (3d Cir. 2005) ...........6

*Ondis v. Barrows*, 538 F.2d 904 (1st Cir. 1976) ............................................................................9

*United States v. J.M. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996)....................................................8

*Webb v. Fuller Brush Co.*, 378 F.2d 500 (3d Cir. 1967) .................................................................7

## I.    NATURE AND STAGE OF PROCEEDINGS

On September 26, 2005, Plaintiffs filed this putative class action, alleging that the Conectiv Cash Balance Sub Plan (the "Plan" or "Cash Balance Plan") violates the Employee Retirement Income Security Act of 1974 ("ERISA").  (D.I. 1.)  The lead claim in this case – that the Plan, as it uses a cash balance plan formula, is *per se* unlawful under ERISA § 204(b)(1)(H) – was foreclosed by the Third Circuit's opinion earlier this year in *Register v. PNC Financial Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007).  Plaintiffs have conceded that this claim is no longer viable.  (D.I. 79 and 84.)

Plaintiffs are thus left with three back-up claims:  (1) Count I, in which they contend that the Cash Balance Plan violates ERISA § 204(b)(1), which prohibits "backloading" of benefits, *i.e.*, requiring a disproportionately larger share of retirement benefits to accrue in later years as opposed to earlier years (D.I. 1, ¶¶ 42-45); (2) Count II, in which Plaintiffs allege that the Cash Balance Plan violates ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G), which provides that a plan is not lawful "if the participant's accrued benefit is reduced on account of any increase in his age or service" (D.I. 1, ¶ 47); and (3) Count IV, in which Plaintiffs allege that, pursuant to ERISA § 204(h), they did not receive proper notice of the amendment establishing the cash balance formula.  (D.I. 1, ¶¶ 51-53.)

On May 1, 2007, Defendants moved for summary judgment on the three remaining claims, based upon both the lack of evidence of any violation on the merits and the running of the statute of limitations.  (D.I. 87 and 88.)  As relevant to the instant Motion to Strike, Defendants pointed out the following in their Motion for Summary Judgment:

- The claims of Plaintiff Maurice Ward are barred by the applicable three-year statute of limitations, because in December 1998 – almost ***seven years*** before filing suit – Mr. Ward received copies, via email, of three articles from *The Wall Street Journal* that put him on notice of potential legal challenges to cash balance formulae under ERISA.  (D.I. 88 at 9, 27.)

- Contrary to Plaintiffs' allegation of insufficient notice, Conectiv provided numerous notices and explanations of the conversion to the Cash Balance Plan formula in 1998 and 1999. Defendants cited to the testimony of James Kremmel, who worked on the transition team in 1998 and 1999 that coordinated the notice process. (D.I. 88 at 6-7, 22-24.)

- Ethan Kra, Ph.D., one of the preeminent pension actuaries in the United States, provided expert analysis demonstrating that, based on standard actuarial practices, Plaintiffs' allegations regarding the Plan were without merit. (D.I. at 88 at 14, 21.)

On June 19, 2007, Plaintiffs filed their Answering Brief and a Cross Motion for Summary Judgment. (D.I. 93.) As Defendants will show in their Reply Brief, which, in accordance with the Court's schedule, they will file on July 19, 2007 (D.I. 91), Plaintiffs' various arguments lack merit and Defendants are entitled to summary judgment as a matter of law.

No doubt recognizing that the undisputed evidence points only one way – to the defeat of their three remaining claims – Plaintiffs filed this Motion to Strike hoping to use it as a smoke screen to create the misimpression of disputed issues. To do so, they argue (1) the December 1998 email – an email that is ***currently sitting in Plaintiff Ward's archive email box*** – is somehow inauthentic or inadmissible hearsay; (2) that Mr. Kremmel somehow lacks personal knowledge regarding the notice process that ***he helped to supervise***; and (3) that portions of Mr. Kra's expert opinion, with which Plaintiffs do not agree, are not relevant to the case. (D.I. 96.)

As explained below, Plaintiffs have raised no valid challenge to the admissibility of these portions of the summary judgment record. Defendants therefore respectfully request that the Motion to Strike be denied and Defendants' Motion for Summary Judgment be reviewed based upon the complete record.

## II.    STATEMENT OF FACTS

Defendants set forth the full factual background in their Opening Brief in Support of their Motion for Summary Judgment, which will not be unnecessarily repeated here. (D.I. 88, at 2-11.) In brief sum, this case challenges a Plan using a cash balance formula, in which benefits are calculated based on additions to a hypothetical account. *Id.* The hypothetical account grows based on the crediting of a percentage of each employee's pay into the account (Pay Credits and, if applicable, Transition Credits), plus interest based on U.S. Treasury bond yields, to avoid inflation eroding the value of the benefits. *Id.*

Both before and shortly after Defendants converted the Plan to a cash balance formula on January 1, 1999, they provided numerous notices to affected Plan participants explaining how the new formula would work and acknowledging the criticism of cash balance plans in the media and Congress at the time. *Id.* Indeed, the evidence is undisputed that each Plaintiff knew, or had reason to know, of these or similar criticisms in 1999. *Id.*

## III.    SUMMARY OF ARGUMENT

1.      The December 1998 email to Mr. Ward has been fully authenticated by Jamie Moore from the IT Department of Defendant Pepco Holdings, Inc., in an attached Declaration. Moreover, the email is not hearsay, because it is offered only to show notice to Mr. Ward and not for the truth of the underlying information.

2.      Mr. Kremmel has personal knowledge of which notices were distributed in 1998 and 1999 and there is therefore no basis to strike Paragraph 17 of his Affidavit.

3.      Plaintiffs have not raised a valid challenge to the admissibility of Mr. Kra's testimony. Most of their arguments are a rehash of purely legal arguments contained in the summary judgment briefing, and Defendants will address them in due course in their Reply Brief

in Support of their Motion for Summary Judgment. To the extent that Plaintiffs challenge the reliability of Mr. Kra's methodology, their contentions are utterly without merit.

## IV.    ARGUMENT

### A.    The Email to Mr. Ward Is Admissible

Among the many pieces of evidence in support of Defendants' Motion for Summary Judgment is an email dated December 18, 1998 from William O. Bates to Plaintiff Maurice Ward with the subject line "Cash Balance Pension Info." Attached to this email are three articles from *The Wall Street Journal* describing the legal controversies surrounding cash balance plans, including the fact that employees at some companies had filed class action lawsuits. (App. at B-4 to B-17.) This email defeats any argument that Mr. Ward could have to toll the statute of limitations, requiring that his claims be dismissed as time barred. (D.I. 88 at 27.)

Realizing that they have no argument on the merits to save Mr. Ward's case, Plaintiffs move to strike this email because it is allegedly inauthentic and because it is supposedly inadmissible hearsay. Plaintiffs are mistaken on both points.

### 1.    The Email Is Authentic

Attached to this Brief is the Declaration of Jamie Moore, the individual in charge of Pepco Holdings's email system, attesting to the fact that he found the December 1998 email in Mr. Ward's personal email archive, where Mr. Ward had placed it in 2004, and that Mr. Moore, in turn, forwarded the email to counsel. (App. at B-1 to B-3.)

Mr. Moore also recently re-checked Mr. Ward's email archive to confirm that the December 1998 email was still there, and he found that it was. (App. at B-2.) Mr. Moore provided a snapshot of Mr. Ward's email archive, which conclusively shows that the email from Mr. Bates still resides in Mr. Ward's archive:



(App. at B-2, B-31.)

Mr. Moore's Declaration satisfies Defendants' burden to authenticate the email and its attachments. Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The Third Circuit has held that this is not a rigorous standard:

> We have repeatedly noted that "the burden of proof for authentication is slight." . . . "The showing of authenticity is not on a par with the more technical evidentiary rules, such as hearsay exceptions, governing admissibility. ***Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility.*** Once a *prima facie* case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic."

*Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 328-329 (3d Cir. 2005) (citations omitted; emphasis in original). Mr. Moore's testimony that the December 1998 email was produced from Mr. Ward's own personal email archive is easily sufficient evidence that this document was in fact an email sent to him on the date indicated.

Plaintiffs raise three bases for challenging the authenticity of the email to Mr. Ward, all meritless. First, they assert that "there is no indication from the face of the email itself that there was any attachment." D.I. 96, at 13. This contention ignores the one sentence text of the email: "Maury here is the info I have on Cash Balance Pensions FYI." (App. at B-4.) As there is no other "info" in the email text, it is logical to assume that there must be attachments. Indeed, Mr. Moore has confirmed in his Declaration that the articles *are* in fact attached to the email – a fact confirmed by the "paper clip" icon next to this email message in the screen snapshot of Mr. Ward's archive. (App. at B-1 to B-2.)

Second, Plaintiffs note that there is a Pepco Holdings company footer, even though in 1998 Pepco Holdings had no ownership in Conectiv, Delmarva, or Atlantic City Electric. *See* D.I. 96, at 13. This argument ignores, though, that the top half of the first page of the document is redacted because it is an email from Pepco Holdings in house counsel Barbara Alexander, Esq. to Defendants' outside counsel, Pepper Hamilton, relaying the 1998 email message. (App. at B-2) (testifying that email initially forwarded to Barbara Alexander). Ms. Alexander's recent email generated the automatic Pepco Holdings footer.

Third, Plaintiffs note that Mr. Ward denies receiving the email. (D.I. 96, at 13.) This self-serving denial, however, does not defeat the authentication by Mr. Moore; on the contrary, Mr. Moore's Declaration -- and the attached snapshot of Mr. Ward's email archive -- casts substantial doubt upon Mr. Ward's credibility.

### 2.    The Email Is Not Inadmissible Hearsay

Nor is the email to Mr. Ward inadmissible hearsay. The Federal Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence ***to prove the truth of the matter asserted.***" Fed. R. Evid. 801(c) (emphasis added). While the email and the attached newspaper articles are clearly out-of-court statements, they are not offered for the truth of the matter asserted, *i.e.*, that the statements in the attached *Wall Street Journal* articles are all true. Instead, Defendants offer these materials to prove that Mr. Ward received notice of the newspaper articles criticizing the legality of cash balance plans. The documents are accordingly admissible for this purpose. *See Webb v. Fuller Brush Co.*, 378 F.2d 500, 502 (3d Cir. 1967) (lower court committed reversible error in excluding articles as hearsay, where articles were introduced solely to show notice to defendant of potential dangers of product); *Calmat v. United States Dept. of Labor*, 364 F.3d 1117, 1124 (9th 2004) (out of court statement offered to show notice is not offered for truth of the

matter asserted, and therefore is admissible); *Gergel v. Chemlawn Servs. Corp.*, Civ. A. No. 87-1138, 1988 WL 71312 at *5 (E.D. Pa. July 5, 1988) ("the hearsay objection is not applicable to the consumer complaints to the extent they are used to show notice").

**B.    Mr. Kremmel's Testimony Is Admissible**

Recognizing that the sworn testimony of Defendants' Human Resources Executive James Kremmel dooms any claim that there was not proper notice of the cash balance conversion, Plaintiffs have asked the Court to strike Paragraph 17 of his Affidavit based on an alleged lack of personal knowledge.[1]

In Paragraph 17, Mr. Kremmel details the various notices provided to Plan participants of the cash balance conversion in 1998 and 1999. (App. at B-36 to B-37.) During the relevant time frame, Mr. Kremmel worked in the Human Resources Department at Delmarva and, after the Delmarva-Atlantic City Electric merger, Conectiv. (App. at B-70 to B-72.) Mr. Kremmel was part of the "Total Rewards" transition team at Conectiv that worked on a wide array of benefits changes in 1998 and 1999, including the cash balance conversion. (App. at B-73 to B-75.) Mr. Kremmel's work on the transition team included supervising the preparation and dissemination of notices to employees of the new benefits package. (App. at B-76 to B-81 and B-89 to B-90.) Mr. Kremmel also was a presenter in a number of meetings in Summer 1999 to explain the new cash balance plan to Conectiv employees. (App. at B-82 and B-84 to B-88.)

---

[1] Plaintiffs move to strike three paragraphs of Mr. Kremmel's Affidavit, 11, 17, and 18. *See* D.I. 96 at 7. However, of these three, Defendants only rely on Paragraph 17 in support of their Motion for Summary Judgment; Paragraphs 11 and 18 relate solely to class certification issues. Accordingly, Defendants will limit their discussion in this Brief to Paragraph 17, although Defendants in no way agree that there is any reason to strike Paragraphs 11 or 18. Indeed, Defendants note that Plaintiffs' criticism of Mr. Kremmel's testimony in Paragraphs 11 and 18 appears unfounded, because Mr. Kremmel, as a corporate designee pursuant to Fed. R. Civ. P. 30(b)(6), is permitted to testify on behalf of the company based upon information provided to him. *See United States v. J.M. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

Mr. Kremmel thus clearly has the requisite personal knowledge to submit an Affidavit regarding the distribution of employee notices, because the preparation and distribution of these notices were within his job responsibilities. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (employee of plaintiff competent to testify about matters within his "sphere of responsibility"); *Ondis v. Barrows*, 538 F.2d 904, 907 n. 3 (1st Cir. 1976) (same); *Kirby v. SBC Servs., Inc.*, Civ. A. No. 03-3010, 2006 WL 154914 at *5 (N.D. Tex. Jan. 20, 2006) (same); *Conatzer v. Med. Prof'l Bldg. Servs., Inc.*, 255 F.Supp.2d 1259, 1268 n. 1 (N.D. Okla. 2003) (same), *aff'd* 95 Fed. Appx. 276 (10th Cir. 2004); *Hodges v. Exxon Corp.*, 563 F.Supp. 667, 669-670 (M.D. La. 1983) (same), *aff'd* 727 F.2d 450 (5th Cir. 1984). Nor do Plaintiffs' various arguments cast any doubt upon Mr. Kremmel's foundation to testify.

### 1.    Paragraphs 17(a) and 17(b) of the Kremmel Affidavit Are Admissible

First, Plaintiffs argue that Paragraphs 17(a) and 17(b) of Mr. Kremmel's Affidavit should be struck because he supposedly has no personal knowledge of the distribution of two "EMerging Times" employee newsletters in Fall 1997. *See* D.I. 96, at 9. The only basis for this argument is that Mr. Kremmel used the word "believe" when testifying at his deposition that these documents were distributed. *Id.* This is irrelevant. Mr. Kremmel obviously "believed" that the newsletters were distributed because he knows that happened based upon his personal knowledge.

### 2.    Paragraph 17(c) of the Kremmel Affidavit Is Admissible

Second, as regards Paragraph 17(c) of his Affidavit, Plaintiffs seem to suggest that Mr. Kremmel cannot testify that the May 1998 Facts newsletter was distributed to employees, because he did not review any company records to confirm this fact. *See* D.I. 96, at 10. But Mr. Kremmel has testified, based upon his knowledge, that this newsletter was mailed to employees' home:

-9-

Q. Do you know how this was disseminated?

A. This would have been, again, printed internally by the company and delivered – this individual document was delivered to individuals' homes -- it was mailed to their homes.

(App. at B-78.)  There is no requirement under Rule 56(e) that Mr. Kremmel's testimony be corroborated by other evidence.

### 3.    Paragraph 17(d) of the Kremmel Affidavit Is Admissible

Third, as regards Paragraph 17(d) of his Affidavit, Plaintiffs challenge Mr. Kremmel's basis for averring that the December 21, 1998 notice of cash balance conversion was distributed.  *See* D.I. 96, at 10.  Plaintiffs, however, have already conceded in their Complaint that this notice was issued.  *See* D.I. 1, ¶ 34.  Furthermore, Mr. Moore has confirmed that Plaintiff Ward was sent an email of this notice in December 1998 – yet another email still sitting in Mr. Ward's email archive, and fully accessible to the Plaintiffs.  (App. at B-2, B-18 to B-30.)

### 4.    Paragraph 17(e) of the Kremmel Affidavit Is Admissible

Finally, Plaintiffs' challenge to Mr. Kremmel's foundation for Paragraph 17(e) of his Affidavit is without merit.  Plaintiffs assert that Mr. Kremmel cannot testify to whether the June 23, 1999 "Mid Week Extra" was distributed.  *See* D.I. 96, at 10.  Citing lines 1 through 4 of page 85 of Mr. Kremmel's deposition, Plaintiffs assert that Mr. Kremmel conceded that he does not know to whom this document was disseminated.  *Id.*  Here, however, is the full colloquy on the topic, which extends to line 9:

Q. Who was it sent to?  "It" being D-10.

A. I don't -- I don't know who, specifically, it was sent to.

Q. Can you break it down by role at the company?

A. ***To the best of my recollection, this was sent to all nonrepresented employees in the company***.  To the best of my recollection.

(App. at B-83) (emphasis added).  Each Plaintiff is a non-represented employee.  (D.I. 1, ¶ 21.)

In addition, Plaintiffs contend that Mr. Kremmel cannot testify regarding the contents of the presentation used at the Summer 1999 employee meetings explaining the new cash balance plan.  *See* D.I. 96, at 11-12.  They are wrong.  Mr. Kremmel testified that he presented at several of these meetings and that the presenters were instructed to use a standardized, uniform presentation – a presentation that Mr. Kremmel was personally involved in creating.  (App. at B-84 to B-88.)

Plaintiffs' only rebuttal appears to be that Mr. Kremmel admitted that it was possible that, when answering questions *after* the presentation, some presenters may have given "slightly different" answers to similar questions.  *See* D.I. 96, at 12.  This is irrelevant, though, to whether Mr. Kremmel can testify as to the contents of the standardized presentation.

### C.    Mr. Kra's Testimony Is Admissible

Finally, Plaintiffs' various objections to Mr. Kra's expert testimony are similarly without merit.  Plaintiffs are careful not to challenge Mr. Kra's qualifications as an expert pension actuary – and with good reason.  Mr. Kra received his B.A., M.A., M.Phil., and Ph.D. degrees in mathematics from Yale University, where he was a National Science Foundation Fellow and a Woodrow Wilson Fellow.  (App. at B-91 to B-110)  He has worked as an actuary for almost thirty-five years, including being an Enrolled Actuary for ERISA-governed Plans since 1979 and a Fellow of the Society of Actuaries since 1976.  (*Id.*)  Mr. Kra is currently the Chief Actuary – Retirement for Mercer Human Resource Consulting, one of the premier actuarial consulting firms in the world.  (*Id.*)

Mr. Kra has served in a number of important leadership positions in major actuarial associations, including:

- Serving as Vice President and Member of the Board of Governors of the Society of Actuaries;

- Serving as Chair of the Pension Section Council and Retirement Practice Advancement Committee of the Society of Actuaries; and

- Serving as a Member of the Board of Directors of the American Academy of Actuaries and Vice Chair of the Academy's Pension Practice Council.

(*Id.*)  Furthermore, Mr. Kra's Report lists over eleven single-spaced pages of speeches, lectures, and publications.

Realizing that Mr. Kra is a formidable expert,[2] Plaintiffs try to neutralize his impact by arguing that four of the paragraphs of his Report should be struck for lack of "reliability" and "fit."  (D.I. 96 at 15-26.)  Most of these are arguments are simply recycled contentions of law from the summary judgment briefing, which Defendants will address in their forthcoming Reply Brief.[3]  Nevertheless, Plaintiffs do raise two arguments distinct from the summary judgment briefing, both of which can quickly be put to rest.

First, Plaintiffs argue that Mr. Kra's opinion that the Plan satisfies ERISA's anti-backloading requirements is inadmissible, because Mr. Kra allegedly made his calculations based on the Plan's hypothetical account balances, instead of the value of participants' benefits

---

[2] In contrast, Plaintiffs' counsel have retained Claude Poulin, an actuary whose Plaintiffs-side work in cash balance litigation has been criticized.  *See, e.g., Drutis v. Quebecor World (USA), Inc.*, 459 F.Supp.2d 580 (E.D. Ky. 2006).

[3] In particular, Plaintiffs argue that Mr. Kra's opinion that the Plan complies with ERISA's backloading requirements is inadmissible because he held future interest crediting rates static when making his calculations. (D.I. 96 at 18-19.)  This is a point of legal contention, not expert methodology, which Defendants addressed on pages 15 through 19 of their Opening Brief in Support of the Motion for Summary Judgment, and which Defendants will address further in their Reply.

Plaintiffs also argue that Mr. Kra's analysis of whether the cash balance conversion could be reasonably expected to reduce Plaintiffs' future benefit accruals – and thus whether they were entitled to any notice of the change in benefit formulae, an element of their claim under ERISA § 204(h) – should be stricken.  This argument likewise turns upon a legal question of what assumptions must be used to measure anticipated future benefit accruals (Plaintiffs nowhere dispute that Mr. Kra has correctly run the benefit calculations based upon the assumptions provided by counsel), which Defendants will address in their Reply Brief.

expressed as an annuity commencing at age 65. (D.I. 96 at 15-18.) As Mr. Kra explains in depth

in his Supplemental Report, however, Plaintiffs are mistaken. (App. at B-111 to B-118.) Mr.

Kra sets forth in his attached Supplemental Report the series of underlying algebraic formulae

used in his backloading analysis and how those formulae measure changes in annuity values.

(App. at B-111 to B-118.)

        Second, Plaintiffs move to strike Paragraph 6 of Mr. Kra's Report as irrelevant to

the case. (D.I. 96 at 20-21.) That Paragraph provides in full:

> The pleadings note that Plaintiffs' benefits decreased in certain
> years. These negative adjustments to the annuity payable at
> normal retirement date were solely on account of interest changes.
> In each of those years, they experienced a positive benefit accrual
> on account of increased age, service, and compensation received
> during the year.

(App. at B-92) This opinion is directly relevant to Count II of the Complaint, in which Plaintiffs

allege that the Plan violates ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G), which provides

that a plan is not lawful "if the participant's accrued benefit is reduced on account of any

increase in his age or service." (D.I. 1, ¶ 47.)

        Plaintiffs' only argument to the contrary is that Mr. Kra supposedly only

measured the effect of increased age and service on the hypothetical account balance, and not the

annuity value of each Plaintiffs' benefits. (D.I. 96 at 20.) This is frivolous, because Paragraph 6

of Mr. Kra's Report expressly addresses why there were "negative adjustments to the ***annuity***

***payable at normal retirement date***" in certain years.

## V.    CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Motion to Strike be denied.

Respectfully submitted,

/s/ Phillip T. Mellet
M. Duncan Grant (Del. Bar No. 2994)
Phillip T. Mellet (Del. Bar No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
302.777.6500

Susan K. Hoffman                         Larry R. Wood, Jr. (Del. Bar No. 3262)
LITTLER MENDELSON PC                      Kay Kyungsun Yu
Three Parkway                             Barak A. Bassman
1601 Cherry Street                        PEPPER HAMILTON LLP
Philadelphia, PA  19102                   3000 Two Logan Square
267.402.3015 (telephone)                  Eighteenth and Arch Streets
267.430.7275 (fax)                        Philadelphia, PA 19103-2799
                                          215.981.4000 (telephone)
                                          215.981.4750 (fax)

Dated:  July 3, 2007                      Attorneys for Defendants