DELMARVA POWER & LIGHT COMPANY

RETIREMENT PLAN

(as amended and restated
through January 1, 1995)

159449

TABLE OF CONTENTS

Page

PREAMBLE . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE 1 - DEFINITIONS

        Section 1.00.  "Accrued Benefit" . . . . . . . . . . 2
        Section 1.01.  "Actuarial Equivalent" . . . . . . . 2
        Section 1.01A. "Affiliated Company" . . . . . . . . 2
        Section 1.01B. "Board of Directors" . . . . . . . . 2
        Section 1.02.  "Code" . . . . . . . . . . . . . . . 2
        Section 1.03.  "Committee" . . . . . . . . . . . . . 2
        Section 1.03A. "Company" . . . . . . . . . . . . . . 2
        Section 1.04.  "Compensation" . . . . . . . . . . . 2
        Section 1.05.  "Deferred Retirement Date" . . . . . 3
        Section 1.06.  "Disability Retirement Date" . . . . 3
        Section 1.07.  "Early Retirement Date" . . . . . . . 3
        Section 1.08.  "Employee" . . . . . . . . . . . . . 3
        Section 1.09.  "Employer" . . . . . . . . . . . . . 4
        Section 1.10.  "Enrolled Actuary" . . . . . . . . . 4
        Section 1.11.  "ERISA" . . . . . . . . . . . . . . . 4
        Section 1.12.  "Normal Retirement Date" . . . . . . 4
        Section 1.13.  "Participant" . . . . . . . . . . . . 4
        Section 1.13A. "Participating Employer" . . . . . . 4
        Section 1.14.  "Plan" . . . . . . . . . . . . . . . 4
        Section 1.15.  "Plan Year" . . . . . . . . . . . . . 5
        Section 1.16.  "Prior Plans" . . . . . . . . . . . . 5
        Section 1.17.  "Retirement Date" . . . . . . . . . . 5
        Section 1.18.  "Retirement Income" . . . . . . . . . 5
        Section 1.19.  "Service"; "Years of Service" . . . . 5
        Section 1.20.  "Trust Fund" . . . . . . . . . . . . 9

ARTICLE 2 - ELIGIBILITY FOR PARTICIPATION

        Section 2.01.  Eligibility; Entry Date . . . . . . . 10

ARTICLE 3 - ELIGIBILITY FOR RETIREMENT

        Section 3.01.  Dates of Eligibility for
                       Retirement Benefits . . . . . . . . 11
        Section 3.02.  Mandatory Retirement for
                       Certain Executives . . . . . . . . . 11

ARTICLE 4 - AMOUNT OF RETIREMENT INCOME

        Section 4.01.  Normal Retirement Benefit . . . . . 13
        Section 4.02.  Early Retirement Benefit . . . . . . 14
        Section 4.03.  Deferred Retirement Benefit . . . . 15
        Section 4.04.  Disability Retirement Benefit . . . 15
        Section 4.05.  Code Section 415 Retirement Income
                       Limitations . . . . . . . . . . . . 17

- i -

TABLE OF CONTENTS (cont.)

Page

Section 4.06.  Resumption of Employment After
               Retirement Income Commences . . . . . . .  17
Section 4.07.  Cost of Living Income . . . . . . . . . .  18
Section 4.08.  Adjustment to Reflect Distributions . . .  18
Section 4.09.  Special Voluntary Retirement Program  . .  18

ARTICLE 5 - FORMS OF RETIREMENT INCOME PAYMENT;
            SURVIVOR BENEFITS

Section 5.01.  Normal Form of Retirement Income  . . . .  21
Section 5.02.  Pre-Retirement Survivor's Benefits
               (Effective 1/1/87)  . . . . . . . . . . .  21

ARTICLE 6 - TERMINATION OF EMPLOYMENT PRIOR TO
            RETIREMENT; VESTING

Section 6.01.  Termination Prior to the Completion
               of Five (5) Years of Service
               (Effective 1/1/87)  . . . . . . . . . . .  22
Section 6.02.  Termination After the Completion of
               Five (5) Years of Service
               (Effective 1/1/87)  . . . . . . . . . . .  22
Section 6.03.  Forms of Retirement Income  . . . . . . .  22
Section 6.04.  Pre-Retirement Death Benefit For a
               Terminated Vested Participant . . . . . .  24

ARTICLE 7 - FINANCING THE PLAN

Section 7.01.  No Participant Contributions  . . . . . .  26
Section 7.02.  Employer Contributions  . . . . . . . . .  26
Section 7.03.  Plan Funds to be Held in Trust  . . . .   26
Section 7.04.  Trust for the Exclusive Benefit
               of Plan Participants . . . . . . . . .    26

ARTICLE 8 - PLAN ADMINISTRATION AND RESPONSIBILITIES

Section 8.01.  Named Fiduciary . . . . . . . . . . . .   27
Section 8.02.  Allocation of Powers and
               Responsibilities  . . . . . . . . . . .   27
Section 8.03.  Delegation of Powers and
               Responsibilities  . . . . . . . . . . .   28
Section 8.04.  Employment of Consultants and Counsel . . 29
Section 8.05.  Responsibilities Several and Not Joint . . 29
Section 8.06.  Retirement Plan Committee . . . . . . . . 29
Section 8.07.  Administrator, Plan Administrator . . . .  29
Section 8.08.  Agent For Receipt of Legal Process  . . . 29
Section 8.09.  Standard of Fiduciary Duty Under ERISA .  29

- ii -

TABLE OF CONTENTS (cont.)

Page

Section 8.10.  Standard of Fiduciary Duty Under
               Any Other Law . . . . . . . . . . .  30
Section 8.11.  Procedure for Filing A Claim
               for Benefits . . . . . . . . . . .  30

ARTICLE 9 - AMENDMENT OR TERMINATION

Section 9.01.  Employer's Right to Amend the Plan  . . .  32
Section 9.02.  Participant's Rights Not to Be
               Affected By Merger  . . . . . . . . .  32
Section 9.03.  Distribution of Assets Upon
               Termination of Plan . . . . . . . .  32
Section 9.04.  Allocations Within Priority Groups  . . .  34
Section 9.05.  Provision to Prevent Discrimination . . .  34
Section 9.06.  Post-Change in Control Benefits
               (Effective 11/25/86)  . . . . . . . .  36
Section 9.07.  Post-Change in Control Termination
               or Curtailment or Reduction
               (Effective 11/25/86) . . . . . . .  37
Section 9.08.  Post-Change in Control - Merger or
               Consolidation (Effective 11/25/86)  . . .  38

ARTICLE 10 - GENERAL PROVISIONS

Section 10.01.  Plan Not an Employment Contract  . . . .  40
Section 10.02.  Plan Benefits Nonassignable  . . . . . .  40
Section 10.03.  Payments to Plan Beneficiary Under
                Legal Disability . . . . . . . . . .  40
Section 10.04.  Commencement of Payments . . . . . . .  40
Section 10.05.  Employer's Liability Limited to
                Assets in the Plan . . . . . . . .  41
Section 10.06.  Delaware Law to Apply  . . . . . . . .  41
Section 10.07.  References to Gender . . . . . . . . .  41
Section 10.08.  Severability (Effective 11/25/86)  . . .  41

ARTICLE 11 -  OPERATION OF THE PLAN AS A TOP-HEAVY PLAN

Section 11.01.  Application  . . . . . . . . . . . .  42
Section 11.02.  Definitions  . . . . . . . . . . . .  42
Section 11.03.  Determination of Top-Heavy Status  . . .  43
Section 11.04.  Minimum Vesting  . . . . . . . . . .  43
Section 11.05.  Minimum Benefit  . . . . . . . . . .  43
Section 11.06.  Change in Top-Heavy Status . . . . . .  43
Section 11.07.  Limitation on Maximum Benefit  . . . . .  44

- iii -

TABLE OF CONTENTS (cont.)

Page

ARTICLE 12 - ROLLOVER DISTRIBUTIONS

Section 12.01.  Right to Elect Direct Rollover . . . . .  45
Section 12.02.  Eligible Rollover Distribution . . . . .  45
Section 12.03.  Eligible Retirement Plan . . . . . . . .  45
Section 12.04.  Distributee  . . . . . . . . . . . . . .  45
Section 12.05.  Direct Rollover  . . . . . . . . . . . .  45

- iv -

C - 36

## PREAMBLE

The Delmarva Power & Light Company Retirement Plan (as amended and restated through January 1, 1995) (the "Plan") constitutes an amendment, restatement and continuation of the Delmarva Power & Light Company Retirement Plan.

The purpose of the Plan is to provide retirement income for all eligible employees of Delmarva Power & Light Company (the "Employer").  The Plan has been amended and restated in order to incorporate various amendments that have been adopted since the Plan was last amended and restated January 1, 1987.  The Plan is intended to qualify under Section 401(a) of the Internal Revenue Code of 1954 relating to qualified pension, profit sharing, and stock bonus plans.

Plan Participants who retired on a Retirement Date or who terminated their employment with Delmarva Power & Light Company prior to January 1, 1995, must look solely to the prior plan provisions in effect on their Retirement Date or termination of employment date for their Retirement Income benefits, if any, except as specifically provided in Section 4.09.

The Plan will be funded by payments to Wilmington Trust Company, as Trustee, under a Trust Agreement entered into in connection with the establishment of the Plan.  The Trust Agreement shall continue in full force and effect pursuant to the applicable provisions of the Plan.  All payments to the Trust will be irrevocably set aside for the benefit of employees under the Plan.

ARTICLE 1

DEFINITIONS

The following words and phrases as used herein shall have the following meanings, unless a different meaning is plainly required by the context:

Section 1.00.  "Accrued Benefit" means the Normal Retirement Benefit payable at Normal Retirement Date determined pursuant to Section 4.01.  In the event a Participant terminates employment prior to his Normal Retirement Date, the Accrued Benefit shall be equal to the Normal Retirement Benefit computed as of the date of termination of employment.

Section 1.01.  "Actuarial Equivalent" means the equivalent of the benefit otherwise payable to a Participant or a survivor, whichever is applicable, using the factors set forth in Schedule I.

Section 1.01A.  "Affiliated Company" (effective November 28, 1989) means:

(A)  any company which is included within a "controlled group of corporations" with Delmarva Power & Light Company as determined under Code Section 414(b);

(B)  any trades or businesses (whether or not incorporated) which are under common control with the Company described in Code Section 414(c); and

(C)  any company which is included in an affiliated service group within the meaning of Code Section 414(m) or included under regulations issued pursuant to Code Section 414(o).

Section 1.01B.  "Board of Directors" (effective November 28, 1989) means, except as otherwise indicated, the Board of Directors of the Delmarva Power & Light Company.

Section 1.02.  "Code" means the Internal Revenue Code of 1986, as amended from time to time.

Section 1.03.  "Committee" means the Retirement Plan Committee.

Section 1.03A.  "Company" (effective November 28, 1989) means the Delmarva Power & Light Company.

Section 1.04.  "Compensation" paid to a Participant by the Employer means any amounts paid as salary, overtime, shift differential or bonus, including elective deferrals to plans described under Code Sections 401(k) and 125, and excluding,

- 2 -

contributions the Employer makes to this or any other benefit plan, any amounts paid in the form of fringe benefits (including but not limited to reimbursed moving expenses, insurance, and the like) and any dividend rights earned under the Executive Long Term Incentive Plan even though such amounts may be taxable for federal income tax purposes.  In determining whether a payment is includible under this definition, the rules for the safe harbor definition set forth in Treas. Reg. § 1.415-2(d)(10), as adjusted by Treas. Reg. §§ 1.414(s)-1(c)(3) and (4) shall be applied. Notwithstanding the foregoing, annual Compensation taken into account for a Participant shall be subject to the following limitations (the "401(a)(17) Limitation"):

(A)  For Plan Years beginning after December 31, 1988, and before January 1, 1996, Compensation shall not exceed $200,000 or such higher amount as permitted under Code Section 401(a)(17);

(B)  For Plan Years beginning after December 31, 1995, Compensation shall not exceed $150,000 or such higher amount as permitted under Section 401(a)(17);

In applying the annual compensation limit of Code Section 401(a)(17) as set forth above, the family aggregation rules of Code Section 414(q)(6) shall apply, except that the term "family" shall mean only the spouse of the Participant and any lineal descendants of the Participant who have not attained age 19 before the close of the Plan Year.  In the event Code Section 401(a)(17) is exceeded after the application of such rules, then the limitation shall be prorated among the affected individuals in proportion to each such individual's Compensation as determined under this section prior to the application of the Code Section 401(a)(17) limitation.

Section 1.05.  "Deferred Retirement Date," as defined in Section 3.01(C), means the date after a Participant's Normal Retirement Date on which he elects to retire.

Section 1.06.  "Disability Retirement Date," as defined in Section 3.01(D), means the date a Participant elects to retire by reason of sickness or injury after completing at least fifteen (15) Years of Service and becoming permanently incapable of performing the duties of any position with the Employer with the degree of efficiency required by the Employer.

Section 1.07.  "Early Retirement Date," means the date a Participant elects to retire after satisfying the age and service requirements set forth in Section 3.01(B).

Section 1.08.  "Employee" means any officer or employee in the active service of the Employer.

- 3 -

C - 39

(A)  "Local 1238 Employee" means an Employee whose employment is covered by a collective bargaining agreement with Local 1238, IBEW, AFL-CIO.

(B)  "Local 1307 Employee" means an Employee whose employment is covered by a collective bargaining agreement with Local 1307, IBEW, AFL-CIO.

(C)  "Non-Bargaining Unit Employee" means an Employee whose employment is not covered by a collective bargaining agreement.

(D)  "Leased Employee" (effective January 1, 1984) means an individual described in Code Section 414(n) of the Code.

Section 1.09.  "Employer" (effective January 1, 1989) means:

(A)  for purposes of Articles I, II, III, IV, V, VI, VII and XI, and Sections 9.05, 10.01 and 10.05, the Company and all Participating Employers; and

(B)  for purposes of Article VIII and Sections 9.01 through 9.04, Sections 9.06 through 9.08 and Section 10.03, the Company only.

Section 1.10.  "Enrolled Actuary" means an individual who has been approved by the Joint Board For The Enrollment of Actuaries to perform actuarial services required under ERISA.

Section 1.11.  "ERISA" means Public Law No. 93-406, the Employee Retirement Income Security Act of 1974, as amended from time to time.

Section 1.12.  "Normal Retirement Date," as defined in Section 3.01(A), means the later of the date upon which a Participant attains age 65 or the fifth anniversary of the date he commenced participation in the Plan.

Section 1.13.  "Participant" means an Employee who becomes a Participant pursuant to Article 2 and who continues to be entitled to any benefits under the Plan.

Section 1.13A.  "Participating Employer" (effective November 28, 1989) means all Affiliated Companies that, with the approval of the Company, have joined the Plan by executing a declaration of joinder.

Section 1.14.  "Plan" means the Delmarva Power & Light Company Retirement Plan (as amended and restated through January 1, 1995) as herein set forth and as it may hereafter be amended from time to time.

- 4 -

C-40

Section 1.15.   "Plan Year" means a calendar year. Records of the Plan shall be maintained on a calendar year basis.

Section 1.16.   "Prior Plans" means the Delmarva Power & Light Company Retirement Plan, initially effective as of January 1, 1953, amended from time to time and as in effect upon any Participant's Retirement Date or termination of employment date.

Section 1.17.   "Retirement Date" means a Participant's Early, Normal, Deferred or Disability Retirement Date as defined in Section 3.01.

Section 1.18.   "Retirement Income" means the retirement benefits provided to Participants in accordance with the applicable provisions of Articles 4, 5 and 6.

Section 1.19.   "Service"; "Years of Service."

(A)  <u>General Rules</u>.  "Years of Service" shall be credited as provided in this Section.

(1)   For all purposes of the Plan, Service will be credited for an Employee's entire period of employment as an Employee of Delmarva Power & Light Company or any predecessor. Such Service shall also include employment with any controlled group, related or affiliated employers as defined in Code Sections 414(b), (c), (m) and (o).

(2)   Service will be credited for periods while on authorized leave of absence with full salary (provided the Employee returns to the Employer's employ at the expiration of the authorized leave) and periods while on authorized leave for military purposes (provided the Employee returns to the Employer's employ within the period prescribed by law for the protection of veterans' reemployment rights).  Service will not be credited for periods of authorized leave of absence without pay, but such an authorized leave of absence without pay shall not constitute a break in service provided the Employee returns to the Employer's employ at the expiration of the authorized leave.  A layoff period of less than one (1) year will be considered such a leave of absence without pay.

(3)   Service will be credited for an Employee for periods of authorized leave of absence as Business Manager of Local 1238 (after December 31, 1968) and as President of Local 1307 (after December 31, 1976).  During such an authorized leave of absence, Local 1238 or Local 1307, whichever is applicable, shall be considered the Employer for the purposes of this Section.

(4)   Service will also be credited for employment with any employer acquired by Delmarva Power & Light Company on such terms as may be approved by the Board of Directors.

- 5 -

C - 41

(5)   Service will not be credited for a Leased Employee, except that for years commencing after December 31, 1988, if the Leased Employee becomes an Employee of the Employer, service will be credited for purposes of eligibility and vesting for the period that the Employee was a Leased Employee.

(6)   Service shall not include Years of Service with respect to which an employee received a mandatory lump sum distribution (excluding a "deemed cash out"), as described in Section 6.03(B).

(B)   <u>Service Prior to January 1, 1976; Continuous Service Rule</u>.  An Employee will be credited with whole and partial Years of Service with respect to employment prior to January 1, 1976, on the basis of one (1) Year of Service for each 365 days of continuous full time employment.  If an Employee's continuous full time employment was interrupted prior to January 1, 1976, he will not be credited with Service prior to such interruption of employment.

(C)   <u>Service After December 31, 1975; Elapsed Time Rule</u>.  An Employee will be credited with whole and partial Years of Service with respect to employment after December 31, 1975 on the basis of the elapsed time rule as described in this paragraph (C).

(1)   Basic elapsed time rule.  Years of Service under the elapsed time rule are based on the passage of time during which the employment relationship exists.  One (1) Year of Service is credited for each 365 days of employment.  A day of employment is credited for each day of the period beginning on an Employee's Employment Commencement Date (or Reemployment Commencement Date, if applicable) and ending with his Severance from Employment Date.

(2)   "Employment Commencement Date" means the first date on which an Employee is credited with Service for the Employer.

(3)   "Reemployment Commencement Date" means the first date on which an Employee is credited with Service for the Employer following a break in credited Service.

(4)   "Severance from Employment Date" means the earlier of (i) the date an Employee quits, is discharged, retires or dies, or (ii) the date 365 days after the date he is first absent from employment for any reason (including e.g., lay off, disability, leave of absence, vacation) provided he is continuously absent from employment for such 365 day period.

(D)   <u>Special Post 1975 Rules For Vesting Purposes Only</u>. The following rules apply only with respect to employment after

- 6 -

C - 42

1975 and only for the purposes of vesting under Article 6 and not for the purposes of benefit accrual under Article 4:

       (1)  <u>Service spanning rules</u>.  If an Employee's employment is terminated by reason of a quit, discharge, or retirement and the Employee then returns to employment within 365 days of his Severance from Employment Date, he shall be credited with service during that period of severance.  If an Employee severs from service by reason of a quit, discharge or retirement during an absence from service of 365 days or less for any reason other than a quit, discharge or retirement and the Employee then returns to employment within 365 days of the date on which he was first absent from service, he shall be credited with service during that period of severance.

       (2)  <u>Limited Break in Service Rule; Rule of Parity</u>.  An Employee will incur a One Year Break in Service if he is continuously absent from employment for 365 or more days following a Severance from Employment Date, unless the Employee establishes that the absence is for maternity or paternity reasons.  In such a case, the Employee will not incur a one Year Break in Service until he is continuously absent from employment for two consecutive 365 day periods following a Severance from Employment Date.  For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence which commences after January 1, 1985 on account of (1) the pregnancy of the Employee; (2) the birth of the child of the Employee; (3) the adoption of a child by the Employee; or (4) the immediate post-natal or post-adoption care of a child of the Employee

       If an Employee incurs a Break in Service at a time when he is not credited with at least five (5) Years of Service for vesting purposes, and if such period of Break in Service equals or exceeds five (5) years, then his prior period of service will be forfeited.  If an Employee incurs a Break in Service at a time when he is credited with at least five (5) Years of Service for vesting purposes, such Employee will not forfeit any Service because of the Break in Service.

       (E)  <u>Exception to Break in Service Rules</u>.  Notwithstanding the foregoing, if an Employee has at least ten (10) Years of Continuous Service when he retires, and if such Employee forfeited other Years of Service on account of a break in service, he shall nevertheless be credited with the otherwise forfeited Years of Service just prior to his most recent break in service which caused the forfeiture.

       (F)  <u>No Amendment to Reduce Credited Service</u>.  No amendment to this Plan shall cause any Employee to be credited with less Service with respect to employment prior to the amendment than would have been credited under the terms of the Plan in effect prior to the amendment.

- 7 -

C - 43

(G)  Rules of Construction.  The foregoing rules for crediting Service shall be interpreted and applied in accordance with the rules prescribed in Department of Labor Regulation 29 C.F.R. § 2530.200.

(H)  Continuous Service.  "Continuous Service" means continuous full-time or part-time employment.

(I)  Special Post-1992 Rules for Benefit Accrual Purposes Only.  Notwithstanding any other provisions of this Plan, for a Participant who is a Part-Time Employee, Service will be credited for periods of part-time employment as follows:

| Hours of Service Completed in Accrual Computation Period | Percentage of Full Year of Service Credited |
|---|---|
| Less than 1,000 | 0% |
| 1,000 - 1,200 | 60% |
| 1,201 - 1,400 | 70% |
| 1,401 - 1,600 | 80% |
| 1,601 - 1,800 | 90% |
| 1,801 or more | 100% |

The accrual computation period in the case of Part-Time Employees begins on the employment commencement date as a Part-Time Employee (or re-employment commencement date as a Part-Time Employee, if applicable) and each anniversary date thereafter.

(1)  "Part-Time Employee" means any Employee whose work schedule is for less than 40 hours per week on average.

(2)  "Hour of Service" means each hour for which an Employee is:

(a)  Directly or indirectly paid or entitled to payment by the Employer for the performance of duties;

(b)  Directly or indirectly paid or entitled to payment by the Employer on account of a period of time during which no duties were performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence authorized under this Section 1.19.  However, no more than 501 Hours of Service shall be credited under this subparagraph (b) on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period).  Payments made or due under a plan maintained by the Employer solely to comply with applicable worker's compensation, unemployment compensation, or disability insurance law, or to reimburse an Employee for medical or medically-related expenses

- 8 -

shall not be considered as payments by the Employer for purposes of this subparagraph; or

(c)  Either awarded back pay or for which the Employer agrees to pay such back pay, irrespective of mitigation of damages.  An Hour of Service received under this subparagraph C shall be credited to that computation period for which the award was granted.  The same Hours of Service shall not be credited both under subparagraph A or B, as the case may be, and under this subparagraph C.  Hours of Service for which back pay is awarded or agreed to with respect to periods described in subparagraph B shall be subject to the limitations set forth in that subparagraph.

For purposes of subparagraphs (b) and (c), and for purposes of subparagraphs (a) in the case of an Employee for whom records of hours worked are not required by applicable law to be kept, an Employee shall be credited with 10 Hours of Service for each day for which he would have been required to be credited with an Hour of Service.  Hours of Service shall be credited to the applicable computation period in accordance with Department of Labor Regulation Section 2530.200b-2(b) and (c).

J.  <u>Family Medical Leave Act</u>.  Solely for purposes of calculating an Employee's Service for vesting purposes, Service shall also be credited to the extent required under the Family Medical Leave Act to avoid a Break in Service during any period that an Employee is on an approved leave of absence, provided the Employee returns to work for the Employer at the end of such leave of absence.

Section 1.20.  "Trust Fund" means any trust or insurance company contract used to fund this Plan.

- 9 -

C - 45

ARTICLE 2

ELIGIBILITY FOR PARTICIPATION

Section 2.01.  Eligibility; Entry Date.

(A)  Continuing Participants.  Each Employee who was a Participant in the Prior Plan on December 31, 1994 shall continue to be a Participant in the Plan.

(B)  New Participants.  Each other Employee, present or future, shall become a Participant, and his entry date into the Plan shall be, the date he commences employment with the Employer.

- 10 -

C - 46

ARTICLE 3

ELIGIBILITY FOR RETIREMENT

Section 3.01.  Dates of Eligibility for Retirement Benefits.  A Participant shall be entitled to retire and receive Retirement Income under the Plan on the Participant's Normal Retirement Date, Early Retirement Date, Deferred Retirement Date, or Disability Retirement Date as defined below:

(A)  Normal Retirement Date.  A Participant's Normal Retirement Date shall be the later of the date upon which he attains age sixty-five (65) or the fifth anniversary of the date he commenced participation in the Plan.

(B)  Early Retirement Date.  A Participant's Early Retirement Date shall be the first day of the month following the Participant's election to retire after attaining age fifty-five (55) and completing at least fifteen (15) Years of Continuous Service.

(C)  Deferred Retirement Date.  A Participant's Deferred Retirement Date shall be the first day of the month following the Participant's election to retire after his Normal Retirement Date.

(D)  Disability Retirement Date.  A Participant's Disability Retirement Date shall be the first day of the month following the Participant's retirement by reason of sickness or injury after completing at least fifteen (15) Years of Continuous Service and becoming permanently incapable of performing the duties of any position with the Employer with the degree of efficiency required by the Employer.  In order to retire on a Disability Retirement Date, there must be provided to the Committee satisfactory medical evidence of disability.

Section 3.02.  Mandatory Retirement for Certain Executives.

(A)  Certain Executives.  An Employee, who for the two years prior to his sixty-fifth (65th) birthday has been employed in a bona fide executive or a high policy-making position, must retire on or before the first day of the month coincident with or next following his sixty-fifth (65th) birthday provided that the Employee is then entitled to an immediate non-forfeitable annual retirement benefit from the Employer of at least $44,000.

(B)  Exception to Mandatory Retirement for Certain Executives.  The Employer, at the specific request of its Board of Directors and in its absolute discretion, may defer the mandatory retirement of Certain Executives for a period of not more than one year, subject to further deferments for periods of not more than one year, by action taken in each case not more

- 11 -

than sixty (60) days prior to the termination of any such
extended period.

ARTICLE 4

AMOUNT OF RETIREMENT INCOME

Section 4.01.  Normal Retirement Benefit.  Upon attaining one's Normal Retirement Date or Disability Retirement Date, a Participant shall be entitled to a Normal Retirement Benefit determined in accordance with this Section.

(A)  Bargaining Unit Employees.

(1)  Local 1238 Employees.  For a Participant who is a Local 1238 Employee, the Normal Retirement Benefit shall be an annual Retirement Income equal to the greater of (i) 1.45% of Average Annual Earnings multiplied by Years of Service, or (ii) Years of Service times the sum of (a) 1.30% of Average Annual Earnings up to the Average Social Security Earnings Base, plus (b) 1.60% of Average Annual Earnings in excess of Average Social Security Earnings Base.

(2)  Local 1307 Employees.  For a participant who is a Local 1307 Employee, the Normal Retirement Benefit shall be an annual Retirement Income equal to the greater of (i) 1.45% of Average Annual Earnings multiplied by Years of Service, or (ii) Years of Service times the sum of (a) 1.30% of Average Annual Earnings up to the Average Social Security Earnings Base, plus (b) 1.60% of Average Annual Earnings in excess of Average Social Security Earnings Base.

(B)  Non-Bargaining Unit Employees.  For all other Participants, the Normal Retirement Benefit shall be an annual Retirement Income equal to Years of Service times the sum of (i) 1.30% of Average Annual Earnings up to the Average Social Security Earnings Base, plus (ii) 1.60% of Average Annual Earnings in excess of the Average Social Security Earnings Base.

(C)  Minimum Benefit.  The minimum annual Normal Retirement Benefit determined under (A) or (B) shall be the lesser of (i) $1,000 or (ii) $100 for each Year of Service.

(D)  "Average Annual Earnings" means one-fifth (1/5th) of an Employee's total Compensation for the sixty (60) consecutive months of highest Compensation.

(E)  "Years of Service."  As defined in Article 1.

(F)  "Average Social Security Earnings Base" means the average (without indexing) of the taxable wage bases in effect for each calendar year during the 35-year period ending with the last day of the calendar year in which the employee terminates employment.

- 13 -

(G)  Participants Subject to 401(a)(17) Limitation.
Unless otherwise provided under the Plan, the Accrued Benefit of
each Participant affected by Code Section 401(a)(17) shall be the
greater of the Accrued Benefit determined for the Participant
under (1) or (2) below.  A Participant affected by Code Section
401(a)(17) means a Participant whose current Accrued Benefit (i)
as of a date on or after January 1, 1989, is based on
Compensation for a year beginning prior to January 1, 1989 that
exceeded $200,000, or (ii) as of a date on or after January 1,
1996, is based on Compensation for a year beginning prior to
January 1, 1996, that exceeded $150,000.

(1)  The Participant's Accrued Benefit determined
with respect to the benefit formula set forth in Section 4.01
applicable for the current Plan Year, as applied to the
Participant's total Years of Service taken into account under the
Plan for purposes of benefit accruals, or

(2)  The greater of: (a) or (b).

(a)  The sum of:

(I)  The Participant's Accrued Benefit
as of the last day of the last Plan Year beginning before January
1, 1989, frozen in accordance with Section 1.401(a)(4)-13 of the
Treasury Regulations, and

(II) The Participant's Accrued Benefit
determined under the benefit formula set forth in Section 4.01
applicable for the Plan Year beginning on or after January 1,
1989, as applied to the Employee's total Years of Service for
Plan Years beginning on or after January 1, 1989, taken into
account under the Plan for purposes of benefit accruals.

(b)  The sum of:

(I)  The Participant's Accrued Benefit
as of the last day of the last Plan Year beginning before January
1, 1996, frozen in accordance with Section 1.401(a)(4)-13 of the
Treasury Regulations, and

(II) The Participant's Accrued Benefit
determined under the benefit formula set forth in Section 4.01
applicable for the Plan Year beginning on or after January 1,
1996, as applied to the Employee's total Years of Service for
Plan Years beginning on or after January 1, 1996, taken into
account under the Plan for purposes of benefit accruals.

Section 4.02.  Early Retirement Benefit.

(A)  Early Retirement at Age Fifty-Five (55) With
Fifteen (15) Years of Continuous Service.  Upon attaining one's
Early Retirement Date (as defined in Section 3.01(B)), a

- 14 -

C - 50

Participant shall be entitled to an Early Retirement Benefit determined under Section 4.01 reduced as follows:

(1)  For a Participant who has attained age sixty (60) but is not eligible for an unreduced benefit under paragraph 4.02(B), the early retirement reduction shall be 5%;

(2)  For a Participant who has attained age fifty-five (55) but has not reached age sixty (60), the early retirement reduction shall be 5% per year for each year that early retirement precedes the Participant's sixtieth (60th) birthday.

(B)  <u>Early Retirement at Age Sixty (60) with Twenty (20) Years of Continuous Service</u>.  A Participant who has attained age sixty (60) and completed twenty (20) years of Continuous Service shall, subject to the limitations set forth herein, be entitled to an Early Retirement Benefit equal to the Normal Retirement Benefit determined for him under Section 4.01 without any reduction on account of retirement prior to age sixty-five (65).

Section 4.03.  <u>Deferred Retirement Benefit</u>.

(A)  A Participant who retires after the Normal Retirement Date shall be entitled to receive on a Deferred Retirement Date the Retirement Income determined under Section 4.01 based on Years of Service and Average Social Security Earnings as of the Normal Retirement Date.

(B)  Postponement of Retirement Income When Employed. If a Participant elects to defer retirement past the Normal Retirement Date and continues in the employ of the Employer, the payment of Retirement Income shall be suspended for each calendar month thereafter that the Participant completes at least forty (40) Hours of Service for the Employer (determined in accordance with actual hours worked as defined in Department of Labor regulations at 29 CFR § 2530.200b-2(a)(1) and (2)).  No payment shall be suspended unless the Committee, in accordance with Department of Labor regulations found at 29 CFR § 2530.203-3, gives the Participant written notice by personal delivery or first class mail, during or prior to the first month in which the Participant would have been entitled to Retirement Income had he retired on his Normal Retirement Date, that payments are being suspended.

(C)  For years commencing after December 31, 1989, in the event the Participant continues in the employ of the Employer after he has attained the age of 70-1/2, payments will commence as set forth in Section 10.04.

- 15 -

Section 4.04.  <u>Disability Retirement Benefit</u>.

(A)  <u>Bargaining Unit Employees</u>.

(1)  <u>Local 1238 Employees</u>.  A Participant who is a Local 1238 Employee and who is eligible to retire pursuant to Section 3.01(D) shall be entitled to receive on a Disability Retirement Date, the Retirement Income determined under Section 4.01(A) based on the Participant's Years of Service, Average Annual Earnings, and Average Social Security Earnings Base as of the Disability Retirement Date, except that in the case of disability before age sixty-five (65), such a Participant shall receive a Retirement Income equal to 1.45% of Average Annual Earnings multiplied by Years of Service for the period of time prior to a determination that the Participant is eligible to receive disability benefits under the Social Security Act.  Such Retirement Income may commence upon application for such benefits pending subsequent favorable disposition of the application.

(2)  <u>Local 1307 Employees</u>.  A Participant who is a Local 1307 Employee and who is eligible to retire pursuant to Section 3.01(D) shall be entitled to receive on a Disability Retirement Date, the Retirement Income determined under Section 4.01(A), based on the Participant's Years of Service, Average Annual Earnings, and Average Social Security Earnings Base as of the Disability Retirement Date, except that in the case of disability before age sixty-five (65), such a Participant shall receive a Retirement Income equal to 1.45% of Average Annual Earnings multiplied by Years of Service for the period of time prior to a determination that the Participant is eligible to receive disability benefits under the Social Security Act.  Such Retirement Income may commence upon application for such benefits pending subsequent favorable disposition of the application.

(B)  <u>Non-Bargaining Unit Employees</u>.  A Participant who is a Non-Bargaining Unit Employee and who is eligible to retire pursuant to Section 3.01(D) shall be entitled to receive on a Disability Retirement Date the Retirement Income determined under Section 4.01(B) based on the Participant's Years of Service, Average Annual Earnings and Average Social Security Earnings Base as of the Disability Retirement Date, except that in case of disability before age sixty-five (65), such a Participant shall receive a Retirement Income equal to 1.3% of Average Annual Earnings multiplied by Years of Service for the period of time prior to a determination that the Participant is eligible to receive disability benefits under the Social Security Act.  Such Retirement Income may commence upon application for such benefits pending subsequent favorable disposition of the application.

- 16 -

C - 52

Section 4.05.  <u>Code Section 415 Retirement Income
Limitations</u>.

(A)  <u>General Rule</u>.  For Plan Years beginning after
December 31, 1986, notwithstanding any provisions of the Plan to
the contrary, in no event shall the projected annual benefit
payable to the Participant in the form of a straight life annuity
(with no ancillary benefits) exceed the lesser of -

(1)  $90,000 (or such higher amount as may be
allowed pursuant to Code Section 415(d), or

(2)  100 percent of the Participant's average
compensation for his high three years.

(B)  <u>Incorporation of Code Section 415</u>.  In determining
whether the annual benefit exceeds the limitation set forth under
the general rule, the provisions of Code Section 415 and the
regulations issued thereunder are herein incorporated by
reference.

(C)  <u>Limitation in Case of Defined Benefit Plan and
Defined Contribution Plan for Same Employee</u>.  In the event a
Participant is also a participant under a defined contribution
plan maintained by the Company, then in no event will retirement
income under this Plan with respect to any Participant cause the
sum of the defined benefit plan fraction and the defined
contribution plan fraction, as those terms are defined under Code
Section 415 to exceed 1.0.  If the sum of the fractions with
respect to any Participant for any Plan Year would otherwise
exceed 1.0, the retirement income or annual additions with
respect to such Participant shall be reduced as determined by the
Committee after consultation with the Participant to comply with
such limitation.

Section 4.06.  <u>Resumption of Employment After
Retirement Income Commences</u>.

(A)  <u>Discontinuance of Retirement Income When
Reemployed</u>.  If a Participant retires and begins receiving
Retirement Income and then returns to the employ of the Employer,
the payment of his Retirement Income shall be suspended for each
calendar month thereafter that he completes at least forty (40)
hours of service for the Employer (determined in accordance with
actual hours worked as defined in Department of Labor regulations
at 29 CFR § 2530.200b-2(a)(1) and(2).  No payment shall be
suspended unless the Committee, in accordance with Department of
Labor regulations found at 29 CFR § 2530.203-3, gives the
Participant written notice by personal delivery or certified
mail, during or prior to the first month in which payments are
withheld, that payments are being suspended.  In addition,
payments shall be suspended only if such suspension complies with
the minimum distribution requirements set forth in Section 10.04.

- 17 -

(B)  Recalculating Retirement Income After Subsequent Retirement.  In the case of such a Participant whose Retirement Income payments commenced to be paid before his Normal Retirement Date, upon subsequent retirement, the Retirement Income benefit shall be recomputed, based on Retirement Income accrued pursuant to Section 4.01 during his employment prior and subsequent to such return to employment, and then reduced on an actuarial basis to take account of monthly Retirement Income payments previously received by him.

Section 4.07.  Cost of Living Income.  Each retired Employee or surviving spouse of each such retired Employee, retired prior to and receiving retirement income prior to January 1, 1991 shall receive a one-time increase in annual retirement income of 1/2% for each year of retirement or fraction thereof prior to January 1, 1991.

Section 4.08.  Adjustment to Reflect Distributions.  In the event a Participant commences receiving retirement income prior to termination of employment pursuant to Section 10.04, his retirement income shall be adjusted to reflect such distributions.

Section 4.09.  Special Voluntary Retirement Program. Notwithstanding Sections 3.01 and 4.01 through 4.04 of this Plan, benefits shall be payable pursuant to Section 4.09(B), with respect to any Non-Bargaining Unit Employee (except Executive Vice Presidents and above), who satisfies the eligibility requirements of Section 4.09(A)(1) and with respect to any Local 1238 Employee who satisfies the eligibility requirements of Section 4.09(A)(2), and with respect to any Local 1307 Employee who satisfies the eligibility requirements of Section 4.09(A)(3).

(A)  Eligibility.

(1)  Non-Bargaining Unit Employees.  A Participant who is a Non-Bargaining Unit Employee shall be eligible for benefits under Section 4.09(B) if, as of December 31, 1994, the Participant is (or will be) age 55 or over and has completed (or will have completed) at least 10 Years of Service.  In addition, the Participant must:

(a)  be actively at work on June 15, 1994, or any other date on or before August 31, 1994;

(b)  submit a written election to retire during the election window set by the Company not to exceed three months and beginning no earlier than May 1, 1994, and ending no later than September 30, 1994; and

(c)  actually retire as of the date selected by the Company between July 1, 1994, and February 1, 1995.  In the case of General Managers and above, Plant Managers, and other

- 18 -

C - 54

selected individuals, the retirement date may be extended at the Company's discretion.

        (2)  <u>Local 1238 Employees</u>.  A Participant who is a Local 1238 Employee shall be eligible for benefits under Section 4.09(B) if, as of December 31, 1994, the Participant is (or will be) age 55 or over and has completed (or will have completed) at least 10 Years of Service.  In addition, the Participant must:

        (a)  be actively at work on July 15, 1994, or any other date on or before September 30, 1994;

        (b)  submit a written election to retire during the election window set by the Company not to exceed three months and beginning no earlier than May 1, 1994, and ending no later than September 30, 1994; and

        (c)  actually retire as of the date selected by the Company between August 1, 1994, and February 1, 1995.  In the case of selected individuals, the retirement date may be extended at the Company's discretion.

        (3)  <u>Local 1307 Employees</u>.  A Participant who is a Local 1307 Employee shall be eligible for benefits under Section 4.09(B) if, as of December 31, 1994, the Participant is (or will be) age 55 or over and has completed (or will have completed) at least 10 Years of Service.  In addition, the Participant must:

        (a)  be actively at work on August 1, 1994, or any other date on or before September 30, 1994;

        (b)  submit a written election to retire during the election window set by the Company not to exceed three months and beginning no earlier than May 1, 1994, and ending no later than September 30, 1994; and

        (c)  actually retire as of the date selected by the Company between September 1, 1994, and February 1, 1995. In the case of selected individuals, the retirement date may be extended at the Company's discretion.

        (B)  <u>Benefits</u>.  A Participant who elects to retire under subsection (A) shall have his or her benefits calculated in accordance with the following provisions:

        (1)  The early retirement reductions set forth in Section 4.02 shall be inapplicable to the Participant's accrued benefit as modified hereunder.

        (2)  An additional supplemental benefit shall be paid equal to an increase in the Participant's retirement benefit calculated by assuming that the Participant's total Years of Service is increased by five years.

- 19 -

C - 55

(C)   <u>1994 Retirees</u>.

(1)   Former Non-Bargaining Unit Employees who retired in 1994 on or before July 1, 1994, and former Local 1238 Employees and Local 1307 Employees who retired in 1994 on or before April 1, 1994, shall be granted an increase in retirement benefits, effective July 1, 1994, in accordance with Section 4.09(B).

(2)   Former Local 1238 Employees who retired on May 1, June 1, or July 1, 1994, shall be granted an increase in retirement benefits effective August 1, 1994, in accordance with Section 4.09(B).

(3)   Former Local 1307 Employees who retired (or who elected to retire) as of any retirement date from May 1, 1994, to February 1, 1995, shall be granted an increase in retirement benefits effective September 1, 1994, in accordance with Section 4.09(B).

- 20 -

C- 56

ARTICLE 5

FORMS OF RETIREMENT INCOME PAYMENT;
SURVIVOR BENEFITS

Section 5.01.  <u>Normal Form of Retirement Income</u>.

(A)  <u>Monthly Payments to the Retired Participant for Life</u>.  Retirement Income payments to a Participant who retires under Article 3 shall be paid monthly commencing on the first day of the month coincident with or immediately following the Participant's Retirement Date and terminating with the last monthly payment due prior to his death.  In the event the Participant retires on a Deferred Retirement Date, the benefit shall not be less than the amount payable on the Normal Retirement Date.

(B)  <u>Post-Retirement Survivor's Benefits</u>.

(1)  Participants With Five (5) Years of Service (Effective 1/1/87).  If a Participant, on the date of retirement, is a married Participant and has completed at least Five (5) Years of Service, the normal form of Retirement Income shall be a joint and 50% survivor annuity consisting of an unreduced annuity paid for the life of the Participant and, upon his death, one-half of such unreduced annuity paid to the surviving spouse for life, such survivor's benefits to be paid in equal monthly installments commencing on the first day of the month immediately following the Participant's death.  Such survivor annuity shall be paid only to a spouse who was married to the Participant on the date of retirement.

Section 5.02.  <u>Pre-Retirement Survivor's Benefits (Effective 1/1/87)</u>.  In the case of a Participant who dies while actively employed by the Employer at a time when he is a married Participant and has completed at least five (5) Years of Service or attained his Normal Retirement Date, the surviving spouse of such Participant will receive a survivor annuity equal to 50% of the Participant's Normal Retirement Benefit calculated under Section 4.01 based on his Service and Compensation to the date of his death, such payments to be made in equal monthly installments to commence on the first day of the month coincident with or immediately following the Participant's death and to cease with the last monthly payment due prior to the spouse's death.  This survivor annuity will not be reduced on account of the age of the Participant or of the surviving spouse.

- 21 -

ARTICLE 6

TERMINATION OF EMPLOYMENT PRIOR TO RETIREMENT; VESTING

Section 6.01.  <u>Termination Prior to the Completion of Five (5) Years of Service (Effective 1/1/87)</u>.  If a Participant's employment is terminated prior to his being eligible for retirement under Article 3 and prior to his being credited with at least five (5) Years of Service, he shall not be entitled to any benefits under the Plan.

Section 6.02.  <u>Termination After the Completion of Five (5) Years of Service (Effective 1/1/87)</u>.  If a Participant's employment is terminated prior to his being eligible for retirement under Article 3, but after being credited with at least five (5) Years of Service, the Participant shall be eligible to receive Retirement Income as follows:

(A)  Commencing on the Normal Retirement Date, the Normal Retirement Benefit determined under Section 4.01; or

(B)  In the case of a Participant who completed at least Fifteen (15) Years of Continuous Service prior to termination of employment, he may elect to receive, commencing on the first day of any month coincident with or following his fifty-fifth (55th) birthday (his Early Retirement Date), the Actuarial Equivalent of the Normal Retirement Benefit determined under Section 4.01; or

(C)  On termination of employment, as required under Section 6.03(B).

Section 6.03.  <u>Forms of Retirement Income</u>.

(A)  <u>For a Married Participant</u>.  Except as provided in Section 6.03(B), in the case of a married Participant who is eligible for Retirement Income under this Article, the Retirement Income determined under Section 6.02 shall be paid in the form of a free joint and fifty percent (50%) surviving spouse's annuity which shall consist of a retirement annuity paid to the Participant for life with fifty percent (50%) of such annuity continuing to the surviving spouse for life; provided, the spouse was married to the Participant at the time of termination from employment.  If the spouse was not married to the Participant at the time of termination from employment, the normal form of retirement income shall be determined as provided in paragraphs (B) and (C).  Payments of retirement or survivor's benefits will be made in equal monthly installments starting on the first day of the month coincident with or immediately following the Participant's retirement or death, as the case may be.

(B)  <u>Mandatory Lump Sum Distribution (Effective 6/30/87)</u>.  In the case of an Employee whose vested Accrued

- 22 -

C - 58

Benefit under the Plan has a present value of Three Thousand Five Hundred Dollars ($3,500) or less, the full amount of such benefit shall be payable in a lump sum as soon as administratively feasible after termination of employment. In the event the vested Accrued Benefit is zero, the Participant will be deemed to have received a distribution of his Accrued Benefit. The present value of such benefit shall be calculated using the interest rate which would be used (as of the date of distribution) by the Pension Benefit Guaranty Corporation for purposes of determining the present value of a lump sum distribution on plan termination.

(C) <u>For Certain Married Participants who Terminated After September 2, 1974</u>. In the case of a married Participant who had an hour of service on or after September 2, 1974 and who is not eligible for retirement income under paragraphs (A) and (B) above, the normal form of retirement income shall be a joint and 50% survivor annuity consisting of a reduced annuity paid for the life of the Participant and, upon his death, one-half of such reduced annuity paid to the surviving spouse. Such joint and 50% survivor annuity shall be the Actuarial Equivalent of the Participant's Normal Retirement Benefit paid in the form of a single life annuity. The survivor annuity described in this paragraph shall be paid only to a spouse who was married to the Participant on the date of retirement. Payments of retirement or survivor's benefits will be made in equal monthly installments starting on the first day of the month coincident with or immediately following the Participant's retirement or death, as the case may be.

(1) <u>Participant's Right to Elect</u>. In lieu of the Normal Form of Retirement Income provided in Section 6.03(C), a married Participant who has satisfied the conditions set forth in paragraph (C) of this Section, may elect to receive Retirement Income in the form of a single life annuity which shall be the Actuarial Equivalent of the Normal Form of Retirement income.

(2) <u>Committee to Inform Participant of Option</u>. At least nine (9) months prior to the scheduled commencement of the payment of any benefits, the Committee shall furnish a Participant with a written explanation of the terms and conditions of the joint and survivor annuity, the Participant's right to elect, revoke or re-elect to waive the joint and survivor annuity, the effect of such an election and the rights of the Participant's spouse to consent to such an election. An election to waive the joint and survivor annuity and to receive retirement income in a single life annuity may be made, revoked or re-elected under rules prescribed by the Committee at any time within the election Period as defined in paragraph (3) of this section.

(3) <u>Conditions for Election of Optional Form of Benefit</u>. For Participants with an Hour of Service or paid leave on or after August 23, 1984, any election to waive the joint and

- 23 -

survivor annuity in favor of the single life annuity must be made
by the Participant in writing during the election period; must
contain the names of the designated Beneficiary or Beneficiaries,
if applicable; and shall be consented to by the Participant's
spouse.  Such spouse's consent shall acknowledge the form of
benefit payment and designated Beneficiary or Beneficiaries;
shall be irrevocable; must acknowledge the effect of such
election; and must be witnessed by a notary public.  Such consent
shall not be required if it is established to the satisfaction of
the Committee that the required consent cannot be obtained
because there is no spouse, the spouse cannot be located, or
other circumstances that may be prescribed under the applicable
Treasury Regulations.  The election made by the Participant and
consented to by his spouse may be revoked by the Participant in
writing without the consent of the spouse at any time during the
Election Period.  The number of revocations shall not be limited.
Any new election must comply with the requirements of this
paragraph.  A former spouse's waiver shall not be binding on a
new spouse.

          (a)  The Election Period to waive the joint
and survivor annuity shall be the 90 day period ending on the
"Annuity Starting Date."

          (b)  The "Annuity Starting Date" means the
first day of the first period for which an amount is paid as an
annuity or other form.  The Annuity Starting Date shall be
determined in accordance with the applicable Treasury
Regulations.

     (D)  Other Participants.  In the case of all other
Participants eligible for Retirement Income under this Section,
each shall receive monthly the Retirement Income payments
determined under Section 6.02, commencing on a Participant's
Retirement Date and terminating with the last monthly payment due
prior to death.  No survivor's benefits shall be paid after the
Participant's death.

     Section 6.04.  Pre-Retirement Death Benefit For a
Terminated Vested Participant.

          (A)  Participants Who Terminate Employment on or After
January 1, 1987.  In the case of a married Participant whose
employment is terminated other than by retirement or death at a
time when the Participant has completed at least five (5) Years
of Service, if such Participant dies prior to the commencement of
Retirement Income under this Article, the surviving spouse will
receive a survivor annuity equal to fifty percent (50%) of the
Participant's Normal Retirement Benefit described in Section 4.01
based on Service and Compensation to the date of termination of
employment, such payments to be made in equal monthly
installments to commence on the first day of the month coincident
with or immediately following the Participant's death and to

- 24 -

cease with the last monthly payment due prior to the spouse's death.  The survivor annuity will not be reduced on account of the age of the Participant or of the surviving spouse.

(B)  <u>Participants Who Terminated Employment Before January 1, 1987</u>.  In the event of the death of a married Participant who terminated employment before January 1, 1987, the right of the surviving spouse to a survivor benefit shall be determined under the terms of the Plan in effect on the date of termination of employment.

- 25 -

C - 61

ARTICLE 7

FINANCING THE PLAN

Section 7.01.  <u>No Participant Contributions</u>.
Participants shall make no contributions under the Plan.

Section 7.02.  <u>Employer Contributions</u>.  The Employer
shall make such contributions from time to time which it shall
deem necessary to provide the benefits of this Plan.  The minimum
amount of such contributions shall be that amount which is
required to meet the minimum funding standard of ERISA or
otherwise to maintain the Plan's qualification under Code Section
401(a).  However, the Employer is under no obligation to make any
contributions under the Plan after the Plan is terminated,
whether or not benefits accrued or vested prior to such date of
termination have been fully funded.  Any forfeitures under the
Plan shall be applied to reduce the Employer's periodic
contributions and shall not increase the benefit otherwise
payable to any Participant.

Section 7.03.  <u>Plan Funds to be Held in Trust</u>.  All
Employer contributions in connection with the Plan shall be paid
to a Trustee under a Trust Agreement established in connection
with the Plan.  All such contributions and the earnings thereon
shall be held and disbursed in accordance with the provisions of
the Plan and the Trust Agreement.  No person shall have any
interest in, or right to, any part of the funds held in the
Trust, except as expressly provided in the Plan and the Trust
Agreement.

Section 7.04.  <u>Trust for the Exclusive Benefit of Plan
Participants</u>.  The Plan assets held in trust shall not inure to
the benefit of the Employer prior to the satisfaction of all
liabilities of the Plan and shall be held for the exclusive
purposes of providing benefits to Participants and/or their joint
annuitants and beneficiaries, and for defraying the reasonable
expenses of administering the Plan.  However, if an Employer
contribution is conditioned upon deductibility of the
contribution under Code Section 404, then, to the extent the
deduction is disallowed, the contribution (to the extent
disallowed) shall be returned to the employer within one (1) year
after the date the deduction is disallowed.  In addition, if a
contribution or any portion thereof is made by the Employer by a
mistake of fact, the contribution or such portion shall be
returned to the Employer within one (1) year after the date of
payment.

- 26 -

ARTICLE 8

PLAN ADMINISTRATION AND RESPONSIBILITIES

Section 8.01.  <u>Named Fiduciary</u>.  The "Named Fiduciary" of the Plan as described in Section 402 of ERISA shall be the Employer.

Section 8.02.  <u>Allocation of Powers and Responsibilities</u>.  The powers and responsibilities of the "Named Fiduciary" with respect to the Plan are allocated as follows:

(A)  To the Board of Directors of the Employer:

(1)  To establish, continue, amend, modify or terminate the Plan;

(2)  To select a Trustee of the Plan assets;

(3)  To approve the selection of any investment manager or managers to manage and control (including the power to acquire and dispose of) any Plan assets;

(4)  To appoint an official of the Employer who shall maintain a funding policy consistent with the business requirements of the Employer and the requirements of law; and

(5)  To appoint the members of a Retirement Plan Investment Committee ("Investment Committee").

(B)  To the Retirement Plan Investment Committee:

(1)  To manage and control the Plan assets including the power to appoint an investment manager or managers to manage and control (including the power to acquire and dispose of) any Plan assets.  Such investment manager must be approved by the Board of Directors and must

(a)  be (i) registered as an investment advisor under the Investment Advisors Act of 1940, (ii) a bank, as defined in that Act, or (iii) an insurance company qualified to manage, acquire or dispose of any plan asset under the laws of more than one state; and

(b)  acknowledge in writing that it is a fiduciary with respect to the Plan.

(C)  To the President of the Company:

(1)  To select the members of the Retirement Plan Committee.

- 27 -

C - 63

(D)   To the Retirement Plan Committee (as created and defined in Section 8.06 below):

(1)   To recommend to the Board of Directors a Plan whose provisions are most compatible with the Company's desire to provide retirement and other benefits for its Employees and its financial ability to provide such benefits;

(2)   To interpret the Plan and determine all questions arising in the administration, interpretation, and application of the Plan, including but not limited to questions of the eligibility of employees for benefits and the status and rights of Participants, Beneficiaries and other persons;

(3)   To require any person to furnish such information as may be required for the proper administration of the Plan as a condition to receiving any benefits under the Plan;

(4)   To instruct the Trustee as to disbursement of Plan funds to pay benefits in accordance with the terms of the Plan;

(5)   To administer the claims procedure (as established in Section 8.10) in accordance with the terms of the Plan and in a manner which treats all claimants fairly and equitably;

(6)   To maintain all Plan records required by law;

(7)   To ensure that all reports and disclosure statements are filed as required by law;

(8)   To comply with all requirements and take whatever action is necessary to maintain the Plan as a qualified plan under Code Section 401(a);

(9)   To make rules and regulations for the administration of the Plan not inconsistent with the terms of the Plan; and

(10) With the advice of counsel, to make such amendments to the Plan as might be required by law or necessary to maintain the tax qualified status of the Plan, or to make such technical or clarifying amendments as may be necessary or desirable to improve administration of the Plan or to carry out the intent of amendments approved by the Board of Directors and to report such action to the Board of Directors annually.

Section 8.03.   <u>Delegation of Powers and Responsibilities</u>.  Any powers and responsibilities of the "Named Fiduciary" (other than any powers and duties related to the management and control of Plan assets) allocated under Section 8.02 may be further delegated by a written resolution of the Board of Directors, the Investment Committee, or the Retirement

Plan Committee, as the case may be.  Any person or legal entity may serve in more than one fiduciary capacity with respect to the Plan and Trust.

    Section 8.04.  <u>Employment of Consultants and Counsel</u>. The Board of Directors, the Investment Committee, or the Retirement Plan Committee, or any person delegated the powers and responsibilities of any of them pursuant to Section 8.03 may employ one or more persons to render advice with regard to powers and responsibilities allocated under Section 8.02.

    Section 8.05.  <u>Responsibilities Several and Not Joint</u>. The powers and responsibilities allocated to the Board of Directors, the Investment Committee, or the Retirement Plan Committee or those powers and responsibilities delegated to any other person pursuant to Section 8.03 shall be several and not joint.

    Section 8.06.  <u>Retirement Plan Committee</u>.  There is hereby created a Retirement Plan Committee ("Committee") to be composed of at least three members.  The members shall be appointed by the President of the Company and shall serve without compensation at the pleasure of the President.  Vacancies shall be filled by the President.  The Committee shall have the duties and responsibilities with respect to the administration of the Plan more particularly set out above in Section 8.02.  The Committee may act at meetings at which a majority of its members shall be present.  The action of a majority of the Committee shall constitute the action of the Committee.  The Committee may also act by written resolution without the holding of a meeting. Any resolution concurred in by a majority of its members shall be the action of the Committee.  The decision of the Committee upon any questions of fact, interpretation, definitions, or administration under the Plan shall be conclusive and binding on all persons.  Written minutes shall be kept of the Committee's meetings and actions.  No member of the Committee who is a Participant in the Plan shall vote on any matter affecting his individual account.  The expenses of the Committee shall be paid by the Company.

    Section 8.07.  <u>Administrator, Plan Administrator</u>.  The Administrator shall be the person so designated in writing by the Retirement Plan Committee.  The "Plan Administrator" for the purposes of ERISA shall be the Employer.

    Section 8.08.  <u>Agent For Receipt of Legal Process</u>.  The Employer is designated as the agent for the receipt of service of process.

    Section 8.09.  <u>Standard of Fiduciary Duty Under ERISA</u>. For the purposes of liability under Section 404 of ERISA, the standard of performance of any person who has (or is delegated pursuant to Section 8.03 above) any responsibility with respect

- 29 -

to the Plan shall be to discharge any such responsibility solely in the interest of the Plan Participants and beneficiaries and

(A)   for the exclusive purpose of:

(1)   providing benefits to Participants and their beneficiaries; and

(2)   defraying reasonable expenses of administering the Plan;

(B)   with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of any enterprise of a like character and with like aims; and

(C)   with respect to the responsibility for investment of the Plan assets, by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly not prudent to do so.

Section 8.10.   <u>Standard of Fiduciary Duty Under Any Other Law</u>.  For the purposes of liability under any state law or any federal law (other than ERISA), the standard of performance of any person who has (or is delegated pursuant to Section 8.03 above) any responsibility with respect to the Plan shall be limited to the exercise of good faith in the exercise of any such responsibility.

Section 8.11.   <u>Procedure for Filing A Claim for Benefits</u>.

(A)   <u>Claim Forms</u>.  The Committee shall provide on request forms on which any person may file a claim for benefits under the Plan.  A claim shall be filed with the Committee.

(B)   <u>Notice of Denial of Claim</u>.  If a claim is wholly or partially denied, written notice of the decision shall be given to the claimant within a reasonable time after the filing of the claim.  Such notice shall be written in a manner calculated to be understood by the claimant and shall contain the following:

(1)   The specific reason or reasons for denial;

(2)   Reference to specific Plan provisions on which the denial is based;

(3)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

- 30 -

(4)    An explanation of the Plan's claim review procedure.

(C)    <u>Review of Claim Denial</u>.  A claimant whose claim for benefits has been denied in whole or in part in accordance with paragraph (B) of this Section may obtain a review of such denial by making a written request to the Committee within sixty (60) days of notice of any such denial.  The time for requesting such a review may be extended by the Committee under circumstances where the claimant's failure to request a review within the sixty (60) day limit is excusable.  For the purposes of this right to request a review of a claim denial, a claimant shall be deemed to have received notice of denial of a claim if the claimant receives no notice of the granting or denial of a claim within sixty (60) days of making such claim.  A claimant shall be entitled to review all Plan documents pertaining to his claim.  A claimant shall be entitled to submit written arguments in support of his claim.

(D)    <u>Notice of Denial of Claim After Review</u>.  If a claim is wholly or partially denied upon a review in accordance with paragraph (C) of this Section, written notice of such decision shall be given to the claimant within sixty (60) days of the filing of the request for review, unless special circumstances require an extension of time for processing, in which case a decision shall be rendered as soon as possible but not later than one hundred twenty (120) days after receipt of a request for review.  If such an extension of time for review is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension.  The decision on review shall be in writing and shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, and shall include specific references to the pertinent plan provisions on which the decision is based.

ARTICLE 9

AMENDMENT OR TERMINATION

Section 9.01.  _Employer's Right to Amend the Plan_.  The Employer reserves the right at any time and from time to time, and retroactively if deemed necessary or appropriate to meet the requirements of Code Section 401(a), ERISA or any other law affecting the Plan, to amend any provision of the Plan; provided, however, that no such amendment shall make it possible for any part of the corpus or income of the Trust Fund to be used for, or diverted to, purposes other than for the exclusive benefit of Participants and their joint annuitants and beneficiaries under the Plan prior to the satisfaction of all Plan liabilities, nor shall any amendment make it possible to deprive any Participant of a previously accrued benefit, or eliminate or reduce an early retirement benefit or a retirement-type subsidy (as defined in the applicable regulations) or eliminate an optional form of benefit, except to the extent permitted by Code Section 412(c)(8).  Amendments to the Plan may be adopted by action of the Board of Directors or the Retirement Plan Committee as set forth in Article 8.

Section 9.02.  _Participant's Rights Not to Be Affected By Merger_.  In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, each Participant (if the Plan were to terminate immediately after the merger, consolidation, or transfer) shall be entitled to receive a benefit which is not less than the benefit he would have been entitled to receive if the Plan had terminated immediately before the merger, consolidation, or transfer.

Section 9.03.  _Distribution of Assets Upon Termination of Plan_.  While the Employer intends to continue the Plan indefinitely, nevertheless it assumes no contractual obligation as to its continuance and the Board of Directors may terminate the Plan at any time.  In the event there is a termination or partial termination of the Plan, all Participants' interests in the Plan shall be nonforfeitable to the extent of the sufficiency of the Plan assets and such assets shall be allocated in accordance with ERISA § 4044 for the purposes of providing Retirement Income and survivor's benefits accrued under the Plan to the date of the termination of the Plan as follows:

(A)  _Benefits in Pay Status 3 Years Prior to Plan Termination_.  First, an amount equal to the value of the Retirement Income (excluding any increases in such Retirement Income resulting from Plan amendments during the preceding five (5) years), accrued to all Participants, their joint annuitants and beneficiaries:

(1)  To whom Retirement Income benefits have been in pay status for at least three (3) years prior to the date of

- 32 -

Plan termination (taking the lowest benefit in pay status during the last three (3) years preceding the date of Plan termination); and

      (2)   To whom Retirement Income benefits (other than those described in the foregoing subparagraph) would have been in pay status had an eligible Participant actually retired on a Retirement Date at least three (3) years prior to the date of Plan termination, as if such Retirement Income benefits had commenced under the normal form of benefit payment under the Plan as of the beginning of such period.

      (B)  <u>Other Benefits Guaranteed by the PBGC</u>.  Second, an amount equal to the value of all other nonforfeitable benefits under the Plan (other than those benefits which become non-forfeitable solely because of the termination of the Plan) to the extent such benefits are guaranteed by the Pension Benefit Guaranty Corporation.

      (C)  <u>All Other Nonforfeitable Benefits</u>.  Third, an amount equal to the value of all other nonforfeitable benefits under the Plan.

      (D)  <u>All other Benefits</u>.  Fourth, an amount equal to the value of all other benefits under the Plan.

      (E)  <u>Excess To Be Refunded To Employer</u>.  Fifth, if any amounts remain after complete allocation for the purposes of paragraphs (A) through (D) above, such amounts shall be paid to the Employer.

      Such allocation for Participants and beneficiaries in each of the above priority groups will be on the basis of the lump sum equivalent value of the retirement benefit of each determined as of the date the Plan was terminated on the basis of annuity rates currently available from a leading insurance company designated by the Committee for this purpose, with no commitment to actually purchase annuities from such insurance company.  The market values available for each priority group will be allocated to Participants and beneficiaries in that group up to but not exceeding lump sum equivalent value.  In priority group First, the allocation will be pro-rata.  Except as otherwise required by ERISA § 4044(b), in priority group Second, Third and Fourth, it will be in order of age, oldest first.  Any market value remaining after full allocation to all Participants and beneficiaries will be allocated to the Employer.

      Any fluctuation in market value, up or down, prior to the date of actual application or distribution will be shared pro-rata by the persons, including the Employer, to whom such market value was allocated pursuant to the preceding paragraph.  Eventual distribution to Participants, beneficiaries, and the

C-69

Employer will be on the basis of market values at the time of such distribution.

Section 9.04.  <u>Allocations Within Priority Groups</u>.  In the event assets shall be insufficient to provide in full the interests described in the priority groups identified in paragraphs (A), (C) or (D) of Section 9.03, the available assets for such groups shall be allocated among the individuals' interests described in such groups, pro-rata among such individuals' interests on the basis of the present value (as of the Plan termination date) of their respective interests as described in such paragraph, and not previously provided for under the Trust Agreement.  In the event that the assets available for allocation under paragraph (B) of Section 9.03 are insufficient to satisfy in full the benefits of Participants described within that paragraph, the available assets for such class shall be allocated on the basis of the benefits of Participants of that class and their joint annuitants and beneficiaries, not previously provided for under the Trust Agreement, based upon the Plan as in effect at the beginning of the five (5) year period ending on the date of Plan termination; or, if additional assets remain available for allocation under such paragraph (B), the available assets shall be allocated on the basis of the Plan as amended by the most recent Plan amendment effective during such five (5) year period, under which the assets available for allocation are sufficient to satisfy in full the benefits of the class of individuals described in paragraph (B) of Section 9.03; and any assets thereafter remaining to be allocated under such paragraph (B) shall be allocated on the basis of the Plan as amended by the next succeeding Plan amendment effective during such five (5) year period.

Section 9.05.  <u>Provision to Prevent Discrimination.</u>  In the event of termination of the plan, the Benefit payable to any Highly Compensated Employee (and any former Highly Compensated Employee) will be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(A)  The annual payments under the Plan to or on behalf of any employee described in paragraph (C) shall be restricted to an amount in each taxable year of the Employee equal to the payments that would be made to or on behalf of the Employee under:

(1)  A straight life annuity that is the Actuarial Equivalent of the Accrued Benefit and other benefits to which the Employee is entitled under the Plan (other than a Social Security Supplement), and

(2)  The amount of the payments that the Employee is entitled to receive under a Social Security Supplement.

- 34 -

(B)  The restrictions in paragraph (A) above shall not apply, if any of the following requirements are satisfied:

(1)  After payment to or on behalf of an Employee described in paragraph (C) of all benefits payable to or on behalf of the Employee, the value of Plan assets equals or exceeds 110% of the value of Current Liabilities;

(2)  The value of benefits payable to or on behalf of an Employee described in paragraph (C) is less than 1% of the value of the Current Liabilities before distribution; or

(3)  The value of the benefits payable to or on behalf of an Employee described in paragraph (C) does not exceed the amount described in Section 411(a)(11)(A) of the Code.

(C)  The Employees whose benefits are restricted on distribution include all Participants and former Participants who are Highly Compensated Employees.  A Participant or former Participant who is a Highly Compensated Employee is not subject to restriction under this Section if he is not one of the 25 Employees and former Employees of the employer with the largest amount of Compensation in the current or in any prior Plan Year.

(D)  Any reasonable and consistent method selected by the Committee may be used to determine the value of Current Liabilities and Plan Assets.

(E)  For purposes of this Section, the following definitions shall apply:

(1)  "Accrued Benefit" shall have the meaning set forth in Section 1.00.

(2)  "Actuarial Equivalent" shall have the meaning set forth in 1.01.

(3)  "Benefit" shall include, among other benefits under the Plan, loans in excess of the amounts set forth in Section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living or former Employee, and any death benefits under the Plan not provided for by insurance on the Employee's or Former Employee's life.

(4)  "Current Liabilities" shall have the meaning set forth in Section 412(l)(7) of the Code

(5)  "Compensation" shall have the meaning set forth in Section 1.04.

(6)  "Highly Compensated Employee" shall have the meaning set forth in Section 414(q) of the Code.

- 35 -

C - 71

(7)  "Social Security Supplement" shall have the meaning set forth in Treas. Reg. § 1.411(a)-7(c)(4)(ii).

Section 9.06.  Post-Change in Control Benefits (Effective 11/25/86).  Subject to the provisions of Section 4.05 and notwithstanding any other provision of the Plan, in the event of a "change in control" (as hereinafter denied), the assets of the Plan shall be applied in accordance with the preceding provisions of this Article 9 to satisfy all liabilities to Participants, and their beneficiaries as if the Plan had then terminated.  If, after satisfaction of such liabilities, there are assets remaining in the Plan, such assets shall be allocated as follows:

(A)  First, to increase the Retirement Income payable under the Plan to each Participant who is vested under the terms of the Plan as of the date of such "change in control" (or his beneficiary, if applicable) pursuant to the provisions set forth in Schedule II of the Plan, which increased benefit shall be applied to the payment of post-retirement medical and death benefits for such Participants; and

(B)  Second, to increase the Retirement Income payable under the Plan to each Employee who is a Participant as of the date of such "change in control" to an amount equal to the greater of (1) the Retirement Income to which he would have been entitled under the terms of the Plan as in effect immediately prior to such "change in control" if (i) he had remained an Employee and a Participant until the earlier of the last day of the fifth (5th) full Plan Year following such "change in control" or the last day of the Plan Year in which he would accumulate forty (40) Years of Service under the Plan and )ii) his compensation during such period had increased at the rate of five percent (5%) per year (provided that such benefit shall be determined based upon his actual age); and (2) the Retirement Income to which he would otherwise be entitled under the terms of the Plan.

As soon as practicable following such "change in control," the Employer shall be required to satisfy all the liabilities of the Plan, including the liabilities payable pursuant to this section (other than liabilities attributable to medical benefits payable to a Participant prior to the date such Participant is eligible for Medicare), through the purchase of a guaranteed annuity contract from a financially sound insurance company that represents an irrevocable commitment to satisfy the accrued benefit of each Participant.  For purposes hereof, a "change in control" shall occur if (i) any "person" or "group" (within the meaning of Sections 13(d) and 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "Act")) becomes the "beneficial owner" (as defined in Rule 13d-3 under the Act) of twenty-five percent (25%) or more of the then outstanding voting stock of the Employer, otherwise than through a

- 36 -

C - 72

transaction arranged by, or consummated with the prior approval of, the board of directors of the Employer (the "Board of Directors"), or (ii) during any period of two consecutive years, individuals who at the beginning of such period constitute the Board of Directors (and any new director whose election by the Board of Directors or whose nomination for election by the Employer stockholders was approved by a vote of at least two-thirds of the directors then still in office who either were directors at the beginning of such period or whose election or nomination for election was previously so approved) (the "Continuing Directors") cease for any reason to constitute a majority thereof or (iii) the shareholders of the Employer approve a merger or consolidation of the Employer with any other corporation, other than a merger or consolidation that would result in the voting securities of the Employer outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity) at least eighty percent (80%) of the combined voting power of the voting securities of the Employer or such surviving entity outstanding immediately after such merger or consolidation (provided, however, that if, prior to such merger or consolidation, the Board of Directors adopts a resolution that is approved by a majority of the continuing Directors providing that such merger or consolidation shall not constitute a "change in control" for purposes of this Plan, then such merger or consolidation shall not constitute a "change in control" of the Employer) or the shareholders of the Employer approve a plan of complete liquidation of the Employer or an agreement for the sale or disposition by the Employer of all substantially all the Employer's assets.  Notwithstanding the provisions of Section 9.01 hereof, the foregoing provisions of this Section may not be amended following a "change in control" without the written consent of a majority in both number and interest of the Participants who were Participants immediately prior to the "change in control" and at the date of such amendment.

Section 9.07.  <u>Post-Change in Control Termination or Curtailment or Reduction (Effective 11/25/86)</u>.  Notwithstanding the preceding provisions of this Article 9 or any other provision of the Plan, in the event this Plan is terminated or prospective benefits are otherwise reduced or curtailed within five (5) years following a "change in control" (as defined in Section 9.06), (i) each Employee shall become fully vested in his Retirement Income (as increased pursuant to Section 9.06 and this Section, if applicable), and (ii) the assets of the Plan shall be applied in accordance with the preceding provisions of this Article 9 to satisfy all liabilities to Participants and their beneficiaries (in the case of a benefit reduction or curtailment, as if the Plan had been terminated immediately prior to such reduction or curtailment).  If, after satisfaction of such liabilities, there are assets remaining in the Plan, such assets shall be allocated as follows:

(A)  First, to an annual increase in annual Retirement Income of two percent (2%) for each year of retirement or fraction thereof for each Participant who was a Participant on the date of such "change in control"; and

(B)  Second, to increase the Retirement Income payable under the Plan to each Employee who was a Participant on the date of such "change in control" to an amount equal to the greater of (1) the Retirement Income to which he would have become entitled under the terms of the Plan as in effect immediately prior to such "change in control" if (i) the Plan had not been terminated or curtailed or reduced, (ii) he had remained an Employee and a Participant in the Plan until the earlier of the last day of the tenth (10th) full Plan Year following such "change in control" or the last day of the Plan Year in which he would accumulate forty (40) years of Service under the Plan and (iii) his compensation during such period had increased at the rate of five percent (5%) per year (provided that such benefit shall be determined based upon his actual age) or (2) the Retirement Income to which he would otherwise be entitled under the terms of the Plan.

As soon as practicable following such termination, reduction or curtailment, the Employer shall be required to satisfy all the liabilities of the Plan (as increased pursuant to this Section) through the purchase of a guaranteed annuity contract from a financially sound insurance company that represents an irrevocable commitment to satisfy the accrued benefit of each Participant.  Notwithstanding the provisions of Section 9.01 hereof, the foregoing provisions of this Section may not be amended following a "change in control" without the written consent of a majority in both number and interest of the Participants immediately prior to the "change in control" and at the date of such amendment.

Section 9.08.  <u>Post-Change in Control - Merger or Consolidation (Effective 11/25/86)</u>.  Notwithstanding the preceding provisions of this Article 9 or any other provision of the Plan, in the event of any merger or consolidation of this Plan with another plan or any transfer of assets or liabilities of this Plan to another plan which is effected within five (5) years following a "change in control" (as defined in Section 9.06), (i) each Employee with respect to whom liability for the payment of benefits hereunder is being merged or consolidated with or transferred to another plan shall become fully vested in his Retirement Income, (ii) the vested Retirement Income of each Participant with respect to whom any liability for the payment of benefits hereunder is being merged or consolidated with or transferred to another plan shall be increased in accordance with Section 9.07 as if the Plan had terminated immediately prior to any such merger, consolidation or transfer (and for purposes of calculating such increase, the Retirement Income of all other Participants and their beneficiaries shall be deemed to have increased in accordance with said Section 9.07) and (iii) prior

- 38 -

C - 74

to the consummation of any such merger, consolidation or transfer, the Employer shall be required to satisfy all the liabilities of the Plan (as increased pursuant to this section) through the purchase of a guaranteed annuity contract from a financially sound insurance company that represents an irrevocable commitment to satisfy the accrued benefit of each Participant.  Notwithstanding the provisions of Section 9.01 hereof, the foregoing provisions of this paragraph may not be amended following a "change in control" without the written consent of a majority in both number and interest of the Participants who are Participants immediately prior to the "change of control" and at the date of such amendment.

C - 75

ARTICLE 10

GENERAL PROVISIONS

Section 10.01.  Plan Not an Employment Contract.  This Plan shall not be deemed to constitute a contract between the Employer and any Employee or other person whether or not in the employ of the Employer, nor shall anything herein be deemed to give any Employee or other person whether or not in the employ of the Employer any right to be retained in the employ of the Employer, or to interfere with the right of the Employer to discharge any Employee at any time and to treat him without any regard to the effect which such treatment might have upon him as a Participant of the Plan.

Section 10.02.  Plan Benefits Nonassignable.  Except as required under a qualified domestic relations order, as defined in Code Section 414(p), or as may otherwise be provided by law, no distribution or payment under the Plan to any Participant, beneficiary, or joint annuitant shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, whether voluntary or involuntary, and any attempt to so anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void; nor shall any such distribution or payment be in any way liable for or subject to the debts, contracts, liabilities, engagements or torts of any person entitled to such distribution or payment.  If any Participant, beneficiary, or joint annuitant is adjudicated bankrupt or purports to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge any such distribution or payment, voluntarily or involuntarily, the Administrator, in his discretion, may hold or cause to be held or applied such distribution or payment or any part thereof to or for the benefit of such Participant, beneficiary, or joint annuitant in such manner as the Administrator shall direct.

Section 10.03.  Payments to Plan Beneficiary Under Legal Disability.  If the Employer determines that any person entitled to payments under the Plan is under the age of legal majority or incompetent by reason of physical or mental disability, it may cause all payments thereafter becoming due to such person to be made to any other person for his benefit, without responsibility to follow application of amounts so paid. Payments made pursuant to this Section shall completely discharge the Plan, the Administrator and the Trustee.

Section 10.04.  Commencement of Payments. Notwithstanding any other provision to the contrary, for years beginning after December 31, 1988, payment of benefits under this Plan to a Participant shall commence no later than April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2.  In the case of pre-retirement

- 40 -

C - 76

benefits to a survivor, payments will begin no later than the date on which the Participant would have attained age 70-1/2.

Section 10.05. <u>Employer's Liability Limited to Assets in the Plan</u>. The Trust Fund shall be the sole source of benefits under this Plan, and each Employee, Participant, joint annuitant, beneficiary, or any other person who shall claim the right to any payment or benefit under this Plan shall be entitled to look only to the Trust Fund for payment of benefits. Except as may be otherwise provided by ERISA or other applicable law, the Employer shall have no liability to make or continue from its own funds the payment of any benefit under the Plan.

Section 10.06. <u>Delaware Law to Apply</u>. The provisions of the Plan shall be construed, administered and governed under the Laws of the State of Delaware except where pre-empted by Federal Law.

Section 10.07. <u>References to Gender</u>. Wherever any words are used herein in the masculine, feminine or neuter gender, they shall be construed as though they were also used in another gender in all cases where they would so apply.

Section 10.08. <u>Severability (Effective 11/25/86)</u>. In case any provision of this Plan shall be held finally illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining parts of this Plan, but this Plan shall be construed and enforced as if said illegal and invalid provisions had never been inserted herein.

ARTICLE 11

OPERATION OF THE PLAN AS A TOP-HEAVY PLAN

Section 11.01.  Application.  Notwithstanding any other provision of the Plan to the contrary, the provisions of this Article shall be effective during any Top-Heavy Plan Year beginning after December 31, 1983.

Section 11.02.  Definitions.

(A)  "Aggregation Group"  A "Required Aggregation Group" means a group of plans consisting of the Delmarva Power & Light Company Retirement, Savings & Thrift and Tax Reform Act Stock Ownership Plans and any other plan maintained by the Employer in which a Key Employee is a participant or which is taken into account with the aforementioned plans to satisfy the requirements of Section 401(a)(4) or 410 of the Code.  A "Permissive Aggregation Group" means the Required Aggregation Group plus any other plan or plans of the Employer which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Code Sections 401(a)(4) and 410.

(B)  "Compensation" for Plan Years beginning prior to January 1, 1989, means the amount stated on an Employee's Form W-2 not to exceed a maximum of $200,000.  For Plan Years beginning after December 31, 1988, "Compensation" shall be subject to the 401(a)(17) Limitation as described in Section 1.04.

(C)  "Determination Date" means December 31.

(D)  "Key Employee" means an employee who is a Key Employee as defined by Section 416(i) of the Code.

(E)  "Present Value" means the present value of a Participant's accrued benefit as of his Normal Retirement Date (or attained age, if later) determined under the rules prescribed by Section 416 of the Code and the regulations issued thereunder. The Present Value shall be calculated as of the latest valuation date used for computing plan costs for minimum funding purposes using the interest, pre-retirement and post-retirement mortality assumptions set forth in Schedule I.  In computing Present Value, future withdrawal or salary increase assumptions shall not be taken into account.

(F)  "Top-Heavy Plan Year" means a Plan Year beginning after December 31, 1983, for which the Plan is determined to be a Top-Heavy Plan.

(G)  "Valuation Date" means December 31.

- 42 -

C - 78

Section 11.03.  <u>Determination of Top-Heavy Status</u>. This Plan will be considered a Top-Heavy Plan for a Plan Year if, as of the Determination Date for the preceding Plan Year,

(A)  the Present Value of the cumulative accrued benefits under the Plan for Key Employees exceeds sixty (60) percent of the Present Value of the cumulative accrued benefits under the Plan for all Employees, or

(B)  the Plan is included in a Required Aggregation Group and the sum of the Present Value of the cumulative accrued benefits for Key Employees under all defined benefit plans included in such group and the aggregate of accounts of Key employees under all defined contribution plans included in such group exceeds sixty (60) percent of a similar sum determined for all Employees.

(C)  the Plan is part of a Required Aggregation Group and part of a Permissive Aggregation Group and the present value of the cumulative accrued benefits for key employees under all defined benefit plans included in the Permissive Group and the aggregate of accounts of key employees under all defined contribution plans in the Permissive Group exceeds sixty (60) percent of a similar sum determined for all employees.

Section 11.04.  <u>Minimum Vesting</u>.  If a Participant's employment is terminated prior to his being eligible for retirement under Article 3 and prior to his being credited with at least five (5) Years of Service but after he has been credited with at least three (3) years of service, he shall be entitled to Retirement Income if his termination of employment occurs during a Top-Heavy Plan Year.  A Participant entitled to benefits under this paragraph shall be eligible to receive his Retirement Income in the manner provided in Article 6.

Section 11.05.  <u>Minimum Benefit</u>.  If a Participant's employment is terminated during a Top-Heavy Plan Year, his annual Retirement Income expressed as a single life annuity at Normal Retirement Age shall be the greater of:  (1) the amount determined under Section 4.01; or (2) his average annual compensation times the lesser of (i) 2% times his Years of Service, or (ii) 20% offset by the Employer's contributions to his account in any defined contribution plan maintained by the Employer during any Top-Heavy Plan Year.  For such purposes, "average annual compensation" shall mean a Participant's average annual compensation for the period of consecutive years (not exceeding five) when the Participant had the highest aggregate compensation from the Employer.  "Years of Service" shall only include a Year of Service if a Top Heavy Plan Year ended during such year.

Section 11.06.  <u>Change in Top-Heavy Status</u>.  If the Plan becomes Top-Heavy and subsequently ceases to be so, a

- 43 -

C - 79

Participant who was credited with at least five (5) Years of Service as of the last day of the Top-Heavy Plan Year may elect, on termination of employment, to receive Retirement Income as if such termination had occurred during a Top-Heavy Plan Year.

Section 11.07. <u>Limitation on Maximum Benefit</u>. For any Top Heavy Plan Year, "1.0" shall be substituted for "1.25" to calculate the defined benefit and defined contribution plan fractions under Section 4.05(D).

- 44 -

C - 80

ARTICLE 12

ROLLOVER DISTRIBUTIONS

Section 12.01.  Right to Elect Direct Rollover.  This Article applies to distributions made on or after January 1, 1993.  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Article, a Distributee may elect, at the time and in the manner prescribed by the Administrative Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a direct rollover.

Section 12.02.  Eligible Rollover Distribution.  An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the Distributee, except that an eligible rollover distribution does not include:  any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includible in gross income.

Section 12.03.  Eligible Retirement Plan.  An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the Distributee's Eligible Rollover Distribution.  However, in the case of an Eligible Rollover Distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

Section 12.04.  Distributee.  A distributee includes a Participant or former Participant.  In addition, the Participant's or former Participant's surviving spouse and the Participant's or former Participant's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are Distributees with regard to the interest of the spouse or former spouse.

Section 12.05.  Direct Rollover.  A direct rollover is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

- 45 -

C - 81

RETIREMENT PLAN

SCHEDULE I

I.    The reduction on an actuarial basis as described in Sections 4.05(B) and 4.06(B) of the Plan shall be computed in accordance with 8% investment return and mortality rates based on the 1971 TPF&C Forecast Mortality Table for males set back one year to reflect combined male and female mortality.

II.    The Actuarial Equivalent 50% Joint and Survivor Pension described in Section 6.03(B) of the Plan shall be computed in accordance with Table A of this schedule.

III.    The Actuarial Equivalent Early Retirement Benefit as described in Section 6.02(B) shall be computed in accordance with Table B of this schedule.

IV.    The 50% Joint and Survivor Annuity described in Section 6.04 shall be computed using the factors set forth in Tables A and C of this schedule.

RETIREMENT PLAN

SCHEDULE II
(EFFECTIVE 11/25/86)

I.    Vested Participants who are (A) Retired or
Eligible to Retire and (B) Eligible for Medicare.

The Retirement Income of each such Participant (or his
Beneficiary, if applicable) shall be increased, to the extent of
available assets, by an amount equal to the per participant
average of the Employer's aggregate cost of providing
post-retirement medical and death benefits under the Plan to such
Participants for the Employer's fiscal year immediately preceding
a "change in control" (as defined in Section 9.06) which amount
shall increase as of the first day of each subsequent Plan Year
by an amount equal to five percent (5%) of the amount by which
his Retirement Income is increased pursuant to this Schedule II.

II.    Vested Participants who are (A) Retired or
Eligible to Retire and (B) Not Eligible for Medicare.

The Retirement Income of each such Participant (or his
Beneficiary, if applicable) shall be increased to the extent of
available assets, by an amount equal to the per Participant
average of the Employer's aggregate cost of providing
post-retirement medical and death benefits under the Plan to such
Participants for the Employer's fiscal year immediately preceding
a "change in control" (as defined in Section 9.06) which amount
shall increase as of the first day of each subsequent Plan Year
by an amount equal to five percent (5%) of the amount by which
his Retirement Income is increased pursuant to this Schedule II.
This benefit will continue to the date the employee is eligible
for Medicare benefits, thereafter, the employee's benefit under
this section will be equal to the benefit described in Schedule
II, paragraph I.

III.    Vested Participants who are not Eligible to Retire

The Retirement Income of each such Participant (or his
Beneficiary, if applicable) shall be increased, to the extent of
available assets, by an amount equal to the product of:

(A)    the amount determined under Item I (above),
and

(B)    a fraction, the numerator of which is the
number of Years of Service the Participant has to his credit and
the denominator of which is the number of Years of Service such
Participant would have to his credit if his employment continued
to the date the employee would have been eligible for unreduced
early retirement, such benefits payable from the date the
employee would have been eligible for early retirement (for
benefits determined under Section II above) and from the date and
the employee is eligible for Medicare benefits (for benefits
determined under Section I above).

<u>TABLE A</u>

<u>50% JOINT AND SURVIVOR FACTORS</u>

This table is in the form of a worksheet used to compute the appropriate
factor based on the age of the retiree and survivor.  The Joint and Survivor
Pension will be the pension payable for life times the factors that follow:

1.  Factor based on the retiree's age at the effective date of the option:

| <u>Age</u> | <u>Factor</u> | <u>Age</u> | <u>Factor</u> | <u>Age</u> | <u>Factor</u> |
|-----|--------|-----|--------|-----|--------|
| 55 | .942 | 60 | .928 | 65 | .913 |
| 56 | .939 | 61 | .925 | 66 | .909 |
| 57 | .936 | 62 | .922 | 67 | .906 |
| 58 | .933 | 63 | .919 | 68 | .902 |
| 59 | .930 | 64 | .916 | 69 | .899 |
|    |      |    |      | 70 | .895 |

2.  Factor based on the <u>difference</u> in ages between the retiree and the retiree's
survivor:

    a.  Survivor's age at the effective date of the option: _____

    b.  Retiree's age at the effective date of the option: _____

    c.  Difference: (a)-(b) (positive or negative)

        i.  Up to 5 years: _____ x (.006) _____

        ii.  Over 5 years: _____ x (.003) _____

        iii.  Total of (i) and (ii)

3.  50% Joint and Survivor Factor: Factor from (1) above plus
factor in 2(c)(iii), maximum (.995)

TPF&C  TOWERS, PERRIN, FORSTER & CROSBY

C - 84

TABLE B

DELMARVA POWER & LIGHT COMPANY

EARLY RETIREMENT FACTORS FOR
VESTED TERMINATED PARTICIPANTS

| Age | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 55 | 0.33822 | 0.34118 | 0.34414 | 0.34710 | 0.35006 | 0.35303 | 0.35599 | 0.35895 | 0.36191 | 0.36487 | 0.36783 | 0.37079 |
| 56 | 0.37375 | 0.37707 | 0.38040 | 0.38372 | 0.38705 | 0.39037 | 0.39370 | 0.39702 | 0.40035 | 0.40367 | 0.40699 | 0.41032 |
| 57 | 0.41364 | 0.41738 | 0.42113 | 0.42487 | 0.42861 | 0.43235 | 0.43609 | 0.43984 | 0.44358 | 0.44732 | 0.45106 | 0.45480 |
| 58 | 0.45855 | 0.46277 | 0.46699 | 0.47121 | 0.47544 | 0.47966 | 0.48388 | 0.48811 | 0.49233 | 0.49655 | 0.50078 | 0.50500 |
| 59 | 0.50922 | 0.51400 | 0.51878 | 0.52356 | 0.52834 | 0.53312 | 0.53790 | 0.54268 | 0.54746 | 0.55224 | 0.55702 | 0.56180 |
| 60 | 0.56658 | 0.57201 | 0.57744 | 0.58286 | 0.58829 | 0.59372 | 0.59914 | 0.60457 | 0.61000 | 0.61542 | 0.62085 | 0.62628 |
| 61 | 0.63171 | 0.63789 | 0.64407 | 0.65025 | 0.65643 | 0.66262 | 0.66880 | 0.67498 | 0.68116 | 0.68734 | 0.69352 | 0.69971 |
| 62 | 0.70589 | 0.71295 | 0.72002 | 0.72709 | 0.73415 | 0.74122 | 0.74828 | 0.75535 | 0.76242 | 0.76948 | 0.77655 | 0.78361 |
| 63 | 0.79068 | 0.79878 | 0.80689 | 0.81500 | 0.82310 | 0.83121 | 0.83932 | 0.84742 | 0.85553 | 0.86363 | 0.87174 | 0.87985 |
| 64 | 0.88795 | 0.89729 | 0.90663 | 0.91597 | 0.92530 | 0.93464 | 0.94398 | 0.95331 | 0.96265 | 0.97199 | 0.98133 | 0.99066 |
| 65 | 1.00000 | 1.00000 | 1.00000 | 1.00000 | 1.00000 | 1.00000 | 1.00000 | 1.00000 | 1.00000 | 1.00000 | 1.00000 | 1.00000 |

INTEREST - 8.0000%

MORTALITY - 1971 TPF&C FORECAST MORTALITY TABLE

05/03/89

TPF&C

TABLE C

Reduction Factors for Preretirement Spouse Benefit

| Participant's Attained Age | Reduction in Age 65 Benefit For Each Year of Coverage |
|---|---|
| Less than 45 | .10% |
| 45 to 54 | .25% |
| 55 to 64 | .50% |

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY