ATLANTIC CITY ELECTRIC COMPANY RETIREMENT PLAN

As Amended and Restated Effective January 1, 1994

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

## TABLE OF CONTENTS

                                                                    PAGE

PREAMBLE . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

ARTICLE 1        Definitions . . . . . . . . . . . . . . . . .    1

ARTICLE 2        Participation . . . . . . . . . . . . . . . .    8

ARTICLE 3        Retirement Benefits . . . . . . . . . . . . .    9

                 3.01  Normal Retirement Benefit . . . . . . .    9
                 3.02  Early Retirement Benefit . . . . . . .     9
                 3.03  Deferred Retirement Benefit . . . . .     10
                 3.04  Terminated Vested Benefit . . . . . .     10
                 3.05  Disability Retirement Benefit . . . .     11
                 3.06  Maximum Benefit Limitation . . . . . .    11
                 3.07  No Reduction in Benefit . . . . . . .     15
                 3.08  Nonduplication of Benefit . . . . . .     15

ARTICLE 4        Forms of Benefit Payment . . . . . . . . . .    15

                 4.01  Standard Forms of Early Retirement,
                       Normal Retirement, Deferred Retirement
                       and Terminated Vested Benefits . . . .    15
                 4.02  Standard Forms of Disability Retirement
                       Benefit . . . . . . . . . . . . . . .     16
                 4.03  Optional Forms of Retirement Benefits     17
                 4.04  Preretirement Spouse's Benefit . . . .    18
                 4.05  Election of Retirement Benefit Forms . .  21
                 4.06  Designation of Contingent Annuitant
                       or Beneficiary . . . . . . . . . . . .    23
                 4.07  Payment of Benefits . . . . . . . . .     23
                 4.08  Reemployment . . . . . . . . . . . . .    25

ARTICLE 5        Vesting . . . . . . . . . . . . . . . . . . .   26

                 5.01  Vested Percentage of Accrued Benefit . .  26
                 5.02  Years Excluded . . . . . . . . . . . .    26
                 5.03  Breaks in Service . . . . . . . . . . .   26

ARTICLE 6        Contributions . . . . . . . . . . . . . . . .   28

ARTICLE 7        Management of Funds . . . . . . . . . . . . .   29

ARTICLE 8        Administration of Plan . . . . . . . . . . .    30

ARTICLE 9        Certain Rights and Limitations . . . . . . .    33

ARTICLE 10       Top Heavy Provisions . . . . . . . . . . . .    37

ARTICLE 11       Amendment and Termination . . . . . . . . . .   39

ARTICLE 12       Construction . . . . . . . . . . . . . . . .    40

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-ii-

**APPENDIX A**

**APPENDIX B**

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 89

ATLANTIC CITY ELECTRIC COMPANY RETIREMENT PLAN

PREAMBLE

The Atlantic City Electric Company Retirement Plan, as originally effective December 1, 1940, and as amended from time to time, has been further amended and restated effective January 1, 1994. Except as otherwise expressly provided, the Plan as so amended and restated applies to persons in the employment of the Company who are or become Participants on or after January 1, 1994. Former Employees whose service terminated for any reason prior to January 1, 1994, and those entitled to benefits under the Plan with respect to such former Employees, shall be entitled to benefits under the Plan only to the extent, if any, provided under the Plan as in effect as of the date such service terminated.

## ARTICLE 1

### Definitions

1.01    The following words and phrases when used in the Plan shall have the following meanings, except as otherwise required by the context. As used in the Plan, the masculine pronoun shall be deemed to include the feminine, and the singular number, the plural, unless a different meaning is clearly indicated by the context.

"Accrued Benefit" as of a determination date means the benefit of a Participant calculated as a Normal Retirement Benefit in accordance with Section 3.01(b), on the basis of his Average Annual Compensation and Years of Benefit Service as of the determination date. The portion of an Employee's Accrued Benefit which is attributable to Employer contributions, as of any date

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 90

-2-

of determination, shall be equal to the excess, if any, of his total Accrued Benefit as of such date over the portion, if any, of his Accrued Benefit as of such date which is attributable to his own contributions, if any, under the Prior Plan.

"Actuarial Equivalent" means equivalent value when computed on the basis of the actuarial factors and assumptions set forth in Appendix A to the Plan.  No adjustment to a determination of an actuarial equivalent value or amount shall be made solely because the tables, rates and procedures set forth in Appendix A are changed subsequent to such determination.

"Anniversary Year" means the twelve-month period ending on the last day of the month before the first to occur of an Employee's Early Retirement Date, Normal Retirement Date, or other termination of employment, and each prior anniversary thereof.

"Annuity Commencement Date" means the first day of the first period for which an amount is payable as an annuity or any other form of periodic benefit payment under the Plan.

"Approved Absence" means a period of absence from employment granted by the Employer on a uniform and nondiscriminatory basis for (i) vacation; (ii) paid lay-off; (iii) required military service; (iv) sickness; (v) disability; (vi) bereavement; (vii) jury duty; or (viii) other personal days off.  Subject to the requirements of the Family Medical Leave Act, or other applicable law, an Employee shall be considered terminated if such absence extends for more than twelve consecutive months or, in the case of an Employee in required military service, such absence extends beyond the period after discharge from military service during which his re-employment rights are guaranteed by law.

"Associated Company" means an entity which, with the Employer, constitutes (i) a "controlled group of corporations" within the meaning of section 414(b) of the Code, (ii) a "group of trades or businesses under common control" within the meaning of section 414(c) of the Code, or (iii) an "affiliated service group" within the meaning of section 414(m) of the Code; provided that, for purposes of Section 3.06 of the Plan, sections 414(b) and (c) of the Code shall be deemed modified by application of the provisions of section 415(h) of the Code (which substitutes the phrase "more than 50 percent" for the phrase "at least 80 percent").

-3-

"Average Annual Compensation" means the greater of
(i) the Participant's average annual Compensation for
the five consecutive Anniversary Years in which his
Compensation was greatest during the ten Anniversary
Years immediately before his retirement date or other
termination of employment, or (ii) the Participant's
average annual Compensation for all his Years of
Benefit Service, assuming in each case that his
Compensation for each Anniversary Year is at least
equal to the annualized rate of Compensation payable to
him as if he had worked 40 hours a week for 52 weeks.

"Benefit" means a Participant's Normal Retirement
Benefit, Early Retirement Benefit, Deferred Retirement
Benefit, Terminated Vested Benefit or Disability
Retirement Benefit, as applicable.

"Board" means the Board of Directors of Atlantic
Energy, Inc.

"Break in Service" means a Plan Year during which a
Participant fails to complete at least five hundred and
one (501) Hours of Service.  For purposes of
determining whether a Break in Service has occurred, a
Participant who is absent from employment because of a
pregnancy, the birth of the Participant's child, the
placement of a child with the Participant for adoption,
or the need to care for such child during the period
immediately following such birth or placement, shall be
given credit for each Hour of Service which otherwise
would normally have been credited to such Participant
but for such absence.  If the Committee is unable to
determine the number of such hours, eight Hours of
Service shall be credited per day of absence.  No more
than 501 Hours of Service shall be credited to a
Participant under this paragraph because of such
pregnancy or placement.  Hours of Service shall not be
credited to a Participant under this paragraph unless
such Participant furnishes to the Committee such timely
information as the Committee may require to establish
that the absence from employment is for reasons
described above and to establish the number of days for
which there was such an absence.  Hours of Service
credited under this paragraph shall be credited only
for the Plan Year in which the absence begins, if the
Participant would be prevented from incurring a Break
in Service in such Plan Year solely because the period
of absence is treated as Hours of Service or, in any
other case, in the immediately following Plan Year.

"Code" means the Internal Revenue Code of 1986, as
amended, and any applicable regulations thereunder.

C - 92

-4-

"Committee" means the Benefits/Trusts Investment Committee appointed by the Board pursuant to Article 8.

"Company" means Atlantic City Electric Company, and any successor thereof.

"Compensation" means the regular base remuneration (not in excess of the statutory dollar limitation under Code section 401(a)(17), as may be adjusted by the Secretary of the Treasury from time to time), paid to an Employee in cash for services rendered to the Company or an Associated Company, including any payment made under the Disability Benefit Plan, unreduced by the Employee's deferrals under a cash or deferred arrangement under a Code section 401(k) or Code section 125 plan, but excluding overtime, and all other forms of extra compensation except salesmen's commissions, temporary upgrades, shift differentials and bonuses. For purposes of computing an Employee's Compensation, the Employee shall be deemed to have received salary or wages during any period of uncompensated family leave at his regular salary or wage rate in effect immediately prior to the commencement of the uncompensated period of such family leave.

For purposes of determining the retirement benefit of a Participant who is a "section 401(a)(17) Employee," (as defined below), the retirement benefit will be the greater of the retirement benefit determined for the Participant under (i) or (ii) below:

> (i)  the Participant's retirement benefit determined with respect to the benefit accrual formula applicable for the Plan Year beginning on or after January 1, 1994, as applied to the Participant's total Years of Benefit Service, or

> (ii)  the sum of

> (a)  the Participant's retirement benefit as of the last day of the last Plan Year beginning before January 1, 1994, frozen in accordance with section 1.401(a)(4)-13 of the Treasury Regulations, and

> (b)  the Participant's retirement benefit determined under the

-5-

benefit accrual formula applicable
for the Plan Year beginning on or
after January 1, 1994, as applied
to the Participant's Years of
Benefit Service for Plan Years
beginning on or after January 1,
1994.

A "section 401(a)(17) Employee" means an
Employee whose current accrued benefit as of
a date on or after the first day of the first
Plan Year beginning on or after January 1,
1994, is based on Compensation, for a year
beginning prior to the first day of the first
Plan Year beginning on or after January 1,
1994, that exceeded $150,000.

"Deferred Retirement Benefit" means the benefit payable
under the Plan as provided in Section 3.03.

"Deferred Retirement Date" means the first day of the
month coincident with or next following the
Participant's retirement after his Normal Retirement
Date.

"Disability Benefit Plan" means the Atlantic City
Electric Company Temporary Disability Benefit Plan.

"Disability Retirement Benefit" means the benefit
payable under the Plan as provided in Section 3.05.

"Disability Retirement Date" means the first day of the
month coincident with or next following the date a
Participant meets the requirements for a Disability
Retirement Benefit pursuant to Section 3.05.

"Early Retirement Age" means a Participant's attainment
of age 55 after having completed at least five Years of
Vesting Service.

"Early Retirement Benefit" means the benefit payable
under the Plan as provided in Section 3.02.

"Early Retirement Date" means the first day of the
month coincident with or next following the
Participant's retirement prior to his Normal Retirement
Date, but on or after his Early Retirement Age.

"Effective Date" means January 1, 1994.

- 6 -

"Employee" means a common law employee of the Employer, but excluding a non-resident alien and a leased employee (within the meaning of Code section 414(n)).

"Employer" means the Company and any Associated Company which, with the consent of the Board, has adopted the Plan for the benefit of its Employees.  For purposes of the Plan, the Company will be the representative of the Employer and any action taken by the Company will be binding on the Associated Companies.

"Employment Commencement Date" (or in the case of reemployment following separation from service with the Employer, "Reemployment Commencement Date") means the first date on which an Employee is directly or indirectly paid, or entitled to payment, by the Employer for an Hour of Service.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Funding Agent" means the legal reserve life insurance company or trustee, or combination thereof, selected by the Board pursuant to Section 8.08.

"Hour of Service" means, with respect to each Employee, (i) each hour for which the Employee is directly or indirectly paid, or entitled to payment, for the performance of duties for an Employer; (ii) each hour for which the Employee is paid or entitled to payment on account of a period of time during which no duties are performed due to vacation, holiday, illness, jury duty, incapacity (including disability) or Approved Absence; (iii) each hour for which back pay (irrespective of mitigation of damages) to the Employee has been either awarded or agreed to by the Employer; and (iv) each hour during which a Disability Pension is paid to him by the Employer and for which he would have been paid for normal work hours if he had not become disabled; in no event, however, shall more than 501 hours be credited for each single continuous period during which he is paid such Pension.  A given hour of service shall be credited to an Employee only under one of the above clauses.  Subject to the foregoing, the number of hours of service and the period to which they are credited shall be determined in accordance with the applicable regulations issued by the Department of Labor.

"Normal Retirement Age" means the Participant's sixty-fifth birthday.

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 95

-7-

"Normal Retirement Benefit" means the benefit payable under the Plan as provided in Section 3.01.

"Normal Retirement Date" means the first day of the month coincident with or next following the Participant's Normal Retirement Age.

"Participant" means any Employee participating in the Plan as provided in Article 2.

"PBGC" means the Pension Benefit Guaranty Corporation.

"Plan" means the Atlantic City Electric Company Retirement Plan, including any Appendices, as set forth herein and as amended from time to time.

"Plan Year" means the calendar year.

"Preretirement Spouse's Benefit" means the benefit payable to the eligible spouse of a deceased Participant in accordance with Section 4.04(a) or (b).

"Prior Plan" means the Plan as in effect from time to time prior to the Effective Date.

"Social Security Retirement Age" means the social security retirement age as defined in Code section 415(b)(8).

"Terminated Vested Benefit" means the benefit payable under the Plan as provided in Section 3.04.

"Total Disability" means an Employee's inability to engage in any gainful employment or occupation for which he is qualified or reasonably may become qualified by reason of bodily injury or disease, provided such inability has continued for a period of at least twelve consecutive months and is expected to be of long continued and indefinite duration. The Company shall have the right to verify a Participant's Total Disability.

"Trust" means the trust for the Plan established pursuant to Article 7.

"Trustee" means the trustee or trustees as provided in Article 7.

"Year of Benefit Service" means each Plan Year in which an Participant completes at least 2,080 Hours of Service with an Employer, commencing with such Participant's Employment Commencement Date. If for any

-8-

Plan Year the Participant has less than 2,080 Hours of Service he shall receive a pro rata portion of a Year of Benefit Service for such period.

"Year of Disability Credit Service" means each year (or completed months) of a Participant's continuous employment with an Employer beginning on his last Employment or Reemployment Commencement Date and ending on his Disability Retirement Date, including the following:

   (i)   the period for which a Participant receives payments under the Disability Benefit Plan, and

   (ii)  service with an affiliated, subsidiary, allied or predecessor company or companies, to the extent determined by the Employer on the basis of rules established by the Employer and applied on a uniform and nondiscriminatory basis.

"Year of Vesting Service" means a Plan Year in which an Employee completes at least 1,000 Hours of Service with an Employer or an Associated Company.

### ARTICLE 2

### Participation

2.01   Each Employee on the Effective Date who was participating in the Plan immediately prior to the Effective Date shall continue to participate in the Plan as of the Effective Date. Each other Employee shall become a Participant as of his Employment Commencement Date.

2.02   A Participant shall continue to participate in the Plan until he ceases to be an Employee. Participation shall continue during a period while a Participant is on an Approved Absence.

-9-

## ARTICLE 3

### Retirement Benefits

3.01  Normal Retirement Benefit

(a)  A Participant shall be entitled to receive a Normal Retirement Benefit upon retirement on his Normal Retirement Date.

(b)  A Participant's monthly Normal Retirement Benefit shall be computed as a benefit payable for the life of the Participant equal to one-twelfth (1/12) of the product determined by multiplying A times B, where

A = 1.6% of the Participant's Average Annual Compensation; and

B = the Participant's Years of Benefit Service not in excess of 30.

Notwithstanding the foregoing:

(i)  in no event will a Participant's monthly Normal Retirement Benefit exceed the greater of (A) $2,083.34, or (B) 1/12 of 66-2/3% of his Average Annual Compensation;

(ii)  the 30-year limitation on Years of Benefit Service shall not apply to a Participant who first became an Employee prior to January 1, 1989; and

(iii)  with respect to a former Employee who terminated employment prior to the Effective Date, and with respect to those entitled to benefits under the Plan in regard to such former Employee, benefits under the Plan, if any, shall be determined only to the extent, if any, provided under the Plan as in effect on the date as of which such former Employee terminated employment.

3.02  Early Retirement Benefit

(a)  A Participant shall be entitled to receive an Early Retirement Benefit upon his Early Retirement Date.

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 98

-10-

(b)   A Participant's Early Retirement Benefit shall be his Normal Retirement Benefit determined, in accordance with Section 3.01(b), as of his Early Retirement Date.

3.03   Deferred Retirement Benefit

(a)   A Participant who continues employment with the Employer after his Normal Retirement Date shall be entitled to receive a Deferred Retirement Benefit upon his Deferred Retirement Date.

(b)   A Participant's Deferred Retirement Benefit shall be his Normal Retirement Benefit determined in accordance with Section 3.01(b), as adjusted to equal the greater of (i) the Actuarial Equivalent of his Accrued Benefit as of his Normal Retirement Date, or (ii) his Accrued Benefit determined as of his actual date of retirement under the Plan.

3.04   Terminated Vested Benefit

(a)   A Participant who has completed at least five Years of Vesting Service and who terminates employment with the Employer prior to his attainment of age 55 shall be eligible for a Terminated Vested Benefit commencing no later than the first day of the month nearest the Participant's 55th birthday (but not later than the first day of the month nearest his 65th birthday).

(b)   A Participant's Terminated Vested Benefit shall be his Normal Retirement Benefit determined, in accordance with Section 3.01(b), as of his actual date of termination (based on

-11-

his Average Annual Compensation and Years of Benefit Service as of such date).

3.05  Disability Retirement Benefit

(a)  A Participant with at least 15 Years of Disability Credit Service who retires because of Total Disability shall be eligible for a Disability Retirement Benefit if, as a result of such Total Disability, he becomes entitled to disability benefits under the Federal Social Security Act.

If prior to his Normal Retirement Date a Participant is determined no longer to have Total Disability, he will cease to be eligible for a Disability Retirement Benefit under the Plan. If a Participant attains his Normal Retirement Age while still eligible for a Disability Retirement Benefit, his Disability Retirement Benefit will cease and he will thereafter be eligible to receive a Normal Retirement Benefit.

(b)  The monthly amount of Disability Retirement Benefit payable to an eligible Participant will be equal to one-twelfth of the sum product determined by multiplying A times B, where

$A$ = 1.6% of the Participant's Average Annual Compensation; and

$B$ = the Participant's Years of Disability Credit Service not in excess of 30 (provided that such 30-year limitation shall not apply to a Participant who first became an Employee prior to January 1, 1989).

3.06  Maximum Benefit Limitation

(a)  Any provision of the Plan to the contrary notwith-standing, subject to the provisions of Subsections (c) and (d)

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 100

-12-

below, the maximum Accrued Benefit payable to a Participant under the Plan, when added to any benefit attributable to contributions of the Company or any Associated Company provided to the Participant under any other defined benefit plan, shall be equal to the lesser of (i) $90,000 (as adjusted by the Secretary of the Treasury) or (ii) the Participant's "average annual compensation" (within the meaning of Code section 415(c)(3)) during his three consecutive Years of Benefit Service as a Participant affording the highest such average, or during all of his Years of Benefit Service if less than three years; provided that if the Participant has not completed ten years of participation in the Plan, such maximum benefit limitation shall be reduced in the ratio which the number of years of his participation in the Plan bears to ten.

If the Retirement Benefit payments begin before the Participant's Social Security Retirement Age, the maximum benefit in (i) above shall be the Actuarial Equivalent of the maximum benefit payable at his Social Security Retirement Age. If the retirement benefit payments begin after the Participant's Social Security Retirement Age, the maximum benefit in (i) above shall be the Equivalent Actuarial of the maximum benefit payable at his Social Security Retirement Age. If the Participant's retirement benefit is payable as a modified retirement benefit with his spouse as beneficiary, the modification of the retirement benefit for that form of payment shall be made before the application of

-13-

the maximum benefit limitation, and, as so modified, shall be subject to the limitation.

As of January 1 of each calendar year, the dollar limitation as determined by the Secretary of the Treasury for that calendar year shall become effective as the maximum permissible dollar amount of any Retirement Benefit payable under the Plan during that calendar year, including Retirement Benefits payable to Participants who retired prior to that calendar year, in lieu of the dollar amount in (i) of paragraph (a) above.

(b)  Any provision of the Plan to the contrary notwithstanding, in the case of a Participant who participates in any defined contribution plan of the Employer, his maximum benefit limitation shall not exceed the amount which will result in a defined benefit plan fraction which when added to the defined contribution plan fraction of such Participant will exceed "1.0." Further, the multiplier "1.25" in Subsections (c)(iii) and (d)(i) below shall be reduced to "1.0" with respect to each calendar year in which the Plan is top heavy (as determined in accordance with Article 10).

(c)  For purposes of applying this Section 3.06, all defined benefit plans of the Company and any Associated Companies and all defined contribution plans of the Company and any Associated Companies, shall be combined or aggregated, and the maximum benefit limitation shall be determined on the basis of a Participant's benefits under all such plans, as follows:

(i)  Determine the defined contribution fraction.

-14-

    (ii)   Subtract the result of (i) from 1.0.

    (iii)  Multiply the dollar amount in (i) of paragraph (a) above by 1.25.

    (iv)  Multiply the amount described in (ii) of paragraph (a) above by 1.4.

    (v)   Multiply the lesser of the result of (iii) or the result of (iv) by the result of (ii) to determine the adjusted maximum benefit limitation applicable to the Participant.

    (d)  For purposes of this Section 3.06, the defined contribution plan fraction for a Participant shall be a fraction the numerator of which is the sum of the annual additions to the Participant's accounts under all defined contribution plans of the Company or of an Associated Company, and the denominator of which is the sum of the lesser of the following amounts determined for each of the Participant's Years of Benefit Service:

    (i)   1.25 multiplied by the maximum dollar amount allowed by law for that year; or

    (ii)  1.4 multiplied by 25% of the Participant's compensation (within the meaning of Code section 415(c)(3)) for that year. At the direction of the Committee, the portion of the denominator of that fraction with respect to calendar years before 1983 shall be computed as the denominator for 1982, as determined under the law as then in effect, multiplied by a fraction the numerator of which is the lesser of:

    (iii)  $51,875, or

    (iv)  1.4 multiplied by 25% of the Participant's compensation for 1981, and the denominator of which is the lesser of:

    (v)   $41,500, or

-15-

      (vi)  25% of the Participant's compensation for 1981.  Annual addition has the meaning set forth in Code section 415(c)(2).

(e)  If an adjustment to the Accrued Benefit of a Participant, or to the Participant's annual additions under a defined contribution plan of the Company or any Associated Company is required because of the application of paragraph (c) above, such adjustment will be made first with respect to the annual additions under the defined contribution plan.

3.07  No Reduction in Benefit

In the case of a Participant who would have been entitled to an Early Retirement Benefit commencing on an Early Retirement Date, his Accrued Benefit shall not be less than the largest such Early Retirement Benefit to which he would have been entitled under Section 3.02.

3.08  Nonduplication of Benefit

Any Participant who is receiving a Benefit under this Plan may not, while he is receiving such Benefit, receive any other Benefit under this Plan, even though he may meet the eligibility requirements for such other Benefit.

ARTICLE 4

Forms of Benefit Payment

4.01  Standard Forms of Early Retirement, Normal Retirement, Deferred Retirement and Terminated Vested Benefits

(a)  If the Participant is not married on the Annuity Commencement Date, his Normal Retirement Benefit, Early Retirement Benefit, Deferred Retirement Benefit or Terminated Vested Benefit, as applicable, shall be equal to the benefit

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-16-

determined in Section 3.01, 3.02, 3.03 or 3.04, respectively, and payable to the Participant as a single life annuity.

(b)  If the Participant is married on the Annuity Commencement Date, his Normal Retirement Benefit, Early Retirement Benefit, Deferred Retirement Benefit or Terminated Vested Benefit, as applicable, shall be the Actuarial Equivalent of the benefit determined in Section 3.01, 3.02, 3.03 or 3.04, respectively, and payable in the form of a joint and 50% survivor annuity, with monthly payments to the Participant during his lifetime and payments continuing after his death to his surviving spouse for her lifetime at one-half the actuarially reduced rate of the benefit payable to the Participant during his lifetime. Notwithstanding the foregoing, if the Participant retires or terminates his employment with a vested Accrued Benefit, and his spouse predeceases him during the five-year period immediately following such date of retirement or vested termination of employment, as applicable, the monthly Accrued Benefit payable to the Participant under the Plan will be adjusted to the amount payable to him in accordance with Section 4.01(a).  Such adjustment will be made as of the first day of the month following the spouse's death.

4.02  Standard Forms of Disability Retirement Benefit

(a)  If the Participant is not married on his Disability Retirement Date his Disability Retirement Benefit will be paid to him as a monthly benefit commencing on his Disability Retirement Date, payable on the first day of each month

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-17-

thereafter and ending with the payment made immediately before the earliest of: (i) the date he is determined no longer to have Total Disability; (ii) the date he becomes ineligible to receive disability benefits under the Federal Social Security Act; (iii) the date he refuses to submit to a physical examination or diagnostic test required to determine the continuance of his Total Disability; (iv) the date of his death; or (v) his Normal Retirement Date.

(b)  Unless he specifically elects, pursuant to Section 4.06(d), to have his Disability Retirement Benefit payable in accordance with (a) above, a Participant who is married on his Disability Retirement Date shall have his Disability Retirement Benefit calculated as the Actuarial Equivalent of the benefit determined in (a) above and payable in the form of a joint and 50% survivor annuity, with monthly payments to the Participant during his lifetime and payments continuing after his death to his surviving spouse for her lifetime at one-half the actuarially reduced rate of the Disability Retirement Benefit payable to the Participant during his lifetime.

4.03  Optional Forms of Retirement Benefits

Notwithstanding Section 4.01, a Participant may elect in accordance with Section 4.06 to convert the standard form of benefit payment applicable to him into an optional form of benefit payment which is the Actuarial Equivalent of the amount determined under Section 4.01 and is in accordance with one of the options set forth below:

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-18-

(a) <u>Contingent Annuitant Option</u>:  a reduced monthly benefit commencing on the Participant's date of retirement or vested termination of employment, as applicable, and payable for his lifetime with a monthly benefit payable to his surviving contingent annuitant after the Participant's death, commencing as of the first day of the month following his death and payable for the contingent annuitant's lifetime; the amount of monthly benefit payable to the contingent annuitant shall be equal to 25%, 33 1/3%, 50%, 66 2/3% or 100% of the monthly benefit amount payable to the Participant, as specified by the Participant in his election of this option; or

(b) <u>Level Income Option</u>: a monthly benefit determined in accordance with Section 4.01, adjusted, commencing on his Early Retirement Date or Terminated Vested Date, as applicable, so that the Participant's total income, including both the adjusted monthly benefit and the unreduced Primary Insurance Benefits payable to him under Title II of the Federal Social Security Act, are as nearly uniform as possible both before and after such date; the amount of monthly benefit payable under the Plan will be in a greater amount before the unreduced Primary Insurance Benefits begin and in a reduced amount after that date; or

(c) <u>Single-Sum Distribution Option</u>: a single-sum distribution; the amount of a single-sum distribution shall be calculated as of the Participant's benefit commencement date.

Any optional form of benefit elected by a Participant cannot be modified or rescinded by the Participant without the consent of the Committee.  However, if the Participant or his contingent annuitant dies prior to the date the optional form of benefit would otherwise take effect, the election shall be revoked.

4.04  Preretirement Spouse's Benefit

(a)  If a Participant with at least five Years of Vesting Service dies (i) on or after his Early Retirement Date

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-19-

but prior to his Annuity Commencement Date, or (ii) before his
Early Retirement Date, his eligible spouse, if any, shall be
entitled to receive a monthly Preretirement Spouse's Benefit for
life. The monthly Preretirement Spouse's Benefit payable to such
Participant's eligible spouse for life shall be an amount equal
to 50% of the amount of monthly retirement income that would have
been payable to the Participant under Section 3.01(b), in the
form of the 50% joint and survivor annuity described in Section
4.01(b), as if: (A) in the case of a Participant who dies on or
after his Early Retirement Date, such Participant had been
entitled to receive a 50% qualified joint and survivor annuity on
the day preceding his date of death; or (B) in the case of a
Participant who dies before his Early Retirement Date, such
Participant had: (1) separated from the service of the Employer
on the date of his death; (2) survived to his Early Retirement
Age; (3) retired with an immediate 50% joint and survivor annuity
on his Early Retirement Age; and (4) died on the day after the
day on which he would have attained his Early Retirement Age.
The first payment to a Participant's eligible spouse under (A)
above shall be made as soon as administratively feasible as of
the beginning of the month next following the month during which
the Participant's death occurs, or, if the eligible spouse so
elects, at such other time, but not later than the month in which
the Participant would have attained his Normal Retirement Date
had he not died. The first payment to a Participant's eligible
spouse under (B) above shall be made as soon as administratively

-20-

feasible as of the date the Participant would have attained his Early Retirement Age. The final payment under (A) or (B) above shall be made as of the beginning of the month during which the eligible spouse's death occurs.

(b) Notwithstanding Section 4.04(a), if a married Participant dies on or after the earlier of (i) his Early Retirement Age, or (ii) the first day of the month nearest his 40th birthday and completion of at least 20 Years of Vesting Service, his surviving spouse shall be entitled to receive a monthly Preretirement Spouse's Benefit for life, provided:

(A)   the spouse has been married to the Participant throughout the one-year period immediately preceding the Participant's death, and

(B)   the Participant dies before his retirement date, Disability Retirement Date or date of vested termination of employment, as applicable, while in the employ of the Employer.

The monthly Preretirement Spouse's Benefit payable under this Section 4.04(b) shall be an amount equal to 50% of the Participant's monthly Accrued Benefit determined as of his date of death. The first payment to the Participant's eligible spouse under this Section 4.04(b) shall be made as soon as administratively feasible as of the beginning of the month next following the month during which the Participant's death occurs or, if the eligible spouse so elects, at such other time, but not later than the month in which the Participant would have attained his Normal Retirement Date had he not died. The final payment shall be made as of the beginning of the month during which the eligible spouse's death occurs.

-21-

Notwithstanding anything to the contrary in this Section 4.04(b):

    (i)   if a Participant terminates his employment with the Employer on or after the date he first becomes eligible for an Early Retirement Benefit but before his Normal Retirement Date, and is married on his date of termination, the Preretirement Spouse's Benefit described in this Section 4.04(b) will be payable to his surviving spouse upon his death before his Annuity Commencement Date.

    (ii)   any spouse eligible for benefits under this Section 4.04(b) shall not be eligible for benefits under Section 4.04(a); and

    (iii)   in lieu of a Preretirement Spouse's Benefit payable monthly for the surviving spouse's life, the surviving spouse may elect to receive the Actuarial Equivalent of such benefit in a single sum.

    4.05   Election of Retirement Benefit Forms

    (a)   At any time prior to the later of the time a Participant terminates service or attains Normal Retirement Age, such Participant may elect an optional form of benefit payment as set forth in Section 4.03.

    (b)   Any such election must be in writing and received by the Committee prior to the Annuity Commencement Date, but in all cases a Participant shall have a period of at least 90 days before the Annuity Commencement Date within which to make his election.

    (c)   Any election under Section 4.03 may be revoked by a signed writing filed with the Committee during the period prior to a Participant's Annuity Commencement Date, and additional elections and revocations may be made during such period.

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-22-

(d)   Notwithstanding the provisions of Sections 4.02, 4.03 and 4.04, if a married Participant elects the form of Disability Retirement Benefit payment under Section 4.02(a), or elects an optional form of benefit payment under Section 4.03, or if a Participant's eligible spouse waives the Preretirement Spouse's Benefit payable as a life annuity under Section 4.04(b) in favor of the Preretirement Spouse's Benefit payable as a single sum Actuarial Equivalent under Section 4.04(b)(iii), such election shall be effective only upon receipt by the Committee of the applicable written consent or waiver of his spouse within 30 to 90 days prior to the Annuity Commencement Date, unless such requirement is waived by the Committee in accordance with applicable law.  The spouse's applicable consent or waiver shall be witnessed by a Plan representative or a notary public and shall acknowledge the effect on the spouse of such election.

(e)   A Participant may not elect any optional form of benefit payment providing benefits to a contingent annuitant who is other than his spouse, nor one providing monthly benefits upon his death solely to a beneficiary, unless the Actuarial Equivalent of the payments expected to be made to the Participant is more than 50% of the Actuarial Equivalent of the total payments expected to be made under the optional form.  In no event, however, may the amount of each monthly payment to a contingent annuitant exceed that payable to the Participant.

-23-

4.06   Designation of Contingent Annuitant or Beneficiary

A Participant may designate a contingent annuitant or beneficiary by filing with the Committee a written designation identifying such contingent annuitant or beneficiary.  Such designation may be changed or revoked by written notice filed with the Committee.  However, if the Participant is married, his designated beneficiary must be his spouse (or an alternate payee who, under a qualified domestic relations order, must be treated as his spouse) unless such spouse has consented in writing to the designation of a specific nonspousal beneficiary and such consent shall (i) be revocable by such spouse at any time prior to the death of the Participant, (ii) automatically terminate upon the termination of the marriage between such spouse and the Participant, (iii) indicate that the spouse understood, at the time of giving such consent, the potential financial effect of the election by the Participant, and (iv) be notarized.

4.07   Payment of Benefits

(a)   Retirement benefits shall be payable in monthly installments on the first day of the month in which due and shall cease with the first monthly payment subsequent to death, except that if a Participant has elected an optional form of benefit payment under Section 4.03, those provisions shall apply, and if he is survived by a spouse to whom he was married at the time the benefit commences, the provisions of Section 4.01(b) shall be applicable, subject to an election under Section 4.03. Notwithstanding the foregoing provisions of this Section 4.07, a

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 112

-24-

single sum payment shall be made in lieu of all Benefits if the
single sum Actuarial Equivalent of any Benefit under the Plan is
less than $3,500. Such Actuarial Equivalent shall not be less
than the amount determined by using an interest rate assumption
equal to the applicable interest rate which would be used by the
PBGC on the first day of the calendar year in which the
distribution occurs to determine the present value of single sum
distributions on plan terminations. The amount of a single sum
payment shall be calculated as of the Participant's, or other
payee's, benefit commencement date and shall be made as soon as
practicable on or after the Participant's termination of
employment.

     (b)  Notwithstanding any other provisions of the Plan
to the contrary that would otherwise limit a distributee's
election under this Section, a distributee may elect, at the time
and in the manner prescribed by the Committee, to have any
portion of an eligible rollover distribution paid directly to an
eligible retirement plan specified by the distributee in a direct
rollover. For purposes of this Section 4.07(b), the following
definitions apply:

          "Eligible rollover distribution" is any distribu-
          tion of all or any portion of the balance to the
          credit of the distributee, except that an eligible
          rollover distribution does not include: any
          distribution that is one of a series of
          substantially equal periodic payments (not less
          frequently than annually) made for the life (or
          life expectancy) of the distributee or the joint
          lives (or joint life expectancies) of the
          distributee and the distributee's designated
          beneficiary, or for a specified period of ten
          years or more; any distribution to the extent such

-25-

distribution is required under Code section
401(a)(9); and the portion of any distribution
that is not includible in gross income (determined
without regard to the exclusion for net unrealized
appreciation with respect to employer securities).

"Eligible retirement plan" is an individual
retirement account described in Code section
408(a), an individual retirement annuity described
in Code section 408(b), an annuity plan described
in Code section 403(a), or a qualified trust
described in Code section 401(a), that accepts the
distributee's eligible rollover distribution.
However, in the case of an eligible rollover
distribution to the surviving spouse, an eligible
retirement plan is an individual retirement
account or individual retirement annuity.

"Distributee" includes an employee or former
employee. In addition, the employee's or former
employee's surviving spouse and the employee's or
former employee's spouse or former spouse who is
the alternate payee under a qualified domestic
relations order, as defined in Code section
414(p), are distributees with regard to the
interest of the spouse or former spouse.

"Direct rollover" is a payment by the Plan to the
eligible retirement plan specified by the
distributee.

(c) Notwithstanding any other provision of the Plan,
in no event shall the distribution of a Participant's benefit
commence later than April 1 of the calendar year following the
calendar year in which he attains age 70-1/2.

4.08 Reemployment

If a Participant is rehired after payment of his
Benefit has commenced, payments will be suspended until he again
terminates his employment with the Employer. Upon his subsequent
retirement, his Benefit shall be recomputed and shall take into
account Years of Benefit Service and Compensation during his
period of reemployment subject, however, to any of the other

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-26-

applicable provisions of the Plan; but such recomputed Benefit shall be reduced by the Actuarial Equivalent of any Benefit previously paid to the Participant prior to his having attained age 65; provided that the recomputed Benefit shall in no event be less than the Benefit payable prior to his return to employment.

ARTICLE 5

<u>Vesting</u>

5.01  Vested Percentage of Accrued Benefit.

Upon termination of his employment with the Employer for any reason other than retirement or death, a Participant shall be entitled to the following vested percentage of his Accrued Benefit:

| <u>Years of Service</u> | <u>Vested Percentage</u> |
|---|---|
| less than 5 | 0 |
| 5 or more | 100 |

Notwithstanding the foregoing, a Participant shall be entitled to a one hundred percent (100%) vested percentage of his Accrued Benefit when he attains his Early Retirement Age, Normal Retirement Age or dies.

5.02  Years Excluded.

In determining a Participant's vested percentage, all of such Participant's Years of Vesting Service shall be taken into account except Years of Vesting Service not required to be included under Section 5.03.

5.03  Breaks in Service.

When a Participant incurs one or more consecutive one-year Breaks in Service before his date of retirement, or vested

-27-

termination of employment, as applicable, the following shall apply with respect to the portion of his Accrued Benefit attributable to Employer contributions:

(a)   If such Participant was not vested before any such one-year Break in Service and the aggregate number of such consecutive one-year Breaks in Service equals or exceeds five, then his Years of Vesting Service and his Years of Benefit Service earned prior to such Break in Service shall be canceled.

(b)   If such Participant was not vested before any such one-year Break in Service, his Years of Vesting Service and Years of Benefit Service before the Break in Service, to the extent they were not canceled in accordance with (a) above, shall remain to his credit and will be aggregated with his Years of Vesting Service and Benefit Service earned after such Break in Service, provided he earns one or more Years of Vesting Service after any such one-year Break in Service.  His Accrued Benefit will be determined, in accordance with Section 3.01, as of the date he subsequently terminates employment with the Employer, on the assumption that his Years of Benefit Service earned before and after his one-year Break in Service were continuous.

(c)   If such Participant was vested before any such one-year Break in Service, his Years of Vesting Service and Years of Benefit Service before the Break in Service shall remain to his credit and will be aggregated with his Years of Vesting Service and Years of Benefit Service earned after such Break in Service.  His Accrued Benefit will be determined, in accordance with Section 3.01, as of the date he subsequently terminates employment with the Employer, on the assumption that his Years of Benefit Service earned before and after his one-year Break in Service were continuous.

(d)   Notwithstanding any other provision of this Section 5.03: (i) service performed prior to any break in service occurring before January 1, 1976 which would have been disregarded under the break in service rules of the Prior Plan in effect at the time of such break in service shall continue to be so disregarded for purposes of computing a Participant's Years of Vesting Service and Years of Benefit Service; and (ii) service performed at

-28-

any time during which the Participant failed to
make required contributions under the Prior Plan
shall be disregarded when determining a
Participant's Years of Vesting Service and Years
of Benefit Service.

ARTICLE 6

Contributions

6.01  (a)  It is the intention of the Employer to continue
the Plan and make contributions to the Trust each year in such
amounts as are necessary to maintain the Plan on a sound
actuarial basis and to meet minimum funding standards as
prescribed by any applicable law.  However, subject to the
provisions of Articles 9 and 11, the Employer may discontinue its
contributions for any reason at any time.  All contributions to
the Plan are expressly conditioned upon being deductible under
Code section 404.  Any forfeitures shall be used to reduce the
Employer contributions otherwise payable, and will not be applied
to increase the Benefits any Participant would otherwise receive
under the Plan.  No contributions to the Plan are required of any
Participant.

(b)  Notwithstanding the foregoing:  (i) the Employer
may recover without interest the amount of its contributions to
the Plan made on account of a mistake of fact, provided that such
recovery is made within one year after the date of such
contribution; and (ii) in the event that all or part of the
Employer's deductions under Code section 404 for contributions to
the Plan are disallowed by the Internal Revenue Service, the
portion of the contributions to which such disallowance applies

-29-

shall be returned to the Employer without interest within one
year after such disallowance.

ARTICLE 7

Management of Funds

7.01   All the funds of the Plan shall be held in trust by a
Trustee or Trustees appointed from time to time by the Board
under a trust instrument adopted, or as amended, by the Board for
use in providing Benefits under the Plan and paying its expenses
not paid directly by the Employer; provided that, except as
otherwise herein provided, no part of the corpus or income of the
Trust shall be used for, or diverted to, purposes other than for
the exclusive benefit of Participants and their beneficiaries
prior to the satisfaction of all liabilities with respect to
them; and provided that no person shall have any interest in or
right to any part of the earnings of the Trust, or any right in,
or to, or under the Trust or any part of the assets thereof,
except as and to the extent expressly provided in the Plan and in
the trust instrument.  The Employer shall have no liability for
the payment of Benefits under the Plan nor for the administration
of the funds paid over to the Trustee or Trustees.

If the Trustee is a bank or trust company supervised by
a governmental agency, (a) the assets of the Trust may be
invested in, and the Trustee, in its capacity as Trustee, may
purchase from or sell to such bank or trust company an interest
in, a common or collective trust fund maintained by such bank or
trust company and (b) the assets of the trust fund may be

-30-

invested in deposits which bear a reasonable rate of interest with such bank or trust company.  If an investment manager or investment managers have been appointed pursuant to Section 8.08 with respect to any assets of the trust fund, the Trustee shall not be liable for any acts or omissions of such investment manager or be under any obligation to manage any assets of the trust fund which are subject to the management of an investment manager, unless the Trustee participates knowingly in, or knowingly undertakes to conceal, an act or omission of such investment manager, knowing such act or omission is a breach of the fiduciary responsibilities of such investment manager.

## ARTICLE 8

### Administration of Plan

8.01  The general administration of the Plan and the responsibility for carrying out the provisions of the Plan shall be placed in the Committee appointed from time to time by the Board to serve at the pleasure of the Board.  The Committee shall be the Plan Administrator and a "named fiduciary" (within the meaning of ERISA section 402(a)).  Any member of the Committee may resign by delivering his written resignation to the Board and the Committee.

8.02  The members of the Committee may appoint from their number such subcommittees with such powers as they shall determine; may authorize one or more of their number or any agent to execute or deliver any instrument or make any payment on their behalf; may retain counsel, employ agents and provide for such

-31-

clerical, accounting, actuarial and consulting services as they may require in carrying out the provisions of the Plan; may allocate among themselves or delegate to other persons all or such portion of their duties hereunder, other than those granted to the Trustee under the trust instrument adopted for use in implementing the Plan, as they, in their sole discretion shall decide, provided that any such allocation or delegation shall be periodically reviewed by the Committee.

8.03  The Committee shall hold meetings upon such notice, at such place or places, and at such time or times as it may from time to time determine.

8.04  Any act which the Plan authorizes or requires the Committee to do may be done by a majority of its members.  The action of such majority expressed from time to time by a vote at a meeting or in writing without a meeting shall constitute the action of the Committee and shall have the same effect for all purposes as if assented to by all members of the Committee at the time in office.  No member of the Committee shall participate in the determination by the Committee of any of his or her rights under the Plan.

8.05  Expenses of the Plan may be paid from the Trust except to the extent borne by the Employers in proportions determined by the Company.  No member of the Committee shall receive any compensation from the Plan for his services as such.

8.06  Subject to the limitations of the Plan, the Committee from time to time shall establish uniform and nondiscriminatory

-32-

rules for the administration of the Plan and the transaction of
its business.  The Committee shall, in its sole discretion,
interpret the provisions of the Plan and promulgate interpretive
guidelines as it deems necessary or advisable on a uniform and
nondiscriminatory basis.

8.07  The Committee shall carry out a funding policy
consistent with the objectives of the Plan and the requirements
of ERISA, shall maintain accounts showing the fiscal transactions
of the Plan, and shall keep in convenient form such data as may
be necessary for Plan administration.

8.08  The Board shall select a Funding Agent or an
investment manager, or both, to hold and invest the contributions
of the Employer and the Participants and to pay the Benefits
provided under the Plan.

8.09  To the extent permitted by law, no person (including a
Trustee, any present or former Committee and any present or
former director, officer or employee of any Employer) shall be
personally liable for any act done or omitted to be done in good
faith in the administration of the Plan or Trust.  To the extent
permitted by law, each present or former director, officer or
employee of any Employer to whom the Plan Administrator or an
Employer has delegated any portion of its responsibilities under
the Plan and each present or former Committee member shall be
indemnified and saved harmless by the Employers (to the extent
not indemnified or saved harmless under any liability insurance
or other indemnification arrangement with respect to the Plan)

-33-

from and against any and all claims of liability to which they
are subjected by reason of any act done or omitted to be done in
good faith in connection with the administration of the Plan or
Trust, including all expenses reasonably incurred in their
defense if the Employers fail to provide such defense.

8.10  Any denial by the Committee of a claim for Benefits
under the Plan shall be stated in writing by the Committee and
delivered or mailed to the Participant or other person asserting
the claim.  Such notice shall set forth the specific reasons for
the denial.  In addition, the Committee shall afford a reasonable
opportunity for a review of any decision denying a claim to any
Participant or other person whose claim for Benefits has been
denied.

ARTICLE 9

Certain Rights and Limitations

9.01  The establishment of the Plan shall not be construed
as conferring any legal rights upon any Employee or other person
for a continuation of employment, nor shall it interfere with the
rights of the Employer to discharge any Employee and to treat him
without regard to the effect which such treatment might have upon
him as a Participant.

9.02  The provisions of this Section 9.02 shall apply to any
one of the 25 highest paid highly compensated Employees (within
the meaning of Code section 414(q)), including former Employees
who were highly compensated when they separated from service and
Employees who were highly compensated Employees at any time after

-34-

attaining age 55.  In the event the Plan is terminated with respect to such Employees, the amount of the retirement benefit provided under the Plan for any one of such Employees shall not be greater than an amount equal to the payments that would be made on behalf of the Employee under a single life annuity that is the Actuarial Equivalent value of the sum of the Employee's Accrued Benefit and the Employee's other benefits under the Plan (other than a social security supplement), and the amount of the payments that the Employee is entitled to receive under a social security supplement.  Notwithstanding the foregoing, the restrictions of this Section 9.02 do not apply if:

    (a)   after payment to a highly compensated Employee of all "benefits" described in (c) below, the value of Plan assets equals or exceeds 110 percent of the value of current liabilities, as defined in Code section 412(l)(7), or

    (b)   the value of the benefits described in (c) below for a highly compensated Employee is less than 1 percent of the value of current liabilities of the Plan.

    (c)   For purposes of (a) and (b) above the term "benefits" includes loans in excess of the amounts set forth in Code section 72(p)(2)(A), any periodic income, any withdrawal values payable to a living Employee, and any death benefits not provided for by insurance on the Employee's life.

    Furthermore, this Section 9.02 shall not restrict any distribution to a Participant who agrees (by an adequately secured written agreement with the Committee) to repay to the Trust Fund the Actuarial Equivalent of the portion of such distribution in excess of the amount of distribution otherwise permitted in the event of termination of the Plan.

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 123

-35-

Any excess reserves arising by application of the
foregoing provisions shall be used and applied as provided in the
Plan for the benefit of the other Participants who are Employees
of the Employer, or their contingent annuitants under the Plan;
provided, however, that in the event sufficient funds are
available to provide in full for the Accrued Benefit for all
other such Participants to the date of termination of the Plan,
such excess reserves shall first be used and applied to provide
the retirement benefit of the Participants whose retirement
benefits have been restricted by operation of the provisions of
this Section 9.02.

In the event that it should subsequently be determined
by statute, court decision acquiesced in by the Commissioner of
Internal Revenue, or ruling by the Commissioner of Internal
Revenue, that the provisions of this Section 9.02 are no longer
necessary to qualify the Plan under the Code, this Section 9.02
shall be ineffective without the necessity of further amendment
of the Plan.

9.03  In the event that the Committee shall find that a
Participant or other person entitled to a Benefit is unable to
care for his affairs because of illness or accident or is a minor
or has died, the Committee may direct that any Benefit payment
due him, unless claim shall have been made therefor by a duly
appointed legal representative, be paid to his spouse, a child, a
parent or other blood relative, or to a person with whom he
resides, or in any manner which the Committee may select that is

-36-

permitted by governing law and is consistent with the Plan.   Any

such payment so made shall be a complete discharge of the

liabilities of the Plan therefor.

9.04   The Plan may not be merged or consolidated with, nor

may its assets or liabilities be transferred to, any other plan

unless each Participant or beneficiary under the Plan would, if

the resulting plan were then terminated, receive a benefit

immediately after the merger, consolidation, or transfer which is

equal to or greater than the benefit he would have been entitled

to receive immediately before the merger, consolidation, or

transfer if the Plan had then terminated.

9.05   Benefits under the Plan shall not be subject in any

manner to anticipation, alienation, sale, transfer, assignment,

pledge, encumbrance or charge, and any attempt so to do shall be

void, except as specifically provided in the Plan, nor shall any

Benefit be in any manner liable for or subject to garnishment,

attachment, execution or levy, or liable for or subject to the

debts, contracts, liabilities, engagements or torts of the person

entitled to such benefit.

Notwithstanding the foregoing, the Committee may

approve payment to an alternate payee based upon and in

accordance with the provisions of a "qualified domestic relations

order" as defined in Code section 414(p), and such payment shall

not be deemed a prohibited alienation of benefits.

-37-

ARTICLE 10

<u>Top Heavy Provisions</u>

10.01 The provisions of this Section 10.01 shall become applicable under the circumstances described in (a) below:

(a)    For purposes of this Section 10.01, the Plan shall be "top heavy" with respect to any calendar year if, as of the last day of the preceding calendar year, the present value of the cumulative accrued benefits for "key employees," as defined in Code section 416(i), under the Plan and all other plans in the "aggregation group" as determined in accordance with this Section 10.01, exceeds 60% of the present value of the cumulative accrued benefits under all such plans for all Employees.  The present value of such benefits shall be computed in accordance with Code section 416(g), on the basis of the actuarial assumptions specified in Appendix A.  The aggregation of this Plan with other plans for purposes of determining top heavy status shall be in accordance with the following:

(i)    Required Aggregation:  If a key employee under this Plan also participates in another plan of the Company or Associated Company which is qualified under Code section 401(a) or which is a simplified employee pension plan under Code section 408(k), or if this Plan and another plan must be aggregated so that either this Plan or the other plan will meet the requirements of Code sections 401(a)(4) and 410(b), then this Plan and any such other plan will be aggregated for purposes of determining top heaviness.  This Plan will automatically be deemed top heavy if such required aggregation of plans is top heavy as a group and will automatically be deemed not top heavy if such required aggregate of plans is not top heavy as a group.

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-38-

(ii) Permissive Aggregation:  Any other plan of the Company or Associated Company which is qualified under Code section 401(a) or which is a simplified employee pension plan under Code section 408(k), and which is not in the required aggregation referenced in (i) above, may be aggregated with this Plan (and with any other plan(s) in the required aggregation group in (i) above) for purposes of determining top heaviness if such aggregation would continue to meet the requirements of Code sections 401(a)(4) and 410(b).  This Plan will automatically be deemed not top heavy as a group.

(iii) Determining Aggregate Top Heavy Status:  The top heavy status of the plans as a group is determined by aggregating the plans' respective, top heavy determinations that are made as of determination dates that fall within the same calendar year.

(b)  The following provisions shall be applicable to Participants for any calendar year with respect to which the Plan is top heavy:

(i)  In lieu of the service requirement for eligibility for a Terminated Vested Benefit specified in Section 3.04, any Participant who is not a key employee shall be vested in accordance with the following schedule:

| Years of Vesting Service | Vested Percentage |
|---|---|
| less than 2 years | 0% |
| 2 but less than 3 | 20% |
| 3 but less than 4 | 40% |
| 4 but less than 5 | 60% |
| 5 years or more | 100% |

(ii) The accrued annual retirement benefit of a Participant who is not a key employee shall not be less than two percent of his "average compensation" multiplied by the number of his Years of Benefit Service, not in excess of ten, during the calendar years for which the Plan is top heavy.  For purposes of this Section 10.01(b), "average compensation" shall mean the average annual compensation

-39-

(within the meaning of Code section 415(c)(3)) of a Participant for the five consecutive years of his Years of Vesting Service during which he received the greatest aggregate compensation from the Company or an Associated Company, excluding any compensation for service after the last calendar year with respect to which the Plan is top heavy.

(c)  If the Plan is top heavy with respect to a calendar year and ceases to be top heavy for a subsequent calendar year, the following provisions shall be applicable:

(i)  The Accrued Benefit in any such subsequent calendar year shall not be less than the minimum accrued retirement benefit provided in paragraph (b)(ii) above, computed as of the end of the most recent calendar year for which the Plan was top heavy.

(ii) The preceding vesting schedule shall not apply to such subsequent calendar year; provided, however, that the portion of a Participant's Accrued Benefit which became vested while the Plan was top heavy shall remain vested.

ARTICLE 11

Amendment and Termination

11.01  The Board, by adoption of resolutions, may modify or amend in whole or in part any or all of the provisions of the Plan; provided that no such modification or amendment shall make it possible for any part of the funds of the Plan to be used for, or diverted to, purposes other than for the exclusive benefit of Participants and their beneficiaries prior to the satisfaction of all liabilities with respect to them; and that no modification or amendment shall be made which has the effect of decreasing the Accrued Benefit of any Participant or of reducing the

-40-

nonforfeitable percentage of the Accrued Benefit of a Participant attributable to Employer contributions below that nonforfeitable percentage thereof computed under the Plan as in effect on the later of the date on which the amendment is adopted or becomes effective.

11.02  The Board, by adoption of resolutions, may terminate the Plan for any reason at any time.  In the case of termination or partial termination of the Plan, the rights of each Participant to benefits accrued to such date to the extent then funded shall be nonforfeitable.  In the case of a partial termination as hereinabove defined, this Section shall apply only to the portion of the Plan terminated.  The funds of the Plan shall be used for the exclusive benefit of Participants and their beneficiaries as of the date of such termination, except as provided in Articles 6 and 7 and except that any funds not required to satisfy all liabilities of the Plan for benefits because of erroneous actuarial computation shall be returned to the Employer.

## ARTICLE 12

### Construction

12.01  The Plan shall be construed, regulated and administered under the laws of the State of New Jersey except to the extent preempted by the laws of the United States.

IN WITNESS WHEREOF, and as evidence of the adoption of this amendment and restatement of the Plan, the Company has

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

-41-

caused the same to be executed by its duly authorized officer and

its corporate seal to be affixed this 15th day of Dec. , 1994.

ATLANTIC CITY ELECTRIC COMPANY

Attest:

By _____
Senior Vice President -
Finance & Administration

_____
Secretary

(Corporate Seal)

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 130

## APPENDIX A

A-1  <u>Purpose. Use of Terms</u>.  The purpose of this Appendix A is to set forth the actuarial factors and assumptions which apply pursuant to the definition of "Actuarial Equivalent" set forth in Section 1.01 of the Plan in determining the actuarial equivalent of a benefit under the Plan to any other benefit under the Plan. Except where the context indicates to the contrary, terms used and defined in the Plan shall have the same respective meanings for purposes of this Appendix.

A-2  The actuarial factors and other assumptions which serve as a basis for an Actuarial Equivalent under the Plan are as set forth on the attached actuarial tables.

APPENDIX B

B-1  <u>Purpose, Use of Terms</u>.  The purpose of this Appendix B
is to set forth the provisions which apply to Participants who,
prior to January 1, 1980 and after attaining age 44, elected the
"Variable Pension Option."  Except where the context indicates to
the contrary, terms used and defined in the Plan shall have the
same respective meanings for purposes of this Appendix.

B-2  <u>Conflicts Between Plan and this Appendix</u>.  This
Appendix together with the Plan comprises the Plan with respect
to Participants in this Appendix.  In the event of any
inconsistency between the provisions of the Plan and this
Appendix, the terms and provisions of this Appendix shall
supersede the other provisions of the Plan to the extent
necessary to eliminate such inconsistency.

B-3  <u>Variable Pension Option</u>.  A Participant who elected the
Variable Pension Option will have a portion of his Normal
Retirement Benefit payable as a Variable Pension.

   (a)  <u>Convertible Amount</u>:  The "Convertible Amount"
means, with respect to such Participant, one-
twelfth of 3/4 of 1% of his Pension Earnings
(taken to the nearer whole dollar) multiplied by
the number of his Years of Benefit Service of a
lesser amount as set forth in (b) below if a cut-
off date is elected.  However, such Convertible
Amount shall not exceed the amount of Normal
Retirement Benefit which is provided by the
Company's contribution.

   (b)  <u>Conversion Period</u>:  The "Conversion Period" means,
with respect to such Participant, the ten calendar
year period preceding the calendar year in which
his Retirement Date occurs, unless his election
occurs after the beginning of that period; in that
event, it means the ten calendar year period
following the calendar year of his election.

However, at any time before the expiry of his
Conversion Period, the Participant may specify a
cut-off date which will be the last day of the
calendar year in which such specification is made.
Specification of a cut-off date will reduce the
Conversion Period to that part of the original
period which ends on such cut-off date and will
reduce the Convertible Amount in (a) above in the
same ratio that the number of years of the reduced
Conversion Period bears to ten.

-2-

"Retirement Date" means the date a Participant's Normal, Early or Deferred Retirement Benefit payments began.

(c) <u>Conversion of Pension</u>: The Variable Pension to be provided for a Participant will be expressed in terms of Variable Units of Pension. The number of Units arising from a Participant's Convertible Amount will be determined by multiplying such Convertible Amount by the average of the Units per Dollar for each month during the Conversion Period applicable to him.

A "Variable Unit" is a means of reflecting, in the Variable Pension payments under the Plan, the investment results of an investment fund composed primarily of common stocks.

The "Units Per Dollar" for any month is equal to $1.00 divided by the Variable Unit Value applicable to Variable Pension payments in that month.

The "Variable Unit Value" at any time is determined by the extent to which the actual investment results of the investment fund, including market value changes and dividends, less investment expenses and taxes, differs from the assumed investment result of 3 1/2%. Thus, the Variable Unit Value fluctuates from month to month. The Unit Value which applies to Variable Pension payments due in any month is the Unit Value for the second preceding month.

If a Participant's Conversion Period extends past his Retirement Date, a number of Variable Units will be established for him on his Retirement Date by multiplying his Convertible Amount by the ratio of the number of years of his Conversion Period completed as of the December 31 preceding his Retirement Date to the total number of years in his Conversion Period, and multiplying the product by the average of the Units Per Dollar for each month in the portion of the Conversion Period ending on such December 31. The remainder of a Participant's Convertible Amount resulting from the establishment of the Variable Units on his behalf, as described above, shall be further adjusted by the factor or factors, if any, applicable as a result of (a) his early retirement, or (b) his election of the Pre-

11/29/94/901EYG/00320/005/RET-PLAN/45878.1

C - 133

-3-

Retirement Spouse's Benefit or (c) as a result of payment on a joint and 50% survivor annuity or Contingent Annuitant Option basis.

Thereafter, on each January 1 during the remainder of his Conversion Period and on the January 1 immediately following the end of his Conversion Period, a portion of his Convertible Amount will be converted into Variable Units by multiplying such portion by the average of the Units Per Dollar for each month in the calendar year ending immediately before such date. Such portion will be equal to the part of his Convertible Amount not converted into Variable Units as adjusted by any applicable factors on his Retirement Date divided by the number of years between the December 31 immediately preceding his Retirement Date and the end of his Conversion Period. The Pension payable to a Participant as other than a Variable Pension will be reduced on each date of conversion by the amount converted on such date. The Variable Pension of such Participant will be increased on such date by the number of Variable Units arising from the conversion.

(d)    <u>Amount of Variable Annuity</u>:  The dollar amount of each monthly Variable Pension payment will be equal to the product of the number of Variable Units constituting such monthly payment and the Variable Unit Value applicable to Variable Pension payments in that month.  (This amount will fluctuate in dollar value as the Variable Unit Value fluctuates in dollar value).