CONECTIV

Unanimous Consent of Directors
in Lieu of a Meeting

March 1, 1998

C - 135

## TABLE OF CONTENTS

1.   Appointment of Board Members to Each of the Three
     Classes . . . . . . . . . . . . . . . . . . . . . . .   1

2.   Approval of Bylaws . . . . . . . . . . . . . .   2

3.   Adoption of Schedule of Meetings . . . . . . . .   2

4.   Designation of Board Committees, Committee
     Chairs, Committee Vice Chairs and Committee
     Members . . . . . . . . . . . . . . . . . . . . . .   2

5.   Ratification of the Chairman of the Board
     and Chief Executive Officer and the President
     and Chief Operating Officer . . . . . . . . . . .   8

6.   Election of Other Officers . . . . . . . . . . .   9

7.   Designation of Executive Officers for Purposes
     of Section 16 . . . . . . . . . . . . . . . . . .   10

8.   Divisional and Departmental Vice Presidents . . .   11

9.   Corporate Seal . . . . . . . . . . . . . . . . .   11

10.  Form of Company Common Stock Certificate . . . .   11

11.  Form of Class A Common Stock Certificate . . . .   11

12.  Signatures on Stock Certificates . . . . . . . .   12

13.  Ratification of Auditors . . . . . . . . . . . .   12

14.  Adoption of Fiscal Year . . . . . . . . . . . .   12

15.  Express Assumption of Atlantic Energy, Inc.
     Obligations . . . . . . . . . . . . . . . . . .   12

16.  Ratification of Banking Authorizations . . . . .   13

17.  Establishment of Investment Guidelines . . . . .   13

18.  Ratification of Actions in Connection
     with Merger . . . . . . . . . . . . . . . . . .   13

19.  Ratification of Corporation's Bank Credit
     Facility . . . . . . . . . . . . . . . . . . . .   13

20.  Ratification of Dividend Reinvestment Plan . . .   13

i

21.     Ratification of New York Stock Exchange
        Listing of Common Stock and Class A
        Common Stock  . . . . . . . . . . . . . . . .  14

22.     Approval of Directors and Officers
        Insurance Coverage  . . . . . . . . . . . . .  14

23.     Ratification of Salaries and Incentives . . . . .  14

24.     Approval of 1998 Operating and Capital Budgets  .  14

25.     Approval of Directors of Certain Subsidiaries,
        Authorization of Officers to Elect Directors  . .  14

26.     Approval of Restated Certificate of
        Incorporation of Conectiv . . . . . . . . . . .  15

27.     Ratification of CONECTIV Incentive Compensation
        Plan  . . . . . . . . . . . . . . . . . . . . .  15

28.     Ratification; Additional Actions  . . . . . . .  15

29.     Effectiveness of the Resolutions  . . . . . . .  16

ii

## LIST OF SCHEDULES

SCHEDULE A          Form of Bylaws

SCHEDULE B          List of Other Officers

SCHEDULE C          Form of Corporate Seal

SCHEDULE D          Form of Company Common Stock Certificate

SCHEDULE E          Form of Class A Common Stock Certificate

SCHEDULE F          Form of Banking Resolutions Adopted by
                    Conectiv, Inc.

SCHEDULE G          Investment Guidelines

SCHEDULE H          Form of Credit Facility Resolution Adopted
                    by Conectiv, Inc.

SCHEDULE I          Dividend Reinvestment Resolutions Adopted
                    by Conectiv, Inc.

SCHEDULE J          Resolution Authorizing a NYSE Listing
                    Application Adopted by Conectiv, Inc.

SCHEDULE K          Directors and Officers Insurance Coverage

SCHEDULE L          Salaries and Incentives

SCHEDULE M          Operating and Capital Budgets

SCHEDULE N          Subsidiary Directors

SCHEDULE O          Restated Certificate of Incorporation

C - 138

CONECTIV

## Unanimous Consent of Directors in Lieu of Meeting
## March 1, 1998

The undersigned, being all the members of the Board of Directors (the "Board") of Conectiv, a Delaware corporation (the "Corporation"), hereby consent to the following resolutions pursuant to Section 141(f) of the Delaware General Corporation Law (the "DGCL"):

1.        *Appointment of Board Members to Each of the Three Classes*

RESOLVED, that the number of seats on the Board of Directors to be filled shall be fourteen (14) until such time as the Board of Directors shall otherwise determine; and

RESOLVED FURTHER, that the three classes of directors shall be designated Class I, Class II and Class III, respectively, and the initial term of each class shall expire at the First Annual Meeting held after the date hereof, the Second Annual Meeting held after the date hereof and the Third Annual Meeting held after the date hereof, respectively; and

RESOLVED FURTHER, that the initial composition of the three classes of directors shall be as follows:

Class I  (initial term to expire at the First Annual Meeting held after the date hereof)

> Richard B. McGlynn
> Harold J. Raveché
> Michael G. Abercrombie
> R. Franklin Balotti
> Weston E. Nellius

Class II  (initial term to expire at the Second Annual Meeting held after the date hereof)

> Cyrus H. Holley
> Jerrold L. Jacobs
> Sarah I. Gore
> Michael B. Emery
> Robert D. Burris

Class III   (initial term to expire at the Third
Annual Meeting held after the date hereof)

> Bernard J. Morgan
> Audrey K. Doberstein
> Howard E. Cosgrove
> Kathleen MacDonnell

Each of the above persons shall serve as a director until his
or her successor is appointed or his or her earlier resignation
or removal.

2.      *Approval of Bylaws*

RESOLVED, that the form of Bylaws presented to the
Directors and attached as Annex V to the joint proxy statement
dated December 26, 1996, as amended, is hereby adopted and
approved as the Bylaws of the Corporation until amended or
repealed in accordance with applicable law.  Such Bylaws are
attached as Schedule A hereto.

3.      *Adoption of Schedule of Meetings*

RESOLVED, that the 1999 annual meeting of
stockholders shall be in March 1999.

RESOLVED FURTHER, that the six regularly scheduled
meetings of the Board of Directors will be convened in addition
to the meeting held on, or in anticipation of, the annual
meeting of stockholders and the Annual Board Retreat.  The
Chairman of the Board shall promulgate the meeting schedule for
the Board as soon as practicable.

4.      *Designation of Board Committees, Committee Chairs,
        Committee Vice Chairs and Committee Members*

RESOLVED, that pursuant to Section 4.11 of the
Bylaws, the Board of Directors hereby designates an Executive
Committee of the Board of Directors and hereby further
designates and appoints the following Chair, Vice Chair and
members thereof, effective as of the date hereof and each will
serve until his or her successor is appointed or his or her
earlier resignation or removal: Howard E. Cosgrove (Chair),
Jerrold L. Jacobs (Vice Chair), Michael B. Emery, Cyrus H.
Holley and Sarah I. Gore;

RESOLVED FURTHER, that the Executive Committee shall
have and exercise, during the intervals between meetings of the

2

C - 140

Board, all the powers and authority vested in the full Board of Directors, except the following:

    (1)    the power or authority to amend the Corporation's Certificate of Incorporation;

    (2)    the power or authority to amend the Corporation's By-Laws;

    (3)    the power or authority to adopt an agreement or plan of merger;

    (4)    the power or authority to exchange, consolidate, sell, lease, mortgage, pledge or exchange all or substantially all of the Corporation's assets;

    (5)    the power or authority to adopt or revoke a plan of dissolution;

    (6)    the power or authority delegated to any other committee of the Board of Directors; and

    (7)    such other powers or authority as may not be delegated under the DGCL or the By-Laws.

RESOLVED FURTHER, that the Board of Directors hereby designates a Nominating Committee of the Board of Directors and hereby further designates and appoints the following Chair and members thereof, effective as of the date hereof and each will serve until his or her successor is appointed or his or her earlier resignation or removal:  Audrey K. Doberstein (Chair), Kathleen MacDonnell and Weston E. Nellius;

RESOLVED FURTHER, that the Nominating Committee shall:

    (1)    recommend to the full Board of Directors:

        (a)    nominees to fill vacancies as they occur among the Directors; and

        (b)    a slate of nominees for election or reelection as Directors by the stockholders of the Corporation at the annual meeting;

    (2)    seek out possible candidates and aid in attracting candidates as Directors;

    (3)    consider candidates submitted by Directors, officers, employees and stockholders;

3

(4) from time to time, prepare for submission to and adoption by the Board of Directors, a list of selection criteria to be used by the Committee;

(5) review proposed candidates, including incumbent Directors, in light of the selection criteria adopted by the Board of Directors;

(6) consider the continuation of service by a director who has had a change in status either through resignation from full-time employment, retirement, transfer, etc.;

(7) consult with the Chairman concerning assignment, rotation and terms of committee members;

(8) prepare for submission and review by the Board of Directors attendance and tenure policies;

(9) prepare for submission and review by the Board of Directors Board membership criteria;

(10) prepare for submission and review by the Board of Directors criteria for assessing Board performance; and

(11) prepare for submission and review by the Board of Directors limits on directorships for serving directors.

RESOLVED FURTHER, that the Board of Directors hereby designates a Nuclear Oversight Committee of the Board of Directors and hereby further designates and appoints the following Chair and members thereof, effective as of the date hereof and each will serve until his or her successor is appointed or his or her earlier resignation or removal:    Cyrus H. Holley (Chair), Harold J. Raveché, Michael G. Abercrombie and Robert D. Burris;

RESOLVED FURTHER, that the Nuclear Oversight Committee shall:

(1) review, investigate and assess the status of those nuclear power stations of which the Corporation is part owner, directly or indirectly;

(2) assess the Corporation's position in respect to related matters; and

4

(3)  when necessary engage independent consultants to
     report directly to it and advise it with regard
     to any of the above matters.

RESOLVED FURTHER, that the Board of Directors hereby
designates an Audit Committee of the Board of Directors and
hereby further designates and appoints the following Chair and
members thereof, effective as of the date hereof and each will
serve until his or her successor is appointed or his or her
earlier resignation or removal:  Richard B. McGlynn (Chair),
Harold J. Raveché, R. Franklin Balotti, and Robert D. Burris;

RESOLVED FURTHER, that the Audit Committee shall:

(1)  review the qualifications and fees of the
     independent audit firm recommended by management
     and annually recommend to the Board of Directors
     the firm to be selected to audit the financial
     statements of the Corporation and its
     subsidiaries;

(2)  meet with the independent auditors and financial
     managers of the Corporation to review the scope
     of the proposed audit for the current year, the
     audit procedures to be utilized and the budgeted
     cost of such audit;

(3)  at the conclusion of the audit for the current
     year, review the results of such audit,
     including any comments or recommendations of the
     independent auditors;

(4)  review with the independent auditors, the
     qualifications and effectiveness of the
     Corporation's internal auditing, financial and
     accounting personnel, and the adequacy and the
     effectiveness of the accounting and financial
     controls of the Corporation;

(5)  periodically review Corporation policy
     statements and the procedures established by
     management to monitor compliance with the code
     of business conduct, the conflict of interest
     policy and the policy concerning trading in the
     Corporation's securities and any events of
     noncompliance;

(6)  periodically review the program of legal
     compliance for effectiveness and consistency
     with the Federal Sentencing Guidelines and the
     adequacy of the corporate information and
     reporting system;

5

(7)  annually review the adequacy of the insurance coverage for the corporation and its subsidiaries;

(8)  annually review the funding status of the Nuclear Plant Decommissioning Trust(s) and the adequacy of the funding;

(9)  periodically review the major financial risk exposures to the Corporation and assure that the adequate risk management practices and procedures are implemented and are being effectively utilized;

(10) annually review non-audit services that are being performed by the independent auditors to avoid any conflict of interests;

(11) review the internal auditing function of the Corporation including the independence and authority of its reporting obligations, the proposed audit plans for the coming year and the coordination of such plans with the independent auditors;

(12) review the financial statements contained in the Annual Report to Stockholders with management and the independent auditors to determine that the independent auditors are satisfied with the appropriateness, as well as acceptability, of the disclosure, content and clarity of the financial statements that are to be presented to stockholders;

(13) at a minimum of once every year, meet separately with the internal and independent auditors without members of management present; and

(14) advise the Board with respect to inter-company transactions and other fiduciary matters that may relate to the Class A Common Stock.

RESOLVED FURTHER, that the Board of Directors hereby designates a Personnel and Compensation Committee of the Board of Directors and hereby further designates and appoints the following Chair and members thereof effective as of the date hereof and each will serve until his or her successor is appointed or his or her earlier resignation or removal: Sarah I. Gore (Chair), Michael B. Emery, Bernard J. Morgan and Richard B. McGlynn;

6

RESOLVED FURTHER, that the Personnel and Compensation Committee shall:

(1)  in consultation with the CEO, establish a philosophy governing all executive compensation plans;

(2)  establish the base salaries and approve all other compensation, benefits and perquisites made available to senior corporate officers.  In establishing base salaries and incentive compensation, the Personnel and Compensation Committee shall review the financial performance results compared with the Corporation's philosophy, goals and competition;

(3)  establish stock and cash inventive plans and programs for corporate officers and senior management that are strategically linked to measurable financial and other appropriate Corporation goals; submit such plans to the full Board of Directors for approval as required by applicable SEC and other regulatory agency rules; and administer such plans, to the extent that the Board of Directors is involved in the administration thereof;

(4)  approve non-material amendments to the Corporation's employee benefit plans, review other amendments to those plans and make recommendations to the full Board of Directors with respect thereto.  Amendments are "non-material" if they do not require stockholder approval or do not involve material amounts of money or other consideration;

(5)  approve stock and cash awards for the Corporation's senior corporate officers under the Corporation's incentive plans, consistent with the terms of those plans and the established compensation philosophy;

(6)  evaluate periodically the competitiveness of the cash and stock compensation programs, benefits and perquisites offered to the Corporation's corporate officers and other members of senior management and initiate actions or recommend changes to the full Board of Directors as appropriate;

(7)  annually review the succession plans for the CEO and other appropriate senior corporate officers;

7

(8)  review periodically the compensation and
     benefits offered to non-employee directors and
     recommend changes to the full Board of Directors
     as appropriate;

(9)  when necessary, engage independent consultants
     to report directly to it and advise it with
     regard to any of the above matters;

(10) evaluate the commitment of the Corporation to
     equal opportunity and a workplace free of
     discrimination; and

(11) periodically review the needs of retired
     employees and future retirees, particularly the
     pension and health benefit plan performance.

5.        *Ratification of the Chairman of the Board and Chief
          Executive Officer and the President and Chief
          Operating Officer*

        RESOLVED, that the following individuals named
pursuant to the Agreement and Plan of Merger dated as of August
9, 1996, as amended and restated as of December 26, 1996 and as
amended as of August 12, 1997, among Delmarva Power & Light
Company, Atlantic Energy, Inc., Conectiv, Inc. and DS Sub, Inc.
(the "Merger Agreement") are ratified in their offices as set
forth opposite their respective names, effective immediately,
to hold such office as provided in the By-Laws of the
Corporation, each until his successor is appointed or his
earlier resignation or removal:

| Individual | Offices |
|---|---|
| Howard E. Cosgrove | Chairman of the Board and Chief Executive Officer |
| Meredith I. Harlacher, Jr. | President and Chief Operating Officer |
| Jerrold L. Jacobs | Vice Chairman of the Board |

        FURTHER RESOLVED, that the Chairman of the Board
shall have all the powers and duties customarily and usually
associated with the office of the Chairman of the Board, and
the Chairman of the Board shall preside at all meetings of the
stockholders and of the Board of Directors;

        FURTHER RESOLVED, that the Chief Executive Officer
shall have, subject to the supervision, direction and control

8

C - 146

of the Board of Directors, the general powers and duties of
supervision, direction and management of the affairs and
business of the Corporation usually vested in the chief
executive officer of a corporation, including, without
limitation, all powers necessary to direct and control the
organizational and reporting relationships within the
Corporation.  If at any time the office of the Chairman of the
Board and the Vice Chairman of the Board shall not be filled,
or in the event of the temporary absence or disability of the
Chairman of the Board and the Vice Chairman of the Board, the
Chief Executive Officer shall have all of the powers and duties
of the Chairman of the Board;

FURTHER RESOLVED, that the President shall serve as
the chief operating officer and shall have such powers and
perform such duties as may be delegated to him or her from time
to time by the Board of Directors or the Chief Executive
Officer; and

FURTHER RESOLVED, that the Vice Chairman of the Board
shall have all of the powers and duties usually associated with
the office of vice chairman of the board.

6.        *Election of Other Officers*

RESOLVED, that the persons listed in Schedule B
annexed hereto are elected to the offices set forth opposite
their respective names, effective immediately, to hold office
as provided in the By-Laws of the Corporation, each until his
or her successor is appointed or his or her earlier resignation
or removal;

RESOLVED FURTHER, that each Vice President shall have
such powers and perform such duties as may from time to time be
assigned to him or her by the Board of Directors, the Chief
Executive Officer, or the President;

RESOLVED FURTHER, that the Controller shall be
responsible for maintaining the accounting records and
statements, and shall properly account for all monies and
obligations due the Corporation and all properties, assets, and
liabilities of the Corporation.  The Controller shall render to
the Chairman of the Board or the President such periodic
reports covering the results of operations of the Corporation
as may be required by either of them or by law.  The Controller
shall have such other powers and perform such other duties as
may from time to time be assigned to him or her by the Board of
Directors, the Chief Executive Officer, or the President;

RESOLVED FURTHER, that the Secretary/Chief Legal
Officer shall perform all necessary acts and duties in

9

connection with the corporate operation and legal affairs of the Corporation, shall generally perform all duties appertaining to the office of secretary of a corporation and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors or the Chief Executive Officer;

RESOLVED FURTHER, that the Assistant Secretary, if any, or, if there be more than one, the Assistant Secretaries, shall, under the supervision of the Secretary, perform the duties and exercise the powers of an assistant secretary and, in the absence or disability of the Secretary, the Assistant Secretary appointed by the Chief Executive Officer or the Secretary shall perform the duties and exercise all the powers of the Secretary;

RESOLVED FURTHER, that the Treasurer shall have custody of the Corporation's funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit or cause to be deposited moneys or other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.  The Treasurer shall maintain adequate records of all assets, liabilities and transactions of the Corporation and shall see that adequate audits thereof are currently and regularly made.  The Treasurer shall perform all other necessary acts and duties that are generally incident to the position of the office of Treasurer and shall perform such other duties and have such other powers as may be prescribed by the Board of Directors, the Chief Executive Officer or the President; and

RESOLVED FURTHER, that the Assistant Treasurer, if any, or, if there shall be more than one, the Assistant Treasurers, shall perform the duties and exercise the powers as may from time to time be assigned to him or her by the Board of Directors, the Chief Executive Officer, the President or the Treasurer.  In the event of the absence or disability of the Treasurer, the Assistant Treasurer designated by the Chief Executive Officer or the Treasurer shall perform the duties and exercise the powers of the Treasurer.

7.          *Designation of Executive Officers for Purposes of Section 16*

RESOLVED, that for purposes of the rules under Section 16 of the Securities Exchange Act of 1934 (the "Exchange Act") and Section 17(a) of the Public Utility Holding Company Act of 1935, the following officers of the Corporation, and only such officers, shall be deemed to be the "executive officers" of the Corporation:

10

| Executive Officer | Title |
|---|---|
| Howard E. Cosgrove | Chairman, Chief Executive Officer |
| Meredith I. Harlacher, Jr. | President, Chief Operating Officer |
| Thomas S. Shaw | Executive Vice President |
| Barry R. Elson | Executive Vice President |
| Barbara S. Graham | Senior Vice President and Chief Financial Officer |
| James P. Lavin | Controller |

8.        *Divisional and Departmental Vice Presidents*

        RESOLVED, that the Chief Executive Officer be, and hereby is, granted the power to appoint divisional and departmental vice presidents and to fix the duties of such appointees; provided, however, that no such divisional or departmental vice president shall be considered an officer of the Corporation.

9.        *Corporate Seal*

        RESOLVED, that the form of seal, an impression of which is affixed hereto at Schedule C, be and it hereby is approved and adopted as and for the corporate seal of the Corporation; and

        RESOLVED FURTHER, that the corporate seal of the Corporation may be affixed to any agreement, instrument or document executed by the Corporation by impressing or affixing the Corporation's seal or by imprinting or otherwise reproducing a facsimile thereof.

10.        *Form of Company Common Stock Certificate*

        RESOLVED, that the form of stock certificate for shares of common stock of the Corporation, par value $.01 per share (the "Company Common Stock"), a specimen of which is annexed hereto as Schedule D, be and hereby is adopted as the stock certificate to represent such shares.

11.        *Form of Class A Common Stock Certificate*

11

C - 149

RESOLVED, that the form of stock certificate for shares of Class A Common Stock of the Corporation, par value $.01 per share (the "Class A Common Stock"), a specimen of which is annexed hereto as Schedule E, be and hereby is adopted as the stock certificate to represent such shares.

12.      *Signatures on Stock Certificates*

RESOLVED, that the Chairman of the Board and Chief Executive Officer, President and Chief Operating Officer, any Senior Executive Vice President, any Executive Vice President and any Senior Vice President as well as the Treasurer and any Assistant Treasurer and the Secretary and any Assistant Secretary, shall be authorized in the name and on behalf of the Corporation to sign certificates for shares of the Company Common Stock or Class A Common Stock.

13.      *Ratification of Auditors*

RESOLVED, that the Audit Committee's recommendation that Coopers & Lybrand L.L.P. be the Corporation's independent auditors be, and the same hereby is, approved, ratified and confirmed in all respects.

14.      *Adoption of Fiscal Year*

RESOLVED, that effective immediately, the fiscal year of the Corporation shall commence on January 1 each year and conclude on December 31.

15.      *Express Assumption of Atlantic Energy, Inc.*
         *Obligations*

RESOLVED, pursuant to Section 259 of the DGCL, that the Corporation hereby assumes and adopts all debts, liabilities, obligations and commitments of Atlantic Energy, Inc. existing immediately prior to the Effective Time, including without limitation all bonds, promissory notes, letters of credit, contracts, agreements, deeds, leases, guarantees, loans, keep-wells, indemnities and other instruments, and that the Corporation succeeds to all of the property real, personal, mixed and intellectual rights, privileges, powers and franchises as well of a public as of a private nature and is subject to all the restrictions, disabilities and duties of Atlantic Energy, Inc.; and

RESOLVED FURTHER, any officer of the Corporation may execute and deliver an express undertaking and assumption in

12

respect of any of the matters described in the immediately
foregoing resolution where such undertaking and assumption is
required pursuant to the provisions of any indenture, guarantee
or other instrument to which Atlantic Energy, Inc. was a party
immediately prior to the Effective Time, or as otherwise
appropriate;

16.    *Ratification of Banking Authorizations*

       RESOLVED, that the banking authorizations adopted by
the Board of Directors of the Corporation prior to the
effective time of the Merger in the form attached hereto as
Schedule F be, and the same hereby are ratified and approved;

17.    *Establishment of Investment Guidelines*

       RESOLVED, that the Investment Guidelines in the form
attached hereto as Schedule G be, and the same hereby are,
approved.

18.    *Ratification of Actions in Connection with Merger*

       RESOLVED, that all actions taken by any director,
officer, employee or agent of Delmarva Power & Light Co. or
Atlantic Energy, Inc., and all actions taken by the Board of
Directors of Delmarva Power & Light Co. or the Board of
Directors of Atlantic Energy, Inc. in each case in connection
with the Merger and in furtherance thereof be, and they hereby
are, approved, ratified, and confirmed in all aspects.

19.    *Ratification of Corporation's Bank Credit Facility*

       RESOLVED, that the resolutions in the form attached
hereto as Schedule H relating to the Corporation's Credit
Facilities adopted by the Board of Directors of the Corporation
prior to the effective time of the Merger be, and the same
hereby are, ratified and approved.

20.    *Ratification of Dividend Reinvestment Plan*

       RESOLVED, that the resolutions in the form attached
hereto as Schedule I relating to the Corporation's Dividend
Reinvestment Plan adopted by the Board of Directors of the
Corporation prior to the effective time of the Merger be, and
the same hereby are, ratified and approved.

21.        *Ratification of New York Stock Exchange Listing of*
           *Common Stock and Class A Common Stock*

        RESOLVED, that the resolutions in the form attached
hereto as Schedule J relating to the listing of the
Corporation's Common Stock and Class A Common Stock adopted by
the Board of Directors of the Corporation prior to the
effective time of the Merger be, and the same hereby are,
ratified and approved.

22.        *Approval of Directors and Officers Insurance Coverage*

        RESOLVED, that the appropriate officers of the
Corporation be, and each of them hereby is, authorized and
directed, in the name and on behalf of the Corporation, to
obtain directors and officers insurance coverage meeting the
criteria set forth in Schedule K hereto;

        RESOLVED FURTHER, that the appropriate officers of
the Corporation be, and each of them hereby is, authorized and
directed in the name and on behalf of the Corporation, to
execute, acknowledge and deliver any agreements, contracts or
polices of insurance, and to pay all charges, fees and premiums
thereunder.

23.        *Ratification of Salaries and Incentives*

        RESOLVED, that the salaries and incentives
established by the Personnel and Compensation Committee and set
forth on Schedule L hereto, be, and the same hereby are,
ratified, confirmed, and approved.

24.        *Approval of 1998 Operating and Capital Budgets*

        RESOLVED, that the 1998 Operating and Capital Budgets
attached hereto as Schedule M be, and the same hereby are,
approved.

25.        *Approval of Directors of Certain Subsidiaries,*
           *Authorization of Officers to Elect Directors*

        RESOLVED, that the election of each of the persons
identified on Schedule N hereto as a director of the subsidiary
or subsidiaries of the Corporation set forth therein be, and
hereby is, authorized and approved.

        RESOLVED FURTHER, that the Chief Executive Officer or
the Senior Vice President and Chief Financial Officer of the
Corporation be, and each of them hereby is, singly, authorized

14

to vote the stock of each of the Corporation's subsidiaries to elect the directors thereof and to take such other actions as he or she deems necessary or appropriate in connection with voting the stock of such subsidiaries.

26.        *Approval of Restated Certificate of Incorporation of Conectiv*

RESOLVED, that the Restated Certificate of Incorporation of the Corporation in the form set forth in Schedule O hereto (the "Restated Certificate of Incorporation"), which restates but does not further amend the certificate of incorporation of the Corporation as in effect on the date hereof and which hereby is made a part of this resolution, be and the same hereby is approved and adopted.

RESOLVED FURTHER, that the appropriate officers of the Corporation be, and each of them hereby is, authorized and directed to file the Restated Certificate of Incorporation with the Secretary of State of the State of Delaware.

27.        *Ratification of CONECTIV Incentive Compensation Plan*

RESOLVED, that the filing of the Registration Statement on Form S-8 for the CONECTIV Incentive Compensation Plan be, and it hereby is, approved, ratified, and confirmed in all respects.

28.        *Ratification; Additional Actions*

RESOLVED, that all actions taken by a director, officer or agent of the Corporation in connection with any matter referred to or contemplated by any of the foregoing resolutions be, and they hereby are, approved, ratified, and confirmed in all respects; and

RESOLVED FURTHER, that the appropriate officers of the Corporation be, and each of them hereby is, authorized and directed, in the name and on behalf of the Corporation, to do all acts and things and to sign, seal, execute, acknowledge, file, deliver and record all papers, instruments, agreements, documents and certificates, and to pay all charges, fees, taxes and other expenses, from time to time necessary, desirable or appropriate to be done, signed, sealed, executed, acknowledged, filed, recorded, delivered or paid, under any applicable law, or otherwise, and to certify as having been adopted by this Board any form of resolution required by any law, regulation or agency, in order to effectuate fully the purposes, or to carry into effect the intent, of the foregoing resolutions or any of them.

15

C - 153

29.     *Effectiveness of the Resolutions*

RESOLVED, that each of the foregoing resolutions, other than those resolutions set forth in 13 above regarding auditors and 23 above regarding salaries and incentives shall be effective immediately following the Effective Time of the Mergers contemplated by the Merger Agreement.

RESOLVED FURTHER, that contemporaneously herewith the Audit Committee and the Compensation Committee are acting by unanimous written consent with respect to the matters set forth in 13 above regarding auditors and 23 above regarding salaries and incentives and that the resolutions set forth in 13 and 23 above shall be effective immediately following the effectiveness of the actions of the Audit Committee and Compensation Committee.

RESOLVED FURTHER, that this consent may be executed in counterparts.


[REMAINDER OF PAGE INTENTIONALLY BLANK]

16

C - 154

26.FEB.1998 23:14 FAX 302 429 3367     DP&L EXEC.                    NR.264  P.5

302 429 3367

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

Richard B. McGlynn
Director

17-

C - 155

        IN WITNESS WHEREOF, the undersigned, being a director
of CONECTIV has caused this consent to be executed as of March
1, 1998.

                                    _____
                                    Harold J. Raveché, Director

17-2

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

Michael G. Abercrombie,
Director

17-3

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

R. Franklin Balotti
Director

17-4

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

Weston E. Nellius, Director

17-5

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

Cyrus H. Holley, Director

17-6

C - 160

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

Jerrold L. Jacobs, Director

17-7

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

_Sarah I. Gore_

Sarah I. Gore, Director

17-8

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

_M. B. Emery_

Michael B. Emery, Director

17-9

C - 163

FEB-27-98 11:43 AM  BURRIS FOODS INC           3024245175           P.04

          IN WITNESS WHEREOF, the undersigned, being a director
of CONECTIV has caused this consent to be executed as of March
1, 1998.

                                    Robert D. Burris, Director

                              17-10

C - 164

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

_____
Bernard J. Morgan, Director

17-11

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

Audrey K. Doberstein,
Director

IN WITNESS WHEREOF, the undersigned, being a director
of ___CONECTIV_____, has caused this document to be
executed this 1st day of march, 1998.

Howard E. Cosgrove

IN WITNESS WHEREOF, the undersigned, being a director of CONECTIV has caused this consent to be executed as of March 1, 1998.

Kathleen MacDonnell,
Director

17-14

C - 168

SCHEDULE A

Form of Bylaws

See Attached

# B Y L A W S

## OF

## CONECTIV

---

1.          OFFICES.

       1.1     Offices.  In addition to its registered office in the State of Delaware, the Corporation shall have a corporate office in Wilmington, Delaware and a significant presence in New Jersey, and such other offices, either within or without the State of Delaware, at such locations as the Board of Directors may from time to time determine or the business of the Corporation may require.

2.          SEAL.

       2.1     Seal.  The Corporation shall have a seal, which shall have inscribed thereon its name and year of incorporation and the words, "Corporate Seal Delaware."

3.          MEETINGS OF STOCKHOLDERS.

       3.1     Annual Meetings.  The annual meeting of stockholders of the Corporation shall be held on such date, at such time and at such place within or without the State of Delaware as shall be determined by the Board of Directors from time to time.

       3.2     Special Meetings.  Special meetings of the stockholders of the Corporation shall be held on such date, at such time and at such place within or without the State of Delaware as may be designated by the Chairman of the Board or by the Board of Directors pursuant to a resolution approved by a majority of the entire Board of Directors.

       3.3     Notice of Meetings.  (a)  Notices of meetings of stockholders shall be in writing and shall state the place, date and hour of the meeting, and, in the case of a special meeting, the purpose or purposes for which a meeting is called.  No business other than that specified in the notice thereof shall be transacted at any special meeting.

       (b)     Such notice shall either be delivered personally or mailed, postage prepaid, to each stockholder entitled to vote at such meeting not less than 10 nor more than 60 days before the date of the meeting.  If mailed, the notice shall be directed to the stockholder at his or her address as it appears on the records of the Corporation. Personal delivery of any such notice to any officer of a corporation or association or to any member of a partnership shall constitute delivery of such notice to such corporation, association or partnership.

       (c)     Notice of any meeting of stockholders need not be given to any stockholder if waived by such stockholder in writing, whether before or after such

meeting is held, or if such stockholder shall sign the minutes or attend the meeting, except that if such stockholder attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened, such stockholder shall not be deemed to have waived notice of such meeting.

3.4    Adjourned Meetings.  When a meeting is adjourned to another time or place, unless otherwise provided by these Bylaws, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting the stockholders may transact any business which might have been transacted at the original meeting.  If an adjournment is for more than 30 days, or if after an adjournment, a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder entitled to vote at the meeting.

3.5    Quorum and Adjournment.  Except as otherwise provided by law, by the Certificate of Incorporation of the Corporation or by these Bylaws, the presence, in person or by proxy, of the holders of a majority of the aggregate voting power of the stock issued and outstanding, entitled to vote thereat, shall constitute a quorum for the transaction of business at all meetings of stockholders.  If such majority shall not be present or represented at any meeting of stockholders, the stockholders present, although less than a quorum, shall have the power to adjourn the meeting.

3.6    Vote Required.  Except as otherwise provided by law or by the Certificate of Incorporation:

(a)    Directors shall be elected by a plurality of the votes present in person or represented by proxy at a meeting of stockholders and entitled to vote in the election of directors, and

(b)    whenever any corporate action other than the election of Directors is to be taken, it shall be authorized by a majority in voting power of the shares present in person or by proxy at a meeting of stockholders and entitled to vote on the subject matter.

3.7    Manner of Voting.  At each meeting of stockholders, each stockholder having the right to vote shall be entitled to vote in person or by proxy. Proxies need not be filed with the Secretary of the Corporation until the meeting is called to order, but shall be filed before being voted.  Each stockholder shall be entitled to vote each share of stock having voting power registered in his name on the books of the Corporation on the record date fixed for determination of stockholders entitled to vote at such meeting.  All elections of Directors by stockholders shall be by written ballot.

3.8    Proxies.  (a)  At any meeting of stockholders, any stockholder may be represented and vote by proxy or proxies appointed by a written form of proxy.  In the

2

event that any form of proxy shall designate two or more persons to act as proxies, a majority of such persons present at the meeting or, if only one shall be present, then that one shall have and may exercise all of the powers conferred by the form of proxy upon all of the persons so designated unless the form of proxy shall otherwise provide.

(b)    The Board of Directors may, in advance of any annual or special meeting of the stockholders, prescribe additional regulations concerning the manner of execution and filing of proxies and the validation of the same, which are intended to be voted at any such meeting.

3.9    Presiding Officer and Secretary.  The Chairman of the Board shall act as chairman of all meetings of the stockholders.  In the absence of the Chairman of the Board, the Vice Chairman of the Board or, in his or her absence, the Chief Executive Officer or, in his or her absence, the President or, in his or her absence, any Vice President designated by the Board of Directors shall act as chairman of the meeting.

The Secretary of the Corporation shall act as secretary of all meetings of the stockholders, but, in the absence of the Secretary, the Assistant Secretary designated in accordance with Section 5.11(b) of these Bylaws shall act as secretary of all meetings of the stockholders, but in the absence of a designated Assistant Secretary, the chairman of the meeting may appoint any person to act as secretary of the meeting.

3.10    Procedure.  At each meeting of stockholders, the chairman of the meeting shall fix and announce the date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at the meeting and shall determine the order of business and all other matters of procedure.  Except to the extent inconsistent with any such rules and regulations as adopted by the Board of Directors, the chairman of the meeting may establish rules, which need not be in writing, to maintain order and safety and for the conduct of the meeting.  Without limiting the foregoing, he or she may:

(a)    restrict attendance at any time to bona fide stockholders of record and their proxies and other persons in attendance at the invitation of the chairman;

(b)    restrict dissemination of solicitation materials and use of audio or visual recording devices at the meeting;

(c)    adjourn the meeting without a vote of the stockholders, whether or not there is a quorum present; and

(d)    make rules governing speeches and debate, including time limits and access to microphones.

The chairman of the meeting acts in his or her absolute discretion and his or her rulings are not subject to appeal.

3

4.        DIRECTORS.

4.1        Powers.  The Board of Directors shall exercise all of the powers of
the Corporation except such as are by law, or by the Certificate of Incorporation of this
Corporation or by these Bylaws conferred upon or reserved to the stockholders of any class
or classes.

4.2        Resignations.  Any Director may resign at any time by giving written
notice to the Board of Directors or the Secretary.  Such resignation shall take effect at the
date of receipt of such notice or at any later time specified therein.  Acceptance of such
resignation shall not be necessary to make it effective.

4.3        Presiding Officer and Secretary.  The Chairman of the Board shall act
as chairman of all meetings of the Board of Directors.  In the absence of the Chairman of
the Board, the Vice Chairman of the Board, or in his absence, the Chief Executive Officer
or other person designated by the Board of Directors shall act as chairman of the meeting.

The Secretary of the Corporation shall act as secretary of all meetings
of the Board of Directors, but, in the absence of the Secretary, the Assistant Secretary
designated in accordance with Section 5.11(b) of these Bylaws shall act as secretary of all
meetings of the Board of Directors, but in the absence of a designated Assistant Secretary,
the chairman of the meeting may appoint any person to act as secretary of the meeting.

4.4        Annual Meetings.  The Board of Directors shall meet each year
immediately following the annual meeting of stockholders, at the place where such meeting
of stockholders has been held, or at such other place as shall be fixed by the person
presiding over the meeting of the stockholders, for the purpose of election of officers and
consideration of such other business as the Board of Directors considers relevant to the
management of the Corporation.

4.5        Regular Meetings.  Regular meetings of the Board of Directors shall
be held on such dates and at such times and places, within or without the state of
Delaware, as shall from time to time be determined by the Board of Directors.  In the
absence of any such determination, such meetings shall be held at such times and places,
within or without the State of Delaware, as shall be designated by the Chairman of the
Board on not less than twelve hours notice to each Director, given verbally or in writing
either personally, by telephone (including by message or recording device), by facsimile
transmission, by telegram or by telex or on not less than three (3) calendar days' notice to
each Director given by mail.

4.6        Special Meetings.  Special meetings of the Board of Directors shall
be held at the call of the Chairman of the Board at such times and places, within or without
the State of Delaware, as he or she shall designate, on not less than twelve hours notice to
each Director, given verbally or in writing either personally, by telephone (including by
message or recording device), by facsimile transmission, by telegram or by telex or on not

4

less than three (3) calendar days' notice to each Director given by mail. Special meetings shall be called by the Secretary on like notice at the written request of a majority of the Directors then in office.

    4.7    Quorum and Powers of a Majority. At all meetings of the Board of Directors and of each committee thereof, a majority of the members shall be necessary and sufficient to constitute a quorum for the transaction of business, and the act of a majority of the members present at any meeting at which a quorum is present shall be the act of the Board of Directors or such committee, unless by express provision of law, of the Certificate of Incorporation or these Bylaws, a different vote is required, in which case such express provision shall govern and control. In the absence of a quorum, a majority of the members present at any meeting may, without notice other than announcement at the meeting, adjourn such meeting from time to time until a quorum is present.

    4.8    Waiver of Notice. Notice of any meeting of the Board of Directors, or any committee thereof, need not be given to any member if waived by him or her in writing, whether before or after such meeting is held, or if he or she shall sign the minutes or attend the meeting, except that if such Director attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened, then such Director shall not be deemed to have waived notice of such meeting.

    4.9    Manner of Acting. (a) Members of the Board of Directors, or any committee thereof, may participate in any meeting of the Board of Directors or such committee by means of conference telephone or similar communications equipment by means of which all persons participating therein can hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

        (b) Any action required or permitted to be taken at any meeting of the Board of Directors or any committee thereof may be taken without a meeting if all members of the Board of Directors or such committee, as the case may be, consent thereto in writing, and the writings are filed with the minutes of proceedings of the Board of Directors or such committee.

    4.10    Compensation. (a) The Board of Directors, by a resolution or resolutions, may fix, and from time to time change, the compensation of Directors.

        (b) Each Director shall be entitled to reimbursement from the Corporation for his or her reasonable expenses incurred with respect to duties as a member of the Board of Directors or any committee thereof.

        (c) Nothing contained in these Bylaws shall be construed to preclude any Director from serving the Corporation in any other capacity and from receiving compensation from the Corporation for service rendered to it in such other capacity.

4.11   Committees.  The Board of Directors may designate one or more committees, each committee to consist of one or more Directors, which to the extent provided in said resolution or resolutions shall have and may exercise the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation; provided, however, that no such committee shall have the power or authority in reference to the following matters:  (i) approving or adopting, or recommending to the stockholders, any action or matter expressly required by the General Corporation Law of Delaware (the "GCLD") to be submitted to stockholders for approval or (ii) adopting, amending, or repealing any bylaw of the Corporation.  The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member of the committee.  In the absence or disqualification of a member of a committee, the member or members present at any meeting of such committee and not disqualified from voting, whether or not such member of members constitute a quorum, may unanimously appoint another member of the board of directors to act at the meeting in place of such absent or disqualified director.

4.12   Committee Procedure, Limitations of Committee Powers.  (a)  Except as otherwise provided by these Bylaws, each committee shall adopt its own rules governing the time, place and method of holding its meetings and the conduct of its proceedings and shall meet as provided by such rules or by resolution of the Board of Directors.  Unless otherwise provided by these Bylaws or any such rules or resolutions, notice of the time and place of each meeting of a committee shall be given to each member of such committee as provided in Section 4.6 of these Bylaws with respect to notices of special meetings of the Board of Directors.

(b)   Each committee shall keep regular minutes of its proceedings and report the same to the Board of Directors when required.

(c)   Any member of any committee may be removed from such committee either with or without cause, at any time, by the Board of Directors at any meeting thereof.  Any vacancy in any committee shall be filled by the Board of Directors in the manner prescribed by the Certificate of Incorporation or these Bylaws for the original appointment of the members of such committee.

5.        OFFICERS.

5.1   Number.  (a)  The officers of the Corporation shall include a Chief Executive Officer, a President, one or more Vice Presidents (including one or more Executive Vice Presidents and one or more Senior Vice Presidents if deemed appropriate by the Board of Directors), a Secretary and a Treasurer.  The Board of Directors shall also elect a Chairman of the Board and may elect a Vice Chairman of the Board.  The Board of Directors may also elect such other officers as the Board of Directors may from time to time deem appropriate or necessary.  Except for the Chairman of the Board, the Vice Chairman of the Board and the Chief Executive Officer, none of the officers of the

6

Corporation needs to be a director of the Corporation.  Any two or more offices may be held by the same person to the extent permitted by the GCLD.

          (b)     The Board of Directors may delegate to the Chief Executive Officer or President the power to appoint one or more employees of the Corporation as divisional or departmental vice presidents and fix the duties of such appointees.  However, no such divisional or departmental vice president shall be considered as an officer of the Corporation, the officers of the Corporation being limited to those officers elected by the Board of Directors.

        5.2    <u>Election of Officers, Qualification and Term</u>.  The officers of the Corporation shall be elected from time to time by the Board of Directors and, except as may otherwise be expressly provided in a contract of employment duly authorized by the Board of Directors or the Merger Agreement, shall hold office at the pleasure of the Board of Directors.

        5.3    <u>Removal</u>.  Except as otherwise expressly provided in the Merger Agreement, any officer elected by the Board of Directors may be removed, either with or without cause, by the Board of Directors at any meeting thereof, or to the extent delegated to the Chairman of the Board or the Chief Executive Officer, by the Chairman of the Board or the Chief Executive Officer.

        5.4    <u>Resignations</u>.  Any officer of the Corporation may resign at any time by giving written notice to the Board of Directors or to the Chairman of the Board or to the Chief Executive Officer.  Such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

        5.5    <u>Salaries</u>.  The salaries of all officers of the Corporation shall be fixed by the Board of Directors from time to time, and no officer shall be prevented from receiving such salary by reason of the fact that he or she is also a Director of the Corporation.

        5.6    <u>The Chairman of the Board</u>.  The Chairman of the Board shall have the powers and duties customarily and usually associated with the office of the Chairman of the Board.  The Chairman of the Board shall preside at meetings of the stockholders and of the Board of Directors.

        5.7    <u>Vice Chairman of the Board</u>.  The Vice Chairman of the Board shall have the powers and duties customarily and usually associated with the office of the Vice Chairman of the Board.

        5.8    <u>Chief Executive Officer</u>.  The Chief Executive Officer shall have, subject to the supervision, direction and control of the Board of Directors, the general powers and duties of supervision, direction and management of the affairs and business of

7

the Corporation usually vested in the chief executive officer of a corporation, including, without limitation, all powers necessary to direct and control the organizational and reporting relationships within the Corporation.  If at any time the office of the Chairman of the Board and the Vice Chairman of the Board shall not be filled, or in the event of the temporary absence or disability of the Chairman of the Board and the Vice Chairman of the Board, the Chief Executive Officer shall have the powers and duties of the Chairman of the Board.

      5.9   The President.  The President shall serve as chief operating officer and shall have such other powers and perform such other duties as may be delegated to him or her from time to time by the Board of Directors or the Chief Executive Officer.

      5.10   The Vice Presidents.  Each Vice President shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Directors, the Chief Executive Officer or the President.

      5.11   The Secretary and the Assistant Secretary.  (a)  The Secretary shall attend meetings of the Board of Directors and meetings of the stockholders and record all votes and minutes of all such proceedings in a book kept for such purpose.  He or she shall have all such further powers and duties as generally are incident to the position of Secretary or as may from time to time be assigned to him or her by the Board of Directors, the Chief Executive Officer or the President.

      (b)   Each Assistant Secretary shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Directors, the Chief Executive Officer, the President or the Secretary.  In case of the absence or disability of the Secretary, the Assistant Secretary designated by the Chief Executive Officer (or, in the absence of such designation, by the Secretary) shall perform the duties and exercise the powers of the Secretary.

      5.12   The Treasurer and the Assistant Treasurer.  (a)  The Treasurer shall have custody of the Corporation's funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit or cause to be deposited moneys or other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.  The Treasurer shall also maintain adequate records of all assets, liabilities and transactions of the Corporation and shall see that adequate audits thereof are currently and regularly made.  The Treasurer shall have such other powers and perform such other duties that generally are incident to the position of Treasurer or as may from time to time be assigned to him or her by the Board of Directors, the Chief Executive Officer or the President.

      (b)   Each Assistant Treasurer shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Directors, the Chief Executive Officer, the President or the Treasurer.  In case of the absence or

8

disability of the Treasurer, the Assistant Treasurer designated by the Chief Executive Officer (or, in the absence of such designation, by the Treasurer) shall perform the duties and exercise the powers of the Treasurer.

6.      STOCK

6.1      Certificates.  Certificates for shares of stock of the Corporation shall be issued under the seal of the Corporation, or a facsimile thereof, and shall be numbered and shall be entered in the books of the Corporation as they are issued.  Each certificate shall bear a serial number, shall exhibit the holder's name and the number of shares evidenced thereby, and shall be signed by the Chairman of the Board or a Vice Chairman, if any, or the Chief Executive Officer or the President or any Vice President, and by the Secretary or an Assistant Secretary or the Treasurer or an Assistant Treasurer.  Any or all of the signatures on the certificate may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if such person or entity were such officer, transfer agent or registrar at the date of issue.

6.2      Transfers.  Transfers of stock of the Corporation shall be made on the books of the Corporation only upon surrender to the Corporation of a certificate (if any) for the shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, provided such succession, assignment or transfer is not prohibited by the Certificate of Incorporation, these Bylaws, applicable law or contract.  Thereupon, the Corporation shall issue a new certificate (if requested) to the person entitled thereto, cancel the old certificate (if any) and record the transaction upon its books.

6.3      Lost, Stolen or Destroyed Certificates.  Any person claiming a certificate of stock to be lost, stolen or destroyed shall make an affidavit or an affirmation of that fact, and shall give the Corporation a bond of indemnity in satisfactory form and with one or more satisfactory sureties, whereupon a new certificate (if requested) may be issued of the same tenor and for the same number of shares as the one alleged to be lost, stolen or destroyed.

6.4      Registered Stockholders.  The Corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares as the person entitled to exercise the rights of a stockholder and shall not be bound to recognize any equitable or other claim to or interest in any such shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise expressly provided by the GCLD.

6.5      Additional Powers of the Board.  (a)  In addition to those powers set forth in Section 4.1, the Board of Directors shall have power and authority to make all such rules and regulations as it shall deem expedient concerning the issue, transfer and

9

registration of certificates for shares of stock of the Corporation, including the use of uncertificated shares of stock subject to the provisions of the GCLD.

(b)     The Board of Directors may appoint and remove transfer agents and registrars of transfers, and may require all stock certificates to bear the signature of any such transfer agent and/or any such registrar of transfers.

7.        <u>MISCELLANEOUS</u>

7.1     <u>Place and Inspection of Books</u>.  (a)  The books of the Corporation other than such books as are required by law to be kept within the State of Delaware shall be kept in such place or places either within or without the State of Delaware as the Board of Directors may from time to time determine.

(b)     At least ten days before each meeting of stockholders, the officer in charge of the stock ledger of the Corporation shall prepare a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order and showing the address of each stockholder and the number of shares registered in the name of each stockholder.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not specified, at the place where the meeting is to be held.  The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

(c)     The Board of Directors shall determine from time to time whether and, if allowed, when and under what conditions and regulations the accounts and books of the Corporation (except such as may be by law specifically open to inspection or as otherwise provided by these Bylaws) or any of them shall be open to the inspection of the stockholders and the stockholders' rights in respect thereof.

7.2     <u>Voting Shares in Other Corporations</u>.  The Chief Executive Officer, the President or any other officer of the Corporation designated by the Board of Directors may vote any and all shares held by the Corporation in any other corporation.

7.3     <u>Fiscal Year</u>.  The fiscal year of the Corporation shall be such fiscal year as the Board of Directors from time to time by resolution shall determine.

7.4     <u>Gender/Number</u>.  As used in these Bylaws, the masculine, feminine or neuter gender, and the singular or plural number, shall each include the others whenever the context so indicates.

10

C - 179

7.5     Paragraph Titles. The titles of the paragraphs have been inserted as a matter of reference only and shall not control or affect the meaning or construction of any of the terms and provisions hereof.

7.6     Amendment. These Bylaws may be altered, amended or repealed by (a) the affirmative vote of 80% or more of the aggregate number of votes that the holders of the then outstanding shares of common stock and preferred stock are entitled to cast on the amendment, or (b) by resolution adopted by the affirmative vote of not less than a majority of the Directors in office, at any annual or regular meeting of the Board of Directors or at any special meeting of the Board of Directors if notice of the proposed alteration, amendment or repeal be contained in written notice of such special meeting. Notwithstanding the foregoing, the amendment of any provision of these Bylaws requiring an affirmative vote in excess of a majority of the Directors in office shall require the affirmative vote of at least the number of directors the affirmative vote of whom is required by such provision.

7.7     Certificate of Incorporation. Notwithstanding anything to the contrary contained herein, if any provision contained in these Bylaws is inconsistent with or conflicts with a provision of the Certificate of Incorporation, such provision of these Bylaws shall be superseded by the inconsistent provision in the Certificate of Incorporation to the extent necessary to give effect to such provision in the Certificate of Incorporation.

290268

11

C - 180

00001

1       IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2       CIVIL ACTION NO. 05-702(SLR)

3 -----------------------------------
 J. MICHAEL CHARLES; MAURICE W.
4 WARD, JR.; and JOSEPH I. FINK, JR.,
 on behalf of themselves and all
5 others similarly situated,

6       Plaintiffs,

7    v.

8 PEPCO HOLDINGS, INC.; CONECTIV, and
 PEPCO HOLDINGS RETIREMENT PLAN,
9
     Defendants.
10 -----------------------------------

11

12
         Wilmington, Delaware
13       Tuesday, April 17, 2007

14

15
         TRANSCRIPT of testimony of DONALD E.
16
 CAIN, as taken by and before Sean M. Fallon, a
17
 Registered Professional Reporter and Notary Public,
18
 at the offices of PEPPER HAMILTON LLP, Hercules
19
 Plaza, Suite 5100, 1313 Market Street, commencing
20
 at 10:14 o'clock in the forenoon.
21

22

23

24

**CAIN, DONALD E. - Vol. 1**              **Page 1**

00002

1 A P P E A R A N C E S:

2    CHIMICLES & TIKELLIS LLP
     BY: JOSEPH G. SAUDER, ESQ.
3    One Haverford Centre
     361 West Lancaster Avenue
4    Haverford, PA  19041
     (610) 642-8500
5    josephsauder@chimicles.com
     Attorneys for Plaintiffs
6
     PEPPER HAMILTON LLP
7    BY:  BARAK A. BASSMAN, ESQ.
     3000 Two Logan Square
8    Eighteenth and Arch Streets
     Philadelphia, PA  19103-2799
9    (215) 981-4000
     bassmanb@pepperlaw.com
10    Attorneys for Defendants

11    LITTLER MENDELSON
     BY:  SUSAN KATZ HOFFMAN, ESQ.
12    Three Parkway
     1601 Cherry Street, Suite 1400
13    Philadelphia, PA  19102-1321
     (267) 402-3000
14    shoffman@littler.com
     Attorneys for Defendants
15
     BARBARA C. ALEXANDER,
16    ASSISTANT GENERAL COUNSEL
     Pepco Holdings, Inc.
17    P.O. Box 231
     Wilmington, DE  19849-0231
18    (302) 429-3206
     Attorney for Defendants
19

20

21

22

23

24

**CAIN, DONALD E. - Vol. 1**                    **Page 2**

00041

1    A.    You know, I don't remember that.

2    Q.    The sentence goes on, "That this

3 risk could be managed in light of the cost savings

4 to be realized from the new program."

5         Do you see that?

6    A.    Yes.

7    Q.    Cost savings to be realized, I

8 assume that's cost savings for the company,

9 correct?

10    A.    From the entire benefit program.

11    Q.    Correct?

12    A.    Yes.

13    Q.    So the company was saving costs,

14 correct?

15    A.    From the entire benefit program.

16    Q.    And the cash balance was a part of

17 that benefit program?

18    A.    But not from that part.

19    Q.    The company wasn't saving money from

20 that?

21    A.    No.

22    Q.    Are you certain of that?

23    A.    Yes.

24    Q.    Why are you so certain of that?

00042

1    A.    Because the one thing that's very

2 clear to me is that, from the very beginning, our

3 direction was that the implementation of the Cash

4 Balance Plan was to be cost neutral to the company.

5    Q.    And that was, I assume, conveyed to

6 the employees?

7    A.    I assume it was -- you are assuming

8 it was.  You can assume that.  I don't know that.

9    Q.    Okay.

10    A.    I believe it would have been.

11    Q.    What do you base that belief on?

12    A.    Just because we had a commitment to

13 communicate facts to employees.

14    Q.    Okay.

15        But, overall, the benefits plan was

16 a cost savings to the company, correct?

17    A.    It may have been.  It says it was.

18 May have been.

19        I don't remember exactly.

20    Q.    Okay.

21    A.    But I know it wasn't in the Cash

22 Balance Plan.

23    Q.    On next page, if you look at the

24 paragraph that starts, "Mr. Wilkinson," it states

**CAIN, DONALD E. - Vol. 1**            **Page 42**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

J. MICHAEL CHARLES; MAURICE W. WARD,  )  CIV. A. NO. 05-702 (SLR)
JR.; and JOSEPH I. FINK, JR., on behalf of   )  (Lead Case)
themselves and all others similarly situated, )
                                              )
                    Plaintiffs,               )
                                              )
        v.                                    )
                                              )
PEPCO HOLDINGS, INC; CONECTIV, and            )
PEPCO HOLDINGS RETIREMENT PLAN,               )
                                              )
                    Defendants.               )

## DECLARATION OF KAREN E. FRANCKS

STATE OF DELAWARE                 :
                                            ss.
COUNTY OF NEW CASTLE              :

      I, Karen E. Francks, being over 18 years of age, being of sound mind and capable of making this affidavit, and being personally acquainted with the facts described herein, which are true and correct to the best of my knowledge and belief, state the following:

      1.  I am currently the Manager of Performance, Process & Technology for the People Strategy & Human Resources Department at Defendant Pepco Holdings, Inc.

      2.  In 1998, I was Manager of the Service Center for the Human Resources Department ("HR") of Defendant Conectiv. My responsibilities included distribution of all HR publications, notices, newsletters, and forms to Conectiv employees.

      3.  It was Conectiv HR's standard practice in 1998 only to affix postage and home addresses to documents that were mailed to employees' homes.

4. Attached as Exhibit A is a Conectiv HR newsletter titled Facts. Conectiv HR mailed this newsletter to its employees' homes in May 1998.

5. Attached as Exhibit B is a Decision Kit. This Decision Kit was mailed to each employee's home after the Conectiv Board of Directors adopted the cash balance formula but before May 18, 1998.

I hereby declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

By: _Karen E. Francks_
Karen E. Francks
Pepco Holdings, Inc.
Human Resources
401 Eagle Run Road
Newark, DE 19702

Dated: _July 31, 2007_

-2-

# EXHIBIT A