# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. MICHAEL CHARLES; MAURICE W. WARD, JR.; and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated, | ) ) ) ) | C. A. NO. 05-702 (SLR) (Lead Case) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PEPCO HOLDINGS, INC; CONECTIV, and PEPCO HOLDINGS RETIREMENT PLAN, | ) ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A CONTINUANCE PURSUANT TO FED. R. CIV. P 56(f) OR FOR A PRECLUSION ORDER

**CHIMICLES & TIKELLIS LLP**
Pamela S. Tikellis (#2172)
Robert J. Kriner (#2546)
A. Zachary Naylor (#4439)
Scott M. Tucker (#4925)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
302-656-2500 (telephone)
302-656-9053 (fax)

and

James R. Malone, Jr.
(*pro hac vice*)
Joseph G. Sauder
(*pro hac vice*)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
610-642-8500 (telephone)
610-649-3633 (fax)
Attorneys for Plaintiffs

September 4, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

I.    NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

*The Initial Scheduling Conference* ..........................................................3

*Plaintiffs' Discovery Requests* ...............................................................4

*The Discovery Conference* ....................................................................5

*Summary Judgment Proceedings* ............................................................7

II.   SUMMARY OF ARGUMENT ..........................................................9

III.  STATEMENT OF FACTS ............................................................10

IV.   ARGUMENT .............................................................................13

THE COURT SHOULD EITHER PERMIT FURTHER DISCOVERY OR SHOULD
PRECLUDE DEFENDANTS FROM ASSERTING THAT PLAINTIFFS NEED TO
ESTABLISH THAT DEFENDANTS EXPECTED A REDUCTION IN BENEFITS......................13

A.    *If Defendants' Expectations Are Relevant, Further Discovery Is Appropriate* .......13

B.    *Alternatively, Defendants Should Be Precluded From Asserting that
      Plaintiffs Must Establish that They Expected the Amendment to Result
      in Lower Benefits* .......................................................................17

V.    CONCLUSION ..........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASE**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..................................................................................13

*Bellas v. CBS, Inc.,*
    221 F.3d 517 (3d Cir. 2000) .....................................................................13

*Charles v. Pepco Holdings, Inc.,*
    437 F. Supp. 2d 248 (D. Del. 2006)............................................................3

*Delmarva Power & Light Co. v. Public Serv. Enter. Group,*
    1996 U.S. Dist. LEXIS 13758 (E.D. Pa. Sept. 17, 1996)...........................18

*Doe v. Abington Friends School,*
    480 F.3d 252 (3d Cir. 2007) .....................................................................14

*Miller v. Beneficial Mgmt. Corp.,*
    977 F.2d 834 (3d Cir. 1992) .....................................................................14

*Montrose Med. Group Participating Sav. Plan v. Bulger,*
    243 F.3d 773 (3d Cir. 2001) .....................................................................18

*New Hampshire v. Maine,*
    532 U.S. 742 (2001).................................................................................17

*Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,*
    123 F.3d 111 (3d Cir. 1997) .....................................................................19

*Register v. PNC Fin. Servs. Group, Inc.,*
    477 F.3d 56 (3d Cir. 2007) .........................................................................3

*Register v. PNC Fin. Servs. Group, Inc.,*
    2005 U.S. Dist. LEXIS 29678 (E.D. Pa. Nov. 21, 2005)..............................3

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,*
    81 F.3d 355 (3d Cir. 1996) .......................................................................18

*Sames v. Gable,*
    732 F.2d 49 (3d Cir. 1984) .......................................................................14

*St. Surin v. Virgin Islands Daily News*,
21 F.3d 1309 (3d Cir. 1994) ...........................................................................14

*Turner v. C.M.S.*,
2006 U.S. Dist. LEXIS 51030 (D. Del. July 20, 2006) ...................................19

*Ward v. U.S.*,
471 F.2d 667 (3d Cir. 1973) ...........................................................................14

## STATUTES AND RULES

29 U.S.C. § 1054(b)(1)(H) .....................................................................................3

29 U.S.C. § 1054(h)(1) .......................................................................................1, 9

Fed. R. Civ. P. 56(c) ...........................................................................................13

Fed. R. Civ. P. 56(f) .............................................................................9, 13, 14, 20

## I.    NATURE AND STAGE OF THE PROCEEDINGS

These actions challenge the defendants' conversion of traditional defined benefit pension plans to a cash balance plan; plaintiffs Charles, Fink and Ward filed the first complaint on September 26, 2005 (D.I. 1),[1] and plaintiff Troup filed a second action in January 2006.

The parties are in the process of briefing dispositive motions, which are scheduled for argument on November 29, 2007. (D.I. 41). A central disputed issue is whether defendants were required to provide formal notice of the pension plan amendment under Section 204(h) of ERISA, which requires notice if an amendment provides for "a significant reduction in the rate of future benefit accrual." 29 U.S.C. § 1054(h)(1) (1996).

On August 3, 2007, defendants filed a reply brief faulting plaintiffs for failing to show that the defendants anticipated that the adoption of the cash balance plan would result in lower benefits: "based upon the information known as of the amendment's January 1, 1999 effective date, there was no reasonable basis to expect the cash balance conversion to reduce any Plaintiff's rate of future benefit accrual." (D.I. 102 at 6). Accordingly, defendants requested the entry of judgment in their favor, asserting that "Plaintiffs have not shown that, *at the time of the amendment,* Defendants should reasonably have anticipated that Mr. Charles' rate of future benefit accrual would decline." (D.I. 102 at 8) (emphasis in the original). This represents a fundamental change

---

[1]    All references are to the docket in the main action.

in defendants' position on what plaintiffs need to establish to prevail on their claim under Section 204(h) of ERISA.

In October 2006, the defendants filed a motion for a protective order, seeking to narrow the scope of plaintiffs' document requests and to bar plaintiffs from obtaining documents from their actuarial consultants. (D.I. 60, 61). In asserting that discovery should be restricted, defendants argued that plaintiffs only need to show "the effect of the amendment on future accruals, which will be shown by comparing the pre- and post-amendment Plan documents . . . ." (D.I. 61 at 9). After hearing from the parties at a discovery conference, the Court entered the requested protective order on November 14, 2006. (D.I. 62).

As defendants now assert that plaintiffs not only need to show that the amendment reduced future benefits, but that defendants should have expected this result, defendants have adopted a position that is fundamentally inconsistent with the arguments they made to procure the protective order. In order to meet defendants' shifting position, plaintiffs request that they be granted the right to conduct further discovery under Rule 56(f) of the Federal Rules of Civil Procedure or that defendants be precluded from asserting that the failure to establish their state of mind and expectations bars plaintiffs from relief, in light of the doctrines of judicial estoppel and the law of the case. As this motion rests in large measure on the procedural history of this matter, plaintiffs recount it in some detail.

*The Initial Scheduling Conference*

In the *Charles* action, the Court denied the defendants' Motion to Dismiss on June 12, 2006. (D.I. 24). Defendants moved for re-argument, and the Court denied that motion on July 11, 2006, while staying Count III.[2] *Charles v. Pepco Holdings, Inc.*, 437 F. Supp. 2d 248, 252 (D. Del. 2006). The parties thereafter submitted a stipulation providing for the consolidation of the *Charles* and *Troup* actions on July 18, 2006. (D.I. 33.)

Defendants filed answers to the complaints on August 1, 2006. (D.I. 38, 39). On August 2, 2006, this Court held a telephone conference with the parties to discuss scheduling. In advance of the conference, each side filed reports on their planning meeting and a scheduling proposal. (D.I. 36, 37). In their report, the plaintiffs indicated that they believed discovery into the reasons why the Cash Balance Sub-Plan was adopted and "the extent to which defendants expected the Cash Balance Sub-Plan to result in lower benefit accruals" would be needed, among other things. (D.I. 36 at 3). Plaintiffs also indicated that they would seek discovery relevant to the issue of remedies. (D.I. 36 at 4). At that time, defendants indicated that discovery on the merits would include "the extent to which defendants and/or plaintiffs expected the Cash Balance Sub-Plan to result in lower or higher benefit accruals." (D.I. 37 at 2). Following

---

[2]    Count III alleged a claim under Section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H), and was stayed pending disposition of an appeal in a similar case, *Register v. PNC Fin. Servs. Group, Inc.*, 2005 U.S. Dist. LEXIS 29678 (E.D. Pa. Nov. 21, 2005). The Court of Appeals ultimately issued an opinion which is fatal to Count III, and it rejected a petition for rehearing. *Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007). (D.I. 79, 84).

the conference, the parties submitted a Joint Proposed Scheduling Order, which listed, among the areas of relevant discovery that defendants "believed to be needed," the following:

> the extent to which defendants and/or plaintiffs expected the Cash Balance Sub-Plan to result in lower or higher benefit accruals; the communications from Conectiv to participants concerning adoption of the change; the nature and extent of the plan's liabilities to class members under the terms of the Cash Balance Sub-Plan and its predecessors; the rate at which participants have accrued benefits under the Cash Balance Sub-Plan for each plan year; and the appropriate remedies for defendants' alleged violations of ERISA.

(D.I. 40, ¶ 2(b)). The Court entered the proposed order on August 8, 2006. (D.I. 41).

### *Plaintiffs' Discovery Requests*

On August 18, 2006, plaintiffs served their First Set of Interrogatories and Requests for Production of Documents on defendants. (Malone Decl. ¶ 5 & Ex. 1). On September 20, 2006, defendants served their Objections to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Malone Decl. ¶ 5). In an effort to resolve the defendants' objections, plaintiffs' counsel sent a letter to defense counsel on October 24, 2006 addressing plaintiffs' concerns with defendants' responses. (Malone Decl. ¶ 9 & Ex. 4).

Because they were advised at the initial discovery meeting that defendants were having difficulty locating their records relating to the conversion, plaintiffs also sought discovery from third parties. (Malone Decl. ¶ 6). On September 15, 2006, plaintiffs issued a subpoena from the United States District Court for the Eastern District of Pennsylvania, which they thereafter served upon Towers, Perrin, Forster, & Crosby, Inc.

("Towers Perrin") to obtain documents. (D.I. 51; Malone Decl. ¶ 7 & Ex. 2). Counsel for

Towers Perrin requested an extension, which plaintiffs granted. (Malone Decl. ¶ 7). On

September 18, 2006, plaintiffs issued a subpoena from the United States District Court

for the District of the District of Columbia, which they thereafter served upon Watson

Wyatt & Co. ("Watson Wyatt") to obtain documents. (D.I. 52; Malone Decl. ¶ 8 & Ex. 3).

On October 2, 2006, Watson Wyatt's counsel objected in writing to plaintiffs' requests

for documents. (Malone Decl. ¶ 8).

*The Discovery Conference*

On October 25, 2006, defendants filed a Motion for Protective Order on the eve of

a scheduled status conference with the Court. (D.I. 60; Malone Decl. ¶ 10). Although

defendants had acknowledged in their report on the parties' planning meeting and in

the Joint Scheduling Order that discovery on whether they expected the plan

amendment to result in lower retirement benefits was relevant and necessary,

defendants' motion sought to restrict plaintiffs' discovery to what defendants

considered "relevant to their non-stayed claims, i.e., the relevant Plan documents,

notices provided, and participant account statements." (D.I. 61 at 2).

On October 26, 2006, the Court held a discovery conference, at which the parties

presented their opposing views on the appropriate scope of discovery. (D.I. 71; Malone

Decl. ¶ 11 & Ex. 5). At that time, plaintiffs explained that they considered the disputed

discovery relevant for two reasons: first, the defendants' state of mind and expectations

in adopting the plan were relevant to the issue of remedies; second, plaintiffs

considered the discovery relevant to determine whether the new plan was reasonably

expected to change the amount of future benefit accruals. (D.I. 71 at 3-7; Malone Decl., Ex. 5 at 3-7).

Defendants asserted that the discovery plaintiffs were seeking was likely relevant to the stayed claim under Section 204(b)(1)(H) of ERISA, but not to the other three counts of plaintiffs' complaints. (D.I. 71 at 9-11; Malone Decl., Ex. 5 at 9-11). Specifically, defendants argued that plaintiffs had no obligation to show the defendants' expectations or state of mind:

> It does not matter whether anyone thought there was a reduction or not. You look at the formula before, the formula after, and that's how you tell if there's a significant reduction.

> That was the Konig case.

> Mr. Malone cites a regulation that says you need to give notice if it's reasonably expected. Reasonably means a reasonable person looking at the formula. If I'm badly advised and I adopt a formula that cuts benefit accruals by half, but I don't expect that, its not a reasonable expectation not to expect that and a notice would be required whether I thought it was going to happen or not.

> On the other hand, if I am badly advised and I think there's going to be a reduction by half but it turns out there is an increase and I don't give notice, there's no violation just because I thought there would be a reduction. You need to have a significant reduction in the rate of future benefit accrual, and that's formula to formula. **Expectations have nothing to do with it**.

(D.I. 71 at 20-21; Malone Decl., Ex. 5 at 20-21) (emphasis added).

Following the conference, plaintiffs deferred enforcement of their subpoenas to permit the Court to address the disputed discovery. (Malone Decl. ¶ 12).

On November 14, 2006, the Court issued an Order that limited defendants' written discovery obligations to the production of copies of the Cash Balance Sub-Plan,

summary plan descriptions, annual reports on Form 5500 for the Cash Balance Sub-Plan, participant statements, and employee communications relating to the amendment creating the Cash Balance Sub-Plan. Plaintiffs' subpoenas to Towers Perrin and Watson Wyatt were also quashed. (D.I. 62).

*Summary Judgment Proceedings*

In light of the Court's Order, limited discovery proceeded. In February 2007, plaintiffs entered into a stipulation permitting defendants to file an early summary judgment motion on May 1, 2007, which the Court approved. (D.I. 80). On May 1, 2007, defendants filed their Motion for Summary Judgment. (D.I. 87-89). On June 19, 2007, plaintiffs cross-moved for summary judgment, believing that they had gathered the appropriate evidence in light of the Court's November 14, 2006 Order. (D.I. 92-94). Plaintiffs also moved to strike certain of the materials that defendants submitted in support of their summary judgment motion. (D.I. 95-96). On July 3, 2007, defendants responded to plaintiffs' motion to strike, and plaintiffs submitted their reply in support of their motion to strike on July 16, 2007. (D.I. 97-98, 100-101).

On August 3, 2007, defendants filed a single brief that served as the reply brief in support of their summary judgment motion and their brief opposing plaintiffs' cross-motion. (D.I. 102). At that time, defendants asserted that judgment should be entered in their favor because plaintiffs "have not shown that, ***at the time of the amendment,*** Defendants should reasonably have anticipated that [plaintiffs'] rate of future benefit accrual would decline." (D.I. 102 at 8) (emphasis in original). Thus, defendants now argue that their subjective expectations need to be shown.

Because the defendants' position in their reply brief is directly contrary to the position that they adopted in their successful motion for a protective order, plaintiffs seek an Order vacating this Court's Order of November 14, 2006, and deferring consideration of the defendants' pending summary judgment motion in accordance with Rule 56(f) of the Federal Rules of Civil Procedure, so that discovery can be conducted to address the information defendants now contend is relevant and which plaintiffs were precluded from obtaining by reason of the Court's prior Order.

Plaintiffs have requested that defendants consent to this relief, but they have declined to do so. (Certification). Specifically, they have indicated that they will withdraw their argument in their reply brief that plaintiffs are not entitled to relief absent proof of bad faith, but will not withdraw their argument that plaintiffs need to show that defendants should have reasonably anticipated, at the time of the amendment, that the new benefit formula would result in lower benefit accruals.

Alternatively, plaintiffs seek an Order precluding defendants from asserting that plaintiffs have failed to prove facts relevant to defendants' state of mind concerning the adoption of the proposed plan, and their expectations on the level of benefits it would provide. Plaintiffs base this alternative request on the doctrines of judicial estoppel and the law of the case.

The Court has scheduled oral argument on the dispositive motions for November 29, 2007. (D.I. 41). In light of this motion, that date may need to be altered.

## II.    SUMMARY OF ARGUMENT

A motion for summary judgment should not be ruled upon until the opposing parties have had an adequate opportunity to complete discovery and marshal all of the facts essential to oppose the motion. *See* FED. R. CIV. P. 56(f). Based upon defendants' shifting positions on what is relevant to Count IV of the complaints, additional discovery appears necessary. Plaintiffs cannot be faulted for failing to pursue this discovery, as they sought to do so but were precluded by a prior Order of the Court that was entered at defendants' urging.

Count IV of the complaints alleges that defendants violated Section 204(h) of ERISA, which requires notice where an amendment "provide[s] for a significant reduction in the rate of future benefit accrual." 29 U.S.C. § 1054(h)(1) (1996). In October 2006, defendants argued that discovery should be limited to plan documents and employee communications because the defendants' knowledge at the time of the effective date of the amendment was irrelevant. The Court granted defendants' motion for a protective order. (D.I. 62).

Since that time, defendants have apparently had an epiphany, and they have adopted the view that discovery they considered irrelevant was actually vital to plaintiffs' case: defendants now argue that summary judgment should be granted in their favor on Count IV because Plaintiffs "have not shown that, *at the time of the amendment,* Defendants should reasonably have anticipated that [Plaintiffs'] rate of future benefit accrual would decline." (D.I. 102 at 8) (emphasis in original).

Plaintiffs have conducted all of their discovery based upon limitations imposed by the Court when it accepted the defendants' original position that their state of mind and their expectations were irrelevant. Plaintiffs sought discovery relating to the defendants' intent and expectations in adopting the Cash Balance Sub-Plan from the defendants and sought discovery from their actuarial consultants designed to shed light on those subjects as well. If the Court permits defendants to adopt a new and contradictory position that their state of mind and expectations are relevant, the ruling on their motion for summary judgment should be deferred until plaintiffs have had the opportunity to conduct additional discovery.

Alternatively, given the fact that the defendants successfully argued that plaintiffs' discovery should be narrowly restricted because their state of mind and expectations concerning the amended plan were not relevant, they should be judicially estopped from shifting their position now to assert that plaintiffs must show what defendants' expectations were if they wish to prevail. Such a result is consistent with the application of the law of the case; as the Court previously made a determination on what evidence was relevant in addressing the scope of discovery, that determination should apply with equal force at the dispositive motion stage.

### III.     STATEMENT OF FACTS

These consolidated actions involve defendants' conversion of two traditional defined benefit pension plans to a single cash balance plan. This conversion became effective January 1, 1999 when the plaintiffs were placed into Conectiv's Cash Balance Sub-Plan. (D.I. 1 ¶ 1.) The plaintiffs allege that the provisions of the Cash Balance Sub-

Plan violate the minimum accrual requirements of ERISA and that adequate notice of the adoption of the Cash Balance Sub-Plan was not provided, as required by ERISA.

Defendants have provided minimal information on the considerations in adopting the Cash Balance Sub-Plan and their expectations on how it would function. (Malone Decl. ¶ 16). The *plaintiffs*, however, uncovered a February 20, 1998 slide presentation prepared by Watson Wyatt which indicates that grandfather benefits were expected to be greater than cash balance benefits, an indication that the predecessor plans provided greater benefits.[3] Moreover, the minutes of the board committee meeting at which the cash balance design was endorsed indicated that it was being adopted as part of a package of benefit changes designed "to be at approximately the median of the competitive market place . . . ." (D.I. 94 at B0417). The minutes also indicated that there were "cost savings to be realized from the new program." (*Id.*). PowerPoint slides used to brief senior managers on the Company's new benefits package indicated that Conectiv would be spending $100 dollars on post-retirement benefits for every $122 previously spent by Atlantic City Electric and every $109 previously spent by Delmarva. (D.I. 94 at B0526).

Taken together, these materials indicate that defendants expected to save money through the new design; since the savings would come from the participants' pockets, these materials suggest that defendants were aware that the Cash Balance Sub-Plan would result in lower benefits at age 65. The fact that the Cash Balance Sub-Plan saved

---

[3] (D.I. 94 at B0413). As one of defendants' human resources executives explained, this presentation was provided to senior management, not participants such as the plaintiffs. (Wilkinson Dep. at 98:15-99:12; D.I. 94 at B390)

defendants money is apparent: defendants have acknowledged that if plaintiffs prevail, defendants' pension liabilities will increase by $12 million. (D.I. 94 at B0543). Presumably defendants' files and those of their actuarial consultants will contain additional documentary evidence reflecting their intentions in adopting the plan and their expectations of how it would function.

Moreover, defendants decided that some employees should be covered by the Cash Balance Sub-Plan and some should not, and management employees in the Cash Balance Sub-Plan were grandfathered if they met certain age or service criteria. (D.I. 94 at B0430). The fact that not all employees were subject to the new form of benefit suggests some recognition by defendants that the new design would provide lower benefits. Discovery into the reasons that the defendants drew the lines the way they did would likely shed light on whether they expected the Cash Balance Sub-Plan to result in lower benefits.

The Court's Order of November 14, 2006 not only restricted the scope and sources of documentary discovery obtained by plaintiffs, it also affected their deposition discovery. Some deponents were not sought because it would be pointless to conduct their deposition on topics that the Court had already ruled were not relevant, and those who were deposed were not asked the same range of questions that would have followed from broader documentary discovery. (Malone Decl. ¶¶ 17-18).

# IV.    ARGUMENT

### THE COURT SHOULD EITHER PERMIT FURTHER DISCOVERY OR SHOULD PRECLUDE DEFENDANTS FROM ASSERTING THAT PLAINTIFFS NEED TO ESTABLISH THAT DEFENDANTS EXPECTED A REDUCTION IN BENEFITS.

### A.    *If Defendants' Expectations Are Relevant, Further Discovery Is Appropriate.*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is only appropriate where the record demonstrates that there are no issues of material fact and that a party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Bellas v. CBS, Inc.*, 221 F.3d 517, 522 (3d Cir. 2000). A motion for summary judgment should not be ruled upon until the non-movant has had an adequate opportunity to complete discovery and marshal all of the facts essential to oppose the motion. *See* FED. R. CIV. P. 56(f); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 & n.5 (1986) (the requirement that the adverse party set forth specific facts showing a genuine issue for trial is "qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.").

Specifically, Rule 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f).

Motions under Rule 56(f) are granted almost as a "matter of course." *See St. Surin v. Virgin Islands Daily News*, 21 F.3d 1309, 1314 (3d Cir. 1994). Relief is particularly appropriate where the bulk of the evidence is within defendants' possession or subject to their control, as is the case here. *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845 (3d Cir. 1992); *Sames v. Gable,* 732 F.2d 49, 51 (3d Cir. 1984); *Ward v. U.S.*, 471 F.2d 667, 670-71 (3d Cir. 1973). The defendants' selective disclosure of facts does not justify summary judgment, but instead requires full and complete discovery so that all the facts are before this Court for a fair disposition.

In *Doe v. Abington Friends School,* 480 F.3d 252 (3d Cir. 2007), the Third Circuit recently vacated an order granting summary judgment in favor of defendants, holding that the district court erred in refusing to grant relief under FED. R. CIV. P. 56(f). 480 F.3d at 258-59. Specifically, the Third Circuit held that the district court erred in not granting plaintiffs' motion for a continuance pursuant to Rule 56(f) where (1) plaintiffs had identified six areas of inquiry relevant to the issues presented at summary judgment where discovery was needed and (2) plaintiffs had requested of defendants, but had not been provided with, documents that may have shed light on the issues presented at summary judgment. *Id.* The court of appeals also held that it would not fault plaintiffs for failing to provide affidavits relating to facts and information that is "principally within the control of [the defendants] and which [plaintiffs] could only have known second-hand." *Id.* at 258 n.8.

Here, there are compelling reasons why plaintiffs should be given the opportunity to conduct additional discovery. In October 2006, defendants argued that

discovery relating to defendants' knowledge at the time of the effective date of the amendment was irrelevant to the basic question whether notice was required under Section 204(h) of ERISA. (Malone Decl., Ex. 5 at 20-21). While plaintiffs asserted that "their expectations in terms of cost savings" were relevant (Malone Decl., Ex. 5 at 6), the Court accepted defendants' position. Defendants, however, now argue their expectations at the time of the effective date of the amendment are not merely relevant, but critical: "Plaintiffs have not shown that, *at the time of the amendment,* Defendants should reasonably have anticipated that Mr. Charles' rate of future benefit accrual would decline. This failure of proof entitles Defendants to summary judgment." (D.I. 102 at 8) (emphasis in the original).

Plaintiffs had timely sought a variety of discovery from defendants on these issues that they were precluded from pursuing. In their document requests, plaintiffs sought, among other things, documents referring or relating to the reasons why the Cash Balance Sub-Plan was adopted; documents on the terms on which grandfathered benefits would be offered, and documents referring to the reasons why separate sub-plans were adopted for unionized workers. (Malone Decl., Ex. 1 at 7). On the question of whether the defendants expected the Cash Balance Sub-Plan to result in lower benefits, plaintiffs specifically sought the following:

> 15.    All Communications referring or relating to the extent to which the Cash Balance Sub-Plan would result in a significant reduction in the rate of future benefit accrual for participants in the ACE Plan.
> 16.    All Communications referring or relating to the extent to which the Cash Balance Sub-Plan would result in a significant reduction in the rate of future benefit accrual for participants in the Delmarva Plan.

> 17.     All Communications referring or relating to any curtailment of Conectiv's pension obligations under generally accepted accounting principles that would result from the Conversion.

(*Id.*). Plaintiffs also sought discovery concerning Conectiv's communications with Towers Perrin and Watson Wyatt on various topics, including the Conversion and the structure for grandfather benefits. (Malone Decl., Ex. 1 at 7-8). The subpoenas to Towers Perrin and Watson Wyatt sought similar information. (Malone Decl., Exs. 2, 3).

Absent the Court's November 14, 2006 Order, plaintiffs would have pursued this written discovery and would have deposed representatives of Watson Wyatt and Towers Perrin. (Malone Decl. ¶ 17). Plaintiffs also would have conducted further deposition discovery of officials at Conectiv. As we explained at the time of the discovery conference, this discovery was intended to address both remedies and the basic question whether notice was required under Section 204(h).

Based on defendants' representations in October 2006, this Court narrowed the scope of the documents defendants were required to produce and precluded plaintiffs from obtaining discovery from Watson Wyatt & Co. and Towers Perrin, the actuaries who worked on various stages of the plan. (D.I. 62). If the defendants are permitted to shift their position and assert that plaintiffs need to establish their state of mind and expectations, then plaintiffs should be given a fair opportunity to explore those issues through discovery.

Accordingly, plaintiffs should be granted relief under Rule 56(f) of the Federal Rules of Civil Procedure; the Court's Order of November 14, 2006 should be vacated to permit plaintiffs to enforce their documentary subpoenas to Watson Wyatt and Towers

Perrin, and to obtain from defendants the documents withheld from production on the basis of the Court's prior order. Following the completion of that documentary discovery, plaintiffs should be permitted to depose representatives of Watson Wyatt, and Towers Perrin, as well as current and former officers, directors and employees of Conectiv. This will likely involve at least four depositions, and possibly more, depending upon what the documents show. (Malone Decl. ¶ 21).

B.     *Alternatively, Defendants Should Be Precluded From Asserting that Plaintiffs Must Establish that They Expected the Amendment to Result in Lower Benefits.*

Since the defendants succeeded in persuading the Court to preclude the plaintiffs from pursuing discovery calculated to test how they expected the amended plan to work, the Court should hold that defendants are now judicially estopped from asserting proof is lacking concerning their state of mind in adopting the plan and their expectations of how the Cash Balance Sub-Plan would affect participants' benefits.

Litigants are not free to adopt fundamental shifts in their positions over the course of a dispute:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (citations and internal quotations omitted).

Judicial estoppel applies when a party asserts a position in a court proceeding and later asserts an inconsistent position in bad faith. *See Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78, 782 (3d Cir. 2001). Judicial estoppel "is designed to prevent litigants from playing fast and loose with the courts." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (citations omitted); *see also Delmarva Power & Light Co. v. Public Serv. Enter. Group,* 1996 U.S. Dist. LEXIS 13758, *13-14 (E.D. Pa. Sept. 17, 1996). A party acts in bad faith when it adopts an inconsistent position to "obtain an unfair advantage." *Ryan,* 81 F.3d at 362.

Defendants have acted in bad faith by shifting their position multiple times to suit their changing interests:

- In their submissions for purposes of scheduling, defendants agreed with plaintiffs' position that discovery on the question whether the new plan was expected to lead to lower benefits was needed. (D.I. 37, 40).

- When plaintiffs sought discovery from defendants and their actuarial consultants on whether the plan was expected to yield lower benefits, defendants shifted ground, asking the Court to bar the discovery because it was irrelevant and arguing that plaintiffs' arguments in support of the discovery were meritless and bizarre. (D.I. 61).

- Now that plaintiffs have conducted discovery within the limits imposed upon them by the Court, defendants have shifted ground again, and are urging the Court to enter judgment in their favor because plaintiffs have not established that

defendants expected lower benefit accruals, which is precisely one of the areas plaintiffs were precluded from exploring. (D.I. 102 at 6, 8).

An Order precluding the defendants from shifting positions on what the plaintiffs need to show is also consistent with the doctrine of the law of the case, which "directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." *Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116 (3d Cir. 1997); *see also Turner v. C.M.S.,* 2006 U.S. Dist. LEXIS 51030, *8 (D. Del. July 20, 2006) ("the law of the case doctrine militates against courts re-deciding issues of law that were resolve earlier in the litigation") (*citing Public Interest Group of N.J.,* 123 F.3d at 116). In granting defendants' motion for a protective order, the Court determined that discovery on defendants' state of mind and expectations was not relevant. Just as that ruling bound plaintiffs over the course of discovery, it should bind defendants now.

If, however, the Court does not estop defendants, then plaintiffs should have the opportunity to conduct discovery of Watson Wyatt and Towers Perrin and additional discovery of defendants.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for a Continuance Pursuant to

FED. R. CIV. P. 56(f) or for a Preclusion Order should be granted.

Dated:  September 4, 2007                  Respectfully submitted,

                                           **CHIMICLES & TIKELLIS LLP**


                                           By:/s/ Scott M. Tucker
                                               Pamela S. Tikellis (#2172)
                                               Robert J. Kriner (#2546)
                                               A. Zachary Naylor (#4439)
                                               Scott M. Tucker (#4925)
                                               One Rodney Square
                                               P.O. Box 1035
                                               Wilmington, DE 19899
                                               302-656-2500 (telephone)
                                               302-656-9053 (fax)

                                               and

                                           **CHIMICLES & TIKELLIS LLP**
                                               James R. Malone, Jr.
                                               (*pro hac vice*)
                                               Joseph G. Sauder
                                               (*pro hac vice*)
                                               One Haverford Centre00
                                               361 West Lancaster Avenue
                                               Haverford, PA 19041
                                               610-642-8500 (telephone)
                                               610-649-3633 (fax)

                                               Attorneys for Plaintiffs

20