IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. MICHAEL CHARLES, MAURICE W. WARD, JR., and JOSEPH I. FINK, JR., on behalf of themselves and all others similarly situated, | : : : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 05-00702 (SLR) |
| | : | |
| PEPCO HOLDINGS, INC., CONECTIV, and PEPCO HOLDINGS RETIRMENT PLAN, | : : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION TO CONTINUE PURSUANT TO FED. R. CIV. P. 56(F) OR FOR A
<u>PRECLUSION ORDER</u>**

M. Duncan Grant (Del Bar No. 2994)
Matthew A. Kaplan (Del Bar No. 4956)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
302.777.6500

Susan Katz Hoffman, Esquire
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street
Philadelphia, PA  19102
267.402-3015 (telephone)
267.430.7275 (fax)

Larry R. Wood, Jr. (Del Bar No. 3262)
Kay Kyungsun Yu
Barak A. Bassman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215. 981.4000 (telephone)
215.981.4750 (fax)

Dated:  September 18, 2007

Attorneys for Defendants

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.   Nature and Stage of Proceedings .................................................................... 1

II.  Statement of Facts .......................................................................................... 6

III. Summary of Argument .................................................................................... 9

IV.  Argument ....................................................................................................... 10

     A.   Plaintiffs Have Not Shown Any Basis to Reargue the Motion for
         Protective Order .................................................................................. 10

     B.   In the Alternative, Plaintiffs Have Failed to Discharge Their Burden under
         Rule 56(f) .......................................................................................... 12

V.   Conclusion ..................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### CASES

*Cooper v. IBM Personal Pension Plan*,
   274 F. Supp. 2d 1010 (S.D. Ill. 2003)......................................................................1

*Cooper v. IBM Personal. Pension Plan*,
   457 F.3d 636 (7th Cir. 2006) ...................................................................................2

*Dentsply International Inc. v. Kerr Manufacturing Co.*,
   42 F. Supp. 2d 385 (D. Del. 1999)..........................................................................10

*Doe v. Abington Friends School*,
   480 F.3d 252 (3d Cir. 2007)..............................................................................13, 17

*Drutis v. Rand McNally & Co.*,
   --- F.3d ---, 2007 WL 2409762 (6th Cir. Aug. 27, 2007) ........................................2

*Karr v. Castle*,
   768 F. Supp. 1087 (D. Del. 1991)...........................................................................10

*Koenig v. Intercontinental Life Corp.*,
   880 F. Supp. 372 (E.D. Pa. 1995) ......................................................................8, 15

*Lunderstadt v. Colafella*,
   885 F.2d 66 (3d Cir. 1989)........................................................................13, 14, 17

*Max's Seafood Caf ex rel, Lou-Ann, Inc. v. Quinteros*,
   176 F.3d 669 (3d Cir. 1999)...............................................................................10, 11

*Mobley v. City of Atlantic City Police Department*,
   89 F. Supp. 2d 533 (D.N.J. 1999) ......................................................................14, 16

*Morrison v. Carpenter Technology Corp.*,
   193 Fed. Appx. 148 (3d Cir. 2006)....................................................................14, 16

*North River Insurance Co. v. CIGNA Reinsurance Co.*,
   52 F.3d 1194 (3d Cir. 1995).....................................................................................10

*Pastore v. Bell Telephone Co. of Pennsylvania*,
   24 F.3d 508 (3d Cir. 1994)..................................................................................13, 14

*Register v. PNC Financial Services Group, Inc.*,
   477 F.3d 56 (3d Cir. 2007).........................................................................................2

*Sames v. Gable*,
  732 F.2d 49 (3d Cir. 1984).............................................................................17

*Samuel v. Snyder*,
  2003 WL 21146748 (D. Del. May 13, 2003).........................................................11

*Scott v. Graphic Communications Int'l Union*,
  92 Fed. Appx. 896 (3d Cir. 2004).................................................................14, 17

*Skretvedt v. E.I. Dupont de Nemours and Co.*,
  2000 WL 33341051 (D. Del. Oct. 31, 2000).........................................................11

*Sobratti v. Tropical Shipping and Construction Co., Ltd.*,
  267 F. Supp. 2d 455 (D.V.I. 2003).................................................................15

*St. Surin v. Virgin Islands Daily News, Inc.*,
  21 F.3d 1309 (3d Cir. 1994)........................................................................17

*Stafford v. Noramco of Delaware, Inc.*,
  2001 WL 65738 (D. Del. Jan. 10, 2001)............................................................10

*Tucker v. Merck & Co., Inc.*,
  102 Fed. Appx. 247 (3d Cir. 2004).................................................................15

*United States v. 225 Cartons, More or Less, of an Article or Drug*,
  871 F.2d 409 (3d Cir. 1989)........................................................................15

*Wheeler v. Pension Value Plan for Employees of the Boeing Co.*,
  2007 WL 2608875 (S.D. Ill. Sept. 6, 2007).........................................................5

*Wheeler v. Pension Value Plan for Employees of the Boeing Co.*,
  2007 WL. 781908 (S.D. Ill. Mar. 13, 2007)..........................................................4

## STATUTES

ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1)...............................................................2

ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G) .......................................................2

ERISA § 204(h), 29 U.S.C. § 1054(h) ............................................................... *passim*

Fed. R. Civ. P. 56(f) ................................................................................. *passim*

## I.        Nature and Stage of Proceedings

Plaintiffs' instant improper and meritless Motion for relief purportedly pursuant to Fed. R. Civ. P. 56(f) is a desperate, but failed, attempt to save a dying case.  After fully completing fact discovery and briefing cross motions for summary judgment, Plaintiffs now want to scrap the entire process, reopen fact discovery, and redo summary judgment at some indeterminate time in the future.

The purported basis for Plaintiffs' request is that Defendants supposedly completely changed positions in their Reply Brief, by faulting Plaintiffs for having insufficient evidence of Defendants' subjective beliefs regarding whether the cash balance amendment would result in a significant reduction in Plaintiffs' future benefit accruals.  This would, in turn, determine whether Defendants were required to provide notice under ERISA § 204(h).  This is an outright misrepresentation, using a sleight of hand created by mischaracterizing the objective "reasonable expectations" language of the regulations.  Defendants are not relying on evidence of any subjective beliefs, but rather upon the calculations of their expert actuary, Ethan Kra, which is consistent with the position that Defendants have always taken:  namely, that the question of entitlement to notice under Section 204(h) is based upon an objective calculation of benefits under the pre- and post-amendment formulae.  As there is no change in Defendants' position, there is no justification for reopening discovery and delaying the disposition of this action.

This Motion is just one more sign of how poorly this case has gone for Plaintiffs.  This putative class action was a copycat case of the initially successful class action in *Cooper v. IBM Personal Pension Plan*, 274 F. Supp. 2d 1010, 1021 (S.D. Ill. 2003), which, at the district court level, held that cash balance plans are *per se* unlawful and age discriminatory under ERISA § 204(b)(1)(H).  Shortly after this case was filed, however, the Seventh Circuit reversed the

District Court opinion in *Cooper.  See Cooper v. IBM Personal. Pension Plan*, 457 F.3d 636, 637 (7th Cir. 2006), *cert. denied*, 2007 WL 91579 (U.S. Jan. 16, 2007).  Earlier this year, the Third Circuit adopted the Seventh Circuit's reasoning in *Register v. PNC Financial Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007), and held that there is nothing age discriminatory about the accrual formulae of cash balance plans.  As Plaintiffs have admitted, *Register* forecloses their primary claim that the Cash Balance Plan is unlawful under ERISA § 204(b)(1)(H).  (D.I. 79 and 84.)[1]

Plaintiffs are accordingly left with three remaining claims:  (1) Count I, in which they contend that the Cash Balance Plan violates ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1), which prohibits "backloading" of benefits, *i.e.*, requiring a disproportionately larger share of retirement benefits to accrue in later years as opposed to earlier years (D.I. 1, ¶¶ 42-45); (2) Count II, in which Plaintiffs allege that the Cash Balance Plan violates ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G), which provides that the Cash Balance Plan is not lawful "if the participant's accrued benefit is reduced on account of any increase in his age or service" (D.I. 1, ¶ 47); and (3) Count IV, in which Plaintiffs allege that, pursuant to ERISA § 204(h), 29 U.S.C. § 1054(h), they did not receive proper notice of the amendment establishing the cash balance formula.  (D.I. 1, ¶¶ 51-53.)  Notably, the Third Circuit in *Register* affirmed the grant of a motion to dismiss claims against a cash balance plan that are similar, if not identical, to Counts I and IV in this case.  *See Register*, 477 F.3d at 70-73 (affirming dismissal of alleged violations of backloading rules and ERISA § 204(h)).  The only one of these three claims at issue in the pending Motion is Count IV, the Section 204(h) claim.

---

[1] The Sixth Circuit has likewise recently held that cash balance plans are not illegally age discriminatory. *See Drutis v. Rand McNally & Co.*, --- F.3d ----, 2007 WL 2409762 (6th Cir. Aug. 27, 2007).

On February 26, 2007, Plaintiffs stipulated to an expedited summary judgment schedule in which fact discovery would end on April 15, 2007 and Defendants would file a Motion for Summary Judgment on May 1, 2007. (D.I. 80.) Plaintiffs signed this stipulation after the Court had already warned the parties that it would not entertain early summary judgment motions if there were any unresolved discovery issues:

> I don't do early summary judgment, for a couple of reasons. Number one, I've got such an incredibly large motion practice, particularly when they are in patent litigation, that the last thing I want is to go through a motion practice in a case only to have the nonmoving party say, oh, but the record isn't complete and I'm confident that there's discovery out there. That is a monumental waste of my time and of your client's money. So I don't generally do that unless there are stipulated facts and it's really an issue of law and I'm happy to do it then.

10/26/06 Tr. at 11:24-12:6 (D.I. 109 at 59-60).. In light of the Court's clear instructions, Plaintiffs' attorney's signature on the stipulation was a representation to the Court that Plaintiffs would not seek further discovery after April 15 but would instead argue the matter on undisputed facts.

Accordingly, Defendants moved for summary judgment on Plaintiffs' individual claims on May 1, 2007. (D.I. 87 and 88.) On June 19, 2007, Plaintiffs filed an Answering Brief and Cross Motion for Summary Judgment. (D.I. 92 and 93.) Of course, Plaintiffs' filing of a Cross Motion was an admission both that there are no disputed issues of fact and that Plaintiffs needed no further discovery to establish their claims.

On August 3, 2007, Defendants filed their Joint Reply Brief and Answering Brief to Plaintiffs' Cross Motion. (D.I. 102.) There, Defendants pointed out that *Register* and similar cases had decisively rejected Plaintiffs' legal theories, and that, as both parties agreed that there were no issues of disputed fact, Defendants were entitled to summary judgment in their favor on all remaining counts.

In response, Plaintiffs panicked. They have all but abandoned Count II of their Complaint (ERISA § 204(b)(1)(G)), to which they devoted two sentences in their subsequent Reply Brief in Support of their Cross Motion. (D.I. 108 at 3.) They have similarly all but conceded that their backloading claim is meritless. In two pages of argument, Plaintiffs fail to address, much less distinguish, the opinions in *Register*, *supra*, and *Wheeler v. Pension Value Plan for Employees of the Boeing Co.*, Civ. A. No. 06-500, 2007 WL 781908 (S.D. Ill. Mar. 13, 2007), both of which rejected backloading claims against cash balance plans. (D.I. 108 at 1-2.)

Plaintiffs thus appear only to be actively pursuing their claim under ERISA § 204(h) for alleged lack of notice of the amendment establishing the cash balance formula. Nevertheless, it is unclear exactly what Plaintiffs' current position is regarding this final claim. They originally filed a Cross Motion for Summary Judgment on ERISA § 204(h), and have now filed a Reply Brief on that Cross Motion; indeed, two-thirds of the pages in their Reply are devoted to this count. (D.I. 108 at 3-15.) By Cross Moving for Summary Judgment Plaintiffs have represented to the Court that (1) there are sufficient facts of record to prove their case and (2) those facts are undisputed.

However, on the very same day that Plaintiffs filed their Reply, they also filed a "Motion for a Continuance Pursuant to Fed. R. Civ. P. 56(f)" (the "56(f) Motion") in which they argue that they need further discovery to resist Defendants' Motion for Summary Judgment on the 204(h) claim. (D.I. 106.) Contrary to Plaintiffs' previous representations to the Court, this would seem to be an admission that Plaintiffs' Cross Motion never had any merit: Plaintiffs cannot affirmatively seek summary judgment if they need more discovery simply to show a triable issue of fact. Indeed, this new Motion confirms that Plaintiffs realize that they cannot prevail in the current round of summary judgment briefing, so they have asked the Court to stop

-4-

the proceedings and reopen discovery, after which Plaintiffs will presumably seek to redo the summary judgment process.

There is no reason for the Court to countenance these disingenuous stalling tactics. Per the stipulation of the parties, fact discovery ended on April 15, 2007, and Plaintiffs never sought an extension. (D.I. 80.) Plaintiffs' only excuse for their sudden new request for discovery is that Defendants have allegedly offered a new argument in their Reply Brief that supposedly contradicts the Defendants' representations in their earlier, successful Motion for Protective Order. Plaintiffs hence now seek to reargue that Motion almost a year later, and to obtain additional discovery about Defendants' subjective expectations in amending the Plan to establish the cash balance formula. As discussed below, Plaintiffs' contention is without merit, as Defendants have maintained the same position throughout these proceedings, namely, that their subjective beliefs about the effect of the amendment (whatever they were) are irrelevant to Plaintiffs' claims.

This type of gamesmanship is frowned upon by the federal courts. As one federal district judge recently noted in refusing to permit further amendment to a dismissed putative ERISA class action challenging a cash balance plan on backloading grounds (although not notice):

> This case is, unfortunately, a fishing expedition, or perhaps more properly, a treasure hunt by Plaintiffs' counsel. The Court is in no doubt that, with enough time and consultation with experts, Plaintiffs' counsel could spin out many more theories concerning allegedly unlawful backloading of benefits by the Plan. However, Plaintiffs' counsel already have wasted a considerable amount of the Court's time through their presentation of serial theories of liability as to the Plan's alleged excessive backloading of benefits, and it is clear that this matter needs to come to a close.

*Wheeler v. Pension Value Plan for Employees of the Boeing Co.*, Civ. A. No. 06-500, 2007 WL 2608875 at *16 (S.D. Ill. Sept. 6, 2007).

Accordingly, this Motion should be denied.

## II.    Statement of Facts

Defendants have set forth the full factual background of this case on pages 2 through 11 of their Opening Brief in Support of their Motion for Summary Judgment. (D.I. 88.) Defendants will restrict their discussion here only to those facts specifically relevant to the 56(f) Motion. As Plaintiffs' Motion is based on the accusation that Defendants allegedly misled the Court in its Motion for Protective Order, Defendants will recount in detail the proceedings leading up to that Motion and the Court's Order of November 14, 2006.

On June 12, 2006 (D.I. 24) and July 11, 2006 (D.I. 31), this Court denied Defendants' Motion to Dismiss, although it ordered Count III of the Complaint to be stayed pending the ruling of the Third Circuit in *Register v. PNC Fin. Servs. Group, Inc.*, No. 05-3588. *See* Memorandum Opinion dated July 11, 2006 (D.I. 31) at 6. After the Court's denial of the Motion to Dismiss, the parties commenced fact discovery. On August 18, 2006, Plaintiffs served their First Set of Interrogatories and Requests for Production of Documents. Although the Federal Rules of Civil Procedure permitted Plaintiffs to seek discovery only relevant to their three narrow non-stayed claims, their requests for documents and information were exceptionally broad. For example, Document Request Nos. 13 and 14 sought "[a]ll Documents that refer or relate to the reasons why" two ***different*** sub plans, not at issue in this case, were created. Document Request No. 4 similarly sought "[a]ll minutes and other records of the Board of Directors or any committee thereof of ACE, Delmarva or Conectiv that refer to the Conversion or the adoption of the Cash Balance Sub-Plan." (D.I. 109 at 15-17.)

Not surprisingly, Defendants objected to these overbroad and irrelevant requests. Notwithstanding their objections to these irrelevant requests, Defendants produced several thousand pages of documents that are relevant to Plaintiffs' three non-stayed claims, including:

-6-

- Copies of the Plan documents and Summary Plan Descriptions;

- Copies of notices of the January 1, 1999 Amendment that Defendants provided to Plan participants;

- Form 5500 Annual Reports for the Plan; and

- Participant benefit statements.

Plaintiffs also served equally sweeping document subpoenas on third parties Towers Perrin and Watson Wyatt, actuarial consulting firms that Conectiv and Pepco have retained at various times. The third party subpoenas likewise sought documents well beyond the three non-stayed claims. For example, Plaintiffs propounded *thirty-one* separate document requests to third party Watson Wyatt, including a request for all actuarial reports prepared by Watson Wyatt for Defendants' various sub plans, even if the reports do not relate to the Cash Balance Sub-Plan at issue in this action. (D.I. 109 at 32-41.)

On September 26, 2006, the parties conducted a telephone conference to attempt to work out their disagreements as to the scope of discovery. As they were unable to do so, Defendants filed a Motion for Protective Order on October 25, 2006, arguing that the requested discovery was irrelevant to Plaintiffs' claims. (D.I. 60 and 61.) Among other items, Defendants argued that the scope of discovery for a claim under ERISA § 204(h) is quite narrow:

> Finally, in Count IV, Plaintiffs allege that Defendants did not properly amend the Plan effective January 1, 1999 to calculate benefits under the cash balance formula because Plaintiffs purportedly did not receive the notice of amendment allegedly required by ERISA § 204(h), 29 U.S.C. § 1054(h). Compl., ¶ 53. The version of Section 204(h) in effect at the time required at least 15 days' advance notice of any amendment that would "provide for a significant reduction in the rate of future benefit accrual." As this Court has noted, the notice was only required "to include an understandable summary of the amendment and not a description of its potentially adverse effects." Memorandum Opinion dated July 11, 2006 (D.I. 31) at 7.

Thus, to make out their claim under Section 204(h), Plaintiffs only need to know (1) the timing and contents of any notices, which documents Defendants have already produced and (2) the effect of the amendment on future accruals, which will be shown comparing the pre- and post-amendment Plan documents, which have already been produced, as well as the Plaintiffs' account statements, which likewise have already been produced. No further discovery is relevant.

Plaintiffs, however, assert that broad-ranging discovery on what Defendants expected to be the result of the 1999 Amendment is somehow relevant. Plaintiffs' Report for Discovery Conference (D.I. 55), ¶ 8. This argument, unsupported by any authority, is clearly meritless. Again, *there is no intent element to this claim. Even if Defendants believed that the Amendment would not result in a significant reduction in the rate of Plaintiffs' benefit accrual, Defendants would be liable for failure to provide notice if their belief were wrong.* See Koenig v. Intercontinental Life Corp., 880 F. Supp. 372, 375 n. 4 (E.D. Pa. 1995) (rejecting argument that good faith amendment would be exempt from 204(h) notice; "ERISA does not ask, 'why was this amendment made?' It asks only 'was there an amendment and did it result in a significant reduction in the rate of future benefit accrual?'").

(D.I. 61 at 9-10.) (emphasis added).

On October 26, 2006 the Court heard oral argument on the discovery dispute. At the hearing, Plaintiffs' counsel argued to the Court that Plaintiffs were entitled to discovery of Defendants' subjective intentions in establishing the Cash Balance Plan:

The second area where we see this to be relevant is narrower. It has to do with the claim under [ERISA] Section 204(h). And under 204(h), that's the notice requirement. And basically, we've looked at the Treasury regs that were in place at the time that this conversion took place, and under those regulations, what they indicate is that notice is a requirement for an amendment to a defined benefit plan only if it is reasonably expected to change the amount of future and/or benefit accrual [*sic*].

So, again, in that context, we see some relevance to what was the sponsor told by its consultants, for example, about what the impact of this benefit change would be. What were their expectations in terms of cost savings, because that's, under the Treasury rules, appears to be what triggers their notice obligation.

10/26/06 Tr. at 5:24-6:13 (Argument of Plaintiffs' Counsel) (D.I. 109 at 53-54.)

   In response, Defendants' counsel again argued that Defendants' subjective

beliefs, whatever they may have been, are irrelevant to a claim under Section 204(h):

> [Plaintiffs' attorney] Mr. Malone cites a regulation that says you
> need to give a notice if it's reasonably expected. Reasonably
> means a reasonable person looking at the [plan benefits] formula.
> If I'm badly advised and I adopt a formula that cuts benefit
> accruals by half, but I don't expect that, it's not a reasonable
> expectation not to expect that and a notice would be required
> whether I thought it was going to happen or not.
>
> On the other hand, if I am badly advised, and I think there's going
> to be a reduction by half but it turns out there is an increase and I
> don't give a notice, there's no violation just because I thought there
> would be a reduction. You need to have a significant reduction in
> the rate of future benefit accrual, and that's formula to formula.
> Expectations have nothing to do with it.

10/26/06 Tr. at 20:21-21:10 (Argument of Defendants' Counsel) (D.I. 109 at 68-69.)

   On November 14, 2006, the Court granted the Motion for Protective Order.

(D.I. 62.) Accordingly, the Court ordered that:

> 2. The scope of written discovery that the Defendants must
> provide to Plaintiffs is limited to only (a) copies of the Cash
> Balance Sub-Plan; (b) Summary Plan Descriptions for the Cash
> Balance Sub-Plan; (c) annual reports on Form 5500 for the Cash
> Balance Sub-Plan; (d) participant statements for the Cash Balance
> Sub-Plan; and (e) employee communications relating to the
> amendment creating the Cash Balance Sub-Plan in January 1999;
> and
>
> 3. The third party subpoenas served upon Watson Wyatt &
> Co. and Towers, Perrin, Forster, & Crosby, Inc. are quashed and
> neither third party needs to respond to them.

(*Id.*)

## III. Summary of Argument

   1. Plaintiffs' 56(f) Motion is explicitly based on their request to reargue

Defendants' Motion for Protective Order, which the Court granted in November 2006. The only

basis offered for this request for reargument is Defendants' alleged new position as to the

Section 204(h) position on summary judgment.  As Defendants have maintained the same

position throughout this case, this argument is without merit.

2.     Nor have Plaintiffs met their burden under Rule 56(f).  First, they have

failed to specify precisely which pieces of additional discrete discovery they need.  Second, they

have failed to demonstrate that their requested discovery would obtain information that defeats

Defendants' Motion for Summary Judgment.  Finally, Plaintiffs could have, but did not, obtain

the same information during the discovery period.

## IV.    Argument

### A.    Plaintiffs Have Not Shown Any Basis to Reargue the Motion for Protective Order

Plaintiffs' instant 56(f) Motion expressly asks that the Court's Order of

November 14, 2006 be vacated and that they now be allowed to conduct the discovery that the

Court previously disallowed.  (D.I. 106, ¶ 8.)  In other words, Plaintiffs' 56(f) Motion is nothing

more than a request to reargue Defendants' previous Motion for Protective Order.  The standard

for a motion for reconsideration is high:

> "As a general rule, motions for reconsideration should be granted
> 'sparingly.'"  *Stafford v. Noramco of Delaware, Inc.*, No. 97-376-
> GMS, 2001 WL 65738 at *1 (D. Del. Jan. 10, 2001) (citing *Karr v.
> Castle*, 768 F. Supp. 1087, 1090 (D. Del. 1991)).  The Third Circuit
> has noted that the purpose of a motion for reconsideration is to
> "correct manifest errors of law or fact or to present newly
> discovered evidence."  *Max's Seafood Café ex rel, Lou-Ann, Inc. v.
> Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River
> Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.
> 1995)).  Furthermore, the purpose of the motion for reconsideration
> is not to "rehash arguments already briefed."  *Dentsply Int'l. Inc. v.
> Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999).
> Consequently, in order to succeed on the motion, plaintiff must
> show that at least one of the following criteria applies: (1) a change
> in the controlling law; (2) availability of new evidence not
> available when the court made its decision; or (3) need to correct a

-10-

> clear error of law or fact or to prevent manifest injustice. *See*
> *Skretvedt v. E.I. Dupont de Nemours and Co.*, No. 98-61-MPT,
> 2000 WL 33341051 at *4 (D. Del. Oct. 31, 2000) (citing *Max's*
> *Seafood Café*, 176 F.3d at 677)).

*Samuel v. Snyder*, No. Civ.A. 01-722-SLR, 2003 WL 21146748 at *1 (D. Del. May 13, 2003)

(Robinson, J.).

      Here, Plaintiffs point to no change in the law or new evidence.  It appears that

their argument is that reconsideration is warranted to prevent a "manifest injustice."  According

to Plaintiffs, Defendants have contradicted their previous position and asserted on summary

judgment that Plaintiffs must show in their ERISA § 204(h) claim that Defendants subjectively

expected the four named Plaintiffs' future benefit accruals to be reduced as a result of the cash

balance formula amendment.  (D.I. 107 at 7) ("defendants now argue that their subjective

expectations need to be shown"); (D.I. 107 at 16) ("If the defendants are permitted to shift their

position and assert that plaintiffs need to establish their state of mind an expectations, then

plaintiffs should be given a fair opportunity to explore those issues through discovery").

      Plaintiffs' argument misrepresents Defendants' position on summary judgment.

While Defendants argue in their summary judgment briefs that no Plaintiff was entitled to notice

under Section 204(h) because the relevant amendment did not reduce their future benefit

accruals, Defendants nowhere cited any evidence regarding their subjective mental state nor

discussed an alleged need for any such evidence.  Rather, Defendants relied solely on the

testimony of their expert actuary, Ethan Kra, who did exactly what Defendants said they would

do at the October 2006 hearing:  he took the pertinent data and calculated benefits under the pre-

and post-amendment formulae.  (D.I. 88 at 21-22.)

      In response, Plaintiffs argued that Mr. Kra had used the wrong data set and that

the calculations of Plaintiffs' expert, Claude Poulin, demonstrated that the Plaintiffs were entitled

-11-

to notice under Section 204(h).  (D.I. at 93 at 15.)  In particular, Plaintiffs criticized Mr. Kra for using only salary data available at the time of the amendment, as opposed to projecting future salary increases, in making his calculations.  (*Id.*)  Defendants then argued on Reply that, as a matter of law, the relevant calculation must be based only on data available as of the time of the amendment, and thus Mr. Kra's calculations were correct while Mr. Poulin's were legally invalid.  (D.I. 102 at 6-8.)[2]

In other words, the issue of whether any Plaintiffs' future benefit accruals would be significantly reduced by the amendment, thus triggering the notice requirement under 204(h), boils down to the pure legal question whether the necessary actuarial computation can only be based upon data available as of the time of the amendment.  This has nothing whatsoever to do with anyone's subjective mental state, and there is accordingly no basis for reconsideration of the Court's previous Order limiting the scope of discovery.[3]

**B.      In the Alternative, Plaintiffs Have Failed to Discharge Their Burden under Rule 56(f)**

Furthermore, even if Plaintiffs' 56(f) Motion could be entertained, it is meritless. As a threshold matter, the 56(f) Motion only relates to one of Plaintiffs' three claims, the ERISA § 204(h) count.  Moreover, the Court does not even need to reach the 56(f) Motion to dispose of the Section 204(h) claim, as Plaintiffs only argue that they need further discovery to address the argument that they were not entitled to notice under the statute.  Plaintiffs do not seek any further

---

[2] Plaintiffs' repeated citation to one sentence in Defendants' Reply – that Plaintiffs "have not shown that, *at the time of the amendment*, Defendants should reasonably have anticipated that [plaintiffs'] rate of future benefit accrual would decline" (D.I. 106, ¶ 7) – is a red herring.  As the word "reasonably" shows, Defendants were *not* discussing what they in fact subjectively knew or thought at the time of the amendment, but rather what they should have objectively known, at the time of the amendment, through application of the pre-and post-amendment benefits formulae to the then-available data.

discovery to respond to Defendants' arguments (1) that, if required, proper and timely notice was provided and (2) that this claim is barred by the statute of limitations.

Nor have Plaintiffs met their burden under Rule 56(f).  The Third Circuit has held that, to resist summary judgment based on the alleged need for additional discovery, the nonmoving party must "specify 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'"  *Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994), *quoting Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988); *accord Doe v. Abington Friends School*, 480 F.3d 252, 255 n. 3 (3d Cir. 2007).  This information must be set forth in a sworn Affidavit.  *See Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir. 1989) ("We have on numerous occasions suggested that a failure to submit affidavits with a 56(f) motion is enough to preclude an argument of the kind made by plaintiffs").

Here, Plaintiffs have submitted the Declaration of James R. Malone, Jr. (D.I. 109.)  Mr. Malone avers that Plaintiffs require the following additional items of discovery:

> This would include full compliance by defendants with plaintiffs' document requests, and enforcement of plaintiffs' subpoenas issued to Towers Perrin and Watson Wyatt.  Following the completion of the additional documentary discovery, there would plainly be the need for additional deposition discovery, which would include testimony from representatives of Towers Perrin and Watson Wyatt, as well as additional testimony from other individuals identified in the additional documents produced.  At a minimum, four additional depositions would likely be needed, including representatives of Towers Perrin and Watson Wyatt, as well as former directors, officers, and employees of Conectiv.

_____

(continued...)

[3] Moreover, as Defendants have never changed their position in this case, Plaintiffs' judicial estoppel argument is without basis.  (D.I. 107 at 18) (admitting that judicial estoppel only applies when a party "later asserts an inconsistent position in bad faith").

> Depending upon what the documents show, it is conceivable that more than four depositions would need to be conducted, or that persons previously deposed in these actions would need to be re-deposed.

(D.I. 109, ¶ 21.)

This request is improper.  Rule 56(f) is not a mechanism to reopen fact discovery *in toto*.  Rather, the Third Circuit has explained that Rule 56(f) requires that the nonmoving party "move beyond generalities and specify what particular information is sought." *Scott v. Graphic Communications Int'l Union*, 92 Fed. Appx. 896, 900 (3d Cir. 2004).  Mr. Malone's Declaration points to no such specific information, but instead generally seeks to compel responses to twenty-seven document requests directed to Defendants and over thirty requests directed to third parties, after which Plaintiffs plan to depose some unspecified number of unnamed people. These amorphous requests, which amount to an open-ended fishing expedition, lack the specificity required by Rule 56(f).  *See Morrison v. Carpenter Technology Corp.*, 193 Fed. Appx. 148, 152 (3d Cir. 2006) (district court properly denied 56(f) application because plaintiff "failed to identify the particular information he sought to obtain as a result of the depositions"); *Scott*, 92 Fed. Appx. at 901 (56(f) Affidavit insufficient because it failed to identify "any specific persons to be deposed"); *Pastore*, 24 F.3d at 511 (56(f) application's "amorphous allegation" of information to be discovered from requested deposition held to be insufficiently specific); *Mobley v. City of Atlantic City Police Dept.*, 89 F. Supp. 2d 533, 537 (D.N.J. 1999) (denying 56(f) application because, *inter alia*, plaintiff "has not specifically identified the particular discovery needed to oppose defendants' motions"); *see generally Lunderstadt*, 885 F.2d at 71 ("Our case law makes clear that a Rule 56(f) motion must identify ***with specificity 'what particular information is sought'*** . . . (emphasis added; citation omitted)).

-14-

Nor have Plaintiffs shown how their requested discovery will defeat Defendants'

Motion for Summary Judgment.  The Malone Declaration asserts that "further discovery, as

outlined above, will permit plaintiffs to demonstrate that defendants are chargeable with

knowledge that the Cash Balance Sub-Plan would result in lower benefits for participants."

(D.I. 109, ¶ 22.)  This information, even if true, is irrelevant.  As Defendants argued in their

Motion for Protective Order – and as the Court agreed – Defendants' subjective expectations and

beliefs regarding the effect of the cash balance amendment have no bearing on the question of

whether notice was required under ERISA § 204(h).  *See Koenig v. Intercontinental Life Corp.*,

880 F. Supp. 372, 375 n. 4 (E.D. Pa. 1995) (rejecting argument that good faith amendment would

be exempt from 204(h) notice; "ERISA does not ask, 'why was this amendment made?' It asks

only 'was there an amendment and did it result in a significant reduction in the rate of future

benefit accrual?'").  Accordingly, the 56(f) Motion is without merit.  *See Tucker v. Merck & Co.,*

*Inc.*, 102 Fed. Appx. 247, 256-257 (3d Cir. 2004) (56(f) application properly denied because

plaintiff "failed to show how the information sought, if obtained, would have precluded the grant

of summary judgment"); *United States v. 225 Cartons, More or Less, of an Article or Drug*, 871

F.2d 409, 420 (3d Cir. 1989) (56(f) application properly denied because requested discovery was

"immaterial as a matter of law"); *Sobratti v. Tropical Shipping and Construction Co., Ltd.*, 267

F. Supp. 2d 455, 465 (D.V.I. 2003) (56(f) application denied because "there was nothing material

to be gleaned from further discovery").

Finally, even if it were somehow relevant, Plaintiffs cannot explain why they

were unable to discover evidence of Defendants' subjective expectations during the discovery

period.  Although the Court's November 2006 Order limited the scope of written discovery, it

did not address the question of deposition testimony.  In particular, Plaintiffs deposed the two

Conectiv human resources executives – then Vice President of Human Resources Donald Cain and then Manager of Benefits Benjamin Wilkinson – who presented the proposed cash balance amendment to the Compensation Committee of the Conectiv Board of Directors in April 1998.[4] Defendants placed no limits on the scope of the questioning at these depositions, and never instructed either witness not to answer a question based upon the Court's Order limiting written discovery. Moreover, while Plaintiffs now assert a need a to depose the members of the Compensation Committee who approved the cash balance amendment (D.I. 109, ¶ 17), none of these witnesses was subpoenaed or noticed for deposition during the discovery period.[5]

Under these circumstances, Plaintiffs cannot resist summary judgment based on a request for further discovery, because "courts have routinely denied applications for relief under Rule 56(f) when the party seeking the delay has failed to take advantage of discovery." *Mobley*, 89 F. Supp. 2d at 537. Plaintiffs could have obtained the information they now seek through deposition testimony, but chose not to do so. They cannot now complain about their own self-inflicted wound. *See Morrison*, 193 Fed. Appx. at 152 ("We generally do not grant relief under Rule 56(f) if the purported need for additional factual information is attributable to the movant's

---

[4] In fact, both Mr. Cain and Mr. Wilkinson did testify about their subjective expectations – although not the way that Plaintiffs wanted them to. Mr. Cain testified that the cash balance amendment was not designed as a cost-cutting (and benefit-reducing) measure as "the one thing that's very clear to me is that, from the very beginning, our direction was that the implementation of the Cash Balance Plan was to be cost neutral to the company." Cain Dep. at 41:2-42:4 (App. at B004-B005). Mr. Wilkinson testified that he recalled that the "Conectiv cash balance plan, in the words of [actuarial consultant] Watson Wyatt, was the richest cash balance plan their firm had ever put in place. It was not designed to mask any cost cutting. It was very rich, very generous." Wilkinson Dep. at 91:9-91:21 (App. at B008).

[5] Defendants have, in fact, made additional deponents available as appropriate during the summary judgment process. After Defendants attached an Affidavit from a previously undisclosed witness, Karen Francks, to their Reply Brief, Defendants produced her for deposition. Plaintiffs cited Ms. Francks' deposition testimony in their Reply in Support of their Cross Motion, although they mischaracterize her testimony, falsely arguing that she disclaimed any knowledge of the dissemination of notices. For example, Ms. Francks testified that she had personal knowledge "stronger than a belief" that Conectiv mailed decision kits to all Plan participants' homes in May 1998 and that she recalls personally stuffing some of the envelopes. Francks Dep. at 71:1-71:21, 84:13-84:20 (App. at B027, B030). So that the Court will have a complete and fair record, Defendants attach Ms. Francks' full transcript, with all exhibits, to their Appendix to this Brief and urge the Court to review the entirety of her testimony.

-16-

own lack of diligence during the discovery period"); *Lunderstadt*, 885 F.2d at 71 (56(f)

application properly denied because "plaintiffs have not adequately explained their lack of

diligence").[6]

## V.       Conclusion

For the reasons set forth herein, Defendants respectfully urge the Court to deny

Plaintiffs' 56(f) Motion.

Respectfully submitted,

/s/ Matthew A. Kaplan
M. Duncan Grant (Del. Bar No. 2994)
Matthew A. Kaplan (Del. Bar No. 4956)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
302.777.6500

Susan K. Hoffman                    Larry R. Wood, Jr. (Del. Bar No. 3262)
LITTLER MENDELSON PC                Kay Kyungsun Yu
Three Parkway                       Barak A. Bassman
1601 Cherry Street                  PEPPER HAMILTON LLP
Philadelphia, PA  19102             3000 Two Logan Square
267.402.3015 (telephone)           Eighteenth and Arch Streets
267.430.7275 (fax)                  Philadelphia, PA  19103-2799
                                    215.981.4000 (telephone)
                                    215.981.4750 (fax)

Dated:  September 18, 2007          Attorneys for Defendants

---

[6] The cases cited by plaintiff do not compel a different result.  In *Doe v. Abington Friends School*, 480 F.3d 252 (3d Cir. 2007), the defendant had moved for summary judgment before any discovery commenced. *Id.* at 254-255.  Here, in stark contrast, Defendants moved for summary judgment only after the conclusion of the fact discovery period.  In *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309 (3d Cir. 1994), the failure to obtain the requested discovery resulted from defendants' dilatory tactics. *Id.* at 1314-1315.  Plaintiffs in this action do not contend that Defendants prevented them from conducting any discovery; rather, they blame the Court's Order regulating written discovery.  Finally, the Third Circuit has noted that *Sames v. Gable*, 732 F.2d 49 (3d Cir. 1984) may be inconsistent with the Third Circuit's later opinions establishing a more rigorous standard for relief under Rule 56(f).  *See Scott*, 92 Fed. Appx. at 901.

## CERTIFICATE OF SERVICE

I, Matthew A. Kaplan, hereby certify that on September 18, 2007, a true and

correct copy of Defendants' Answering Brief in Opposition to Plaintiffs' Motion to Continue

Pursuant to Fed. R. Civ. P. 56(F) or for a Preclusion Order was served upon the following via

CM/ECF:

> Pamela S. Tikellis, Esq.
> Robert J. Kriner, Jr., Esq.
> A. Zachary Naylor, Esq.
> Robert R. Davis, Esq.
> CHIMICLES & TIKELLIS LLP
> One Rodney Square
> P.O. Box 1035
> Wilmington, DE 19899
>
> Attorneys for Plaintiffs

/s/ Matthew A. Kaplan
Matthew A. Kaplan (Del. Bar No. 4956)